**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| COGNIZANT TRIZETTO SOFTWARE GROUP, INC., | **Case No. 3:24-cv-2158** |
| Plaintiff, | **COMPLAINT** |
| v. | **DEMAND FOR JURY TRIAL** |
| INFOSYS LIMITED, | |
| Defendants. | |

Plaintiff Cognizant TriZetto Software Group, Inc. ("TriZetto" and "Plaintiff") alleges the following against Infosys Limited ("Infosys"). The allegations herein are made on personal knowledge as to TriZetto, and upon information and belief as to all matters specifically identified as such:

## NATURE OF THE ACTION

1.      This is an action seeking damages and injunctive relief for misappropriation of trade secrets, breach of contract, and unfair competition.

2.      TriZetto is a groundbreaking developer of best-in-class software products that simplify the business of healthcare. TriZetto's healthcare products provide proprietary medical claims processing functionality and comprehensive cycle management services to TriZetto's healthcare clients.

3.      Infosys, a multi-national technology company, gained access to certain of TriZetto's closely guarded, proprietary software offerings, and related technical documentation, under the guise of Non-Disclosures and Access Agreements ("NDAAs") that it executed with TriZetto for the limited purpose of equipping Infosys to complete work for certain Infosys clients

who were also customers of TriZetto. The NDAAs narrowly and strictly define the contours of Infosys's authorized access to TriZetto's proprietary information and trade secrets, granting access to a very limited number of Infosys employees for narrowly specified reasons. Yet, in contravention of those agreements, Infosys has misappropriated TriZetto's trade secrets and stolen its confidential information to develop or enhance its own competing software and service offerings for its own financial gain, thus causing severe and irreparable harm to TriZetto.

## THE PARTIES

4.    TriZetto is a technology company incorporated in Delaware, with its principal place of business in Englewood, Colorado.

5.    Infosys Limited is a company with multiple affiliates and is headquartered in Bengaluru, India. Upon information and belief, Infosys and its subsidiaries have several locations in the United States, with its principal place of business located at 2400 North Glenville Drive, Suite C150, Richardson, Texas 75082. Upon information and belief, Infosys Limited is registered with the Texas Secretary of State to do business in Texas. Infosys Limited has a registered agent for service of process in Texas with CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136.

## JURISDICTION AND VENUE

6.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332, and the trade secret laws of the United States, 18 U.S.C. §§ 1836, 1839. This Court also has supplemental jurisdiction over the asserted state law claims pursuant to 28 U.S.C. § 1367(a) because the federal and state law claims derive from a common nucleus of operative facts.

## NORTHERN DISTRICT OF TEXAS JURISDICTION AND VENUE

7.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332, and the trade secret laws of the United States, 18 U.S.C. §§ 1836, 1839. This Court also has

supplemental jurisdiction over the asserted state law claims pursuant to 28 U.S.C. § 1367(a), including those arising under Tex. Civ. Prac. & Rem. Code § 134A.001, *et seq.*, because the federal and state law claims derive from a common nucleus of operative facts.

8.      This Court has personal jurisdiction over Infosys, which claims Richardson, Texas as its United States-based headquarters and principal place of business. On information and belief, Infosys has operated in Richardson, Texas since 2018 and has over 500 employees at that location, including executive officers, and maintains its largest presence outside of India in Texas. Therefore, personal jurisdiction exists because Infosys (directly and/or through its subsidiaries, divisions, groups or distributors) has sufficient minimum contacts with the Northern District of Texas as a result of substantial business conducted within the District.

9.      Personal jurisdiction also exists because Infosys has done business with TriZetto in the Northern District of Texas pursuant to NDAAs, entered into at least one of the NDAAs at issue in this case in the Northern District of Texas, and has committed acts of misappropriation in the District. For example, Infosys signed and entered into an NDAA with TriZetto related to Infosys's work for Customer C in Richardson, Texas. Moreover, the first of two Infosys employees who were authorized to access TriZetto's confidential information pursuant to the Customer C NDAA was located in Richardson, Texas. As set forth below, Infosys breached its obligations under the Customer C NDAA and unlawfully exploited its access, through at least one employee located in Richardson, Texas, to misappropriate TriZetto's trade secrets.

10.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Infosys has a primary place of business in this District, transacts business in this District, and is subject to personal jurisdiction in this District. In addition, Infosys signed and entered into at least one agreement at issue in this case in this District. Moreover, on information and belief, employees

involved in, and information related to Infosys's misappropriation, are located at Infosys's office in this District. For purposes of this litigation, TriZetto agrees to venue in this District because TriZetto has suffered harm in this District.

## GENERAL ALLEGATIONS

### A.    TriZetto Develops and Offers Innovative Healthcare Software Technologies and Consulting Services

11.    TriZetto Corporation's software solutions have been widely used by payers and providers in the healthcare industry for decades. On September 15, 2014, Cognizant Technology Solutions Corp. announced that it would acquire TriZetto Corporation. The deal closed in November 2014, forming Cognizant TriZetto Software Group, Inc.

12.    TriZetto offers healthcare industry customers a suite of groundbreaking software products as well as consulting, IT, and business process services. TriZetto's products and services are used in the healthcare industry, including by service providers, like hospitals and physicians, and medical claim payers, like insurance companies. TriZetto's products and services provide solutions to the highly complex medical claims and payments processing problem in healthcare, and thereby improve healthcare operations.

13.    TriZetto's healthcare products include its Facets® and QNXT$^{TM}$ software, among others. Facets® is a core administration solution software product geared specifically to health plan administration, and includes functions to automate claims processing, billing, care management, and network management workflow. Facets® is used by payers (*i.e.*, companies that pay for administrated medical services), pharmacy benefit managers (*i.e.*, companies that manage prescription drug benefits on behalf of health insurers, larger employers, or other payers), and healthcare providers (*i.e.*, physicians and hospitals). Facets® clients benefit from improved efficiency in the processing of medical claims and more accurate financial reporting. QNXT$^{TM}$ is

another core administration software that is built on the cloud, with multiple deployment options and next-generation capabilities.

14.    Facets® and QNXT™ are complex, sophisticated, and next-generation software systems offered by TriZetto. TriZetto maintains details relating to those systems as closely guarded secrets, which prevents TriZetto's competitors from utilizing the technology therein. Direct access to a running version of the TriZetto software—which is only permitted under strict confidentiality obligations—is one way to ascertain the full functionality of Facets® and QNXT™. Limiting access to TriZetto software only to customers that agree to strict confidentiality obligations gives TriZetto a substantial economic and competitive advantage. And as a result, competitors to TriZetto's software products are unable, without unauthorized access, to copy its proprietary features, build unauthorized interfaces that can connect with TriZetto's software products, or develop test cases (i.e., bespoke sets of instructions for executing a particular capability within a software program, such as Facets® or QNXT™) to test TriZetto's software products.

15.    TriZetto also operates a consulting unit that provides clients with implementation support and other services needed to seamlessly use the products, including in conjunction with other software offerings, and maximize their value and utility. Clients can hire TriZetto to customize TriZetto products for their individual systems and particular business needs. Such implementation and customization projects are often complex, months-long, and are foundational to an ongoing business relationship between TriZetto and its clients. Such implementation and customization projects are impossible to complete without access to the TriZetto software and related workflows, tools, functionality, manuals, and test cases (which TriZetto maintains as confidential and trade secret information).

B.  **TriZetto's Offerings Contain Confidential Information and Trade Secret Information**

16.     Through extensive investments of hundreds of millions of dollars in research and development, TriZetto has generated an extremely valuable set of offerings that provide tremendous value to its clients and were instrumental to TriZetto's success in the industry. These products and services are built upon confidential and proprietary business and technical information (TriZetto's "Confidential Information") that is closely protected and not made available to the public. A subset of TriZetto's Confidential information is TriZetto's trade secrets ("Trade Secret Information"). TriZetto Confidential Information also includes proprietary information that does not rise to the level of legally protectable trade secrets, but which the parties agreed to maintain as confidential. Access to TriZetto's Confidential Information, including its Trade Secret Information, is only permitted pursuant to strict confidentiality obligations. As explained below, Infosys had access to the Confidential Information, including the Trade Secret Information, through agreements with TriZetto; however, such access was provided to a limited set of authorized Infosys employees for the limited purpose of servicing TriZetto's customers.

