**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| COGNIZANT TRIZETTO SOFTWARE GROUP, INC, <br><br>                        Plaintiff, <br><br>    v. <br><br> INFOSYS LIMITED, <br><br>                        Defendant. | Case No. 3:24-cv-02158-X <br><br> The Honorable Brantley Starr |

**INFOSYS LIMITED'S MEMORANDUM IN SUPPORT OF ITS**
**MOTION TO DISMISS COGNIZANT'S COMPLAINT FOR FAILURE**
<u>**TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED**</u>

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................... iii

INTRODUCTION ..................................................................................................... 1

FACTUAL BACKGROUND ..................................................................................... 2

I.   QNXT and Facets are Medical Claims Processing Software Developed Decades Ago ................................................................................................................... 2

II.  Infosys Provides Software and Technology Services ....................................... 3

III. Cognizant Began Requiring Infosys to Sign NDAAs in 2018 ......................... 4

IV.  Cognizant's Claims Against Infosys ................................................................ 4

ARGUMENT ............................................................................................................ 6

I.   Cognizant Fails to Adequately Plead and Identify its Purported Trade Secrets. .............. 6

     A.   A Plaintiff Must Identify Supposed Trade Secrets with Reasonable Specificity ... 7

     B.   Cognizant Fails to Specify Information Entitled to Trade Secret Protection ....... 10

     C.   Cognizant Fails to Plead Reasonable Measures Were Taken to Prevent Disclosure ................................................................................ 13

II.  Cognizant's Claims as to the Business Assurance Store are Time-Barred. .................... 15

     A.   Cognizant's Claims Are Premised Solely on a Business Assurance Store Pamphlet that Cognizant Found on the Infosys Website ................................... 15

     B.   Under the Discovery Rule, Cognizant's Claims Accrued When It Could Have Discovered the Business Assurance Store Pamphlet With Reasonable Diligence ..................................................................... 16

     C.   Cognizant's Claims Accrued When the Pamphlet Was Posted to the Website ...................................................................................... 17

     D.   Cognizant Alleges the Business Assurance Store Pamphlet Was Publicly Available by 2020, Requiring Dismissal of Counts I, II, III and V .................... 19

     E.   Because Cognizant Fails to Plausibly Allege the Pamphlet Was Posted After August 2020, Counts IV and VIII Also Should Be Dismissed as Time-Barred ................................................................................ 19

     F.   Count VII is Barred Because NDAA D Post-Dates the Alleged Breach ............. 21

III.    Cognizant Fails to State a Plausible Claim Under the Lanham Act. ............................. 21

    A.    Cognizant Does Not Allege Any False Statement............................................... 22

    B.    Cognizant Does Not Plead Likelihood of Confusion.......................................... 23

CONCLUSION ...................................................................................................................... 25

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Academy of Allergy & Asthma in Primary Care v. Quest Diagnostics, Inc.*,
    998 F.3d 190 (5th Cir. 2021) ...................................................................... 16, 17

*Agency Solutions.Com, LLC v. TriZetto Grp., Inc.*,
    819 F. Supp. 2d 1001 (E.D. Cal. 2011) ............................................................ 12

*Am. Biocarbon, LLC v. Keating*,
    No. 20-259, 2020 WL 7264459 (M.D. La. Dec. 10, 2020) ................................... 7

*Amaplat Mauritius Ltd. v. Zimbabwe Mining Dev. Corp.*,
    663 F. Supp. 3d 11 (D.D.C. 2023) ................................................................... 13

*Amstar Corp. v. Domino's Pizza, Inc.*,
    615 F.2d 252 (5th Cir. 1980) .......................................................................... 25

*Baker v. DeShong*,
    90 F. Supp. 3d 659 (N.D. Tex. 2014), *aff'd sub nom. Off. of Med. & Sci. Just.,*
    *Inc. v. DeShong*, 596 F. App'x 328 (5th Cir. 2015) .......................................... 25

*Beavers v. Metro. Life Ins. Co.*,
    566 F.3d 436 (5th Cir. 2009) ..................................................................... 16, 17

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) .............................................................................. 6, 19, 21

*Blue Bell Bio-Med. v. Cin-Bad, Inc.*,
    864 F.2d 1253 (5th Cir. 1989) ..................................................................... 23, 24

*CAE Integrated, LLC v. Moov Techs., Inc.*,
    44 F.4th 257 (5th Cir. 2022) ........................................................................ 6, 10

*City & Cnty. of Denver v. Bd. of Cnty. Comm'r of Adams Cnty.*,
    543 P.3d 371 (Colo. 2024) .............................................................................. 16

*Clark v. Thompson*,
    850 F. App'x 203 (5th Cir. 2021) .................................................................... 20

*Clearline Techs. Ltd. v. Cooper B-Line, Inc.*,
    No. 11-1420, 2012 WL 43366 (S.D. Tex. Jan. 9, 2012) ....................................... 7

*Computer Assocs. Int'l, Inc. v. Altai, Inc.*,
    918 S.W.2d 453 (Tex. 1996) ........................................................................... 17

*Computer Sci. Corp. v. Tata Consulting Servs. Ltd.*,
   No. 19-970, 2023 WL 361870 (N.D. Tex. Jan. 21, 2023) .................................................. 9

*Cox v. Bank of Am., N.A.*,
   No. 16-2624, 2017 WL 1622043 (S.D. Tex. May 2, 2017) .................................................. 5

*Decurtis LLC v. Carnival Corp.*,
   No. 20-22945, 2021 WL 1968327 (S.D. Fla. Jan. 6, 2021).................................................. 12

*Do It Best Corp. v. Passport Software, Inc.*,
   No. 01-7674, 2005 WL 743083 (N.D. Ill. 2005).................................................................. 9

*Dougherty v. Steve Hart Restoration & Race Preparation, Ltd.*,
   No. 19-1924, 2021 WL 5912174 (S.D. Tex. Nov. 12, 2021), *aff'd*, No. 21-
   20663, 2022 WL 4130771 (5th Cir. Sept. 12, 2022) ........................................................ 17

*Elsevier Inc. v. Doctor Evidence, LLC*,
   No. 17-5540, 2018 WL 557906 (S.D.N.Y. Jan. 23, 2018).......................................... 7, 9, 10

*Fire Prevention Techs. v. Fire Retardant Coatings of Tex., LLC*,
   No. 13-942, 2015 WL 11120870 (N.D. Tex. Jan. 13, 2015).............................................. 25

*Forsyth v. Residential Credit Sols., Inc.*,
   No. 10-379, 2010 WL 11601164 (W.D. Tex. Oct. 13, 2010).............................................. 22

*Fox Sports Net North, LLC v. Minn. Twins P'ship*,
   319 F.3d 329 (8th Cir. 2003) ............................................................................................. 6

*GlobeRanger Corp. v. Software AG U.S. of Am. Inc.*,
   836 F.3d 477 (5th Cir. 2016) ............................................................................................. 9

*Greater Houston Transp. Co. v. Uber Techs., Inc.*,
   No. 14-941, 2015 WL 1034254 (S.D. Tex. Mar. 10, 2015).............................................. 23

*Hayward v. Chase Home Fin., LLC*,
   No. 10-2463, 2011 WL 2881298 (N.D. Tex. July 18, 2011)............................................. 22

*IDX Sys. Corp. v. Epic Sys. Corp.*,
   285 F.3d 581 (7th Cir. 2002) .................................................................................... 8, 10, 12

*IQ Prods. Co. v. Pennzoil Prods. Co.*,
   305 F.3d 368 (5th Cir. 2002) ............................................................................................. 22

*Irons v. City of Dallas*,
   No. 11-1894, 2012 WL 1986585 (N.D. Tex. Apr. 4, 2012)............................................... 20

*Jim S. Adler, P.C. v. McNeil Consultants, L.L.C.*,
   10 F. 4th 422 (5th Cir. 2021) ........................................................................................... 23

*Jobscience, Inc. v. CVPartners, Inc.*,
  No. 13-4519, 2014 WL 852477 (N.D. Cal. Feb. 28, 2014)...................................................... 7

*King v. Ames*,
  179 F.3d 370 (5th Cir. 1999) ........................................................................................ 23

*L-3 Commc'ns Corp. v. Jaxon Eng'g & Maint., Inc.*,
  No. 10-02868, 2011 WL 10858409 (D. Colo. Oct. 12, 2011)................................................ 7

