**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| COGNIZANT TRIZETTO SOFTWARE GROUP, INC.,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>INFOSYS LIMITED,<br><br>　　　　　Defendant. | Case No. 3:24-cv-02158-X<br><br>The Honorable Brantley Starr |
| INFOSYS LIMITED,<br><br>　　　　　Counterclaim Plaintiff,<br><br>　v.<br><br>COGNIZANT TECHNOLOGY SOLUTIONS CORP. and COGNIZANT TRIZETTO SOFTWARE GROUP, INC.,<br><br>　　　　　Counterclaim Defendants. | |

**INFOSYS LIMITED'S MEMORANDUM IN SUPPORT OF ITS MOTION
(1) TO COMPEL PROPER TRADE SECRET IDENTIFICATION AND
(2) FOR PROTECTIVE ORDER SEQUENCING DISCOVERY
<u>DEPENDENT ON THE IDENTITY OF THE TRADE SECRETS AT ISSUE</u>**

## TABLE OF CONTENTS

INTRODUCTION.............................................................................................................. 1

BACKGROUND............................................................................................................... 2

I.      Cognizant's Software Products are Widely Used, But Stale. .......................... 2

II.     The Complaint Does Not Identify any Trade Secrets Misappropriated by Infosys. .......... 4

III.    Cognizant Refused to Identify the Supposed Trade Secrets in Connection with the Discovery Planning Conference or in its Initial Disclosures. .......................... 6

IV.     Cognizant Refuses to Properly Respond to Infosys's Interrogatory No. 1, Asking it to Identify the Trade Secrets Allegedly Misappropriated by Infosys............ 6

V.      Cognizant's Overbroad Discovery Seeks Sensitive Information About Infosys's Software and Services. .................................................................................... 8

VI.     Cognizant Refuses to Amend its Interrogatory No. 1 Response Before Infosys Responds to Cognizant's Written Discovery................................................... 10

ARGUMENT ................................................................................................................. 11

I.      Cognizant Should Be Compelled to Properly Identify the Particular Trade Secrets It Alleges Were Misappropriated by Infosys................................................. 11

A.      Cognizant Has Not Properly Identified the Trade Secrets Allegedly Misappropriated By Infosys........................................................................... 11

B.      Each Rationale for Appropriate Trade Secret Specification Is Present Here.................. 15

C.      The Improper Disclosure Will Negatively Impact the Case Beyond Discovery............. 20

II.     The Court Should Enter a Protective Order and Sequence Discovery That Is Dependent on the Identity of The Trade Secrets at Issue in This Case.......................... 20

CONCLUSION............................................................................................................... 22

CERTIFICATE OF CONFERENCE ............................................................................. 24

CERTIFICATE OF SERVICE ...................................................................................... 25

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Agency Solutions.Com, LLC v. TriZetto Grp., Inc.*,
  819 F. Supp. 2d 1001 (E.D. Cal. 2011)................................................................. 14

*AutoMed Technologies, Inc. v. Eller*,
  160 F. Supp. 2d 915 (N.D. Ill. 2001)................................................................. 21

*Coda Dev. s.r.o. v. Goodyear Tire & Rubber Co.*,
  667 F. Supp. 3d 590 (S.D. Ohio 2023)................................................................. 20

*Decurtis LLC v. Carnival Corp.*,
  No. 20-22945, 2021 WL 1968327 (S.D. Fla. Jan. 6, 2021)................................. 13

*DeRubeis v. Witten Techs., Inc.*,
  244 F.R.D. 676 (N.D. Ga. 2007)................................................................. 11, 20

*Elsevier Inc. v. Doctor Evidence, LLC*,
  No. 17-5540, 2018 WL 557906 (S.D.N.Y. Jan. 23, 2018)................................. 12

*Grubbs v. Winn Dixie Props., LLC*,
  No. 15-182, 2015 WL 3892555 (E.D. La. June 17, 2015)................................. 18

*IDX Sys. Corp. v. Epic Sys. Corp.*,
  285 F.3d 581 (7th Cir. 2002)................................................................. 12, 14

*Insulet Corp. v. EOFlow, Co.*,
  104 F.4th 873 (Fed. Cir. 2024)................................................................. 20

*Jobscience, Inc. v. CVPartners, Inc.*,
  No. 13-4519, 2014 WL 852477 (N.D. Cal. Feb. 28, 2014)................................. 15

*Kalencom Corp. v. Shulman*,
  No. 17-5453, 2018 WL 1806037 (E.D. La. Apr. 17, 2018)........................... 15, 22

*L-3 Commc'ns Corp. v. Jaxon Eng'g & Maint., Inc.*,
  No. 10-02868, 2011 WL 10858409 (D. Colo. Oct. 12, 2011)........................... 15

*Landis v. N. American Co.*,
  299 U.S. 248 (1936)................................................................. 21

*Lopez v. Don Herring Ltd.*,
  327 F.R.D. 567 (N.D. Tex. 2018)................................................................. 7

*Medidata Solutions, Inc. v. Veeva Sys., Inc.*,
No. 17-589, 2022 WL 585734 (S.D.N.Y. Feb. 25, 2022)...................................................20

*Powerweb Energy, Inc. v. Hubbell Lighting, Inc.*,
No. 12-220, 2012 WL 3113162 (D. Conn. July 31, 2012)................................................21

*SMH Enters., L.L.C. v. Krispy Krunchy Foods, L.L.C.*,
No. 20-2970, 2021 WL 4460522 (E.D. La. Sept. 29, 2021) ...................................7, 13, 18

*StoneEagle Servs., Inc. v. Valentine*, No. 12-1687, 2013 WL 9554563 (N.D. Tex.
June 5, 2013) ...............................................................................................................*passim*

*T2 Modus, LLC v. Williams-Arowolo*, No. 22-263, 2023 WL 6221429 (E.D. Tex.
Sept. 25, 2023) ....................................................................................................................22

*Torsh, Inc. v. Audi Enhancement, Inc.*,
No. 22-2862, 2023 WL 7688583 (E.D. La. Nov. 15, 2023)...................................7, 12, 13

*United Servs. Auto. Ass'n v. Mitek Sys., Inc.*,
289 F.R.D. 244 (W.D. Tex. 2013) ......................................................................................16

*UOP LLC v. Exterran Energy Solutions, L.P.*,
No. 21-2804, 2021 WL 8016712 (S.D. Tex. Sept. 28, 2021)................................12, 16, 21

*VeroBlue Farms USA Inc. v. Wulf*,
345 F.R.D. 406 (N.D. Tex. 2021) .........................................................................................7

*WeInfuse, LLC v. InfuseFlow, LLC*,
No. 20-1050, 2021 WL 1165132 (N.D. Tex. Mar. 26, 2021)......................................*passim*

