# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | |
|---|---|
| COGNIZANT TRIZETTO SOFTWARE GROUP, INC., | Case No. 3:24-cv-2158-X |
| Plaintiff, | The Honorable Brantley Starr |
| v. | |
| INFOSYS LIMITED, | |
| Defendant. | |
| INFOSYS LIMITED, | |
| Counterclaim Plaintiff, | |
| v. | |
| COGNIZANT TECHNOLOGY SOLUTIONS CORP. and COGNIZANT TRIZETTO SOFTWARE GROUP, INC., | |
| Counterclaim Defendants. | |

**COGNIZANT TRIZETTO SOFTWARE GROUP, INC.'S MEMORANDUM OF LAW IN OPPOSITION TO INFOSYS LIMITED'S MOTION TO COMPEL AND FOR PROTECTIVE ORDER SEQUENCING DISCOVERY**

### TABLE OF CONTENTS

Page

I.     INTRODUCTION .......................................................................................... 1

II.    STATEMENT OF FACTS .......................................................................... 3

       A.     TriZetto's Facets and QNXT Software Products Revolutionized the
              Healthcare Industry .................................................................................. 3

       B.     Infosys Executes NDAAs with TriZetto and Agrees to Protect TriZetto's
              Intellectual Property and to Give TriZetto Audit Rights ......................... 4

       C.     Infosys Willfully Misappropriates TriZetto's Trade Secrets, Breaches the
              NDAAs, and Refuses a Contractually Required Audit ............................ 5

       D.     TriZetto Sufficiently Identifies Its Trade Secrets in Response to Infosys's
              Discovery Request .................................................................................... 6

III.   ARGUMENT ............................................................................................... 8

       A.     Infosys's Motion Should Be Denied on Procedural Grounds ................. 8

       B.     Infosys's Motion Relies on the Wrong Legal Standard ......................... 8

       C.     TriZetto's Trade Secret Identification Is More Than Sufficient Under
              *GlobeRanger* ......................................................................................... 11

       D.     Infosys's Arguments for Demanding Further Specificity and Blocking
              Discovery Fail ........................................................................................ 14

              1.     TriZetto's Discovery Requests Seek TriZetto's Own Information
                     and Information TriZetto Is Contractually Entitled to Review
                     Under the NDAAs ....................................................................... 14

              2.     Infosys Refused to Allow TriZetto to Audit Infosys's Records in
                     Breach of the NDAAs ................................................................. 15

              3.     Infosys Has Not Challenged the Misappropriation Claims ......... 16

              4.     Infosys Refused to Produce Discovery Relating to TriZetto's
                     Breach of Contract and Unfair Competition Claims .................. 17

IV.    CONCLUSION .......................................................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Computer Scis. Corp. v. Tata Consultancy Servs. Ltd.*,
    2023 WL 361870, (N.D. Tex. Jan. 21, 2023). ....................................2, 8, 9, 11, 12

*EEMSO, Inc. v. Compex Techs., Inc.*,
    2006 WL 2583174 (N.D. Tex. Aug. 31, 2006).........................................................10

*GlobeRanger Corp. v. Software AG United States of Am., Inc.*,
    836 F.3d 477 (5th Cir. 2016) .........................................................................2, 8, 11

*JM4 Tactical, LLC v. Albus*,
    2023 WL 11852323 (N.D. Tex. Jan. 19, 2023) ......................................................10

*Jobscience, Inc. v. CVPartners, Inc*,
    2014 WL 852477 (N.D. Cal. Feb. 28, 2014) ............................................................9

*ResMan, LLC v. Karya Prop. Mgmt., LLC*,
    2021 WL 3403935 (E.D. Tex. Aug. 4, 2021) ....................................................11, 13

*StoneEagle Servs., Inc. v. Valentine*,
    2013 WL 9554563 (N.D. Tex. June 5, 2013) ............................................................2

*Syntel Sterling Best Shores Mauritius Ltd. v. The Trizetto Grp.*,
    68 F.4th 792 (2d Cir. 2023), *cert. denied*, 144 S. Ct. 352 (2023)......................4, 13

*Utex Indus., Inc. v. Wiegand*,
    2020 WL 873985 (S.D. Tex. Feb. 21, 2020) ...............................................9, 11, 12

*Vianet Group PLC v. Tap Acquisition, Inc.*,
    2016 WL 4368302 (N.D. Tex. Aug. 16, 2016).......................................................11

*WeInfuse, LLC v. InfuseFlow, LLC*,
    2021 WL 1165132 (N.D. Tex. Mar. 26, 2021) ...................................................9, 10

## Statutes

Cal. Code Civ. Proc. 2019.210 ....................................................................................9

## Rules

L.R. 7.1 .......................................................................................................................7

## I.     INTRODUCTION

Since TriZetto brought this lawsuit against Infosys for its rampant misappropriation of TriZetto's valuable Facets- and QNXT-related trade secret information and breach of contract for failure to comply with a contractually-mandated audit, Infosys has gone to great lengths to distract attention away from the core facts that led us here:

- Infosys was caught red-handed misappropriating TriZetto trade secrets that Infosys originally had access to through Non-Disclosure and Access Agreements ("NDAAs").

