# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| COGNIZANT TRIZETTO SOFTWARE GROUP, INC., <br><br> Plaintiff, <br><br> v. <br><br> INFOSYS LIMITED, <br><br> Defendant. | Case No. 3:24-cv-2158-X <br><br><br> The Honorable Brantley Starr <br><br> Magistrate Judge David L. Horan |
| INFOSYS LIMITED, <br><br> Counterclaim Plaintiff, <br><br> v. <br><br> COGNIZANT TECHNOLOGY SOLUTIONS CORP. and COGNIZANT TRIZETTO SOFTWARE GROUP, INC., <br><br> Counterclaim Defendants. | |

**ORDER REGARDING DISCOVERY OF**
**ELECTRONICALLY STORED INFORMATION**

The Court ORDERS as follows:

1. This Order supplements all other discovery rules and orders. It streamlines Electronically Stored Information ("ESI") production to promote a "just, speedy, and inexpensive determination" of this action, as required by Federal Rule of Civil Procedure 1.

2. This Order may be modified at the Court's discretion or by agreement of the parties. If one of the parties wishes to modify this agreement but the parties do not agree to the proposed

1

modifications, the parties shall jointly submit their competing proposals and a summary of their dispute. No further briefing will be permitted unless requested by the Court.

3. A party's meaningful compliance with this Order and efforts to promote efficiency and reduce costs will be considered in cost-shifting determinations, but nothing in this Order shall affect a producing party's right to seek reimbursement for costs associated with collection, review, and/or production of ESI. Further, consistent with the Federal Rules of Civil Procedure, requests for production of ESI should be reasonably targeted, clear, and as specific as possible.

4. Except as expressly stated herein, nothing in this Order affects the parties' discovery obligations under the Federal or Local Rules, nor does anything in this agreement impose additional burdens beyond those imposed by those Rules, and the parties reserve all objections relating to the production of ESI and related materials which may not be specifically addressed herein.

**A.     Preservation**

5. Pursuant to Fed. R. Civ. P. 37(e), the parties have an obligation to take reasonable and proportionate steps to preserve discoverable information in the party's possession, custody, or control, including but not limited to emails, text messages, chat messages, and other similar forms of communication. The parties agree that the following data sources, although they may contain relevant information, are not reasonably accessible because of undue burden or cost, and need not be preserved, searched, or produced absent a good cause showing of a particularized need for the data as established by the facts and legal issues of the case. The parties shall not be required to modify the procedures used by them in the ordinary course of business to back-up and archive data and the following categories of ESI need not be preserved:

(a)     Deleted, slack, fragmented, or other data only accessible by forensics;

2

(b) Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system;

(c) On-line access data such as temporary internet files, history, cache, cookies, and the like;

(d) Back-up data that is substantially duplicative of data that is more accessible elsewhere;

(e) Data remaining from systems no longer in use that is unintelligible on the systems in use;

(f) Viruses;

(g) Public-facing websites;

(h) Operating system files, executable files, server, system, or network logs, electronic data temporarily stored by scientific equipment or attached devices;

(i) Data stored on photocopiers, scanners, and fax machines;

(j) Interim automatically saved drafts, as opposed to drafts saved by a user;

(k) Server, system, or network logs;

(l) Electronic data (e.g., email, calendars, contact data, and notes) sent to or from mobile devices (e.g., iPhone, iPad, and Android devices), provided that a copy of all such electronic data is automatically saved in real time elsewhere (such as on a server, laptop, desktop computer, or "cloud" storage); and

(m) Other forms of ESI whose preservation requires extraordinary affirmative measures that are not utilized in the ordinary course of business.

**B.     Permitted Culling**

6. De-duplication. The parties shall de-duplicate their ESI production across custodial and non-custodial data sources, and the duplicate custodian information removed during the de-

3

duplication process shall be tracked in the "All Custodians" field in the database load file, and the duplicate file path information shall be produced in the "All Paths" metadata field. If processing and production is done on a rolling basis, updated duplicate custodians and "All Paths" fields with additional values shall be provided in an overlay metadata load file. The producing party shall identify whether the overlay replaces previously produced fields for a file or supplements them.

7.   Email Threading. The parties may use email thread suppression to avoid review and production of information contained within an existing email thread in another document being reviewed and produced, but under no circumstances will email thread suppression eliminate (a) the ability of a requesting party to identify every custodian who had a copy of any version of the produced document or email, (b) the ability of a requesting party to identify any BCC recipients of any version of the produced document or email, or (c) remove from production any unique branches and/or attachments contained within an email thread.

