**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| COGNIZANT TRIZETTO SOFTWARE GROUP, INC., <br><br> Plaintiff, <br><br> v. <br><br> INFOSYS LIMITED, <br><br> Defendant. | Case No. 3:24-cv-2158-X <br><br> The Honorable Brantley Starr |
| INFOSYS LIMITED, <br><br> Counterclaim Plaintiff, <br><br> v. <br><br> COGNIZANT TECHNOLOGY SOLUTIONS CORP. and COGNIZANT TRIZETTO SOFTWARE GROUP, INC., <br><br> Counterclaim Defendants. | |

**COGNIZANT TECHNOLOGY SOLUTIONS CORP.'S AND COGNIZANT TRIZETTO
SOFTWARE GROUP, INC.'S REPLY IN SUPPORT OF THEIR MOTION TO
DISMISS INFOSYS LIMITED'S COUNTERCLAIM**

## TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................................. 1

ARGUMENT ......................................................................................................................... 1

    I.    Infosys Fails to Plead A Violation Of Section 2 Of The Sherman Act .................. 1

        A.  Infosys Fails to Allege Plausible Relevant Markets. ....................................... 1

        B.  Infosys Does Not Allege Monopoly Power. ..................................................... 4

        C.  Infosys Alleges No Exclusionary Conduct. ..................................................... 7

        D.  Infosys Fails To Allege Attempted Monopolization........................................ 9

        E.  Infosys Fails to Allege Antitrust Injury............................................................ 9

    II.   Infosys's Remaining Claims Fail................................................................................ 10

        A.  Infosys Fails to Plead A Violation Of Section 1 Of The Sherman Act. ........ 10

        B.  Infosys's Parallel Claims Under the Texas Free Enterprise and
Antitrust Act Fail. ........................................................................................... 10

CONCLUSION ........................................................................................................................ 10

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Am. Presid. Lines, LLC v. Matson, Inc.*,
  2025 WL 870383 (D.D.C. Mar. 19, 2025) .................................................................. 8

*Apani Sw., Inc. v. Coca-Cola Enters., Inc.*,
  300 F.3d 620 (5th Cir. 2002) .............................................................................. 2, 4, 6

*ASAP Paging Inc. v. CenturyTel of San Marcos Inc.*,
  137 F. App'x 694 (5th Cir. 2005) ............................................................................. 9

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .................................................................................................. 1

*BRFHH Shreveport, LLC v. Willis-Knighton Med. Ctr.*,
  49 F.4th 520 (5th Cir. 2022) ..................................................................................... 8

*Coronavirus Rep. v. Apple, Inc.*,
  85 F.4th 948 (9th Cir. 2023) ..................................................................................... 1

*Domed Stadium Hotel, Inc. v. Holiday Inns, Inc.*,
  732 F.2d 480 (5th Cir. 1984) ................................................................................ 5, 7

*In re Elev. Antitr. Litig.*,
  502 F.3d 47 (2d Cir. 2007) ....................................................................................... 8

*In re EpiPen Mktg., Sales Pracs. & Antitr. Litig.*,
  44 F.4th 959 (10th Cir. 2022) ................................................................................... 8

*Exxon Corp. v. Berwick Bay Real Est. Partners*,
  748 F.2d 937 (5th Cir. 1984) ............................................................................ 5, 6, 7

*Gamboa v. Apple Inc.*,
  2025 WL 660190 (N.D. Cal. Feb. 28, 2025) ............................................................ 4

*U.S. ex rel. Grubbs v. Kanneganti*,
  565 F.3d 180 (5th Cir. 2009) .................................................................................... 1

*IBM Corp. v. LzLabs GmbH*,
  2023 WL 11916812 (W.D. Tex. Mar. 24, 2023) ...................................................... 7

*Kolon Indus. v. I.E. DuPont de Nemours & Co.*,
  748 F.3d 160 (4th Cir. 2014) .................................................................................... 5

*Location Servs., LLC v. Dig. Recognition Network, Inc.*,
  2018 WL 5787317 (N.D. Tex. Nov. 5, 2018) ........................................................ 10

*Marucci Sports, LLC v. NCAA*,
  751 F.3d 368 (5th Cir. 2014) .................................................................................. 10

