IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| COGNIZANT TRIZETTO SOFTWARE GROUP, INC., <br><br> Plaintiff, <br><br> v. <br><br> INFOSYS LIMITED, <br><br> Defendant. <br><br><br> INFOSYS LIMITED, <br><br> Counterclaim Plaintiff, <br><br> v. <br><br> COGNIZANT TECHNOLOGY SOLUTIONS CORP. and COGNIZANT TRIZETTO SOFTWARE GROUP, INC., <br><br> Counterclaim Defendants. | Case No. 3:24-cv-2158-X <br><br> The Honorable Brantley Starr <br><br> Magistrate Judge David L. Horan |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF-COUNTERCLAIM
DEFENDANT'S MOTION FOR PROTECTIVE ORDER**

**TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................................ 1

II. BACKGROUND .................................................................................................................. 3

    A. Infosys's Trade Secret Theft and Retaliatory Antitrust Claims ................................. 3

    B. Infosys Demands Discovery from Cognizant Executives ........................................... 4

III. ARGUMENT ....................................................................................................................... 5

    A. The Requested Discovery Is Designed to Harass an Apex Executive ........................ 5

    B. The "Discovery" Infosys Seeks Is a Fishing Expedition to Harass Cognizant's CEO 8

    C. At Minimum, the Court Should Stay Discovery of CEO Kumar ................................ 9

IV. CONCLUSION .................................................................................................................. 11

# **TABLE OF AUTHORITIES**

## Cases

*In re Akropan Shipping Corp.*,
   No. 86-cv-4873, 1990 WL 16097 (S.D.N.Y. Feb. 14, 1990) ...................................................... 9

*Bachemin by and Through Bachemin v. DDMS, LLC*,
   No. 22-cv-1976, 2023 WL 7280515 (E.D. La. Nov. 3, 2023) .................................................... 6

*Crosby v. La. Health Serv. and Indem. Co.*,
   647 F.3d 258 (5th Cir. 2011) ................................................................................................. 2, 9

*Family One v. Isaacks*,
   No. 22-cv-28, 2023 WL 4503537 (E.D. Tex. April 25, 2023) .................................................. 5

*Fujita v. United States*,
   416 F. App'x 400 (5th Cir. 2011) ............................................................................................. 9

*Greenfield Comm. Credit, L.L.C. v. Catlettsburg Refin., L.L.C.*,
   No. 03-cv-3391, 2006 WL 8456032 (E.D. La. Apr. 24, 2006) ................................................. 8

*Kinetic Concepts, Inc. v. Wake Forest Univ. Health Sciences*,
   Nos. SA–11–CV–163–XR, SA–11–CV–713–XR, 2014 WL 1787813 (W.D.
   Tex. May 5, 2014) .................................................................................................................... 5

*Motion Games, LLC v. Nintendo Co.*,
   No. 12-cv-878, 2015 WL 11143486 (E.D. Tex. Mar. 18, 2015) ........................................... 2, 5

*Oyekwe v. Rsch. Now Grp., Inc.*,
   No. 19-cv-1085, 2020 WL 1064868 (N.D. Tex. Mar. 4, 2020) ........................................ 2, 5, 9

*Pan Am. Life Ins. Co. v. La. Acquisitions Corp.*,
   No. 13-5027, 2015 WL 4168435 (E.D. La. July 9, 2015) ........................................................ 6

*Petrus v. Bowen*,
   833 F.2d 581 (5th Cir. 1987) .................................................................................................... 9

*Turner v. Novartis Pharms.*,
   No. 10-cv-175, 2010 WL 5055828 (E.D. La. Dec. 2, 2010) .................................................... 7

*Universal Analytics, Inc. v. MacNeal-Schwendler Corp.*,
   914 F.2d 1256 (9th Cir. 1990) ................................................................................................ 10

*Von Drake v. Nat'l Broad. Co.*,
   2004 WL 1144142 (N.D. Tex. May 20, 2004) .................................................................... 9, 10

## Rules

Federal Rule of Civil Procedure 26(b), (c) .................................................................................. 1, 8, 9

Plaintiff and Counterclaim Defendant Cognizant TriZetto Software Group, Inc. ("TriZetto") and Counterclaim Defendant Cognizant Technology Solutions Corp. ("CTS") (together "Cognizant") respectfully move for a protective order precluding Defendant and Counterclaim Plaintiff Infosys Limited ("Infosys") from requiring Cognizant to review and produce documents from Cognizant CEO Ravi Kumar ("CEO Kumar"). The discovery Infosys seeks from CEO Kumar is unjustified under Rule 26 and Fifth Circuit precedent and is harassment.

