# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | |
|---|---|
| COGNIZANT TRIZETTO SOFTWARE GROUP, INC., <br><br>            Plaintiff, <br>      v. <br><br> INFOSYS LIMITED, <br><br>          Defendant. | Case No. 3:24-cv-02158-X <br><br> The Honorable Brantley Starr <br><br> Magistrate Judge David L. Horan |
| INFOSYS LIMITED, <br><br>         Counterclaim Plaintiff, <br>      v. <br><br> COGNIZANT TECHNOLOGY SOLUTIONS CORP. and COGNIZANT TRIZETTO SOFTWARE GROUP, INC., <br><br>       Counterclaim Defendants. | |

## INFOSYS LIMITED'S OPPOSITION TO PLAINTIFF-COUNTERCLAIM DEFENDANTS' MOTION FOR PROTECTIVE ORDER

## TABLE OF CONTENTS

TABLE OF AUTHORITIES......................................................................................................ii

INTRODUCTION....................................................................................................................1

BACKGROUND.......................................................................................................................2

    A.   Kumar's Personal Knowledge and Central Role Related to this Litigation.....................2

    B.   Infosys's Discovery Requests Seeking Kumar's Relevant Documents...........................4

    C.   Cognizant's Motion for a Protective Order....................................................................5

LEGAL STANDARD ...............................................................................................................6

ARGUMENT ............................................................................................................................6

    A.   Kumar Is an Appropriate Custodian Under Rule 26(b)(1).............................................7

        1.   Kumar's Documents Are Relevant to Both Parties' Claims....................................7

        2.   Producing Kumar's Documents Is Proportional to the Needs of the Case...............10

    B.   The Apex Doctrine Does Not Apply............................................................................12

    C.   Cognizant's Alternative Requested Stay Is Unwarranted, Unprecedented, and Inefficient............................................................................................................14

    D.   Cognizant's Filing of Its Motion Without Notice and Hours Before a Previously Scheduled Meet and Confer Supports Denial.............................................................16

CONCLUSION.......................................................................................................................17

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashford Inc. v. Unite Here.*,
    No. 3:15-CV-0262, 2015 WL 11121019 (N.D. Tex. May 12, 2015)..................................15

*Bachemin by & Through Bachemin v. DDMS, LLC*,
    No. CV 22-1976, 2023 WL 7280515 (E.D. La. Nov. 3, 2023)...........................................13

*Brown v. Bridges*,
    No. 12-cv-4947, 2015 WL 11121361 (N.D. Tex. Jan. 30, 2015)......................................17

*Cagle v. United Surgical Partners Int'l Inc.*,
    No. 3:20-CV-1681, 2021 WL 3710565 (N.D. Tex. Aug. 18, 2021)............................*passim*

*Discover Fin. Servs., Inc. v. Visa U.S.A., Inc.*,
    No. 04 CIV. 7844, 2006 WL 3230157 (S.D.N.Y. Nov. 8, 2006).......................................14

*In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.*,
    No. 17-MD-2785, 2018 WL 1440923 (D. Kan. Mar. 15, 2018)..........................................14

*Family One v. Isaacks*,
    No. 9:22-CV-00028, 2023 WL 4503537 (E.D. Tex. Apr. 25, 2023)..................................13

*Ford Motor Co. v. U.S. Auto Club, Motoring Div., Inc.*,
    No. 3-07-CV-2182, 2008 WL 2038887 (N.D. Tex. Apr. 24, 2008)...................................16

*Freedom Med., Inc. v. Premier Purchasing Partners, L.P.*,
    No. 5:09-CV-152, 2011 WL 13196168 (E.D. Tex. Apr. 29, 2011)..............................11, 12

*Gaedeke Holdings VII, Ltd. v. Mills*,
    No. 3:15-MC-36, 2015 WL 3539658 (N.D. Tex. June 5, 2015)...................................13, 14

*In re Generic Pharms. Pricing Antitrust Litig.*,
    490 F. Supp. 3d 901 (E.D. Pa. 2020)................................................................................13

*Griffin v. Am. Zurich Ins. Co.*,
    No. 3:14-CV-2470, 2015 WL 11019132 (N.D. Tex. Mar. 18, 2015).................................16

*j2 Glob. Commc'ns, Inc. v. Captaris, Inc.*,
    No. 6:08-CV-262, 2009 WL 10672155 (E.D. Tex. Apr. 16, 2009)....................................16

*Kinetic Concepts, Inc. v. Wake Forest Univ. Health Scis.*,
    No. SA-11-CV-163, 2014 WL 1787813 (W.D. Tex. May 5, 2014).......................12, 13, 15

*Lopez v. Don Herring Ltd.*,
    327 F.R.D. 567 (N.D. Tex. 2018) ...................................................................... 11

*Oyekwe v. Research Now Grp., Inc.*,
    No. 3:19-cv-1085, 2020 WL 1064868 (N.D. Tex. Mar. 4, 2020)............................ 6, 7, 13

*Samsung Elecs. Am., Inc. v. Yang Kun Chung*,
    321 F.R.D. 250 (N.D. Tex. 2017) .................................................................*passim*

*Sneed v. Abbot*,
    No. 21-279, 2021 WL 2877239 (M.D. La. June 29, 2021)................................... 15

