**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| COGNIZANT TRIZETTO SOFTWARE GROUP, INC., <br><br> Plaintiff, <br><br> v. <br><br> INFOSYS LIMITED, <br><br> Defendant. <br><br>——————————————— <br><br> INFOSYS LIMITED, <br><br> Counterclaim Plaintiff, <br><br> v. <br><br> COGNIZANT TECHNOLOGY SOLUTIONS CORP. and COGNIZANT TRIZETTO SOFTWARE GROUP, INC., <br><br> Counterclaim Defendants. | CASE NO. 3:24-cv-2158-X <br><br> Honorable Brantley Starr <br><br> Magistrate Judge David L. Horan <br><br> **ORAL ARGUMENT REQUESTED** |

**SUPPLEMENTAL JOINT REPORT REGARDING TRIZETTO'S MOTION TO COMPEL RESPONSES TO INTERROGATORY NOS. 1–3**

Pursuant to the Court's June 12, 2025, Order on TriZetto's Motion to Compel Responses to TriZetto's Interrogatory Nos. 1–3 (Dkt. No. 119), the parties file the following Supplemental Joint Report regarding their discovery disputes regarding TriZetto's Motion to Compel Responses to Interrogatory Nos. 1–3. The parties respectfully request oral argument as set forth in their previously filed Joint Request for Oral Argument (Dkt. No. 118).

**I.    THE PARTIES' SUBSEQUENT MEET-AND-CONFER EFFORTS**

**(a)    Supplemental Conferences:** Infosys served its Second Amended Answers and Objections to TriZetto's First Set of Interrogatories ("Amended Responses") on Friday, June 13,

2025. On Tuesday, June 17, 2025, the parties met and conferred by videoconference for approximately one hour. Casey McCracken, Ahmed ElDessouki, and Hannah Wilkens participated in the conference on behalf of TriZetto, and Kelly Morrison, Katharine McLaughlin, and Casey Carlson participated in the conference on behalf of Infosys.

After exchanging emails and drafts of proposals to resolve the dispute, the parties met and conferred again on Thursday, June 19, 2025, by videoconference for approximately 20 minutes. Casey McCracken, Ahmed ElDessouki, and Hannah Wilkens participated in the conference on behalf of TriZetto, and Kelly Morrison and Katharine McLaughlin participated in the conference on behalf of Infosys.

The parties met and conferred again on June 25, 2025 by videoconference for approximately forty-five minutes. Ahmed ElDessouki, Hannah Wilkens, and Amanda Bello participated in the conference on behalf of TriZetto, and Kelly Morrison, Katharine McLaughlin, and Carolina Abboud participated in the conference on behalf of Infosys. An agreement was reached as to most of Interrogatory No. 3, but not Interrogatory Nos. 1 and 2.

The parties began exchanging drafts of this Supplemental Joint Report beginning June 20, 2025. Because it appeared the parties were making progress on their disagreement, Infosys suggested the parties approach the Court to extend the deadline for this Supplemental Joint Report by one week to allow for further discussion. Cognizant ultimately agreed to a more limited, three-day extension.

**(b)    The matters resolved by agreement:** Counsel for the parties reached an agreement as to Interrogatory No. 3 as set forth in this Supplemental Report below (Section III), but disagree as to the timing of Infosys's amended response. The parties were not able to resolve their disputes as to Interrogatory Nos. 1 and 2 as set forth in this Supplemental Report (Section II).

2

(c)    **The specific matters that need to be heard and determined by the Court:**

- **Interrogatory Nos. 1–2:** Whether Infosys should be compelled to respond further to Interrogatory Nos. 1–2.

- **Interrogatory No. 3:** The parties only dispute the schedule for an amended response to this interrogatory.

(d)    **A detailed explanation of why agreement could not be reached as to those matters, including all arguments and authorities on which each party relies as to each matter that could not be resolved by agreement:**  The parties provide their respective positions as to each disputed Interrogatory Request below.

## II.    DISPUTE REGARDING TRIZETTO'S INTERROGATORY NOS. 1 AND 2

### Interrogatory No. 1

Identify each individual affiliated with Infosys (including, without limitation, any employee, contractor, officer, director, attorney, and agent) that has or had access to any TriZetto Confidential Information, and for each individual, identify the date that he or she was provided with access, the reason that individual was provided with access, the duration of such access, and how access was provided and terminated.

### Interrogatory No. 2

For each individual identified in Your response to Interrogatory No. 1, describe (i) the individual's role with Infosys, (ii) the type of TriZetto Confidential Information the employee had access to, and (iii) whether the individual was involved in developing, managing, marketing, testing, or selling Infosys commercial software products that are or were ever competitive with TriZetto products.

### A.    TRIZETTO'S POSITION:

Infosys is playing a discovery shell game designed to delay answering the questions asked by these Interrogatories as long as possible.  Infosys did nothing to obtain responsive information from November 2024 (when the Interrogatories were first served) until at least May 23, 2025. Infosys sat on these Interrogatories for months under the pretext that it could not respond unless and until TriZetto provided further identification of its trade secrets.  Now with that argument having been rejected, it is clear that Infosys's initial position was a red herring—the identification

of the trade secrets has no relationship whatsoever to the burdens Infosys now claims. After the Court's May 23 Order denying its motion for protective order (Dkt. 108), Infosys stated it would supplement its responses. But when Infosys served its supplemental responses on June 13, 2025, it became clear that Infosys never intended to actually answer the questions as they agreed to further supplement. Supp. App'x 003 (ElDessouki Decl.), ¶ 3. Then during meet-and-confers, Infosys raised entirely new burden objections as the parties were approaching agreement on the scope of the response and requested at least until July 25, 2025 to provide any further supplements. Infosys below complains that these requests are "wildly burdensome," but has failed to clearly articulate what the purported burden is, nor provide any support for these new burden objections. Nevertheless, TriZetto attempted to work with Infosys to address any burden concerns.

Infosys should be ordered to (i) provide the information Infosys had originally agreed to provide regarding individuals who worked on developing the test cases and adaptors and issue in this case, and individuals who were identified in agreements between the parties, before Infosys backtracked on its offer, (ii) identify Infosys employees who worked on three client accounts that also worked on TriZetto's software, and (iii) Infosys employees who worked on one additional client account that also worked on TriZetto's software and Infosys's competing product. The information that TriZetto seeks in connection with the four client accounts is both narrowly tailored and consistent with the information that TriZetto is entitled to pursuant to the Non-Disclosure and Access Agreements ("NDAAs") between TriZetto and Infosys. Moreover, this information is highly relevant as it will showcase the degree of exfiltration of TriZetto's confidential information from employees who worked on customer accounts (and therefore permitted to access TriZetto confidential information) and employees who worked on Infosys's competing software (and therefore explicitly prohibited from accessing TriZetto's confidential

information).

Infosys below argues that TriZetto "would not agree to any approach that did not require questioning thousands of employees." Not so. TriZetto worked with Infosys to identify a smaller set of employees that it would need to identify and explain what TriZetto Confidential Information that smaller set of employees had access to. But Infosys backtracked at the last minute after it agreed in principle on an approach and sent a proposal that reflected that approach, and raised new and unsubstantiated burden-based objections. Moreover, as TriZetto explained in the Joint Report (Dkt. 116-1 at 13), Infosys's position that it would need to interview every single employee who falls within a specific group is remarkable. Infosys surely knows what skills its employees have, so that it can allocate its employees to the appropriate projects. Similarly, Infosys surely knows which teams are likely to have responsive information, such that it would not need to interview all employees to answer this Interrogatory. It could also interview team leaders. But Infosys refuses to do any of that.

