

**AFFIDAVIT OF SERVICE**

FILED-USDC-NDTX-DA
'25 AUG 22 AM 9:49

KM

UNITED STATES DISTRICT COURT
Northern District of Texas

Case Number: 3:24-CV-02158-X

Plaintiff:
**COGNIZANT TRIZETTO
SOFTWARE GROUP, INC.**

vs.

Defendant:
**INFOSYS LIMITED**

Received these papers on the 15th day of August, 2025 at 12:15 pm to be served on **DELOITTE LLP by delivering to its Registered Agent, CORPORATION SERVICE COMPANY DBA CSC-LAWYERS INCORPORATING SERVICE COMPANY, 211 E. 7th Street, Suite 620, Austin, Travis County, TX 78701.**

I, Jeff Keyton, being duly sworn, depose and say that on the **15th day of August, 2025** at **2:50 pm, I:**

hand-delivered a true copy of this **Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action with Attachment 1, and Exhibits A & B,** to **DELOITTE LLP by delivering to its Registered Agent, CORPORATION SERVICE COMPANY DBA CSC-LAWYERS INCORPORATING SERVICE COMPANY** by and through its authorized agent, **MAK HAYES,** at the address of: **211 E. 7th Street, Suite 620, Austin, Travis County, TX 78701,** having first endorsed upon such copy of such process the date of delivery.

I certify that I am approved by the Judicial Branch Certification Commission, Misc. Docket No. 05-9122 under rule 103, 501, and 501.2 of the TRCP to deliver citations and other notices from any District, County and Justice Courts in and for the State of Texas. I am competent to make this oath; I am not less than 18 years of age, I am not a party to the above-referenced cause, I have not been convicted of a felony or a crime of moral turpitude, and I am not interested in the outcome of the above-referenced cause.

Subscribed and Sworn to before me on the 15th day of
August, 2025 by the affiant who is personally known to
me.


NOTARY PUBLIC

HELEN BROUSSARD
Notary ID #130429927
My Commission Expires
November 16, 2027

**Jeff Keyton**
PSC-735; Exp 7/31/2026

Our Job Serial Number: THP-2025005483
Ref: 2270271

Copyright © 1992-2025 DreamBuilt Software, Inc. - Process Server's Toolbox V9.0a



AO 88B (Rev. 12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the

Northern District of Texas

| | |
|---|---|
| Cognizant Trizetto Sofware Group, Inc., | ) |
| *Plaintiff* | ) |
| v. | ) |
| Infosys Limited, | ) |
| | ) |
| *Defendant* | ) |

Civil Action No. 3:24-cv-02158-X

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:      Deloitte LLP c/o Corporation Service Company d/b/a Lawyers Incorporating Service Company
211 E. 7th Street, Suite 620, Austin, TX 78701-3218

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: SEE ATTACHMENT 1

| Place: Lynn Pinker Hurst & Schwegmann, LLP, c/o Joshua Lang, 2100 Ross Avenue, Suite 2700, Dallas, TX 75201 | Date and Time: 09/17/2025 5:00 pm |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:      08/15/2025

| *CLERK OF COURT* | | |
|---|---|---|
| | OR | |
| XXXXXXXXXXXXXXX | | /s/ Joshua Lang |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Infosys Limited
, who issues or requests this subpoena, are:

Lynn Pinker Hurst & Schwegmann, LLP, c/o Joshua Lang, 2100 Ross Avenue, Suite 2700, Dallas, TX 75201
(214) 292-3621 jlang@lynnllp.com

**Notice to the person who issues or requests this subpoena**
A notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 3:24-cv-02158-X

## PROOF OF SERVICE

### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)*

on *(date)*                    .

❐ I served the subpoena by delivering a copy to the named person as follows:

on *(date)*                    ; or

❐ I returned the subpoena unexecuted because:

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$

My fees are $                    for travel and $                    for services, for a total of $        0.00        .

I declare under penalty of perjury that this information is true.

Date:

*Server's signature*

*Printed name and title*

*Server's address*

Additional information regarding attempted service, etc.:



AO 88B (Rev. 12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1) *For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2) *For Other Discovery.*** A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1) *Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2) *Command to Produce Materials or Permit Inspection.***
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3) *Quashing or Modifying a Subpoena.***
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1) *Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2) Claiming Privilege or Protection.**
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## ATTACHMENT 1

### TO SUBPOENA REQUESTING DOCUMENTS FROM DELOITTE LLP

Pursuant to Rule 45 of the Federal Rules of Civil Procedure, Infosys hereby demands the production of documents and electronically stored information from Deloitte LLP. Response to this Subpoena shall be made in accordance with the definitions and instructions below by producing responsive documents to the requests. Such documents shall be produced at Lynn Pinker Hurst & Schwegmann, LLP, c/o Joshua Lang, 2100 Ross Avenue, Suite 2700, Dallas, Texas 75201, no later than September 17, 2025, or as otherwise agreed to by the parties.

### <u>DEFINITIONS</u>

Throughout these requests for production (the "Document Requests" or "Requests"), the following terms (whether or not capitalized) shall have the meanings set forth below:

1.    "Action" refers to the above-captioned litigation.

2.    "Any," "all," and "each" means "each and all."

3.    "Cognizant" means Plaintiff and Counterclaim Defendant Cognizant TriZetto Software Group, Inc. and Counterclaim Defendant Cognizant Technology Solutions Corp.

4.    "Communication(s)" means any oral or written utterance, notation or statement of any nature whatsoever, by and to whom ever made, including, but not limited to, correspondence, conversations, dialogues, discussions, interviews, consultations, agreements and other understandings between or among two or more persons. This includes electronic communications such as emails, online messages, mobile messages, machine-generated messages, facsimiles, and telephone communications; and letters, memoranda, exchanges of written or recorded information, in-person meetings, and events that parties each attend. The phrase "communication between" also

1

means instances where one party disseminates information that the other party receives but does not respond to.

5.    "Complaint" means the Complaint filed in this Action on August 23, 2024 (Dkt. No. 1).

6.    "Concerning" means discussing, evidencing, mentioning, memorializing, describing, constituting, containing, analyzing, studying, reporting on, commenting on, recommending, reflecting, summarizing, referring to, pertaining to, supporting, refuting, and/or purporting to evidence, mention, memorialize, describe, constitute, contain, concern, reflect, summarize, refer to, support, refute, and/or in any way be relevant, in whole or in part.

7.    "Counterclaim" means the Counterclaim in this Action filed January 9, 2025 (Dkt. 46).

8.    "Data" means structured, machine-readable computer files, such as spreadsheets, delimited text, and other files exported from relational databases.

9.    "Defendant" shall mean Defendant and Counterclaim Plaintiff Infosys Limited.

10.    "Document" shall have the broadest meaning allowed under the Federal Rules of Civil Procedure and include electronically stored information ("ESI") and any written, printed, recorded, graphic, or photographic matter, or sound production or reproduction, however produced or reproduced, of any type or nature whatsoever, which is or was in the possession or control of You and/or Your agents, employees or attorneys, or which relates to the subject matter of this Action, or the investigation of matters referred to in this Action, including all electronic and digital copies and versions of the foregoing. The term Document specifically includes, but is not limited to, handwritten and/or typed notes, minutes, records of any type, time cards, audio tapes, video tapes, reports, photographs, building plans, sketches, blueprints, memoranda, emails, reports,

2

phone logs, correspondence and letters, designs, component designs, data, databases, accounting records, including all electronic and digital copies and versions of the foregoing. A draft or non-identical copy is a separate Document within the meaning of this term.