17.     TriZetto's Trade Secret Information includes TriZetto's proprietary software, including Facets® and QNXT™, and the workflows and functionality implemented by the proprietary software (the "Proprietary Software"); source materials relating to the Proprietary Software, including the source code, technical documentation, product release notes, link libraries, and development toolkits ("Source Materials"); test cases for testing the Proprietary Software ("Test Cases"); interfaces, connectors and adaptors for the Proprietary Software, as well as tools for creating such interfaces, connectors, and adaptors ("Interfaces"); the database, database schema, file structures, data dictionaries, and other information relating to the storage of data by the Proprietary Software ("Data Model"); and the terms of the contracts between TriZetto and its

clients, including the pricing for TriZetto products and services ("Commercial Secrets"), as well as documentation related to each item previously listed.

18.    TriZetto's Proprietary Software includes core administration solution software products, Facets® and QNXT™. The software applies TriZetto's proprietary medical claims processing to proprietary database structures relevant to healthcare claims, which reduces the administrative expenses associated with claims processing. The software stores medical data to enable the medical claims processing functionality, such as information concerning the covered individuals, the healthcare provider, and the coverage available to the individual pursuant to their medical insurance plan. TriZetto's Source Materials include source code, which, when compiled, generates compiled code that performs the proprietary medical claims processing functionality. TriZetto limits access to the Proprietary Software and the Source Materials to customers and vendors who have executed an agreement requiring them to maintain the Proprietary Software as confidential. The Proprietary Software and Source Materials were developed through extensive investments in research and development. By maintaining the secrecy of the Proprietary Software and Source Materials, TriZetto ensures that its competitors would need to make their own significant investments in research and development to develop competing software.

19.    TriZetto's Test Cases include a list of inputs to a specific software, along with the expected outputs from that software. Test Cases are bespoke to the specific software program for which it was developed; thus, the development of a Test Case for one of the Proprietary Software products necessarily requires access to that product (which is only permitted pursuant to strict confidentiality agreements with TriZetto), and also requires the investment of time and money to determine the scenarios to be tested and the expected inputs and outputs. Thus, third parties, including Infosys, cannot create Test Cases to test the functionality in Facets® or QNXT™ without

access to Facets® or QNXT™. TriZetto limits access to Facets® and QNXT™ to a limited set of authorized users who are bound by confidentiality agreements, as described further below. By maintaining the secrecy of its Test Cases, TriZetto ensures that its competitors would need to make investments of time and money to develop their own test cases.

20.     As an example of a Test Case, when Facets® is installed or updated, customers often need to test whether its functionality works as intended. To do so, TriZetto, or a third-party vendor authorized by TriZetto, creates Test Cases within Facets® to ensure that any upgraded functionality behaves as expected. By way of example, one Test Case may relate to the capability of adding a new insured to Facets®, which would set out the precise workflow required to successfully add a new insured to Facets®. By following the instructions for a Test Case, the user can compare the results of the test to the expected outcome, allowing the user to determine whether the Facets® upgrade or installation is working properly. Both the underlying Facets® and QNXT™ workflow and the Test Case capturing the workflow contain TriZetto's Confidential Information and Trade Secret Information.

21.     A jury and Court of Appeal have already confirmed that the Test Cases are trade secrets. In *Syntel Sterling Best Shores Mauritius Ltd. v. The TriZetto Grp., Inc.*, No. 15-Civ-211 (LGS) (S.D.N.Y.), a federal jury concluded that TriZetto's Test Cases are trade secrets despite arguments otherwise from trade secret defendant Syntel Sterling Best Shores Mauritius Ltd. ("Syntel"). Like Infosys, Syntel was a third-party vendor who was granted limited access to TriZetto's Confidential Information and Trade Secret Information, including its Proprietary Software, Test Cases, Source Materials, Data Model, and related manuals and tools, for the limited purpose of allowing it to fulfill its obligations to a customer who was also a TriZetto customer. *Syntel v. TriZetto*, No. 15-Civ-211, Dkt. 977 at 5-6. Syntel gained access to TriZetto's Confidential

Information and Trade Secret Information the same way that Infosys did: by way of a confidentiality agreement. The evidence at trial showed that Syntel had exceeded the allowable bounds of its access by creating its own "repository" of Test Cases that were specifically designed for the TriZetto Proprietary Software. *Syntel Sterling Best Shores Mauritius Ltd. v. The TriZetto Grp., Inc.*, 68 F.4th 792 at 797 (2d Cir. 2023), *cert. denied*, 144 S. Ct. 352 (2023). After considering extensive evidence and expert testimony, the jury found that (1) TriZetto's Test Cases were protectable trade secrets; and (2) Syntel's creation of a repository of Facets® Test Cases constituted trade secret misappropriation and breach of the parties' confidentiality agreement. *Syntel v. TriZetto*, No. 15-Civ-211, Dkt. 931. On appeal, the Second Circuit affirmed the jury's finding that TriZetto's Test Cases are trade secrets and that Syntel misappropriated TriZetto's Test Case trade secrets. *Syntel Sterling Best Shores Mauritius*, 68 F.4th 792-806. The trade secret status of TriZetto's Test Cases is no longer appealable. Infosys, like Syntel, has misappropriated TriZetto's trade secrets, including the Test Cases.

22.     TriZetto's Data Model includes the database, database schema, file structures, data dictionaries, and other information relating to the storage of data by the Proprietary Software. At a high level, the Data Model conveys the architecture of the Proprietary Software. The Data Model includes thousands of data fields stored in the Proprietary Software's databases, which were developed through extensive research and development efforts. TriZetto's Data Model trade secrets include, by way of non-limiting examples, TriZetto's design choices as to which data attributes should be collected and stored; naming conventions and what to call the data attributes and data tables, such that each attribute could be uniquely identified and called; the organization of the data attributes and data tables; the characteristics, definitions, and functionality associated with each data attribute or data table; the relationships, groupings, connections, and hierarchies

9

among the data attributes and data tables; and the identification, definition, and format of data attributes and data tables required for loading data into, and for extracting data from, the Proprietary Software. The Data Model trade secrets enable the Proprietary Software to perform the functionality in an accurate and efficient manner. By maintaining the secrecy of its Data Model, TriZetto ensures its competitors would need to make investments of time and money to develop a competing version of the Proprietary Software, which relies on the Data Model to perform its functionality.

23.     As with the Test Cases, the *Syntel* court has already held that TriZetto's Facets® manuals and tools (*e.g.*, the Data Dictionary) likewise contain TriZetto's Trade Secret Information, a finding that the Second Circuit also affirmed. *Syntel Sterling Best Shores Mauritius Ltd. v. The Trizetto Grp.*, 68 F.4th at 802-804.

24.     TriZetto's Interfaces include functions that are structured, sequenced, and organized in a proprietary manner for interfacing with the Proprietary Software and for accessing data stored in the databases, according to the Data Model. Authorized developers may, consistent with their confidentiality obligations imposed in the NDAAs and applicable software licenses, interact with the TriZetto Interfaces to run specific functions to extract or input data from or to specific data fields and/or data tables in the TriZetto Data Model, and develop interconnections with other systems. By maintaining the secrecy of its Interfaces, TriZetto bars unauthorized service providers from interfacing directly with the Proprietary Software and its databases, thereby further protecting the Proprietary Software and the Data Model and the data stored therein.