*McClafin v. Sanofi-Aventis U.S. LLC*,
  No. 23-01366, 2024 WL 1538012 (D. Colo. Apr. 9, 2024)...................................... 16, 18, 19

*McLin v. Twenty-First Judicial Dist.*,
  614 F. Supp. 3d 278 (M.D. La. 2022) ............................................................................ 19

*Mednet Solutions, Inc. v. Jacobson*,
  No. 20-2502, 2021 WL 6931589 (D. Minn. Sept. 16, 2021)................................................ 8

*NBCUniversal Media, LLC v. Superior Ct.*,
  225 Cal. App. 4th 1222 (Cal. Ct. App. 2014) ............................................................ 17, 18

*NEXT Payment Solutions, Inc. v. CLEAResult Consulting, Inc.*,
  No. 17-8829, 2020 WL 2836778 (N.D. Ill. May 31, 2020) .................................................. 8

*Nova Chems, Inc. v. Sekisui Plastics Co., Ltd.*,
  579 F.3d 319 (3d Cir. 2009) ......................................................................................... 14

*Peel v. cPaperless, LLC*,
  No. 23-02417, 2024 WL 1119411 (S.D. Tex. Mar. 14, 2024) ............................................ 17

*Perenco Nigeria Ltd. v. Ashland Inc.*,
  242 F.3d 299 (5th Cir. 2001) ........................................................................................ 21

*Pie Dev., L.L.C. v. Pie Ins. Holdings, Inc.*,
  No. 21-60593, 2023 WL 2707184 (5th Cir. 2023) ........................................................... 14

*Pizza Hut, Inc. v. Papa John's Int'l, Inc.*,
  227 F.3d 489 (5th Cir. 2000) ............................................................................. 22, 23, 24

*Priester v. Long Beach Mortg. Co.*,
  No. 10-641, 2011 WL 6116491 (E.D. Tex. Oct. 13, 2011).................................................. 18

*Rhine v. Deaton*,
  459 F. App'x 421 (5th Cir. 2012) ................................................................................... 18

*Ruckelshaus v. Monsanto Co.*,
  467 U.S. 986 (1984)...................................................................................................... 14

*Scott Fetzer Co. v. House of Vacuums Inc.*,
    381 F.3d 477 (5th Cir. 2004) ............................................................... 23, 24

*Southland Secs. Corp. v. INSpire Ins. Solutions*,
    365 F.3d 353 (5th Cir. 2004) .................................................................... 6

*Springboards to Educ., Inc. v. McAllen Indep. Sch. Dist.*,
    62 F.4th 174 (5th Cir. 2023) ............................................................... 23, 24

*StoneEagle Servs., Inc. v. Valentine*,
    No. 12-1687, 2013 WL 9554563 (N.D. Tex. June 5, 2013) ............................ 7, 12

*Storage Tech. Corp. v. Custom Hardware Eng'g & Consulting, Inc.*,
    421 F.3d 1307 (Fed. Cir. 2005) .............................................................. 7, 14

*Syntel Sterling Best Shores Mauritius Ltd. v. The TriZetto Grp., Inc.*,
    68 F. 4th 792 (2d Cir. 2023) ......................................................... 3, 7, 12, 13

*Syntel Sterling Best Shores Mauritius Ltd. v. TriZetto Grp.*,
    No. 15-211, 2020 WL 1442915 (S.D.N.Y. Jan. 27, 2020) ............................ 13, 14

*Tinker, Inc. v. Poteet*,
    No. 14-2878, 2017 WL 4351304 (N.D. Tex. Sept. 30, 2017) ............................ 17

*Tomlinson v. Goldman, Sachs & Co.*,
    682 F. Supp. 2d 845 (N.D. Ill. 2009) ......................................................... 21

*TriZetto Grp., Inc. v. eHealth Partners, Inc.*,
    No. 08-162, 2009 WL 10673486 (D. Ariz. Jan. 22, 2009) ............................. 2, 3

*Tu Nguyen v. Duy Tu Hoang*,
    318 F. Supp. 3d 983 (S.D. Tex. 2018) ....................................................... 19

*U.S. v. Dow Chemical Co.*,
    343 F.3d 325 (5th Cir. 2003) ................................................................. 20

*UrthTech LLC v. GOJO Indus., Inc.*,
    No. 22-6727, 2023 WL 4640995 (S.D.N.Y. July 20, 2023) ............................... 14

*Vee Bar, Ltd. v. N. Nat. Gas Co.*,
    No. 16-15, 2016 WL 4006131 (W.D. Tex. July 25, 2016) ................................ 18

*WeInfuse, LLC v. InfuseFlow, LLC*,
    No. 20-1050, 2021 WL 1165132 (N.D. Tex. Mar. 26, 2021) ........................... 9, 10

*Willard v. Humana Health Plan of Texas Inc.*,
    336 F.3d 375 (5th Cir. 2003) ................................................................. 20

**Statutes**

15 U.S.C. § 1125(a)(1)...................................................................................... 22, 23

18 U.S.C. § 1836(d)................................................................................................ 16

18 U.S.C. § 1839(3)............................................................................................. 6, 14

Cal. Civ. Proc. Code § 337................................................................................... 16

Colo. Rev. Stat. § 13-80-101(1)........................................................................... 16

Tex. Civ. Prac. & Rem. Code § 16.010(a)........................................................... 16

Tex. Civ. Prac. & Rem. Code § 134A.002(6).................................................... 6, 14

## INTRODUCTION

Cognizant claims to have filed its Complaint for relief "promptly" after "detecting" that Infosys was misappropriating trade secret information about Cognizant's so-called "groundbreaking . . . best in class software products." Compl. ¶¶ 2, 59. In reality, almost everything about this case is old. The Facets and QNXT software discussed in the Complaint were developed in the 1990s and 2000s. And the webpage describing the "Infosys Business Assurance Store" that allegedly alerted Cognizant to Infosys's purported misappropriation was posted publicly in 2018.

There is one thing new referenced in the Complaint—Infosys's Helix product. The entry of fresh competition appears to be the real reason Cognizant is using stale allegations as a crutch for its dated products. In addition to being old, the allegations in the Complaint are impermissibly vague and overreaching. Most of them can and should be dismissed.

First, Cognizant fails to adequately plead in Counts I and II the existence of trade secrets or identify its purported secrets with any specificity. To the extent there remain any actual trade secrets related to its legacy software, which has been used by tens of thousands of people over decades, Cognizant does not identify them. It instead claims *everything* associated with the products—down to each page of software-related "documentation" and every "tool" used in their development—are trade secrets. But Federal Rule 8 demands more: it requires non-conclusory identification of the specific trade secrets at issue and plausible allegations that they qualify as trade secrets. Counts I and II should be dismissed.

Second, Cognizant's own allegations, and the document on which they rely, require dismissal of Count III in its entirety and foreclose relief under other counts to the extent they are premised on the test cases referenced in the Business Assurance Store brochure. Cognizant alleges the pamphlet was posted to Infosys's website "in or around 2020." Even if taken at face value, this

allegation would make most of the Business Assurance Store claims untimely under the applicable statutes of limitation. But the document on which Cognizant's allegations are premised, which this Court is entitled to consider under the incorporation by reference doctrine, shows that the pamphlet was public in *2018*—more than five years before Cognizant filed its claims.

<u>Finally</u>, Cognizant's Lanham Act claim (Count VIII)[1] rests on bare-bones assertions parroting the statute, requiring dismissal. Its conclusory statements are refuted by facts in the Complaint that show Infosys made no false statements and customers are not likely to be confused.

## FACTUAL BACKGROUND

### I.    QNXT and Facets are Medical Claims Processing Software Developed Decades Ago.

QNXT is "a medical billing software package" developed by a company called Quality Care Solutions, Inc. ("QCSI"). *TriZetto Grp., Inc. v. eHealth Partners, Inc.*, No. 08-162, 2009 WL 10673486, at *1 (D. Ariz. Jan. 22, 2009) (Ex. 6).[2] TriZetto acquired QCSI, and with it QNXT, in 2007. *Id.*; *see also* Ex. 7. "TriZetto also operates a consulting unit that provides clients with implementation support and other services." Compl. ¶ 15. When a customer licenses the QNXT software from TriZetto, "the services associated with the program [may] be provided in one of several ways: either TriZetto would provide them, TriZetto would arrange for one of its Certified Service Partners ('CSPs') . . . to provide them as a subcontractor, or the customer would select, on its own, from a list of CSPs." *TriZetto Grp.*, 2009 WL 10673486, at *1. In short, TriZetto regularly

---

[1] The Complaint has no Count VI. For ease of the Court's reference, although Count VIII is the seventh count in the complaint, Infosys will refer to it as labeled—as Count VIII.