*Zenimax Media, Inc. v. Oculus Vr, Inc.*,
No. 14-1849, 2015 WL 11120582 (N.D. Tex. Feb. 13, 2015) ............................................21

*Zunum Aero, Inc. v. Boeing Co.*,
No. 21-896, 2024 WL 3822780 (W.D. Wash. Aug. 14, 2024)...........................................20

**Statutes**

18 U.S.C. § 1839(3)...............................................................................................................17

Tex. Civ. Prac. & Rem. Code § 134A.002(6)........................................................................17

**Other Authorities**

Fed. R. Civ. P. 16(c)(2)(L)................................................................................................11, 21

Fed. R. Civ. P. 26(b)(1) ............................................................................................................10

Fed. R. Civ. P. 26(c)(1)(B)........................................................................................ 21

Fed. R. Civ. P. 26(d)(3) .......................................................................................... 11

Fed. R. Civ. P. 37(a) ............................................................................................... 11

## INTRODUCTION

Cognizant's alleged trade secrets in this case involve software it acquired over a decade ago, QNXT and Facets, which are legacy software applications used by many healthcare payors, including insurance companies. Cognizant's Complaint alleges that Infosys developed test cases and a software adaptor product using trade secrets related to QNXT and Facets, but Cognizant refuses to identify those purported trade secrets, including in response to Infosys's Interrogatory No. 1 asking it to do so. Cognizant instead insists that *every* aspect of both software applications and all "documentation" related to them are trade secrets misappropriated by Infosys.

Under no circumstances is every aspect of QNXT and Facets a trade secret. Countless data entry personnel, IT technicians, and software engineers have worked with those products. Information about them is publicly available on the Internet and from third parties. Infosys helped develop QNXT, before Cognizant acquired it, so Infosys surely did not misappropriate its own information from the software application it helped design. And Infosys worked on both products without restriction from NDAAs for years before Cognizant's current assertions of broad trade secret protection on those products. Even if some aspects of Facets and QNXT may arguably constitute a trade secret, what specifically that encompasses is currently unknown.

Despite repeated requests, Cognizant steadfastly refuses to disclose *what* trade secrets it alleges have been misappropriated. At the same time, Cognizant demands Infosys respond to broad discovery requests about its business operations and products despite Infosys not knowing the alleged trade secrets at issue. Numerous courts, including this one, have rejected Cognizant's strategy and instead require that "plaintiffs bringing claims of trade secret misappropriation to identify, with reasonable particularity, the alleged trade secrets at issue" before conducting discovery. *StoneEagle Servs., Inc. v. Valentine*, No. 12-1687, 2013 WL 9554563, at *2 (N.D. Tex.

1

June 5, 2013) (Horan, M.J.). Several reasons exist for this requirement, including: defining the proper scope of discovery; ensuring defendants have sufficient information about the accusations against them to "formulate and/or mount a defense;" and preventing plaintiffs from engaging in "fishing expeditions" and then "mold[ing] their causes of action around the discovery that they receive." *Id.* These concerns are heightened when, as here, the litigants are competitors. And they are particularly acute in this case, where Cognizant has admitted it is trying to do what this Court has held is unfair and improper: stating it will identify its supposed trade secrets only *after* it receives discovery from Infosys.

Cognizant should be required to identify, with reasonable particularity, the alleged trade secrets at issue before obtaining intrusive and competitively sensitive discovery from Infosys. It should not be allowed to fish for evidence and then mold its case based on what it sees in Infosys's files. And Infosys should not be required to engage in that overbroad, burdensome, and competitively harmful exercise without knowledge of the information necessary to assess relevance and proportionality. Infosys accordingly requests that the Court order Cognizant to properly identify the trade secrets it claims were misappropriated and sequence discovery under Rules 16 and 26, protecting Infosys from discovery that depends on those trade secrets until they are properly identified. The current case schedule allows adequate time for this orderly approach, and it is a fair and efficient way to advance the case.

## BACKGROUND

### I.    Cognizant's Software Products are Widely Used, But Stale.

Infosys and Cognizant each sell healthcare software solutions and services, such as consulting, engineering, application development and integration, to healthcare payors. Compl. ¶¶ 2, 3, 12, 15. Cognizant is a large player in the market, with hundreds of thousands of employees.

2

App'x 5 ¶ 15. It has acquired multiple major software platforms, including QNXT and Facets, and dominates the market. The history of Cognizant's acquisitions and dominant market position, as well as its anticompetitive conduct, are outlined in Infosys's counterclaim, ECF No. 46 (the "Counterclaim").

While Cognizant proclaims its healthcare payor products—QNXT and Facets—are "next-generation software systems" (Compl. ¶14), those applications have been used by many large healthcare payors, and a vast number of users, for decades. *Id.* ¶11. It should thus come as no surprise that substantial information about both products is widely available, including on the Internet.[1] Infosys personnel are also familiar with QNXT and Facets because they have for years provided IT services to companies using them. Counterclaim ¶ 49. Infosys has provided testing, integration, maintenance, development, and other services to clients using QNXT and Facets since the products entered the market. Even after Cognizant acquired the products, Infosys has—and continues to—provide these IT services to mutual customers that use QNXT or Facets, without NDAAs for much of that time. *Id.* Infosys's software engineers also have a firm understanding of QNXT because Infosys helped develop QNXT. *Id.* ¶ 31.[2]

It is against this back drop of publicly available detail regarding QNXT and Facets, product experience Infosys gained for years through its client service, and knowledge that Infosys has because it was part of the QNXT development team before Cognizant acquired it, that Cognizant

---

[1] *See, e.g.*, https://vimeo.com/459248715 (video showing and discussing QNXT application modules, including Benefit Plan, Contract Management, and Claim Finance Code); "Facets Overview and Navigation User Guide," available at https://www.slideshare.net/slideshow/facets-overview-and-navigation-user-guidepdf/255268208.

[2] Cognizant has in recent years demanded NDAAs (*see* Counterclaim ¶¶ 49–50), but it cannot go back in time and transform information Infosys freely received for years into protected trade secret information.

presented the Court with an allegation that all of that product information is trade secret information owned by Cognizant, and that Infosys misappropriated it.

## II.    The Complaint Does Not Identify any Trade Secrets Misappropriated by Infosys.

On its face, the Complaint contains two narrow, but vague, allegations of misappropriation. *First*, Cognizant alleges it found a pamphlet on the Infosys website describing an "Infosys Business Assurance Store" containing "a knowledge-based solution" of test cases for various applications, including QNXT and Facets. Compl. ¶¶ 51, 58, 60. From this single webpage, Cognizant opines that Infosys "would not have been able to develop" test cases in its Business Assurance Store "without improper access to and use of TriZetto's Confidential Information and Trade Secrets Information." *Id.* ¶¶ 52, 54.[3] The Complaint does not identify which or how many test cases were allegedly misappropriated, or even whether Infosys is being accused of copying Cognizant test cases or using other product information to create test cases. The allegation is nothing more than speculation that Infosys must have misappropriated something to be able to build test cases.