- When confronted, Infosys obfuscated to the maximum extent possible, asking TriZetto to simply trust, based on nothing, that there had been no wrongdoing.

- When TriZetto refused to take Infosys at its word and demanded an audit of Infosys's use of TriZetto's information, as explicitly permitted under the NDAAs *for any reason* (much less rampant trade secret misappropriation), Infosys *refused* to comply.

Infosys thus put TriZetto in a position where it had no choice but to bring this lawsuit to stop Infosys's misappropriation of its trade secret technology.

Just eight days after filing meritless antitrust counterclaims (and courting significant attention in the Indian media), Infosys filed the instant motion further attempting to cover up its misconduct by asking this Court to block discovery into Infosys's trade secret theft. Further, it did so while the parties were still meeting-and-conferring over the very same issues Infosys raises in this motion, unnecessarily burdening this Court and the parties with motion practice—particularly given that TriZetto is supplementing its interrogatory response to provide Infosys with more information in the spirit of cooperation, even though its response was sufficient under Fifth Circuit precedent. For Infosys's procedural failure alone, this Court should deny the motion.

1

Should the Court be inclined to consider the substance, there are two independent reasons requiring denial. ***First***, Infosys's entire motion is premised on an outdated legal standard that the Fifth Circuit has rejected. Infosys relies on this Court's 12-year-old decision in *Valentine*,[1] which was superseded ***10 years ago*** by the Fifth Circuit's holding in *GlobeRanger*.[2] In *Valentine*, without the benefit of any Fifth Circuit precedent at the time, this Court required plaintiffs to disclose "a list that separately breaks out each of the individual [ ] trade secrets."[3] But in *GlobeRanger*, the Fifth Circuit superseded *Valentine* by adopting a different standard: a plaintiff need not provide "a specific description of the trade secret" even at trial, let alone upon filing the case.[4] The Fifth Circuit's controlling rule recognizes that plaintiffs have a broad right to discovery under the Federal Rules and that plaintiffs may not be able to identify the misappropriated trade secrets with specificity absent discovery—particularly in light of a defendant's stonewalling. Even without the already-agreed-to supplementation, TriZetto's discovery responses meet and exceed the correct *GlobeRanger* standard.

***Second***, the reasons Infosys gives for demanding further specificity are disingenuous in view of TriZetto's audit rights under the NDAAs, which are the subject of TriZetto's breach of contract claims (Counts 3–7). Infosys asserts that TriZetto's discovery requests amount to an improper "fishing expedition." The reality is that, even independent of this lawsuit, TriZetto is contractually entitled under the NDAAs to audit Infosys's business records to determine what

---

[1] *StoneEagle Servs., Inc. v. Valentine*, 2013 WL 9554563 (N.D. Tex. June 5, 2013) (Horan, M.J.).

[2] *GlobeRanger Corp. v. Software AG United States of Am., Inc.*, 836 F.3d 477 (5th Cir. 2016).

[3] *Valentine*, 2013 WL 9554563, at * 1.

[4] *Computer Scis. Corp. v. Tata Consultancy Servs. Ltd.*, 2023 WL 361870, at *4 (N.D. Tex. Jan. 21, 2023) (Starr, J.) (citing *GlobeRanger*, 836 F.3d at 493).

TriZetto information Infosys has in its possession, who at Infosys has access to that information, and whether that information has been used in an unauthorized manner. Moreover, TriZetto has asserted breach of contract claims for Infosys's blatant refusal to comply with those obligations, and it is entitled to discovery on those claims. Infosys now complains that TriZetto's trade secret identification is too "broad," but Infosys cannot have it both ways—demanding that TriZetto provide further specificity regarding what Infosys misappropriated, while at the same time unlawfully concealing the information TriZetto would need to provide such additional specificity.

This Court should deny Infosys's motion in its entirety.

## II.    STATEMENT OF FACTS

### A.    TriZetto's Facets and QNXT Software Products Revolutionized the Healthcare Industry

Through investments of hundreds of millions of dollars in research and development, TriZetto has developed a valuable set of products that provide proprietary medical claims processing functionality and comprehensive cycle management services to TriZetto's healthcare clients, including service providers and medical claim payers. Dkt. No. 1 ("Compl.") ¶¶ 2, 12. Among its suite of software products are Facets and QNXT, which are complex, sophisticated, and next-generation software products that have greatly simplified the processing of health insurance claims for millions of Americans. *Id.* ¶¶ 13–14.