8.   Excluding Email Domains. Producing parties may utilize an ESI search process to identify categories of documents, such as emails from domains typically associated with junk email, such as fantasy football-related emails, retailer advertising, and newsletters or alerts from non-industry sources. To the extent a party opts to exclude uniquely identifiable email domain names (e.g., emails from domains typically associated with junk or irrelevant topics like sports, fantasy team competitions, retailer advertising, and newsletters or alerts from non-industry sources) as part of its initial filter of potentially responsive documents, the parties agree to disclose domain names excluded under this paragraph.

9.   Embedded objects. Embedded, as opposed to linked, spreadsheets, Word documents, or PowerPoints will be extracted as separate documents and treated as attachments to the documents. The parties agree that embedded objects including, but not limited to, logos, icons,

4

emoticons, and footers, may be culled from a document set and need not be produced as separate documents by a producing party (e.g., such embedded objects will be produced within the document image itself, rather than as separate attachments).

10. **Other Permitted Culling.** A producing party is permitted to cull data using agreed-upon custodial and non-custodial source lists, agreed-upon date parameters, and agreed-upon search terms (if applicable), and a producing party is permitted to remove known system or operating files, such as those that appear on the National Software Reference Library (NSRL) hash list. As such, the parties may cull entire file directories from computer hard drives that contain Program Files, Program Data, SWTOOLs, Windows Operating System files, etc. For those excluded directories, the parties will only conduct searches on user-created content that is reviewable and likely to yield relevant content.

C. **Exchange of Custodians and Search Terms**

11. **Custodians.** Within 30 days of entry of this Order, the parties shall meet and confer to reach agreement on a reasonable list of custodians for purposes of collection, review, and production of ESI. In connection with the meet and confer process, each party shall provide a proposed list of individual custodians, including their job title and a brief description of their duties, who are knowledgeable about and were involved with the core issues or subjects in this case. If, after the parties identify initial ESI custodians, within 14 days, a receiving party determines that additional ESI custodians should be added, the receiving party shall advise the producing party in writing of the proposed additional ESI custodian(s) and the basis for the request. Within 7 days, the producing party shall consider in good faith whether the proposed additional ESI custodian(s) are relevant and proportional to the needs of the case. If, after good faith

consideration and the parties' meet and confer, the producing party refuses to add the receiving party's proposed, additional ESI custodians, the receiving party may raise the issue with the Court.

12. Search Terms. The parties shall meet and confer to reach agreement on search terms to be used for electronic searches of the files from the custodians. The parties recognize that initial search terms may require modification should a search produce an unreasonably large number of non-responsive or irrelevant results. If, after good faith consideration and the parties' meet and confer, the producing party refuses to agree to the receiving party's proposed search terms, the receiving party may raise the issue with the Court.

13. Substantial Completion. The parties shall substantially complete their respective document productions at least 120 days in advance of the close of discovery. "Substantially complete" means that both parties believe in good faith that they have identified and produced all the documents requested (with the understanding that there may be a small number of outstanding items or documents that support the party's case in chief).

14. Rolling Productions. The parties agree to produce documents on a rolling basis. The producing party will, as needed, supplement the load files with updated All Custodian information, as well as BCC information to the extent such metadata exists. Duplicate custodian information may be provided by a metadata "overlay" and will be provided by a producing Party with each production as needed.

15. Reservation of Rights to Update Lists of Custodians and Search Terms. Each party reserves its rights to seek documents from additional custodians identified through discovery or to request that the producing party employ additional search terms that become relevant as discovery progresses. The parties shall meet and confer in good faith to reach agreement on updated custodian lists and search terms subject to paragraphs 6 and 7.

16. Technology Assisted Review ("TAR"). If any party intends to use TAR, such as predictive coding, to limit the number of documents that it reviews or produces, it shall notify the requesting party in writing and identify the name and version number and a description of the TAR technology being used. This notification must be made 14 days prior to commencing review, and the non-requesting party shall have 7 days to object. Any party implementing TAR to limit the number of documents it reviews must achieve a minimum "recall" rate of at least 75% for those documents reviewed with TAR. Agreed-upon or Court-ordered search terms may be used to pre-cull the universe of documents before employing TAR. A party may use TAR, continuous active learning, or similar technology to sort documents for linear review without disclosure to the other parties. If, following efforts to meet and confer, the requesting party objects to a party's use of TAR, the requesting party may seek relief from the Court.

D. **Non-Custodial Data**

17. Unless otherwise agreed to by the parties in writing, nothing herein, including any provisions related to the exchange of custodians and search terms, shall excuse a party from reasonably identifying, searching, and producing from non-custodial data sources (including, but not limited to, databases, information archives, and shared drives) that are reasonably likely to have responsive information, nor shall it excuse a party from producing structured data when called for. The parties will work in good faith to agree to non-custodial sources and methods for reasonable searches of those sources on a case-by-case basis (including with search terms if appropriate).