# TABLE OF AUTHORITIES
## (Continued)

**Page(s)**

*New Orleans Ass'n of Cemetery Tour Guides & Cos. v. New Orleans Archdiocesan Cemeteries*,
   56 F.4th 1026 (5th Cir. 2023) ...................................................................................3

*New York v. Facebook, Inc.*,
   549 F. Supp. 3d 6 (D.D.C. 2021) ..............................................................................7

*Newcal Indus., Inc. v. Ikon Off. Sol.*,
   513 F.3d 1038 (9th Cir. 2008) ..................................................................................2

*Novell, Inc. v. Microsoft Corp.*,
   731 F.3d 1064 (10th Cir. 2013) ................................................................................9

*Pac. Bell Tel. Co. v. linkLine Commc'ns, Inc.*,
   555 U.S. 438 (2009) ..................................................................................................7

*PSKS, Inc. v. Leegin Creative Leather Prods., Inc.*,
   615 F.3d 412 (5th Cir. 2010) ....................................................................................4

*Rebel Oil Co. v. Atl. Richfield Co.*,
   51 F.3d 1421 (9th Cir. 1995) ....................................................................................4

*Shah v. VHS San Antonio Partners, LLC*,
   985 F.3d 450 (5th Cir. 2021) ....................................................................................4

*Spectrofuge Corp. v. Beckman Instr., Inc.*,
   575 F.2d 256 (5th Cir. 1978) ....................................................................................3

*U.S. v. Microsoft Corp.*,
   253 F.3d 34 (D.C. Cir. 2001) ............................................................................4, 5, 8

*U.S. v. Sungard Data Sys., Inc.*,
   172 F. Supp. 2d 172 (D.D.C. 2001) .........................................................................3

*Univ. Hosp. Servs., Inc. v. Hill-Rom Holdings, Inc.*,
   2015 WL 6994438 (W.D. Tex. Oct. 15, 2015) ........................................................9

*Verizon Commc'ns, Inc. v. Curtis V. Trinko, LLP*,
   540 U.S. 398 (2004) ...............................................................................................7, 9

*Wickfire, LLC v. Trimax Media, Inc.*,
   2016 WL 4119917 (W.D. Tex. Mar. 25, 2016) .......................................................5

**INTRODUCTION**

Infosys Limited's ("Infosys") opposition brief reveals the weakness of its antitrust counterclaims against Cognizant TriZetto Software Group, Inc. ("TriZetto") and Cognizant Technology Solutions Corp. ("CTS") (collectively "Cognizant"). At every step, Infosys retreats to the most fringe theories of antitrust law and then points to bare-bones, conclusory allegations, essentially asking this Court to return to a world of notice pleading, where Infosys's claims proceed if any set of facts—no matter how implausible—are asserted in support of its radical claims. But as Infosys itself argues, Dkt. 33-1, at 6, under well-established law, a facially plausible claim is one that establishes more than a "sheer possibility" that the plaintiff's claim is true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Infosys's claims never make it past the realm of "merely conceivable," and must be dismissed. *U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 186 (5th Cir. 2009).

**ARGUMENT**

**I.      Infosys Fails to Plead A Violation Of Section 2 Of The Sherman Act**

**A. Infosys Fails to Allege Plausible Relevant Markets.** Infosys attempts to allege two separate markets: the payor software market, which includes products like Facets, QNXT, and Infosys Helix ("Helix"), and the IT services market, which provides IT support for those products. Countercl., Dkt. 46 ¶¶ 109–23. Infosys fails to plausibly allege either market because it does not identify what other products are in the alleged markets, explain why certain products are in and others are out, or otherwise define the necessary market contours. MTD 6–8.

Infosys contends that a market definition challenge "is not ripe" because it is a factual question best "reserved for the jury." Opp. 7. But courts consistently dismiss antitrust claims for failure to plausibly allege a relevant market where (as here) the deficiencies are evident on the face of the complaint. *See Coronavirus Rep. v. Apple, Inc.*, 85 F.4th 948, 955, 957 (9th Cir. 2023) ("A threshold step in any antitrust case is to accurately define the relevant market," and failing to do

1

so "alone is fatal to an antitrust claim."); *Apani Sw., Inc. v. Coca-Cola Enters., Inc.*, 300 F.3d 620, 628 (5th Cir. 2002) (same). Infosys argues that its alleged market definitions are "consistent with Cognizant's own allegations and public industry statements about the relevant products and services." Opp. 7. But neither those trade secret allegations nor public statements define the market "with reference to the rule of reasonable interchangeability" and in light of "all interchangeable substitute products." *Apani*, 300 F.3d at 628. That is what is required and utterly lacking here.