I.     INTRODUCTION

This case arose because Infosys stole Cognizant's intellectual property in violation of federal and Texas trade secret law by breaching multiple Non-Disclosure and Access Agreements ("NDAAs") it had entered into with Cognizant and used that stolen information in its own competing software and service offerings. *See generally* Dkt. No. 1. To distract from its theft, Infosys filed retaliatory and—as set forth in Cognizant's motion to dismiss, Dkt. No. 78—irreparably flawed antitrust counterclaims primarily premised on allegations that the very NDAAs that Infosys willfully violated constitute an unlawful restraint on trade. Dkt. No. 46 ¶ 133. In addition, it made baseless allegations against Cognizant's CEO, Ravi Kumar and two other executives, who were former Infosys employees who joined Cognizant for better opportunities. Infosys alleges, without evidence, that each of these executives intentionally delayed and stifled the development of Infosys's Helix product *while employed at Infosys*. Dkt. No. 46 ¶ 133. The vast majority of any information relating to these allegations is plainly in the possession, custody and control of Infosys.

Infosys now demands discovery directly from CEO Kumar in a transparent attempt to harass and burden Cognizant's CEO to dissuade Cognizant from enforcing its trade secret claims. Infosys has failed to provide any legitimate rationale for why such overbroad discovery is

warranted. Nor could it. It defies logic that any documents CEO Kumar possesses from his time *at Cognizant* could provide evidence regarding his purported actions while *at Infosys*. To the extent such evidence exists, it would be possessed by Infosys—not Cognizant. Cognizant has already identified and offered *14 other custodians* who actually possess documents from the relevant time period. And Cognizant has agreed to produce communications related to the recruitment of CEO Kumar (and the other executives) whose documents Infosys is demanding wholesale. Anything beyond those limited communications is disproportionate to the needs of this case.

Discovery is not a license to harass the CEO of the company that sued you in a transparent attempt to create leverage and pressure. Federal courts recognize that conducting discovery of an opposing party's senior executives creates the potential for "oppression, inconvenience, and burden to the executive and the corporation." *Oyekwe v. Rsch. Now Grp., Inc.*, No. 19-cv-1085, 2020 WL 1064868, at *2 (N.D. Tex. Mar. 4, 2020) (internal quotations omitted). Thus, such discovery is an avenue of last resort, to be used only when the same information cannot be obtained "through less-intrusive means," *Motion Games, LLC v. Nintendo Co.*, No. 12-cv-878, 2015 WL 11143486, at *1 (E.D. Tex. Mar. 18, 2015), and when "the executive possesses unique personal knowledge about the controversy," *Oyekwe*, 2020 WL 1064868 at *2 (citations omitted). Without some basis to believe that CEO Kumar's Cognizant documents contain relevant information (and Infosys has supplied none), this is nothing more than an impermissible "speculative fishing expedition." *Crosby v. La. Health Serv. and Indem. Co.*, 647 F.3d 258, 263 (5th Cir. 2011) (internal quotations omitted).

Accordingly, the Court should enter a protective order precluding Infosys from demanding CEO Kumar's post-hire Cognizant documents. Alternatively, the Court should enter a stay on any

such discovery until (1) it has issued a ruling on Cognizant's motion to dismiss and (2) all other "lesser means" of discovery have been exhausted.

## II. BACKGROUND

### A. Infosys's Trade Secret Theft and Retaliatory Antitrust Claims

As an IT services provider for some Cognizant clients, Infosys had access to Cognizant's proprietary software programs—Facets and QNXT—but only pursuant to strict NDAAs that limited Infosys's access to and use of that highly confidential trade secret information. Dkt. No. 1 ¶¶ 3, 29, 32. Infosys willfully violated those agreements and misappropriated Cognizant's trade secrets to attempt to bolster its own competing software offerings to better compete with Cognizant. Upon discovering Infosys's theft, Cognizant demanded Infosys provide information regarding its use of Cognizant's trade secrets pursuant to contractually mandated audits pursuant to the NDAAs. Tellingly, Infosys refused, and Cognizant then brought suit. Consistent with Infosys's refusal to agree to the contractually-mandated audit—Infosys has also stonewalled discovery in the case on TriZetto's claims and refused to produce any technical documents on pretextual grounds that Cognizant's trade secret identification is purportedly not sufficiently specific.