*Valenzuela v. Crest-Mex Corp.*,
    No. 16-1129, 2017 WL 2778104 (N.D. Tex. June 26, 2017)............................ 14

*Vex Robotics, Inc. v. Cross the Road Electronics, LLC*,
    No. 3:23-CV-2586, 2025 WL 1384747 (N.D. Tex. May 13, 2025)................................... 15

*X Corp. v. Media Matters for Am.*,
    No. 4:23-CV-01175, 2024 WL 1895255 (N.D. Tex. Apr. 26, 2024)........................... 14, 15

**Statutes**

18 U.S.C. § 1836 .......................................................................................... 10

Tex. Civ. Prac. & Rem. Code § 134A.005 ................................................................. 10

**Other Authorities**

Fed. R. Civ. P. 26 ...................................................................................*passim*

Fed. R. Civ. P. 34 ...................................................................................... 4

Local Rule 7.1 ........................................................................................ 16

## INTRODUCTION

Cognizant's CEO, Ravi Kumar S., has openly declared himself "the custodian of Cognizant." App'x 7. Despite this admission—and the centrality of his strategic decisions to both parties' claims and defenses—Cognizant's motion seeks to shield Kumar's documents from discovery. Courts in this Circuit, however, consistently permit document searches for executives when their decision-making is relevant to the parties' claims and defenses. Under Kumar's leadership, Cognizant sued Infosys, alleging trade secret, unfair competition, and contract claims related to issues on which Kumar has undisputed personal knowledge. ECF No. 1. Haled into court to face a monopolist stifling competition, Infosys filed counterclaims to stop Cognizant's anticompetitive conduct. Counterclaim, ECF No. 49 ("CC"). This anticompetitive conduct is ongoing under Kumar's custodianship. Infosys alleges that Cognizant engaged in a monopolistic scheme to harm competition across the American healthcare payor software and IT Services markets. CC ¶¶ 1-20. Kumar—Infosys's former president—played a leading role in that scheme by delaying Infosys's competing product. CC ¶¶ 13-15. And as Cognizant's CEO he continues to lead Cognizant's ongoing anticompetitive scheme. *See, e.g.*, CC ¶¶ 16-20, 103-107, 132-135.

Cognizant's motion does not satisfy its burden for a protective order to avoid producing Kumar's highly relevant documents. Infosys's antitrust counterclaims, for example, rely in part on Kumar's public statements as evidence of Cognizant's monopoly power (65% share of the healthcare payor software market) and monopolistic intent (Kumar's plan to "double down" on Cognizant's healthcare dominance). CC ¶¶ 39, 50, 125. Cognizant struggled mightily to distinguish its CEO's statements in its motion to dismiss, highlighting their significant relevance. ECF No. 78, at 10-11; ECF No. 83, at 5-6, 9. Kumar's documents are also relevant to Cognizant's trade secret claims and Infosys's defenses, including statute of limitations, estoppel, and waiver arguments. Notably, Kumar was involved in certain business efforts while leading Infosys that

suddenly became supposed trade secret violations after he became Cognizant's CEO. Beyond baselessly claiming Kumar's documents are "irrelevant," Cognizant articulates *no* burden associated with producing his documents. Instead, Cognizant improperly relies on the "apex doctrine"—a doctrine that is not recognized in the Fifth Circuit and, in any event, does not apply to document discovery. Cognizant's novel alternative request for a *single-custodian* stay of discovery pending their meritless motion to dismiss is unwarranted and inefficient.

Infosys asks the Court to deny Cognizant's motion in its entirety and order Cognizant to produce Kumar's responsive documents in accordance with Rule 26(c)(2).

## BACKGROUND

### A.    Kumar's Personal Knowledge and Central Role Related to this Litigation.

Kumar was Infosys's president in 2019 when Infosys decided to enter the U.S. healthcare payor software market monopolized by Cognizant Technology Solutions Corp. ("CTS") and Cognizant TriZetto Software Group, Inc. ("Cognizant TriZetto"; collectively with CTS, "Cognizant"). Counterclaim, ECF No. 46 ("CC") ¶¶ 80, 83, 124. He was the primary executive sponsor for Infosys Helix, the company's new healthcare payor software. *Id.* ¶ 83. He controlled Infosys Helix's development budget, staffing, and resources. *Id.* ¶¶ 83, 93-100. Kumar initially championed Infosys Helix's development, and Infosys Helix enjoyed initial success breaking into the Cognizant-dominated healthcare payor software market. *Id.* ¶¶ 87-91. In 2022, however, Kumar's support for Infosys Helix vanished, as he began scheming with Cognizant to leave Infosys—and derail Helix on his way out. *Id.* ¶¶ 92-102. Kumar succeeded in stalling Infosys Helix's development and delayed its competitive progress by at least eighteen months—harming American healthcare payors but benefitting Cognizant, which announced Kumar as its CEO a few months later in January 2023. *Id.* ¶¶ 102, 106.