## 1.    Infosys's Amended Responses Remain Remarkably Inadequate

Infosys's section of the Joint Report filed on June 11, 2025, criticized TriZetto's motion as "premature" because Infosys had committed to "serve amended and supplemental responses, consistent with the Court's [May 23, 2025] ruling and the Federal Rules . . . by June 13, 2025" that would supposedly resolve the dispute. Dkt. 116-1 at 16-17. Despite taking three weeks from the Court's denial of Infosys's Motion for Protective Order to provide those Amended Responses (and seven months since the interrogatories were served), the responses stunningly provide no new information, identify no new individuals, and merely list in Response to Interrogatory No. 1 individuals *previously* identified in response to Interrogatory Nos. 5 and 8, which ask a different question. The Amended Responses do almost nothing to answer the interrogatories posed. Having

done almost nothing since November 2024 (when the interrogatory was served) to provide a fulsome response, Infosys then promised to supplement to its Amended Responses *by July 25* with certain information.  But, while TriZetto was trying to negotiate the scope and timing of the information that Infosys would provide, the day before this Supplemental Joint Report was due to the Court, Infosys suddenly retracted its offer to provide certain information based on new unsubstantiated burden objections.  *See* Supp. App'x 135–144.  Infosys should be ordered to promptly provide supplement its responses to Interrogatory Nos. 1 and 2, and to provide a supplement by July 11.

Specifically, the Amended Response to Interrogatory No. 1 purports to provide a list of names of "individuals identified in response to Interrogatory Nos. 5 and 8, below, [who] performed work on the following client accounts, by virtue of which they may have had access to information relating to Facets or QNXT."  Supp. App'x 016 at 4.  It then lists a chart of 60 names that had already been provided in response to Interrogatory Nos. 5 and 8.  The chart provides only the name, title, and client account on which the individual worked.  Based on Interrogatory Nos. 5 and 8, the individuals listed are people who worked on Infosys's Test Cases and the QNXT Adaptor.  Supp. App'x 027–028, 030–033.[1]

Indeed, below, Infosys characterizes its own Amended Response as follows:

In response to Interrogatory No. 1, Infosys identified 60 individuals who, based on a reasonable investigation to date, (i) were involved in creating either the test cases or adaptors at issue and (ii) may have had access to information about Facets or QNXT during the past nine years as part of their work servicing mutual Infosys-Cognizant clients.  *Infra*, 18.  The response also listed the title of the individuals

---

[1] Interrogatory No. 5 sought the identity of persons who worked on the Test Cases at issue.  Interrogatory No. 8 sought the identities of persons who worked on the QNXT Adaptors, or similar tools, at issue.  Neither of those interrogatories asked Infosys to provide the information requested by Interrogatory Nos. 1 and 2, such as the TriZetto Confidential Information Infosys's employees accessed, when it was accessed, and whether those individuals worked on competing products.

and the joint customer account each worked on.  *Id.*

That does not remotely answer the questions posed by Interrogatory Nos. 1 and 2, which pertain to who accessed TriZetto's customer information (not "may have had access"), when, and how.

Missing from Infosys's response is all of the critical information requested in Interrogatory Nos. 1 and 2 for these individuals, including the date that he or she was provided with access, the reason that individual was provided with access, the duration of such access, how access was provided and terminated, the type of TriZetto Confidential Information the employee had access to, and whether the individual was involved in developing, managing, marketing, testing, or selling Infosys commercial software products that are or were ever competitive with TriZetto products. As explained in TriZetto's original Joint Report, that information is critical because TriZetto needs to understand what information Infosys accessed and, in particular, which individuals both had access to TriZetto's Confidential Information *and* worked on competing products, which is a violation of the NDAAs.  Compl., ¶¶ 36-38, 46, 109.  The Amended Response does not even say *whether* the listed people accessed TriZetto's Confidential Information; it claims merely to provide a list of individuals "who performed work on the following client accounts" where they "may" have had access to Facets or QNXT.  Supp. App'x 016 at 4.

In addition to missing all of this critical requested information for the individuals listed in the response, Infosys's response omits categories of individuals who accessed TriZetto's Confidential Information and are readily identifiable, including:

- Individuals specifically identified in NDAAs or other confidentiality agreements relating to Facets or QNXT.

- Individuals who worked on Facets or QNXT as part of the Customer A, C, and D

accounts. Infosys stated during the parties' meet-and-confer conferences that this is not a large set of individuals and originally agreed to provide that information. Supp. App'x 004 (ElDessouki Decl.), ¶ 8). However, on Wednesday June 25 (*i.e.*, the day before this Supplemental Joint Report was due to the Court), Infosys walked back from its prior agreement. *Id.* at 006, ¶¶ 17, 18, 19.

- Individuals who worked on *both* Customer B *and* Infosys's competing Helix product (*i.e.*, the intersection of those two sets). Infosys stated during the parties' meet-and-confer conferences that this is not a large set of individuals, and *Infosys proposed* this specific narrowing. *Id.* at 004, ¶ 8. Infosys originally agreed to provide that information, but only with respect to individuals who worked on *both* Customer B *and then* within the subsequent 12 months, joint the development team of a competing product. However, again, on Wednesday June 25 (*i.e.*, the day before this Supplemental Joint Report was due to the Court), Infosys walked back from its prior agreement. *Id.* at 006, ¶¶ 17, 18, 19.

Infosys should also provide that information for the following individuals:[2]

- Individuals who prepared the Test Cases identified in Infosys's Response to Interrogatory No. 4 (these individuals are listed in Infosys's Amended Response to Interrogatory Nos. 1 and 4);

- Individuals involved in developing the adaptors identified in Infosys's Response to Interrogatory No. 7 (these individuals are listed in Infosys's Amended Responses to Interrogatory Nos. 1 and 8); and

---

[2] On June 25, 2025, Infosys offered to provide the information requested below to TriZetto, but has not done so yet. Supp. App'x 137–138.

- Individuals granted written authorization by Cognizant to access Facets or QNXT by name in an NDAA between Cognizant and Infosys.

For each of these narrow sets of individuals, Infosys should provide the information requested in the interrogatories regarding their dates of access, what they accessed, whether they worked on competing products, and the other requested information. Narrowing the interrogatories to these individuals, as TriZetto did in the original Joint Report (Dkt. 116-1 at 15) alleviates Infosys's burden concerns and provide TriZetto with a narrowed set of the most critical information it is entitled to.

Finally, Infosys should also produce and cite the computer-generated spreadsheet Infosys possesses regarding its personnel who worked on clients who use Facets or QNXT, which Infosys conceded is not burdensome.

Having had these Interrogatories for over seven months, Infosys should be ordered to provide the requested information on or before July 11, 2025.

2.    Infosys's Objections Have No Merit

Infosys maintains several objections that lack merit and do not warrant depriving TriZetto of this critical, foundational discovery.