11.    "Facets" means the software platform acquired by TriZetto Corp. in 2000 and subsequently acquired by Cognizant.

12.    "Healthcare Payor" means any organization or entity that pays a healthcare provider for healthcare services on behalf of its employees, members, or subscribers, including healthcare insurance companies and managed care organizations.

13.    "Identify" means to provide all names, addresses, phone numbers, email addresses, and other information that may be used to find information.

14.    "Including" or "includes" means including without limitation.

15.    "IT Services" means information technology ("IT") services for Healthcare Payors located in the United States

16.    "MSAs" means Master Service Agreements or any agreements between Plaintiff and Healthcare Payors or Plaintiff's customers setting forth terms of service.

17.    "NDAAs" means Non-Disclosure and Access Agreements.

18.    "Payor Software" means software products for Healthcare Payors in the United States, including but not limited to, QNXT and Facets, excluding proprietary software built by Healthcare Payors for their exclusive use.

19.    "Person(s)" means natural persons, proprietorships, joint ventures, partnerships, corporations, LLCs, trusts, groups, associations, organizations, governmental agencies, and all other entities.

3

20.    "Plaintiff" means Plaintiff and Counterclaim Defendant Cognizant TriZetto Software Group, Inc., and Counterclaim Defendant Cognizant Technology Solutions Corp., their divisions, predecessors and successors in interest, subsidiaries, affiliates and parents, as well as all of their present and former officers, directors, attorneys and agents, employees, servants and representatives and all other persons acting or authorized to act on their behalf, including third-party entities.

21.    "QNXT" means the software platform originally developed by QCSI, later acquired by TriZetto Corp., and subsequently acquired by Cognizant.

22.    "Related" means and includes, without limitation, the following terms: concerning, in connection with, analyzing, evaluating, estimating, studying, surveying, projecting, assessing, recording, summarizing, criticizing, reporting on, commenting on, comprising, constituting, dealing with, describing, discussing, reflecting, evidencing, pertaining to, prepared for, regarding, referring to, mentioning, showing and/or otherwise involving, in whole or in part.

23.    "Relevant Products" means IT Services and Payor Software.

24.    "You" or "Your" means Deloitte LLP and includes any and all past or present officers, directors, partners, employees, agents, representatives, attorneys, accountants, advisors, consultants, divisions, subsidiaries, parents, affiliates, successors-in-interest, predecessors, or other persons or entities acting or purporting to act for, on behalf of, or with Deloitte LLP.

## INSTRUCTIONS

1.    The terms defined above and the individual Document Requests are to be construed broadly to the fullest extent of their meaning in a good faith effort to comply with the Federal Rules of Civil Procedure.

2.      If you have a good-faith objection to any Document Request or any part thereof, the specific nature of the objection and whether it applies to the entire Request or to a part of the Request shall be stated. If there is an objection to any part of a Request, then the part(s) objected to should be identified and documents responsive to the remaining unobjectionable part should be timely produced.

3.      Defendant seeks production of the documents set forth in the numbered Requests below in your possession, custody, and/or control, including non-privileged, non-work-product documents in the possession of your attorneys, accountants, consultants, or other agents, and including all entities included in the definition of "You" above.

4.      Any alteration of a responsive document, including notes, underlining, stamps, drafts, revisions, modifications, and other versions of a final document, is a separate document and is to be produced as a separate document.

5.      Documents shall be produced as they are kept in the usual course or segregated as responsive to a specific Document Request. If documents and things are produced as they are maintained in the normal course of business: (a) all associated file labels, file headings thereon, and file folders shall be produced together with the responsive documents from each file; (b) all documents containing markings thereon that cannot be legibly or accurately copied shall be produced in their original form; otherwise, you may produce photocopies; and (c) each page shall be given a discrete production number.

6.      For all documents, any family relationship should be captured and reflected in the production.

7.      Documents not otherwise responsive to these Document Requests shall be produced if such documents mention, discuss, refer to, or explain the documents called for by the

5

Document Requests, or if such documents are attached to documents called for by Document Requests and constitute routing slips, transmittal emails, transmittal memoranda, letters, cover letters, comments, evaluations, or similar materials.

8.    If You withhold information on the grounds of privilege (including work product immunity), you must identify the nature of the privilege that is being claimed in accordance with the ESI Order entered by the Court in this Action. A copy of the ESI Order is attached as Exhibit A.

9.    Any purportedly privileged document containing non-privileged material must be produced, redacting only the portion purportedly privileged.

10.    All documents and data and all electronically stored information should be produced in the manner required by the ESI Order entered by the Court in this Action.

11.    Each production shall be submitted with a transmittal letter that includes the case caption, production volume name, encryption method/software used, and passwords for any password protected files.

12.    You may designate documents as confidential if appropriate under the Protective Order entered by the Court in this Action. A copy of the Protective Order is attached as Exhibit B.

13.    The singular form of a noun or pronoun shall be considered to include within its meaning the plural form of the noun or pronoun and vice versa; and the past tense shall include the present tense where the clear meaning is not distorted.

14.    For any document responsive to these Requests which is known to have been destroyed or lost or is otherwise unavailable, identify each document by author, addressee, date, number of pages, and subject matter; and explain in detail the events leading to the destruction or

loss or the reason for the unavailability of such document, including the location of such document
when last in your possession, custody, or control, and the date and manner of its disposition.

  15.  Unless otherwise specified, each Request seeks Documents and/or information for
the time period spanning January 1, 2018 through the present (the "Relevant Period").

**DOCUMENTS TO BE PRODUCED**

  1.  Documents sufficient to show Your annual market shares for the Relevant Products
in the United States during the Relevant Period, including the data source and methodology used
to calculate such shares.

  2.  Documents sufficient to show identification and analysis of Your actual or potential
competitors for each Relevant Product You have provided during the Relevant Period, including
any Strengths Weaknesses, Opportunities, and Threats ("SWOT") analyses, and market research
and/or analysis.

  3.  Documents sufficient to show Your proposals, bids, responses to requests for
proposal and requests for information, or solicitations to provide Relevant Products to Healthcare
Payors during the Relevant Period.

  4.  Documents sufficient to show any internal or third-party analysis or assessment of
the marketplace for any Relevant Product during the Relevant Period, including discussions of
competitors, entry barriers, potential entrants, supply and demand conditions, pricing, quality and
market shares.

  5.  Documents sufficient to show what, if any, terms You negotiated for inclusion or
omission in any MSAs, licensing agreements, or NDAAs with Cognizant involving the Relevant
Products during the Relevant Period.

7

6.  Documents sufficient to show Your agreements to provide or supportany Relevant Products during the Relevant Period, including MSAs, NDAAs, licensing and subscription contracts, and data tracking, logging, or cataloging agreements.

7.  Documents sufficient to show the training You received from Payor Software Vendors.

8.  All Documents showing any actions or requirements by Cognizant or the prior owners of Facets or QXNT to protect purported confidential and trade secret information related to Facets or QNXT, including but not limited to procedures, guidelines, instructions, or contract terms.

9.  Documents sufficient to show Your policies regarding protection of confidential or trade secret information that would apply to handling or management of any purported trade secret or confidential information related to Facets or QNXT.

10. All documents related to the development of QNXT or Facets to the extent You were involved in development work on either platform prior to 2014.

11. All Communications related to the allegations of the Complaint or Counterclaim in this action, including any communications with Cognziant or any other entity about this Action.