25.     In addition to the trade secrets described above, TriZetto's Confidential Information and Trade Secret Information also includes automation scripts, tools, source code, technical documentation, manuals, instructions or guides for compiling, assembling, linking,

loading, building, testing, installing, upgrading, configuring or uninstalling, and any other information used to reproduce, modify, support, or enhance Facets® or QNXT$^{TM}$. This includes all workflows, functionalities, and Test Cases derived from Facets® and QNXT$^{TM}$, including the Test Cases in the repository that Infosys now claims as its own, as discussed below.

26.     TriZetto derives independent economic value from its Trade Secret Information not being generally known to and not readily ascertainable to the public. TriZetto closely guards its Confidential Information and Trade Secret Information. This secrecy enables TriZetto to remain competitive in the market, allowing it to offer prospective and actual customers software products with unique functionality, and provide its customers with consulting services to effectively implement the software products. Moreover, because the Proprietary Software, Source Materials, Test Cases, Data Model and Interfaces are kept secret, competitors to TriZetto's software products cannot, without unauthorized access and use of TriZetto Confidential Information and Trade Secret Information, copy TriZetto's proprietary features, build unauthorized interfaces to connect with TriZetto's software products, or create unauthorized Test Cases to test TriZetto's software products. This is further valuable because TriZetto also leverages its Trade Secret Information and Confidential Information to provide services related to its Propriety Software.

### C.     TriZetto Protects Its Confidential Information and Trade Secrets

27.     Due to the valuable nature of the Confidential Information and Trade Secret Information, TriZetto goes to great lengths to protect that information from public disclosure. These efforts include requiring TriZetto employees who have access to the Confidential Information and Trade Secret Information to sign confidentiality agreements; restricting physical and digital access to only authorized users with valid credentials; and limiting access only to those users with a legitimate business purpose for accessing TriZetto's Confidential Information and Trade Secret Information.

28.     Other measures TriZetto has taken to protect its Confidential Information and Trade Secret Information include, but are not limited to, computer and server passwords, security access cards, confidentiality agreements, letters notifying departing employees to return all property belonging to TriZetto, distribution of information on a need-to-know basis, and non-compete and non-solicitation agreements with its high-level employees.

29.     At times, it is necessary for TriZetto to disclose Confidential Information or Trade Secret Information to customers or vendors for legitimate business purposes, such as enabling a vendor to provide services to companies who are mutual clients of TriZetto and the vendor. For example, a TriZetto customer may wish to retain a vendor's services to implement a new version of a TriZetto Proprietary Software. In these situations, TriZetto requires such customers and vendors to sign NDAAs that strictly prohibit disclosure of Confidential Information and Trade Secret Information, except to employees of the vendor that are authorized recipients. Under the terms of the NDAA, authorized recipients of Confidential Information and Trade Secret Information are only permitted access if they require access to the information to perform services for the benefit of the TriZetto customer. Moreover, authorized recipients of TriZetto Confidential Information and Trade Secret Information must agree to the terms of the NDAA and are only permitted access to Confidential Information and Trade Secret Information for the limited and legitimate purposes outlined in the NDAAs, for example, to perform certain services for the benefit of TriZetto's customer. Further, authorized recipients of technical Confidential Information and Trade Secret Information must not be involved in development, testing, or marketing of competitive software.

30.     Five TriZetto customers entered into an NDAA with TriZetto that are relevant here: (1) Customer A, (2) Customer B, (3) Customer C, and (4) Customer D. Each of these customers

were also clients of Infosys. Accordingly, in connection with and as a result of the relationship TriZetto and Infosys had with each Customer, TriZetto entered into separate NDAAs with Infosys, which gave certain Infosys employees (who met the criteria in the preceding paragraph) access to certain TriZetto Confidential Information and Trade Secret Information for the limited purpose of performing certain services for Customers A-D.

31.    As further explained in Section E, Infosys's development, retention, and marketing of Test Cases for Facets® and QNXT™, as well as interfaces for QNXT™, illustrate that Infosys abused its access to TriZetto Confidential Information and Trade Secret Information and exceeded the scope of its permissible access pursuant to the NDAAs, and then engaged in an illicit scheme to misuse and misappropriate TriZetto's Confidential Information and Trade Secret Information for improper purposes.

**D.    Infosys Gains Limited, Restricted Access to TriZetto Trade Secrets Pursuant to the Terms of NDAAs**

32.    Over the course of the last decade, Infosys has signed at least seven (7) NDAAs with TriZetto, in which Infosys has repeatedly recognized TriZetto as the sole owner of its Confidential Information and Trade Secret Information related to its Facets® and QNXT™ offerings. The NDAAs between Infosys and TriZetto strictly prohibit disclosure of TriZetto Confidential Information and Trade Secret Information, except to Infosys employees that need access to the information to perform services for the benefit of the TriZetto customer. Infosys employees were only permitted to access technical TriZetto Confidential Information and Trade Secret Information if they were not involved in development, testing, or marketing of software competitive to TriZetto's Proprietary Software. Moreover, the NDAAs between Infosys and TriZetto required authorized recipients of TriZetto Confidential Information and Trade Secret Information to agree to the terms of the NDAAs between Infosys and TriZetto, and those recipients

were only permitted access to TriZetto Confidential Information and Trade Secret Information for the limited approved purposes outlined in the NDAAs. Finally, the NDAAs also required Infosys to provide TriZetto with access to its business records as necessary for TriZetto to determine if Infosys was in compliance with the terms of the NDAA.

33.    Infosys gained access to these offerings, pursuant to the NDAAs, for the limited purpose of providing specific services to certain Infosys clients who are also customers of TriZetto. By signing the NDAAs, Infosys attested that it understood that TriZetto's Confidential Information and Trade Secret Information is not readily available from public sources and derives economic value from its secrecy.

34.    Yet, despite its promises to TriZetto, Infosys necessarily and intentionally exceeded the limits of access permitted in the NDAAs and created its own repository of Test Cases, thus allowing Infosys to obtain economic advantages through the misappropriation of TriZetto's Confidential Information and Trade Secret Information, and in violation of its contractual obligations.

35.    ***Customer A NDAA.*** TriZetto entered into an NDAA with Infosys on April 8, 2018 (hereinafter "Customer A NDAA"). The Customer A NDAA is a valid and enforceable contract. TriZetto has complied with all of its obligations under this contract. The Customer A NDAA contains numerous confidentiality provisions and restrictions that limit Infosys's access and use of TriZetto's Confidential Information and Trade Secret Information. The Customer A NDAA only authorized Customer A to provide Infosys with narrow, limited access to "Non-Technical" TriZetto Confidential Information and Trade Secret Information for the limited purpose of supporting Customer A's testing of the Proprietary Software and restricts access to Authorized

Recipients who "need access" to the Confidential Information to perform the specific services for Customer A The confidentiality obligations under the Customer A NDAA remain in effect today.

36.     ***Customer B NDAA.*** TriZetto entered into an NDAA with Infosys on November 19, 2018 (hereinafter "Customer B NDAA"). The Customer B NDAA is a valid and enforceable contract. TriZetto has complied with all of its obligations under this contract. The Customer B NDAA contains numerous confidentiality provisions and restrictions that limited Infosys's access and use of TriZetto's Confidential Information and Trade Secret Information.  The Customer B NDAA also authorized Customer B to provide Infosys with narrow, limited access to TriZetto Confidential Information and Trade Secret Information "solely to the extent reasonably necessary to enable [Infosys] to provide" specified services to Customer B, and restricts access to Authorized Recipients who must not be involved in specifying, designing, developing, managing, marketing, testing, or selling Infosys commercial software products that are directly competitive with the Proprietary Software. Further, the Customer B NDAA requires that Infosys provide TriZetto with access to its business records as necessary for TriZetto to determine if Infosys was in compliance with the terms of the NDAA.  The confidentiality and audit obligations under the Customer B NDAA remain in effect today.