[2] Because the Complaint provides limited background on the relevant products and parties, this section includes background information from court orders, documents filed by TriZetto in other legal proceedings, and other judicially noticeable materials. Exhibits 1-18 are included in the concurrently filed Appendix and are either subject to judicial notice or properly considered by the Court under the incorporation by reference doctrine as explained in Infosys's Request for Judicial Notice and Consideration of Documents Central to Cognizant's Claims ("RJN").

grants third-party service providers access to QNXT. *See* Compl. ¶¶ 15, 29; Ex. 8 (*TriZetto Grp., Inc. v. eHealth Partners, Inc.*, No. 08-162, ECF No. 1, ¶ 17 (D. Ariz. Jan. 25, 2008) (Complaint alleging third party access to service TriZetto's customers).

Facets has been around for three decades.[3] TriZetto acquired it from Erisco in 2000. Ex. 4. It is software that "automates and manages common healthcare administrative tasks such as claim processing, claim adjudicating, and billing." *Syntel Sterling Best Shores Mauritius Ltd. v. The TriZetto Grp., Inc.*, 68 F. 4th 792, 796-97 (2d Cir. 2023) (Ex. 10). Facets is licensed to "insurance companies to manage services for over 170 million people . . . ." *Syntel*, 68 F. 4th at 796.

As with QNXT, Facets clients may hire TriZetto for "customization and implementation" services or retain another firm to service the software. *Id.* at 796-97. "Depending on the terms of TriZetto's contract with each customer, a third-party provider can either (1) freely access TriZetto's materials through the customer or (2) enter into a separate contract directly with TriZetto. . . to gain access to TriZetto's materials for purposes of servicing the customer." *Id.* at n.2. "In each case, the service provider is allowed to use TriZetto's guides, manuals, and other Facets materials for free." *Id.*

In 2014, Cognizant acquired QNXT and Facets by acquiring TriZetto. Compl. ¶¶ 11, 13.

## II.    Infosys Provides Software and Technology Services.

Infosys provides software solutions and services, such as consulting, engineering, application development, maintenance, and systems integration. Compl. ¶ 3; Ex. 12. Its U.S. operations are headquartered in Richardson, Texas. Compl. ¶ 8. Infosys competes with Cognizant in both the software development and licensing space, including customization services. *See, e.g.*,

---

[3] The Facets trademark has been used with software for both Medicare/Medicaid and private health care plan administration since at least 1993. *See* Ex. 11, Complaint, *TriZetto Grp., Inc. v. Farmaco-Logica, B.V.*, No. 13-cv-105, ECF No. 1-1, ¶ 8 (D.D.C. Aug. 30, 2012).

*id.* ¶¶ 42, 50. Among Infosys's software is Helix, "a Platform-Powered, AI-First, People-Centric suite that allows healthcare data to be analyzed, customized and democratized for different users in the ecosystem such as payers, providers, members and governments." Ex. 12; *see* Compl. ¶ 42.

## III. Cognizant Began Requiring Infosys to Sign NDAAs in 2018.

In April 2018, Cognizant began requiring Infosys to sign NDAAs to continue accessing QNXT and Facets to perform testing services for certain mutual clients. *See* Compl. ¶¶ 35-38; Exs. 1-4. While Cognizant alleges that it *currently* "requires . . . customers and vendors to sign NDAAs" and takes other steps to protect its alleged trade secrets "from public disclosure" (Compl. ¶¶ 27-29), it pleads no facts whatsoever about the treatment of its products (which it claims are trade secrets in their entirety) during the prior decades, including when they were owned by others.

## IV. Cognizant's Claims Against Infosys.

Cognizant filed the Complaint on August 23, 2024. Its claims fall into three categories:

<u>Business Assurance Store (Counts I-V, VII-VIII)</u>. Cognizant alleges it found a pamphlet on the Infosys website describing an "Infosys Business Assurance Store" as "a knowledge-based solution" including "a broad base of 1 million test cases with deep insights into over 15 domains, technologies, products and packages that enhance testing efficiency." Compl. ¶ 51 (partially reproducing pamphlet); *id.* ¶¶ 57, 58, 60 (alleging TriZetto "discovered" the Business Assurance Store pamphlet on the Infosys website). According to Cognizant, the brochure indicates the Business Assurance Store was "inclusive of over 15 products/packages like VisionPLUS, GPP, Calypso, Murex, Actimize (AML), ETRM, Facets, SAP modules, Oracle EBIS, SFDC, Manhattan WMS, etc." *Id.* ¶ 51. From this single webpage, Cognizant allegedly concluded Infosys "would not have been able to develop" the Business Assurance Store "without improper access to and use of TriZetto's Confidential Information and Trade Secrets Information." *Id.* ¶¶ 52, 54. Though described in only broad and vague terms, Cognizant's theory appears to be that the Facets software

and Facets test cases are the "Confidential Information and Trade Secrets Information" that Infosys allegedly must have used in creating the Business Assurance Store. *See id.* ¶¶ 50, 52, 54.

Cognizant alleges on "information and belief" that "Infosys posted the advertisement for the 'Infosys Business Assurance Store' in or around 2020." *Id.* ¶ 56. In reality, the pamphlet was posted to the Infosys website in 2018, as evident from the footer of the document itself (Ex. 5; *infra* p. 20),[4] and confirmed by press releases and other public statements. Exs. 13, 14.[5]

QNXT Adaptor (Counts I, II, IV, VIII). Infosys offers a Helix software solution "that allows healthcare data to be analyzed, customized and democratized for different users in the ecosystem such as payers, providers, members and governments." *Supra* pp. 3-4. At the request of Client B, a customer of Infosys and Cognizant, Infosys created a "QNXT Adaptor" as an interface so data used in claims processing could move between the client's Helix and QNXT platforms. Compl. ¶ 42. The Adaptor is permitted by the Client B NDAA, which authorizes Infosys to

███████████████████████████████████████████████████

███████████████████████████████████ Ex. 2 at Ex. 1. Yet Cognizant alleges Infosys "improperly exceeded its authorized access to TriZetto's Confidential Information and Trade Secret Information in the development of the QNXT Adaptor." Compl. ¶ 46. It fails to allege what supposed trade secrets Infosys accessed in creating the Adaptor or explain how a contract allowing

---

[4] The Complaint omits the footer. *See* Compl. ¶ 51. Infosys submits the document in full and asks the Court to consider it under the incorporation by reference doctrine. *See* RJN (*citing*, *e.g.*, *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)); *Cox v. Bank of Am., N.A.*, No. 16-2624, 2017 WL 1622043, at *2 (S.D. Tex. May 2, 2017) (documents subject to the incorporation by reference doctrine may "aid the court" in providing "context" and "correctly construing" quotations or excerpts in the complaint, and, where the "documents . . . contradict the allegations in the complaint, the documents control") (internal citations omitted).

[5] *See* RJN (citing cases in which courts took judicial notice of press releases and social media posts for the purpose of establishing that information was in the public domain).

Infosys to ███████████████████ for a shared client violates the NDAA for that client.

 Audit Request (Counts IV, V, VII). Cognizant alleges Infosys breached provisions in NDAAs B, C, and D authorizing Cognizant to access "reasonably necessary" records with "reasonable prior written notice." Compl. ¶ 63; Ex. 2 ¶ 7(m); Ex. 3 ¶ 8(m); Ex. 4 ¶ 8(m). Cognizant is wrong—Cognizant's grossly overbroad document demands were not "reasonably necessary" or on "reasonable prior written notice," and in any event, Infosys offered to provide information (Ex. 16)—but Infosys does not challenge the audit request claims under Rule 12(b)(6).

## ARGUMENT

 A plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This requires "more than a sheer possibility that the defendant has acted unlawfully," *id.* at 556, and courts "will not 'strain to find inferences favorable to the plaintiffs.'" *Southland Secs. Corp. v. INSpire Ins. Solutions*, 365 F.3d 353, 361 (5th Cir. 2004). In short, if the factual allegations "do not permit the court to infer more than the mere possibility of misconduct," then "the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief,'" and it is subject to dismissal. *Twombly*, 550 U.S. at 679.