*Second*, Cognizant complains that Infosys developed an adaptor product for a mutual customer. The adaptor is an interface developed for and owned by the customer as part of Infosys's integration services, which connects two applications, allowing data used by the customer to move between software systems the customer uses for different parts of is claims process—Infosys's Helix and Cognizant's QNXT. Counterclaim ¶ 16. Infosys's NDAA with Cognizant expressly

---

[3] Cognizant's Complaint alleges "on information and belief" that the Business Assurance Store pamphlet was published on the Infosys website in 2020 (*id.* ¶ 56), despite the document being dated 2018 on its face (ECF No. 33-2 at 34). Cognizant omitted that part of the document when pasting it into the Complaint. *Compare id. with* Compl. ¶ 51. But even if posted in 2020, as Cognizant implausibly pleads, Cognizant's trade secret claims concerning the Business Assurance Store are time-barred under the three-year statutes of limitation, as explained in Infosys's pending Motion to Dismiss. *See* ECF No. 33 ("MTD") at 15–21; ECF No. 43 ("MTD Reply") at 7–10.

permitted it to create the adaptor for their mutual customer. ECF No. 35-3 at Ex. 1 (authorizing Infosys to "develop[] interfaces to connect [QNXT] with other [client] software applications, and associated testing of the system integration activities"). Cognizant theorizes that "Infosys could not have developed [the adaptor] without access to TriZetto's Confidential Information and Trade Secret Information." Compl. ¶ 43. But it again fails to allege specific information Infosys supposedly misappropriated. *See, e.g., id.* ¶¶ 43–45.

The superficial narrowness of the two allegations is negated by the breadth and vagueness with which Cognizant defines its supposed "Confidential Information and Trade Secret Information." Cognizant pleads the "Trade Secret Information" in this case "includes," but apparently is not limited to:

> proprietary software, including Facets® and QNXT™, and the workflows and functionality implemented by the proprietary software (the "Proprietary Software"); source materials relating to the Proprietary Software, including the source code, technical documentation, product release notes, link libraries, and development toolkits ("Source Materials"); test cases for testing the Proprietary Software ("Test Cases"); interfaces, connectors, and adaptors for the Proprietary Software, as well as tools for creating such interfaces, connectors, and adaptors ("Interfaces"); the database, database schema, file structures, data dictionaries, and other information relating to the storage of data by the Proprietary Software ("Data Model"); and the terms of the contracts between TriZetto and its clients, including the pricing for TriZetto products and services ("Commercial Secrets"), as well as documentation related to each item previously listed.

*Id.* ¶ 17. The Complaint further defines "Confidential Information" as the portions of these same categories of "information that does not rise to the level of legally protectable trade secrets." *Id.* ¶ 16. In short, Cognizant's Complaint surmises that Infosys must have used some of Cognizant's "Confidential Information and Trade Secret Information" in compiling test cases and developing

an adaptor, but it fails to identify *what* that information might be, or even whether the information "rise[s] to the level of legally protectable trade secrets."[4]

## III.    Cognizant Refused to Identify the Supposed Trade Secrets in Connection with the Discovery Planning Conference or in its Initial Disclosures.

In October 2024, Infosys raised the need for a proper trade secret identification at the initial discovery planning conference. App'x 2–3 ¶ 3; App'x 11. Cognizant asserted the trade secret description in the Complaint was sufficient and insisted discovery move forward. App'x 2–3 ¶ 3. Cognizant's initial disclosures were also devoid of information, identifying only a single person likely to have discoverable information about its claims. App'x 52. Cognizant omitted numerous categories of relevant documents (including documents identifying the trade secrets at issue) and provided nothing on damages. App'x 52–53. After Infosys identified deficiencies, Cognizant served amended disclosures that only added four names. App'x 59–63.

## IV.    Cognizant Refuses to Properly Respond to Infosys's Interrogatory No. 1, Asking it to Identify the Trade Secrets Allegedly Misappropriated by Infosys.

Interrogatory No. 1 asked Cognizant to "identify with specificity each trade secret you contend Infosys Limited misappropriated." App'x 72. In response, Cognizant asserted pages of boilerplate objections, which it incorporated into its response to Interrogatory No. 1 (and every other interrogatory). App'x 68–72. As this Court has repeatedly made clear, however, serving such "unsupported and boilerplate or stock objections does not preserve or accomplish anything other

---

[4] This shotgun approach to pleading a trade secret claim is improper and Infosys thus moved to dismiss Cognizant's trade secret claims. MTD at 6–13; MTD Reply at 1–5; *see, e.g.*, *WeInfuse, LLC v. InfuseFlow, LLC*, No. 20-1050, 2021 WL 1165132, at *3 (N.D. Tex. Mar. 26, 2021) (dismissing complaint because plaintiff failed to "point to specificities" or "special characteristics" distinguishing software from information "generally known within the industry or reasonably accessible through proper means").

than waiver and subjecting the responding party to sanctions."[5] Cognizant's general objections should be overruled.

Cognizant also objected that the interrogatory is "premature because . . . Infosys has not yet produced any documents or information in this litigation" and calls for premature expert opinions and legal conclusions. App'x 72–73. These objections are faulty. As another court explained, "knowledge of the existence and identity of [Cognizant's] own trade secrets should rest entirely with [Cognizant]" and thus does not require discovery from Infosys. *SMH Enters., L.L.C. v. Krispy Krunchy Foods, L.L.C.*, No. 20-2970, 2021 WL 4460522, at *8 (E.D. La. Sept. 29, 2021); *see also Torsh, Inc. v. Audi Enhancement, Inc.*, No. 22-2862, 2023 WL 7688583, at *8–9 (E.D. La. Nov. 15, 2023) (overruling "prematurity objection" to trade secret identification interrogatory).

Finally, "subject to and without waiver of" its long list of baseless objections,[6] Cognizant repeated and cited the broad definition of its alleged trade secrets in its Complaint:

> TriZetto's Trade Secret Information includes the Facets® and QNXT™ software applications, and the workflows and functionality implemented by the proprietary software (the "Proprietary Software"); source materials relating to the Proprietary Software, including the source code, technical documentation, product release notes, link libraries, and development toolkits ("Source Materials"); test cases for testing the Proprietary Software ("Test Cases"); interfaces, connectors and adaptors for the Proprietary Software, as well as tools for creating such interfaces, connectors, and adaptors ("Interfaces"); the database, database schema, file structures, data dictionaries, and other information relating to the storage of data by the Proprietary Software ("Data Model"); and the terms of the contracts between TriZetto and its clients, including the pricing for TriZetto products and services

---

[5] *Lopez v. Don Herring Ltd.*, 327 F.R.D. 567, 581, 591-92 (N.D. Tex. 2018) ("counsel . . . must 'cease and desist from raising these free-standing and purportedly universally applicable 'general objections,'" which are "inconsistent with the Federal Rules"); *accord VeroBlue Farms USA Inc. v. Wulf*, 345 F.R.D. 406, 419-20 (N.D. Tex. 2021) ("General or boilerplate objections are invalid").