Both Facets and QNXT are built upon TriZetto's confidential and trade secret information, which includes the source materials, test cases, interfaces, data model, and related technical documentation for Facets and QNXT, as well as the contractual terms between TriZetto and its customers that use Facets and QNXT. *Id.* ¶¶ 16–17. A federal jury, as well as the Second Circuit Court of Appeals, have already confirmed that the Facets test cases and data model are trade

3

secrets. *Id.* ¶¶ 21–23 (citing *Syntel Sterling Best Shores Mauritius Ltd. v. The Trizetto Grp.*, 68 F.4th 792, 802–04 (2d Cir. 2023), *cert. denied*, 144 S. Ct. 352 (2023)).

**B.    Infosys Executes NDAAs with TriZetto and Agrees to Protect TriZetto's Intellectual Property and to Give TriZetto Audit Rights**

TriZetto protects its confidential and trade secret information from public disclosure, including by requiring customers and vendors to sign NDAAs that strictly prohibit disclosure of such information, except to authorized recipients. Compl. ¶¶ 14, 27. As a result of TriZetto's protective measures, competitors are unable to, without authorized access, copy TriZetto's software's proprietary features, to use TriZetto's proprietary materials to build unauthorized interfaces that can connect with TriZetto's software products, or to develop test cases (*i.e.*, bespoke sets of instructions for executing a particular capability within a software program, such as Facets or QNXT) to test TriZetto's software products. *Id.* ¶ 14.

Notwithstanding the fact that Infosys is a direct competitor of TriZetto, TriZetto granted Infosys access to certain of TriZetto's closely guarded, proprietary software offerings and related technical documentation under NDAAs for the limited purpose of providing services to specific clients that TriZetto and Infosys have in common. *Id.* ¶ 3. Importantly, Infosys agreed to keep an extensive amount of TriZetto information—including the information TriZetto believes to have been stolen in this case—confidential by signing the NDAAs. *See, e.g.*, Dkt. No. 35-3 at Ex. 2.

The NDAAs narrowly restrict Infosys's authorized access to TriZetto's proprietary information and trade secrets, granting access only to a very limited number of Infosys employees for narrowly defined purposes. *Id.* Infosys also agreed to provide TriZetto with audit rights for TriZetto to be able to fact-check whether its proprietary information was being misused. Specifically, Infosys agreed to provide TriZetto access to its facilities and business records for TriZetto to audit Infosys's compliance with the NDAAs. *Id.*

4

Over the course of the last decade, Infosys has signed at least seven NDAAs with TriZetto, in which Infosys has repeatedly recognized TriZetto as the sole owner of TriZetto's confidential and trade secret information related to Facets and QNXT. *Id*. ¶ 32. By signing the NDAAs, Infosys attested that it understood the scope of TriZetto confidential and trade secret information and that such information is not readily available from public sources and derives economic value from its secrecy. *Id*. ¶ 33.

## C.   Infosys Willfully Misappropriates TriZetto's Trade Secrets, Breaches the NDAAs, and Refuses a Contractually Required Audit

Unbeknownst to TriZetto, Infosys knowingly and willfully exceeded its authorized access to TriZetto's confidential and trade secret information for years, including by accessing TriZetto's propriety software, test cases, interfaces, data model, and related technical documentation for Facets and QNXT in order to develop Infosys's own competing software and service offerings for its own financial gain. Compl. ¶¶ 3, 40. It did so in at least two ways. First, Infosys abused its access to TriZetto's confidential and trade secret information to create the QNXT Adaptor, which Infosys has used to extract and migrate data from TriZetto's software to Infosys's own competing software. *Id*. ¶ 41–43. Second, Infosys misappropriated TriZetto's trade secrets to create a repository of test cases for Facets, which Infosys markets as its own and utilizes to unfairly compete with TriZetto. *Id*. ¶ 40.

Infosys could not have created either the QNXT Adaptor or a repository of Facets test cases without improperly accessing and using TriZetto's confidential and trade secret information. *Id*. ¶¶ 43–46, 52–54. Third parties, such as Infosys, cannot create test cases for Facets and QNXT without TriZetto's confidential and trade secret information because such test cases are designed specifically for the Facets and QNXT applications and therefore require access to TriZetto's confidential and trade secret information. *Id*. ¶¶ 19–20. Similarly, Infosys could not have

developed the QNXT Adaptor without access to TriZetto's confidential and trade secret information because, for example, Infosys would not know how to extract data from QNXT, nor would it know how to store the migrated data outside of QNXT's own data structures. *Id*. ¶ 43. TriZetto learned that a senior Infosys employee improperly accessed confidential and trade secret information concerning QNXT's databases to create a mapping of database tables from QNXT to Infosys's own Helix platform. *Id*.