E. **Production Format**

18. Absent agreement of the parties or further order of this Court, the following parameters shall apply to ESI production:

7

a. <u>Metadata</u>. For documents originating in electronic format (except for document types for which the specifications below are inapplicable, infeasible, or unduly burdensome), the exchanged Concordance load files shall contain unique field delimiters and, to the extent applicable, the following fields:

- Custodian (custodian for original version processed);

- All Custodians (all custodians who were in possession of a de-duplicated document);

- Beginning Bates Number (BEGBATES);

- Ending Bates Number (ENDBATES);

- Beginning Bates Number of Family Range (if applicable) (BEGATTACH);

- Ending Bates Number of Family Range (if applicable) (ENDATTACH);

- Family Identifier;

- OCR text (pointing to the .txt file link only) (if applicable);

- MD5 Hash; Date Created;

- Time Zone;

- Folder Path;

- Source Path;

- Virtual Path;

- File Name;

- File Type;

8

- From (for e-mail documents);
- Recipient(s) (for e-mail documents);
- Carbon Copy (CC) recipient(s) (for e-mail documents);
- Blind Carbon Copy (BCC) recipient(s) (for e-mail documents);
- Date Sent (for e-mail documents);
- Time Sent (for e-mail documents);
- Date Received (for e-mail documents);
- Time Received (for e-mail documents);
- Email Subject (for e-mail documents);
- Date Created;
- Time Created;
- Date Last Modified;
- Time Last Modified;
- Author;
- Confidentiality (identifies a document's confidentiality designation); and
- Redacted (identifies whether a document is redacted).

b. <u>General Document Image Format</u>. ESI shall be produced in single-page TIFF format for images produced in black and white, and JPEG format for images produced in grayscale or color; however, if such images cannot be produced legibly in TIFF or JPEG format, they will be produced in high resolution PDF format, unless the producing party elects to produce the document(s) solely in native format. Additionally, if an original document

contains color necessary to understand the meaning or content of the document, the producing party will honor reasonable requests for a color image of the document. Load files shall be provided to indicate the location and unitization of the files. Files shall be named with a unique Bates number followed by the appropriate file extension. If a document is more than one page, the unitization of the document and any attachments and/or affixed notes shall be maintained as they existed in the original document.

    c.    <u>Text-Searchable Documents</u>. No party has an obligation to make its production text-searchable; however, if a party's documents already exist in text-searchable format independent of this litigation, or are converted to text-searchable format for use in this litigation, including for use by the producing party's counsel, then such documents shall be produced in the same text-searchable format at no cost to the receiving party. Where available, in addition to the formats listed above, the text of native files should be extracted directly from the native file and a single multi-page text file shall be provided for each document. Text files need not contain the redacted portions of documents and OCR text files may be substituted instead of extracted text files for redacted documents.

    d.    <u>Footer</u>. Each document image shall contain a footer with a sequentially ascending Bates number, provided that, if a footer would obstruct any information on the document image, the sequentially ascending production number may be affixed to an alternative location on the document image. Additionally, responsive documents in TIFF, JPEG, or PDF format will be

stamped with the appropriate confidentiality designations in accordance with the Protective Order in this matter. For documents produced in native format, the slipsheet file indicating that the file was produced natively shall contain the confidentiality designation for the native file.

 e. <u>Parents and Attachments</u>. Parent documents with attachments, enclosures, and/or exhibits should be produced in the form in which they are kept. Electronic mail files with attachments should additionally be produced with attachments immediately following their respective parent email and the entire production range for the email and its respective attachments also provided (e.g., Beginning Family Range and Ending Family Range metadata fields populated) to the extent reasonably practical to do so.

 f. <u>Unitizing of Documents</u>. Distinct documents should not be merged into a single record, and single documents should not be split into multiple records (i.e., paper documents should be logically unitized). However, each 24-hour period in a text message chain or chat transcript may be treated as a single document.

 g. <u>Native Files</u>. Spreadsheets (e.g., MS Excel, Numbers) and audio or video media files will be produced in native format unless redacted. In the event spreadsheets require redactions, they shall be produced in Microsoft-equivalent format (.xls, .xlsx). These documents may be redacted using litigation database applications that can redact native Excel files, or in native format by inserting "[PRIVILEGED]" or "[PII]" in the cells from which data has been deleted before production. A party is not required to

11

produce the same ESI in more than one format. After initial production of electronic documents in electronic file format has occurred, a party may request that specific documents or file types be produced in native format by specifically identifying to the producing party the Bates number of the document sought and the good cause basis for the request for production in native format. The parties should then meet and confer in good faith to determine whether production in an alternative format is necessary. A party shall not make unduly burdensome and unreasonable requests for production of documents in native format, and a party shall not unreasonably refuse a request for the production of documents in native format. Documents originating in electronic format (including but not limited to Excel files, .txt files, and media files) that are produced in native format shall be labeled with a unique production number (i.e., Bates number) and produced with a slipsheet indicating that the document was produced in native format and containing the appropriate confidentiality designation in accordance with the Protective Order.