***Payor Software Market.*** Infosys's attempt to defend its proposed payor software market (Opp. 8) has the reverse effect and only proves the Counterclaim's deficiencies. Infosys argues it has alleged that healthcare payors rely on specialized software, such as QNXT, Facets, and Helix, to process insurance claims for their members and that "[p]ayors do not view building their own software as a viable substitute for commercial products" and would thus be willing to absorb a price increase to access such software. Opp. 8–9.

This argument is a remarkable recasting of Infosys's Counterclaim. In reality, Infosys alleges that there are different types of payor software, which it categorizes as "core products" or "other programs" (¶ 113), but neither its Counterclaim nor Opposition clarify whether the proposed market includes both categories or why. MTD 6–7. Likewise, Infosys does not allege whether payor software substitutes exist beyond Facets, QNXT, and Helix (¶¶ 113–17), even though a proposed relevant market "must encompass the product at issue **as well as *all* economic substitutes for the product**." *Newcal Indus., Inc. v. Ikon Off. Sol.*, 513 F.3d 1038, 1045 (9th Cir. 2008) (emphasis added). Infosys does not even attempt to justify this omission. Opp. 8–9.

Infosys's exclusion of "proprietary software products built by large healthcare payors" (¶ 109) from the alleged market is even more problematic because it directly conflicts with Infosys's own allegations that large payors do consider proprietary software products as an option

against which Helix competes. *See, e.g.*, ¶ 16 (alleging a customer "replaced its homegrown software with Infosys Helix"); ¶ 85 (alleging a customer "replac[ed] four internally-created . . . systems with an Infosys Helix coverage module"); *see also* Opp. 9 (noting that a "few large payors" have "proprietary products"). Infosys argues that most payors do not view building their own software as a viable substitute for products like Facets and Helix, but offers no facts to support this contention, which directly conflicts with the allegations it makes. MTD 7–8. Likewise, Infosys's suggestion that large payors with proprietary products do not "compete with Cognizant" because they do not sell to *other* payors misses the point. "When a customer can replace the services of an external product with an internally-created system, this captive output should be included in the same market." *U.S. v. Sungard Data Sys., Inc.*, 172 F. Supp. 2d 172, 186 (D.D.C. 2001) (cleaned up) (collecting cases); *see also Spectrofuge Corp. v. Beckman Instr., Inc.*, 575 F.2d 256, 278 (5th Cir. 1978) (same). Infosys tries to distinguish these decisions as based "on a full evidentiary record," Opp. 9 n.4, but no discovery is necessary to see the contradiction in the Counterclaim: Infosys cannot simultaneously admit that Helix competes against in-house options while categorically excluding such options from the proposed market. *See New Orleans Ass'n of Cemetery Tour Guides & Cos. v. New Orleans Archdiocesan Cemeteries*, 56 F.4th 1026, 1038 (5th Cir. 2023) (market definition implausible based on plaintiff's "own filings").

    ***IT services for healthcare payors.*** Infosys's defense of its proposed IT services market definition is equally unavailing. Infosys once again relies on conclusory allegations that the IT services for payors are specialized and rendered by "few firms" like Cognizant and Infosys, and that payors do not see more generalized IT providers or proprietary solutions as viable options. *See* Opp. 9. But Infosys provides no details about the nature of IT services for payors that would allow the Court to assess whether Infosys's alleged market excludes "interchangeable substitute

3

products." *Apani*, 300 F.3d at 628; *see* MTD 8.  For example, it is not clear from Infosys's Counterclaim whether technicians for Facets are interchangeable with technicians for QNXT, Helix, or any other payor software, or whether updates and other deliverables for one payor software are usable with any other payor software.  Without such clarity, it is impossible to assess whether Infosys has sought to define an improperly narrow market to artificially inflate Cognizant's apparent market share.  Dismissal is thus appropriate.  *See PSKS, Inc. v. Leegin Creative Leather Prods., Inc.*, 615 F.3d 412, 418 (5th Cir. 2010) (affirming dismissal where the market definition failed to "encompass[ ] interchangeable substitute products" or analyze "cross-elasticity of demand").