Infosys also filed baseless antitrust counterclaims to distract from its wrongdoing and to manufacture a counternarrative. Dkt. No. 46. Knowing it could not deny its willful violation of the NDAAs it agreed to sign, Infosys instead claimed (after the fact) that those NDAAs purportedly were unlawful under antitrust laws and improperly restrict competition. Infosys's reactive antitrust counterclaims are legally deficient, and Cognizant promptly moved to dismiss them on multiple grounds in March 2025. Dkt. No. 77.

3

Tangentially, Infosys also alleged a conclusory, secondary antitrust theory directed at CEO Kumar, who used to be an Infosys executive. In a story that defies Occam's Razor, Infosys alleges that Cognizant hired CEO Kumar and others from Infosys for the sole purpose of slowing down Infosys's Helix product and that they "delay[ed] and obstruct[ed] the development and marketing of Infosys's Helix product in the months leading up to their departures." Dkt. No. 46 ¶ 15. Not only is the narrative false, it is not a legally viable antitrust claim and Cognizant moved to dismiss Infosys's antitrust counterclaims in their entirety. Dkt. No. 77.

### B.    Infosys Demands Discovery from Cognizant Executives

Infosys's recent discovery efforts confirm that Infosys's false narrative is, indeed, a transparent attempt to harass CEO Kumar and create leverage and pressure. During negotiations of document custodians, Infosys insisted that CEO Kumar be a document custodian and that all of his documents since joining Cognizant be searched with unspecified search terms of Infosys's choosing. App'x 003, 006, 014, 031–032. Infosys insisted upon this despite Cognizant already agreeing to at least 14 other document custodians, and despite Cognizant explaining to Infosys that if there were any evidence that CEO Kumar acted improperly while at Infosys, Infosys (not Cognizant) would have such information. App'x 003, 023, 026–028. Counsel for Cognizant offered on multiple occasions to provide Infosys with alternative, less intrusive sources for the relevant information—and counsel for Infosys agreed to consider alternative proposals for other custodians but unequivocally refused for CEO Kumar. App'x 003, 023.

Infosys's insistence on running extensive search terms across years of emails of its competitor's CEO, with the promise of additional unreasonable discovery to come, has left Cognizant with no choice but to seek court intervention to protect CEO Kumar from needless, harassing, and intrusive discovery.

4

### III.   ARGUMENT

####   A.   The Requested Discovery Is Designed to Harass an Apex Executive

Though the Fifth Circuit, unlike other circuits, does not recognize the "apex doctrine" as an explicit method of completely limiting discovery from high-level (or apex) corporate executives, it has routinely protected such apex executives from unnecessary and onerous discovery burdens in the name of "avoid[ing] oppression, inconvenience, and burden to the executive and the corporation." *Oyekwe*, 2020 WL 1064868 at *2 (internal quotations omitted). Under Fifth Circuit doctrine, courts have "recognized the need for first utilizing less-intrusive means" before conducting apex discovery, such as "by way of deposing lesser ranking employees." *Family One v. Isaacks*, No. 22-cv-28, 2023 WL 4503537, *6 (E.D. Tex. April 25, 2023) (citing *Motion Games, LLC v. Nintendo Co.*, No. 12-cv-878, 2015 WL 11143486, at *1 (E.D. Tex. Mar. 18, 2015)). Thus, "unless the executive possesses unique personal knowledge about the controversy," it is only after a party seeks discovery via lesser ranking employees (or other less intrusive means), can that party seek discovery of a corporate party's apex executives. *Oyekwe*, 2020 WL 1064868, at *2 (internal quotations omitted). Thus, the burden lies with the party seeking discovery to show that their requested discovery is relevant before the burden shifts to the responding party to prove that the plaintiff "can obtain any relevant, desired information through less-intrusive means in order to be protected against the apex deposition." *Motion Games*, 2015 WL 11143486 at *1.

While the apex doctrine "typically" does not "shield[] corporate officers . . . from document discovery," *Kinetic Concepts, Inc. v. Wake Forest Univ. Health Sciences*, Nos. SA–11–CV–163–XR, SA–11–CV–713–XR, 2014 WL 1787813, at *2 n.2 (W.D. Tex. May 5, 2014), this is not a typical case. Infosys improperly seeks document discovery from CEO Kumar even though he was

5

employed by Infosys—not Cognizant—during the relevant time period. Moreover, the core allegations of anticompetitive behavior by CEO Kumar (which are entirely baseless) relate to conduct while he was an Infosys employee. Dkt. No. 46 ¶ 133. And Infosys has not made a single concrete allegation of any actionable anticompetitive conduct after CEO Kumar became Cognizant's CEO. Nothing justifies running search terms through all of CEO Kumar's documents after joining Cognizant.