2

As Cognizant's CEO, Kumar became the leader of its anticompetitive scheme to monopolize not only the U.S. healthcare payor software market but also the related healthcare IT services market. *Id.* ¶¶ 102-108, 124-135. Under Kumar's leadership, Cognizant continued to target Infosys Helix by luring away two more Infosys executives overseeing the product's development: Shveta Arora and Ravi Kuchibhotla. *Id.* ¶¶ 103-107. As Kumar plotted with Arora and Kuchibhotla on their moves to Cognizant, they joined Cognizant's anticompetitive scheme from inside Infosys by stifling Infosys Helix through obfuscation, inaction, delay, and resource starvation. *Id.* ¶¶ 103-105. Ten months after Kumar became Cognizant's CEO, Arora left Infosys, and then she joined Kumar at Cognizant two months later in December 2023. *Id.* ¶ 105. Kuchibhotla continued to delay Infosys Helix from within Infosys for several more months before joining Kumar and Arora at Cognizant in 2024. *Id.* ¶¶ 104-105.

At Cognizant, Kumar is reportedly a hands-on CEO who "personally reviews every large deal on a weekly basis," App'x 12, in addition to "set[ting] the strategic direction of the company," App'x 15. In May 2024, Kumar publicly stated his monopolistic strategy, boasting Cognizant has "the largest platform in the United States for health care," with "65% of the U.S. insured population go[ing] through [Cognizant's] platform," and declaring his intent "to double down" on Cognizant's dominant position in healthcare. App'x 27. On another occasion, Kumar told the story of Cognizant's dominance in numbers: "Just look at the order of magnitude of what we do on TriZetto, 250-million-plus claims on annual basis approximately, 100-million-plus enrollments[,] . . . . [and] 3 billion electronic data interchange transactions." App'x 38. Kumar has made other public statements about Cognizant's dominance: Cognizant's "concentration is very high in Healthcare," App'x 58, is "the strongest in the market," and has "a pole position in healthcare." App'x 38.

Approximately eighteen months after Kumar became Cognizant's CEO and shortly after he installed Kuchibhotla as chief strategy officer, Cognizant filed this lawsuit against Infosys. ECF No. 1 ("Cognizant Compl."). Cognizant's claims center on two areas of Infosys's business in which Kumar had been deeply involved: Infosys Helix and the Business Assurance Store. *Id.* ¶¶ 42, 46, 58-61; *see also, e.g.*, App'x 63-70 (Kumar social media and press release touting the Business Assurance Store). In 2025, Kumar publicly commented about this case, saying "I am the custodian of Cognizant" and "What I did in the past is my past." App'x 7.

### B.    Infosys's Discovery Requests Seeking Kumar's Relevant Documents.

Infosys has issued several targeted Rule 34 requests to CTS and Cognizant TriZetto that require producing Kumar's responsive documents, given his personal knowledge and unique role as a senior executive at both Cognizant and Infosys. These requests seek:

- Documents related to the healthcare payor software and IT services markets and any analysis or assessment of pricing, cost, quality of those relevant products (First Set of RFPs to CTS, RFPs 4, 5, 22-24, 37-40 (App'x 79-82); Second Set of RFPs to Cognizant TriZetto, RFPs 59, 60, 77-79, 92-95 (App'x 95-99));

- Documents related to the strategy or business rationale for contracts for healthcare payor software and IT services, including specific provisions identified in the Counterclaim, as well as training programs (First Set of RFPs to CTS, RFPs 8-15, 18-21, 29-32 (App'x 79-82); Second Set of RFPs to Cognizant TriZetto, RFPs 63-70, 73-76, 84-87 (App'x 95-98));

- Documents related to Infosys's relevant product, Infosys Helix (First Set of RFPs to CTS, RFPs 26, 33, 34 (App'x 81-82); Second Set of RFPs to Cognizant TriZetto, RFPs 81, 88-89 (App'x 98));

- Documents identifying and discussing Cognizant's competition in the relevant markets and products (Second Set of RFPs to CTS, RFPs 90, 91 (App'x 118));

- Documents related to Cognizant's plan to offer new healthcare payor software or IT services, or to improve existing offerings (First Set of RFPs to CTS, RFPs 35-37 (App'x 82); Second Set of RFPs to Cognizant TriZetto, RFPs 90-92 (App'x 98-99));

- Documents related to the allegations in Cognizant's Complaint, including its contention that Infosys misappropriated trade secrets, engaged in unfair competition, and violated NDAAs in developing the Infosys Business Assurance Store and client adaptors (First Set of RFPs to Cognizant TriZetto, RFPs 1, 2, 5-9, 14, 38-41, 43-45 (App'x 128-34); Second Set of RFPs to Cognizant TriZetto, RFP 99 (App'x 99); First Set of RFPs to CTS, RFP 44 (App'x 83));

- Documents related to the predatory hiring of Kumar, Arora, Kuchibhotla, and attempted predatory hiring of other Infosys employees (Second Set of RFPs to Cognizant TriZetto, RFP 82 (App'x 98); First Set of RFPs to CTS, RFP 27 (App'x 81)); and

- Kumar's communications relating to Infosys or competition in the antitrust markets at issue. (Second Set of RFPs to Cognizant TriZetto, RFP 89 (App'x 98); First Set of RFPs to CTS, RFP 34 (App'x 82)).