**Relevance, Burden, And Proportionality.**  As it did in the Joint Report (Dkt. 116-1 at 15), TriZetto has carefully narrowed the request to ameliorate Infosys's burden concerns.  Infosys claims it would be burdensome to interview 1,600 employees,[3] but that is not what is being asked. TriZetto is requesting that Infosys explain its access to TriZetto's information for a *limited set of*

---

[3] Infosys argues below that the number of such employees is actually 8,000 and not 1,600.  But it has not provided any support for that number, and the only employee declaration identified 1,600 employees.  *See* Dkt. 117 at 58.  Indeed, Infosys's new burden objections are unsubstantiated.  In any event, TriZetto is not asking that Infosys interview all of these employees.

*the most material employees*—i.e., those that worked on Infosys's QNXT Adaptor and Test Cases, which are the products that were *specifically identified* in the Complaint as misappropriated, those that worked pursuant to NDAAs on Customers A, C, and D specifically identified in the Complaint, and those employees that worked on *both* Customer B and a competing product after having had access to TriZetto Confidential Information, which is an alleged violation of the NDAAs at issue. Infosys below argues that the information TriZetto seeks about its employees has minimal relevance. Not so. This was previously address in the Joint Report. *See* Dkt. 116-1, 7-8. These individuals are not permitted to access TriZetto Confidential Information and then use it to create competing products for Infosys, and therefore their identities are highly relevant to the trade secret misappropriation claims. *Id.* They're also relevant to the breach of contract claims, as these individuals received access to TriZetto Confidential Information pursuant to the NDAAs between Infosys and TriZetto. Importantly, the breach of contract claims are not limited to a specific act of misappropriation, as the NDAAs include restrictions on Infosys employees who accessed TriZetto Confidential Information from working on competing products.

Because Infosys apparently does not keep records of what third-party confidential information its employees access or when, Infosys claims that obtaining the requested information will require interviewing certain employees to determine what they accessed. *Infra*, 20, 23. Because of this, TriZetto narrowed the scope of its request to the most material employees as described above. The narrowed scope is the same as the scope that *Infosys proposed* to TriZetto during meet and confer discussions, and in writing. Supp. App'x 004 (ElDessouki Decl.), ¶ 8; Supp. App'x 127–130. On the meet and confers, Infosys represented that providing this information would involve potential interviews of dozens of people, not thousands. The parties exchanged a number of drafts of a potential compromise on these Interrogatories. However,

suddenly, the day before this Supplemental Joint Report was due, Infosys withdrew its offer and argued that it would be too burdensome to provide this information. Supp. App'x 006–007 (ElDessouki Decl.), ¶¶ 18, 19, 22.  Infosys argued that it would have to interview countless employees to provide that information, but was unable to provide the number of employees that would actually fall within the requested set of employees.  Instead, it purported that "hundreds" or "thousands" of employees worked on the customer accounts.  Despite TriZetto's attempts to work in good faith to narrow the scope of the requests to reduce purported burden, Infosys's positions as to the burden kept changing—indeed, the number of employees it claimed it would need to interview kept changing, despite no change in TriZetto's position.  *Id.*

Moreover, the supposed set of "hundreds" or "thousands" of employees is *not* the set of employees that TriZetto is seeking.  Infosys below attacks a straw man, asserting incorrectly that TriZetto is demanding Infosys obtain access information for every Infosys employee who worked on one of the four client accounts identified in the Complaint.  *Infra*, 25–26.  Infosys claims that one of those accounts, Customer B, involved over 1,600 employees.  *See* Dkt. 117 at 059.  To address that, after meeting and conferring, TriZetto narrowed the request *at Infosys's suggestion*, to seek access information for employees who *both* worked on this customer account *and* worked on competing products such as Helix (*supra*, 10), which narrowed the request considerably to a number Infosys has not disclosed but claimed would be reasonable.  Supp. App'x 004 (ElDessouki Decl.), ¶¶ 8, 10.  But suddenly, the day before this report was due to the Court, Infosys changed course.

TriZetto's request for Infosys to interview dozens of employees is reasonable and proportional given the importance of the information and the scope of this case, as well as Infosys's apparent failure to keep records regarding information it accessed pursuant to NDAAs.  The

information goes to the heart of TriZetto's claims—what information did the key Infosys players access?  This case involves damages that could range into the hundreds of millions (*Syntel Sterling Best Shores Mauritius Ltd. v. The TriZetto Grp., Inc.*, 68 F.4th 792 at 797 (2d Cir. 2023), *cert. denied*, 144 S. Ct. 352 (2023)), massive companies (Infosys claims to have 320,000 current employees), *see* Dkt. No. 117 at 054, and sophisticated large law firms on both sides.  These Interrogatories were served in November 2024.  Infosys has had over seven months to conduct a reasonable investigation, but has done nothing to answer these interrogatories beyond providing an abbreviated list of names from a database that does not address the question.

**Third Parties.**  Infosys also objects that the requested information is supposedly in the hands of third parties, namely TriZetto's customers.  As TriZetto explained in the original Joint Report, Infosys made every objection under the sun in its original interrogatory responses, but that Infosys would be required to obtain the information from third parties was not one of them.  *See* Dkt. No. 116-1 at 9; Dkt. No. 117 (App'x) at 025–026.  Infosys added that objection to its June 13 supplemental responses, which were its second amended responses served six months after the originals.  Supp. App'x 087 at 3.  Such a belated objection is waived.  *See TNA Australia Pty Ltd. v. PPM Techs., LLC*, 2018 WL 2010277, at *4 (N.D. Tex. Apr. 30, 2018) (Horan, J.) (holding the defendant "waived any such objection by not specifically including it in its original response to Interrogatory No. 4."); *see also Taylor v. Acad. Partnerships, LLC*, 2020 WL 13607873, at *2 (N.D. Tex. Apr. 24, 2020) (Horan, J.) (holding "untimely new objections to Interrogatory Nos. 1-6, 8, and 10-12 in Plaintiff's Amended Objections and Responses" are waived).

Aside from waiver, the objection also lacks merit.  TriZetto is not required to burden its clients before party discovery is exhausted.  Third-party discovery is a potential supplement to, not a replacement for, party discovery.  *See e.g., Areizaga v. ADW Corp.*, 314 F.R.D. 428, 437

(N.D. Tex. 2016) (Horan, J.) (overruling plaintiff's objections to interrogatories asserting information was already known by defendant and third parties and finding that "as a general matter, [Plaintiff] is a proper source from which Defendant can seek discovery of documents and ESI *in the first instance*.") (emphasis added); *see also Taylor v. Acad. Partnerships, LLC*, 2020 WL 13607873, at *1 (N.D. Tex. Apr. 24, 2020) (Horan, J.) ("A party subject to discovery cannot, as a general matter, refuse to produce relevant, nonprivileged documents or information because the opposing party might be able to obtain the information from a non-party source."). Infosys cites *Brown v. Bridges*, 2014 WL 1317553, at *3 (N.D. Tex. Apr. 2, 2014) (Horan, M.J.), to argue it is not required to produce information in its possession that may be retrieved from third parties. *Infra*, 28–29. However, *Brown* involved critically different facts and actually supports *TriZetto's* position. In *Brown*, Plaintiff sought "documentation that Defendant provided to the Patent and Trademark Office" regarding the trademark at issue, which Defendant represented it did not have, and which was publicly available from the PTO. *Brown*, 2014 WL 1317553, at *3. Under those facts, because the PTO was a "convenient" source of the documents, the Court denied the motion to compel. Here, as explained in the original Joint Report, it is speculative to assume that third parties even have the requested information at all, much less in a conveniently collectible form. Nobody knows what information Infosys's employees accessed and when better than Infosys's employees. Further, unlike the responding party in *Brown*, Infosys does not dispute that it has the requested information. *Id.* at *3.