12. Data sufficient to show each attempt to sell Payor Software or IT Services during the Relevant Period, including the identity of the customer, date of the offer, the product or service being offered, the price, known other bidders, and outcome (i.e., if You won and, if not, who did).

13. Data sufficient to show all sales of Payor Software, broken down by customer (i.e., specific Healthcare Payor), software product, to the most granular level possible, customer's line of business (e.g., Medicare, Medicaid, Commercial, etc.), for at least each month during the Relevant Period.

14.    Data sufficient to show all sales of IT Services, broken down by customer (i.e., specific Healthcare Payor), software product, type and category of services provided, the customer's line of business (e.g., Medicare, Medicaid, Commercial, etc.)for at least each month in the Relevant Period.

15.    Data sufficient to show annual revenues, costs, and profits from Payor Software, at the most granular level possible.

16.    Data sufficient to show annual revenues, costs, and profits from IT Services, at the most granular level possible.

17.    Data sufficient to show all Payor Software product development costs, including but not limited to research and development expenses, broken down by each project, product, module, feature, and category, and each division or business unit, at the most granular level possible.

18.    Data sufficient to show all IT Services product development costs, including but not limited to research and development expenses, broken down by each project, product, module, feature, and category, and each division or business unit, at the most granular level possible.

19.    Data sufficient to show quality, usability, and customer satisfaction related to Your Payor Software or IT Services, including but not limited to statistics on downtime, logs or statistics showing rates of error or bugs, and customer approval ratings.

20.    Documents sufficient to show Your past, current or future plans to develop Payor Software products, modules, or features, or IT Services, including budgets, proformas, projections, and strategic plans.

# EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| COGNIZANT TRIZETTO SOFTWARE GROUP, INC., <br><br> *Plaintiff,* <br><br> v. <br><br> INFOSYS LIMITED, <br><br> *Defendant.* | Case No. 3:24-CV-2158-X |
| INFOSYS LIMITED, <br><br> *Counterclaim Plaintiff,* <br><br> v. <br><br> COGNIZANT TECHNOLOGY SOLUTIONS CORP. and COGNIZANT TRIZETTO SOFTWARE GROUP, INC., <br><br> *Counterclaim Defendants.* | |

## ORDER REGARDING DISCOVERY OF
## <u>ELECTRONICALLY STORED INFORMATION</u>

The Court ORDERS as follows:

1.    This Order supplements all other discovery rules and orders. It streamlines Electronically Stored Information ("ESI") production to promote a "just, speedy, and inexpensive determination" of this action, as required by Federal Rule of Civil Procedure 1.

1

2.    This Order may be modified at the Court's discretion or by agreement of the parties. If one of the parties wishes to modify this agreement but the parties do not agree to the proposed modifications, the parties shall jointly submit their competing proposals and a summary of their dispute. No further briefing will be permitted unless requested by the Court.

3.    A party's meaningful compliance with this Order and efforts to promote efficiency and reduce costs will be considered in cost-shifting determinations, but nothing in this Order shall affect a producing party's right to seek reimbursement for costs associated with collection, review, and/or production of ESI. Further, consistent with the Federal Rules of Civil Procedure, requests for production of ESI should be reasonably targeted, clear, and as specific as possible.

4.    Except as expressly stated herein, nothing in this Order affects the parties' discovery obligations under the Federal or Local Rules, nor does anything in this agreement impose additional burdens beyond those imposed by those Rules, and the parties reserve all objections relating to the production of ESI and related materials which may not be specifically addressed herein.

## A.    Preservation

5.    Pursuant to Fed. R. Civ. P. 37(e), the parties have an obligation to take reasonable and proportionate steps to preserve discoverable information in the party's possession, custody, or control, including but not limited to emails, text messages, chat messages, and other similar forms of communication. The parties agree that the following data sources, although they may contain relevant

information, are not reasonably accessible because of undue burden or cost, and need not be preserved, searched, or produced absent a good cause showing of a particularized need for the data as established by the facts and legal issues of the case. The parties shall not be required to modify the procedures used by them in the ordinary course of business to back-up and archive data and the following categories of ESI need not be preserved:

(a)     Deleted, slack, fragmented, or other data only accessible by forensics;

(b)     Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system;

(c)     On-line access data such as temporary internet files, history, cache, cookies, and the like;

(d)     Back-up data that is substantially duplicative of data that is more accessible elsewhere;

(e)     Data remaining from systems no longer in use that is unintelligible on the systems in use;

(f)     Viruses;

(g)     Public-facing websites;

(h)     Operating system files, executable files, server, system, or network logs, electronic data temporarily stored by scientific equipment or attached devices;

(i)     Data stored on photocopiers, scanners, and fax machines;

(j)    Interim automatically saved drafts, as opposed to drafts saved by a user;

(k)    Server, system, or network logs;

(l)    Electronic data (e.g., email, calendars, contact data, and notes) sent to or from mobile devices (e.g., iPhone, iPad, and Android devices), provided that a copy of all such electronic data is automatically saved in real time elsewhere (such as on a server, laptop, desktop computer, or "cloud" storage); and

(m)    Other forms of ESI whose preservation requires extraordinary affirmative measures that are not utilized in the ordinary course of business.

## B.    Permitted Culling

6.    De-duplication. The parties shall de-duplicate their ESI production across custodial and non-custodial data sources, and the duplicate custodian information removed during the de-duplication process shall be tracked in the "All Custodians" field in the database load file, and the duplicate file path information shall be produced in the "All Paths" metadata field. If processing and production is done on a rolling basis, updated duplicate custodians and "All Paths" fields with additional values shall be provided in an overlay metadata load file. The producing party shall identify whether the overlay replaces previously produced fields for a file or supplements them.

7.    Email Threading. The parties may use email thread suppression to avoid review and production of information contained within an existing email thread in another document being reviewed and produced, but under no circumstances will

email thread suppression eliminate (a) the ability of a requesting party to identify every custodian who had a copy of any version of the produced document or email, (b) the ability of a requesting party to identify any BCC recipients of any version of the produced document or email, or (c) remove from production any unique branches and/or attachments contained within an email thread.

8.      Excluding Email Domains.  Producing parties may utilize an ESI search process to identify categories of documents, such as emails from domains typically associated with junk email, such as fantasy football-related emails, retailer advertising, and newsletters or alerts from non-industry sources.  To the extent a party opts to exclude uniquely identifiable email domain names (e.g., emails from domains typically associated with junk or irrelevant topics like sports, fantasy team competitions, retailer advertising, and newsletters or alerts from non-industry sources) as part of its initial filter of potentially responsive documents, the parties agree to disclose domain names excluded under this paragraph.

9.      Embedded objects.  Embedded, as opposed to linked, spreadsheets, Word documents, or PowerPoints will be extracted as separate documents and treated as attachments to the documents.  The parties agree that embedded objects including, but not limited to, logos, icons, emoticons, and footers, may be culled from a document set and need not be produced as separate documents by a producing party (e.g., such embedded objects will be produced within the document image itself, rather than as separate attachments).

10.    Other Permitted Culling.  A producing party is permitted to cull data using agreed-upon custodial and non-custodial source lists, agreed-upon date parameters, and agreed-upon search terms (if applicable), and a producing party is permitted to remove known system or operating files, such as those that appear on the National Software Reference Library (NSRL) hash list.  As such, the parties may cull entire file directories from computer hard drives that contain Program Files, Program Data, SWTOOLs, Windows Operating System files, etc.  For those excluded directories, the parties will only conduct searches on user-created content that is reviewable and likely to yield relevant content.