37.     ***Customer C NDAA***. TriZetto entered into an NDAA with Infosys on October 9, 2020 (hereinafter "Customer C NDAA"). The Customer C NDAA is a valid and enforceable contract. TriZetto has complied with all of its obligations under this contract. The Customer C NDAA contains numerous confidentiality provisions and restrictions that limited Infosys's access and use of TriZetto's Confidential Information and Trade Secret Information. The Customer C NDAA also authorized Customer C to provide Infosys with narrow, limited access to TriZetto Confidential Information and Trade Secret Information "solely to the extent reasonably necessary

to enable [Infosys] to provide" specified services to Customer C, and restricts access to Authorized Recipients who must not be involved in specifying, designing, developing, managing, marketing, testing, or selling Infosys commercial software products that are directly competitive with the Proprietary Software. The Customer C NDAA authorized only two Infosys employees (the Authorized Recipients) to receive TriZetto Confidential Information and Trade Secret Information, both of which were required to sign separate confidentiality agreements with Infosys, and the Customer C NDAA further specified the "Authorized Recipient Location" for each Authorized Recipient.   Further, the Customer C NDAA requires that, upon request, Infosys provide TriZetto with access to its business records as necessary for TriZetto to determine if Infosys is in compliance with the terms of the NDAA.  The confidentiality and audit obligations under the Customer C NDAA remain in effect today.

38.   ***The Customer D NDAA.*** TriZetto entered into an NDAA with Infosys on April 18, 2022 (hereinafter "Customer D NDAA"). The Customer D NDAA is a valid and enforceable contract. TriZetto has complied with all of its obligations under this contract. The Customer D NDAA contains numerous confidentiality provisions and restrictions that limited Infosys's access and use of TriZetto's Confidential Information and Trade Secret Information.  The Customer D NDAA also authorized Customer D to provide Infosys with narrow, limited access to TriZetto Confidential Information and Trade Secret Information "solely to the extent reasonably necessary to enable [Infosys] to provide" specified services to Customer D, and restricts access to Authorized Recipients who must not be involved in specifying, designing, developing, managing, marketing, testing, or selling Infosys commercial software products that are directly competitive with the Proprietary Software.  Further, the Customer D NDAA requires that Infosys provide TriZetto with access to its business records as necessary for TriZetto to determine if Infosys is in compliance

16

with the terms of the NDAA. The confidentiality and audit obligations under the Customer D NDAA remain in effect today.

39.     Infosys agreed to the above contractual provisions knowingly and willingly. Thus, there was mutual agreement between Infosys and TriZetto that Infosys would only use TriZetto Confidential Information and Trade Secret Information for the limited purpose of servicing TriZetto's customers, and that Infosys was not allowed to use TriZetto's Confidential Information and Trade Secret Information to develop competing product offerings.

### E.     Infosys Misappropriates TriZetto's Confidential Information and Trade Secrets

40.     Infosys has improperly exceeded its authorized access to TriZetto's Confidential Information and Trade Secret Information, including access to the Proprietary Software, Test Cases, Interface, Data Model, and related information (as outlined above, Section B), to (i) create one or more connector tools to extract data from TriZetto software and (ii) create a massive repository of test cases that includes Test Cases for Facets®, which Infosys now deceptively touts as its own. Through these schemes to steal TriZetto's Confidential Information and Trade Secret Information, Infosys has gained an unfair commercial advantage in competing against TriZetto, thereby harming TriZetto in an amount to be determined at trial.

#### 1.     Infosys Misappropriates TriZetto's Confidential Information and Trade Secrets Through Its Unauthorized Interfaces

41.     As the facts set forth below show, Infosys has improperly exceeded its authorized access to and use of TriZetto's Confidential Information and Trade Secret Information, including access to the Proprietary Software, Interfaces, Data Model, and related information (as outlined above, Section B), and improperly and without authorization used such information to create one or more connector tools to extract data from TriZetto software, such as and including QNXT™,

and to store the extracted data in its own systems in databases created using such TriZetto Confidential Information and Trade Secret Information.

42.     One such connector tool is the "QNXT Adaptor." Infosys created the QNXT Adaptor improperly and without authorization and provided the QNXT Adaptor at least to Customer B. Infosys promoted the QNXT Adaptor as a tool to extract data from QNXT™ to be processed using Infosys's competing Helix platform. Infosys also designed the QNXT Adapter to load data from QNXT™ to a database that it created using information it gained by examining the Proprietary Software, Interfaces, Data Model, and other TriZetto Confidential Information and Trade Secret Information.

43.     In order to develop the QNXT Adapter, Infosys must have knowledge of and access to the Proprietary Software, Interfaces, Data Model, and related information. Infosys could not have developed the QNXT Adapter without access to TriZetto's Confidential Information and Trade Secret Information because of the proprietary nature of the TriZetto software, and because without such access, Infosys would not know how to extract data from the Proprietary Software, nor would it know to store the data outside of the Proprietary Software's own data structures. To develop the QNXT Adapter, Infosys's developers, including Individual A (a Senior Technology Architect for Infosys's competing Helix platform) necessarily relied on their intimate knowledge of QNXT™, which they could have only obtained through their access to TriZetto's Confidential Information and Trade Secret Information.

44.     For example, on information and belief, to support the QNXT Adapter, Infosys created a replica of the QNXT™ database or a modified version of the QNXT™ database, using information it gained by examining the Proprietary Software, Interfaces, Data Model, and other TriZetto Confidential Information and Trade Secret Information. Without access to TriZetto

Confidential Information and Trade Secret Information, Infosys could not have created a replica of the QNXT™ database, nor a modified version of the QNXT™ database. On information and belief, Infosys used the replica of the QNXT™ database to store information extracted from QNXT™.

45.     Moreover, also by using information it gained by examining the Proprietary Software, Interfaces, Data Model, and other TriZetto Confidential Information and Trade Secret Information, Infosys created a mapping of database tables from QNXT™ to Helix entities, thereby allowing the QNXT Adapter to copy information from TriZetto's proprietary system into Infosys's own proprietary system. Without such access to TriZetto Confidential Information and Trade Secret Information, Infosys could not have created such a mapping.

46.     Although certain Infosys employees were permitted access to TriZetto Confidential Information and Trade Secret Information in performance of certain services for Customer B, Infosys improperly exceeded its authorized access to TriZetto's Confidential Information and Trade Secret Information in the development of the QNXT Adapter. As one example, although the Customer B NDAA prohibited Infosys employees involved in development of competitive software from accessing any TriZetto Confidential Information or Trade Secret Information, TriZetto learned that Individual A had improperly created a competitive mapping of database tables from QNXT™ to Helix entities. Individual A could not have created this mapping file without access to TriZetto's Confidential Information and Trade Secret Information, including access to the Proprietary Software, Interface, Data Model, and related information.

47.     Infosys promoted the QNXT Adapter and/or similar tools to enable TriZetto customers, including Customer B, to migrate from TriZetto's Proprietary Software to Infosys's own software. Infosys therefore obtained an unfair commercial advantage in competing against

TriZetto, thereby harming TriZetto in an amount to be determined through litigation. Furthermore, Infosys's QNXT Adapter caused reputational harm to TriZetto in the market and will continue to do so. In one instance, Customer B sought assistance from *TriZetto*, not Infosys, in resolving technical difficulties with Infosys's QNXT Adapter. Thus, although *Infosys* used TriZetto Confidential Information and Trade Secret Information in an improper manner to develop the QNXT Adapter, Customer B attributed the technical difficulties to *TriZetto's* technology.

48.     On information and belief, Infosys offered and/or provided the QNXT Adapter that it developed for Customer B to other customers in breach of the Customer B NDAA.

49.     Infosys's creation of the QNXT Adapter and/or similar connectors, its promotion of such tools, and its refusal to cease and desist unlawful conduct all demonstrate that Infosys's wrongdoing is willful and malicious. Infosys knew that its use of TriZetto's Confidential Information and misappropriation of TriZetto's Trade Secret Information exceeded the scope of permissible and authorized use by Infosys under the NDAA and TriZetto made clear to Infosys by letter correspondence that Infosys's conduct constituted misuse and misappropriation, yet Infosys refused to stop its misuse and misappropriation. Thus, the threat of continued misappropriation and misuse continues. Moreover, TriZetto does not know the full scope of Infosys's misuse and misappropriation of its Confidential Information and Trade Secret Information.