## I. Cognizant Fails to Adequately Plead and Identify its Purported Trade Secrets.

 A prerequisite to pleading a claim for trade secret misappropriation is the existence of a trade secret. *See CAE Integrated, LLC v. Moov Techs., Inc.*, 44 F.4th 257, 262 (5th Cir. 2022). Cognizant must (i) identify "information which derives independent economic value from being not generally known or readily ascertainable through proper means" and (ii) plead that "reasonable measures" have been taken "to keep such information secret." 18 U.S.C. § 1839(3); Tex. Civ. Prac. & Rem. Code § 134A.002(6); *see also Fox Sports Net North, LLC v. Minn. Twins P'ship*, 319 F.3d 329, 335-36 (8th Cir. 2003) ("obsolete information cannot form the basis for a trade secret claim");

*Storage Tech. Corp. v. Custom Hardware Eng'g & Consulting, Inc.*, 421 F.3d 1307, 1319 (Fed. Cir. 2005) (protection unavailable "for information that is not actually secret"). Failure to plead that the information at issue is a trade secret is grounds for dismissal under Rule 12(b)(6). *See, e.g.*, *Clearline Techs. Ltd. v. Cooper B-Line, Inc.*, No. 11-1420, 2012 WL 43366, at *11 (S.D. Tex. Jan. 9, 2012) (declining to infer trade secret status "merely from the existence of a proprietary information agreement"); *Am. Biocarbon, LLC v. Keating*, No. 20-259, 2020 WL 7264459, at *4-5 (M.D. La. Dec. 10, 2020) (dismissing claim describing secrets "in broad, categorical terms"); *Elsevier Inc. v. Doctor Evidence, LLC*, No. 17-5540, 2018 WL 557906, at *4 (S.D.N.Y. Jan. 23, 2018) (plaintiff "must put forth specific allegations as to the [trade secret] owned and its value").

## A.    A Plaintiff Must Identify Supposed Trade Secrets with Reasonable Specificity.

Under the DTSA, plaintiffs must identify "a purported trade secret with sufficient specificity." *Syntel*, 68 F.4th at 800. Courts also require state law claims to "identify, with reasonable particularity, the alleged trade secrets at issue." *StoneEagle Servs., Inc. v. Valentine*, No. 12-1687, 2013 WL 9554563, at *2 (N.D. Tex. June 5, 2013) (collecting cases).

The reasons for the specificity requirement are manifest, including avoiding "mere 'fishing expeditions'" that allow plaintiffs to "mold their causes of action around the discovery that they receive." *Id.* (quoting *DeRubeis v. Witten Techs., Inc.*, 244 F.R.D. 676, 680 (N.D. Ga. 2007)); *see also Jobscience, Inc. v. CVPartners, Inc.*, No. 13-4519, 2014 WL 852477, at *5 (N.D. Cal. Feb. 28, 2014) ("[I]t is easy to allege theft of trade secrets with vagueness, then take discovery into the defendants' files, and then cleverly specify whatever happens to be there as having been trade secrets stolen from plaintiff."). Concerns about a plaintiff using discovery as a fishing expedition are further heightened when claims are made against a competitor, as here (Compl. ¶¶ 47, 55), and the plaintiff can use discovery to force "access to trade secret information [of its competitor] that it would otherwise be illegal for the plaintiff to misappropriate." *L-3 Commc'ns Corp. v. Jaxon*

*Eng'g & Maint., Inc.*, No. 10-02868, 2011 WL 10858409, at *1 (D. Colo. Oct. 12, 2011).

Trade secret specificity requirements protect against implausible allegations based on obsolete information, fishing expeditions, and potential harm to competition. But the need for such a requirement is particularly acute in the context of technology claims, where use of buzzwords and industry jargon can create an aura of sophistication where none exists. And more so here, where the claims are against a direct competitor and involve 30-plus year-old software. Thus, courts in the context of alleged misappropriation involving software require a plaintiff to "provide details such as source code and the specific designs, methods, and processes that *underlie* the public functionality, . . . separat[ing] the secrets from the non-secrets, specify[ing] what was stolen, and describ[ing] what the trade secrets *are*, not what they *do*." *Mednet Solutions, Inc. v. Jacobson*, No. 20-2502, 2021 WL 6931589, at *2-3 (D. Minn. Sept. 16, 2021) (cleaned up); *see also NEXT Payment Solutions, Inc. v. CLEAResult Consulting, Inc.*, No. 17-8829, 2020 WL 2836778, at *13-14 (N.D. Ill. May 31, 2020) (insufficient to describe "what each module *does*," instead of "the underlying, secret methods of accomplishing those functions"). It is not enough to merely "describe the software" (even in 43 pages of detail); even if certain aspects of software (*e.g.*, portions of source code or unique algorithms) might be trade secrets, others, "such as the appearance of data-entry screens" or other parts of the software "any user or passer-by sees" certainly are not. *IDX Sys. Corp. v. Epic Sys. Corp.*, 285 F.3d 581, 583-84 (7th Cir. 2002). The plaintiff bears the burden of "separat[ing] the trade secrets from the other information that goes into any software package" and articulating "[w]hich aspects are known to the trade, and which are not." *Id.* ("not plausible" that "all information in or about [a party's] software is a trade secret").

This Court has experience with the specificity requirement. In a case alleging that Tata Consulting Services improperly accessed, copied, and modified CSC source code, the Court found

that CSC "sufficiently" showed its "source code" and "confidential documentation describing the operation of its Vantage and Cyberlife" software contained trade secrets by identifying "five categories of functionality within Vantage and Cyberlife that Tata [had] specifically targeted to develop [the] BaNCS platform: calculations; business rules; data structures; correspondence; and interfaces," and "provid[ing] 116 examples of the trade secrets at issue." *Computer Sci. Corp. v. Tata Consulting Servs. Ltd.*, No. 19-970, 2023 WL 361870, at *3 (N.D. Tex. Jan. 21, 2023) (Starr, J.); *see also, e.g.*, *Do It Best Corp. v. Passport Software, Inc.*, No. 01-7674, 2005 WL 743083, at *12-13 (N.D. Ill. 2005) (plaintiff sufficiently identified its alleged trade secrets by "identify[ing] specific lines of code" and 28 "specific software features for which it claims protection"); *GlobeRanger Corp. v. Software AG U.S. of Am. Inc.*, 836 F.3d 477, 492 (5th Cir. 2016) (jury reasonably found that radio frequency identification software included trade secrets based on explanation of "how GlobeRanger's 'filtering' technology was unique and its ability to filter large amounts of information in real time added value compared to traditional inventory management systems" and testimony about the value of its source code).

In contrast, courts dismiss claims where a plaintiff does nothing more than contend that "'every aspect' of the 'Software architecture' behind the protected login is a trade secret—its functionalities, user interface and display and design, interworkings of various components and modules, logic flows, databases, and schema." *WeInfuse, LLC v. InfuseFlow, LLC*, No. 20-1050, 2021 WL 1165132, at *3 (N.D. Tex. Mar. 26, 2021). For instance, while the plaintiff in *WeInfuse* identified numerous "features and functionalities" of its software product, it failed to "point to specificities that convey the unique capabilities" or "special characteristics" that set the features and functionalities apart from information "generally known within the industry or readily ascertainable through proper means," requiring dismissal. *Id.* at *3-4. Likewise, in *Elsevier*, the

court held that a list of nine "general categories" of "trade secret information" related to the plaintiff's software—such as "data configuration protocols and methods," "process to assess the quality of evidence and how to execute it," "analytics, analytics tools and analytics programming," and "database field names, parameters and database schema"—did not "give rise to a plausible allegation of a trade secret's existence" because the plaintiff did not "elucidate how those 'methods,' 'processes,' and 'interpretations' function." 2018 WL 557906, at *6. Indeed, "[i]f that were not the case," the court explained, "any claimant could survive a motion to dismiss a trade secrets claim with conclusory statements that simply restate the elements of a trade secret." *Id.*