[6] Each of Cognizant's responses to Infosys's Interrogatories and RFPs includes this improper language. App'x 72–142; *VeroBlue*, 345 F.R.D. at 419-20 ("responding or answering 'subject to' and 'without waiving' objections is improper, as the undersigned and many other judges in this circuit and elsewhere have made clear for years") (cleaned up).

("Commercial Secrets"), as well as documentation related to each item previously listed. *See* Compl. ¶¶ 17–26.

App'x 73. Cognizant repeated this inadequate trade secret definition despite Infosys having repeatedly raised the trade secret specification issue, including in the Motion to Dismiss briefing (MTD at 6–13; MTD Reply at 1–5) and the discovery planning conference (*supra* p. 6).[7]

## V.    Cognizant's Overbroad Discovery Seeks Sensitive Information About Infosys's Software and Services.

Cognizant's strategy to withhold any meaningful trade secret description continued in its written discovery to Infosys. Relying on the same all-inclusive definition in the Complaint (*see* App'x 22, 33), Cognizant demanded Infosys identify:

- "each individual affiliated with Infosys . . . that has or had access to any TriZetto Confidential Information, . . . the date that he or she was provided with access, the reason that individual was provided with access, the duration of such access . . . ."

- "For each individual identified . . . (i) the individual's role with Infosys, (ii) the type of TriZetto Confidential Information the employee had access to . . . ."

- "all central network locations . . . containing TriZetto Confidential Information . . . ."

App'x 27–28. Cognizant similarly demanded that Infosys produce, for example:

- "All TriZetto Confidential Information in Your possession." (RFP No. 1).

- "All communications attaching, including, forwarding, referencing, or discussing TriZetto Confidential Information." (RFP No. 2).

---

[7] Infosys's Interrogatory Nos. 2, 3, and 9 also seek information about Cognizant's purported trade secrets, including persons with access to them, measures taken to maintain their confidentiality, and ownership of the claimed trade secrets. App'x 73–74, 82. Interrogatory Nos. 4-6 seek information about Cognizant's allegations of misappropriation and breach (App'x 77–79). Virtually all of Cognizant's discovery responses, including to Infosys's RFPs, are deficient (*see generally id.*; App'x 94–142) and have been the subject of meet-and-confer discussions. In this motion, Infosys moves on Interrogatory No. 1 alone because identification of the alleged trade secrets at issue is a first step in defining the parameters of virtually all discovery on Cognizant's trade secret claims. Infosys is hopeful the other disputes will be easier to resolve once the parties and Court understand the scope of Cognizant's trade secret allegations.

- "Documents sufficient to identify each individual . . . provided with access to TriZetto Confidential Information." (RFP No. 3).

- "All non-privileged documents and communications related to TriZetto's claims or allegations in this Action." (RFP No. 32).

- "All documents concerning any contention by You that the TriZetto Trade Secret Information was known or reasonably ascertainable . . . ." (RFP No. 33).

App'x 38, 43. However, because Cognizant refuses to identify the purported trade secrets (or non-trade secret "Confidential Information") with reasonable particularity, it is virtually impossible for Infosys to determine (1) what information and documents may or may not be responsive to Cognizant's requests, and (2) whether the requested information and documents are relevant or proportional to Cognizant's actual claims. *See* Fed. R. Civ. P. 26(b)(1).

The same is true for Cognizant's broad discovery designed to obtain sensitive information about Infosys's products, customer relationships, and business operations, which include:

- "all source code, all technical documentation, all user manuals, instructions, and guides relating to the QNXT Adaptor." (RFP No. 13).

- "All documents concerning the creation and development of the QNXT Adaptor. . ." (RFP No. 14).

- "All communications concerning the QNXT Adaptor . . . ." (RFP No. 17).

- "All documents concerning the data model for the QNXT Adaptor" and "the data model for any database components of Infosys's Helix platform that is designed to receive data from the QNXT Adaptor . . . ." (RFP Nos. 18, 19).

- "All technical and user-facing documentation concerning any Infosys APIs suitable for invoking TriZetto APIs." (RFP No. 20).

- "all revenue and profits related to any customer engagements where Infosys considered using, or used, the QNXT adaptor." (RFP No. 22).

- "All documents related to any agreements between You and any third party concerning the provision of services, tools, or software related to any TriZetto software application, including the documents concerning the negotiations of such agreements and provisions of services under such agreements." (RFP No. 30).

9

App'x 198, 200, 203–208, 222.

## VI.    Cognizant Refuses to Amend its Interrogatory No. 1 Response Before Infosys Responds to Cognizant's Written Discovery.

Upon receiving Cognizant's improper response to Interrogatory No. 1—and in light of the unfairness created by Cognizant's overreaching discovery demands—Infosys requested a meet and confer to discuss both Cognizant's discovery responses and the discovery Cognizant served on Infosys. App'x 4 ¶ 12; App'x 146. Infosys followed its request with a letter detailing its concerns. App'x 4–5 ¶ 13; App'x 149–153. The parties met on January 3, 2025, a week before Infosys's discovery responses were due to Cognizant. App'x 5 ¶ 14; App'x 155; App'x 298 ¶ 3.

At the meet and confer, Cognizant took the position that its trade secret disclosure is proper. Cognizant nonetheless stated it would serve a "supplemental trade secret disclosure," which it indicated would "streamline discovery"—but only *after* Infosys produces discovery. App'x 5 ¶¶ 14–16; App'x 158; App'x 298 ¶ 3. Cognizant refused to agree to extend Infosys's deadline to respond to Cognizant's discovery until after Cognizant serves its amended response to Interrogatory No. 1, and insisted its trade secret identification should not "hold up" discovery. *Id.* The parties discussed the issue again on January 10, 2025. App'x 5–6 ¶ 17; App'x 237; App'x 298 ¶ 4. Cognizant reiterated its position that it adequately identified the trade secrets at issue. App'x 5–6 ¶¶ 17, 19; App'x 241; App'x 298 ¶ 4.