Upon discovering Infosys's theft, and prior to filing this lawsuit, TriZetto provided Infosys with written notice of an audit pursuant to the contractually agreed audit provision in the NDAAs. *Id*. ¶ 63. Infosys refused to comply with the audit, in further breach of the agreements. *Id*. TriZetto accordingly filed this lawsuit, asserting claims for trade secret misappropriation, breach of the NDAAs, and unfair competition.

**D.     TriZetto Sufficiently Identifies Its Trade Secrets in Response to Infosys's Discovery Request**

Infosys's Interrogatory No. 1 asked TriZetto to "identify with specificity each trade secret" Infosys misappropriated. Dkt. No. 52-9. Consistent with controlling Fifth Circuit authority, TriZetto identified seven categories of information and the trade secrets within them. *Id*. These categories of information mirror the information TriZetto identified and detailed in six pages of the Complaint (Compl. ¶¶ 16–26), and substantially overlap with categories of information that Infosys agreed constituted TriZetto confidential information under the NDAAs. *See supra* II.B. Importantly, Infosys had not produced any documents at the time of TriZetto's response (and has still not produced any documents). Nor has Infosys abided by its contractual obligation to allow TriZetto to audit its compliance with the NDAAs. So TriZetto has no way of knowing the full scope of what Infosys has misappropriated from TriZetto.

Infosys claimed that TriZetto's response to Interrogatory No. 1 was insufficient because it was supposedly overbroad and not specific enough. Myrold Decl.[5] ¶ 3. The parties conferred on January 3 and January 10, 2025. *Id*. ¶¶ 3–4. Even though counsel for TriZetto said on January 10 that it would consider supplementing TriZetto's response to clarify specific issues raised during the conference—exclusively for the purpose of coming to agreement, even though not required—Infosys refused to wait for a response from TriZetto and filed the present motion on January 17. *Id*. ¶¶ 4–5. Meanwhile, TriZetto has been working on a supplemental response to address the specific issues raised during the parties' conference and will serve such supplemental response shortly.[6] *Id*. ¶ 6.

For its part, Infosys has stonewalled TriZetto on discovery related to TriZetto's claims, refusing to produce documents in response to 30 out of TriZetto's 39 document requests on the grounds that TriZetto's trade secret identification is purportedly insufficient. Dkt. No. 52-15. It asserted this objection notwithstanding that the document requests are relevant to TriZetto's *non-trade secret* claims, including TriZetto's breach of contract claims. To date, Infosys has only agreed to produce a handful of documents, such as its organizational chart and the NDAAs at issue (which TriZetto already has because it is a party).[7] *Id*.

---

[5] "Myrold Decl." refers to the concurrently filed Declaration of Christina E. Myrold.

[6] The supplemental response also makes clear that TriZetto is not withholding any responsive information based on its general objections. *Id*. ¶ 6.

[7] A mere three days before TriZetto's Opposition was due, Infosys offered to provide an extension of TriZetto's opposition until after it served its supplemental interrogatory response. Myrold Decl. ¶ 7. However, Infosys still declined to provide any discovery regarding its trade secret misappropriation while this motion was pending (*id.*), and thus the belated extension offer would have only served to further delay discovery TriZetto is rightfully entitled to.

## III.    ARGUMENT

### A.    Infosys's Motion Should Be Denied on Procedural Grounds

The Local Civil Rules for the Northern District of Texas ("L.R.") require the party contemplating a motion to compel to confer with opposing counsel "to determine whether the motion is opposed."  *See* L.R. 7.1; *Lopez v. Don Herring Ltd.*, 327 F.R.D. 567, 585 (N.D. Tex. 2018) (Horan, M.J.) ("Failure to confer generally serves as a basis for denying a discovery motion.").  Infosys violated this procedural requirement when it filed the instant motion before allowing the meet and confer process to play out, and its motion can be denied on this basis alone. Not only does Infosys's motion unnecessarily burden this Court and the parties with motion practice, it is also procedurally improper, given that meet-and-confers were ongoing, and Infosys did not express that it would be seeking relief from the Court.  Myrold Decl. ¶ 4.  Quite the opposite, TriZetto thought discussions with opposing counsel were ongoing, particularly because TriZetto had agreed to consider supplementing its interrogatory response to clarify the specific issues Infosys raised during the meet-and-confer discussions—even though its response was already sufficient under Fifth Circuit precedent.  *Id*.  For Infosys's procedural failure alone, this Court should deny the motion.