### F. Non-Party Subpoenas

19. Non-Party Document Productions. The recipient of a non-party document production shall serve a copy of that document production on all counsel of record within seven (7) days of receiving the document production. Service of documents or a file transfer link via email on a designated service list shall constitute compliance with this paragraph.

20. Informing Non-Parties of This Order. The parties agree to provide a copy of this Order with any document subpoena served in this Litigation.

**G.     Inadvertent Production of Privileged Material**

21.     If information is produced in discovery that is subject to a claim of privilege or other protection, the party making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must within 7 business days: either return or destroy the specified information and any copies it has or notify the producing party that it wishes to challenge the claim of privilege or work product protection and confirm the material will be sequestered until the issue is resolved. The receiving party may not use or disclose the information until the claim is resolved. The sole exception is for presenting the information to the court for a determination of the claim.

22.     Fed. R. Evid. 502(d). Pursuant to Fed. R. Evid. 502(d), the production of a privileged or work-product-protected document, whether inadvertent or otherwise, is not a waiver of privilege or protection from discovery in this case or in any other federal or state proceeding. For example, the mere production of privileged or work-product-protected documents in this case as part of a production is not itself a waiver in this case or in any other federal or state proceeding. This Order shall be interpreted to provide the maximum protection allowed by Fed. R. Evid. 502(d). The provisions of Fed. R. Evid. 502(b) do not apply. Nothing contained herein, however, is intended to limit a party's right to conduct a review of ESI for relevance, responsiveness, privilege, and/or other protection from discovery.

23.     Redactions. In addition for privilege, a producing party may redact personal information to the extent that the information falls within one of the following categories: (1) information that relates to the medical or health issues of an individual, (2) social security numbers, taxpayer-identification numbers, driver's license numbers, personal physical or email address information and/or phone numbers, passport numbers, financial-account numbers or other bank

13

account information, or personal passcodes. Such redactions should be identified as "PII" on the redactions.

**H.      Privilege Log**

24.    Where a discovery request appears to call for the production of documents, things, or ESI that contain both privileged and non-privileged responsive information, the responsive information shall be produced, but the privileged information may be redacted.

25.    For all documents that are withheld based on privilege or other protection, the parties will provide a privilege log in Excel format.  The parties will produce a privilege log no later than 120 days before the close of fact discovery.

26.    For each responsive document withheld entirely because of privilege, the parties agree to include the following metadata information on the privilege log:

      (a)    A unique identifying number for each logged document ad seriatim (i.e., the Beg Bates or Privilege Log ID);

      (b)    Custodian or source (the name of the person(s) or non-custodial source from which the document was collected);

      (c)    Date of the document or email;

      (d)    Document type (file extension or msg or similar indication of file type for e-mail);

      (e)    Document title (documents), so long as the disclosure would not reveal information itself privileged or protected; if the disclosure would reveal information itself privileged or protected, then the field shall indicate "Privileged";

(f) Subject line (email), so long as the disclosure would not reveal information itself privileged or protected; if the disclosure would reveal information itself privileged or protected, then the field shall indicate "Privileged";

(g) Author(s);

(h) Recipient(s), CC(s), BCC(s) (for e-mail and hard-copy communication such as letters and internal memoranda); and,

(i) The basis for the privilege claim (e.g., attorney-client; work product).

27. **Categorical Privilege Designations.** If a producing party contends that documents of a particular type or category are privileged, or requiring the creation of an individualized privilege log is not reasonable or proportionate for documents of a particular type or category, the producing party may identify such documents on a privilege log by category rather than individually. The producing party's categorical privilege log entry must still provide the receiving party, and the Court if necessary, with information sufficient to evaluate the producing party's privilege claims.

28. **Documents Excluded From Privilege Log.** The following are presumptively privileged and shall not be logged: (1) communications regarding this litigation between a party (or its agent) and outside litigation counsel (or an agent of such counsel working under their direction or supervision) after December 1, 2023; and (2) work product created by or at the direction of counsel for this litigation. Nothing in this Paragraph is intended to preclude negotiation of additional exclusions to reduce the burdens of privilege logging.

I. **Depositions**

29. In the event a custodian of a producing party is noticed for deposition, upon request, the producing party shall, 21 calendar days prior to a scheduled deposition, inform the noticing

15

party whether the producing party reasonably believes that all of the custodian's responsive documents have been produced or logged. The party noticing the deposition may elect to waive the requirements of this Paragraph, or extend the time for the party being deposed to make the disclosures required under this Paragraph.

**IT IS SO ORDERED.**

Dated: _____       _____
                                         The Honorable Brantley Starr
                                         UNITED STATES DISTRICT JUDGE