**B. Infosys Does Not Allege Monopoly Power.**  Infosys also fails to allege that Cognizant has monopoly power in either alleged market.  *See* MTD 9–13.  To start, absent a properly alleged relevant market, Infosys cannot plausibly allege Cognizant has monopoly power.  *See Shah v. VHS San Antonio Partners, LLC*, 985 F.3d 450, 454 (5th Cir. 2021).  Regardless, the failure to allege Cognizant's monopoly power either directly (by conduct analysis) or indirectly (by structural analysis) dooms its claim.  *U.S. v. Microsoft Corp.*, 253 F.3d 34, 51 (D.C. Cir. 2001).

*Direct Evidence.*  "[D]irect evidence" of monopoly power includes "evidence of restricted output and supracompetitive prices."  *Rebel Oil Co. v. Atl. Richfield Co.*, 51 F.3d 1421, 1434 (9th Cir. 1995).  Infosys argues the Counterclaim contains sufficient allegations of both reduced output and supracompetitive prices.  Opp. 5–6.  But that argument does not withstand scrutiny.  For example, Infosys argues that Cognizant reduced output by failing to make improvements to its software and limiting other companies' access to its proprietary information.  *Id.*  But Infosys never alleges facts connecting these actions to reduced output.  Indeed, the word "output" does not appear in the Counterclaim.  Infosys's conclusion also does not logically flow from the actual allegations.  "[A] restriction of output is a constraint on production of [payor software]," *Gamboa v. Apple Inc.*,

4

2025 WL 660190, at *10 (N.D. Cal. Feb. 28, 2025), but there is no reason Cognizant's alleged refusal to improve its software or limitations on third-party access reduce software availability. In fact, Infosys alleges these factors resulted in its own market entry. ¶¶ 12, 78, 114–17. Infosys's conclusory allegations of supracompetitive prices, *see* ¶¶ 19, 139–42, 162, 173, 184, 194, 205, are similarly insufficient as there are no facts tying market practices to Cognizant's alleged conduct. Such "conclusory allegation[s] [are] insufficient to establish [Cognizant] holds market power." *Wickfire, LLC v. Trimax Media, Inc.*, 2016 WL 4119917, at *7 (W.D. Tex. Mar. 25, 2016).

*Indirect Evidence.* In the absence of direct evidence, courts undertake a structural analysis of monopoly power, which "may be inferred from a firm's possession of a dominant share of a relevant market that is protected by entry barriers." *Microsoft*, 253 F.3d at 51 (citations omitted). Infosys posits that a plaintiff may demonstrate monopoly power by alleging that a defendant has at least 50% market share. Opp. 10–11. But the "Supreme Court has never found a party with less than 75% market share to have monopoly power," *Kolon Indus. v. I.E. DuPont de Nemours & Co.*, 748 F.3d 160, 174 (4th Cir. 2014), and the Fifth Circuit has observed that market share "below 70%" is "rarely" sufficient. *Exxon Corp. v. Berwick Bay Real Est. Partners*, 748 F.2d 937, 940 (5th Cir. 1984). Even Infosys's own authority calls into question the 50% threshold, noting "the widely accepted rule of thumb that[,] while a 90 percent market share definitely is enough to constitute monopolization, it is doubtful whether 60 or 64 percent would be enough." *Domed Stadium Hotel, Inc. v. Holiday Inns, Inc.*, 732 F.2d 480, 489 (5th Cir. 1984) (quotation marks omitted).