In determining whether to permit apex discovery, courts in the Fifth Circuit have considered "(1) whether the [party seeking discovery] can demonstrate that the executive possessed personal or superior and unique knowledge, and (2) whether the information could be obtained from lower-level employees or through less burdensome means, such as written interrogatories." *Bachemin by and Through Bachemin v. DDMS, LLC*, No. 22-cv-1976, 2023 WL 7280515, at *12 (E.D. La. Nov. 3, 2023) (citing *Pan Am. Life Ins. Co. v. La. Acquisitions Corp.*, No. 13-5027, 2015 WL 4168435, at *4 (E.D. La. July 9, 2015)). Here, both factors weigh in favor of a protective order.

*First*, Infosys has not offered any viable reason why discovery of CEO Kumar's documents from his time employed by Cognizant are necessary to Infosys's case—any discovery needed is in Infosys's possession or could be obtained by other Cognizant custodians. Infosys claimed during the meet-and-confer process, without further explanation, that discovery is needed from CEO Kumar because he "featured prominently in [Infosys's] counterclaim." App'x 014. But the specific allegations in which CEO Kumar "feature[s] prominently" relate to erroneous allegations that he (along with two other former Infosys employees) delayed and stifled developments of Infosys's Helix product, **while still employed by Infosys**. *See* Dkt. No. 46 at ¶ 133. The Counterclaim is bereft of any allegations that involve post-hire conduct. *See, e.g.*, Dkt, No. 46

6

¶¶ 92–102. Documents relevant to Infosys's allegations are all pre-hire—this, they are either in Infosys's possession or can be provided (to the extent any exist) by the other Cognizant custodians who would have allegedly orchestrated such a "scheme" (which, of course, is vehemently denied). As such, because CEO Kumar has no "unique personal knowledge" vis-a-vis Cognizant during that time period, there is no legitimate basis to conduct apex discovery. *See Turner v. Novartis Pharms.*, No. 10-cv-175, 2010 WL 5055828, at *3-4 (E.D. La. Dec. 2, 2010) (quashing the depositions of apex executives where no unique knowledge was shown and where less intrusive means to obtain requested information existed).

*Second*, Cognizant has offered Infosys extensive "lesser means" by which to obtain information relevant to its antitrust claims, including those directed at CEO Kumar's purported conduct. Infosys, to protect against overburdening itself, has requested the parties institute a 200,000-document hit count cap after running search terms on each internal database—a goal that necessarily requires the parties to limit the number of document custodians. Cognizant has agreed, at the request of Infosys, to collect, search, and produce documents from 14 different corporate custodians—a number that should easily hit the requested document cap. Adding CEO Kumar is unnecessary given the breadth of "lesser," more knowledgeable witnesses—particularly given that the core allegations relate to time periods when CEO Kumar worked *for Infosys*. For example, Cognizant agreed to offer Noreen Kamka, Vice President of Human Resources for the Americas, and will agree to offer Sue Petros, Vice President of Global Talent Solutions, who each have more "personal or unique and superior knowledge" related to hiring. Further still, in the spirit of compromise, Cognizant has proactively offered to search for, collect, and produce centrally located documents related CEO Kumar on an ad hoc basis **outside of the requested 200,000-document cap**. This offer includes responsive Board of Director meeting materials and slide decks and,

though Cognizant maintains their irrelevance to the allegations of this case, documents related to the executives' recruitment and hiring. There is nothing more that Infosys could argue it is not receiving with respect to the allegations underlying this action or the recruitment and hiring of CEO Kumar, whether relevant or not. There is no need for discovery to be taken from CEO Kumar directly under Fifth Circuit precedent.