### C.    Cognizant's Motion for a Protective Order.

Cognizant filed its Motion for Protective Order without notice to Infosys hours before a scheduled meet and confer to discuss the production of Kumar's documents along with other discovery issues. *See* App'x 3-4; ECF No. 101.[1] Cognizant's motion and certificate of conference do not mention the scheduled meet and confer, and Cognizant's appendix surprisingly omitted the correspondence about it. *Compare* ECF No. 102 ("Mot."), at 13, *and* ECF No. 103 ("Cognizant App'x") 4, *with* App'x 148-49 ("Cognizant is happy to meet and confer to discuss what additional steps Infosys believes must be taken on this front" and Infosys is "committed to conferring in an effort to resolve Cognizant's failures to fulfill its discovery obligations without court action."). Cognizant declined Infosys's request to correct its certificate of conference or supplement its exhibits with the parties' full correspondence on the topic. App'x 161-62. Although the previously scheduled meet and confer went forward on other topics, Cognizant refused to discuss the issue of

---

[1] Cognizant filed its Motion for Protective Order at 5:45 a.m. CDT on May 9, 2025. *See* ECF No. 98; App'x 140. Cognizant then refiled its motion later in the day (still ahead of the scheduled meet and confer). *See* ECF No. 101; App'x 144.

Kumar's documents. App'x 4-5. Cognizant never mentioned, let alone conferred about, its request for a single-custodian stay of discovery. App'x 5.

In addition to its procedural irregularities, Cognizant's motion contains misstatements. Cognizant's motion claims that "Infosys admits that CEO Kumar's only relevance relates to his alleged 'anticompetitive conduct before joining Cognizant,'" citing a May 5 email. Mot. at 8 (citing Cognizant App'x 31-32). But the referenced email says the opposite: "[Cognizant's] argument that these 'individuals were employees at Infosys during the relevant time period' ignores that Cognizant's anticompetitive conduct not only continued but worsened after Messrs. Kumar and Kuchibhotla and Ms. Arora joined Cognizant. Indeed, Cognizant's anticompetitive conduct is ongoing under their leadership." Cognizant App'x 31 (emphasis omitted). Similarly, Cognizant relies on Infosys's proposal for the parties to agree to cap the number of documents each side would need to review (i.e., a "hit count" cap) as a reason to exclude Kumar as a custodian. Mot. at 7-8. But the motion omits that Cognizant rejected the cap and that Infosys's proposal, even if accepted, would not have capped the number of custodians at all, much less required excluding Kumar—a critically important custodian. App'x 147-159.

## LEGAL STANDARD

A protective order under Federal Rule of Civil Procedure 26(c) is an extraordinary remedy, justified only when the moving party meets its burden to show a "particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *Cagle v. United Surgical Partners Int'l Inc.*, No. 3:20-CV-1681, 2021 WL 3710565, at *5 (N.D. Tex. Aug. 18, 2021) Horan, M. J. (quoting *In re Terra Int'l, Inc.*, 134 F.3d 302, 306 (5th Cir. 1998)).

## ARGUMENT

Cognizant has not met its burden to "show the necessity" of a protective order. Far from providing "a particular and specific demonstration of fact," Cognizant offers nothing more than

"stereotyped and conclusory statements." *Id.* Infosys requests the production of Kumar's documents because they are highly relevant to the parties' dispute and producing them is proportional to the needs of the case. The "apex doctrine" does not help Cognizant here because the Fifth Circuit does not follow that doctrine and, even if it did, the doctrine does not apply to document discovery. And Cognizant's alternative request for a single-custodian stay is unprecedented and unjustified.

### A.    Kumar Is an Appropriate Custodian Under Rule 26(b)(1).

"Under Rule 26(b)(1), discoverable matter must be both relevant and proportional to the needs of the case—which are related but distinct requirements." *Samsung Elecs. Am., Inc. v. Yang Kun Chung*, 321 F.R.D. 250, 279 (N.D. Tex. 2017). Infosys meets both requirements as to Kumar's documents, and Cognizant has not met its burden to prove otherwise.

### 1.    Kumar's Documents Are Relevant to Both Parties' Claims.

Kumar has personal knowledge and involvement related to both parties' claims. Cognizant has failed to offer any "specific demonstration of fact" to the contrary—such as a declaration certifying an absence of relevant documents. That is undoubtedly because no one at Cognizant, particularly Kumar himself, could credibly sign such a declaration.

Kumar's documents are relevant to Infosys's antitrust claims. As the self-described "custodian of Cognizant," his communications, analyses, and interactions with other Cognizant executives directly relate to Cognizant's monopolistic maneuvers. These types of documents therefore contain highly relevant, and unique, information about disputed issues including market definition, market power, monopolistic intent, and Cognizant's ongoing exclusionary conduct. Kumar's role in Cognizant's anticompetitive scheme began before he joined Cognizant, when he initially championed—and then derailed—Infosys's development of Infosys Helix to break Cognizant's monopoly. CC ¶¶ 14-15. But contrary to Cognizant's argument, his central role did