Finally, Infosys's own information is more relevant than that of third parties (to the extent third parties even have it) because what Infosys does or doesn't know about its own access is a relevant admission in this case. Infosys was contractually bound to keep TriZetto's Confidential Information confidential, to restrict access to certain people, and to use it only for certain purposes

13

(and not, for example, with other clients). If it cannot answer simple questions about what it accessed and when, that in itself is telling. And, to the extent it can answer, that is a party admission, not merely evidence from a third party. As such, the Court should overrule Infosys's objection that the potential for third-party discovery excuses Infosys from answering.

3.    Infosys's Cannot Refuse to Provide Discovery Based on TriZetto's
       Response to Infosys's Interrogatory No. 2

Infosys argues that TriZetto's response to Infosys's Interrogatory No. 2 excuses Infosys from providing the information requested by TriZetto. *Infra*, 21–23. This argument is both legally and factually wrong. ***First,*** TriZetto's response to Infosys's Interrogatory No. 2 is not at issue before this Court, and the sufficiency of TriZetto's response has no bearing on the present dispute. *See Genentech, Inc. v. Trustees of Univ. of Pa.*, 2011 WL 7074208, at *1 (N.D. Cal. June 10, 2011) ("A party may not excuse its failure to comply with discovery obligations by claiming that its opposing party is similarly delinquent."), quoted by *Brown*, 2014 WL 1317553, at *3. Moreover, comparing the efforts in the parties' respective responses to *different* Interrogatories, as Infosys attempts to do, is not a relevant factor here. *Infra*, 21–23. ***Second,*** Infosys has not complained about the sufficiency of TriZetto's response to Interrogatory No. 2 outside of this Joint Report, and Infosys's Interrogatory No. 2 does not request the same information at issue in this Joint Report. Infosys's Interrogatory No. 2 requests TriZetto identify "*all* persons who have *at any point in time* accessed" TriZetto's Confidential Information— including third parties. Supp. App'x 047–053. TriZetto's Interrogatory Nos. 1 and 2, on the other hand, request information about *Infosys-affiliated* individuals who had access to TriZetto's Confidential Information. Dkt. No. 117 (App'x) at 019–020. ***Third***, TriZetto answered the Interrogatory that Infosys served. It's not clear what additional work Infosys believes that TriZetto should do to supplement its responses, or why that work would be helpful in answering

14

the question asked.  Importantly, TriZetto provided a comprehensive list of the individuals it believes to have had access to Customer Exchange.  To the extent others accessed TriZetto Confidential Information outside of Customer Exchange—like Infosys employees—TriZetto would not know about that.  Dkt. 117 at 14 (App'x 010 (Wilson Decl., ¶7)).  Thus, TriZetto's response to Infosys's Interrogatory No. 2 is entirely consistent with its position on this motion.  TriZetto needs the information requested by these Interrogatories from Infosys because TriZetto does not have—and indeed never had—that information.  Infosys's position regarding TriZetto's response to Infosys's Interrogatory No. 2 is clearly nothing but a red herring that creates a false equivalence between completely different issues.

Unlike Infosys, TriZetto provided through a 33(d) response the information requested by Interrogatory No. 2 in its possession, custody, and control, including (1) individuals who had access to aspects of TriZetto's Confidential Information identified in NDAAs and (2) individuals identified in TriZetto's Customer Exchange access log.  That information directly answered the question posed.  Below, Infosys claims that TriZetto "produced a single spreadsheet," but that is misleading; TriZetto produced that spreadsheet *along with* hundreds of other documents identified in the interrogatory response, which collectively answer the question.  Supp. App'x 047–053.

**B.  INFOSYS'S POSITION:**

In its motion to compel, Cognizant asks the Court to order Infosys to undertake wildly burdensome steps to gather additional information responsive to Interrogatory Nos. 1 and 2 that could be obtained at much less cost and higher accuracy from third parties.  Specifically, Cognizant apparently believes that a reasonable investigation in connection with these interrogatories requires Infosys to review customer contracts and unspecified other documents, conduct hundreds or thousands of interviews of Infosys employees, perform follow-up efforts

as to each, and prepare an 11-part disclosure for each investigated employee detailing every QNXT- or Facets-related piece of information that the employee saw over a 9-year period (as well as state in writing when, why, and for how long the employee had access). *See* Supp. App'x 078. The burden that would be required to respond in this manner to Interrogatory Nos. 1 and 2—as originally written, or as supposedly narrowed in the way that Cognizant demands—is extreme and disproportionate to the needs of the case. It would also gather a large amount of detailed information irrelevant to the real issues in the case.

Cognizant's motion is founded on several false premises, leading to its improper conclusion that its discovery demand is a "narrowly tailored" "request for Infosys to interview dozens of employees." *Supra* pp. 4, 10. It starts by arguing that Infosys's "initial position" that Cognizant should be required to identify its purported trade secrets with particularity "was a red herring" because "the identification of the trade secrets has no relationship whatsoever to the burdens Infosys now claims." *Supra* pp. 3-4. Cognizant could not be more wrong. Its failure to specify the purported trade secrets at issue—leaving Infosys to grapple with a definition of "Confidential Information" that encompasses *at least* every aspect of two decades-old software products and every document "related" to them is one of the most significant causes of the burden. *See* Joint Report, ECF No. 116-1 at 30. It would be far easier for Infosys to investigate whether its employees had access to specifically "name[d] . . . executable files" or "specific lines of code" than to determine which of its 320,000 employees may have seen any aspect of Facets or QNXT or any piece of "related documentation" at any time over the past nine years. *See* ECF No. 51 (quoting *Torsh, Inc. v. Audi Enhancement, Inc.*, No. 22-2863, 2023 WL 7688583, at *8-9 (E.D. La. Nov. 15, 2023)).

Indeed, Cognizant implicitly recognizes that its interrogatories are unreasonable as

16

written and therefore purported to narrow them during the meet and confer process.[4]  But in reality, Cognizant's "narrowed" requests rewrite the interrogatories to ask *additional* questions and impose equal, if not greater, burden on Infosys.  All the while, Cognizant continually ignores that the majority of the information it demands is mostly irrelevant to its claims.  And, to the extent relevant, the requested information could be more efficiently obtained from the parties' mutual clients who grant access.  *See* Fed. R. Civ. P. 26(b)(2)(C) (prohibiting discovery that "can be obtained from some other source that is more convenient, less burdensome, or less expensive").  Cognizant has stated it wants to resolve the dispute, but never materially budged from the highly burdensome measures keyed to the original overbroad requests.[5]  Infosys therefore submits this supplemental portion of the parties' Joint Report Regarding Cognizant's Motion to Compel Responses to Interrogatory Nos. 1–3, (ECF No. 116-1), to explain why its responses satisfy its obligations under Rules 26 and 33.