## C.    Exchange of Custodians and Search Terms

11.    Custodians. Within 30 days of entry of this Order, the parties shall meet and confer to reach agreement on a reasonable list of custodians for purposes of collection, review, and production of ESI.  In connection with the meet and confer process, each party shall provide a proposed list of individual custodians, including their job title and a brief description of their duties, who are knowledgeable about and were involved with the core issues or subjects in this case.  If, after the parties identify initial ESI custodians, within 14 days, a receiving party determines that additional ESI custodians should be added, the receiving party shall advise the producing party in writing of the proposed additional ESI custodian(s) and the basis for the request.  Within 7 days, the producing party shall consider in good faith whether the proposed additional ESI custodian(s) are relevant and proportional to the needs of the case.  If, after good faith consideration and the parties' meet and

confer, the producing party refuses to add the receiving party's proposed, additional ESI custodians, the receiving party may raise the issue with the Court.

12.    Search Terms.  The parties shall meet and confer to reach agreement on search terms to be used for electronic searches of the files from the custodians.  The parties recognize that initial search terms may require modification should a search produce an unreasonably large number of non-responsive or irrelevant results.  If, after good faith consideration and the parties' meet and confer, the producing party refuses to agree to the receiving party's proposed search terms, the receiving party may raise the issue with the Court.

13.    Substantial Completion.  The parties shall substantially complete their respective document productions at least 120 days in advance of the close of discovery. "Substantially complete" means that both parties believe in good faith that they have identified and produced all the documents requested (with the understanding that there may be a small number of outstanding items or documents that support the party's case in chief).

14.    Rolling Productions. The parties agree to produce documents on a rolling basis. The producing party will, as needed, supplement the load files with updated All Custodian information, as well as BCC information to the extent such metadata exists.  Duplicate custodian information may be provided by a metadata "overlay" and will be provided by a producing Party with each production as needed.

15.    Reservation of Rights to Update Lists of Custodians and Search Terms. Each party reserves its rights to seek documents from additional custodians

7

identified through discovery or to request that the producing party employ additional search terms that become relevant as discovery progresses. The parties shall meet and confer in good faith to reach agreement on updated custodian lists and search terms subject to paragraphs 6 and 7.

16.     Technology Assisted Review ("TAR"). If any party intends to use TAR, such as predictive coding, to limit the number of documents that it reviews or produces, it shall notify the requesting party in writing and identify the name and version number and a description of the TAR technology being used. This notification must be made 14 days prior to commencing review, and the non-requesting party shall have 7 days to object. Any party implementing TAR to limit the number of documents it reviews must achieve a minimum "recall" rate of at least 75% for those documents reviewed with TAR. Agreed-upon or Court-ordered search terms may be used to pre-cull the universe of documents before employing TAR. A party may use TAR, continuous active learning, or similar technology to sort documents for linear review without disclosure to the other parties. If, following efforts to meet and confer, the requesting party objects to a party's use of TAR, the requesting party may seek relief from the Court.

### D.    Non-Custodial Data

17.     Unless otherwise agreed to by the parties in writing, nothing herein, including any provisions related to the exchange of custodians and search terms, shall excuse a party from reasonably identifying, searching, and producing from non-custodial data sources (including, but not limited to, databases, information archives,

and shared drives) that are reasonably likely to have responsive information, nor shall it excuse a party from producing structured data when called for. The parties will work in good faith to agree to non-custodial sources and methods for reasonable searches of those sources on a case-by-case basis (including with search terms if appropriate).

**E.    Production Format**

18.    Absent agreement of the parties or further order of this Court, the following parameters shall apply to ESI production:

a.    <u>Metadata</u>. For documents originating in electronic format (except for document types for which the specifications below are inapplicable, infeasible, or unduly burdensome), the exchanged Concordance load files shall contain unique field delimiters and, to the extent applicable, the following fields:

- Custodian (custodian for original version processed);
- All Custodians (all custodians who were in possession of a de-duplicated document);
- Beginning Bates Number (BEGBATES);
- Ending Bates Number (ENDBATES);
- Beginning Bates Number of Family Range (if applicable) (BEGATTACH);
- Ending Bates Number of Family Range (if applicable) (ENDATTACH);
- Family Identifier;

- OCR text (pointing to the .txt file link only) (if applicable);

- MD5 Hash; Date Created;

- Time Zone;

- Folder Path;

- Source Path;

- Virtual Path;

- File Name;

- File Type;

- From (for e-mail documents);

- Recipient(s) (for e-mail documents);

- Carbon Copy (CC) recipient(s) (for e-mail documents);

- Blind Carbon Copy (BCC) recipient(s) (for e-mail documents);

- Date Sent (for e-mail documents);

- Time Sent (for e-mail documents);

- Date Received (for e-mail documents);

- Time Received (for e-mail documents);

- Email Subject (for e-mail documents);

- Date Created;

- Time Created;

- Date Last Modified;

- Time Last Modified;

- Author;

- Confidentiality (identifies a document's confidentiality designation); and

- Redacted (identifies whether a document is redacted).

b.  General Document Image Format.  ESI shall be produced in single-page TIFF format for images produced in black and white, and JPEG format for images produced in grayscale or color; however, if such images cannot be produced legibly in TIFF or JPEG format, they will be produced in high resolution PDF format, unless the producing party elects to produce the document(s) solely in native format.  Additionally, if an original document contains color necessary to understand the meaning or content of the document, the producing party will honor reasonable requests for a color image of the document.  Load files shall be provided to indicate the location and unitization of the files.  Files shall be named with a unique Bates number followed by the appropriate file extension.  If a document is more than one page, the unitization of the document and any attachments and/or affixed notes shall be maintained as they existed in the original document.

    c.     <u>Text-Searchable Documents</u>. No party has an obligation to make its production text-searchable; however, if a party's documents already exist in text-searchable format independent of this litigation, or are converted to text-searchable format for use in this litigation, including for use by the producing party's counsel, then such documents shall be produced in the same text-searchable format at no cost to the receiving party. Where available, in addition to the formats listed above, the text of native files should be extracted directly from the native file and a single multi-page text file shall be provided for each document. Text files need not contain the redacted portions of documents and OCR text files may be substituted instead of extracted text files for redacted documents.

    d.     <u>Footer</u>. Each document image shall contain a footer with a sequentially ascending Bates number, provided that, if a footer would obstruct any information on the document image, the sequentially ascending production number may be affixed to an alternative location on the document image. Additionally, responsive documents in TIFF, JPEG, or PDF format will be stamped with the appropriate confidentiality designations in accordance with the Protective Order in this matter. For documents produced in native format, the slipsheet file indicating

that the file was produced natively shall contain the confidentiality designation for the native file.

e.   <u>Parents and Attachments</u>.  Parent documents with attachments, enclosures, and/or exhibits should be produced in the form in which they are kept.  Electronic mail files with attachments should additionally be produced with attachments immediately following their respective parent email and the entire production range for the email and its respective attachments also provided (e.g., Beginning Family Range and Ending Family Range metadata fields populated) to the extent reasonably practical to do so.

f.   <u>Unitizing of Documents</u>.  Distinct documents should not be merged into a single record, and single documents should not be split into multiple records (i.e., paper documents should be logically unitized).  However, each 24-hour period in a text message chain or chat transcript may be treated as a single document.

g.   <u>Native Files</u>.  Spreadsheets (e.g., MS Excel, Numbers) and audio or video media files will be produced in native format unless redacted.  In the event spreadsheets require redactions, they shall be produced in Microsoft-equivalent format (.xls, .xlsx).  These documents may be redacted using litigation database

applications that can redact native Excel files, or in native format by inserting "[PRIVILEGED]" or "[PII]" in the cells from which data has been deleted before production.  A party is not required to produce the same ESI in more than one format.  After initial production of electronic documents in electronic file format has occurred, a party may request that specific documents or file types be produced in native format by specifically identifying to the producing party the Bates number of the document sought and the good cause basis for the request for production in native format.  The parties should then meet and confer in good faith to determine whether production in an alternative format is necessary.  A party shall not make unduly burdensome and unreasonable requests for production of documents in native format, and a party shall not unreasonably refuse a request for the production of documents in native format.  Documents originating in electronic format (including but not limited to Excel files, .txt files, and media files) that are produced in native format shall be labeled with a unique production number (i.e., Bates number) and produced with a slipsheet indicating that the document was produced in native format and containing the appropriate confidentiality designation in accordance with the Protective Order.