## 2.    Infosys Misappropriates TriZetto's Confidential Information and Trade Secrets Through Its Test Case Repository

50.     As the facts set forth below show, Infosys has improperly exceeded its authorized access to and use of TriZetto's Confidential Information and Trade Secret Information, including access to the Proprietary Software, Test Cases, and related information (as outlined above, Section B), and improperly and without authorization used TriZetto's Confidential Information and misappropriated Trade Secret Information to create a massive repository of test cases that includes

Test Cases for Facets®, which Infosys now deceptively touts as its own. Infosys improperly and without authorization uses its massive repository of Facets® Test Cases to compete with TriZetto.

51.     As shown below, Infosys advertises the "Infosys Business Assurance Store" as a "repository . . . of 1 million test cases" that was "[d]eveloped by Infosys Validation Solutions (IVS), the Infosys testing unit" in order to "[f]ast-track [the customer's] QA" process. According to Infosys, "these assets contain knowledge and expertise across 15 years of testing" and are "[i]nclusive of over 15 products/packages like . . . Facets." Thus, Infosys has developed Facets® Test Cases using TriZetto's Confidential Information and Trade Secret Information, and/or repackaged TriZetto's Test Cases as its own. Infosys also marketed a massive repository of test cases, which includes Facets® Test Cases, as its own.



52. For Infosys to have created Facets® Test Cases Infosys necessarily required access to the TriZetto Confidential Information and Trade Secret Information. Infosys would not have been able to develop this repository of Facets® Test Cases without improper access to and use of TriZetto's Confidential Information and Trade Secret Information. As explained above, TriZetto's Test Cases are *bespoke* sets of instructions for executing a particular capability within a software program, such as Facets®. Thus, Infosys cannot create the Test Cases to test the functionality in Facets® without access to the Facets® software and would have had to misuse TriZetto's

Confidential Information and misappropriate TriZetto's Trade Secret Information to facilitate its development of Facets® Test Cases.

53.     Moreover, to create a massive repository with 1 million test cases of its own that includes Facets® Test Cases, Infosys's "Infosys Validation Solutions (IVS) [team], the Infosys testing unit" would have had to have continuing access to every aspect of TriZetto's Confidential Information and Trade Secret Information. Moreover, having access only to the user interface of the Proprietary Software would not have been sufficient to enable the IVS team to develop the Facets® Test Cases. Because Infosys's IVS team is involved in the development, testing, and marketing of a competitive test case repository, the IVS team was not permitted to have access to *any* of TriZetto's technical Confidential Information and Trade Secret Information.

54.     Thus, Infosys built its massive repository of Facets® Test Cases without authorization, using its access to TriZetto's Facets® Proprietary Software and associated Confidential Information and Trade Secret Information. Infosys *could not* have built the massive repository *without* the improper use of TriZetto Confidential Information and misappropriation of Trade Secret Information. Infosys is now utilizing, offering, selling and distributing to third parties, including TriZetto's current and potential Facets® and QNXT™ customers, the Test Cases that Infosys created and related services.

55.     This massive repository of Facets® Test Cases that Infosys improperly built without authorization using TriZetto Confidential Information and by misappropriating Trade Secret Information is highly valuable to Infosys and its prospective and current customers. The repository provides Infosys with an improper "foot through the door" to TriZetto's customers and prospective customers, which Infosys can then use to expand its relationship with those customers. On information and belief, TriZetto's customers and prospective customers would not have

considered Infosys a legitimate competitor to TriZetto for testing without Infosys's repository of Facets® Test Cases, developed using TriZetto Confidential Information without authorization and by misappropriating TriZetto Trade Secret Information.

56.     On information and belief, Infosys posted the advertisement for the "Infosys Business Assurance Store" in or around 2020, all the while concealing its deceptive and unlawful acts from TriZetto. Infosys did not request a license from TriZetto or otherwise give TriZetto any reason to believe that Infosys was exceeding the bounds of the NDAA. Rather, Infosys began offering its repository of test cases—which includes Facets® Test Cases developed using TriZetto Confidential Information without authorization and by misappropriating Trade Secret Information—to customers without acknowledging that the Test Cases constituted TriZetto's Confidential Information and Trade Secret Information and without informing or otherwise making TriZetto aware of its improper and unauthorized conduct.

57.     Given the confidentiality obligations in the NDAAs between Infosys and TriZetto, TriZetto had no reason to believe that Infosys was improperly using TriZetto's Confidential Information or unlawfully misappropriating TriZetto's Trade Secret Information, or to scour Infosys's website for any potential evidence of Infosys's improper use of TriZetto's Confidential Information and Trade Secret Information. TriZetto had not previously had any interactions that might have prompted TriZetto to inquire about Infosys's use of TriZetto Confidential Information and Trade Secret Information.

58.     In December 2023, TriZetto discovered that Infosys was purporting to offer access to products through the "Infosys Business Assurance Store" that were derived from and contain TriZetto's Confidential Information and Trade Secret Information, including information derived from TriZetto's Facets® and QNXT™ offerings. Specifically, TriZetto detected that Infosys had

purportedly created a repository of Test Cases for Facets® and QNXT™ products, using information that Infosys only had access to under the strict limitations of the NDAAs it had entered with TriZetto.

59.     Promptly after detecting Infosys's misuse of TriZetto's Confidential Information and misappropriation Trade Secret Information, TriZetto wrote to Infosys and demanded that Infosys cease and desist all unauthorized use, advertisement, and distribution of any Test Cases related to any TriZetto products, identify all TriZetto materials used by Infosys, and immediately collect and quarantine all copies of materials containing TriZetto Confidential Information or Trade Secret Information.

60.     Infosys refused to identify, collect, quarantine, and cease using TriZetto's Confidential Information or Trade Secret Information. While Infosys removed the advertisement shown above concerning the Infosys Business Assurance Store from its website, it refused to confirm that it stopped using the improperly created Facets® Test Cases.

61.     Infosys's creation of the Infosys Business Assurance Store, its advertising and offering of Test Cases developed through the unauthorized use of TriZetto's Confidential Information and misappropriation of TriZetto's Trade Secret Information, and its refusal to cease and desist unlawful conduct all demonstrate that Infosys's wrongdoing is willful and malicious. Infosys knew that its use of TriZetto's Confidential Information and misappropriation of TriZetto's Trade Secret Information exceeded the scope of permissible and authorized use by Infosys under the NDAAs, and TriZetto made clear to Infosys that its conduct constituted misuse and misappropriation by letter correspondence, yet Infosys refused to stop its misuse and misappropriation. Thus, the threat of continued misappropriation and misuse continues. Moreover,

TriZetto does not know the full scope of Infosys's misuse and misappropriation of its Confidential and Trade Secret Information.

62.     By using and/or advertising TriZetto's Confidential Information and misappropriating TriZetto's Trade Secret Information to sell and distribute to third parties, Infosys obtained a commercial advantage in competing against TriZetto, thereby harming TriZetto in an amount to be determined at trial.

**F.     Infosys Further Breaches the NDAAs by Refusing an Audit of Its Compliance with the Terms of the NDAAs Between Infosys and TriZetto**

63.     For months, Infosys failed to cooperate with TriZetto's requests for information regarding Infosys's use of TriZetto Confidential Information and Trade Secret Information. After months of refusing to cooperate with TriZetto, on May 31, 2024, TriZetto provided Infosys with written notice of an audit pursuant to the contractually agreed audit provisions of the Customer B-E NDAAs. Infosys refused to comply with the audit, in further breach of the agreements.