**B.    Cognizant Fails to Specify Information Entitled to Trade Secret Protection.**

Like the plaintiff in *WeInfuse*, Cognizant fails to "point to specificities" or "special characteristics" of its products. 2021 WL 1165132, at *3. Cognizant acknowledges every user can "ascertain the full functionality of Facets and QNXT." Compl. ¶ 14; *see IDX*, 285 F.3d at 583-84. And it concedes that "Confidential Information . . . does not arise to the level of legally protectable trade secrets." Compl. ¶ 16; *see CAE*, 44 F.4th at 262. Yet, throughout the Complaint, Cognizant lumps together its allegations about trade secrets and confidential information, failing to distinguish between the two. *See, e.g.*, Compl. ¶¶ 40-47 (alleging misappropriation of "Confidential Information and Trade Secrets" in creation of QNXT Adaptor); *id.* ¶¶ 50-55 (alleging misappropriation of "Confidential Information and Trade Secrets" in connection with Business Assurance Store). Then, in purportedly identifying its "Trade Secret Information," Cognizant treats "all information in or about [at least two types of] software [as] a trade secret," including *every* piece of "documentation" and every "tool" used in its development, without any attempt to "separate the trade secrets from the other information that goes into any software package" or to identify "[w]hich aspects are known to the trade, and which are not." *IDX*, 285 F.3d 583-84; *see also WeInfuse*, 2021 WL 1165132, at *3. Cognizant alleges its trade secrets include:

- "TriZetto's proprietary software, including Facets and QNXT, and the workflows and functionality implemented by the proprietary software (the 'Proprietary Software')";

- "source materials relating to the Proprietary Software, including the source code, technical documentation, product release notes, link libraries, and development toolkits ('Source Materials')";

- "test cases for testing the Proprietary Software ('Test Cases')";

- "interfaces, connectors, and adaptors for the Proprietary Software, as well as tools for creating such interfaces, connectors, and adaptors ('Interfaces')";

- "the database, database schema, file structures, data dictionaries, and other information relating to the storage of data by the Proprietary Software ('Data Model')";

- "the terms of the contracts between TriZetto and its clients, including the pricing for TriZetto products and services ('Commercial Secrets')"; and

- "documentation related to each item previously listed."

Compl. ¶ 17.[6] The Court and Infosys are left to wonder which information Cognizant alleges is confidential and which information is supposedly a trade secret. Further, there is surely information in these excessively broad and vague descriptions that is not in any way proprietary, resulting in a conflated mess of public information, supposedly confidential information, and supposedly trade secret information regarding products that have been around and used by thousands for decades. This kitchen sink pleading approach is inappropriate generally, and particularly faulty in a case brought against a direct competitor based on decades-old products.[7]

_____

[6] Cognizant never pleads that Infosys accessed or misappropriated source code or other "Source Materials" or "Commercial Secrets" such as customer contracts or pricing information. The most Cognizant alleges is that Infosys "exceeded its authorized access to" software, "Test Cases," "Interfaces," and "Data Model," Compl. ¶¶ 40-45, 50, 52, and that Infosys allegedly retained "Test Cases for Facets" and "interfaces for QNXT." *Id.* ¶¶ 31, 34, 50-51.

[7] A proper specification is also necessary because Cognizant is claiming misappropriation for Infosys constructing an adaptor Infosys was authorized by NDAA B to construct. Ex. 2 at Ex. 1 ████████████████████████████████████████████████████████████████ If Cognizant is claiming its authorization was limited in some manner, it must identify specifically what information was allegedly used improperly, rather than the broad and vague approach it has taken.

Cognizant must do more than generically describe what its software does, *see IDX*, 285 F.3d at 583, or characterize its features as "proprietary." *Compare* Compl. ¶¶ 17-18 *with Decurtis LLC v. Carnival Corp.*, No. 20-22945, 2021 WL 1968327, at *6-7 (S.D. Fla. Jan. 6, 2021) (dismissing claims describing secrets as "Project Trident software, including software embodying proprietary and secret methods of operation that are not apparent to end users," such as "software architecture," "technical specifications and data interface designs," "databases and database structures," "testing plans and results," "interface layer designs, data models, database structures, and data interface designs and adapters"); *see also StoneEagle*, 2013 WL 9554563 at *4 (examples of "what will not satisfy the requirement" include: "a laundry list of general categories of alleged 'trade secret' information; lengthy, descriptive, but non-specific, paragraphs; generally listing software, data processing algorithms, and processes that a plaintiff developed, owned, or licensed; disclosures that only reveal the end results of, or functions performed by, the claimed trade secrets"). Nor can Cognizant satisfy its burden with buzzwords like "workflow," "architecture," and "test case," none of which reflect proprietary information beyond "that would be known to any other software company" in the market. *Agency Solutions.Com, LLC v. TriZetto Grp., Inc.*, 819 F. Supp. 2d 1001, 1020 (E.D. Cal. 2011); *accord Decurtis*, 2021 WL 1968327, at *6-7.

Cognizant tries to slip its inadequate trade secret description past the Court with the misleading assertion that a jury found its "test cases" are trade secrets, which it characterizes as binding. Compl. ¶ 21. But that is wrong. In *Syntel*, because of a litigant's repeated misconduct, the court instructed the jury it must *assume* the test cases at issue *in that case* were trade secrets that had been misappropriated. *Syntel*, 68 F.4th at 798.[8] The instruction was due to the litigant's failure

---

[8] *Syntel*, No. 15-211, ECF No. 276 (S.D.N.Y.) (Ex. 17) (ordering "Syntel is precluded from offering or presenting any evidence that it did not misappropriate and unlawfully copy [Cognizant's] FACETS test cases"); *id.*, ECF No. 947 at 367:19-25 (Ex. 18) ("I instruct you [the

to comply with discovery orders—not a factual finding to be applied in other cases. *Cf. Amaplat Mauritius Ltd. v. Zimbabwe Mining Dev. Corp.*, 663 F. Supp. 3d 11, 23-24 (D.D.C. 2023) (preclusion inappropriate where prior finding based partially on adverse-inference sanctions).

Also important is the fact that, long before the *Syntel* case reached trial, that court required TriZetto to identify the *specific* test cases allegedly misappropriated and containing trade secrets:

> [TriZetto] cannot present a moving target when it comes to the alleged trade secrets at issue. Without knowing the precise test cases and automation scripts at issue, the Court cannot assess whether they constitute test trade secrets and whether they were misappropriated.

*Syntel Sterling Best Shores Mauritius Ltd. v. TriZetto Grp.*, No. 15-211, 2020 WL 1442915, at *8 (S.D.N.Y. Jan. 27, 2020), *report and recommendation adopted*, 2020 WL 1435645 (S.D.N.Y. Mar. 24, 2020) (limiting TriZetto's claims to "test cases and automation scripts specifically identified").

The requirement that Cognizant similarly identify the test cases (and other purported trade secrets) it claims to be trade secrets is underscored by the *Syntel* court's finding that there were genuine questions as to whether TriZetto's Facets test cases and automation scripts "were kept secret" and/or were too "generic, and thus easily duplicated," "stale," or "of limited economic value." *See id.* at *9-10. Here, not only does Cognizant allege the very same categories of information containing purported trade secrets—"automation scripts, tools, source code, technical documentation, manuals, instructions or guides . . . work flows, functionalities, and Test Cases"— but it also includes "Confidential Information" it admits does not "rise to the level of legally protectable trade secrets," reinforcing the need for specificity. Compl. ¶¶ 16, 25.

## C. Cognizant Fails to Plead Reasonable Measures Were Taken to Prevent Disclosure.

Cognizant also fails to plead the existence of trade secrets because it does not allege

---

jury] that Syntel misappropriated [Cognizant's] test cases and automation script trade secrets.").

"reasonable measures" were taken to keep its software and associated material "secret" through its decades-long existence and use by thousands. *See* 18 U.S.C. § 1839(3); Tex. Civ. Prac. & Rem. Code § 134A.002(6). That must be true not only *now*, but throughout the information's existence. *See, e.g.*, *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1002 (1984) (trade secret status can be "extinguished" through disclosure); *Nova Chems, Inc. v. Sekisui Plastics Co., Ltd.*, 579 F.3d 319, 327-28 (3d Cir. 2009) (information can lose trade secrets status through licensing). Once "lost" through disclosure, trade secret status cannot be regained by subsequent protective measures. *Storage Tech.*, 421 F.3d at 1319.