With Cognizant's refusal to properly identify its supposed trade secrets confirmed in writing and at multiple meet-and-confer discussions, Infosys responded to Cognizant's discovery demands. App'x 160–233. Infosys agreed to provide some information and documents independent of the trade secret issue (*e.g.*, App'x 168–173, 209–221) and lodged other specific objections consistent with this Court's guidance. Infosys also lodged objections on the ground that Cognizant has refused to properly identify the supposed trade secrets at issue or agree to sequence

discovery. *See, e.g.*, App'x 161–162. Infosys now seeks this Court's assistance so that it can determine what trade secrets it is being accused of misappropriating and can then evaluate relevance and proportionality when responding to Cognizant's broad discovery demands.

## ARGUMENT

**I.    Cognizant Should Be Compelled to Properly Identify the Particular Trade Secrets It Alleges Were Misappropriated by Infosys.**

This Court has recognized and enforced the requirement—adopted by numerous courts around the country—that "plaintiffs bringing claims of trade secret misappropriation [must] identify, with reasonable particularity, the alleged trade secrets at issue." *StoneEagle*, 2013 WL 9554563, at *2 (collecting cases). In so doing, it recognized that the particularity requirement finds support in the Federal Rules of Civil Procedure, which grant courts broad discretion to control the timing and sequence of discovery, Fed. R. Civ. P. 26(d)(3), and "adopt[] special procedures for managing potentially difficult or protracted actions that may involve complex issues, multiple parties, difficult legal questions, or unusual proof problems." Fed. R. Civ. P. 16(c)(2)(L); *StoneEagle*, 2013 WL 9554563, at *3 (citing Rule 16); *see also DeRubeis v. Witten Techs., Inc.*, 244 F.R.D. 676, 678 (N.D. Ga. 2007) (citing Rule 26).

In its Interrogatory No. 1, Infosys asked Cognizant to specify the trade secrets it contends Infosys misappropriated (App'x 72), but Cognizant has refused. Infosys accordingly requests an order compelling Cognizant to serve a proper interrogatory response, identifying the trade secrets at issue with reasonable particularity. *See* Fed. R. Civ. P. 37(a).

### A.    Cognizant Has Not Properly Identified the Trade Secrets Allegedly Misappropriated By Infosys.

Cognizant's response to Infosys Interrogatory No. 1 merely regurgitated the same vague and overbroad statement about trade secrets contained in the Complaint—contending the

11

misappropriated trade secrets include, but apparently are not limited to, *everything* related in any way to two decades-old software products. App'x 72–73; *supra* pp. 7–8 (reproducing response). Cognizant's vague description is exactly what this Court has explained "will not satisfy the [reasonable particularity] requirement: a laundry list of general categories of alleged 'trade secret' information; lengthy, descriptive, but non-specific paragraphs; generally listing software, data processing algorithms, and processes that a plaintiff developed, owned, or licensed; disclosures that only reveal the end results of, or functions performed by, the claimed trade secrets; and various concepts elements, or components that make up designs." *StoneEagle*, 2013 WL 9554563, at \*4 (internal citations omitted); *accord UOP LLC v. Exterran Energy Solutions, L.P.*, No. 21-2804, 2021 WL 8016712, at \*1 (S.D. Tex. Sept. 28, 2021).

Of particular relevance here, courts agree that "[v]ague and overly inclusive descriptions that essentially assert that all information about software constitutes trade secrets" are inadequate. *Torsh*, 2023 WL 7688583, at \*7. If a plaintiff "effectively assert[s] that all information in or about its [product] is a trade secret," then its case is "both too vague and too inclusive," because it necessarily fails to "separate the trade secrets from the other information that goes into any [product in in the field]." *IDX Sys. Corp. v. Epic Sys. Corp.*, 285 F.3d 581, 583–84 (7th Cir. 2002). Rather than merely identifying "features and functionalities" of a software product, a plaintiff must "point to specificities that convey the unique capabilities" or "special characteristics" that allegedly set those features and functionalities apart from information "generally known within the industry or readily ascertainable through proper means." *WeInfuse*, 2021 WL 1165132, at \*3; *see also, e.g.*, *Elsevier Inc. v. Doctor Evidence, LLC*, No. 17-5540, 2018 WL 557906, at \*3–4 (S.D.N.Y. Jan. 23, 2018) (listing "general categories" of "trade secret information" related to the plaintiff's software—such as "data configuration protocols and methods," "processes to assess the

quality of evidence and how to execute it," "analytics, analytics tools and analytics programming," and "database field names, parameters and database schema"—is insufficient because it does not "elucidate how those 'methods,' 'processes,' and 'interpretations' function").

Judge Currault of the Eastern District of Louisiana helpfully summarized what a proper trade secret identification looks like in a software case like this:

> [I]f the allegedly misappropriate[d] trade secret is executable object code, plaintiff must name the executable files and identify what about their functionality is alleged to be a trade secret. If plaintiff alleges misappropriation of source code, it must identify the specific lines of code or programs claimed to be a trade secret by, for example, printing out the code on paper with numbered lines and identifying the allegedly misappropriated lines by page and line number or by highlighting the code alleged to be secret, avoiding the improper inclusion of non-secret auto-generated code, open source material, or basic code mandated by the programming language or type of program within its trade secret identification. If plaintiff contends that algorithms or formulas existing within code are trade secrets, it must identify the mathematical information and the precise combination of functions that comprise the algorithms at issue. . . .

*Torsh*, 2023 WL 7688583, at *8–9; *see also SMH*, 2021 WL 4460522, at *13 (finding it insufficient to identify as trade secrets "source code, architectural design, user experience, and user interface" without "excerpts or screen shots of the actual source code or architectural design").

Cognizant's response to Interrogatory No. 1 does none of these things. It does not "point to specificities" or describe "special characteristics" of its products. *WeInfuse*, 2021 WL 1165132, at *3. It instead describes general categories of information inherent in any software product, eschewing specificity in favor of meaningless buzzwords. Courts reject this approach, emphasizing that "[u]sing technical terms such as 'programming techniques,' algorithms, or 'data coding' is not a free pass that relieves a plaintiff of identifying, with reasonable particularity, the specific programming technique, algorithm, or data coding that it contends qualifies as a trade secret." *Torsh*, 2023 WL 7688583, at *9; *see also, e.g.*, *Decurtis LLC v. Carnival Corp.*, No. 20-22945, 2021 WL 1968327, at *6–7 (S.D. Fla. Jan. 6, 2021) (terms like "software architecture," "technical

13

specifications and data interface designs," "database structures," "testing plans," "interface layer designs, data models, database structures, and data interface designs and adapters" do not identify trade secrets). The reason is simple: buzzwords like "workflow," "architecture," or "test case" describe information that is common to software products and thus fail to reflect proprietary details beyond information "that would be known to any other software company" in the market. *Agency Solutions.Com, LLC v. TriZetto Grp., Inc.*, 819 F. Supp. 2d 1001, 1020 (E.D. Cal. 2011).[8]