### B.    Infosys's Motion Relies on the Wrong Legal Standard

As a threshold issue, Infosys improperly urges the Court to apply the wrong legal standard. Infosys's motion almost exclusively relies on this Court's 12-year-old decision in *Valentine*, which was superseded in 2016 by the Fifth Circuit's holding in *GlobeRanger*.  As Judge Starr recently explained:

> In *StoneEagle Services, Inc. v. Valentine*, the court prohibited 'general categories of alleged trade secret information' and required 'a list that separately breaks out each of the individual [ ] trade secrets.'  But *Valentine* did its best to distill a rule from out-of-circuit authority because "the Fifth Circuit ... [had not] addressed" the issue before it.  **Because the Fifth Circuit has since addressed the requisite**

8

*specificity in GlobeRanger—three years after Valentine—Valentine's reasoning cannot control the analysis.*

*Computer Scis. Corp. v. Tata Consultancy Servs. Ltd.*, 2023 WL 361870, at *5 (N.D. Tex. Jan. 21, 2023) (emphasis added).  In *GlobeRanger*, the Fifth Circuit held that "Texas law does not require great detail in the definition of a trade secret," and, as such, even at *trial*, a plaintiff is not required to provide "a specific description of the trade secret."  *GlobeRanger Corp. v. Software AG United States of Am., Inc.*, 836 F.3d 477, 493, 501 (5th Cir. 2016) (citation omitted).

Infosys omits any reference to the controlling Fifth Circuit *GlobeRanger* case and instead spends over five pages arguing that TriZetto's trade secret identification is insufficient under the now-superseded *Valentine* standard (Dkt. No. 51 ("Mot.") at 15–19).  TriZetto already pointed out Infosys's misplaced reliance on *Valentine* and failure to cite controlling Fifth Circuit authority on this issue when TriZetto opposed Infosys's motion to dismiss in November.  *See* Dkt. No. 38 at 10 n. 11 ("Further, the Court found that *Valentine* predated the Fifth Circuit's decision in *GlobeRanger* and thus 'cannot control the analysis.'").  TriZetto also raised this issue during the parties' January 3 conference and directed Infosys to the case law cited in TriZetto's opposition to Infosys's motion to dismiss, including *GlobeRanger*.  Myrold Decl. ¶ 3.

In its motion, Infosys does not just knowingly cite the wrong legal standard, it fails to even mention the controlling law and instead also relies on over 10 out-of-circuit cases, as well as multiple other cases that predate the Fifth Circuit's holding in *GlobeRanger*.  For example, Infosys cites to a Northern District of California case, *Jobscience, Inc. v. CVPartners, Inc*, 2014 WL 852477 (N.D. Cal. Feb. 28, 2014), but that case involved a trade secret misappropriation claim under the **California** Uniform Trade Secret Act, which by statute has one of the highest standards for trade secret specificity of any state—*i.e.*, Cal. Code Civ. Proc. 2019.210—and is inapplicable to the trade secret claims here, which were brought under the Defend Trade Secrets Act and Texas

9

Uniform Trade Secrets Act. *See Jobscience*, 2014 WL 852477, at *4 (applying Section 2019.210 of the California Code of Civil Procedure to CUTSA claim). More recent authority makes clear that, in this Circuit, the *GlobeRanger* standard applies to DTSA and TUTSA claims. *See, e.g., Computer Scis. Corp.*, 2023 WL 361870, at *4 (applying *GlobeRanger*'s standard to DTSA claim); *Utex Indus., Inc. v. Wiegand*, 2020 WL 873985, at *10 (S.D. Tex. Feb. 21, 2020) (applying *GlobeRanger*'s standard to DTSA and TUTSA claims).

The single case Infosys relies on from this district that does not predate *GlobeRanger* is *WeInfuse, LLC v. InfuseFlow, LLC*, 2021 WL 1165132 (N.D. Tex. Mar. 26, 2021). *WeInfuse* is readily distinguishable. As Judge Starr explained: "[T]he lack of specificity [in *WeInfuse*] was a problem only because it prevented the court from ascertaining whether the features and functionalities of the trade secrets [were] generally known within the industry." *Computer Scis. Corp.*, 2023 WL 361870, at *4 (cleaned up). The *WeInfuse* court, on a motion to dismiss, also found that the identified trade secrets were contextually "implausible" based on the other factual allegations in the complaint. *WeInfuse,* 2021 WL 1165132, at *4. Specifically, the court determined the software "was being marketed to outsiders ***with no confidentiality restrictions in place***," and thus it "did not derive economic value from its features not being generally known." *Id.* (emphasis added).

The present case is nothing like *WeInfuse*. As detailed in the Complaint, TriZetto has taken reasonable measures to protect the trade secret information at issue, including requiring vendors, such as Infosys, to agree to strict confidentiality and use restrictions prior to receiving access to TriZetto's trade secrets. *See* Compl. ¶ 16; *supra* II.B. Infosys's motion inaccurately suggests that Infosys was somehow free to use TriZetto's trade secret information because, according to Infosys, it worked on Facets for "years" without restriction from NDAAs and it helped develop QNXT.