*Payor Software Market.* The Counterclaim includes a single conclusory allegation that Cognizant has a 65% share of the payor software market, ¶¶ 125, 129, but that statistic does not measure the allegedly monopolized market in which *payors* license software. *See* MTD 11. Infosys contends that this allegation is plausible because it comes from Cognizant's CEO, Opp. 11,

and, if challenged, is a factual question for the jury. But where legal error (here, because the wrong metric is used) is evident on the face of the Counterclaim, the Court need not wait to dismiss. *See Apani*, 300 F.3d at 628 (dismissal appropriate if, "when all factual inferences are granted in plaintiff's favor, the relevant market is legally insufficient"). Infosys also argues that Cognizant errs in simultaneously calling the 65% figure conclusory and challenging the factual premises underlying that figure. Opp. 12. But there is no tension in noting the absence of factual support in the Counterclaim and, at the same time, detailing the reasons for finding the conclusory claims implausible.

Regardless of the metric used, Infosys's allegations still fall short of the presumptive 70% threshold in this circuit for a monopolization claim. *Exxon*, 748 F.2d at 940. And because Infosys excludes in-house proprietary software, which Infosys admits several large payors use ¶¶ 81, 109; Opp. 9, the Court cannot credit the 65% market share alleged, making Infosys's claims of market power not only "doubtful" but legally insufficient.

The deficiency is underscored by the lack of meaningful allegations that Cognizant's market share is protected by barriers to entry. All but one of Infosys's allegations on this front are conclusory, *see* MTD 11 (gathering examples), and its recent success entering the market, with contract values already totaling "eight figures," ¶¶ 116–17, highlights that the alleged barriers to entry, such as the alleged need for "substantial resources, a high degree of technical sophistication, subject-matter expertise, and a strong reputation with payors," ¶ 127, are far from insurmountable.

***IT Services Market.*** Infosys's allegations regarding Cognizant's market share in the IT services market are even weaker, at most averring a "market share of greater than 50% of the healthcare payor IT services," ¶ 129, and providing ***no specific allegations*** about barriers to entry. Particularly when accounting for the lack of clarity about whether the proposed market encompasses servicing proprietary software, and whether servicing only for "core products" or also for

6

"other programs" (¶ 113) is included in the market, the alleged 50% share is legally insufficient to allege monopoly power. *Exxon*, 748 F.2d at 940; *Domed Stadium*, 732 F.2d at 489.

**C. Infosys Alleges No Exclusionary Conduct.** Infosys's Counterclaim turns on Cognizant's purported refusal to engage with Infosys, a direct competitor, on that competitor's preferred terms when it comes to either software licenses, training, or access to trade secret information. ¶ 8. But the Sherman Act generally does not restrict a company's right "freely to exercise [its] own independent discretion as to parties with whom [it] will deal." *Verizon Commc'ns, Inc. v. Curtis V. Trinko, LLP*, 540 U.S. 398, 408 (2004) (cleaned up). Even a monopolist may refuse to cooperate with a rival for whatever reason it sees fit, even when it "wants to prevent that rival from competing with it." *New York v. Facebook, Inc.*, 549 F. Supp. 3d 6, 24 (D.D.C. 2021) (collecting authorities).

Infosys attempts to sidestep this blackletter law by depicting Cognizant's alleged conduct as exclusionary. Infosys contends that Cognizant "imposes" its MFV provisions on licensees "against their wishes," Opp. 16, but cites no factual allegation establishing that any licensee unwillingly agreed to that term. *Cf.* ¶¶ 45–46. Infosys also posits that the Court cannot determine on the pleadings whether Cognizant's MFV provisions, NDAAs, and withholding of training are justified IP protections, Opp. 16–19, but where the lawful, procompetitive reasons for a defendants' actions (here, IP protections) are self-evident, courts in the Fifth Circuit may reject a plaintiff's "speculation" about anticompetitive conduct. *IBM Corp. v. LzLabs GmbH*, 2023 WL 11916812, at *7 (W.D. Tex. Mar. 24, 2023). And even if the procompetitive reasons for Cognizant's actions were not self-evident (they are), Cognizant is "free to choose the parties with whom [it] will deal, as well as the prices, terms, and conditions of that dealing." *Pac. Bell Tel. Co. v. linkLine Commc'ns, Inc.*, 555 U.S. 438, 448 (2009). As for predatory hiring, Infosys admits that simply hiring a rival's employees cannot provide a basis for antitrust liability, and so retreats to

7

the fringe, implausible theory that Cognizant hired high-level executives—***including its CEO***—to deny talent to Infosys and induce disloyalty before their departure. Opp. 19. This theory defies common sense, *see* MTD 16, and has no basis in specific factual allegations—if a plaintiff could state a Sherman Act claim simply by alleging that a former employee "ignore[d]" emails during his lame-duck period, ¶ 95, without any specific allegations of inducement, antitrust law would expand beyond recognition. As a matter of law, Infosys's claims fail.