### B.  The "Discovery" Infosys Seeks Is a Fishing Expedition to Harass Cognizant's CEO

It is abundantly clear the discovery sought by Infosys from CEO Kumar is outside the scope of permissible discovery under Rule 26(b)(1), not relevant to the facts of the case, and, thus, could only be logically intended to harass and abuse Cognizant's CEO. It is well established that parties engaged in federal litigation "have no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings." *Greenfield Comm. Credit, L.L.C. v. Catlettsburg Refin., L.L.C.*, No. 03-cv-3391, 2006 WL 8456032, at *2 (E.D. La. Apr. 24, 2006) (quoting Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2000 amendments). Infosys seeks to add CEO Kumar as an additional custodian despite the undisputed fact that he was *employed by Infosys* during the relevant time period of Infosys's allegations. Infosys admits that CEO Kumar's only relevance relates to his alleged "anticompetitive conduct *before joining Cognizant*," App'x 031–032, which would either be information that Infosys has (alleged intentional slow play of Infosys's Helix product) or information that other Cognizant employees have (alleged communications or encouragement from Cognizant to Kumar for this purported (but completely not believable) effort). Tellingly, Infosys has provided no concrete proof—which, again, it would have if it existed—of CEO Kumar's alleged slow-play of Infosys's Helix product. Probing into Mr. Kumar's documents, therefore, does not appear to be designed to discover relevant information—it instead appears to be designed to cause "oppression, inconvenience, and burden

8

to" Mr. Kumar and Cognizant. *Oyekwe*, 2020 WL 1064868, at *2. "Rule 26(b), although broad, has never been a license to engage in an unwieldy, burdensome, and speculative fishing expedition." *Crosby*, 647 F.3d at 263 (citation omitted). These discovery demands are improper—both in content and by their apparent intent—and Cognizant is left with no choice but to request that this Court intervene to stop Infosys's overreach.

### C. At Minimum, the Court Should Stay Discovery of CEO Kumar

Cognizant requests a protective order blocking all document discovery from CEO Kumar. At a minimum, however, discovery related to CEO Kumar should be postponed until after the Court rules on Cognizant's motion to dismiss. District courts have "broad discretion and inherent power to stay discovery until preliminary questions that may dispose of the case are determined." *Fujita v. United States*, 416 F. App'x 400, 402 (5th Cir. 2011) (quoting *Petrus v. Bowen*, 833 F.2d 581, 583 (5th Cir. 1987)). And Federal Rule of Civil Procedure 26(c) authorizes district courts to stay discovery for "good cause." Fed. R. Civ. P. 26(c). It is well-established that good cause exists wherein "resolution of a preliminary matter may dispose of the entire action." *In re Akropan Shipping Corp.*, No. 86-cv-4873, 1990 WL 16097, at *2 (S.D.N.Y. Feb. 14, 1990) (citing *Petrus*, 833 F.2d at 583). "Among the factors that inform the court's discretion are: (1) the breadth of discovery sought; (2) the burden of responding to such discovery; and (3) the strength of the dispositive motion filed by the party seeking a stay." *Von Drake v. Nat'l Broad. Co.*, 2004 WL 1144142, at *1 (N.D. Tex. May 20, 2004). All factors compel a stay.

*First*, the discovery sought is overly broad. For example, in RFP 34, Infosys seeks "[a]ll communications with Ravi Kumar S, Shveta Arora, or Ravi Kiran Kuchibhotla relating to Infosys or competition in the Relevant Markets or Relevant Products" from January 1, 2018, through the present. That Infosys seeks communications dating back to 2018—even though CEO Kumar was employed at Infosys until October 2022—illustrates the massive overreach of the discovery

9

sought. Dkt. No. 46 ¶ 102. As explained above, Infosys does not get to harass Cognizant by going on a "fishing expedition" through the emails of its competitor's CEO simply because it made a tenuous allegation relating to his time as an employee at Infosys. *Cf. Krim v. BancTexas Grp., Inc.*, 989 F.2d 1435 (5th Cir. 1993) (ruling plaintiff failed to show how requested discovery before summary judgment motion would be anything but a "fishing expedition").

*Second*, Cognizant and CEO Kumar will be significantly burdened by Infosys's discovery requests—which are a slippery slope to an Apex deposition. Infosys is demanding that Cognizant spend time and effort collecting and reviewing materials from CEO Kumar that are clearly irrelevant. Cognizant has already offered relevant custodians for these overbroad discovery requests who are sufficient to obtain the documents requested. *See* App'x 023–028. And if Infosys identifies additional documents not covered by the proposed custodians, Cognizant has further offered to do targeted "go-get" collections of those documents. *Id.* This reasonable offer from Cognizant is more than adequate to cover Infosys's requests.

*Finally*, the strength of Cognizant's motion to dismiss compels a stay. *Von Drake*, 2004 WL 1144142, at *1 (granting a stay pending motion to dismiss because defendants had "substantial arguments for dismissal" and many of the discovery requests served on defendants were "overly broad and harassing"). Infosys's claims as a whole are baseless. As to the allegations against CEO Kumar specifically, they are further attenuated. Hiring a rival's employee is lawful unless it is done "not for purposes of using that talent but for purposes of denying it to a competitor." *Universal Analytics, Inc. v. MacNeal-Schwendler Corp.*, 914 F.2d 1256, 1258 (9th Cir. 1990). No company would hire a CEO for the purpose of denying his services to a competitor. Infosys's claim is nothing more than a pretext to improperly harass CEO Kumar.