not end the moment he joined Cognizant. *Cf.* Mot. at 6 (incorrectly arguing Kumar's alleged anticompetitive conduct ended when he "became Cognizant's CEO"). As Cognizant's CEO since January 2023, Kumar has led Cognizant's ongoing anticompetitive conduct. Kumar, for example, continued to target Infosys Helix, hiring away its executive sponsor, Shveta Arora, in October 2023, and then Infosys's head of strategy who championed Infosys Helix, Ravi Kiran Kuchibhotla, in 2024.[2] CC, ¶¶ 15, 103-105. And just a year ago, Kumar publicly quantified Cognizant's market share in healthcare payor software as 65% and revealed Cognizant's intent to "double down" on its dominance. CC ¶ 125. Moreover, Kumar is a hands-on CEO who "sets the strategic direction of the company," and he has made numerous public statements about Cognizant's healthcare market position and strategic plans. App'x 15-17; *see also,* App'x 12, 15, 27, 38, 58. These points are more than enough to establish the relevance of Kumar's documents to Infosys's antitrust claims. *See, e.g.*, *Samsung*, 321 F.R.D. at 279 ("To be relevant under Rule 26(b)(1), a document or information need not, by itself, prove or disprove a claim or defense or have strong probative force or value.").

Kumar's documents, including communications with his new Cognizant colleagues and customers and any files he may have taken with him, are also relevant to Cognizant's claims for trade secret misappropriation, breach of contract, and unfair competition. Cognizant's Complaint discusses two Infosys projects: (1) the Business Assurance Store and (2) an adaptor Infosys constructed for a shared client that allows Infosys Helix to interface with Cognizant's product QNXT. *See* Cognizant Compl. ¶¶ 42, 46, 58-61. Kumar has knowledge about both. He was the

---

[2] Highlighting Kumar's relevance, Cognizant recently served an interrogatory demanding Infosys "[d]escribe in detail all alleged action or inaction taken by Ravi Kumar, Shveta Arora, and Ravi Kiran Kuchibhotla that allegedly delayed the development of Infosys Helix and threatened its viability as described in Paragraphs 92–108 of the Counterclaim." App'x 178. Yet Cognizant refuses to produce Kumar's directly related documents.

primary executive sponsor of Infosys Helix until he joined Cognizant. CC ¶¶ 14, 83. In that role, Kumar was privy to confidential information about Infosys Helix's development, functionality, marketing strategy, and customer negotiations, including details about the adaptor Infosys would design and build for a client it shared with Cognizant. *See id.* ¶¶ 83-101. Kumar is also knowledgeable about the Business Assurance Store, having personally publicized its launch through social media posts and press statements. App'x 63-70. In January 2018, for example, Kumar explained that Infosys's Business Assurance Store "solution is about expediting testing and utilizing test cases, built through our years of experience in delivering agility to our customers' businesses. Infosys Business Assurance Store is an endeavor to bring in transformation and fuel automation in the testing space and this solution is testimony of our deep experience of over 15 years." App'x 68. Given his personal knowledge about central events in Cognizant's complaint, Kumar's files, including communications to new colleagues and customers about Infosys, its products, and its services, are indisputably likely to contain documents relevant to Cognizant's own claims. *See Samsung*, 321 F.R.D. at 279. Indeed, the documents will shed light on how Kumar championed certain business initiatives while leading Infosys, but then determined those projects were supposed trade secret violations after he arrived at Cognizant.

Kumar's documents are equally relevant to Infosys's defenses. *See Samsung*, 321 F.R.D. at 279. Kumar's documents at Cognizant likely contain information about the Infosys Business Assurance Store and the adaptor inconsistent with statements he made while at Infosys about those projects. Curiously, Cognizant's complaint attacks two projects that personally involved Kumar during his time at Infosys. Among other things, Kumar's documents may refute Cognizant's contentions about when it "discovered" the Business Assurance Store. Cognizant claims to have done so in December 2023. *See* Cognizant Compl. ¶ 58. Yet Kumar, who was personally involved

9

in the Business Assurance Store, joined Cognizant in January 2023. His communications with other Cognizant executives about the Business Assurance Store may shed light on the veracity of Cognizant's allegation and the circumstances surrounding its "discovery" of a webpage that has been public since 2018. Both are relevant to Infosys's statute of limitations defense. *See* ECF No. 33, at 19-21 (moving to dismiss Cognizant's Business Assurance Store claims as time-barred). Kumar's documents are also relevant to other Infosys defenses, such as unclean hands, laches, and estoppel, given his unusual role as current CEO or former president of both companies suing each other in this case. *Cf.* App'x 12 (Industry observer noting "Kumar appears to be a boss who is happy to borrow ideas from his former employer Infosys."). Kumar's documents may also reveal the motivations for Cognizant's lawsuit, which is relevant to whether Infosys may be entitled to attorney's fees as to Cognizant's flimsy trade secret claims. *See* 18 U.S.C. § 1836(b)(3)(C); Tex. Civ. Prac. & Rem. Code § 134A.005(1).