As detailed below, the Court should deny Cognizant's motion to compel in its entirety.  The denial will leave Cognizant with information about access that is relevant to the claims it pled, as well as the existing promise in Infosys's amended interrogatory responses to further amend them if Infosys discovers additional relevant information through ongoing investigation

---

[4] The second false premise infecting Cognizant's brief is its claim that Infosys "originally agreed" to provide certain information and then "backtracked on its offer."  *Supra* p. 4. In fact, the document Infosys's counsel "originally" sent was a draft document summarizing its understanding of "*Cognizant's* proposal to narrow the scope of information it is requesting," with a request that Cognizant make any revisions "so we know the potential agreement when we speak to Infosys." Supp. App'x 55. Infosys engaged in a frank and open discussion in a good faith attempt to fashion a reasonable and proportionate compromise, but it ultimately became clear that Cognizant would not agree to any approach that did not require questioning thousands of employees.

[5] To justify its requests, Cognizant again cites its prior litigation against Syntel.  *Supra* p. 11. Cognizant's repeated reliance on its prior litigation with Syntel, while refusing to produce documents from that litigation—the subject of a separate motion to compel—is yet another example of the inconsistent and sometimes bewildering positions it continues to take in this matter.

and discovery.

### 1. Infosys Amended Its Responses as It Promised to Do Before the Premature Motion to Compel.

On May 27, 2025, Infosys committed to amending its responses to Interrogatory Nos. 1-3 by June 13, the same date by which Cognizant had been ordered to amend its own interrogatory responses. ECF No. 117 (App'x 037 [May 27, 2025, email from C. Schwegmann]). Cognizant immediately demanded a meet-and-confer[6] and then rushed the joint report process through as fast as possible, despite not having seen Infosys's forthcoming amended responses. Cognizant filed the Joint Report with the Court on June 12, prematurely challenging interrogatory responses it would receive the following day. ECF No. 116, 116-1. The Court therefore directed the parties to "meet and confer again after . . . Infosys, on Friday, June 13, 2025, serves its amended answers." ECF No. 119.

On June 13, as it said it would, Infosys served amended responses. Supp. App'x 13-43. In response to Interrogatory No. 1, Infosys identified 60 individuals who, based on a reasonable investigation to date, (i) were involved in creating either the test cases or adaptors at issue in Cognizant's misappropriation claims *and* (ii) may have had access to information about Facets or QNXT during the past nine years as part of their work servicing mutual Infosys-Cognizant clients. Supp. App'x 16-19. The response also listed the title of the individuals and the joint customer account each worked on, by virtue of which each employee may have been granted access to Facets or QNXT by the joint customer. *Id.* Cognizant's assertion in this Joint Report that Infosys "stunningly" provided no new information in these supplemental responses is wrong. The names may be the same as those Infosys provided in other interrogatory responses,

---

[6] Actually, Cognizant *reiterated* a demand for a meet-and-confer that it had made even *more* prematurely, on May 23, before the Infosys had even had a chance to communicate its timeline for amending the responses.

but the inclusion of the names in different responses that answered different questions reveals additional information about the personnel. Specifically, and critically, Infosys disclosed in its verified amended response that these individuals also worked on accounts for clients who used either Facets or QNXT (and identified those accounts). In the process of identifying these 60 individuals in response to Interrogatory Nos. 1 and 2, Infosys conducted a reasonable investigation, as required by Rules 26 and 33, to identify the universe of individuals who may have had access to Cognizant's alleged confidential information and who were also involved in the projects that are the basis of Cognizant's misappropriation claims.

As Infosys explained in the initial Joint Report, these are the individuals with potential relevance to Cognizant's claims. *See* ECF No. 116-1 at 27-29. The entire universe of Infosys employees who had access to Cognizant's alleged confidential information over many years is not relevant because it is undisputed that Infosys employees are permitted to have access to service mutual customer accounts; the question is whether the misappropriation that Cognizant alleges occurred. *See id.* at 26–27. Cognizant alleges that misappropriation occurred in two ways: creation of test cases related to Facets or QNXT and development of an adaptor that interfaces with a mutual customer's instance of QNXT. *See generally* ECF No. 1. The 60 employees that Infosys identified (those who prepared the test cases and developed the adaptor) are the only people, to Infosys's current knowledge based on a reasonable investigation to date, that could be relevant to the alleged misappropriation.

Infosys's amended interrogatory response explained further: "Additional details concerning these [60] individuals' access, if any, such as the reason any access was provided and the dates of any such access, would be in the possession, custody and/or control of Cognizant and/or the client." Supp. App'x 016. And, consistent with Infosys's prior response,

the amended response includes objections explaining that a full and complete response to Cognizant's overbroad interrogatory as originally written would require Infosys to interview thousands of people who were granted access to QNXT or Facets, by joint customers or Cognizant, to seek information that is only marginally relevant to Cognizant's claims. *Id.* Infosys's response is proportional to the needs of the case. Cognizant's initial demand, requiring thousands of employee interviews, is far from proportional. And Cognizant's more recent demands (discussed further below), requiring thousands of interviews as well as new additional "follow-up" inquiries, a review of documents, and a disclosure of an ever-increasing list of information, is just as or even more unreasonable.

Importantly, Infosys's amended response also expressly states that Infosys will supplement its interrogatory responses if it learns new names during the discovery process. Supp. App'x 016  The current response provides the names Infosys was able to identify based on a reasonable search. If Infosys locates additional access information as the parties review and produce documents and speak to witnesses, it will provide that information in a further supplemental response. Finally, there is a more efficient and less burdensome means for Cognizant to discover which specific Infosys persons accessed its programs while working for third parties, if it actually wants to obtain the information: it can subpoena those third parties' access records, which Infosys does not possess. Indeed, Rule 26(b)(2)(C) limits discovery when it can be more efficiently obtained from another source.

2.  **Cognizant Also Amended Its Responses to a Similar Interrogatory and Refused to Engage in the Kind of Investigation It Demands from Infosys.**

This is not the first time a party in this case has responded to an "access" interrogatory. On June 13, the same day Infosys amended its interrogatory responses, Cognizant served the amended interrogatory responses the Court had ordered it to prepare. Supp. App'x 045-053.

Among other things, this Court ordered Cognizant to "fully answer" an interrogatory asking Cognizant to "identify all persons who have at any point in time accessed the information you identify as trade secrets." ECF No. 108 at 9 (overruling all of Cognizant's objections as "boilerplate or unsupported").[7] Cognizant's response to Infosys's interrogatory is instructive because it shows both (i) that Cognizant already has a large amount of access information in its possession and (ii) that, in responding to this counterpart interrogatory, Cognizant took none of the steps it is now trying to force upon Infosys.

Even after being ordered by the Court to "fully answer" an interrogatory about access to its own programs, Cognizant identified zero names in its written response. Instead, it relied on Rule 33(d) and pointed Infosys to a spreadsheet of more than 72,000 names of persons who it allowed to access its "confidential information" through its Customer Exchange portal (including dozens of Infosys employees). Supp. App'x 010 [Morrison Decl. ¶ 6], 047. At the same time, Cognizant claimed the spreadsheet is of limited relevance because "the primary way Infosys employees received access to the [alleged] Trade Secret Information was directly through customers, not through the Customer Exchange." Supp. App'x 048. In other words, Cognizant is fully aware it is the parties' joint customers who grant access to Infosys employees and thus are the best source of information about who was given access (and when, how, and for what purpose).