## F.    Non-Party Subpoenas

19.    Non-Party Document Productions.    The recipient of a non-party document production shall serve a copy of that document production on all counsel of record within seven (7) days of receiving the document production. Service of documents or a file transfer link via email on a designated service list shall constitute compliance with this paragraph.

20.    Informing Non-Parties of This Order. The parties agree to provide a copy of this Order with any document subpoena served in this Litigation.

## G.    Inadvertent Production of Privileged Material

21.    If information is produced in discovery that is subject to a claim of privilege or other protection, the party making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must within 7 business days: either return or destroy the specified information and any copies it has or notify the producing party that it wishes to challenge the claim of privilege or work product protection and confirm the material will be sequestered until the issue is resolved.    The receiving party may not use or disclose the information until the claim is resolved.    The sole exception is for presenting the information to the court for a determination of the claim.

22.    Fed. R. Evid. 502(d).    Pursuant to Fed. R. Evid. 502(d), the production of a privileged or work-product-protected document, whether inadvertent or otherwise, is not a waiver of privilege or protection from discovery in this case or in any other federal or state proceeding.    For example, the mere production of privileged

or work-product-protected documents in this case as part of a production is not itself a waiver in this case or in any other federal or state proceeding. This Order shall be interpreted to provide the maximum protection allowed by Fed. R. Evid. 502(d). The provisions of Fed. R. Evid. 502(b) do not apply. Nothing contained herein, however, is intended to limit a party's right to conduct a review of ESI for relevance, responsiveness, privilege, and/or other protection from discovery.

23.    Redactions. In addition for privilege, a producing party may redact personal information to the extent that the information falls within one of the following categories: (1) information that relates to the medical or health issues of an individual, (2) social security numbers, taxpayer-identification numbers, driver's license numbers, personal physical or email address information and/or phone numbers, passport numbers, financial-account numbers or other bank account information, or personal passcodes. Such redactions should be identified as "PII" on the redactions.

## H.    Privilege Log

24.    Where a discovery request appears to call for the production of documents, things, or ESI that contain both privileged and non-privileged responsive information, the responsive information shall be produced, but the privileged information may be redacted.

25.    For all documents that are withheld based on privilege or other protection, the parties will provide a privilege log in Excel format. The parties will produce a privilege log no later than 120 days before the close of fact discovery.

26.    For each responsive document withheld entirely because of privilege, the parties agree to include the following metadata information on the privilege log:

(a)    A unique identifying number for each logged document ad seriatim (i.e., the Beg Bates or Privilege Log ID);

(b)    Custodian or source (the name of the person(s) or non-custodial source from which the document was collected);

(c)    Date of the document or email;

(d)    Document type (file extension or msg or similar indication of file type for e-mail);

(e)    Document title (documents), so long as the disclosure would not reveal information itself privileged or protected; if the disclosure would reveal information itself privileged or protected, then the field shall indicate "Privileged";

(f)    Subject line (email), so long as the disclosure would not reveal information itself privileged or protected; if the disclosure would reveal information itself privileged or protected, then the field shall indicate "Privileged";

(g)    Author(s);

(h)    Recipient(s), CC(s), BCC(s) (for e-mail and hard-copy communication such as letters and internal memoranda); and,

(i)    The basis for the privilege claim (e.g., attorney-client; work product).

17

27.    Categorical Privilege Designations.  If a producing party contends that documents of a particular type or category are privileged, or requiring the creation of an individualized privilege log is not reasonable or proportionate for documents of a particular type or category, the producing party may identify such documents on a privilege log by category rather than individually.  The producing party's categorical privilege log entry must still provide the receiving party, and the Court if necessary, with information sufficient to evaluate the producing party's privilege claims.

28.    Documents Excluded From Privilege Log.    The following are presumptively privileged and shall not be logged: (1) communications regarding this litigation between a party (or its agent) and outside litigation counsel (or an agent of such counsel working under their direction or supervision) after December 1, 2023; and (2) work product created by or at the direction of counsel for this litigation. Nothing in this Paragraph is intended to preclude negotiation of additional exclusions to reduce the burdens of privilege logging.

## I.    Depositions

29.    In the event a custodian of a producing party is noticed for deposition, upon request, the producing party shall, 21 calendar days prior to a scheduled deposition, inform the noticing party whether the producing party reasonably believes that all of the custodian's responsive documents have been produced or logged. The party noticing the deposition may elect to waive the requirements of this Paragraph, or extend the time for the party being deposed to make the disclosures required under this Paragraph.

**IT IS SO ORDERED** this 17th day of March, 2025

The Honorable Brantley Starr
UNITED STATES DISTRICT JUDGE

# EXHIBIT B

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| COGNIZANT TRIZETTO SOFTWARE GROUP, INC., | Case No. 3:24-cv-2158-X |
| Plaintiff, | The Honorable Brantley Starr |
| v. | Magistrate Judge David L. Horan |
| INFOSYS LIMITED, | |
| Defendant. | |
| INFOSYS LIMITED, | |
| Counterclaim Plaintiff, | |
| v. | |
| COGNIZANT TECHNOLOGY SOLUTIONS CORP. and COGNIZANT TRIZETTO SOFTWARE GROUP, INC., | |
| Counterclaim Defendants. | |

## [PROPOSED] PROTECTIVE ORDER

### A.    Proceedings and Information Governed

1.    This Order ("Protective Order") is made under Fed. R. Civ. P. 26(c). It governs any document, information, or other thing furnished by any party to any other party, and it includes any nonparty who receives a subpoena in connection with this action. The information protected includes, but is not limited to: answers to interrogatories; answers to requests for admission;

responses to requests for production of documents; deposition transcripts and videotapes; deposition exhibits; and other documents or things produced, given, or filed in this action that are designated by a party as "Confidential," "Highly Confidential – Attorneys' Eyes Only," or "Highly Confidential – Source Code" in accordance with the terms of this Protective Order, as well as to any copies, excerpts, abstracts, analyses, summaries, descriptions, or other forms of recorded information containing, reflecting, or disclosing such information (collectively, "Protected Material").