64.     In particular, TriZetto sought specific information from Infosys to determine whether Infosys was in compliance with the NDAAs. TriZetto requested: (1) "emails since November 19, 2018 attaching, including, forwarding, referencing or discussing any [TriZetto] Confidential Information"; (2) a list identifying "all Infosys-affiliated individuals who have had access to Cognizant Confidential Information since November 19, 2018," and (3) "[t]he identity of all central locations within Infosys containing Cognizant Confidential Information, and the identity of each individual that was authorized to access each central location since November 19, 2018." The requested information would have allowed TriZetto to determine who at Infosys had access to TriZetto Confidential Information and whether the access and use of such information by Infosys was consistent with the NDAAs. In turn, Infosys responded only to state in conclusory fashion that, according to Infosys, it had complied with the NDAAs—ignoring TriZetto's specific

questions and failed to provide any of the requested information, despite the fact that Infosys was required to do so under the NDAAs. Infosys refused to provide the requested business records despite having over two months to do so.

65.     Infosys's refusal to cooperate is an apparent effort to either continue the misuse and misappropriation and/or conceal the extent of the misuse and misappropriation thus far, which further demonstrates that Infosys's misuse and misappropriation is willful and malicious.

**COUNT I**

**Trade Secret Misappropriation Under the Defend Trade Secrets Act**

**(18 U.S.C. §§ 1836(b), 1839 *et seq.*)**

66.     TriZetto incorporates and re-alleges each and every allegation above as if fully set forth herein.

67.     TriZetto is the owner of certain valuable Trade Secret Information, including as described herein. *See supra* Section B. TriZetto's Trade Secret Information is confidential and propriety information, and includes the Proprietary Software, Source Materials related to the Proprietary Software, as well as Test Cases, Interfaces, the Data Model, and Commercial Secrets, all associated with the Proprietary Software. TriZetto's Trade Secret Information relates to TriZetto's products and services that are used in or intended for use in interstate and foreign commerce. TriZetto sells its products throughout the United States. For example, TriZetto's software systems and solutions are sold and used throughout the United States.

68.     TriZetto's Trade Secret Information provides substantial economic value and has conferred a competitive advantage on TriZetto by virtue of being kept secret. TriZetto's Trade Secret Information derives independent economic value from not being generally known, and not being readily ascertainable through proper means by others because such information is extremely

27

valuable to TriZetto, crucial to the operation of TriZetto's business, and if available to others, would enable them to compete with TriZetto to TriZetto's detriment.

69.    TriZetto has taken reasonable steps to maintain the secrecy of its Trade Secret Information, including by requiring confidentiality and/or nondisclosure agreements to be signed by any party granted access to TriZetto's Trade Secret Information, restricting physical and digital access to authorized users with valid credentials, computer and server passwords, security access cards, and letters notifying departing employees to return all property belonging to TriZetto. *See*, *supra* Section C. Such information cannot be properly acquired or duplicated because of the limited number of individuals who can access the information, and the contractual limitations imposed on such individuals.

70.    Infosys gained access to TriZetto's Trade Secret Information during the course of agreements TriZetto entered into with it, and potentially through other sources unknown to TriZetto at this time.

71.    Infosys subsequently used and disclosed TriZetto's Trade Secrets. Accordingly, Infosys is in possession of the foregoing TriZetto Trade Secret Information, which is subject to confidentiality agreements in which Infosys expressly acknowledged and confirmed the confidential nature of these secrets.

72.    Infosys, and in particular Infosys's Infosys Validation Solutions team and the Helix team, improperly acquired TriZetto's Trade Secret Information. Infosys has since improperly misappropriated TriZetto's Trade Secret Information, including by incorporating them into products and service Infosys markets and sells as its own. *See*, *supra* Section E.

73.    Infosys has misappropriated TriZetto's Trade Secret Information by acquiring, using, and/or disclosing the information described above, including by developing, marketing,

offering, and/or selling in the United States products that comprise, embody, and/or incorporate the Trade Secrets described herein.

74.     At the time Infosys misappropriated TriZetto's Trade Secret Information, Infosys knew or had reason to know that the Trade Secret Information was derived from someone who acquired them by improper means, acquired them subject to a duty to maintain secrecy or limit use, or derived from a person who owed such a duty.

75.     Infosys willfully and maliciously misappropriated TriZetto's Trade Secret Information and gained economic value from that misappropriation.

76.     As a direct and proximate result of Infosys's current and continued misappropriation of TriZetto's Trade Secret Information, TriZetto will suffer imminent and irreparable harm.

77.     Unless enjoined by this Court, Infosys's acts of misappropriation will continue and TriZetto will continue to suffer irreparable harm.

78.     TriZetto has no adequate remedy at law, as money damages alone will not fully correct the harm done through Infosys's misappropriation.

<u>**COUNT II**</u>

**Trade Secret Misappropriation Under Texas Uniform Trade Secret Act**

79.     TriZetto incorporates and re-alleges each and every allegation above as if fully set forth herein.

80.     TriZetto is the owner of certain valuable Trade Secret Information, including as described herein. *See supra* Section B. TriZetto's Trade Secret Information is confidential and propriety information, and includes the Proprietary Software, Source Materials related to the Proprietary Software, as well as Test Cases, Interfaces, the Data Model, and Commercial Secrets,

all associated with the Proprietary Software. TriZetto's Trade Secret Information relates to TriZetto's products and services that are used in or intended for use in interstate and foreign commerce. TriZetto sells its products throughout the United States. For example, TriZetto's software systems and solutions are sold and used throughout the United States.

81.     TriZetto's Trade Secret Information provides substantial economic value and has conferred a competitive advantage on TriZetto by virtue of being kept secret. TriZetto's Trade Secret Information derives independent economic value from not being generally known, and not being readily ascertainable through proper means by others because such information is extremely valuable to TriZetto, crucial to the operation of TriZetto's business, and if available to others, would enable them to compete with TriZetto to TriZetto's detriment.

82.     TriZetto has taken reasonable steps to maintain the secrecy of its Trade Secret Information, including by requiring confidentiality and/or nondisclosure agreements to be signed by any party granted access to TriZetto's Trade Secret Information, restricting physical and digital access to authorized users with valid credentials, computer and server passwords, security access cards, and letters notifying departing employees to return all property belonging to TriZetto. *See*, *supra* Section C. Such information cannot be properly acquired or duplicated because of the limited number of individuals who can access the information and the contractual limitations imposed on such individuals.

83.     Infosys gained access to TriZetto's trade secrets during the course of agreements TriZetto entered into with it, and potentially through other sources unknown to TriZetto at this time.

84.     Infosys subsequently used and disclosed TriZetto's trade secrets. Accordingly, Infosys is in possession of the foregoing TriZetto Trade Secret Information, which is subject to

confidentiality agreements in which Infosys expressly acknowledged and confirmed the confidential nature of these secrets.

85.     Infosys, and in particular Infosys's Infosys Validation Solutions team and the Helix team, improperly acquired TriZetto's Trade Secret Information. Infosys has since improperly misappropriated TriZetto's Trade Secret Information, including by incorporating them into products and service Infosys markets and sells as its own. *See*, *supra* Section E.

86.     Infosys has misappropriated TriZetto's Trade Secret Information by acquiring, using, and/or disclosing the information described above, including by developing, marketing, offering, and/or selling in the United States products that comprise, embody, and/or incorporate the trade secrets described herein.

87.     At the time Infosys misappropriated TriZetto's Trade Secret Information, Infosys knew or had reason to know that the Trade Secret Information was derived from someone who acquired them by improper means, acquired them subject to a duty to maintain secrecy or limit use, or derived from a person who owed such a duty.

88.     Infosys willfully and maliciously misappropriated TriZetto's Trade Secret Information and gained economic value from that misappropriation.

89.     As a direct and proximate result of Infosys's current and continued misappropriation of TriZetto's Trade Secret Information, TriZetto will suffer imminent and irreparable harm.

90.     Unless enjoined by this Court, Infosys's acts of misappropriation will continue and TriZetto will continue to suffer irreparable harm.