Cognizant claims every aspect of products that have been licensed for decades are trade secrets. Yet Cognizant only alleges basic measures it is *currently* taking to "protect th[e] information from public disclosure." Compl. ¶¶ 27-29. That is grossly inadequate. It says nothing about what practices were taken by QCSI, Erisco, and/or TriZetto when they owned the supposedly trade secret information on which Cognizant bases its claims. *Cf. Syntel*, 2020 WL 1442915, at *9 (noting genuine questions as to whether TriZetto took reasonable measures to keep its test cases and automation scripts secret). For example, while the existence of confidentiality agreements is not sufficient, *UrthTech LLC v. GOJO Indus., Inc.*, No. 22-6727, 2023 WL 4640995, at *12 (S.D.N.Y. July 20, 2023), despite the decades-long period during which Infosys was regularly accessing QNXT and Facets (and related materials) for shared clients, Cognizant does not allege Infosys was subject to any confidentiality agreement before 2018. Compl. ¶¶ 35-38.[9] This failure to plead "reasonable steps" were taken to protect the supposed trade secrets throughout their lifetime provides an additional, independent basis for dismissal. *See Pie Dev., L.L.C. v. Pie Ins.*

---

[9] Cognizant alludes to additional NDAAs (Compl. ¶ 32) but states zero factual allegations. Infosys is not aware of seven NDAAs.

*Holdings, Inc.*, No. 21-60593, 2023 WL 2707184, at *2 (5th Cir. 2023).

**II.    Cognizant's Claims as to the Business Assurance Store are Time-Barred.**

Each of Cognizant's seven claims is premised in full (Count III) or in part (the remainder) on a pamphlet from Infosys's website describing a Business Assurance Store. *See id.* ¶¶ 72, 85, 96-98, 106-108, 118-120, 129-131, 138, 143. Though characterized as different causes of action, all have limitations periods that bar Cognizant's stale claims. Per Cognizant's own allegations, it knew or should have known of the Business Assurance Store by 2020, *at the latest*, and the document on which it relies reflects an even earlier date. Claims premised on the Business Assurance Store should be dismissed as time-barred.

**A.    Cognizant's Claims Are Premised Solely on a Business Assurance Store Pamphlet that Cognizant Found on the Infosys Website.**

Cognizant contends that a "Business Assurance Store" pamphlet on the Infosys website is *ipso facto* evidence that Infosys misappropriated its trade secrets and breached the parties' NDAAs. *See id.* ¶¶ 51, 54 (alleging Infosys "*could not* have built the massive repository [referenced in the brochure] *without* the improper use of TriZetto Confidential Information"); *id.* ¶ 34 (alleging "Infosys necessarily and intentionally exceeded the limits of access permitted in the NDAAs [in] creat[ing] its own repository of Test Cases"). Indeed, the brochure partially reproduced in the Complaint is the *sole* basis for Cognizant's allegation that Infosys misappropriated or misused Facets test cases in connection with its Business Assurance Store. According to Cognizant, the alleged misappropriation and contractual breaches occurred when Infosys created the Business Assurance Store "repository," and advertising it on the Infosys website constituted unfair competition. *See, e.g.*, *id.*; *id.* ¶ 138.

**B.      Under the Discovery Rule, Cognizant's Claims Accrued When It Could Have Discovered the Business Assurance Store Pamphlet With Reasonable Diligence.**

<u>Counts I and II (DTSA and TUTSA)</u>: A trade secret misappropriation claim must be filed within three years of the date that the alleged misappropriation "is discovered or by the exercise of reasonable diligence should have been discovered." 18 U.S.C. § 1836(d); Tex. Civ. Prac. & Rem. Code § 16.010(a). In other words, it is not enough that a plaintiff allegedly "did not actually know" of "the wrongful act [allegedly] causing injury"; the discovery rule "will not preserve their claim unless they also *could not have* discovered their misappropriation injury using ordinary diligence." *Academy of Allergy & Asthma in Primary Care v. Quest Diagnostics, Inc.*, 998 F.3d 190, 199 (5th Cir. 2021) (emphasis added). This "high" "bar" is met only when "the nature of the injury incurred is inherently undiscoverable," *id.*—a requirement intended to "prevent both stale and fraudulent claims from being asserted in contravention of the policies behind statutes of limitations." *Beavers v. Metro. Life Ins. Co.*, 566 F.3d 436, 439 (5th Cir. 2009).

<u>Counts III and V (Breach of Contract Under Colorado Law)</u>:  NDAA A and NDAA C are governed by Colorado law. Ex. 1 ¶ 10; Ex. 3  ¶ 13. Under Colorado law, breach of contract claims are subject to a three-year statute of limitations. Colo. Rev. Stat. § 13-80-101(1). A claim accrues "when one party to a contract learns, or in the exercise of reasonable diligence should have learned, that another party has violated a term of that contract." *City & Cnty. of Denver v. Bd. of Cnty. Comm'r of Adams Cnty.*, 543 P.3d 371, 378 (Colo. 2024). "The requirement that a plaintiff use due diligence in discovering the relevant circumstances or event imposes an objective standard and does not reward denial or self-induced ignorance." *McClafin v. Sanofi-Aventis U.S. LLC*, No. 23-01366, 2024 WL 1538012, at *4 (D. Colo. Apr. 9, 2024).

<u>Count IV (Breach of Contract Under California Law)</u>:  NDAA B is governed by California law (Ex. 2 ¶ 12), which has a four-year statute of limitations for breach of written contract. Cal.

Civ. Proc. Code § 337. A claim accrues upon breach, with the discovery rule reserved only for claims involving fraud, misrepresentation, or breaches "committed in secret." *NBCUniversal Media, LLC v. Superior Ct.*, 225 Cal. App. 4th 1222, 1231, 1233 (Cal. Ct. App. 2014).

Count VII (Lanham Act):  Texas courts apply a four-year statute of limitations to Lanham Act claims, with a claim accruing when the plaintiff "discovers . . . or could have discovered" the alleged unfair competition "through reasonable diligence." *Tinker, Inc. v. Poteet*, No. 14-2878, 2017 WL 4351304, at *7 (N.D. Tex. Sept. 30, 2017).

### C.    Cognizant's Claims Accrued When the Pamphlet Was Posted to the Website.

At the motion to dismiss stage, a court evaluating the timeliness of a claim subject to the discovery rule "ask[s] whether the injury suffered by [the plaintiff], by its nature, [wa]s unlikely to be discovered within the prescribed limitations period despite due diligence." *Beavers*, 566 F.3d at 440-41 (affirming dismissal because "injury was not inherently undiscoverable" so "the discovery rule does not toll the statute of limitations"); *see also Quest*, 998 F.3d at 199.

Under Texas law, "[a]n injury is not inherently undiscoverable when it . . . could be discovered through the exercise of reasonable diligence." *Dougherty v. Steve Hart Restoration & Race Preparation, Ltd.*, No. 19-1924, 2021 WL 5912174, at *5 (S.D. Tex. Nov. 12, 2021), *aff'd*, No. 21-20663, 2022 WL 4130771 (5th Cir. Sept. 12, 2022).[10] That is necessarily true when "the harm complained of . . . ostensibly took place in broad daylight." *Peel v. cPaperless, LLC*, No. 23-02417, 2024 WL 1119411, at *5, n.14 (S.D. Tex. Mar. 14, 2024) (knowledge is imputed where

---

[10] The Texas Supreme Court has held that the standard for "reasonable diligence" in monitoring for evidence of misappropriation by a competitor in the "software industry" is particularly high. *See Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 457 (Tex. 1996) (because "[v]igilance in the area of trade secrets is required," particularly among competitors in the "computer software industry," misappropriation is generally "not a cause of action that is inherently undiscoverable").

information is "readily accessible and publicly available" such as on "public websites"). Simply put, when "records are publicly available, a cause of action related to those records is not inherently undiscoverable." *Priester v. Long Beach Mortg. Co.*, No. 10-641, 2011 WL 6116491, at *4 (E.D. Tex. Oct. 13, 2011), *report and recommendation adopted*, 2011 WL 6116481 (E.D. Tex. Dec. 8, 2011); *accord Rhine v. Deaton*, 459 F. App'x 421, 422 (5th Cir. 2012) (communications in newspaper publicly available thus discovery rule inapplicable); *Vee Bar, Ltd. v. N. Nat. Gas Co.*, No. 16-15, 2016 WL 4006131, at *4 (W.D. Tex. July 25, 2016) (discovery rule inapplicable because FERC filings could have been discovered "through the exercise of due diligence").