The need to identify what Cognizant contends to be trade secret is especially important here because Cognizant acknowledges that every user of its decades-old software can "ascertain the full functionality of Facets and QNXT." Compl. ¶ 14; *see IDX*, 285 F.3d at 583–84. At least some of what Cognizant claims as trade secrets is also publicly available. *See supra* n.1. And Infosys received substantial information about QNXT and Facets over the years without NDAAs, and while it was involved in developing QNXT. *See supra* p. 3. The specifics of what Infosys allegedly misappropriated are profoundly important. Yet Cognizant continues to insist that "all information in or about [its] software [is] a trade secret," without any attempt to "separate the trade secrets from the other information that goes into any software package" or to identify "[w]hich aspects are known to the trade, and which are not." *IDX*, 285 F.3d 583–84; *WeInfuse*, 2021 WL 1165132, at *3; *see* App'x 73. Cognizant's interrogatory response falls far short of its burden to identify with reasonable particularity the purported trade secrets it contends Infosys misappropriated.

---

[8] Cognizant's improper trade secret description goes beyond its faulty contention that every technical aspect of its software products is a supposed trade secret; it also includes all software related "documentation" as well as customer contracts and pricing information. App'x 73.

**B.      Each Rationale for Appropriate Trade Secret Specification Is Present Here.**

As this Court explained in *StoneEagle*, there are several important reasons to require identification of trade secrets being asserted in a case, including that "(1) lawsuits might be filed as mere 'fishing expeditions' if plaintiffs are not required to identify the alleged trade secrets; (2) relevant information cannot be identified [in discovery] if the alleged trade secrets are not known; (3) defendants cannot formulate and/or mount a defense without knowing the trade secrets; and (4) requiring production of the alleged trade secrets ensures that plaintiffs will not mold their causes of action around the discovery that they receive." 2013 WL 9554563, at *2. Each of these considerations weighs heavily in favor of granting Infosys's motion.

**This case is a fishing expedition.** It "is easy to allege theft of trade secrets with vagueness, then take discovery into the defendants' files, and then cleverly specify what ever happens to be there as having been trade secrets stolen from plaintiff." *Jobscience, Inc. v. CVPartners, Inc.*, No. 13-4519, 2014 WL 852477, at *5 (N.D. Cal. Feb. 28, 2014). That is why this Court and others recognize the risk that "lawsuits might be filed as mere 'fishing expeditions' if plaintiffs are not required to identify the alleged trade secrets." *StoneEagle*, 2013 WL 9554563, at *2. That risk is especially heightened when claims involve competitors and the plaintiff seeks to use discovery to gain "access to trade secret information [of its competitor] that it would otherwise be illegal for the plaintiff to misappropriate." *L-3 Commc'ns Corp. v. Jaxon Eng'g & Maint., Inc.*, No. 10-02868, 2011 WL 10858409, at *1 (D. Colo. Oct. 12, 2011); *see also Kalencom Corp. v. Shulman*, No. 17-5453, 2018 WL 1806037, at *3 (E.D. La. Apr. 17, 2018) ("intrusive discovery into the communications of a competitor amounts to a fishing expedition in cases where, as here, it is unclear what information [the defendant] is alleged to be wrongfully using").

15

This is true here. Cognizant's conclusory and vague allegations relate to an advertisement posted six years ago regarding test cases, and an adaptor for a mutual payor client that is allowed by the NDAA for that company. But Cognizant is attempting, through its position that everything about its software is a trade secret, to take vast discovery of a competitor that happens to be in the process of rolling out a substantial new product, Infosys Helix. It would be unfair and prejudicial to require Infosys to produce broad swaths of proprietary information about its business to a market leading competitor without any guidance to determine whether those materials bear any indicia of relevance to the supposed trade secrets at issue.

**Appropriate discovery parameters are unknown without a proper trade secret disclosure.** Determining the proper scope of discovery by weighing the relevance and proportional need for documents and information can be challenging in any case, but it is impossible without knowing what the case is about. Thus, in a trade secret misappropriation case, "identification of trade secrets is necessary for the parties to determine the appropriate scope of discovery and prepare proper objections and responses." *UOP LLC*, 2021 WL 8016712, at *1. Stated differently, "without a plaintiff's providing, with reasonable particularity, the alleged trade secrets at issue, both defendants and courts will have difficulty evaluating the relevance of discovery requests and propriety of objections." *StoneEagle*, 2013 WL 9554563, at *2–3. That is a recipe for unnecessarily burdensome discovery and "needless discovery disputes" that waste Court and party resources. *See also, e.g.*, *United Servs. Auto. Ass'n v. Mitek Sys., Inc.*, 289 F.R.D. 244, 248 (W.D. Tex. 2013).

Multiple meet-and-confer discussions addressed this issue, with Infosys's counsel explaining that Cognizant's refusal to provide a proper trade secret definition affects other responses to discovery. App'x 3, 5–6 ¶¶ 3, 14-17, 19; App'x 11; App'x 152; App'x 158; App'x

16

241; App'x 298 ¶¶ 3–4. Infosys even requested a meet and confer before its written discovery responses were due to discuss the issue in advance, with the hope that Cognizant would provide a proper specification so Infosys could make informed decisions about relevance and proportionality when responding to Cognizant's written discovery. App'x 4–6 ¶¶ 12–19; App'x 146; App'x 152; App'x 158; App'x 241. Cognizant declined, stating it will amend its trade secret definition only after it takes discovery of Infosys. *Id.* That is improper, as held by the authority cited above.

The impact of Cognizant's refusal to specify its trade secrets is real. Discovery obligations will be very different depending on the information that is actually at issue in this case. For example, Infosys served discovery concerning measures that have been taken to protect the confidentiality of the allegedly misappropriated trade secrets.[9] App'x 95–97 (RFP Nos. 3-4). Cognizant responded with boilerplate objections and an offer to meet and confer. App'x 87–97. The meet-and-confer discussion on those requests involved assertions of burden and breadth by Cognizant, but neither the Court nor Infosys can fairly evaluate these objections without knowing what information is at issue in the case. How can one evaluate the burden or breadth of a request for documents concerning efforts taken to protect unknown trade secret information? The burden analysis is likely quite different for a test case created last year than user interfaces of a software application created decades ago. This example is just the tip of the iceberg. The propriety of numerous other discovery requests also depends on the identity of the actual trade secrets at issue in this case, which simply cannot be everything related to QNXT and Facets, as Cognizant asserts.

---

[9] Cognizant has the burden to establish the claimed trade secret information has been protected (whatever it turns out to be) because information is only a trade secret if "the owner thereof has taken reasonable measures to keep such information secret." 18 U.S.C. § 1839(3); Tex. Civ. Prac. & Rem. Code § 134A.002(6).