10

*See* Mot. at 1.  Infosys knows full well that a rights holder is not required to impose an NDAA to maintain trade secret status.  *See, e.g.*, *JM4 Tactical, LLC v. Albus*, 2023 WL 11852323, at *7 (N.D. Tex. Jan. 19, 2023) ("The holder of a trade secret may make a limited disclosure to another party to further their economic interests 'that does not destroy the requisite secrecy.'") (citation omitted); *EEMSO, Inc. v. Compex Techs., Inc.*, 2006 WL 2583174, at *7 (N.D. Tex. Aug. 31, 2006) (holding that an "express contractual provision is not required to establish a duty of confidentiality.").  Moreover, Infosys *expressly acknowledged and confirmed* that (1) TriZetto's trade secrets are not readily available from public sources and (2) Infosys would "not use or disclose" the information "except as expressly permitted under" the NDAAs.  *See* Compl. ¶ 71; *see, e.g.,* Dkt. No. 35-3 at Ex. 2, Section 3 and 7(a).

## C.    TriZetto's Trade Secret Identification Is More Than Sufficient Under *GlobeRanger*

In the Fifth Circuit, it is well-established that a plaintiff asserting a trade secret misappropriation claim under the DTSA and/or TUTSA "can succeed by showing that its technology ***contains*** trade secrets, even if the plaintiff doesn't provide a ***specific*** description of the trade secret."  *Computer Scis. Corp.*, 2023 WL 361870, at *4 (cleaned up) (emphases added) (citing *GlobeRanger*, 836 F.3d at 493).  For example, in *GlobeRanger*, the Fifth Circuit held that the plaintiff provided "sufficient evidence for a jury to reasonably conclude that at least some portion of its [software product] constituted a trade secret."  *GlobeRanger*, 836 F.3d at 492.

Relying on this standard, district courts in the Fifth Circuit have found that "categories" of "types of information and possible trade secrets within" them are "sufficiently specific," and "a plaintiff may 'properly identif[y] its entire Platform as a trade secret.'"  *Computer Scis. Corp.*, 2023 WL 361870, at *4 (citing *ResMan, LLC v. Karya Prop. Mgmt., LLC*, 2021 WL 3403935, at *4 (E.D. Tex. Aug. 4, 2021); *Utex Indus., Inc. v. Wiegand*, 2020 WL 873985, at *10); *see also Vianet Group PLC v. Tap Acquisition, Inc.*, 2016 WL 4368302, at *20 (N.D. Tex. Aug. 16, 2016)

(ruling that it "is enough" for a plaintiff to "identify specific groupings of information that contain trade secrets, identify the types of trade secrets contained in the groupings, and explain how the alleged trade secrets were maintained and treated as trade secrets.").

TriZetto's trade secret identification far exceeds this standard, especially at this early stage of the case.  For example, in *Utex Indus.*, the plaintiff brought trade secret misappropriation claims under the DTSA and TUTSA, and the defendant moved for summary judgment on the basis that the "categories of information" the plaintiff identified were "too broad to permit analysis as to whether they [were] trade secrets."  2020 WL 873985, at *10.  Relying on *GlobeRanger*, the court denied summary judgment and found that the following eight "categories" of "types of information and possible trade secrets within" them were "sufficiently specific":

> (1) mixing instructions used in operating mixers that create the rubber compounds,
> (2) vendors from which the [ ] fabric is obtained . . .,
> (3) methods and systems for packaging the packing assemblies for storage and shipment,
> (4) customer lists, customer information,
> (5) manufacturing data, cost of production,
> (6) sales data,
> (7) budget information related to Utex products, [and]
> (8) results from tests of Utex's rubber compounds

*Utex Indus.*, 2020 WL 873985, at *9–10.  Similarly, in *Computer Scis. Corp.*, the defendant moved for summary judgment on the plaintiff's DTSA claim, arguing that the plaintiff's identification of "broad categories of functionality"—*i.e.*, "calculations; business rules; data structures; correspondence; and interfaces"—lacked the "precision and specificity" necessary to constitute trade secrets.  *See* 2023 WL 361870, at *3.  However, the court stated that the Fifth Circuit had "already rejected" this argument and, relying on *GlobeRanger*, held that the plaintiff's "showing that its code and documents ***contain[ed]*** [plaintiff's] trade secrets [was] sufficient."  *Id.* at *4 (emphasis in original).

Consistent with *Utex* and *Computer Scis. Corp.*, TriZetto similarly identified seven categories of information and the trade secrets within those categories:

- TriZetto's proprietary software, including Facets® and QNXT™, and the workflows and functionality implemented by the proprietary software (the "Proprietary Software");

- Source materials relating to the Proprietary Software, including the source code, technical documentation, product release notes, link libraries, and development toolkits ("Source Materials");

- Test cases for testing the Proprietary Software ("Test Cases");

- Interfaces, connectors and adaptors for the Proprietary Software, as well as tools for creating such interfaces, connectors, and adaptors ("Interfaces");

- The database, database schema, file structures, data dictionaries, and other information relating to the storage of data by the Proprietary Software ("Data Model");

- The terms of the contracts between TriZetto and its clients, including the pricing for TriZetto products and services ("Commercial Secrets"); and

- Technical documentation related to each item previously listed.