It is no answer to argue that Cognizant's actions are collectively exclusionary, even if each form "viewed in isolation m[ay] be viewed as de minimis." Opp. 15 (quotation marks omitted). That rule, which concerns the degree of competition foreclosed, *see Microsoft*, 253 F.3d at 59, 69–71; *BRFHH Shreveport, LLC v. Willis-Knighton Med. Ctr.*, 49 F.4th 520, 530 (5th Cir. 2022), has no bearing on whether the conduct itself is wrongful. Nor can Infosys solve its pleading failure by accusing Cognizant of a collective "scheme." Opp. 20. Not only is this "monopoly broth" theory a disfavored outlier generally, *see In re EpiPen Mktg., Sales Pracs. & Antitr. Litig.*, 44 F.4th 959, 982 (10th Cir. 2022) ("courts disaggregate the exclusionary conduct into its component parts"); *Am. Presid. Lines, LLC v. Matson, Inc.*, 2025 WL 870383, at *10 (D.D.C. Mar. 19, 2025) (gathering authorities), it is also one rejected by the Fifth Circuit, *BRFHH*, 49 F.4th at 529.

Infosys attempts to reframe its lawsuit by arguing that it does not seek "forced sharing of an input it needs to compete with Cognizant," but instead to "avoid unreasonable restrictions" when it is hired by a payor that licenses TriZetto's software. Opp. 20. This false distinction takes Infosys's lawsuit outside of the ambit of "unilateral refusal[s] to deal" because Infosys *wants* Cognizant to "share" unbridled access to its IP (on Infosys's terms) so that Infosys can better compete in its IT servicing and develop Helix more effectively. *See In re Elev. Antitr. Litig.*, 502 F.3d 47, 52 (2d Cir. 2007) (dismissal where defendants allegedly refused to sell necessary parts).

8

Finally, Infosys suggests that its allegations pass the needle-eye *Aspen-Skiing* exception. Opp. 21. Nonsense. The *Aspen-Skiing* exception lies "'at or near the outer boundary of § 2 liability'" and applies only in "certain egregious circumstances," *ASAP Paging Inc. v. CenturyTel of San Marcos Inc.*, 137 F. App'x 694, 698 (5th Cir. 2005) (quoting *Trinko*, 540 U.S. at 409), where a monopolist had "a preexisting voluntary and presumably profitable course of dealing" with a rival and, in abandoning that prior course of dealing, willingly forsook "short-term profits to achieve an anti-competitive end." *Novell, Inc. v. Microsoft Corp.*, 731 F.3d 1064, 1074–75 (10th Cir. 2013) (cleaned up). Infosys nowhere alleges that Cognizant forsook any profits to implement its NDAAs or MFV provisions, or to hire Infosys's employees, and, as for training, Infosys admits it was "the prior owners of the software" (not Cognizant) that had the existing course of dealing, ¶ 75. This is not the outer-limits case to which *Aspen Skiing* applies.

**D. Infosys Fails To Allege Attempted Monopolization.** Infosys's attempted monopolization claim, which rests on the same set of purportedly anticompetitive conduct, ¶¶ 155–64, fails for the same reasons. Infosys does not plausibly allege any purported markets (or, in turn, any monopoly power therein), *see* MTD 6–8, or any exclusionary conduct, *see id.* 13–20. As for intent, Infosys suggests that Cognizant agrees that Paragraph 135 specifically alleges intent. Opp. 18. But this argument is as disingenuous as Infosys's selective excerpting of Paragraph 135, which concerns preventing IP theft, not excluding legitimate competition. *Compare* Opp 18, *with* MTD 21. And Cognizant's public statements about its growth are a far cry from the explicit calls for *eliminating competition* in Infosys's citations. *See Univ. Hosp. Servs., Inc. v. Hill-Rom Holdings, Inc.*, 2015 WL 6994438, at *7 (W.D. Tex. Oct. 15, 2015) (touting "'nobody else' could compete").