10

## IV.  CONCLUSION

For the foregoing reasons, Cognizant respectfully requests that the Court grant this motion and enter a protective order preventing Infosys from seeking custodian discovery from CEO Kumar, or in the alternative, that no such discovery proceed until after a ruling on Cognizant's pending motion to dismiss.

Dated: May 9, 2025

Respectfully submitted,

*/s/ L. Kieran Kieckhefer*

L. Kieran Kieckhefer (*admitted pro hac vice*)
Rachel S. Brass (*admitted pro hac vice*)
Elizabeth McCloskey (*admitted pro hac vice*)
Christina E. Myrold (*admitted pro hac vice*)
**GIBSON, DUNN & CRUTCHER LLP**
One Embarcadero Center, Suite 2600
San Francisco, CA 94111
Tel:  415.393.8200
Fax:  415.393.8306
kkieckhefer@gibsondunn.com
rbrass@gibsondunn.com
emccloskey@gibsondunn.com
cmyrold@gibsondunn.com

John T. Cox III (SBN 24003722)
Betty Yang (SBN 24088690)
Bradley G. Hubbard (SBN 24090174)
**GIBSON, DUNN & CRUTCHER LLP**
2001 Ross Avenue, Suite 2100
Dallas, TX 75201
Tel:  214.698.3226
Fax:  214.571.2900
tcox@gibsondunn.com
byang@gibsondunn.com
bhubbard@gibsondunn.com

Samuel G. Liversidge (*admitted pro hac vice*)
Casey J. McCracken (*admitted pro hac vice*)
S. Christopher Whittaker (*admitted pro hac*

11

*vice*)
**GIBSON, DUNN & CRUTCHER LLP**
333 South Grand Avenue
Los Angeles, CA 90071
Tel:  213.229.7000
Fax:  213.229.7520
sliversidge@gibsondunn.com
cmccracken@gibsondunn.com
cwhittaker@gibsondunn.com

Ahmed ElDessouki (*admitted pro hac vice*)
**GIBSON, DUNN & CRUTCHER LLP**
200 Park Ave.
New York, NY 10166
Tel: 212.351.2345
aeldessouki@gibsondunn.com

*Attorneys for Plaintiff and Counterclaim Defendant Cognizant TriZetto Software Group, Inc. and Counterclaim Defendant Cognizant Technology Solutions Corp.*

**CERTIFICATE OF CONFERENCE**

I hereby certify that on April 24, 2025, counsel for Cognizant conferred with counsel for Infosys regarding the relief requested in this motion and confirmed the parties were at an impasse. The April 24, 2025 conference included Casey McCracken, Jamie France, Matthew Butler, Ahmed ElDessouki, Christina Myrold, and Katherine Worden for Cognizant, and Katharine McLaughlin, Laura Pelanek, Kelly Morrison, Casey Carlson, and Jariel Rendell for Infosys.  During this conference, the parties discussed their respective custodian lists, including Infosys's demand that Cognizant add Ravi Kumar to its list of custodians.  Counsel for Cognizant inquired as to the basis of Infosys's demand, and asked if Infosys would consider alternative proposals to obtain the information it believed to be relevant from sources other than CEO Kumar.  Counsel for Infosys stated it would refuse to consider alternative proposals and that they would insist on CEO Kumar being added to the custodian list.  Given counsel for Infosys's statement that it would not back down from its demand to conduct a full custodial search of CEO Kumar's documents, the parties were at an impasse on this issue.  In subsequent email correspondence on May 5, Infosys's counsel confirmed the parties were at an impasse on whether to add CEO Kumar to the list of custodians and conduct a search of CEO Kumar's custodial files.

The Parties could not reach agreement because counsel for Infosys refused to withdraw its demand to add CEO Kumar to Cognizant's list of custodians, stated it would refuse to consider alternative proposals or compromise positions, and indicated it would seek relief from this Court on the issue.

Dated:  May 9, 2025                                                    */s/ Casey McCracken*
                                                                                        Casey McCracken

## CERTIFICATE OF SERVICE

I hereby certify that on May 9, 2025, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which sent notification of the filing to all counsel of record.

*L. Kieran Kieckhefer*
L. Kieran Kieckhefer