### 2. Producing Kumar's Documents Is Proportional to the Needs of the Case.

Cognizant "has not met its burden under Rule 26(b)(1) to show that complying with the objected-to discovery requests would be unduly burdensome, expensive, or unnecessary or that the requests for information . . . are disproportionate to the needs of the case." *Cagle*, 2021 WL 3710565, at *6. Like the movant in *Cagle*, Cognizant's only "burden" argument is that Kumar's documents would be "irrelevant." Mot. at 10. "But that is not enough" because relevance and proportionality are "distinct requirements." *Cagle*, 2021 WL 3710565, at *6 (quoting *Samsung*, 321 F.R.D. at 279). Cognizant failed to "submit[] affidavits or offer[] evidence revealing the nature of [any] burden." *Lopez v. Don Herring Ltd.*, 327 F.R.D. 567, 580 (N.D. Tex. 2018). The only declaration Cognizant submitted with its motion does not even contain the word "burden." *See* Cognizant App'x 2-4. Because Cognizant "has not offered any actual evidence of the alleged

10

burden that it claims will result" from producing Kumar's documents, it "has waived any argument concerning the burdens that it may face if" required to produce Kumar's documents. *Cagle*, 2021 WL 3710565, at *6.

Regardless, every proportionality factor weighs in favor of producing Kumar's documents: "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Here, the discovery burden is not only reasonable, but also critical to exposing Cognizant's alleged anticompetitive scheme and defending against its affirmative claims.

*First*, the issues at stake in this case are important not only to the parties but also the public because the case has antitrust claims. "Discovery in antitrust cases must . . . be informed by the principle that discovery inconvenience may be outweighed by the public interest in seeking the truth in every litigated case." *Freedom Med., Inc. v. Premier Purchasing Partners, L.P.*, No. 5:09-CV-152, 2011 WL 13196168, at *2 (E.D. Tex. Apr. 29, 2011). *Second*, the amount in controversy flowing from the antitrust claims alone is significant, likely in excess of hundreds of millions of dollars. Both parties have monetary damages claims against each other, and Infosys is entitled to treble damages and attorneys' fees if it prevails on its antitrust claims. *See* CC ¶¶ 154, 164, 175, 186, 196, 207. *Third*, Cognizant is the party with possession, custody, or control of Kumar's documents at issue. *Fourth*, Cognizant has ample resources and a vast team of outside counsel capable of producing Kumar's documents with no disruption to Kumar's business activities. *Fifth*, the documents are important to resolving the issues, especially in light of the antitrust claims. *See supra* pp. 7-9; *Freedom Med.*, 2011 WL 13196168, at *2. *Sixth*, the likely benefit easily outweighs

11

the relatively modest burden of document discovery given Kumar's personal knowledge and his central role in both parties' claims and defenses here. *See supra* pp. 7-9.

Cognizant argues that requesting production of Kumar's documents is "a transparent attempt to harass and burden Cognizant's CEO." Mot. at 1. The argument is both conclusory and incorrect. There is no personal burden on Kumar because Cognizant can collect his files (which must already be under a litigation hold), review, and produce them without taking even a moment of Kumar's time or attention. Kumar is no different from the CEO in *Kinetic Concepts, Inc. v. Wake Forest Univ. Health Scis.*, No. SA-11-CV-163, 2014 WL 1787813, at *2 (W.D. Tex. May 5, 2014): "producing [his] emails will not involve his own time and will therefore not impose a personal burden on [him]." Kumar's "high-level role . . . does not make discovery of his emails any more or less burdensome than producing emails of other executives, which" Cognizant is "already do[ing]." *Id.* In reality, this motion attempts to deprive Infosys of critical documents relating to its antitrust claims and its defenses to Cognizant's trade secret claims.

In sum, applying Rule 26(b)(1) and (c) as written, Cognizant's motion for a protective order fails. *See, e.g.*, *Cagle*, 2021 WL 3710565, at *1, *2, *7 (denying motion for protective order as to relevance and authorizing depositions of corporate defendant's current and former CEOs).

## B.    The Apex Doctrine Does Not Apply.

Unable to satisfy its burden under Rule 26, Cognizant seeks to rely on the so-called "apex doctrine." Mot. at 5. Cognizant's reliance on the apex doctrine is misplaced. As Cognizant concedes, the Fifth Circuit does not recognize the apex doctrine. *Id.*; *see, e.g.*, *Gaedeke Holdings VII, Ltd. v. Mills*, No. 3:15-MC-36, 2015 WL 3539658, at *3 (N.D. Tex. June 5, 2015) ("[T]his Court is not subject to Texas state court decisions applying the so-called Apex Doctrine."). And even if this Court followed the "apex doctrine," it would not justify the protective order Cognizant seeks.

12

As Cognizant acknowledges, "[t]he apex doctrine typically only shields corporate officers from depositions and not from document discovery." *Kinetic*, 2014 WL 1787813, at *2. Cognizant attempts to exploit *Kinetic*'s use of the word "typically." Mot. at 5. But Cognizant does not cite a single case applying the "apex doctrine" to document discovery. *Cf., e.g., Family One v. Isaacks*, No. 9:22-CV-00028, 2023 WL 4503537, at *7-8 (E.D. Tex. Apr. 25, 2023) (deposition); *Oyekwe v. Rsch. Now Grp., Inc.*, No. 3:19-CV-1085, 2020 WL 1064868, at *2 (N.D. Tex. Mar. 4, 2020) (same). Even the factors Cognizant claims courts in the Fifth Circuit use to "determin[e] whether to permit apex *discovery*," Mot. at 6 (emphasis added), relate solely to apex *depositions*. *See Bachemin by & Through Bachemin v. DDMS, LLC*, No. CV 22-1976, 2023 WL 7280515, at *12 (E.D. La. Nov. 3, 2023). And, relevant here, "federal courts permit the depositions of high-level executives, sometimes referred to as apex executives, when conduct and knowledge at the highest levels of the corporation are relevant to the case." *Gaedeke*, 2015 WL 3539658, at *3.