But instead of taking steps to find out who had been given access to its supposedly confidential information "directly through customers," (Supp. App'x 048)—as Cognizant wants *Infosys* to do—Cognizant merely stated that it "has not located records reflecting the

_____

[7] Notably, unlike Infosys, Cognizant did not provide a declaration or other evidence asserting it did not have access data available or supporting its claim of undue burden.

individual[s] . . . who had access to aspects of the [alleged] TriZetto Trade Secret Information . . . through means other than Customer Exchange" and that it "does not necessarily know which individual third-party employees received access to aspects of the TriZetto Trade Secret Information." Supp. App'x 048.  In other words, Cognizant refused to perform any investigation other than extracting data from a single database and citing contracts identifying companies who have accessed its products.  Cognizant instead deemed it acceptable to merely say it does not know who accessed its products because access was provided through its third-party customers. This approach underscores the unreasonableness of the demands Cognizant is trying to impose on Infosys, which, as explained in the Venugopal declaration, does not maintain access data because access is provisioned through third-party customers.  ECF No. 117 [App'x] 56-57.  The fact that Infosys's efforts in this area have already surpassed Cognizant's is apparent in that, even without the access data that Cognizant and the third-party customers have, Infosys still provided the names of 60 individuals with potentially relevant information.

To be clear, when responding to Infosys's access interrogatory, Cognizant could have located information about those who have accessed its software programs.  It could have reviewed contracts, telephoned customers, and interviewed its employees, to name a few methods.  It also could have subpoenaed the customers, as Infosys has.  But, even after an order from the Court overruling all of its objections and instructing Cognizant to identify all persons who have accessed its allegedly secret software products, Cognizant has effectively taken the position it does not have to do that and instead can point to (1) a data dump from a single database containing information about Facets and QNXT, and (2) *the customers who provide Infosys employees access to the software systems*.  At the same time, Cognizant demands that Infosys, which has no access records because its employees work on customer software

programs at customer facilities (physically or virtually), interview thousands of employees to ask if they have accessed a Cognizant program (and what, when, where, and why they did so) while supporting third party systems. Cognizant's request that this Court force Infosys to undertake an overly burdensome and disproportional exercise, which Cognizant refused to do even after being ordered to obtain similar access information, should be rejected.

Cognizant argues that its efforts to respond to Infosys Interrogatory No. 2 are irrelevant to the question of whether Infosys's efforts to respond to Cognizant Interrogatory Nos. 1 and 2 are adequate. Not so. The interrogatories are all getting at the same thing: who had access to Cognizant's supposedly confidential information? Cognizant cannot simultaneously argue that measures are reasonable and proportional for Infosys to undertake, but not reasonable for Cognizant to undertake.

### 3. Cognizant Is Demanding Arduous and Burdensome Steps.

Cognizant claims that it has reduced its demands related to Interrogatory Nos. 1 and 2 to "narrow sets of individuals" and a "limited set of the most material employees." (*Supra* pp. 8-9.) This is incorrect. Its modifications continue to impose extreme burdens on Infosys disproportionate to the needs of the case.

As a prefatory matter, Cognizant's repeated assertion that Infosys backtracked and withdrew offers during the meet-and-confer process is a disingenuous distortion of what occurred. Cognizant ignores that Infosys—in the spirit of collaboration and compromise—was attempting to explore additional measures it could reasonably take, without always having the requisite data on hand to know if a particular option under discussion was workable. First, contrary to Cognizant's repeated insinuations, the initial draft document Infosys sent "For discussion purposes only" was intended to document *Cognizant's* proposed resolution, so

Infosys's counsel could "know the potential agreement when we speak to Infosys tonight or early tomorrow." Supp. App'x 055. Each subsequent iteration of the draft the parties exchanged was also subject to client approval and further revision (by both sides).  Supp. App'x 065-083.

The parties similarly agreed during meet-and-confers that their discussion was "brainstorming" and "spit-balling," intended to explore whether a reasonable compromise could be reached, without committing that any particular concept would be workable in practice. Supp. App'x 011 [Morrison Decl. ¶ 9]  After obtaining the necessary information, it turned out that certain ideas the parties discussed as theoretical possibilities would still require thousands of interviews.  Supp. App'x 011 [Morrison Decl. ¶ 9]; *see also* Supp. App'x 004 [ElDessouki Decl. ¶ 8].  Those ideas were thus taken off the table.  Cognizant also ignores that it changed its own position and backtracked over the course of the conversations, such as by first agreeing to the idea of a limited number of employee interviews and later demanding an "investigation" including the interviews as well as several follow-up steps, and increasing its list of employees that should be interviewed. *See* Supp. App'x 076.[8]  Finally, Cognizant's fixation on what Infosys communicated "the day before this Supplemental Joint Report was due to the Court" is particularly ironic, given Infosys requested multiple times that Cognizant agree to seek an extension of *a full week* to attempt to reach a resolution—yet Cognizant first rejected any extension at all and later agreed to only three days.  Supp. App'x 065-067.  The tight schedule

---

[8] Indeed, Cognizant's demands increased substantially over the course of the discussions, even going beyond the bounds of the original interrogatories.  For instance, after expressing receptivity to Infosys *interviewing* certain employees, Cognizant switched gears and demanded an "investigation that *includes* interviewing these individuals" as well as document review and follow-up steps.  Supp. Appx. 076  Similarly, after agreeing with the idea of focusing on small, identifiable subsets of employees, Cognizant reversed course and added to the list "individuals who can be reasonably identified from other documents"—appearing to revert back to its original overbroad demand.  As a third example, late in the discussions, Cognizant added a new category of information it wanted ("Account(s)") that does not appear in its original interrogatory.

is entirely of Cognizant's own making.

In any event, in its most recent proposal, Cognizant asked Infosys to investigate (including through individual interviews but also other measures) each of the thousands of employees who collectively worked on three different client accounts over a nine-year period, and an unknown portion of the employees who worked on a fourth (very large) client account over that same period. Infosys explained during multiple meet and confers that there are thousands of employees who worked on these accounts (not "dozens" or "not a large set" as Cognizant continues to argue).[9] Infosys also explained that likely all of these employees (other than those overlapping with the 60 names Infosys has already disclosed) are irrelevant to Cognizant's trade secret claims because (1) there is no dispute Infosys employees are authorized to access Cognizant's information to service client accounts, and (2) they have no connection to the misappropriation alleged in Cognizant's Complaint. That is, Cognizant has alleged two categories of misappropriation—one related to test cases, and one related to adaptors—and other than the 60 names identified, the many thousands of employees that worked on the four accounts in question did not develop the test cases or adaptors. In other words, the investigative efforts that Cognizant is demanding as to thousands of employees across four client accounts are wholly untethered to the misappropriation it has alleged. Yet Cognizant refuses to abandon these requests, still insisting that Infosys must come up with some way to find out who, out of these

---

[9] Cognizant continues to erroneously state that one of the four accounts had 1,600 employees working on it. Infosys has explained *ad nauseum* that this figure covers only *this year* (2025). *See also* App'x 056-057 [Venugopal Decl.] For the nine years in question, Infosys's records identify more than 8,000 employees as having worked on that account. Supp. App'x 011 [Morrison Decl. ¶ 9] Infosys also explained that two of the other client accounts had multiple thousands of employees working on them over the nine-year period, and the fourth had several hundred. *Id.* Infosys had initially focused most of the discussion on the largest account (for obvious reasons), but has since confirmed and explained that it is likewise unworkable to interview everyone who worked on the other three accounts.

many thousands of employees, had access to any information about its two software products over a nine-year period.