**B.      Designation and Maintenance of Information**

2.      For purposes of this Protective Order, (a) the "Confidential" designation means that the producing party reasonably believes that the document or item is comprised of confidential or proprietary business, commercial, research, product or financial information that is not publicly known and is of technical or commercial advantage to its possessor, in accordance with Fed. R. Civ. P. 26(c)(1)(G), other information required by law or agreement to be kept confidential, or personally identifiable information, (b) the "Highly Confidential – Attorneys' Eyes Only" designation means that the producing party reasonably believes that the document or item is comprised of trade secret or other confidential information that the producing party deems especially sensitive, which may include, but is not limited to, confidential research and development, financial, technical, marketing, or any other sensitive information, and (c) the "Highly Confidential – Source Code" designation means that the producing party reasonably believes that the document or item is comprised of or includes trade secret or confidential source code. Protected Material does not include, and this Protective Order does not apply to, information that is already in the knowledge or possession of the party to whom disclosure is made unless that party is already bound by agreement not to disclose such information, or information that has been

disclosed to the public or third persons in a manner making such information no longer confidential. Nothing in this Protective Order prohibits disclosure of a document or information to a current or former employee who wrote, sent, received, or had access to that document or information during the course of their employment.

3.      Documents and things produced during the course of this litigation within the scope of paragraph 2(a) above, may be designated by the producing party as "Confidential" by placing on each page and each thing a legend substantially as follows:

**CONFIDENTIAL**
**SUBJECT TO PROTECTIVE ORDER**

4.      Documents and things produced during the course of this litigation within the scope of paragraph 2(b) above may be designated by the producing party as "Highly Confidential – Attorneys' Eyes Only" by placing on each page and each thing a legend substantially as follows:

**HIGHLY CONFIDENTIAL – ATTORNEY EYES' ONLY**
**SUBJECT TO PROTECTIVE ORDER**

5.      Documents and things produced during the course of this litigation within the scope of paragraph 2(c) above may be designated by the producing party as "Highly Confidential – Source Code" by placing on each page and each thing a legend substantially as follows:

**HIGHLY CONFIDENTIAL – SOURCE CODE**
**SUBJECT TO PROTECTIVE ORDER**

6.      A party may designate information disclosed at a deposition for protection under this Protective Order by requesting the reporter to so designate the transcript or any portion of the transcript at the time of the deposition as "Confidential," "Highly Confidential – Attorneys' Eyes Only," or "Highly Confidential – Source Code." If no such designation is made at the time of the deposition, any party will have twenty-one (21) calendar days from the receipt of the final transcript to designate, in writing to the other parties and to the court reporter, whether any portion,

identified through specific pages and lines, of the transcript is to be designated as "Confidential,"
"Highly Confidential – Attorneys' Eyes Only," or "Highly Confidential – Source Code." If no
such designation is made at the deposition or within this twenty-one (21) calendar day period
(during which period, the transcript must be treated as "Highly Confidential – Attorneys' Eyes
Only," unless the disclosing party consents to less confidential treatment of the information), the
entire deposition will be considered devoid of Protected Material. Each party and the court reporter
must attach a copy of any final and timely written designation notice to the transcript and each
copy of the transcript in its possession, custody or control, and the portions designated in such
notice must thereafter be treated in accordance with this Protective Order. It is the responsibility
of counsel for each party to maintain materials containing Protected Material in a secure manner
and appropriately identified so as to allow access to such information only to such persons and
under such terms as is permitted under this Protective Order.

**C.    Inadvertent Failure to Designate**

7.     The inadvertent failure to designate information as Protected Material will not be
deemed to waive a later claim as to its confidential nature, or to stop the producing party from
designating such information as Protected Material at a later date in writing and with particularity.
The information must be treated by receiving party as Protected Material from the time the
receiving party is notified in writing of the change in the designation. The inadvertent failure to
designate material as privileged will be addressed in a separate order governing the discovery of
electronically stored information in this action.

**D.    Challenge to Designations**

8.     A receiving party may make a good faith challenge to a producing party's
designation at any time. Any receiving party disagreeing with a designation may request in writing

that the producing party change the designation. The producing party will then have ten (10) business days after receipt of a challenge notice to advise the receiving party whether or not it will change the designation. If the parties are unable to reach agreement after the expiration of this ten (10) business day time frame, and after the conference required under Local Rule 7.1(a), the receiving party may at any time thereafter seek an order to alter the confidential status of the designated information. Until any dispute under this paragraph is ruled upon by the presiding judge, the designation will remain in full force and effect, and the information will continue to be accorded the confidential treatment required by this Protective Order. A receiving party's decision not to challenge a producing party's designation shall in no way act as or be interpreted as (1) an admission that the designated information is trade secret or other confidential information of the designating party or (2) a waiver of the party's right to assert any designated information is not confidential, proprietary, or trade secret information of the designating party.

**E.      Disclosure and Use of Protected Material**

9.      Protected Material may only be used for purposes of preparation, trial, and appeal of this action. Protected Material may not be used under any circumstances for prosecuting any patent application, for patent licensing, or for any other purpose.

10.      "Confidential" information may be disclosed by the receiving party only to the following individuals, provided that such individuals are informed of the terms of this Protective Order:

(a) employees (including in-house counsel) of the receiving party who are required in good faith to provide assistance in the conduct of this litigation, including any settlement discussions, and who have signed the Confidentiality Agreement in the form attached as Exhibit A;

(b) outside counsel for the receiving party, as well as supporting personnel employed by outside counsel, such as paralegals, legal secretaries, data-entry clerks, legal clerks, and private photocopying and litigation support services;

(c) experts or consultants who have signed the Confidentiality Agreement in the form attached as Exhibit A;

(d) any persons requested by counsel to furnish services such as document coding, image scanning, mock trial, jury profiling, translation services, court-reporting services, demonstrative-exhibit preparation, or the creation of any computer database from documents, who have signed the Confidentiality Agreement in the form attached as Exhibit B;

(e) the Court and its personnel;

(f) witnesses at hearings, during the pendency of that hearing, to whom counsel believes, in good faith, such disclosure is reasonably necessary for the prosecution or defense of the proceedings and who have signed the Confidentiality Agreement in the form attached as Exhibit A;

(g) in preparation for and during depositions, witnesses in the action to whom disclosure is reasonably necessary and who have signed the Confidentiality Agreement in the form attached as Exhibit A, provided that counsel has a good-faith basis for believing such information is relevant to events, transactions, discussions, communications or data about which the witness is expected to testify or about which the witness may have knowledge;

(h) the author or recipient of the document (not including a person who received the document solely in the course of litigation);

(i) mediators and their direct personnel, provided that they are bound by a confidentiality agreement acceptable to all parties;

(j) relevant employees of any insurer of a receiving party to the extent that such disclosure is reasonably necessary for the defense of that receiving party in this action and who have signed the Confidentiality Agreement in the form attached as Exhibit A; and

(k) other persons only by written consent of the producing party and who have completed and signed the Confidentiality Agreement in the form attached as Exhibit A, or upon order of the Court and on such conditions as may be agreed or ordered, but such consent shall not be unreasonably withheld.

11.    Subject to paragraph 12 below, "Highly Confidential – Attorneys' Eyes Only" information may be disclosed by the receiving party only to the following individuals, provided that such individuals are informed of the terms of this Protective Order:

(a) four in-house counsel legal staff members of the receiving party[1] (1) who have no direct involvement in competitive decision-making, (2) to whom disclosure is reasonably necessary for this litigation, and (3) who have signed the Confidentiality Agreement in the form attached as Exhibit A.  Should one of the designated in-house counsel members of the receiving party leave the employment of their Company, the receiving party is entitled to a replacement, subject to paragraph 12;

(b) outside counsel for the receiving party, as well as supporting personnel employed by outside counsel, such as paralegals, legal secretaries, data-entry clerks, legal clerks, private photocopying and litigation support services;

(c) experts or consultants who have signed the Confidentiality Agreement in the form attached as Exhibit A;

---

[1] For clarity, this provision is not applied by entity.  *E.g.*, Cognizant TriZetto Software Group, Inc. and Cognizant Technology Solutions Corp. are collectively entitled to select four in-house counsel legal staff members pursuant to this provision.