91.     TriZetto has no adequate remedy at law, as money damages alone will not fully correct the harm done through Infosys's misappropriation.

## COUNT III

### Breach of Contract (Customer A NDAA)

92.     TriZetto incorporates and re-alleges each and every allegation above as if fully set forth herein.

93.     The actions of Infosys, as set forth herein, constitute a breach of contract.

94.     TriZetto satisfied all relevant obligations under the Customer A NDAA it entered into with Infosys.

95.     Nonetheless, Infosys breached multiple provisions of the Customer A NDAA, including Sections 1, 6, and 7 of the Customer A NDAA.

96.     For example, pursuant to Section 1 of the NDAA, Infosys was provided access to TriZetto Confidential Information solely for performing certain QA testing services for Customer A. By creating a repository of 1 million test cases and advertising, marketing and utilizing those test cases thereafter, Infosys directly breached Section 1 of Exhibit 1 by using its access to TriZetto's Confidential Information for a purpose other than performing QA testing services for Customer A.

97.     Further, Section 6 of the Customer A NDAA gave Infosys narrow authorization to use TriZetto Confidential Information solely for purposes of providing services to Customer A Infosys knowingly breached this narrow authorization, including by using TriZetto Confidential Information to create a repository of test cases and advertising, marketing and utilizing those test cases thereafter.

98.     Under Section 7 of the Customer A NDAA, Infosys also had an obligation not to use or disclose TriZetto Confidential Information or allow others to use or disclose TriZetto Confidential Information, except as expressly permitted under the Customer A NDAA. Using

TriZetto Confidential information to create, use, advertise and market a repository of test cases was not a permitted use under the NDAA.

99.    As a result of Infosys's breach of the Customer A NDAA, TriZetto has suffered direct and consequential damages, and is entitled to recover compensatory damages, including opportunity costs, in an amount to be proven at trial.

100.    As a direct and proximate result of Infosys's wrongful conduct, TriZetto has been substantially and irreparably harmed in an amount not readily capable of determination. Unless restrained by this Court, Infosys will cause further irreparable injury to TriZetto.

101.    TriZetto is entitled to injunctive relief enjoining Infosys, its agents and employees, and all persons acting in concert or participation with it, from engaging in any further use of TriZetto's Confidential Information.

**COUNT IV**
**Breach of Contract (Customer B NDAA)**

102.    TriZetto incorporates and re-alleges each and every allegation above as if fully set forth herein.

103.    The actions of Infosys, as set forth herein, constitute a breach of contract.

104.    TriZetto satisfied all relevant obligations under the Customer B NDAA it entered into with Infosys.

105.    Nonetheless, Infosys breached multiple provisions of the Customer B NDAA, including Sections 1, 4, 6, 7, 10, and Ex. 1 (para. 1) of the Customer B NDAA.

106.    For example, pursuant to the Customer B NDAA, Infosys was provided limited access to TriZetto Confidential Information "solely to the extent reasonably necessary to enable [Infosys] to provide the" services listed in Exhibit 1 of the Customer B NDAA. By creating a

repository of 1 million test cases and advertising, marketing and utilizing those test cases thereafter, Infosys directly breached Section 1 of the Customer B NDAA by using its access to TriZetto's Confidential Information for a purpose not related to the services listed in Exhibit 1 of the Customer B NDAA.

107.    Further, Sections 4 and 6 of the Customer B NDAA gave certain Infosys employees narrow authorization to use TriZetto Confidential Information solely for purposes of providing services to Customer B. Infosys knowingly breached this narrow authorization, including by using TriZetto Confidential Information to create a repository of test cases and advertising, marketing and utilizing those test cases thereafter, and by allowing unauthorized employees to access TriZetto Confidential Information.

108.    Infosys also had an obligation under Section 7 of the Customer B NDAA not to use or disclose TriZetto Confidential Information or allow others to use or disclose TriZetto Confidential Information, except as expressly permitted under the Customer B NDAA. Using TriZetto Confidential Information to create, use, advertise and market a repository of test cases was not a permitted use under the Customer B NDAA.

109.    Allowing unauthorized Infosys employees who worked on competitive products to access TriZetto Confidential Information to create and use connector tools, like the QNXT Adapter, was not a permitted use under the Customer B NDAA. Moreover, under Sections 4 and 10 of the Customer B NDAAs, Infosys is prohibited from creating Modifications or to create an Interface for Proprietary Software, except as permitted therein. Infosys knowingly breached the Customer B NDAA by permitting members of the Helix team to access TriZetto Confidential Information provided in connection with the Customer B NDAA.

110.    Under Section 7(m) of the Customer B NDAA, Infosys had an obligation to provide TriZetto with "access to [its] facilities and business records as reasonably necessary for [TriZetto] to determine whether [Infosys is] in compliance with this NDAA." However, when requested to provide its business records, Infosys refused, thereby knowingly breaching the Customer B NDAA.

111.    As a result of Infosys's breach of the Customer B NDAA, TriZetto has suffered direct and consequential damages, and is entitled to recover compensatory damages, including opportunity costs, in an amount to be proven at trial.

112.    As a direct and proximate result of Infosys's wrongful conduct, TriZetto has been substantially and irreparably harmed in an amount not readily capable of determination. Unless restrained by this Court, Infosys will cause further irreparable injury to TriZetto.

113.    TriZetto is entitled to injunctive relief enjoining Infosys, its agents and employees, and all persons acting in concert or participation with it, from engaging in any further use of TriZetto's Confidential Information.

## COUNT V
### Breach of Contract (Customer C NDAA)

114.    TriZetto incorporates and re-alleges each and every allegation above as if fully set forth herein.

115.    The actions of Infosys, as set forth herein, constitute a breach of contract.

116.    TriZetto satisfied all relevant obligations under the Customer C NDAA it entered into with Infosys.

117.    Nonetheless, Infosys breached multiple provisions of the Customer C NDAA, including Sections 1, 4, 7, and 8 of the Customer C NDAA.

118.    For example, pursuant to Section 1 of the Customer C NDAA, Infosys was provided limited access to TriZetto Confidential Information for "use in the performance of certain services for [Customer C] that are described on Attachment 1." By creating a repository of 1 million test cases and advertising, marketing and utilizing those test cases thereafter, Infosys directly breached Section 1 of the Customer C NDAA by using its access to TriZetto's Confidential Information for a purpose not related to the services listed in Attachment 1 of the Customer C NDAA.

119.    Further, Sections 4 and 7 of the Customer C NDAA gave Infosys narrow authorization to use TriZetto Confidential Information solely for purposes of providing services to Customer C. Infosys knowingly breached this narrow authorization, including by using TriZetto Confidential Information to create a repository of test cases and advertising, marketing and utilizing those test cases thereafter, and by allowing unauthorized employees to access TriZetto Confidential Information.

120.    Infosys also had an obligation under Section 8 of the Customer C NDAA to not use or disclose TriZetto Confidential Information, or allow others to use or disclose TriZetto Confidential Information, except as expressly permitted under the Customer C NDAA. Using TriZetto Confidential Information to create, use, advertise and market a repository of test cases was not a permitted use under the Customer C NDAA.

121.    Infosys had an obligation under Section 8(m) of the Customer C NDAA to provide TriZetto with "access to [its] facilities and business records as reasonably necessary for [TriZetto] to determine whether [Infosys is] in compliance with this NDAA." However, when requested to provide its business records, Infosys refused, thereby knowingly breaching the Customer C NDAA.

122.    As a result of Infosys's breach of the Customer C NDAA, TriZetto has suffered direct and consequential damages, and is entitled to recover compensatory damages, including opportunity costs, in an amount to be proven at trial.

123.    As a direct and proximate result of Infosys's wrongful conduct, TriZetto has been substantially and irreparably harmed in an amount not readily capable of determination. Unless restrained by this Court, Infosys will cause further irreparable injury to TriZetto.

124.    TriZetto is entitled to injunctive relief enjoining Infosys, its agents and employees, and all persons acting in concert or participation with it, from engaging in any further use of TriZetto's Confidential Information.