Colorado and California law are in accord. Under Colorado law, "[r]easonable diligence includes investigating facts that are 'readily ascertainable' from 'publicly available' information." *McClafin*, 2024 WL 1538012, at *5. Thus, the *McClafin* court dismissed a complaint as time-barred because "had plaintiff exercised reasonable diligence" she would have found the news articles cited in the complaint when published. *Id.* (*citing In re Taxotere (Docetaxel) Prod. Liab. Litig.*, 995 F.3d 384, 393 (5th Cir. 2021) (affirming dismissal of complaint as untimely)). Likewise, in California, "the discovery rule does not operate to delay accrual of a cause of action 'beyond the point at which [its] factual basis became accessible to plaintiff to the same degree as it was accessible to every other member of the public.'" *NBCUniversal Media*, 225 Cal. App. 4th at 1234-35 (claim time-barred where plaintiffs failed to show defendants "fraudulently concealed the broadcast from them, or that they lacked a meaningful ability to view it").

Here, not only does Cognizant allege Infosys "marketed" the "Business Assurance Store" to "prospective customers" on its public website (*see* Compl. ¶¶ 51, 55), Cognizant admits it found the Business Assurance Store pamphlet *by looking at the Infosys website*. *See id.* ¶¶ 57-58, 60. In other words, "by citing [it] in the [] Complaint," Cognizant has "admitted that reasonable diligence

would have uncovered" the pamphlet posted to the Infosys website years before. *McClafin*, 2024 WL 1538012, at *5 n.3; *accord Tu Nguyen v. Duy Tu Hoang*, 318 F. Supp. 3d 983, 1011-13 (S.D. Tex. 2018) (Facebook posts not "inherently undiscoverable" given plaintiff found them "when he decided to start searching"). Cognizant cannot plausibly contend the alleged misconduct was "concealed" or otherwise "undiscoverable" when it was on the public website of its competitor.

### D.    Cognizant Alleges the Business Assurance Store Pamphlet Was Publicly Available by 2020, Requiring Dismissal of Counts I, II, III and V.

Cognizant alleges "on information and belief," that Infosys began advertising the "Business Assurance Store" as a "repository . . . of 1 million test cases" on the public Infosys website "in or around 2020." Compl. ¶¶ 51, 56. Counts I, II, III, and V are each subject to a three-year statute of limitations. *Supra* p. 16. Cognizant filed this lawsuit on August 23, 2024. *See* ECF No. 1. Thus, even under the most charitable reading of Cognizant's allegation—that the pamphlet was posted to the Infosys website on December 31, 2020—Counts I, II, III, and V must be dismissed as untimely insofar as they are premised on the Business Assurance Store. Because the Business Assurance Store is the only basis for Cognizant's claim for breach of NDAA A (Compl. ¶¶ 95-98), Count III should be dismissed in its entirety.

### E.    Because Cognizant Fails to Plausibly Allege the Pamphlet Was Posted After August 2020, Counts IV and VIII Also Should Be Dismissed as Time-Barred.

The Court also should dismiss Counts IV and VIII, which are subject to a four-year statute of limitation, as untimely because Cognizant's "information and belief" allegation that Infosys's electronic pamphlet was posted "in or around 2020" is unsupported and implausible. Indeed, Cognizant's supposed "belief" is undermined by the very document on which it relies.

"As a rule, an 'information and belief' allegation cannot stand on its own; rather, it must be accompanied by sufficient detail to make the allegation 'plausible on its face.'" *McLin v. Twenty-First Judicial Dist.*, 614 F. Supp. 3d 278, 288 (M.D. La. 2022) (citing *Twombly*, 550 U.S.

at 551, 557).[11] Here, Cognizant "failed to provide *any factual basis*" for its purported belief, *see U.S. v. Dow Chemical Co.*, 343 F.3d 325, 329 (5th Cir. 2003), such as the source or reason(s) for its supposed belief. Because Cognizant fails to set forth a factual basis for its alleged belief that the pamphlet was posted on the Infosys website "in or around 2020," its assertion is not entitled to credence.

What is more, Cognizant's purported "belief" is undermined by the very document on which its claims rely. Although Cognizant conveniently omits it from the portion in the Complaint, the footer of the pamphlet clearly states, "External Document © 2018 Infosys Limited":



---

[11] *See also Clark v. Thompson*, 850 F. App'x 203, 209 (5th Cir. 2021) (absent "some factual basis" to support them, allegations on "information and belief" are mere "speculation"); *Irons v. City of Dallas*, No. 11-1894, 2012 WL 1986585, at *4 (N.D. Tex. Apr. 4, 2012) ("[w]ithout any facts to support" them, allegations "upon information and belief" "are no more than conclusory allegations" that are "not entitled to the assumption of truth"); *cf. Willard v. Humana Health Plan of Texas Inc.*, 336 F.3d 375, 385 (5th Cir. 2003) (pleading on "information and belief" "must not be mistaken for license to base claims . . . on speculation and conclusory assertions").

Ex. 5 at 2 (highlighting added and text enlarged); *cf. Tomlinson v. Goldman, Sachs & Co.*, 682 F. Supp. 2d 845, 846-48 & n. 2 (N.D. Ill. 2009) (taking judicial notice of news releases and articles that put plaintiffs "on inquiry notice of their claim" in granting motion to dismiss). In short, the Court should disregard Cognizant's vague and unsupported allegation, made "on information and belief," that the pamphlet was posted in 2020 in favor of the *actual* pamphlet, dated 2018. At the very least, Cognizant fails to plausibly allege that the pamphlet was posted after August 24, 2020, thus failing to state a timely claim under the Lanham Act or for breach of NDAA B.

### F.    Count VII is Barred Because NDAA D Post-Dates the Alleged Breach.

Cognizant asserts that Infosys also breached NDAA D "[b]y creating a repository of 1 million test cases and advertising, marketing and utilizing those test cases thereafter." Compl. ¶¶ 129-31. But NDAA D was not entered into until April 18, 2022 (*id.* ¶ 38)—years after Cognizant alleges that Infosys created and advertised the Business Assurance Store. *See id.* ¶ 56. Accordingly, Cognizant fails to plausibly allege that the creation or marketing of the Business Assurance Store breached NDAA D. *See Perenco Nigeria Ltd. v. Ashland Inc.*, 242 F.3d 299, 305 (5th Cir. 2001) (actions pre-dating a contract "cannot constitute a breach of that contract").

## III.    Cognizant Fails to State a Plausible Claim Under the Lanham Act.

A complaint must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. But that is all that Cognizant does for its Lanham Act claim: assert conclusory allegations parroting statutory language. Indeed, because it reproduces the statutory text in a disjunctive manner, it is not even clear what *type* of Lanham Act claim Cognizant is trying to pursue. *See* Compl. ¶¶ 142, 143 (alleging the term "QNXT Adaptor" and "creat[ing] a repository of 1 million test cases" "constitutes a false designation of origin, false or misleading description of fact, *and/or* false or misleading representation of fact which is likely to cause confusion, or to cause mistake, or to

deceive as to the affiliation, connection, or the origin, sponsorship, or approval . . . .") (emphasis added). Regardless, Cognizant fails to state a plausible claim under any of the prongs of 15 U.S.C. § 1125(a)(1).[12]

### A.    Cognizant Does Not Allege Any False Statement.

To state a claim for false advertising under the Lanham Act, Cognizant "must first demonstrate that the advertisement [at issue] was (1) literally false; or (2) likely to mislead and confuse consumers." *IQ Prods. Co. v. Pennzoil Prods. Co.*, 305 F.3d 368, 375 (5th Cir. 2002). Cognizant has done neither. The only statements Cognizant challenges are Infosys (1) calling its "interface the 'QNXT Adaptor'" (Compl. ¶ 142), and (2) "advertising [a] repository of test cases as its own," when it allegedly accessed TriZetto's Confidential and Trade Secret Information while "creat[ing]" the repository (*id*. ¶ 143). Neither statement is false. Indeed, Cognizant concedes both are true. The "QNXT Adaptor" is an adaptor for QNXT. *See id.* ¶ 42. Likewise, by Cognizant's own admission, Infosys did, in fact, create the Business Assurance Store repository of test cases. *See, e.g.*, *id.* ¶¶ 54, 143 (alleging Infosys is "utilizing, offering, selling, and distributing . . . the Test Cases that Infosys created"). Whether Cognizant's information was used to create the QNXT Adaptor or test cases in the repository is a separate question that has no bearing on the truth or falsity of the statements. Because Cognizant does not allege a statement that is literally false, it must plead that the challenged statements are "likely to mislead and confuse consumers." *Pizza Hut, Inc. v. Papa John's Int'l, Inc.*, 227 F.3d 489, 495 (5th Cir. 2000). Cognizant does not do so.