**Infosys cannot formulate or mount a defense without a proper trade secret disclosure.**
To fairly defend itself, Infosys is entitled to the most basic information requested in Interrogatory
No 1: identification of the supposed trade secrets it is being accused of misappropriating.
*StoneEagle*, 2013 WL 9554563, at *2 ("defendants cannot formulate and/or mount a defense
without knowing the alleged trade secrets"). That is the foundation of Cognizant's lawsuit. And
the scope of the supposed trade secrets at issue will impact every aspect of the case, from discovery
to expert work. A dispute about test cases is profoundly different than a case about source code,
customer contracts and pricing, or all documentation related to Cognizant's products—yet
Cognizant lumps these all together in a vague list of categories of information.

Cognizant's attempted strategy—withholding information at the very foundation of its
legal claims while gathering information from Infosys that it plans to use to support those claims—
is unfair and improper. Cognizant should not be permitted to systematically prepare its case while
leaving Infosys in the dark, spinning its wheels about, *e.g.*, source code, APIs, price lists, or
customer contracts, when Cognizant may be well aware its claims are about something entirely
different. "Discovery under the Federal Rules of Civil Procedure is not a game of 'gotcha.'"
*Grubbs v. Winn Dixie Props., LLC*, No. 15-182, 2015 WL 3892555, at *1 (E.D. La. June 17, 2015).

**A proper trade secret identification will ensure Cognizant does not mold its claims
around what it finds at Infosys.** The final reason this Court identified for requiring identification
of alleged trade secrets is to "ensure[] that plaintiffs will not mold their causes of action around
the discovery that they receive." *StoneEagle*, 2013 WL 9554563, at *2; *accord SMH*, 2021 WL
4460522, at *12 (proper disclosure is "necessary to prevent plaintiffs from describing 'trade secrets
differently at each stage of the litigation'"). Cognizant *admitted* that is its goal here.

18

The likely explanation for Cognizant's refusal to properly identify its trade secrets is that Cognizant *also* has no idea what information Infosys supposedly misappropriated in creating the Business Assurance Store or the adaptor. That is evident from the misappropriation allegations in its Complaint, which are premised solely on conjecture. *See, e.g.*, Compl. ¶ 43 (speculating "Infosys could not have developed the QNXT Adaptor without access to TriZetto's Confidential Information and Trade Secret Information"); *id.* ¶ 52 (surmising "Infosys would not have been able to develop [the Business Assurance Store] without improper access to and use of TriZetto's Confidential Information and Trade Secret Information"). It is highlighted by Cognizant's insistence on identifying *everything* related in any way to its software as a trade secret, while objecting it is "premature" to identify the actual information at issue. App'x 72-73. And it is reinforced by Cognizant's broad, overreaching, and intrusive discovery asking Infosys to turn over virtually everything about its own software product and business operations.

The parties' meet and confer confirmed that Cognizant's goal is to take broad discovery from Infosys and then "mold its causes of action around the discovery that [it] receive[s]." *StoneEagle*, 2013 WL 9554563, at *2. In response to Infosys's insistence that it has not adequately identified the alleged trade secrets at issue, Cognizant agreed to "serve a supplemental trade secret disclosure" that would "streamline discovery"—implicitly conceding its response to Interrogatory No. 1 is inadequate. App'x 5 ¶¶ 14, 16; App'x 158. But Cognizant refused to do so until *after* Infosys responds to its discovery. *Id.* Cognizant has it backwards. It should first reveal the basis of its allegations. The parties can then engage in discovery with knowledge of what the case is really about.

**C.    The Improper Disclosure Will Negatively Impact the Case Beyond Discovery.**

It will be difficult to manage this case without knowing what is really at issue. With respect to expert witnesses, do the parties need pricing experts, source code experts, or an industry specialist to discuss the allegedly secret customer contracts Cognizant identifies as trade secrets? The parties and Court will also be hard-pressed to decide if Cognizant's supposed trade secret information is public, and should be dismissed on summary judgment, if they do not know what it is. These are straightforward examples, and the case law is full of circumstances in which courts have addressed repercussions of a plaintiff failing to adequately define the supposedly misappropriated trade secrets. *See, e.g., Medidata Solutions, Inc. v. Veeva Sys., Inc.*, No. 17-589, 2022 WL 585734, at *1 (S.D.N.Y. Feb. 25, 2022) (precluding evidence at trial when trade secrets not described adequately); *Coda Dev. s.r.o. v. Goodyear Tire & Rubber Co.*, 667 F. Supp. 3d 590, 600, 605, 605–10 (S.D. Ohio 2023) (setting aside jury verdict because plaintiff's supposed trade secrets did "not meet the threshold requirement of definiteness and should not have been sent to the jury"); *Zunum Aero, Inc. v. Boeing Co.*, No. 21-896, 2024 WL 3822780, at *7–14 (W.D. Wash. Aug. 14, 2024) (same); *Insulet Corp. v. EOFlow, Co.*, 104 F.4th 873, 881 (Fed. Cir. 2024) (vacating injunction because plaintiff only "advanced a hazy grouping of information" instead of "specifically defin[ing]" the purported trade secret). As these cases show, a plaintiff's failure to properly identify its supposed trade secrets can also cause many problems beyond discovery.

**II.    The Court Should Enter a Protective Order and Sequence Discovery That Is Dependent on the Identity of The Trade Secrets at Issue in This Case.**

For the practical and policy reasons discussed in Section I, courts routinely sequence discovery by "delay[ing] trade secret discovery [of defendants] until the trade secret plaintiff has sufficiently described the trade secrets at issue." *DeRubeis*, 244 F.R.D. at 680–81. For example, Magistrate Judge Stickney found that this Court's *StoneEagle* opinion supports a procedure in

20

which identification of trade secrets with "reasonable particularity should be provided prior to [Defendants] having to provide Plaintiffs discovery." *Zenimax Media, Inc. v. Oculus Vr, Inc.*, No. 14-1849, 2015 WL 11120582, at *1, 3 (N.D. Tex. Feb. 13, 2015). The court accordingly sustained the defendants' objections "to the extent they seek identification of Plaintiffs' alleged trade secrets with reasonable particularity prior to having to provide discovery to Plaintiffs." *Id.*

Similarly, in *AutoMed Technologies, Inc. v. Eller*, the court declined to allow the plaintiffs to "go on a fishing expedition" through a competitor's "files" without first "articulat[ing] what specific information they believe defendants have misappropriated, so [the court] can assess whether its requests are reasonably tailored to discover relevant evidence." 160 F. Supp. 2d 915, 926 (N.D. Ill. 2001) (issuing protective order "suspend[ing] discovery" that implicated defendants' own proprietary information); *accord, e.g.*, *UOP LLC*, 2021 WL 8016712, at *1–2 (holding defendants need not respond to discovery until after receiving interrogatory response identifying allegedly misappropriated trade secrets "with sufficient particularity"); *Powerweb Energy, Inc. v. Hubbell Lighting, Inc.*, No. 12-220, 2012 WL 3113162, at *2 (D. Conn. July 31, 2012) (ordering defendants need not respond to discovery until after plaintiff "define[d] with reasonable specificity the alleged trade secrets which form the basis of its misappropriation claim").