*See* Dkt. No. 52-9. This alone is sufficient under the case law.[8]

Infosys complains that TriZetto identified "every aspect" of Facets and QNXT as a trade secret. But even if that were true, that is not a problem; district courts have found that an *entire* software platform, such as Facets and QNXT, can qualify as a trade secret. *See, e.g.*, *ResMan, LLC v. Karya Prop. Mgmt., LLC*, 2021 WL 3403935, at *4 (E.D. Tex. Aug. 4, 2021). For example, in *Resman*, the court found the plaintiff's claim for trade secret protection over its entire software program was "supported by the DTSA's broad definition of a trade secret," and that no language

---

[8] As discussed, the parties were still meeting and conferring when Infosys prematurely filed its motion. TriZetto had already offered to Infosys that it would consider supplementing its response in order to work together and avoid burdening the Court, and will serve such supplementation shortly. Myrold Decl. ¶¶ 4–6.

in the DTSA prevented the plaintiff from attempting to prove that its software program is, itself, a trade secret.  *Id*.  Moreover, a court recently found that it was reasonable for a jury to find that the Facets software platform *is* a trade secret; a finding that was affirmed on post-trial motions and by the Second Circuit.  *See Syntel Sterling Best Shores Mauritius Ltd. v. The TriZetto Grp.*, Case No. 15-cv-211 (LGS), Dkt. No. 977 at 8–10 (Apr. 20, 2021); *Syntel Sterling Best Shores Mauritius Ltd. v. The Trizetto Grp.*, 68 F.4th 792, 802–04 (2d Cir. 2023), *cert. denied*, 144 S. Ct. 352 (2023).

**D.    Infosys's Arguments for Demanding Further Specificity and Blocking Discovery Fail**

> **1.    TriZetto's Discovery Requests Seek TriZetto's Own Information and Information TriZetto Is Contractually Entitled to Review Under the NDAAs**

Infosys argues that TriZetto's discovery requests amount to a "fishing expedition" (Mot. at 15), but TriZetto is contractually entitled to the information it seeks pursuant to the NDAAs that Infosys signed—which, here, is **Infosys's** possession of **TriZetto's** confidential information. Specifically, "upon reasonable prior written notice of [TriZetto's] desire to audit [Infosys's] compliance with [the] NDAA," Infosys must "provide TriZetto with *access to [Infosys's] facilities and business records* as reasonably necessary for TriZetto to determine whether [Infosys is] in compliance with [the] NDAA."  *See e.g.,* Dkt. No. 35-3 at Ex. 2, Section 7(m) (emphasis added). Infosys nonetheless complains about the following requests, all of which are directly tied to whether Infosys complied with the NDAAs:

- "each individual affiliated with Infosys . . . that has or had access to any TriZetto Confidential Information, . . . the date that he or she was provided with access, the reason that individual was provided with access, the duration of such access . . . ."

- "For each individual identified . . . (i) the individual's role with Infosys, (ii) the type of TriZetto Confidential Information the employee had access to . . . ."

- "all central network locations . . . containing TriZetto Confidential Information . . . ."

*See* Mot. at 8.  Infosys thus contractually agreed to provide this information, breached its obligation to do so, and now improperly refuses to provide any discovery about its own access to and improper use of TriZetto's information under the NDAAs.

Infosys has also improperly refused to produce responsive documents on the basis that some of TriZetto's requests call for Infosys's "competitively sensitive" information.  *Id.* at 2. However, TriZetto's requests are narrowly and appropriately tailored to the specific acts of misappropriation in the Complaint.  For example, TriZetto seeks information about the QNXT Adaptor, which is the product Infosys built by misappropriating TriZetto's trade secrets:

- "all source code, all technical documentation, all user manuals, instructions, and guides relating to the QNXT Adaptor." (RFP No. 13).

-  "All documents concerning the creation and development of the QNXT Adaptor. . ." (RFP No. 14).

- "All communications concerning the QNXT Adaptor . . . ." (RFP No. 17).

*See Id*. at 9.  Nonetheless, Infosys has improperly refused to produce responsive documents to these requests.  The fact that responsive documents may also contain Infosys's confidential business information is not a proper basis to object, particularly given a robust, and agreed-upon, protective order will govern this case.  Myrold Decl. ¶ 9.