**E. Infosys Fails to Allege Antitrust Injury.** The Counterclaim alleges that the NDAAs' and MFV provisions "delay[ed] Infosys Helix's development," ¶¶ 137–38; in so doing, Infosys

9

has "not pleaded harm to other competitors, but only to itself, which is insufficient." *Location Servs., LLC v. Dig. Recognition Network, Inc.*, 2018 WL 5787317, at *2 (N.D. Tex. Nov. 5, 2018) ("The injury must be to the market as a whole, not just to the particular plaintiff."). Infosys now contends that the NDAAs and MFV provisions had "*market-wide* effects," including excluding other competitors, Opp. 24–25, but the Counterclaim alleges no facts to support this belated conclusory theory. Infosys's arguments about injury to competition, *see* Opp. 25, also rest on conclusory allegations focused on the delay in introducing Helix, with no attempt to explain how any other competitor (let alone competition) was affected by Cognizant's alleged actions, ¶¶ 139–43; *see Location Servs.*, 2018 WL 5787317, at *2 (dismissing Section 2 claim where "plaintiff makes conclusory allegations about reduced competition, higher prices, . . . [and] reduced output").

## II.     Infosys's Remaining Claims Fail

**A. Infosys Fails to Plead A Violation Of Section 1 Of The Sherman Act.** To state a Section 1 claim, Infosys must allege (1) an agreement (2) that unreasonably re-strained trade (3) in the relevant market. *Marucci Sports, LLC v. NCAA*, 751 F.3d 368, 373–75 (5th Cir. 2014). As explained above, Infosys's alleged product markets are legally insufficient, *see supra* 1–4, and Cognizant's NDAAs and MFV provisions are not unreasonable restraints of trade, *see* MTD 23–25. Nor has Cognizant "silently concede[d] it has market power." Opp. 23. Infosys ignores Cognizant's extensive discussion of that point, *see* MTD 9–13. Infosys also fails to point to *any* factual allegations establishing the agreements' anticompetitive effect. *See* MTD 14–16, 18–19, 24–25.

**B. Infosys's Parallel Claims Under the Texas Free Enterprise and Antitrust Act Fail.** Infosys does not contest that its Texas state-law claims rise or fall with its federal claims. Opp. 25.

## CONCLUSION

The Court should dismiss Infosys's Counterclaim for failure to state a claim.

|  |  |
|---|---|
| Dated: April 14, 2025 | /s/   *Rachel S. Brass* |

Rachel S. Brass (*admitted pro hac vice*)
   California Bar:  219301
L. Kieran Kieckhefer (*admitted pro hac vice*)
   California Bar:  251978
Elizabeth McCloskey (*admitted pro hac vice*)
   California Bar:  268184
GIBSON, DUNN & CRUTCHER LLP
One Embarcadero Center, Suite 2600
San Francisco, CA 94111
Tel:  415.393.8200
Fax: 415.393.8306
emccloskey@gibsondunn.com
kkieckhefer@gibsondunn.com
rbrass@gibsondunn.com

John T. Cox III
   Texas Bar:  24003722
Betty Yang
   Texas Bar:  24088690
Bradley G. Hubbard
   Texas Bar:  24090174
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue, Suite 2100
Dallas, TX 75201
Tel:  214.698.3226
Fax: 214.571.2900
tcox@gibsondunn.com
byang@gibsondunn.com
bhubbard@gibsondunn.com

Samuel G. Liversidge (*admitted pro hac vice*)
   California Bar:  180578
S. Christopher Whittaker (*admitted pro hac vice*)
   California Bar:  283518
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
Tel:  213.229.7000
Fax: 213.229.7520
sliversidge@gibsondunn.com
cwhittaker@gibsondunn.com

*Attorneys for Counterclaim Defendants*
*Cognizant TriZetto Software Group, Inc. and*
*Cognizant Technology Solutions Corp.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 14, 2025, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which sent notification of the filing to all counsel of record.


Dated: April 14, 2025                                       */s/ Rachel S. Brass*
                                                                          Rachel S. Brass