Courts also regularly allow document discovery from CEOs, particularly in antitrust cases where—like Kumar—they played a personal role in the events or conduct at issue. *See, e.g., In re Generic Pharms. Pricing Antitrust Litig.*, 490 F. Supp. 3d 901 (E.D. Pa. 2020) ("The CEOs are designated as Tier 1 custodians."); *In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.*, No. 17-MD-2785, 2018 WL 1440923, at *3 (D. Kan. Mar. 15, 2018) (ordering former CEOs as document custodians where they had likely been involved in strategic discussions relevant to antitrust claims); *Discover Fin. Servs., Inc. v. Visa U.S.A., Inc.*, No. 04 CIV. 7844, 2006 WL 3230157, at *1 (S.D.N.Y. Nov. 8, 2006) (ordering corporate defendant "to cause a search of [its CEO's] office and home files for any documents (including electronic documents) that may be responsive to document requests served to date"); *see also Gaedeke*, 2015 WL 3539658, at *1, *4

13

(denying protective order as to deposition of corporate plaintiff's CEO where she had "personal knowledge" and "personal involvement in conduct that [wa]s relevant").

Infosys's request to produce responsive documents from Cognizant's CEO and self-declared "custodian" is not harassment, but rather a genuine request for essential discovery needed to pursue its antitrust counterclaims and defend against Cognizant's affirmative claims.

### C.  Cognizant's Alternative Requested Stay Is Unwarranted, Unprecedented, and Inefficient.

Cognizant alternatively requests a stay of discovery limited only to Kumar's documents. Mot. at 9. It does not seek to otherwise stay discovery pending its motion to dismiss. And its motion merely provides a recitation of the factors for a stay with conclusory statements that each element is satisfied. In actuality, all factors weigh heavily against the requested stay.

A stay of discovery in this District is an "extraordinary step." *Valenzuela v. Crest-Mex Corp.*, No. 16-1129, 2017 WL 2778104, at *5 (N.D. Tex. June 26, 2017). The party seeking the stay bears the burden of showing good cause, which requires a "particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *X Corp. v. Media Matters for Am.*, No. 4:23-CV-01175, 2024 WL 1895255, at *1 (N.D. Tex. Apr. 26, 2024) (quoting *Sneed v. Abbot*, No. 21-279, 2021 WL 2877239, at *5 (M.D. La. June 29, 2021)). Courts in this District consider three factors in evaluating whether to stay discovery while a potentially dispositive motion is pending: "(1) the breadth of discovery sought; (2) the burden of responding to such discovery; and (3) the strength of the dispositive motion filed by the party seeking a stay." *Id.* Cognizant has not met its burden as to any of the factors.

*First*, Cognizant's bare assertions that the breadth of discovery weighs in favor of a stay are insufficient to establish good cause. *X Corp*, 2024 WL 1895255, at *4. Cognizant makes a conclusory claim that Infosys's requests are a "fishing expedition." Mot. at 10. That claim is

wrong, *supra* pp. 7-10, but also insufficient to establish overbreadth, much less good cause. *Cf. Vex Robotics, Inc. v. Cross the Road Electronics, LLC*, No. 3:23-CV-2586, 2025 WL 1384747, at *4 (N.D. Tex. May 13, 2025) (Objection that an interrogatory was "overbroad and . . . constitute[d] an impermissible fishing expedition," without specific explanation or detail, was a "boilerplate objection[] . . . insufficient to resist a discovery request."). And the breadth of the disputed discovery—documents of a single custodian—is particularly narrow compared to the contemplated and necessary discovery for this complex case.

*Second*, Cognizant's claim that "Cognizant and CEO Kumar will be significantly burdened by Infosys's discovery requests," Mot. at 10, is conclusory and illogical. Cognizant suffers no burden beyond "the usual inconveniences and costs that are associated with discovery practice." *Ashford Inc. v. Unite Here.*, No. 3:15-CV-0262, 2015 WL 11121019, at *2 (N.D. Tex. May 12, 2015). Such routine discovery burdens do not establish good cause for a stay. *See X Corp*, 2024 WL 1895255, at *4. And Kumar will incur no personal burden at all: outside counsel will collect, review, and produce his responsive documents. *See Kinetic*, 2014 WL 1787813, at *2. Cognizant's fallback argument that producing Kumar's documents is a "slippery slope to an Apex deposition," Mot. at 10, is triply flawed: (1) Kumar has undisputed personal knowledge, so his deposition would be that of a percipient witness, not an uninvolved "apex" individual; (2) the apex doctrine, even if recognized in this District, applies only to depositions, not document discovery, *supra* pp. 13-14; and (3) the slope is only slippery if Kumar's documents will provide more reasons to depose him—in other words, Cognizant is implicitly admitting that Kumar's documents will be highly relevant, which is the very reason they must be produced.