Cognizant argues that these employee interviews are also necessary in connection with its claims for breach of the four NDAAs. This argument is incorrect for multiple reasons. First, Cognizant primarily alleges that Infosys breached the NDAAs by creating the test cases and the adaptors—so again, only the 60 people Infosys already identified would be relevant to those breach allegations. Second, to the extent there could have been a breach of an NDAA by virtue of an Infosys employee working on one of the NDAA accounts and also working on developing a competing product (i.e., Infosys Helix), that would not justify the individual interviews. As Infosys has explained to Cognizant, it can pull database information about which employees were assigned to what projects (distinct from what *information* the employees had *access to* in that role), if properly requested in discovery. But Cognizant is conflating that separate issue with its demand that Infosys undertake employee interviews to find out what information they were able to access over the course of nine years. Third, Cognizant is not even attempting to tailor its discovery demands to the NDAAs, which only limit Infosys employees from working on competing products simultaneously (or in the case of Customer B, within a period of 12 months from working for that customer). Yet Cognizant wants Infosys to interview every employee who performed services for those customers (in any capacity) and also at some point worked on Infosys Helix (in any capacity). This is not reasonable or proportionate.

At one point during the negotiations on this topic, Cognizant revealed its true motives by arguing the information is relevant because any of the thousands of employees working on joint customer accounts theoretically could have misappropriated its trade secrets. Supp. App'x 077 (Comment 8R7 in margin). But that is the definition of a fishing expedition—not

permissible and proportionate discovery. *Samsung Elecs. Am., Inc. v. Yang Kun Chung*, 321 F.R.D. 250, 280-81 (N.D. Tex. 2017) (Horan, M.J.) ("The role of discovery . . . is to find support for properly pleaded claims," not to engage in "a fishing expedition" or "develop new claims or defenses that are not already identified in the pleadings.") (quoting *Torch Liquidating Trust v. Stockstill*, 561 F.3d 377, 392 (5th Cir. 2009), *Waste Mgmt. of La., LLC v. River Birch, Inc.*, No. 11-2405, 2017 W 2271982, at *4 (E.D. La. May, 27, 2017), and *U.S. v. All Assets Held at Bank Julius Baer & Co., Ltd.*, 202 F. Supp. 3d 1, 7, 8-9 (D.D.C. 2016)).

On top of all of this, as Infosys has repeatedly pointed out, the additional, burdensome investigative steps that Cognizant is demanding are not likely to produce reliable information because the results would be limited to employee recollections going back nine years. Accurate and reliable information about access is more readily accessible to the third-party customers who actually provision access to Facets and QNXT.

The incredible burden of these interrogatories, and of Cognizant's demands in connection with them, cannot be in serious debate. When Cognizant was asked to produce access information, it argued to this Court that it should not be required to respond because "identifying every single person by name would be an ***enormously burdensome undertaking***," requiring "TriZetto to search countless records." ECF No. 97 at 14 (emphasis added). Even after the Court overruled that objection (because it was not supported by any evidence), Cognizant believed it was appropriate to do nothing more than produce a data dump of over 72,000 names extracted from a single database (which it says at the same time is not the allegedly "confidential information" at issue) and list some contracts. In the same breath, Cognizant argues Infosys should be required to conduct hundreds or thousands of interviews and provide detailed narratives answering the "what, when, where, and why" of the interviewees' access to

27

an incredibly vague and broad swath of "confidential information" over a nine-year period.

### 4.  **The Parties' Joint Customers Have the Requested Information.**

As Infosys explained in its portion of the Joint Report, it has no access records for Facets or QNXT.  That is because access to those systems is provisioned by either Cognizant or the parties' mutual clients, as Cognizant acknowledges.  ECF No. 116-1 at 19-20, 23; App'x 054-059, ¶¶ 16-20; Supp. App'x 048 (Cognizant response to Interrogatory No. 2, explaining Cognizant "customers may provide direct access . . . to individual third-party employees working on their behalf").  Yet Cognizant inexplicably refuses to request access information from the entities who actually provision access.  *Cf.* Fed. R. Civ. P. 26(b)(2)(C) (discovery must be limited if "the discovery sought . . . can be obtained from some other source that is more convenient, less burdensome, or less expensive"); *Brown v. Bridges*, No. 12-4947, 2014 WL 1317553, at *3 (N.D. Tex. Apr. 2, 2014) (Horan, M.J.) (denying motion to compel interrogatory response because the plaintiff could obtain the requested information from a third-party "source that would [be] more convenient and less burdensome than Defendant").

Indeed, Cognizant has not, to Infosys's knowledge, issued subpoenas to any of the parties' joint customers, even though it could easily take this simple step to obtain access information.  On the other hand, Infosys has to date served subpoenas on twelve of the parties' mutual third-party clients.  Supp. App'x 010 [Morrison Decl. ¶ 7.].  Infosys asked these third parties to produce "All Documents hosted on Your internal share folders or drives to which both Infosys and Cognizant had access during the Relevant Period."  *Id.*  It would be simple for Cognizant to also subpoena these clients and ask them to provide access logs or other records revealing which Infosys employees they allowed to access QNXT, Facets, or related documentation (and when and why).  Indeed, the effort to issue those subpoenas would have

been less than the effort Cognizant has expended in trying to force Infosys to conduct thousands or hundreds of interviews. The likely reason is that Cognizant does not really need all the access data it is demanding—it already has the names of the persons involved with the test cases and adaptors at issue in the case.

Cognizant's argument that Infosys somehow waived its objection that the requested information is possessed by a third-party customer is meritless. From the time Infosys served its initial responses, Infosys objected to Interrogatory No. 1 because it "seeks information in the hands of third parties, such as contractors or other third parties." App'x 27; Supp. App'x 089. Cognizant completely ignores this. Infosys's position has been consistent all along, and there is no waiver. In any event, Rule 26 directs courts to limit requests for discovery that "can be obtained from some other source that is more convenient, less burdensome, or less expensive," even "on [their] own." Fed. R. Civ. P. 26(b)(2)(C)(i).

Cognizant's assertion that third party discovery is not an appropriate avenue to seek the information sought also distorts the case law, including this Court's own findings. It is not as if Infosys has the data, but is instructing Cognizant to obtain it from a non-party instead. In fact, the exercise that Infosys would need to undertake to attempt to independently develop the data held by the customers would require an overly burdensome and nonproportional expenditure of resources. The case law firmly supports Infosys's position. In *Areizaga v. ADW Corp.*, 314 F.R.D. 428, 437 (N.D. Tex. 2016), which Cognizant cites, this Court overruled the plaintiff's objection because the plaintiff had only made conclusory objections and failed to show that the defendant "could obtain the information, documents, and ESI that it seeks from some other source that is more convenient, less burdensome, or less expensive." Infosys, on the other hand, has met its burden to show that the requested information is not reasonably accessible to it, and

is more readily available from Cognizant or third parties.