(d) the Court and its personnel;

(e) witnesses at hearings, during the pendency of that hearing, to whom counsel believes, in good faith, such disclosure is reasonably necessary for the prosecution or defense of the proceedings and who have signed the Confidentiality Agreement in the form attached as Exhibit A;

(f) in preparation for and during depositions, witnesses in the action to whom disclosure is reasonably necessary and who have signed the Confidentiality Agreement in the form attached as Exhibit A, provided that counsel has a good-faith basis for believing such information is relevant to events, transactions, discussions, communications or data about which the witness is expected to testify or about which the witness may have knowledge;

(g) the author or recipient of the document (not including a person who received the document solely in the course of litigation);

(h) mediators and their direct personnel, provided that they are bound by a confidentiality agreement acceptable to all parties;

(i) relevant employees of any insurer of a receiving party to the extent that such disclosure is reasonably necessary for the defense of that receiving party in this action and who have signed the Confidentiality Agreement in the form attached as Exhibit A; and

(j) other persons only by written consent of the producing party and who have completed and signed the Confidentiality Agreement in the form attached as Exhibit A, or upon order of the Court and on such conditions as may be agreed or ordered, but such consent shall not be unreasonably withheld.

12.    Further, prior to disclosing "Highly Confidential – Attorneys' Eyes Only" information to a receiving party's in-house counsel legal staff members, the receiving party must

provide to the producing party a signed Confidentiality Agreement in the form attached as Exhibit A for such in-house counsel legal staff members. Prior to disclosing "Highly Confidential – Attorneys' Eyes Only" information to a receiving party's expert or consultant, excluding any expert retained for the purpose of consulting or opining on antitrust claims or defenses, the receiving party must provide to the producing party a signed Confidentiality Agreement in the form attached as Exhibit A for the expert or consultant, the resume or curriculum vitae of the expert or consultant, and any current and past consulting relationships in the industry. The producing party will thereafter have seven (7) business days from receipt of the Confidentiality Agreement to object to any proposed individual. The objection must be made for good cause and be communicated in writing, stating with particularity the reasons for the objection. Failure to object within seven (7) business days constitutes approval. If the parties are unable to resolve any objection, the receiving party may file a motion to resolve the matter. There will be no disclosure to any proposed individual during the seven (7) business day objection period, unless that period is waived by the producing party, or if any objection is made, until the parties have resolved the objection, or the presiding judge has ruled upon any resultant motion.

13.    Counsel is responsible for the adherence by third-party vendors to the terms and conditions of this Protective Order. Counsel may fulfill this obligation by obtaining a signed Confidentiality Agreement in the form attached as Exhibit B.

14.    Notwithstanding any of the provisions of this Protective Order, counsel may provide high level summaries or characterizations of the evidence in the case to their client for the purpose of obtaining instructions in the prosecution or defense of this litigation. Nothing in this Order is intended to bar or otherwise prevent any counsel from rendering advice to their client

with respect to this litigation and, in the course of rendering such advice, from relying upon his or her examination or knowledge of Protected Material.

**F.    Source Code**

15.    To the extent production of source code becomes necessary in this case, a producing party may designate source code as "Highly Confidential – Source Code" if it comprises or includes confidential, proprietary, or trade secret source code.

16.    Protected Material designated as "Highly Confidential – Source Code" shall be subject to all of the protections afforded to "Highly Confidential – Attorneys' Eyes Only" information, and may be disclosed only to the individuals to whom "Highly Confidential – Attorneys' Eyes Only" information may be disclosed, as set forth in paragraph 11, with the exception of (i) in-house counsel as identified in subparagraph 11(a); or (ii) a person granted access under subparagraphs 11(e) or 11(f) that would otherwise not be allowed access to the source code. Further, prior to disclosing "Highly Confidential – Source Code" information to a receiving party's expert or consultant, the receiving party must provide to the producing party a signed Confidentiality Agreement in the form attached as Exhibit A. The receiving party must also provide to the producing party the resume or curriculum vitae of the expert or consultant, the expert or consultant's business affiliation, and any current and past consulting relationships in the industry. The producing party will thereafter have seven (7) business days from receipt of the Confidentiality Agreement to object to any proposed individual. The objection must be made for good cause and be communicated in writing, stating with particularity the reasons for the objection. Failure to object within seven (7) business days constitutes approval. If the parties are unable to resolve any objection, the receiving party may file a motion to resolve the matter. There will be no disclosure to any proposed individual during the seven (7) business day objection period, unless

that period is waived by the producing party, or if any objection is made, until the parties have resolved the objection, or the presiding judge has ruled upon any resultant motion.

17.     Any source code produced in discovery shall be made available for inspection, in a format allowing it to be reasonably reviewed and searched, during normal business hours or at other mutually agreeable times, at an office of the producing party's counsel or another mutually agreed upon location.  The source code shall be made available for inspection on a secured computer in a secured room without Internet access or network access to other computers, and the receiving party shall not copy, remove, or otherwise transfer any portion of the source code onto any recordable media or recordable device.  The producing party may visually monitor the activities of the receiving party's representatives during any source code review, but only to ensure that there is no unauthorized recording, copying, or transmission of the source code.

18.     The receiving party may request paper copies of limited portions of source code that are reasonably necessary for the preparation of court filings, pleadings, expert reports, or other papers, or for deposition or trial, but shall not request paper copies for the purposes of reviewing the source code other than electronically as set forth in paragraph 17 in the first instance.  The producing party shall provide all such source code in paper form including bates numbers and the label "Highly Confidential – Source Code."  The producing party may challenge the amount of source code requested in hard copy form pursuant to the dispute resolution procedure and timeframes set forth in paragraph 8 whereby the producing party is the "challenging party," and the receiving party is the "designating party" for purposes of dispute resolution.

19.     The receiving party shall maintain a record of any individual who has inspected any portion of the source code in electronic or paper form.  The receiving party shall maintain all paper copies of any printed portions of the source code in a secured, locked area.  The receiving party

shall not create any electronic or other images of the paper copies and shall not convert any of the information contained in the paper copies into any electronic format. The receiving party shall only make additional paper copies if such additional copies are (1) necessary to prepare court filings, pleadings, or other papers (including a testifying expert's expert report), (2) necessary for deposition, or (3) otherwise necessary for the preparation of its case. Any paper copies used during a deposition shall be retrieved by the producing party at the end of each day and must not be given to or left with a court reporter or any other unauthorized individual.

20.    Nothing in this Order shall be construed as a determination on the relevance or appropriateness of discovery into source code in this action.

**G.    Nonparty Information**

21.    The existence of this Protective Order must be disclosed to any person producing documents, tangible things, or testimony in this action who may reasonably be expected to desire confidential treatment for such documents, tangible things, or testimony. Any such person may designate documents, tangible things, or testimony confidential pursuant to this Protective Order.

**H.    Filing Documents With the Court**

22.    If any party wishes to submit Protected Material to the Court, the submission must be filed using the *Sealed* and/or *Ex Parte Motion* event. The word "*Sealed*" must appear in the title or caption of any document intended for filing under seal (and any proposed order the party believes should be filed under seal if entered by the judge).