## COUNT VII
### Breach of Contract (Customer D NDAA)

125.    TriZetto incorporates and re-alleges each and every allegation above as if fully set forth herein.

126.    The actions of Infosys, as set forth herein, constitute a breach of contract.

127.    TriZetto satisfied all relevant obligations under the Customer D NDAA it entered into with Infosys.

128.    Nonetheless, Infosys breached multiple provisions of the Customer D NDAA, including Sections 1, 4, and 7 of the Customer D NDAA.

129.    For example, pursuant to Section 1 of the Customer D NDAA, Infosys was provided limited access to TriZetto Confidential Information for "use in the performance of certain services for [Customer D] that are described on Attachment 1."  By creating a repository of 1 million test cases and advertising, marketing and utilizing those test cases thereafter, Infosys directly breached Section 1 of the Customer D NDAA by using its access to TriZetto's

Confidential Information for a purpose not related to the services listed in Attachment 1 of the Customer D NDAA.

130.    Further, Sections 4 and 7 of the Customer D NDAA gave Infosys narrow authorization to use TriZetto Confidential Information solely for purposes of providing services to Customer D. Infosys knowingly breached this narrow authorization, including by using TriZetto Confidential Information to create a repository of test cases and advertising, marketing and utilizing those test cases thereafter, and by allowing unauthorized employees to access TriZetto Confidential Information.

131.    Under Section 7 of the Customer D NDAA, Infosys also had an obligation not to use or disclose TriZetto Confidential Information, or allow others to use or disclose TriZetto Confidential Information, except as expressly permitted under the Customer D NDAA.  Using TriZetto Confidential Information to create, use, advertise and market a repository of test cases was not a permitted use under the Customer D NDAA.

132.    Under Section 7(m) of the Customer D NDAA, Infosys had an obligation to provide TriZetto with "access to [its] facilities and business records as reasonably necessary for [TriZetto] to determine whether [Infosys is] in compliance with this NDAA." However, when requested to provide its business records, Infosys refused, thereby knowingly breaching the Customer D NDAA.

133.    As a result of Infosys's breach of the Customer D NDAA, TriZetto has suffered direct and consequential damages, and is entitled to recover compensatory damages, including opportunity costs, in an amount to be proven at trial.

134.     As a direct and proximate result of Infosys's wrongful conduct, TriZetto has been substantially and irreparably harmed in an amount not readily capable of determination. Unless restrained by this Court, Infosys will cause further irreparable injury to TriZetto.

135.     TriZetto is entitled to injunctive relief enjoining Infosys, its agents and employees, and all persons acting in concert or participation with it, from engaging in any further use of TriZetto's Confidential Information.

## COUNT VIII
### Federal Unfair Competition under the Lanham Act (15. U.S.C. § 1125(a)(1))

136.     TriZetto incorporates and re-alleges each and every allegation above as if fully set forth herein.

137.     Infosys, by engaging in the acts described above, is and has been unlawfully competing with TriZetto.

138.     Infosys has engaged in unfair competition by unlawfully using TriZetto's Confidential Information and Trade Secret Information belonging to TriZetto to repackage TriZetto's Test Cases and advertise them as its own as part of its repository of 1 million test cases.

139.     TriZetto was the sole owner of the TriZetto Confidential Information and Trade Secret Information which was its propriety information.

140.     The TriZetto Confidential Information and Trade Secret Information were clearly designated in the NDAAs with Customers A-D.

141.     Infosys was granted a license to use the TriZetto Confidential Information and trade secrets pursuant to the NDAAs with Customers A-D. The NDAAs expressly limited the use and disclosure of the TriZetto Confidential Information and Trade Secret Information.

142.    Using its access to TriZetto's Confidential Information and Trade Secret Information to create an interface for connecting to QNXT.  Infosys called the interface the "QNXT Adapter." The name suggests that the interface was created by TriZetto, the creator of QNXT, which constitutes a false designation of origin, false or misleading description of fact, and/or false or misleading representation of fact which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or the origin, sponsorship, or approval of the use of TriZetto's Confidential Information and Trade Secret Information. For example, Infosys's QNXT Adapter has caused, and will continue to cause, reputational harm to TriZetto in the market, as evidenced by the fact that Customer B identified technical deficiencies with the QNXT Adaptor and requested TriZetto's assistance in resolving them.

143.    Using its access to TriZetto's Confidential Information and Trade Secret Information to create a repository of 1 million test cases to then compete with TriZetto by advertising the repository of test cases as its own constitutes a false designation of origin, false or misleading description of fact, and/or false or misleading representation of fact which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or the origin, sponsorship, or approval of the use of TriZetto's Confidential Information and Trade Secret Information. On information and belief, Infosys's deception has influenced, and is likely to continue to influence, customers to engage Infosys for testing services, to TriZetto's detriment.

144.    Infosys's acts are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1).

145.    Infosys's acts of unfair competition and misrepresentations have deceived and, unless restrained, will continue to deceive the public, including TriZetto's potential customers,

causing is causing damages to TriZetto in an amount to be determined at trial and other irreparable injury to the goodwill and reputation of TriZetto and its products and services.

## JURY DEMAND

TriZetto requests trial by jury as to all claims triable to a jury in this action.

## PRAYER FOR RELIEF

WHEREFORE, TriZetto respectfully requests that the Court:

146.    Enter judgment in favor of TriZetto and against Infosys with respect to each of the Counts above.

147.    Award a preliminary injunction, and/or permanent injunction prohibiting Infosys, and all persons or entities acting in concert or participation with Infosys, from using or possessing TriZetto's Trade Secret Information.

148.    Award a preliminary injunction, and/or a permanent injunction restraining and enjoining Infosys, and all persons or entities acting in concert or participation with Infosys, from altering, destroying, or disposing of any evidence, in any form, relating to this action, including without limitation emails and paper and electronic documents, including current or archived electronic logs, metadata, and directories.

149.    Declare valid and enforceable the provisions of the TriZetto's agreements with Infosys.

150.    Declare that Infosys, and all persons or entities acting in concert or participation with Infosys, have no rights or privileges to use TriZetto's Confidential Information or Trade Secret Information.

151.    Award TriZetto restitution in an amount to be determined at trial.

152.    Award TriZetto general and compensatory damages in an amount to be determined at trial, including without limitation, actual damages, damages for unjust enrichment, and damages measured as a reasonable royalty, as authorized by 18 U.S.C. §1836(b)(3)(B) and/or Texas law.

153.    Award TriZetto pre- and post-judgment interest.

154.    Award TriZetto exemplary damages, as authorized by 18 U.S.C. §1836(b)(3)(C) and/or Texas law, in an amount to be determined at trial.

155.    Award TriZetto attorneys' fees and costs.

156.    Award TriZetto any such other relief as the Court deems appropriate.

Dated: August 23, 2024

Dallas, Texas

GIBSON DUNN, & CRUTCHER LLP

*/s/ Betty Yang*
L. Kieran Kieckhefer (*pro hac vice forthcoming*)
Elizabeth McCloskey (p*ro hac vice forthcoming*)
Christina Myrold (*pro hac vice forthcoming*)
GIBSON, DUNN & CRUTCHER LLP
One Embarcadero Center, Suite 2600
San Francisco, CA 94111
TEL: 415.393.8200
KKieckhefer@gibsondunn.com
EMcCloskey@gibsondunn.com
CMyrold@gibsondunn.com

Betty Yang (State Bar No. 24088690)
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue Suite 2100
Dallas, TX 75201-2923 USA
TEL: 214.698.3226
byang@gibsondunn.com

Ahmed ElDessouki (*pro hac vice forthcoming)*
GIBSON, DUNN & CRUTCHER LLP
200 Park Ave.
New York, NY 10166
(212) 351-2345
aeldessouki@gibsondunn.com


*Attorneys for Plaintiff Cognizant TriZetto Software Group*