---

[12] If the Court denies Infosys's motion to dismiss the Lanham Act claim under Rule 12(b)(6), Infosys alternatively requests that the Court require Cognizant to replead its claim pursuant to Rule 12(e). *See, e.g.*, *Hayward v. Chase Home Fin., LLC*, No. 10-2463, 2011 WL 2881298, at *7 (N.D. Tex. July 18, 2011) (granting motion for more definite statement where the complaint "alleges statutory violations, but does not specify what sections of the statute were violated"); *Forsyth v. Residential Credit Sols., Inc.*, No. 10-379, 2010 WL 11601164, at *2 (W.D. Tex. Oct. 13, 2010) (ordering plaintiff to identify each statutory violation and detail facts as to each claim).

### B.  Cognizant Does Not Plead Likelihood of Confusion.

Cognizant cannot state a claim for unfair competition, false advertising, or false designation of origin because it does not plead a likelihood of confusion. *King v. Ames*, 179 F.3d 370, 373-74 (5th Cir. 1999) ("Likelihood of confusion is an "essential element" of a claim under 15 U.S.C. § 1125(a)(1)"). A Rule 12(b)(6) motion is properly granted "[w]here the factual allegations regarding consumer confusion are implausible." *Jim S. Adler, P.C. v. McNeil Consultants, L.L.C.*, 10 F. 4th 422, 428-29 (5th Cir. 2021); *see Greater Houston Transp. Co. v. Uber Techs., Inc.*, No. 14-941, 2015 WL 1034254, at *12 (S.D. Tex. Mar. 10, 2015) (allegation of how consumers would interpret "ridesharing" was implausible); *cf. Pizza Hut*, 227 F.3d at 503-04 (holding advertising was not false or misleading as a matter of law).

Pleading a likelihood of confusion requires facts that, if true, would establish "that confusion is not just possible, but probable." *Scott Fetzer Co. v. House of Vacuums Inc.*, 381 F.3d 477, 485 (5th Cir. 2004); *see also Blue Bell Bio-Med. v. Cin-Bad, Inc.*, 864 F.2d 1253, 1260 (5th Cir. 1989) (plaintiff "must show . . . that confusion is probable; a mere possibility that some consumers might [be confused] . . . is not sufficient"). Further, "when construing the allegedly false or misleading statement, . . . the statement must be viewed in light of the overall context in which it appears." *Pizza Hut*, 227 F.3d at 495 n.5; *accord Scott Fetzer*, 381 F.3d at 485 (emphasizing that "context" is "critical"). Here, while Cognizant alleges in conclusory fashion that "Infosys's acts . . . have deceived and, unless restrained, will continue to deceive the public. . . ." (Compl. ¶ 145), the Complaint's limited facts make clear that Infosys's clients are not at all likely to be confused.

"[P]rofessional and institutional purchasers," such as the hospitals and insurance companies alleged to be the purchasers of medical billing software and implementation services (*see* Compl. ¶ 12), "are virtually certain to be informed, deliberative buyers." *Springboards to Educ., Inc. v. McAllen Indep. Sch. Dist.*, 62 F.4th 174, 186 (5th Cir. 2023) ("Public school districts

searching for comprehensive literacy programs are a far cry from an individual consumer's grabbing an item off the shelf."). They are thus "unlikely to be led astray by passing similarities between services." *Id.*; *see also Blue Bell*, 864 F.2d at 1260 ("medical professionals" purchasing "a major piece of equipment . . . are likely to exercise a high degree of care," making it "unlikely that a facility might inadvertently pick up a brand they did not mean to purchase").

Here, Infosys created the QNXT Adaptor for Customer B, a Fortune 500 multi-state health care organization. Compl. ¶ 42; Ex. 2 (NDAA B). As is clear from its name, this "connector tool" was intended to extract patient data "from QNXT to be processed using Infosys's competing Helix platform." Compl. ¶ 42. When it contracted with Infosys to build the Adaptor, Customer B was well aware it was *Infosys*—not Cognizant—creating the Adaptor. It is not remotely plausible to allege that a sophisticated customer that hired Infosys to create an adaptor was confused into thinking it was hiring a different company. Cognizant's allegation that "Customer B identified technical deficiencies with the QNXT Adaptor and requested TriZetto's assistance in resolving them" (*id.* ¶ 142) does not suggest consumer confusion; it confirms the customer understood issues with the adaptor connecting products from two companies required collaboration among them.

Likewise, it is clear from the pamphlet—which must be viewed in its entirety, placing the passing reference to Facets in "context," *see Pizza Hut*, 227 F.3d at 495 n.5—that customers would not be confused that the "<u>Infosys</u> Business Assurance Store" was affiliated with Cognizant merely because it includes a reference to "test cases that are . . . [i]nclusive of over 15 products/packages like VisionPLUS, GPP, Calypso, Murex, Actimize (AML), ETRM, Facets, SAP modules, Oracle EBIS, SFDC, Manhattan WMS, etc." Compl. ¶ 51; Ex. 5 at 2 (emphasis added); *see Scott Fetzer*, 381 F.3d at 485-86 (no likelihood of confusion where mark was "fifth in a list of thirteen brand names and not especially prominent"); *Springboards*, 62 F.4th at 187 (no likelihood of confusion

24

where party "clearly and consistently connects its reading program" to its own name).

Finally, courts have declined to find a likelihood of confusion in the absence of allegations that the defendant intended to "derive a benefit from the reputation of the markholder." *Baker v. DeShong*, 90 F. Supp. 3d 659, 663 (N.D. Tex. 2014), *aff'd sub nom. Off. of Med. & Sci. Just., Inc. v. DeShong*, 596 F. App'x 328 (5th Cir. 2015). In *Baker*, the plaintiff brought a trademark claim[13] alleging the defendant's use of a domain name infringed on his own website. *Id.* at 662-63. Noting that "courts look to the defendant's intent to derive a benefit from the reputation of the markholder as an indication of a likelihood of confusion," the court found the plaintiff "allege[d] no such intent." *Id.* at 663. Instead, the defendant's alleged intent was to "harm [the plaintiff's] business," not to "piggyback off the goodwill" of the plaintiff's website, against which "[t]he Lanham Act simply does not protect." *Id.* The Court should reach the same conclusion here. Because Cognizant fails to allege that Infosys "intend[ed] to derive a benefit from [Cognizant's] reputation" in using the term QNXT Adaptor or advertising its Infosys Business Assurance Store, dismissal is required.

## CONCLUSION

Infosys respectfully requests that the Court (i) dismiss Counts I and II for failure to adequately plead the existence of trade secrets or identify the trade secrets allegedly at issue with sufficient specificity; (ii) dismiss all of Cognizant's claims as time-barred to the extent they are premised on the Business Assurance Store; and (iii) dismiss Cognizant's Lanham Act Claim for failure to state a plausible claim to relief or order Cognizant to provide a more definite statement.

---

[13] The elements of trademark infringement and false designation of origin claims are identical. *Fire Prevention Techs. v. Fire Retardant Coatings of Tex., LLC*, No. 13-942, 2015 WL 11120870, at *4 (N.D. Tex. Jan. 13, 2015); *Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252, 265 (5th Cir. 1980).

Dated:  October 22, 2024

Respectfully submitted,

JENNER & BLOCK LLP

By:  /s/ Brent Caslin
Brent Caslin (*pro hac vice*)
Kelly M. Morrison (*pro hac vice*)
515 S. Flower Street, Suite 3300
Los Angeles, CA 90071
Tel.: (213) 239-5100

Shoba Pillay (*pro hac vice*)
Paul B. Rietema (Bar. No. 24133324)
Laura E. Pelanek (*pro hac vice*)
Lindsey A. Lusk (*pro hac vice*)
353 N. Clark Street
Chicago, IL 60654
Tel.: (312) 222-9350

Attorneys for Defendant
Infosys Limited