The same concerns are present here, and—whether styled as a protective order under Rule 26, a scheduling order under Rule 16, or an order issued under the Court's broad discretion to control its docket—should lead to the same result.[10]

---

[10] For example, Rule 26 authorizes the Court to issue a protective order specifying the timing of discovery or disclosure. Fed. R. Civ. P. 26(c)(1)(B). Rule 16 likewise authorizes the Court to issue and modify scheduling orders, including to adopt special procedures to manage discovery in actions involving unique or complex issues. Fed. R. Civ. P. 16(c)(2)(L). These specific rules are in addition to the "power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. American Co.*, 299 U.S. 248, 254–55 (1936).

21

To be clear, Infosys is not asking the Court to stay all discovery pending a proper trade secret identification. Infosys has responded to Cognizant's discovery requests that are not dependent upon such a disclosure. *See, e.g.*, App'x 168–173 (answering interrogatories); App'x 209–211, 214, 217–221 (agreeing to produce documents not dependent on the trade secret identification). A reasonable sequencing order would protect Infosys from responding to trade secret discovery until a proper trade secret specification is provided and instruct Infosys to amend its discovery responses after learning what trade secrets are at issue in this case. It is a simple, straightforward process that will allow the case to move forward efficiently and fairly.

## CONCLUSION

For the foregoing reasons, Infosys respectfully requests that, following the entry of an agreed Confidentiality Protective Order (if one has not yet been entered), the Court issue an order: (1) compelling Cognizant to amend its response to Interrogatory No. 1 to "identify with specificity each trade secret [it] contends Infosys Limited misappropriated" (App'x 72) in the form of "a list that separately breaks out each individually alleged trade secret" and explains "how the claimed trade secret is unique from that which is found in the public domain" or "generally known within the industry";[11] (2) sustaining the objection in Infosys's discovery responses that Cognizant has not provided an appropriate trade secret specification; and (3) providing that Infosys shall serve amended responses and objections to Cognizant's Interrogatories and Requests for Production within 30 days after Cognizant properly identifies the trade secrets at issue as required by the Court's order.

---

[11] *See StoneEagle*, 2013 WL 9554563, at *5; *WeInfuse*, 2021 WL 1165132, at *3–4; *T2 Modus, LLC v. Williams-Arowolo*, No. 22-263, 2023 WL 6221429, at *5 (E.D. Tex. Sept. 25, 2023); *Kalencom*, 2018 WL 1806037, at *5.

Dated: January 17, 2025

Respectfully submitted,

JENNER & BLOCK LLP

By: /s/ Brent Caslin
Brent Caslin (*pro hac vice*)
Nick Saros (*pro hac vice* pending)
Kelly M. Morrison (*pro hac vice*)
515 S. Flower Street, Suite 3300
Los Angeles, CA 90071
Tel.: (213) 239-5100
BCaslin@jenner.com
NSaros@jenner.com
KMorrison@jenner.com

Shoba Pillay (*pro hac vice*)
Paul B. Rietema (Bar. No. 24133324)
Laura E. Pelanek (*pro hac vice*)
Lindsey A. Lusk (*pro hac vice*)
353 N. Clark Street
Chicago, IL 60654
Tel.: (312) 222-9350
SPillay@jenner.com
PRietema@jenner.com
LPelanek@jenner.com
LLusk@jenner.com

Douglas E. Litvack (*pro hac vice* pending)
1099 New York Avenue, NW
Suite 900
Washington, DC 20001
Tel: (202) 639-6000
DLitvack@jenner.com

*Attorneys for Defendant and Counter Plaintiff
Infosys Limited*

23

## CERTIFICATE OF CONFERENCE

Cognizant opposes the relief sought in the instant Motion. Counsel for Infosys first raised the issue of the need for Cognizant to specify its trade secret before discovery could proceed at the Parties Rule 26 conference on October 24, 2024. I along with my colleague, Sara Stappert, appeared on behalf of Infosys at that conference. Cognizant was represented by Elizabeth McClosky, Ahmed ElDessouki, and Christina Myrold. Cognizant's counsel stated that Cognizant disagreed with Infosys's position that its trade secrets were not sufficiently specified, and that discovery should proceed without further specification. Following receipt of Cognizant's discovery requests as well as Cognizant's responses to Infosys's discovery requests, on December 24, 2024, Infosys's counsel requested a meet and confer to discuss issues related to Infosys' discovery requests to Cognizant, Cognizant's discovery requests to Infosys, and the parties' initial disclosures, including the continued need for Cognizant to specify its trade secrets. Counsel for Infosys and counsel for Cognizant conferred on January 3, 2025, and January 10, 2025, regarding various discovery issues, including Cognizant's failure to specify its trade secrets. At the January 3, 2025, meeting, I was there along with my colleagues, Kelly Morrison and Sara Stappert, on behalf of Infosys. Cognizant was represented by Ahmed ElDessouki, Christina Myrold, Katherine Worden, and Amanda Bello. At the January 10, 2025, meeting, I was there along with my colleagues, Kelly Morrison and Casey Carlson, on behalf of Infosys. Cognizant was represented by Christina Myrold and Katherine Worden. At both meetings, Infosys explained its position that Cognizant has not sufficiently identified its trade secrets with specificity. On both occasions, Cognizant said it disagreed and refused to further specify its purported trade secrets at this time. At the January 3, 2025 meeting in particular, Cognizant stated that it would further specify its trade secrets at a later date, but refused to agree to adjust the deadline for Infosys's discovery

24

responses until after Cognizant further specified its trade secrets. Infosys memorialized its understanding of Cognizant's opposition to specifying its trade secrets or sequencing discovery to allow Infosys to respond to more properly specified trade secrets in letters to Cognizant's counsel on January 9, 2025, and January 15, 2025. To date, Cognizant has not agreed to change its position. The parties have not been able to resolve this issue because they have fundamentally different views on the propriety or impropriety of Cognizant's trade secret identification.

/s/ Lindsey A. Lusk
Lindsey A. Lusk (*pro hac vice*)

## CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of January, 2025, I caused the foregoing to be electronically filed with the clerk of the court for the U.S. District Court for the Northern District of Texas, by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record, a true and correct copy of the foregoing instrument and all attachments.

/s/ Brent Caslin
Brent Caslin (*pro hac vice*)