### 2. Infosys Refused to Allow TriZetto to Audit Infosys's Records in Breach of the NDAAs

While Infosys demands that TriZetto provide further specificity, at the same time, Infosys, has unlawfully concealed the information TriZetto would need to further specify the trade secrets Infosys misappropriated.  As a reminder, Infosys had extensive access—as permitted under NDAA—to TriZetto trade secret information.  Infosys then exceeded the bounds of that authorization and misused TriZetto trade secret information.  But Infosys has refused to allow TriZetto to audit Infosys's records, in direct and willful breach of its contractual obligations under

the NDAAs, such that TriZetto does not know the full details of what Infosys stole.  For example, Infosys complains that TriZetto has not identified "which" specific test cases Infosys misappropriated or "how many" test cases it misappropriated.  Mot. at 4.  But that level of specific detail is uniquely within *Infosys's* possession and Infosys has prevented TriZetto from auditing Infosys's records to determine the specific details of what exactly was used, by whom, and in what improper way.  It is remarkable, egregious, and a waste of this Court's time that Infosys demand that TriZetto narrow its trade secret identification before Infosys has produced a *single* document.

### 3.    Infosys Has Not Challenged the Misappropriation Claims

Although Infosys argues that TriZetto's misappropriation claims are based on "speculation" (Mot. at 4), Infosys did not move to dismiss TriZetto's trade secret claims on the basis that TriZetto failed to adequately allege acts of misappropriation.  *See generally* Dkt. No. 33.  Nor could it, as there is *direct* evidence of misappropriation.  Indeed, it would have been impossible for Infosys to develop the QNXT Adaptor or test cases for Facets without access to and use of TriZetto's trade secret information.  *See* Compl. ¶¶ 15, 43–46, 52–55.

Infosys simultaneously claims that TriZetto's misappropriation claims are "narrow" (Mot. at 4), but disingenuously claims that it does not know "what" it is being accused of misappropriating.  Mot. at 16.  TriZetto's Complaint and trade secret identification provide more than adequate notice of the trade secret information at issue.  And given the nature of Infosys's access to TriZetto's trade secret information, without discovery, TriZetto cannot provide further specificity.  Because Infosys had significant access to TriZetto's proprietary software, test cases, interfaces, data models, and other trade secret information under the NDAAs—access that was contractually restricted to only authorized persons and for narrowly permitted uses—TriZetto does not know, and cannot know without discovery, the full extent of Infosys's misuse of TriZetto's trade secret information.

16

4.      **Infosys Refused to Produce Discovery Relating to TriZetto's Breach of Contract and Unfair Competition Claims**

Infosys has also refused to produce discovery relating to TriZetto's *breach of contract and unfair competition claims* under the pretext that TriZetto has not sufficiently identified the *trade secrets* Infosys misappropriated.  This makes no sense and is facially improper.  For example, Infosys's motion cites requests that seek information concerning (1) what TriZetto confidential information Infosys has in its possession and (2) who at Infosys had access to that information. *See* Mot. at 8–9.  These requests are directly relevant to TriZetto's breach of contract claims, which allege, for example, that Infosys breached the NDAAs by giving certain employees—who were involved in the development of Infosys's competing software product—unauthorized access to TriZetto's confidential information to build the QNXT Adaptor.  *See* Compl. ¶¶ 43–46 (alleging that Infosys gave a Senior Technology Architect for Infosys's competing Helix platform access to TriZetto confidential information in violation of the Customer B NDAA).  Infosys has nonetheless refused to produce any documents in response to these plainly relevant requests.  TriZetto is not aware of any authority—nor has Infosys provided any—that would allow a party to withhold discovery related to *breach of contract claims* on the basis that a plaintiff has not specified its *trade secrets*.

## IV.     CONCLUSION

For the foregoing reasons, TriZetto respectfully requests that the Court deny Infosys's motion in its entirety, and order that Infosys produce all documents it is withholding on the basis that TriZetto has not yet sufficiently identified its trade secrets.

Dated:  February 7, 2025

GIBSON DUNN, & CRUTCHER LLP

*/s/ L. Kieran Kieckhefer*

L. Kieran Kieckhefer (*admitted pro hac vice*)
Elizabeth McCloskey (*admitted pro hac vice*)
Christina E. Myrold (*admitted pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
One Embarcadero Center, Suite 2600
San Francisco, CA 94111
Tel: 415.393.8200
kkieckhefer@gibsondunn.com
emcCloskey@gibsondunn.com
cmyrold@gibsondunn.com

Trey Cox (State Bar No. 24003722)
Betty Yang (State Bar No. 24088690)
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue Suite 2100
Dallas, TX 75201-2923 USA
Tel: 214.698.3226
byang@gibsondunn.com
tcox@gibsondunn.com

Ahmed ElDessouki (*admitted pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
(212) 351-2345
aeldessouki@gibsondunn.com

*Attorneys for Plaintiff Cognizant TriZetto Software Group, Inc.*

18

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 7, 2025, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which sent notification of the filing to all counsel of record.

Dated:  February 7, 2025                              */s/ L. Kieran Kieckhefer*
                                                       L. Kieran Kieckhefer