*Third*, Cognizant's motion to dismiss is meritless and, in any event, would not dispose of the entire case. A stay should not be granted simply because a party believes it will prevail on its

dispositive motion. *Griffin v. Am. Zurich Ins. Co.*, No. 3:14-CV-2470, 2015 WL 11019132, at *2 (N.D. Tex. Mar. 18, 2015). Additionally, it is "significant" that Cognizant's pending motion would not dispose of the entire case and, therefore, would not avoid the need for discovery altogether. *See, e.g., Ford Motor Co. v. U.S. Auto Club, Motoring Div., Inc.*, No. 3-07-CV-2182, 2008 WL 2038887 at *1 (N.D. Tex. Apr. 24, 2008). Here, even if the Court grants Cognizant's Motion to Dismiss, Kumar's documents would still be relevant to the remaining claims and defenses in the case. *See supra* pp. 8-10.

   *Finally*, Cognizant's requested single-custodian stay is unprecedent and inefficient. Cognizant cites no case where this Court has stayed discovery from just one custodian, let alone a custodian with undisputed personal knowledge of key issues in the case. That is because a single-custodian stay would be contrary to the principle that conducting discovery on overlapping issues in tandem promotes judicial economy. *See, e.g., j2 Glob. Commc'ns, Inc. v. Captaris, Inc.*, No. 6:08-CV-262, 2009 WL 10672155, at *4 (E.D. Tex. Apr. 16, 2009). Cognizant's single-custodian stay would lead to piecemeal discovery and risk jeopardizing the expeditious discovery schedule set by the Court.

   Cognizant's single custodian stay request should be denied because they cannot satisfy any factor supporting their novel request.

   **D.    Cognizant's Filing of Its Motion Without Notice and Hours Before a Previously Scheduled Meet and Confer Supports Denial.**

   Local Rule 7.1(a) requires an attorney for the moving party to "confer with an attorney for each party affected by the requested relief to determine whether the motion is opposed." Cognizant did not comply with this Rule. It never told Infosys about its motion, filed it hours before a scheduled meet and confer about the production of Kumar's documents, and never even mentioned to Infosys its request for a stay of discovery. Cognizant's certificate of conference does not specify

16

whether Infosys opposes the motion because Cognizant never asked. Equally troubling, Cognizant appended an incomplete email chain regarding the topic of the motion, omitting correspondence expressing the parties' *mutual* willingness to meet and confer to resolve this precise dispute without court intervention. *Compare* Cognizant App'x 4, 22-39, *with* App'x 148-49; *see also* App'x 161-62 (Cognizant declining to correct the record). The Court may exercise its discretion to deny Cognizant's motion on these grounds alone. *See Samsung*, 321 F.R.D. at 285 ("Failure to confer generally serves as a basis for denying a discovery motion." (quoting *Brown v. Bridges*, No. 12-cv-4947, 2015 WL 11121361, at *4 (N.D. Tex. Jan. 30, 2015)); *see also id.* at 287-88.

## <u>CONCLUSION</u>

"The custodian of Cognizant" should be one of Cognizant's custodians in this case. Kumar's documents relate to nearly all of the claims and defenses in this case, and he may be the unique custodian for key documents relating to some subjects. Infosys therefore requests that the Court deny Cognizant's motion in full and order Cognizant to produce Kumar's responsive documents, in accordance with Rule 26(c)(2).

Dated: May 23, 2025

Respectfully submitted,

JENNER & BLOCK LLP

By: */s/ Douglas E. Litvack*

Brent Caslin (*pro hac vice*)
Nick Saros (*pro hac vice*)
Kelly M. Morrison (*pro hac vice*)
515 S. Flower Street, Suite 3300
Los Angeles, CA 90071
Tel.: (213) 239-5100
BCaslin@jenner.com
NSaros@jenner.com
KMorrison@jenner.com

Shoba Pillay (*pro hac vice*)
Katherine McLaughlin (*pro hac vice*)
Laura E. Pelanek (*pro hac vice*)
353 N. Clark Street
Chicago, IL 60654
Tel.: (312) 222-9350
SPillay@jenner.com
KMcLaughlin@jenner.com
LPelanek@jenner.com

Douglas E. Litvack (*pro hac vice*)
Jariel A. Rendell (*pro hac vice*)
1099 New York Avenue, NW
Suite 900
Washington, DC 20001
Tel: (202) 639-6000
DLitvack@jenner.com
JRendell@jenner.com

LYNN PINKER HURST &
SCHWEGMANN, LLP
Christopher J. Schwegmann
State Bar No. 24051315
cschwegmann@lynnllp.com
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
Tel: (214) 981-3835
Fax: (214) 981-3839

*Attorneys for Defendant and Counterclaim
Plaintiff Infosys Limited*

18

## CERTIFICATE OF SERVICE

I hereby certify that on this 23rd day of May, 2025, I caused the foregoing to be electronically filed with the clerk of the court for the U.S. District Court for the Northern District of Texas, by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record, a true and correct copy of the foregoing instrument and all attachments.

/s/ *Douglas E. Litvack*
Douglas E. Litvack (*pro hac vice*)