*    *    *    *    *

Infosys has already provided relevant access-related information in its records based on a reasonable search. Cognizant now knows (from Infosys's amended responses to Interrogatory Nos. 1 and 2) the names of 60 Infosys persons who (i) may have accessed Cognizant's software programs during their work servicing mutual client accounts (and the customer accounts they worked on) and (ii) developed the products that Cognizant claims misappropriate its information.  Cognizant also knows (from the spreadsheet *Cognizant* generated in response to Infosys's access interrogatory) dozens of names of Infosys persons to whom it granted access to information about Facets and QNXT in Customer Exchange.  Supp. App'x 010 [Morrison Decl. ¶ 6.]. It knows the names of the five Infosys employees to whom it expressly granted access to Facets in NDAAs (of which Cognizant has possession, and which Infosys will nevertheless produce).  *See* ECF No. 40 at Ex. 3, Attach. 1; *id.* Ex. 4, Attach. 1.  If more names come to Infosys's attention as discovery continues, Infosys will supplement its responses as required by the Federal Rules.  And if Cognizant wants to discover the names of other Infosys persons who have accessed its software products over the past nine years through access provided by their mutual customers, it can subpoena the parties' joint customers.  Requiring Infosys to spend months interviewing thousands or hundreds of employees to ask if they have encountered Facets or QNXT while working for joint clients at any point in the past nine years would be grossly disproportionate to the needs of the case and reveal information largely irrelevant to Cognizant's claims.

The motion to compel should be denied.

If the motion is granted, and Infosys is required to interview an enormous number of

30

employees to ask about access, the work would require many months of substantial effort. As a result, Infosys requests that any compliance date be at least three months after the date of the Court's order.

## III.     RESOLVED DISPUTE REGARDING TRIZETTO'S INTERROGATORY NO. 3

### Interrogatory No. 3

> Identify all central network locations, including within product development document repositories (e.g., Jira or Confluence) within Infosys containing TriZetto Confidential Information, and for each location, identify all individuals that were authorized to access such location.

### Cognizant's Position:

Infosys has agreed to conduct an additional investigation and serve an amended response to Interrogatory No. 3 that (i) confirms that, if accurate, the identified repositories do (rather than "may") contain information related to Facets and/or QNXT, and (ii) lists the individual names associated with the email addresses and usernames identified in Appendices A-C (and future supplements to the same), to the extent reasonably available.

Cognizant requests that the Court order that Infosys provide the requested information by July 7, 2025, and is more than three weeks after Infosys served its supplemental response on June 13, 2025. That date is 45 days after the Court denied Infosys's motion for protective order. Dkt. 108.

### Infosys's Position:

To resolve the dispute regarding Interrogatory No. 3, Infosys agreed that it will (i) confirm, if accurate, that the identified repositories do (rather than "may") contain information related to Facets and/or QNXT, and (ii) disclose the individual names associated with the email addresses and usernames identified in Appendices A-C. Infosys also will further supplement its responses as required by the Federal Rules to the extent it subsequently learns of additional responsive

information.  Accordingly, those matters are not in dispute.  However, Infosys did not agree to serve its amended responses by June 27, 2025, as Cognizant originally proposed, nor by July 7, 2025.  Infosys requests that a compliance date for its amended response to this interrogatory be three weeks from the date of the Court's order, consistent with the three weeks the Court provided to Cognizant when it was recently required to provide amended responses.

Dated:  June 27, 2025

By:  /s/ Ahmed ElDessouki

Casey J. McCracken (*pro hac vice*)
Samuel G. Liversidge (*pro hac vice*)
S. Christopher Whittaker (*pro hac vice*)
**GIBSON, DUNN & CRUTCHER LLP**
333 South Grand Avenue
Los Angeles, CA 90071
Tel:  213.229.7000
Fax:  213.229.7520
SLiversidge@gibsondunn.com
CMcCracken@gibsondunn.com
CWhittaker@gibsondunn.com

L. Kieran Kieckhefer (*pro hac vice*)
Rachel S. Brass (*pro hac vice*)
Elizabeth McCloskey (*pro hac vice*)
Christina E. Myrold (*pro hac vice*)
**GIBSON, DUNN & CRUTCHER LLP**
One Embarcadero Center, Suite 2600
San Francisco, CA 94111
Tel:  415.393.8200
Fax:  415.393.8306
KKieckhefer@gibsondunn.com
RBrass@gibsondunn.com
EMccloskey@gibsondunn.com
CMyrold@gibsondunn.com

John T. Cox III (SBN 24003722)
Betty Yang (SBN 24088690)
Bradley G. Hubbard (SBN 24090174)
**GIBSON, DUNN & CRUTCHER LLP**
2001 Ross Avenue, Suite 2100
Dallas, TX 75201
Tel:  214.698.3226
Fax:  214.571.2900
TCox@gibsondunn.com
BYang@gibsondunn.com
BHubbard@gibsondunn.com

Ahmed ElDessouki (*pro hac vice*)
**GIBSON, DUNN & CRUTCHER LLP**
200 Park Ave.
New York, NY 10166

Respectfully submitted,

By:  /s/ Chris Schwegmann

Christopher J. Schwegmann
State Bar No. 24051315
**LYNN PINKER HURST &
SCHWEGMANN, LLP**
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
Tel: (214) 981-3835
cschwegmann@lynnllp.com

Brent Caslin (*pro hac vice*)
Nick Saros (*pro hac vice*)
Kelly M. Morrison (*pro hac vice*)
**JENNER & BLOCK LLP**
515 S. Flower Street, Suite 3300
Los Angeles, CA 90071
Tel.: (213) 239-5100
BCaslin@jenner.com
NSaros@jenner.com
KMorrison@jenner.com

Shoba Pillay (*pro hac vice*)
Laura E. Pelanek (*pro hac vice*)
**JENNER & BLOCK LLP**
353 N. Clark Street
Chicago, IL 60654
Tel.: (312) 222-9350
SPillay@jenner.com
LPelanek@jenner.com

Douglas E. Litvack (*pro hac vice*)
**JENNER & BLOCK LLP**
1099 New York Avenue, NW
Suite 900
Washington, DC 20001
Tel: (202) 639-6000
DLitvack@jenner.com

*Attorneys for Infosys Limited*

33

Tel.: 212.351.2345
AElDessouki@gibsondunn.com

*Attorneys for Cognizant TriZetto Software*
*Group, Inc. and Cognizant Technology*
*Solutions Corp.*

## <u>CERTIFICATE OF CONFERENCE</u>

The following attorneys participated in the pre-motion conference, and hereby sign the foregoing Supplemental Joint Report:

<u>/s/ Ahmed ElDessouki</u>

Casey McCracken
Ahmed ElDessouki
Hannah Wilkens

**GIBSON, DUNN & CRUTCHER LLP**

*Attorneys for Cognizant TriZetto Software Group, Inc. and Cognizant Technology Solutions Corp.*

<u>/s/ Kelly Morrison</u>

Kelly Morrison
Katharine McLaughlin
Casey Carlson

**JENNER & BLOCK LLP**

*Attorneys for Infosys Limited*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 27, 2025, the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system and all counsel of record will receive an electronic copy via the Court's CM/ECF system.

*/s/ Ahmed ElDessouki*

Ahmed ElDessouki