23.    Producing or receiving Protected Material, or otherwise complying with the terms of this Protective Order, will not (a) operate as an admission by any party that any particular Protected Material contains or reflects trade secrets or any other type of confidential or proprietary information; (b) prejudice the rights of a party to object to the production of information or material

that the party does not consider to be within the scope of discovery; (c) prejudice the rights of a party to seek a determination by the presiding judge that particular materials be produced; (d) prejudice the rights of a party to apply to the presiding judge for further protective orders; or (e) prevent the parties from agreeing in writing to alter or waive the provisions or protections provided for in this Protective Order with respect to any particular information or material.

**I.    Unauthorized Disclosure**

24.    If a party learns that, by inadvertence or otherwise, it has disclosed Protected Material to any person or in any circumstance not authorized under this Protective Order, the party must immediately (a) notify the other party, in writing, of the unauthorized disclosures, (b) use its best efforts to retrieve all unauthorized copies of the Protected Material, (c) inform the person or persons to whom unauthorized disclosures were made of all the terms of this Protective Order, and (d) request such person or persons to execute the Confidentiality Agreement in the form attached as Exhibit A.

**J.    Conclusion of Litigation**

25.    Within sixty (60) calendar days after final judgment in this action, including the exhaustion of all appeals, or within sixty (60) calendar days after dismissal pursuant to a settlement agreement, each party or other person subject to the terms of this Protective Order is under an obligation to use reasonable efforts to destroy or return to the producing party all materials and documents containing Protected Material, and to certify to the producing party that this destruction or return has been done. The receiving party shall decide whether to return or destroy the Protected Material. However, outside counsel for any party is entitled to retain all court papers, trial transcripts, exhibits, and attorney work provided that any such materials are maintained and protected in accordance with the terms of this Protective Order. The receiving party's reasonable

efforts shall not require the return or destruction of Protected Material from (i) disaster recovery or business continuity backups, (ii) data stored in back-end databases critical to application operability and system-generated temporary folders, (iii) archived data with limited end-user accessibility, or (iv) material that is subject to legal hold obligations or commingled with other such material. Backup storage media will not be restored for purposes of returning or certifying destruction of Protected Material, but such retained information shall continue to be treated in accordance with this Protective Order and destroyed in due course.

**K.    Other Proceedings**

26.    By entering this Protective Order and limiting the disclosure of information in this case, the presiding judge does not intend to preclude another court from finding that information may be relevant and subject to disclosure in another case. Any person or party subject to this Protective Order who may be subject to a motion to disclose another party's information designated as Protected Material pursuant to this Protective Order must promptly notify that party of the motion so that the party may have an opportunity to appear and be heard on whether that information should be disclosed.

**L.    Remedies**

27.    It is Ordered that this Protective Order will be enforced by the sanctions set forth in Fed. R. Civ. P. 37(b) and any other sanctions as may be available to the presiding judge, including the power to hold parties or other violators of this Protective Order in contempt. All other remedies available to any person injured by a violation of this Protective Order are fully reserved.

28.    Any party may petition the presiding judge for good cause shown if the party desires relief from a term or condition of this Protective Order.

**IT IS SO ORDERED**.

Dated: _____

_____
The Honorable Brantley Starr
UNITED STATES DISTRICT JUDGE

02/27/2025 65 ELECTRONIC ORDER granting the parties' joint 63 Motion for Protective Order.
(Ordered by Judge Brantley Starr on 2/27/2025) (chmb) (Entered: 02/27/2025)

**Exhibit A**

### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

|  |  |
|---|---|
| COGNIZANT TRIZETTO SOFTWARE GROUP, INC., | Case No. 3:24-cv-2158-X |
|        Plaintiff, | The Honorable Brantley Starr |
| v. | Magistrate Judge David L. Horan |
| INFOSYS LIMITED, | |
|        Defendant. | |
| INFOSYS LIMITED, | |
|        Counterclaim Plaintiff, | |
| v. | |
| COGNIZANT TECHNOLOGY SOLUTIONS CORP. and COGNIZANT TRIZETTO SOFTWARE GROUP, INC., | |
|        Counterclaim Defendants. | |

### CONFIDENTIALITY AGREEMENT FOR EXPERT,
### CONSULTANT, OR EMPLOYEES OF ANY PARTY

I hereby affirm that:

Information, including documents and things, designated as "Confidential," "Highly

Confidential – Attorneys' Eyes Only," or "Highly Confidential – Source Code" as defined in the

Protective Order entered in the above-captioned action ("Protective Order"), is being provided to me pursuant to the terms and restrictions of the Protective Order.

I have been given a copy of and have read the Protective Order.

I am familiar with the terms of the Protective Order, and I agree to comply with and to be bound by its terms.

I submit to the jurisdiction of this Court for enforcement of the Protective Order.

I agree not to use any "Confidential," "Highly Confidential – Attorneys' Eyes Only," or "Highly Confidential – Source Code" information disclosed to me pursuant to the Protective Order except for purposes of the above-captioned litigation and not to disclose any of this information to persons other than those specifically authorized by the Protective Order, without the express written consent of the party who designated the information as confidential or by order of the presiding judge.

I also agree to notify any stenographic, clerical or technical personnel who are required to assist me of the terms of this Protective Order and of its binding effect on them and me.

I understand that I am to retain all documents or materials designated as or containing "Confidential," "Highly Confidential – Attorneys' Eyes Only," or "Highly Confidential – Source Code" information in a secure manner, and that all such documents and materials are to remain in my personal custody until the completion of my assigned duties in this matter, whereupon all such documents and materials, including all copies thereof, and any writings prepared by me containing any "Confidential," "Highly Confidential – Attorneys' Eyes Only," or "Highly Confidential – Source Code" information are to be returned to counsel who provided me with such documents and materials.

**Name:** _____

**Title:** _____

**Date:** _____

**Signature:** _____

**Exhibit B**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| COGNIZANT TRIZETTO SOFTWARE GROUP, INC., | Case No. 3:24-cv-2158-X |
| Plaintiff, | The Honorable Brantley Starr |
| v. | Magistrate Judge David L. Horan |
| INFOSYS LIMITED, | |
| Defendant. | |
| INFOSYS LIMITED, | |
| Counterclaim Plaintiff, | |
| v. | |
| COGNIZANT TECHNOLOGY SOLUTIONS CORP. and COGNIZANT TRIZETTO SOFTWARE GROUP, INC., | |
| Counterclaim Defendants. | |

### <u>CONFIDENTIALITY AGREEMENT FOR THIRD-PARTY VENDORS</u>

I hereby affirm that:

Information, including documents and things, designated as "Confidential," "Highly Confidential – Attorneys' Eyes Only," or "Highly Confidential – Source Code" as defined in the Protective Order entered in the above-captioned action ("Protective Order"), is being provided to me pursuant to the terms and restrictions of the Protective Order.

I have been given a copy of and have read the Protective Order.

I am familiar with the terms of the Protective Order, and I agree to comply with and to be bound by its terms.

I submit to the jurisdiction of this Court for enforcement of the Protective Order.

I agree not to use any "Confidential," "Highly Confidential – Attorneys' Eyes Only," or "Highly Confidential – Source Code" information disclosed to me pursuant to the Protective Order except for purposes of the above-captioned litigation and not to disclose any of this information to persons other than those specifically authorized by the Protective Order, without the express written consent of the party who designated the information as confidential or by order of the presiding judge.

**Name:** _____

**Title:** _____

**Date:** _____

**Signature:** _____