**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| COGNIZANT TRIZETTO SOFTWARE GROUP, INC., <br><br>        Plaintiff, <br><br>  v. <br><br>INFOSYS LIMITED, <br><br>        Defendant. | Case No. 3:24-cv-2158-X <br><br> The Honorable Brantley Starr <br><br> Magistrate Judge David L. Horan <br><br> **DEMAND FOR JURY TRIAL** |
| INFOSYS LIMITED, <br><br>        Counterclaim Plaintiff, <br><br>  v. <br><br>COGNIZANT TECHNOLOGY SOLUTIONS CORP. and COGNIZANT TRIZETTO SOFTWARE GROUP, INC., <br><br>        Counterclaim Defendants. | |

## INFOSYS LIMITED'S ANSWER AND AFFIRMATIVE DEFENSES TO COMPLAINT

Defendant Infosys Limited ("Infosys") responds as follows to the Complaint by Plaintiff Cognizant TriZetto's Software Group, Inc. ("Cognizant"). Footnotes to this Answer were reproduced as they appear in the Complaint. Headings and sub-headings in the Complaint do not constitute well-pleaded allegations of fact and therefore require no response. To the extent a response is required, Infosys denies the allegations in headings and sub-headings in the Complaint. To the extent Infosys does not specifically admit any allegation in the Complaint, the allegation is denied. Infosys reserves the right to seek leave to amend or supplement its Answer as may be necessary.

1

## NATURE OF THE ACTION

1.     This is an action seeking damages and injunctive relief for misappropriation of trade secrets, breach of contract, and unfair competition.

**ANSWER:** Infosys admits that Cognizant purports to bring this action seeking damages and injunctive relief for alleged "misappropriation of trade secrets, breach of contract, and unfair competition." Infosys denies the remaining allegations in Paragraph 1 of the Complaint, if any, and denies that Cognizant is entitled to the requested relief or any relief whatsoever.

2.     TriZetto is a groundbreaking developer of best-in-class software products that simplify the business of healthcare. TriZetto's healthcare products provide proprietary medical claims processing functionality and comprehensive cycle management services to TriZetto's healthcare clients.

**ANSWER:** Infosys admits that Cognizant owns software products that are used in the healthcare industry. Infosys denies the remaining allegations in Paragraph 2 of the Complaint.

3.     Infosys, a multi-national technology company, gained access to certain of TriZetto's closely guarded, proprietary software offerings, and related technical documentation, under the guise of Non-Disclosures and Access Agreements ("NDAAs") that it executed with TriZetto for the limited purpose of equipping Infosys to complete work for certain Infosys clients who were also customers of TriZetto. The NDAAs narrowly and strictly define the contours of Infosys's authorized access to TriZetto's proprietary information and trade secrets, granting access to a very limited number of Infosys employees for narrowly specified reasons. Yet, in contravention of those agreements, Infosys has misappropriated TriZetto's trade secrets and stolen its confidential information to develop or enhance its own competing software and service offerings for its own financial gain, thus causing severe and irreparable harm to TriZetto.

2

**ANSWER:** Infosys admits that it is an international technology company. Infosys admits that it was granted access by Cognizant and/or its predecessors to some aspects of the QNXT and Facets software and information related to those products. Infosys admits that it executed certain Non-Disclosures and Access Agreements (NDAAs) but denies Infosys gained access to QNXT and Facets solely through those agreements. Infosys also denies the remaining allegations in Paragraph 3 of the Complaint.

## THE PARTIES

4.    TriZetto is a technology company incorporated in Delaware, with its principal place of business in Englewood, Colorado.

**ANSWER:** Infosys lacks sufficient information to admit or deny the allegations in Paragraph 4 of the Complaint and therefore denies them.

5.    Infosys Limited is a company with multiple affiliates and is headquartered in Bengaluru, India. Upon information and belief, Infosys and its subsidiaries have several locations in the United States, with its principal place of business located at 2400 North Glenville Drive, Suite C150, Richardson, Texas 75082. Upon information and belief, Infosys Limited is registered with the Texas Secretary of State to do business in Texas. Infosys Limited has a registered agent for service of process in Texas with CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136.

**ANSWER:** Infosys admits it is headquartered in Bengaluru, India and maintains offices in the United States, including at 2400 North Glenville Drive, Suite C150, Richardson, Texas 75082. Infosys admits it is registered with the Texas Secretary of State to do business in Texas and that CT Corporation System is its registered agent for service of process in Texas. Infosys denies the remaining allegations, if any, in Paragraph 5 of the Complaint.

## JURISDICTION AND VENUE

6.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332, and the trade secret laws of the United States, 18 U.S.C. §§ 1836, 1839. This Court also has supplemental jurisdiction over the asserted state law claims pursuant to 28 U.S.C. § 1367(a) because the federal and state law claims derive from a common nucleus of operative facts.

**ANSWER:** Paragraph 6 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, solely for purposes of this case, Infosys does not contest that this Court has subject matter jurisdiction over Cognizant's claims.

## NORTHERN DISTRICT OF TEXAS JURISDICTION AND VENUE

7.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332, and the trade secret laws of the United States, 18 U.S.C. §§ 1836, 1839. This Court also has supplemental jurisdiction over the asserted state law claims pursuant to 28 U.S.C. § 1367(a), including those arising under Tex. Civ. Prac. & Rem. Code§ 134A.001, *et seq.,* because the federal and state law claims derive from a common nucleus of operative facts.

**ANSWER:** Paragraph 7 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, solely for purposes of this case, Infosys does not contest that this Court has subject matter jurisdiction over Cognizant's claims.

8.    This Court has personal jurisdiction over Infosys, which claims Richardson, Texas as its United States-based headquarters and principal place of business. On information and belief, Infosys has operated in Richardson, Texas since 2018 and has over 500 employees at that location, including executive officers, and maintains its largest presence outside of India in Texas. Therefore, personal jurisdiction exists because Infosys (directly and/or through its subsidiaries,

divisions, groups or distributors) has sufficient minimum contacts with the Northern District of Texas as a result of substantial business conducted within the District.

**ANSWER:** Infosys admits that it has maintained its U.S.-based headquarters and principal place of business in the U.S. in Richardson, Texas since 2018 and has over 500 employees at that location, including executive officers. The remaining statements in Paragraph 8 of the Complaint constitute legal conclusions to which no response is required. To the extent a response is required, solely for purposes of this case, Infosys does not contest that this Court has personal jurisdiction.

9.     Personal jurisdiction also exists because Infosys has done business with TriZetto in the Northern District of Texas pursuant to NDAAs, entered into at least one of the NDAAs at issue in this case in the Northern District of Texas, and has committed acts of misappropriation in the District. For example, Infosys signed and entered into an NDAA with TriZetto related to Infosys's work for Customer C in Richardson, Texas. Moreover, the first of two Infosys employees who were authorized to access TriZetto's confidential information pursuant to the Customer C NDAA was located in Richardson, Texas. As set forth below, Infosys breached its obligations under the Customer C NDAA and unlawfully exploited its access, through at least one employee located in Richardson, Texas, to misappropriate TriZetto's trade secrets.

**ANSWER:** The first sentence of Paragraph 9 contains a legal conclusion to which no response is required. To the extent a response is required, solely for purposes of this case, Infosys does not contest that this Court has personal jurisdiction. Infosys, however, denies the factual allegations in Paragraph 9 of the Complaint.

10.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Infosys has a primary place of business in this District, transacts business in this District, and is subject to personal jurisdiction in this District. In addition, Infosys signed and entered into at least one

agreement at issue in this case in this District. Moreover, on information and belief, employees involved in, and information related to Infosys's misappropriation, are located at Infosys's office in this District. For purposes of this litigation, TriZetto agrees to venue in this District because TriZetto has suffered harm in this District.

**ANSWER:** The first sentence of Paragraph 10 contains a legal conclusion to which no response is required. To the extent a response is required, Infosys admits that it maintains its primary United States office in this District and transacts business in this District. Further, Infosys admits that, solely for purposes of this case, it does not contest that this Court has personal jurisdiction. Infosys also admits that Cognizant has agreed to venue in this District in its Complaint. Infosys denies the remaining factual allegations in Paragraph 10 of the Complaint. Nonetheless, solely for purposes of this case, Infosys does not contest that venue is proper in this Court.

## GENERAL ALLEGATIONS

A.    **TriZetto Develops and Offers Innovative Healthcare Software Technologies and Consulting Services**

11.    TriZetto Corporation's software solutions have been widely used by payers and providers in the healthcare industry for decades. On September 15, 2014, Cognizant Technology Solutions Corp. announced that it would acquire TriZetto Corporation. The deal closed in November 2014, forming Cognizant TriZetto Software Group, Inc.

**ANSWER:** Infosys admits that Facets and QNXT have been widely used in the healthcare industry for decades. Infosys lacks sufficient information to admit or deny the remaining allegations in Paragraph 11 of the Complaint and therefore denies them.

12.    TriZetto offers healthcare industry customers a suite of groundbreaking software products as well as consulting, IT, and business process services. TriZetto's products and services

are used in the healthcare industry, including by service providers, like hospitals and physicians, and medical claim payers, like insurance companies. TriZetto's products and services provide solutions to the highly complex medical claims and payments processing problem in healthcare, and thereby improve healthcare operations.

**ANSWER:** Infosys admits that Cognizant's products and services are used in the healthcare industry, including by service providers, like hospitals and physicians, and medical claim payers, like insurance companies. Infosys denies the remaining allegations in Paragraph 12 of the Complaint.

13.    TriZetto's healthcare products include its Facets® and QNXT™ software, among others. Facets® is a core administration solution software product geared specifically to health plan administration, and includes functions to automate claims processing, billing, care management, and network management workflow. Facets® is used by payers *(i.e.,* companies that pay for administrated medical services), pharmacy benefit managers *(i.e.,* companies that manage prescription drug benefits on behalf of health insurers, larger employers, or other payers), and healthcare providers *(i.e.,* physicians and hospitals). Facets® clients benefit from improved efficiency in the processing of medical claims and more accurate financial reporting. QNXT™ is another core administration software that is built on the cloud, with multiple deployment options and next-generation capabilities.

**ANSWER:** Infosys admits that Facets and QNXT are healthcare payor software, but denies that they have "next-generation capabilities." Infosys lacks sufficient information to admit or deny the remaining allegations in Paragraph 13 of the Complaint and therefore denies them.

14.    Facets® and QNXT™ are complex, sophisticated, and next-generation software systems offered by TriZetto. TriZetto maintains details relating to those systems as closely guarded

secrets, which prevents TriZetto's competitors from utilizing the technology therein. Direct access to a running version of the TriZetto software-which is only permitted under strict confidentiality obligations-is one way to ascertain the full functionality of Facets® and QNXT$^{TM}$. Limiting access to TriZetto software only to customers that agree to strict confidentiality obligations gives TriZetto a substantial economic and competitive advantage. And as a result, competitors to TriZetto's software products are unable, without unauthorized access, to copy its proprietary features, build unauthorized interfaces that can connect with TriZetto's software products, or develop test cases (i.e., bespoke sets of instructions for executing a particular capability within a software program, such as Facets® or QNXT$^{TM}$) to test TriZetto's software products.

**ANSWER:** Infosys admits that QNXT and Facets are software systems but denies the remaining allegations in Paragraph 14 of the Complaint.

15.     TriZetto also operates a consulting unit that provides clients with implementation support and other services needed to seamlessly use the products, including in conjunction with other software offerings, and maximize their value and utility. Clients can hire TriZetto to customize TriZetto products for their individual systems and particular business needs. Such implementation and customization projects are often complex, months-long, and are foundational to an ongoing business relationship between TriZetto and its clients. Such implementation and customization projects are impossible to complete without access to the TriZetto software and related workflows, tools, functionality, manuals, and test cases (which TriZetto maintains as confidential and trade secret information).

**ANSWER:** Infosys admits that Cognizant operates a consulting business that provides customers with implementation and other IT services but lacks sufficient information to admit or deny the remaining allegations in Paragraph 15 of the Complaint and therefore denies them.

**B.    TriZetto's Offerings Contain Confidential Information and Trade Secret Information**

16.    Through extensive investments of hundreds of millions of dollars in research and development, TriZetto has generated an extremely valuable set of offerings that provide tremendous value to its clients and were instrumental to TriZetto's success in the industry. These products and services are built upon confidential and proprietary business and technical information (TriZetto's "Confidential Information") that is closely protected and not made available to the public. A subset of TriZetto's Confidential information is TriZetto's trade secrets ("Trade Secret Information"). TriZetto Confidential Information also includes proprietary information that does not rise to the level of legally protectable trade secrets, but which the parties agreed to maintain as confidential. Access to TriZetto's Confidential Information, including its Trade Secret Information, is only permitted pursuant to strict confidentiality obligations. As explained below, Infosys had access to the Confidential Information, including the Trade Secret Information, through agreements with TriZetto; however, such access was provided to a limited set of authorized Infosys employees for the limited purpose of servicing TriZetto's customers.

**ANSWER:** Infosys denies the allegations in Paragraph 16 of the Complaint.

17.    TriZetto's Trade Secret Information includes TriZetto's proprietary software, including Facets® and QNXT™, and the workflows and functionality implemented by the proprietary software (the "Proprietary Software"); source materials relating to the Proprietary Software, including the source code, technical documentation, product release notes, link libraries, and development toolkits ("Source Materials"); test cases for testing the Proprietary Software ("Test Cases"); interfaces, connectors and adaptors for the Proprietary Software, as well as tools for creating such interfaces, connectors, and adaptors ("Interfaces"); the database, database schema, file structures, data dictionaries, and other information relating to the storage of data by

the Proprietary Software ("Data Model"); and the terms of the contracts between TriZetto and its clients, including the pricing for TriZetto products and services ("Commercial Secrets"), as well as documentation related to each item previously listed.

**ANSWER:** Paragraph 17 purports to define the supposed trade secrets allegedly at issue in this litigation. Infosys denies that Cognizant adequately defines any alleged trade secrets and denies that the information set forth in Paragraph 17 constitutes trade secrets of Cognizant. Paragraph 17 does not provide any underlying details regarding the supposed trade secrets referenced therein and thus Infosys lacks sufficient information to admit or deny whether the items referenced in Paragraph 17 constitutes trade secrets of Cognizant and thus Infosys denies the remaining allegations in Paragraph 17.

18.    TriZetto's Proprietary Software includes core administration solution software products, Facets® and QNXT™. The software applies TriZetto's proprietary medical claims processing to proprietary database structures relevant to healthcare claims, which reduces the administrative expenses associated with claims processing. The software stores medical data to enable the medical claims processing functionality, such as information concerning the covered individuals, the healthcare provider, and the coverage available to the individual pursuant to their medical insurance plan. TriZetto's Source Materials include source code, which, when compiled, generates compiled code that performs the proprietary medical claims processing functionality. TriZetto limits access to the Proprietary Software and the Source Materials to customers and vendors who have executed an agreement requiring them to maintain the Proprietary Software as confidential. The Proprietary Software and Source Materials were developed through extensive investments in research and development. By maintaining the secrecy of the Proprietary Software

and Source Materials, TriZetto ensures that its competitors would need to make their own significant investments in research and development to develop competing software.

**ANSWER:** Infosys admits that the QNXT and Facets software products discussed in Paragraph 18 store data related to medical claims processing. Infosys denies that Paragraph 18 adequately identifies any specific trade secret information of Cognizant and also denies that the information described in Paragraph 18 constitutes proprietary information of Cognizant because the details of the referenced information are not set forth in the paragraph and thus Infosys does not have sufficient information on which to admit or deny the allegation. Infosys denies the remaining allegations in Paragraph 18 of the Complaint.

19. TriZetto's Test Cases include a list of inputs to a specific software, along with the expected outputs from that software. Test Cases are bespoke to the specific software program for which it was developed; thus, the development of a Test Case for one of the Proprietary Software products necessarily requires access to that product (which is only permitted pursuant to strict confidentiality agreements with TriZetto), and also requires the investment of time and money to determine the scenarios to be tested and the expected inputs and outputs. Thus, third parties, including Infosys, cannot create Test Cases to test the functionality in Facets® or QNXT$^{TM}$ without access to Facets® or QNXT$^{TM}$. TriZetto limits access to Facets® and QNXT$^{TM}$ to a limited set of authorized users who are bound by confidentiality agreements, as described further below. By maintaining the secrecy of its Test Cases, TriZetto ensures that its competitors would need to make investments of time and money to develop their own test cases.

**ANSWER:** Infosys lacks sufficient information to admit or deny the allegations in Paragraph 19 related to the details of test cases of Cognizant and thus denies those allegations. To the extent Paragraph 19 purports to specify trade secret information, Infosys denies that the

information specified in Paragraph 19 constitutes trade secrets of Cognizant. Paragraph 19 does not provide any detail regarding the supposed trade secrets referenced therein and thus Infosys lacks sufficient information to admit or deny whether the unstated details of the items referenced in Paragraph 19 constitute trade secrets of Cognizant and thus Infosys denies the remaining allegations in Paragraph 19 of the Complaint.

20.    As an example of a Test Case, when Facets® is installed or updated, customers often need to test whether its functionality works as intended. To do so, TriZetto, or a third-party vendor authorized by TriZetto, creates Test Cases within Facets® to ensure that any upgraded functionality behaves as expected. By way of example, one Test Case may relate to the capability of adding a new insured to Facets®, which would set out the precise workflow required to successfully add a new insured to Facets®. By following the instructions for a Test Case, the user can compare the results of the test to the expected outcome, allowing the user to determine whether the Facets® upgrade or installation is working properly. Both the underlying Facets® and QNXT$^{TM}$ workflow and the Test Case capturing the workflow contain TriZetto's Confidential Information and Trade Secret Information.

**ANSWER:** Infosys admits that generally, after QNXT or Facets are installed, customers may test whether the functionality of the software works as it was intended to work and that customers may compare results of test cases to an expected outcome to evaluate whether a software program or upgrade to a software program is functioning as intended. Infosys denies the allegations in the final sentence of Paragraph 20. Infosys lacks sufficient information to admit or deny the remaining allegations in Paragraph 20 of the Complaint and therefore denies them.

21.    A jury and Court of Appeal have already confirmed that the Test Cases are trade secrets. In *Syntel Sterling Best Shores Mauritius Ltd. v. The TriZetto Grp., Inc.*, No. 15-Civ-211

(LGS) (S.D.N.Y.), a federal jury concluded that TriZetto's Test Cases are trade secrets despite arguments otherwise from trade secret defendant Syntel Sterling Best Shores Mauritius Ltd. ("Syntel"). Like Infosys, Syntel was a third-party vendor who was granted limited access to TriZetto's Confidential Information and Trade Secret Information, including its Proprietary Software, Test Cases, Source Materials, Data Model, and related manuals and tools, for the limited purpose of allowing it to fulfill its obligations to a customer who was also a TriZetto customer. *Syntel v. TriZetto*, No. 15-Civ-211, Dkt. 977 at 5-6. Syntel gained access to TriZetto's Confidential Information and Trade Secret Information the same way that Infosys did: by way of a confidentiality agreement. The evidence at trial showed that Syntel had exceeded the allowable bounds of its access by creating its own "repository" of Test Cases that were specifically designed for the TriZetto Proprietary Software. Syntel Sterling Best Shores Mauritius Ltd. v. The TriZetto Grp., Inc., 68 F.4th 792 at 797 (2d Cir. 2023), cert. denied, 144 S. Ct. 352 (2023). After considering extensive evidence and expert testimony, the jury found that (1) TriZetto's Test Cases were protectable trade secrets; and (2) Syntel's creation of a repository of Facets® Test Cases constituted trade secret misappropriation and breach of the parties' confidentiality agreement. Syntel v. TriZetto, No. l 5-Civ-211, 0kt. 931. On appeal, the Second Circuit affirmed the jury's finding that TriZetto's Test Cases are trade secrets and that Syntel misappropriated TriZetto's Test Case trade secrets. Syntel Sterling Best Shores Mauritius, 68 F.4th 792-806. The trade secret status of TriZetto's Test Cases is no longer appealable. Infosys, like Syntel, has misappropriated TriZetto's trade secrets, including the Test Cases.

**ANSWER:** Infosys lacks sufficient information as to what precise information was presented in the referenced litigation and thus lacks sufficient information to admit or deny what the conclusions of the jury and Court of Appeal were in that case. Paragraph 21 includes allegations

regarding Proprietary Software, which is defined in the pleading as multiple software products of Cognizant, including QNXT, Facets, and other unidentified software products; Infosys lacks sufficient information to admit or deny allegations related to unidentified products and Infosys thus denies the allegations in Paragraph 21 of the Complaint, including Cognizant's characterization of the *Syntel Sterling Best Shores Mauritius Ltd. v. The TriZetto Grp., Inc.* case.

22.     TriZetto's Data Model includes the database, database schema, file structures, data dictionaries, and other information relating to the storage of data by the Proprietary Software. At a high level, the Data Model conveys the architecture of the Proprietary Software. The Data Model includes thousands of data fields stored in the Proprietary Software's databases, which were developed through extensive research and development efforts. TriZetto's Data Model trade secrets include, by way of non-limiting examples, TriZetto's design choices as to which data attributes should be collected and stored; naming conventions and what to call the data attributes and data tables, such that each attribute could be uniquely identified and called; the organization of the data attributes and data tables; the characteristics, definitions, and functionality associated with each data attribute or data table; the relationships, groupings, connections, and hierarchies among the data attributes and data tables; and the identification, definition, and format of data attributes and data tables required for loading data into, and for extracting data from, the Proprietary Software. The Data Model trade secrets enable the Proprietary Software to perform the functionality in an accurate and efficient manner. By maintaining the secrecy of its Data Model, TriZetto ensures its competitors would need to make investments of time and money to develop a competing version of the Proprietary Software, which relies on the Data Model to perform its functionality.

**ANSWER:** Paragraph 22 includes lengthy allegations regarding Proprietary Software, and the Data Model for Proprietary Software, which is defined in the pleading as multiple software products of Cognizant, including QNXT, Facets, and other unidentified software; Infosys lacks sufficient information to admit or deny allegations related to unidentified products and Infosys thus denies the allegations in Paragraph 22 of the Complaint. To the extent Paragraph 22 purports to specify alleged trade secret information, Infosys denies that the information specified in Paragraph 22 constitutes trade secrets of Cognizant, and denies the remaining allegations in Paragraph 22 of the Complaint.

23.    As with the Test Cases, the *Syntel* court has already held that TriZetto's Facets® manuals and tools *(e.g.,* the Data Dictionary) likewise contain TriZetto's Trade Secret Information, a finding that the Second Circuit also affirmed. *Syntel Sterling Best Shores Mauritius Ltd. v. The TriZetto Grp.,* 68 F.4th at 802-804.

**ANSWER:** Infosys denies the allegations in Paragraph 23 of the Complaint, including Cognizant's characterization of the *Syntel Sterling Best Shores Mauritius Ltd. v. The TriZetto Grp., Inc.* case.

24.    TriZetto's Interfaces include functions that are structured, sequenced, and organized in a proprietary manner for interfacing with the Proprietary Software and for accessing data stored in the databases, according to the Data Model. Authorized developers may, consistent with their confidentiality obligations imposed in the NDAAs and applicable software licenses, interact with the TriZetto Interfaces to run specific functions to extract or input data from or to specific data fields and/or data tables in the TriZetto Data Model, and develop interconnections with other systems. By maintaining the secrecy of its Interfaces, TriZetto bars unauthorized service

providers from interfacing directly with the Proprietary Software and its databases, thereby further protecting the Proprietary Software and the Data Model and the data stored therein.

**ANSWER:** Paragraph 24 contains allegations regarding Interfaces for Proprietary Software, which is defined in the pleading as multiple software products of Cognizant, including QNXT, Facets, and other unidentified software products; Infosys lacks sufficient information to admit or deny allegations related to unidentified products and Infosys thus denies the allegations in Paragraph 24 of the Complaint. To the extent Paragraph 24 purports to specify supposed trade secrets of Cognizant, Infosys denies that Paragraph 24 specifies any trade secrets of Cognizant. Infosys denies that the user interfaces of QNXT or Facets are secret. Paragraph 24 does not provide any detail regarding the supposed trade secrets referenced therein and thus Infosys lacks sufficient information to admit or deny whether the unstated details of the items referenced in Paragraph 24 constitute trade secrets of Cognizant and thus Infosys denies the remaining allegations in Paragraph 24 of the Complaint.

25.    In addition to the trade secrets described above, TriZetto's Confidential Information and Trade Secret Information also includes automation scripts, tools, source code, technical documentation, manuals, instructions or guides for compiling, assembling, linking, loading, building, testing, installing, upgrading, configuring or uninstalling, and any other information used to reproduce, modify, support, or enhance Facets® or QNXT$^{TM}$. This includes all workflows, functionalities, and Test Cases derived from Facets® and QNXT$^{TM}$, including the Test Cases in the repository that Infosys now claims as its own, as discussed below.

**ANSWER:** Infosys denies that Paragraph 25 specifies any trade secrets or confidential information of Cognizant, and denies the remaining allegations in Paragraph 25 of the Complaint. Paragraph 25 does not provide any detail regarding the supposed trade secrets referenced therein

16

and thus Infosys lacks sufficient information to admit or deny whether the unstated details of the items referenced in Paragraph 25 constitute trade secrets of Cognizant and thus Infosys denies the remaining allegations.

26.    TriZetto derives independent economic value from its Trade Secret Information not being generally known to and not readily ascertainable to the public. TriZetto closely guards its Confidential Information and Trade Secret Information. This secrecy enables TriZetto to remain competitive in the market, allowing it to offer prospective and actual customers software products with unique functionality, and provide its customers with consulting services to effectively implement the software products. Moreover, because the Proprietary Software, Source Materials, Test Cases, Data Model and Interfaces are kept secret, competitors to TriZetto's software products cannot, without unauthorized access and use of TriZetto Confidential Information and Trade Secret Information, copy TriZetto's proprietary features, build unauthorized interfaces to connect with TriZetto's software products, or create unauthorized Test Cases to test TriZetto's software products. This is further valuable because TriZetto also leverages its Trade Secret Information and Confidential Information to provide services related to its Propriety Software.

**ANSWER:** Infosys admits that Cognizant provides consulting services and software implementation services. Infosys denies the remaining allegations in Paragraph 26 of the Complaint.

**C.    TriZetto Protects Its Confidential Information and Trade Secrets**

27.    Due to the valuable nature of the Confidential Information and Trade Secret Information, TriZetto goes to great lengths to protect that information from public disclosure. These efforts include requiring TriZetto employees who have access to the Confidential Information and Trade Secret Information to sign confidentiality agreements; restricting physical

and digital access to only authorized users with valid credentials; and limiting access only to those users with a legitimate business purpose for accessing TriZetto's Confidential Information and Trade Secret Information.

**ANSWER:** Infosys denies the allegations in Paragraph 27.

28.     Other measures TriZetto has taken to protect its Confidential Information and Trade Secret Information include, but are not limited to, computer and server passwords, security access cards, confidentiality agreements, letters notifying departing employees to return all property belonging to TriZetto, distribution of information on a need-to-know basis, and non-compete and non-solicitation agreements with its high-level employees.

**ANSWER:** Infosys lacks sufficient information to admit or deny the allegations in Paragraph 28 concerning measures that have been taken to protect information from disclosure, and therefore denies them.

29.     At times, it is necessary for TriZetto to disclose Confidential Information or Trade Secret Information to customers or vendors for legitimate business purposes, such as enabling a vendor to provide services to companies who are mutual clients of TriZetto and the vendor. For example, a TriZetto customer may wish to retain a vendor's services to implement a new version of a TriZetto Proprietary Software. In these situations, TriZetto requires such customers and vendors to sign NDAAs that strictly prohibit disclosure of Confidential Information and Trade Secret Information, except to employees of the vendor that are authorized recipients. Under the terms of the NDAA, authorized recipients of Confidential Information and Trade Secret Information are only permitted access if they require access to the information to perform services for the benefit of the TriZetto customer. Moreover, authorized recipients of TriZetto Confidential Information and Trade Secret Information must agree to the terms of the NDAA and are only

permitted access to Confidential Information and Trade Secret Information for the limited and legitimate purposes outlined in the NDAAs, for example, to perform certain services for the benefit of TriZetto's customer. Further, authorized recipients of technical Confidential Information and Trade Secret Information must not be involved in development, testing, or marketing of competitive software.

**ANSWER:** Infosys lacks sufficient information regarding Cognizant's business practices and agreements with third parties to admit or deny the allegations in Paragraph 29 and therefore denies them.

30.    Five TriZetto customers entered into an NDAA with TriZetto that are relevant here: (1) Customer A, (2) Customer B, (3) Customer C, and (4) Customer D. Each of these customers were also clients of Infosys. Accordingly, in connection with and as a result of the relationship TriZetto and Infosys had with each Customer, TriZetto entered into separate NDAAs with Infosys, which gave certain Infosys employees (who met the criteria in the preceding paragraph) access to certain TriZetto Confidential Information and Trade Secret Information for the limited purpose of performing certain services for Customers A-D.

**ANSWER:** Infosys admits that it has signed NDAAs with Cognizant related to certain work for certain mutual clients, which speak for themselves. Infosys denies the remaining allegations in Paragraph 30 of the Complaint.

31.    As further explained in Section E, Infosys's development, retention, and marketing of Test Cases for Facets® and QNXT™, as well as interfaces for QNXT™, illustrate that Infosys abused its access to TriZetto Confidential Information and Trade Secret Information and exceeded the scope of its permissible access pursuant to the NDAAs, and then engaged in an illicit scheme

to misuse and misappropriate TriZetto's Confidential Information and Trade Secret Information for improper purposes.

**ANSWER:** Infosys denies the allegations in Paragraph 31 of the Complaint.

D.      **Infosys Gains Limited, Restricted Access to TriZetto Trade Secrets Pursuant to the Terms of NDAAs**

32.      Over the course of the last decade, Infosys has signed at least seven (7) NDAAs with TriZetto, in which Infosys has repeatedly recognized TriZetto as the sole owner of its Confidential Information and Trade Secret Information related to its Facets® and QNXT$^{TM}$ offerings. The NDAAs between Infosys and TriZetto strictly prohibit disclosure of TriZetto Confidential Information and Trade Secret Information, except to Infosys employees that need access to the information to perform services for the benefit of the TriZetto customer. Infosys employees were only permitted to access technical TriZetto Confidential Information and Trade Secret Information if they were not involved in development, testing, or marketing of software competitive to TriZetto's Proprietary Software. Moreover, the NDAAs between Infosys and TriZetto required authorized recipients of TriZetto Confidential Information and Trade Secret Information to agree to the terms of the NDAAs between Infosys and TriZetto, and those recipients were only permitted access to TriZetto Confidential Information and Trade Secret Information for the limited approved purposes outlined in the NDAAs. Finally, the NDAAs also required Infosys to provide TriZetto with access to its business records as necessary for TriZetto to determine if Infosys was in compliance with the terms of the NDAA.

**ANSWER:** Infosys denies the allegations in Paragraph 32 of the Complaint.

33.      Infosys gained access to these offerings, pursuant to the NDAAs, for the limited purpose of providing specific services to certain Infosys clients who are also customers of TriZetto. By signing the NDAAs, Infosys attested that it understood that TriZetto's Confidential Information

and Trade Secret Information is not readily available from public sources and derives economic value from its secrecy.

**ANSWER:** Infosys admits that it has signed NDAAs with Cognizant related to certain work for certain mutual clients, which speak for themselves. Infosys denies the remaining allegations in Paragraph 33 of the Complaint.

34.    Yet, despite its promises to TriZetto, Infosys necessarily and intentionally exceeded the limits of access permitted in the NDAAs and created its own repository of Test Cases, thus allowing Infosys to obtain economic advantages through the misappropriation of TriZetto's Confidential Information and Trade Secret Information, and in violation of its contractual obligations.

**ANSWER:** Infosys denies the allegations in Paragraph 34 of the Complaint.

35.    ***Customer A NDAA***. TriZetto entered into an NDAA with Infosys on April 8, 2018 (hereinafter "Customer A NDAA"). The Customer A NDAA is a valid and enforceable contract. TriZetto has complied with all of its obligations under this contract. The Customer A NDAA contains numerous confidentiality provisions and restrictions that limit Infosys's access and use of TriZetto's Confidential Information and Trade Secret Information. The Customer A NDAA only authorized Customer A to provide Infosys with narrow, limited access to "Non-Technical" TriZetto Confidential Information and Trade Secret Information for the limited purpose of supporting Customer A's testing of the Proprietary Software and restricts access to Authorized Recipients who "need access" to the Confidential Information to perform the specific services for Customer A The confidentiality obligations under the Customer A NDAA remain in effect today.

**ANSWER:** Infosys admits that it executed an NDAA that appears to have been signed by a representative of Cognizant on April 8, 2018. Infosys denies the remaining allegations in Paragraph 35 of the Complaint, including that the referenced NDAA is valid or enforceable.

36.    ***Customer B NDAA***. TriZetto entered into an NDAA with Infosys on November 19, 2018 (hereinafter "Customer B NDAA"). The Customer B NDAA is a valid and enforceable contract. TriZetto has complied with all of its obligations under this contract. The Customer B NDAA contains numerous confidentiality provisions and restrictions that limited Infosys's access and use of TriZetto's Confidential Information and Trade Secret Information. The Customer B NDAA also authorized Customer B to provide Infosys with narrow, limited access to TriZetto Confidential Information and Trade Secret Information "solely to the extent reasonably necessary to enable [Infosys] to provide" specified services to Customer B, and restricts access to Authorized Recipients who must not be involved in specifying, designing, developing, managing, marketing, testing, or selling Infosys commercial software products that are directly competitive with the Proprietary Software. Further, the Customer B NDAA requires that Infosys provide TriZetto with access to its business records as necessary for TriZetto to determine if Infosys was in compliance with the terms of the NDAA. The confidentiality and audit obligations under the Customer B NDAA remain in effect today.

**ANSWER:** Infosys admits that it executed an NDAA that appears to have been signed by a representative of Cognizant on November 19, 2018. Infosys denies the remaining allegations in Paragraph 36 of the Complaint, including that the referenced NDAA is valid or enforceable.

37.    ***Customer C NDAA***. TriZetto entered into an NDAA with Infosys on October 9, 2020 (hereinafter "Customer C NDAA"). The Customer C NDAA is a valid and enforceable contract. TriZetto has complied with all of its obligations under this contract. The Customer C

NDAA contains numerous confidentiality provisions and restrictions that limited Infosys's access and use of TriZetto's Confidential Information and Trade Secret Information. The Customer C NDAA also authorized Customer C to provide Infosys with narrow, limited access to TriZetto Confidential Information and Trade Secret Information "solely to the extent reasonably necessary to enable [Infosys] to provide" specified services to Customer C, and restricts access to Authorized Recipients who must not be involved in specifying, designing, developing, managing, marketing, testing, or selling Infosys commercial software products that are directly competitive with the Proprietary Software. The Customer C NDAA authorized only two Infosys employees (the Authorized Recipients) to receive TriZetto Confidential Information and Trade Secret Information, both of which were required to sign separate confidentiality agreements with Infosys, and the Customer C NDAA further specified the "Authorized Recipient Location" for each Authorized Recipient. Further, the Customer C NDAA requires that, upon request, Infosys provide TriZetto with access to its business records as necessary for TriZetto to determine Infosys is in compliance with the terms of the NDAA. The confidentiality and audit obligations under the Customer C NDAA remain in effect today.

**ANSWER:** Infosys admits that it executed an NDAA that appears to have been signed by a representative of Cognizant on October 9, 2020. Infosys denies the remaining allegations in Paragraph 37 of the Complaint, including that the referenced NDAA is valid or enforceable.

38.     ***The Customer D NDAA***. TriZetto entered into an NDAA with Infosys on April 18, 2022 (hereinafter "Customer D NDAA"). The Customer D NDAA is a valid and enforceable contract. TriZetto has complied with all of its obligations under this contract. The Customer D NDAA contains numerous confidentiality provisions and restrictions that limited Infosys's access and use of TriZetto's Confidential Information and Trade Secret Information. The Customer D

NDAA also authorized Customer D to provide Infosys with narrow, limited access to TriZetto Confidential Information and Trade Secret Information "solely to the extent reasonably necessary to enable [Infosys] to provide" specified services to Customer D, and restricts access to Authorized Recipients who must not be involved in specifying, designing, developing, managing, marketing, testing, or selling Infosys commercial software products that are directly competitive with the Proprietary Software. Further, the Customer D NDAA requires that Infosys provide TriZetto with access to its business records as necessary for TriZetto to determine if Infosys is in compliance with the terms of the NDAA. The confidentiality and audit obligations under the Customer D NDAA remain in effect today.

**ANSWER:** Infosys admits that it executed an NDAA with Cognizant on April 18, 2022. Infosys denies the remaining allegations in Paragraph 38 of the Complaint, including that the referenced NDAA is valid or enforceable.

39.    Infosys agreed to the above contractual provisions knowingly and willingly. Thus, there was mutual agreement between Infosys and TriZetto that Infosys would only use TriZetto Confidential Information and Trade Secret Information for the limited purpose of servicing TriZetto's customers, and that Infosys was not a11owed to use TriZetto's Confidential Information and Trade Secret Information to develop competing product offerings.

**ANSWER:** Infosys denies the allegations in Paragraph 39 of the Complaint.

### E.    Infosys Misappropriates TriZetto's Confidential Information and Trade Secrets

40.    Infosys has improperly exceeded its authorized access to TriZetto's Confidential Information and Trade Secret Information, including access to the Proprietary Software, Test Cases, Interface, Data Model, and related information (as outlined above, Section B), to (i) create one or more connector tools to extract data from TriZetto software and (ii) create a massive

24

repository of test cases that includes Test Cases for Facets®, which Infosys now deceptively touts as its own. Through these schemes to steal TriZetto's Confidential Information and Trade Secret Information, Infosys has gained an unfair commercial advantage in competing against TriZetto, thereby harming TriZetto in an amount to be determined at trial.

**ANSWER:** Infosys denies the allegations in Paragraph 40 of the Complaint.

1.     **Infosys Misappropriates TriZetto's Confidential Information and Trade Secrets Through Its Unauthorized Interfaces**

41.     As the facts set forth below show, Infosys has improperly exceeded its authorized access to and use of TriZetto's Confidential Information and Trade Secret Information, including access to the Proprietary Software, Interfaces, Data Model, and related information (as outlined above, Section B), and improperly and without authorization used such information to create one or more connector tools to extract data from TriZetto software, such as and including QNXT™, and to store the extracted data in its own systems in databases created using such TriZetto Confidential Information and Trade Secret Information.

**ANSWER:** Infosys denies the allegations in Paragraph 41 of the Complaint.

42.     One such connector tool is the "QNXT Adaptor." Infosys created the QNXT Adaptor improperly and without authorization and provided the QNXT Adaptor at least to Customer B. Infosys promoted the QNXT Adaptor as a tool to extract data from QNXT™ to be processed using Infosys's competing Helix platform. Infosys also designed the QNXT Adapter to load data from QNXT™ to a database that it created using information it gained by examining the Proprietary Software, Interfaces, Data Model, and other TriZetto Confidential Information and Trade Secret Information.

**ANSWER:** Infosys denies the allegations in Paragraph 42 of the Complaint.

43.     In order to develop the QNXT Adapter, Infosys must have knowledge of and access to the Proprietary Software, Interfaces, Data Model, and related information. Infosys could not have developed the QNXT Adapter without access to TriZetto's Confidential Information and Trade Secret Information because of the proprietary nature of the TriZetto software, and because without such access, Infosys would not know how to extract data from the Proprietary Software, nor would it know to store the data outside of the Proprietary Software's own data structures. To develop the QNXT Adapter, Infosys's developers, including Individual A (a Senior Technology Architect for Infosys's competing Helix platform) necessarily relied on their intimate knowledge of QNXT™, which they could have only obtained through their access to TriZetto's Confidential Information and Trade Secret Information.

**ANSWER:** Infosys denies the allegations in Paragraph 43 of the Complaint.

44.     For example, on information and belief, to support the QNXT Adapter, Infosys created a replica of the QNXT™ database or a modified version of the QNXT™ database, using information it gained by examining the Proprietary Software, Interfaces, Data Model, and other TriZetto Confidential Information and Trade Secret Information. Without access to TriZetto Confidential Information and Trade Secret Information, Infosys could not have created a replica of the QNXT™ database, nor a modified version of the QNXT™ database. On information and belief, Infosys used the replica of the QNXT™ database to store information extracted from QNXT™.

**ANSWER:** Infosys denies the allegations in Paragraph 44 of the Complaint.

45.     Moreover, also by using information it gained by examining the Proprietary Software, Interfaces, Data Model, and other TriZetto Confidential Information and Trade Secret Information, Infosys created a mapping of database tables from QNXT™ to Helix entities, thereby

allowing the QNXT Adapter to copy information from TriZetto's proprietary system into Infosys's own proprietary system. Without such access to TriZetto Confidential Information and Trade Secret Information, Infosys could not have created such a mapping.

**ANSWER:** Infosys denies the allegations in Paragraph 45 of the Complaint.

46.      Although certain Infosys employees were permitted access to TriZetto Confidential Information and Trade Secret Information in performance of certain services for Customer B, Infosys improperly exceeded its authorized access to TriZetto's Confidential Information and Trade Secret Information in the development of the QNXT Adapter. As one example, although the Customer B NDAA prohibited Infosys employees involved in development of competitive software from accessing any TriZetto Confidential Information or Trade Secret Information, TriZetto learned that Individual A had improperly created a competitive mapping of database tables from QNXT$^{TM}$ to Helix entities. Individual A could not have created this mapping file without access to TriZetto's Confidential Information and Trade Secret Information, including access to the Proprietary Software, Interface, Data Model, and related information.

**ANSWER:** Infosys denies the allegations in Paragraph 46 of the Complaint.

47.      Infosys promoted the QNXT Adapter and/or similar tools to enable TriZetto customers, including Customer B, to migrate from TriZetto's Proprietary Software to Infosys's own software. Infosys therefore obtained an unfair commercial advantage in competing against TriZetto, thereby harming TriZetto in an amount to be determined through litigation. Furthermore, Infosys's QNXT Adapter caused reputational harm to TriZetto in the market and will continue to do so. In one instance, Customer B sought assistance from *TriZetto*, not Infosys, in resolving technical difficulties with Infosys's QNXT Adapter. Thus, although *Infosys* used TriZetto Confidential Information and Trade Secret Information in an improper manner to develop the QNXT Adapter, Customer B attributed the technical difficulties to *TriZetto*'s technology.

**ANSWER:** Infosys denies the allegations in Paragraph 47 of the Complaint.

48.     On information and belief, Infosys offered and/or provided the QNXT Adapter that it developed for Customer B to other customers in breach of the Customer B NDAA.

**ANSWER:** Infosys denies the allegations in Paragraph 48 of the Complaint.

49.     Infosys's creation of the QNXT Adapter and/or similar connectors, its promotion of such tools, and its refusal to cease and desist unlawful conduct all demonstrate that Infosys's wrongdoing is willful and malicious. Infosys knew that its use of TriZetto's Confidential Information and misappropriation of TriZetto's Trade Secret Information exceeded the scope of permissible and authorized use by Infosys under the NDAA and TriZetto made clear to Infosys by letter correspondence that Infosys's conduct constituted misuse and misappropriation, yet Infosys refused to stop its misuse and misappropriation. Thus, the threat of continued misappropriation and misuse continues. Moreover, TriZetto does not know the full scope of Infosys's misuse and misappropriation of its Confidential Information and Trade Secret Information.

**ANSWER:** Infosys denies the allegations in Paragraph 49 of the Complaint.

**2.     Infosys Misappropriates TriZetto's Confidential Information and Trade Secrets Through Its Test Case Repository**

50.     As the facts set forth below show, Infosys has improperly exceeded its authorized access to and use of TriZetto's Confidential Information and Trade Secret Information, including access to the Proprietary Software, Test Cases, and related information (as outlined above, Section B), and improperly and without authorization used TriZetto's Confidential Information and misappropriated Trade Secret Information to create a massive repository of test cases that includes Test Cases for Facets®, which Infosys now deceptively touts as its own. Infosys improperly and without authorization uses its massive repository of Facets® Test Cases to compete with TriZetto.

**ANSWER:** Infosys denies the allegations in Paragraph 50 of the Complaint.

51.    As shown below, Infosys advertises the "Infosys Business Assurance Store" as a "repository ... of 1 million test cases" that was "[d]eveloped by Infosys Validation Solutions (IVS), the Infosys testing unit" in order to "[f]ast-track [the customer's] QA" process. According to Infosys, "these assets contain knowledge and expertise across 15 years of testing" and are "[i]nclusive of over 15 products/packages like ... Facets." Thus, Infosys has developed Facets® Test Cases using TriZetto's Confidential Information and Trade Secret Information, and/or repackaged TriZetto's Test Cases as its own. Infosys also marketed a massive repository of test cases, which includes Facets® Test Cases, as its own.



**ANSWER:** Infosys admits that it posted a pamphlet discussing a Business Assurance Store on its website on or around December 27, 2017, a portion of which is reproduced in Paragraph 51 of the Complaint and which speaks for itself. Infosys denies the remaining allegations in Paragraph 51 of the Complaint.

52.     For Infosys to have created Facets® Test Cases Infosys necessarily required access to the TriZetto Confidential Information and Trade Secret Information. Infosys would not have been able to develop this repository of Facets® Test Cases without improper access to and use of TriZetto's Confidential Information and Trade Secret Information. As explained above, TriZetto's Test Cases are *bespoke* sets of instructions for executing a particular capability within a software program, such as Facets®. Thus, Infosys cannot create the Test Cases to test the functionality in Facets® without access to the Facets® software and would have had to misuse TriZetto's Confidential Information and misappropriate TriZetto's Trade Secret Information to facilitate its development of Facets® Test Cases.

**ANSWER:** Infosys denies the allegations in Paragraph 52 of the Complaint.

53.     Moreover, to create a massive repository with 1 million test cases of its own that includes Facets® Test Cases, Infosys's "Infosys Validation Solutions (IVS) [team], the Infosys testing unit" would have had to have continuing access to every aspect of TriZetto's Confidential Information and Trade Secret Information. Moreover, having access only to the user interface of the Proprietary Software would not have been sufficient to enable the IVS team to develop the Facets® Test Cases. Because Infosys's IVS team is involved in the development, testing, and marketing of a competitive test case repository, the IVS team was not permitted to have access to *any* of TriZetto's technical Confidential Information and Trade Secret Information.

**ANSWER:** Infosys denies the allegations in Paragraph 53 of the Complaint.

54.     Thus, Infosys built its massive repository of Facets® Test Cases without authorization, using its access to TriZetto's Facets® Proprietary Software and associated Confidential Information and Trade Secret Information. Infosys *could not* have built the massive repository *without* the improper use of TriZetto Confidential Information and misappropriation of Trade Secret Information. Infosys is now utilizing, offering, selling and distributing to third parties, including TriZetto's current and potential Facets® and QNXT$^{TM}$ customers, the Test Cases that Infosys created and related services.

**ANSWER:** Infosys denies the allegations in Paragraph 54 of the Complaint.

55.     This massive repository of Facets® Test Cases that Infosys improperly built without authorization using TriZetto Confidential Information and by misappropriating Trade Secret Information is highly valuable to Infosys and its prospective and current customers. The repository provides Infosys with an improper "foot through the door" to TriZetto's customers and prospective customers, which Infosys can then use to expand its relationship with those customers. On information and belief, TriZetto's customers and prospective customers would not have considered Infosys a legitimate competitor to TriZetto for testing without Infosys's repository of Facets® Test Cases, developed using TriZetto Confidential Information without authorization and by misappropriating TriZetto Trade Secret Information.

**ANSWER:** Infosys denies the allegations in Paragraph 55 of the Complaint.

56.     On information and belief, Infosys posted the advertisement for the "Infosys Business Assurance Store" in or around 2020, all the while concealing its deceptive and unlawful acts from TriZetto. Infosys did not request a license from TriZetto or otherwise give TriZetto any reason to believe that Infosys was exceeding the bounds of the NDAA. Rather, Infosys began offering its repository of test cases-which includes Facets® Test Cases developed using TriZetto

Confidential Information without authorization and by misappropriating Trade Secret Information-
to customers without acknowledging that the Test Cases constituted TriZetto's Confidential
Information and Trade Secret Information and without informing or otherwise making TriZetto
aware of its improper and unauthorized conduct.

**ANSWER:** Infosys denies the allegations in Paragraph 56 of the Complaint.

57.     Given the confidentiality obligations in the NDAAs between Infosys and TriZetto,
TriZetto had no reason to believe that Infosys was improperly using TriZetto's Confidential
Information or unlawfully misappropriating TriZetto's Trade Secret Information, or to scour
Infosys's website for any potential evidence of Infosys's improper use of TriZetto's Confidential
Information and Trade Secret Information. TriZetto had not previously had any interactions that
might have prompted TriZetto to inquire about Infosys's use of TriZetto Confidential Information
and Trade Secret Information.

**ANSWER:** Infosys denies the allegations in Paragraph 57 of the Complaint.

58.     In December 2023, TriZetto discovered that Infosys was purporting to offer access
to products through the "Infosys Business Assurance Store" that were derived from and contain
TriZetto's Confidential Information and Trade Secret Information, including information derived
from TriZetto's Facets® and QNXT$^{TM}$ offerings. Specifically, TriZetto detected that Infosys had
purportedly created a repository of Test Cases for Facets® and QNXT$^{TM}$ products, using
information that Infosys only had access to under the strict limitations of the NDAAs it had entered
with TriZetto.

**ANSWER:** Infosys denies the allegations in Paragraph 58 of the Complaint.

59.     Promptly after detecting Infosys's misuse of TriZetto's Confidential Information
and misappropriation Trade Secret Information, TriZetto wrote to Infosys and demanded that

Infosys cease and desist all unauthorized use, advertisement, and distribution of any Test Cases related to any TriZetto products, identify all TriZetto materials used by Infosys, and immediately collect and quarantine all copies of materials containing TriZetto Confidential Information or Trade Secret Information.

**ANSWER:** Infosys denies the allegations in Paragraph 59 of the Complaint.

60.    Infosys refused to identify, collect, quarantine, and cease using TriZetto's Confidential Information or Trade Secret Information. While Infosys removed the advertisement shown above concerning the Infosys Business Assurance Store from its website, it refused to confirm that it stopped using the improperly created Facets® Test Cases.

**ANSWER:** Infosys admits that it removed the pamphlet concerning the Infosys Business Assurance Store from its website. Infosys denies the remaining allegations in Paragraph 60 of the Complaint

61.    Infosys's creation of the Infosys Business Assurance Store, its advertising and offering of Test Cases developed through the unauthorized use of TriZetto's Confidential Information and misappropriation of TriZetto's Trade Secret Information, and its refusal to cease and desist unlawful conduct all demonstrate that Infosys's wrongdoing is willful and malicious. Infosys knew that its use of TriZetto's Confidential Information and misappropriation of TriZetto's Trade Secret Information exceeded the scope of permissible and authorized use by Infosys under the NDAAs, and TriZetto made clear to Infosys that its conduct constituted misuse and misappropriation by letter correspondence, yet Infosys refused to stop its misuse and misappropriation. Thus, the threat of continued misappropriation and misuse continues. Moreover, TriZetto does not know the full scope of Infosys's misuse and misappropriation of its Confidential and Trade Secret Information.

**ANSWER:** Infosys denies the allegations in Paragraph 61 of the Complaint.

62.    By using and/or advertising TriZetto's Confidential Information and misappropriating TriZetto's Trade Secret Information to sell and distribute to third parties, Infosys obtained a commercial advantage in competing against TriZetto, thereby harming TriZetto in an amount to be determined at trial.

**ANSWER:** Infosys denies the allegations in Paragraph 62 of the Complaint.

**F.    Infosys Further Breaches the NDAAs by Refusing an Audit of Its Compliance with the Terms of the NDAAs Between Infosys and TriZetto**

63.    For months, Infosys failed to cooperate with TriZetto's requests for information regarding Infosys's use of TriZetto Confidential Information and Trade Secret Information. After months of refusing to cooperate with TriZetto, on May 31, 2024, TriZetto provided Infosys with written notice of an audit pursuant to the contractually agreed audit provisions of the Customer B-E NDAAs. Infosys refused to comply with the audit, in further breach of the agreements.

**ANSWER:** Infosys admits that Cognizant's counsel sent Infosys's counsel a letter on or around May 31, 2024, which speaks for itself. Infosys denies the remaining allegations in Paragraph 63 of the Complaint.

64.    In particular, TriZetto sought specific information from Infosys to determine whether Infosys was in compliance with the NDAAs. TriZetto requested: (1) "emails since November 19, 2018 attaching, including, forwarding, referencing or discussing any [TriZetto] Confidential Information"; (2) a list identifying "all Infosys-affiliated individuals who have had access to Cognizant Confidential Information since November 19, 2018," and (3) "[t]he identity of all central locations within Infosys containing Cognizant Confidential Information, and the identity of each individual that was authorized to access each central location since November 19, 2018." The requested information would have allowed TriZetto to determine who at Infosys had

access to TriZetto Confidential Information and whether the access and use of such information by Infosys was consistent with the NDAAs. In turn, Infosys responded only to state in conclusory fashion that, according to Infosys, it had complied with the NDAAs-ignoring TriZetto's specific questions and failed to provide any of the requested information, despite the fact that Infosys was required to do so under the NDAAs. Infosys refused to provide the requested business records despite having over two months to do so.

**ANSWER:** Infosys admits that Cognizant's counsel sent Infosys a letter on or around May 31, 2024, which included the language quoted in Paragraph 64, among other statements. Infosys denies the remaining allegations in Paragraph 64 of the Complaint.

65.     Infosys's refusal to cooperate is an apparent effort to either continue the misuse and misappropriation and/or conceal the extent of the misuse and misappropriation thus far, which further demonstrates that Infosys's misuse and misappropriation is willful and malicious.

**ANSWER:** Infosys denies the allegations in Paragraph 65 of the Complaint.

## COUNT I

### Trade Secret Misappropriation Under the Defend Trade Secrets Act

### (18 U.S.C. §§ 1836(b), 1839 *et seq.*)

66.     TriZetto incorporates and re-alleges each and every allegation above as if fully set forth herein.

**ANSWER:** Infosys incorporates and re-alleges its responses to Paragraphs 1 to 65 of the Complaint as if fully set forth herein.

67.     TriZetto is the owner of certain valuable Trade Secret Information, including as described herein. *See supra* Section B. TriZetto's Trade Secret Information is confidential and propriety information, and includes the Proprietary Software, Source Materials related to the Proprietary Software, as well as Test Cases, Interfaces, the Data Model, and Commercial Secrets,

all associated with the Proprietary Software. TriZetto's Trade Secret Information relates to TriZetto's products and services that are used in or intended for use in interstate and foreign commerce. TriZetto sells its products throughout the United States. For example, TriZetto's software systems and solutions are sold and used throughout the United States.

**ANSWER:** Infosys admits the last sentence in Paragraph 67 of the Complaint. Infosys denies the remaining allegations in Paragraph 67 of the Complaint, including that Cognizant has specified any information that constitutes trade secrets of Cognizant.

68.    TriZetto's Trade Secret Information provides substantial economic value and has conferred a competitive advantage on TriZetto by virtue of being kept secret. TriZetto's Trade Secret Information derives independent economic value from not being generally known, and not being readily ascertainable through proper means by others because such information is extremely valuable to TriZetto, crucial to the operation of TriZetto's business, and if available to others, would enable them to compete with TriZetto to TriZetto's detriment.

**ANSWER:** Infosys denies the allegations in Paragraph 68 of the Complaint, including that Cognizant has adequately identified any trade secrets or that the information referenced in Paragraph 67 or elsewhere in the Complaint constitutes trade secrets.

69.    TriZetto has taken reasonable steps to maintain the secrecy of its Trade Secret Information, including by requiring confidentiality and/or nondisclosure agreements to be signed by any party granted access to TriZetto's Trade Secret Information, restricting physical and digital access to authorized users with valid credentials, computer and server passwords, security access cards, and letters notifying departing employees to return all property belonging to TriZetto. *See, supra* Section C. Such information cannot be properly acquired or duplicated because of the

limited number of individuals who can access the information, and the contractual limitations imposed on such individuals.

**ANSWER:** Infosys denies the allegations in Paragraph 69 of the Complaint.

70.     Infosys gained access to TriZetto's Trade Secret Information during the course of agreements TriZetto entered into with it, and potentially through other sources unknown to TriZetto at this time.

**ANSWER:** Infosys denies the allegations in Paragraph 70 of the Complaint, including that Cognizant has adequately identified any trade secrets or that the information referenced in Paragraph 67 or elsewhere in the Complaint constitutes trade secrets.

71.     Infosys subsequently used and disclosed TriZetto's Trade Secrets. Accordingly, Infosys is in possession of the foregoing TriZetto Trade Secret Information, which is subject to confidentiality agreements in which Infosys expressly acknowledged and confirmed the confidential nature of these secrets.

**ANSWER:** Infosys denies the allegations in Paragraph 71 of the Complaint.

72.     Infosys, and in particular Infosys's Infosys Validation Solutions team and the Helix team, improperly acquired TriZetto's Trade Secret Information. Infosys has since improperly misappropriated TriZetto's Trade Secret Information, including by incorporating them into products and service Infosys markets and sells as its own. *See, supra* Section E.

**ANSWER:** Infosys denies the allegations in Paragraph 72 of the Complaint.

73.     Infosys has misappropriated TriZetto's Trade Secret Information by acquiring, using, and/or disclosing the information described above, including by developing, marketing, offering, and/or selling in the United States products that comprise, embody, and/or incorporate the Trade Secrets described herein.

**ANSWER:** Infosys denies the allegations in Paragraph 73 of the Complaint.

74.    At the time Infosys misappropriated TriZetto's Trade Secret Information, Infosys knew or had reason to know that the Trade Secret Information was derived from someone who acquired them by improper means, acquired them subject to a duty to maintain secrecy or limit use, or derived from a person who owed such a duty.

**ANSWER:** Infosys denies the allegations in Paragraph 74 of the Complaint.

75.    Infosys willfully and maliciously misappropriated TriZetto's Trade Secret Information and gained economic value from that misappropriation.

**ANSWER:** Infosys denies the allegations in Paragraph 75 of the Complaint.

76.    As a direct and proximate result of Infosys's current and continued misappropriation of TriZetto's Trade Secret Information, TriZetto will suffer imminent and irreparable harm.

**ANSWER:** Infosys denies the allegations in Paragraph 76 of the Complaint.

77.    Unless enjoined by this Court, Infosys's acts of misappropriation will continue and TriZetto will continue to suffer irreparable harm.

**ANSWER:** Infosys denies the allegations in Paragraph 77 of the Complaint, including that it has misappropriated any trade secrets.

78.    TriZetto has no adequate remedy at law, as money damages alone will not fully correct the harm done through Infosys's misappropriation.

**ANSWER:** Infosys denies the allegations in Paragraph 78 of the Complaint, including that it has misappropriated any trade secrets.

<u>COUNT II</u>
**Trade Secret Misappropriation Under Texas Uniform Trade Secret Act**

79.     TriZetto incorporates and re-alleges each and every allegation above as if fully set forth herein.

**ANSWER:** Infosys incorporates and re-alleges its responses to Paragraphs 1 to 78 of the Complaint as if fully set forth herein.

80.     TriZetto is the owner of certain valuable Trade Secret Information, including as described herein. *See supra* Section B. TriZetto's Trade Secret Information is confidential and propriety information, and includes the Proprietary Software, Source Materials related to the Proprietary Software, as well as Test Cases, Interfaces, the Data Model, and Commercial Secrets, all associated with the Proprietary Software. TriZetto's Trade Secret Information relates to TriZetto's products and services that are used in or intended for use in interstate and foreign commerce. TriZetto sells its products throughout the United States. For example, TriZetto's software systems and solutions are sold and used throughout the United States.

**ANSWER:** Infosys admits the last sentence in Paragraph 80 of the Complaint. Infosys denies the remaining allegations in Paragraph 80 of the Complaint, including that Cognizant has specified any information that constitutes trade secrets of Cognizant.

81.     TriZetto's Trade Secret Information provides substantial economic value and has conferred a competitive advantage on TriZetto by virtue of being kept secret. TriZetto's Trade Secret Information derives independent economic value from not being generally known, and not being readily ascertainable through proper means by others because such information is extremely valuable to TriZetto, crucial to the operation of TriZetto's business, and if available to others, would enable them to compete with TriZetto to TriZetto's detriment.

**ANSWER:** Infosys denies the allegations in Paragraph 81 of the Complaint, including that Cognizant has adequately identified any trade secrets or that the information referenced in Paragraph 81 or elsewhere in the Complaint constitutes trade secrets.

82.    TriZetto has taken reasonable steps to maintain the secrecy of its Trade Secret Information, including by requiring confidentiality and/or nondisclosure agreements to be signed by any party granted access to TriZetto's Trade Secret Information, restricting physical and digital access to authorized users with valid credentials, computer and server passwords, security access cards, and letters notifying departing employees to return all property belonging to TriZetto. *See, supra* Section C. Such information cannot be properly acquired or duplicated because of the limited number of individuals who can access the information and the contractual limitations imposed on such individuals.

**ANSWER:** Infosys denies the allegations in Paragraph 82.

83.    Infosys gained access to TriZetto's trade secrets during the course of agreements TriZetto entered into with it, and potentially through other sources unknown to TriZetto at this time.

**ANSWER:** Infosys denies the allegations in Paragraph 83 of the Complaint, including that Cognizant has adequately identified any trade secrets or that the information referenced in Paragraph 80 or elsewhere in the Complaint constitutes trade secrets.

84.    Infosys subsequently used and disclosed TriZetto's trade secrets. Accordingly, Infosys is in possession of the foregoing TriZetto Trade Secret Information, which is subject to confidentiality agreements in which Infosys expressly acknowledged and confirmed the confidential nature of these secrets.

**ANSWER:** Infosys denies the allegations in Paragraph 84 of the Complaint.

85.    Infosys, and in particular Infosys's Infosys Validation Solutions team and the Helix team, improperly acquired TriZetto 's Trade Secret Information. Infosys has since improperly misappropriated TriZetto's Trade Secret Information, including by incorporating them into products and service Infosys markets and sells as its own. *See, supra* Section E.

**ANSWER:** Infosys denies the allegations in Paragraph 85 of the Complaint.

86.    Infosys has misappropriated TriZetto's Trade Secret Information by acquiring, using, and/or disclosing the information described above, including by developing, marketing, offering, and/or selling in the United States products that comprise, embody, and/or incorporate the trade secrets described herein.

**ANSWER:** Infosys denies the allegations in Paragraph 86 of the Complaint.

87.    At the time Infosys misappropriated TriZetto's Trade Secret Information, Infosys knew or had reason to know that the Trade Secret Information was derived from someone who acquired them by improper means, acquired them subject to a duty to maintain secrecy or limit use, or derived from a person who owed such a duty.

**ANSWER:** Infosys denies the allegations in Paragraph 87 of the Complaint.

88.    Infosys willfully and maliciously misappropriated TriZetto's Trade Secret Information and gained economic value from that misappropriation.

**ANSWER:** Infosys denies the allegations in Paragraph 88 of the Complaint.

89.    As a direct and proximate result of Infosys's current and continued misappropriation of TriZetto's Trade Secret Information, TriZetto will suffer imminent and irreparable harm.

**ANSWER:** Infosys denies the allegations in Paragraph 89 of the Complaint.

90.     Unless enjoined by this Court, Infosys's acts of misappropriation will continue and TriZetto will continue to suffer irreparable harm.

**ANSWER:** Infosys denies the allegations in Paragraph 90 of the Complaint, including that it has misappropriated any trade secrets.

91.     TriZetto has no adequate remedy at law, as money damages alone will not fully correct the harm done through Infosys's misappropriation.

**ANSWER:** Infosys denies the allegations in Paragraph 91 of the Complaint, including that it has misappropriated any trade secrets.

<u>**COUNT III**</u>
**Breach of Contract (Customer A NDAA)**

92.     TriZetto incorporates and re-alleges each and every allegation above as if fully set forth herein.

**ANSWER:** Infosys incorporates and re-alleges its responses to Paragraphs 1 to 91 of the Complaint as if fully set forth herein.

93.     The actions of Infosys, as set forth herein, constitute a breach of contract.

**ANSWER:** Infosys denies the allegations in Paragraph 93 of the Complaint.

94.     TriZetto satisfied all relevant obligations under the Customer A NDAA it entered into with Infosys.

**ANSWER:** Infosys lacks sufficient information to admit or deny the allegations in Paragraph 94 of the Complaint and therefore denies them.

95.     Nonetheless, Infosys breached multiple provisions of the Customer A NDAA, including Sections 1, 6, and 7 of the Customer A NDAA.

**ANSWER:** Infosys denies the allegations in Paragraph 95 of the Complaint.

96.     For example, pursuant to Section 1 of the NDAA, Infosys was provided access to TriZetto Confidential Information solely for performing certain QA testing services for Customer A. By creating a repository of 1 million test cases and advertising, marketing and utilizing those test cases thereafter, Infosys directly breached Section 1 of Exhibit 1 by using its access to TriZetto's Confidential Information for a purpose other than performing QA testing services for Customer A.

**ANSWER:** Infosys denies Cognizant's characterization of the NDAA, which speaks for itself. Infosys denies the remaining allegations in Paragraph 96 of the Complaint.

97.     Further, Section 6 of the Customer A NDAA gave Infosys narrow authorization to use TriZetto Confidential Information solely for purposes of providing services to Customer A Infosys knowingly breached this narrow authorization, including by using TriZetto Confidential Information to create a repository of test cases and advertising, marketing and utilizing those test cases thereafter.

**ANSWER:** Infosys denies Cognizant's characterization of the NDAA, which speaks for itself. Infosys denies the remaining allegations in Paragraph 97 of the Complaint.

98.     Under Section 7 of the Customer A NDAA, Infosys also had an obligation not to use or disclose TriZetto Confidential Information or allow others to use or disclose TriZetto Confidential Information, except as expressly permitted under the Customer A NDAA. Using TriZetto Confidential information to create, use, advertise and market a repository of test cases was not a permitted use under the NDAA.

**ANSWER:** Infosys denies Cognizant's characterization of the NDAA, which speaks for itself. Infosys denies the remaining allegations in Paragraph 98 of the Complaint.

99.    As a result of Infosys's breach of the Customer A NDAA, TriZetto has suffered direct and consequential damages, and is entitled to recover compensatory damages, including opportunity costs, in an amount to be proven at trial.

**ANSWER:** Infosys denies the allegations in Paragraph 99 of the Complaint, including that it breached the NDAA.

100.    As a direct and proximate result of Infosys's wrongful conduct, TriZetto has been substantially and irreparably harmed in an amount not readily capable of determination. Unless restrained by this Court, Infosys will cause further irreparable injury to TriZetto.

**ANSWER:** Infosys denies the allegations in Paragraph 100 of the Complaint, including that it engaged in any wrongful conduct.

101.    TriZetto is entitled to injunctive relief enjoining Infosys, its agents and employees, and all persons acting in concert or participation with it, from engaging in any further use of TriZetto's Confidential Information.

**ANSWER:** Infosys denies the allegations in Paragraph 101 of the Complaint, including that Cognizant is entitled to the requested relief or any relief whatsoever.

## COUNT IV
**Breach of Contract (Customer B NDAA)**

102.    TriZetto incorporates and re-alleges each and every allegation above as if fully set forth herein.

**ANSWER:** Infosys incorporates and re-alleges its responses to Paragraphs 1 to 101 of the Complaint as if fully set forth herein.

103.    The actions of Infosys, as set forth herein, constitute a breach of contract.

**ANSWER:** Infosys denies the allegations in Paragraph 103 of the Complaint.

104.    TriZetto satisfied all relevant obligations under the Customer B NDAA it entered into with Infosys.

**ANSWER:** Infosys lacks sufficient information to admit or deny the allegations in Paragraph 104 of the Complaint and therefore denies them.

105.    Nonetheless, Infosys breached multiple provisions of the Customer B NDAA, including Sections 1, 4, 6, 7, 10, and Ex. 1 (para. 1) of the Customer B NDAA.

**ANSWER:** Infosys denies the allegations in Paragraph 105 of the Complaint.

106.    For example, pursuant to the Customer B NDAA, Infosys was provided limited access to TriZetto Confidential Information "solely to the extent reasonably necessary to enable [Infosys] to provide the" services listed in Exhibit 1 of the Customer B NDAA. By creating a repository of 1 million test cases and advertising, marketing and utilizing those test cases thereafter, Infosys directly breached Section 1 of the Customer B NDAA by using its access to TriZetto's Confidential Information for a purpose not related to the services listed in Exhibit 1 of the Customer B NDAA.

**ANSWER:** Infosys denies Cognizant's characterization of the NDAA, which speaks for itself. Infosys denies the remaining allegations in Paragraph 106 of the Complaint.

107.    Further, Sections 4 and 6 of the Customer B NDAA gave certain Infosys employees narrow authorization to use TriZetto Confidential Information solely for purposes of providing services to Customer B. Infosys knowingly breached this narrow authorization, including by using TriZetto Confidential Information to create a repository of test cases and advertising, marketing and utilizing those test cases thereafter, and by allowing unauthorized employees to access TriZetto Confidential Information.

**ANSWER:** Infosys denies Cognizant's characterization of the NDAA, which speaks for itself. Infosys denies the remaining allegations in Paragraph 107 of the Complaint.

108.    Infosys also had an obligation under Section 7 of the Customer B NDAA not to use or disclose TriZetto Confidential Information or allow others to use or disclose TriZetto Confidential Information, except as expressly permitted under the Customer B NDAA. Using TriZetto Confidential Information to create, use, advertise and market a repository of test cases was not a permitted use under the Customer B NDAA.

**ANSWER:** Infosys denies Cognizant's characterization of the NDAA, which speaks for itself. Infosys denies the remaining allegations in Paragraph 108 of the Complaint.

109.    Allowing unauthorized Infosys employees who worked on competitive products to access TriZetto Confidential Information to create and use connector tools, like the QNXT Adapter, was not a permitted use under the Customer B NDAA. Moreover, under Sections 4 and 10 of the Customer B NDAAs, Infosys is prohibited from creating Modifications or to create an Interface for Proprietary Software, except as permitted therein. Infosys knowingly breached the Customer B NDAA by permitting members of the Helix team to access TriZetto Confidential Information provided in connection with the Customer B NDAA.

**ANSWER:** Infosys denies Cognizant's characterization of the NDAA, which speaks for itself. Infosys denies the remaining allegations in Paragraph 109 of the Complaint.

110.    Under Section 7(m) of the Customer B NDAA, Infosys had an obligation to provide TriZetto with "access to [its] facilities and business records as reasonably necessary for [TriZetto] to determine whether [Infosys is] in compliance with this NDAA." However, when requested to provide its business records, Infosys refused, thereby knowingly breaching the Customer B NDAA.

46

**ANSWER:** Infosys denies Cognizant's characterization of the NDAA, which speaks for itself. Infosys denies the remaining allegations in Paragraph 110 of the Complaint.

111.    As a result of Infosys's breach of the Customer B NDAA, TriZetto has suffered direct and consequential damages, and is entitled to recover compensatory damages, including opportunity costs, in an amount to be proven at trial.

**ANSWER:** Infosys denies the allegations in Paragraph 111 of the Complaint, including that it breached the NDAA.

112.    As a direct and proximate result of Infosys's wrongful conduct, TriZetto has been substantially and irreparably harmed in an amount not readily capable of determination. Unless restrained by this Court, Infosys will cause further irreparable injury to TriZetto.

**ANSWER:** Infosys denies the allegations in Paragraph 112 of the Complaint, including that it engaged in any wrongful conduct.

113.    TriZetto is entitled to injunctive relief enjoining Infosys, its agents and employees, and all persons acting in concert or participation with it, from engaging in any further use of TriZetto's Confidential Information.

**ANSWER:** Infosys denies the allegations in Paragraph 113 of the Complaint, including that Cognizant is entitled to the requested relief or any relief whatsoever.

**COUNT V**
**Breach of Contract (Customer C NDAA)**

114.    TriZetto incorporates and re-alleges each and every allegation above as if fully set forth herein.

**ANSWER:** Infosys incorporates and re-alleges its responses to Paragraphs 1 to 113 of the Complaint as if fully set forth herein.

115.    The actions of Infosys, as set forth herein, constitute a breach of contract.

**ANSWER:** Infosys denies the allegations in Paragraph 115 of the Complaint.

116.    TriZetto satisfied all relevant obligations under the Customer C NDAA it entered into with Infosys.

**ANSWER:** Infosys lacks sufficient information to admit or deny the allegations in Paragraph 116 of the Complaint and therefore denies them.

117.    Nonetheless, Infosys breached multiple provisions of the Customer C NDAA, including Sections 1, 4, 7, and 8 of the Customer C NDAA.

**ANSWER:** Infosys denies the allegations in Paragraph 117 of the Complaint.

118.    For example, pursuant to Section 1 of the Customer C NDAA, Infosys was provided limited access to TriZetto Confidential Information for "use in the performance of certain services for [Customer C] that are described on Attachment 1." By creating a repository of 1 million test cases and advertising, marketing and utilizing those test cases thereafter, Infosys directly breached Section 1 of the Customer C NDAA by using its access to TriZetto's Confidential Information for a purpose not related to the services listed in Attachment 1 of the Customer C NDAA.

**ANSWER:** Infosys denies Cognizant's characterization of the NDAA, which speaks for itself. Infosys denies the remaining allegations in Paragraph 118 of the Complaint.

119.    Further, Sections 4 and 7 of the Customer C NDAA gave Infosys narrow authorization to use TriZetto Confidential Information solely for purposes of providing services to Customer C. Infosys knowingly breached this narrow authorization, including by using TriZetto Confidential Information to create a repository of test cases and advertising, marketing and utilizing those test cases thereafter, and by allowing unauthorized employees to access TriZetto Confidential Information.

**ANSWER:** Infosys denies Cognizant's characterization of the NDAA, which speaks for itself. Infosys denies the remaining allegations in Paragraph 119 of the Complaint.

120.    Infosys also had an obligation under Section 8 of the Customer C NDAA to not use or disclose TriZetto Confidential Information, or allow others to use or disclose TriZetto Confidential Information, except as expressly permitted under the Customer C NDAA. Using TriZetto Confidential Information to create, use, advertise and market a repository of test cases was not a permitted use under the Customer C NDAA.

**ANSWER:** Infosys denies Cognizant's characterization of the NDAA, which speaks for itself. Infosys denies the remaining allegations in Paragraph 120 of the Complaint.

121.    Infosys had an obligation under Section 8(m) of the Customer C NDAA to provide TriZetto with "access to [its] facilities and business records as reasonably necessary for [TriZetto] to determine whether [Infosys is] in compliance with this NDAA." However, when requested to provide its business records, Infosys refused, thereby knowingly breaching the Customer C NDAA.

**ANSWER:** Infosys denies Cognizant's characterization of the NDAA, which speaks for itself. Infosys denies the remaining allegations in Paragraph 121 of the Complaint.

122.    As a result of Infosys's breach of the Customer C NDAA, TriZetto has suffered direct and consequential damages, and is entitled to recover compensatory damages, including opportunity costs, in an amount to be proven at trial.

**ANSWER:** Infosys denies the allegations in Paragraph 122 of the Complaint, including that it breached the NDAA.

123.    As a direct and proximate result of Infosys's wrongful conduct, TriZetto has been substantially and irreparably harmed in an amount not readily capable of determination. Unless restrained by this Court, Infosys will cause further irreparable injury to TriZetto.

**ANSWER:** Infosys denies the allegations in Paragraph 123 of the Complaint, including that it engaged in any wrongful conduct.

124.    TriZetto is entitled to injunctive relief enjoining Infosys, its agents and employees, and all persons acting in concert or participation with it, from engaging in any further use of TriZetto's Confidential Information.

**ANSWER:** Infosys denies the allegations in Paragraph 124 of the Complaint, including that Cognizant is entitled to the requested relief or any relief whatsoever.

<u>COUNT VII</u>
**Breach of Contract (Customer D NDAA)**

125.    TriZetto incorporates and re-alleges each and every allegation above as if fully set forth herein.

**ANSWER:** Infosys incorporates and re-alleges its responses to Paragraphs 1 to 124 of the Complaint as if fully set forth herein.

126.    The actions of Infosys, as set forth herein, constitute a breach of contract.

**ANSWER:** Infosys denies the allegations in Paragraph 126 of the Complaint.

127.    TriZetto satisfied all relevant obligations under the Customer D NDAA it entered into with Infosys.

**ANSWER:** Infosys lacks sufficient information to admit or deny the allegations in Paragraph 127 of the Complaint and therefore denies them.

128.    Nonetheless, Infosys breached multiple provisions of the Customer D NDAA, including Sections 1, 4, and 7 of the Customer D NDAA.

**ANSWER:** Infosys denies the allegations in Paragraph 128 of the Complaint.

129.    For example, pursuant to Section 1 of the Customer D NDAA, Infosys was provided limited access to TriZetto Confidential Information for "use in the performance of certain services for [Customer D] that are described on Attachment l." By creating a repository of 1 million test cases and advertising, marketing and utilizing those test cases thereafter, Infosys directly breached Section 1 of the Customer D NDAA by using its access to TriZetto's Confidential Information for a purpose not related to the services listed in Attachment 1 of the Customer D NDAA.

**ANSWER:** Infosys denies Cognizant's characterization of the NDAA, which speaks for itself. Infosys denies the remaining allegations in Paragraph 129 of the Complaint.

130.    Further, Sections 4 and 7 of the Customer D NDAA gave Infosys narrow authorization to use TriZetto Confidential Information solely for purposes of providing services to Customer D. Infosys knowingly breached this narrow authorization, including by using TriZetto Confidential Information to create a repository of test cases and advertising, marketing and utilizing those test cases thereafter, and by allowing unauthorized employees to access TriZetto Confidential Information.

**ANSWER:** Infosys denies Cognizant's characterization of the NDAA, which speaks for itself. Infosys denies the remaining allegations in Paragraph 130 of the Complaint.

131.    Under Section 7 of the Customer D NDAA, Infosys also had an obligation not to use or disclose TriZetto Confidential Information, or allow others to use or disclose TriZetto Confidential Information, except as expressly permitted under the Customer D NDAA. Using TriZetto Confidential Information to create, use, advertise and market a repository of test cases was not a permitted use under the Customer D NDAA.

**ANSWER:** Infosys denies Cognizant's characterization of the NDAA, which speaks for itself. Infosys denies the remaining allegations in Paragraph 131 of the Complaint.

132.    Under Section 7(m) of the Customer D NDAA, Infosys had an obligation to provide TriZetto with "access to [its] facilities and business records as reasonably necessary for [TriZetto] to determine whether [Infosys is] in compliance with this NDAA." However, when requested to provide its business records, Infosys refused, thereby knowingly breaching the Customer D NDAA.

**ANSWER:** Infosys denies Cognizant's characterization of the NDAA, which speaks for itself. Infosys denies the remaining allegations in Paragraph 132 of the Complaint

133.    As a result of Infosys's breach of the Customer D NDAA, TriZetto has suffered direct and consequential damages, and is entitled to recover compensatory damages, including opportunity costs, in an amount to be proven at trial.

**ANSWER:** Infosys denies the allegations in Paragraph 133 of the Complaint, including that it breached the NDAA.

134.    As a direct and proximate result of Infosys's wrongful conduct, TriZetto has been substantially and irreparably harmed in an amount not readily capable of determination. Unless restrained by this Court, Infosys will cause further irreparable injury to TriZetto.

**ANSWER:** Infosys denies the allegations in Paragraph 134 of the Complaint, including that it engaged in any wrongful conduct.

135.    TriZetto is entitled to injunctive relief enjoining Infosys, its agents and employees, and all persons acting in concert or participation with it, from engaging in any further use of TriZetto's Confidential Information.

**ANSWER:** Infosys denies the allegations in Paragraph 135 of the Complaint, including that Cognizant is entitled to the requested relief or any relief whatsoever.

**COUNT VIII**
**Federal Unfair Competition under the Lanham Act (15. U.S.C. § 1125(a)(l))**

136.    TriZetto incorporates and re-alleges each and every allegation above as if fully set forth herein.

**ANSWER:** Infosys incorporates and re-alleges its responses to Paragraphs 1 to 135 of the Complaint as if fully set forth herein.

137.    Infosys, by engaging in the acts described above, is and has been unlawfully competing with TriZetto.

**ANSWER:** Infosys denies the allegations in Paragraph 137 of the Complaint.

138.    Infosys has engaged in unfair competition by unlawfully using TriZetto's Confidential Information and Trade Secret Information belonging to TriZetto to repackage TriZetto's Test Cases and advertise them as its own as part of its repository of 1 million test cases.

**ANSWER:** Infosys denies the allegations in Paragraph 138 of the Complaint, including that Cognizant has adequately identified any trade secrets or that any information referenced in the Complaint constitutes trade secrets.

139.    TriZetto was the sole owner of the TriZetto Confidential Information and Trade Secret Information which was its propriety information.

**ANSWER:** Infosys denies the allegations in Paragraph 139 of the Complaint, including that Cognizant has adequately identified any trade secrets or that any information referenced in the Complaint constitutes trade secrets.

140.    The TriZetto Confidential Information and Trade Secret Information were clearly designated in the NDAAs with Customers A-D.

**ANSWER:** Infosys denies Cognizant's characterization of the NDAAs, which speak for themselves. Infosys denies the remaining allegations in Paragraph 140 of the Complaint, including that Cognizant has adequately identified any trade secrets or that any information referenced in the Complaint constitutes trade secrets.

141.    Infosys was granted a license to use the TriZetto Confidential Information and trade secrets pursuant to the NDAAs with Customers A-D. The NDAAs expressly limited the use and disclosure of the TriZetto Confidential Information and Trade Secret Information.

**ANSWER:** Infosys denies Cognizant's characterization of the NDAAs, which speak for themselves. Infosys denies the remaining allegations in Paragraph 141 of the Complaint, including that Cognizant has adequately identified any trade secrets or that any information referenced in the Complaint constitutes trade secrets.

142.    Using its access to TriZetto's Confidential Information and Trade Secret Information to create an interface for connecting to QNXT. Infosys called the interface the "QNXT Adapter." The name suggests that the interface was created by TriZetto, the creator of QNXT, which constitutes a false designation of origin, false or misleading description of fact, and/or false or misleading representation of fact which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or the origin, sponsorship, or approval of the use of TriZetto's Confidential Information and Trade Secret Information. For example, Infosys's QNXT Adapter has caused, and will continue to cause, reputational harm to TriZetto in the market, as evidenced by the fact that Customer B identified technical deficiencies with the QNXT Adaptor and requested TriZetto's assistance in resolving them.

**ANSWER:** Infosys admits that the phrase "QNXT adaptor", along with other phrases, has been used to describe an interface it developed for a mutual customer. Infosys denies the remaining

allegations in Paragraph 142 of the Complaint, including that Cognizant has adequately identified any trade secrets or that any information referenced in the Complaint constitutes trade secrets.

143.    Using its access to TriZetto's Confidential Information and Trade Secret Information to create a repository of 1 million test cases to then compete with TriZetto by advertising the repository of test cases as its own constitutes a false designation of origin, false or misleading description of fact, and/or false or misleading representation of fact which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or the origin, sponsorship, or approval of the use of TriZetto's Confidential Information and Trade Secret Information. On information and belief, Infosys's deception has influenced, and is likely to continue to influence, customers to engage Infosys for testing services, to TriZetto's detriment.

**ANSWER:** Infosys denies the allegations in Paragraph 143 of the Complaint, including that Cognizant has adequately identified any trade secrets or that any information referenced in the Complaint constitutes trade secrets.

144.    Infosys's acts are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(l).

**ANSWER:** Infosys denies the allegations in Paragraph 144.

145.    Infosys's acts of unfair competition and misrepresentations have deceived and, unless restrained, will continue to deceive the public, including TriZetto's potential customers, causing is causing damages to TriZetto in an amount to be determined at trial and other irreparable injury to the goodwill and reputation of TriZetto and its products and services.

**ANSWER:** Infosys denies the allegations in Paragraph 145, including that it has engaged in any acts of unfair competition or misrepresentations.

## JURY DEMAND

TriZetto requests trial by jury as to all claims triable to a jury in this action.

**ANSWER:** Infosys hereby demands a trial by jury on all causes of action and issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, TriZetto respectfully requests that the Court:

146.    Enter judgment in favor of TriZetto and against Infosys with respect to each of the Counts above.

**ANSWER:** Infosys denies that Cognizant is entitled to the requested relief or any relief whatsoever.

147.    Award a preliminary injunction, and/or permanent injunction prohibiting Infosys, and all persons or entities acting in concert or participation with Infosys, from using or possessing TriZetto's Trade Secret Information.

**ANSWER:** Infosys denies that Cognizant is entitled to the requested relief or any relief whatsoever.

148.    Award a preliminary injunction, and/or a permanent injunction restraining and enjoining Infosys, and all persons or entities acting in concert or participation with Infosys, from altering, destroying, or disposing of any evidence, in any form, relating to this action, including without limitation emails and paper and electronic documents, including current or archived electronic logs, metadata, and directories.

**ANSWER:** Infosys denies that Cognizant is entitled to the requested relief or any relief whatsoever.

149.    Declare valid and enforceable the provisions of the TriZetto's agreements with Infosys.

**ANSWER:** Infosys denies that Cognizant is entitled to the requested relief or any relief whatsoever.

150.    Declare that Infosys, and all persons or entities acting in concert or participation with Infosys, have no rights or privileges to use TriZetto's Confidential Information or Trade Secret Information.

**ANSWER:** Infosys denies that Cognizant is entitled to the requested relief or any relief whatsoever.

151.    Award TriZetto restitution in an amount to be determined at trial.

**ANSWER:** Infosys denies that Cognizant is entitled to the requested relief or any relief whatsoever.

152.    Award TriZetto general and compensatory damages in an amount to be determined at trial, including without limitation, actual damages, damages for unjust enrichment, and damages measured as a reasonable royalty, as authorized by 18 U.S.C. § 1836(b)(3)(B) and/or Texas law.

**ANSWER:** Infosys denies that Cognizant is entitled to the requested relief or any relief whatsoever.

153.    Award TriZetto pre- and post-judgment interest.

**ANSWER:** Infosys denies that Cognizant is entitled to the requested relief or any relief whatsoever.

154.    Award TriZetto exemplary damages, as authorized by 18 U.S.C. §1836(b)(3)(C) and/or Texas law, in an amount to be determined at trial.

**ANSWER:** Infosys denies that Cognizant is entitled to the requested relief or any relief whatsoever.

155.    Award TriZetto attorneys' fees and costs.

**ANSWER:** Infosys denies that Cognizant is entitled to the requested relief or any relief whatsoever.

156.    Award TriZetto any such other relief as the Court deems appropriate.

**ANSWER:** Infosys denies that Cognizant is entitled to or any relief whatsoever.

## AFFIRMATIVE AND OTHER DEFENSES

Infosys asserts the following affirmative defenses. Infosys currently has insufficient knowledge or information upon which to form a belief as to other potential affirmative defenses that may be available to it, and reserves the right to amend or supplement this Answer and its Affirmative Defenses, as well as to assert any and all additional or alternative defenses under any applicable law or regulation, in the event that discovery reveals that such defenses are available. The statement of any defense herein does not assume the burden of proof for any issue as to which the applicable law places the burden of proof on Plaintiffs.

## FIRST DEFENSE (STATUTE OF LIMITATIONS)

Cognizant's claims are barred, in whole or in part, by the applicable statutes of limitation. Counts I, II, III, V, and VII[1] are barred because they were filed more than three or, as applicable, four years after Cognizant discovered or, through the exercise of reasonable diligence, should have discovered the alleged misappropriation, breach, or statutory violation. The Business Assurance Store pamphlet on which Cognizant's claims are premised was posted to Infosys's public website on or around December 27, 2017. Other public statements about the Business Assurance Store, including social media statements and a press release, were issued in January 2018 and thereafter. Discovery is ongoing, but documents produced by Cognizant to date confirm that Cognizant was

---

[1] There is no Count VI in the Complaint.

aware of the Business Assurance Store by May 2021 at the latest. *See* COG_00008106. Cognizant filed its Complaint on August 23, 2024.

Count IV is barred because it was filed more than four years after the alleged breach. The Business Assurance Store pamphlet on which Cognizant's claim is premised was posted to Infosys's public website on or around December 27, 2017, but Cognizant did not file its Complaint until August 23, 2024—more than five years later.

**SECOND DEFENSE (UNCLEAN HANDS)**

Cognizant's claims are barred, in whole or in part, by the doctrine of unclean hands. Cognizant's conduct has been unconscientious, unjust, marked by a want of good faith, or violates the principles of equity and righteous dealing. Among other things, as detailed in Infosys's Counterclaim, Cognizant has engaged in and continues to engage in an anticompetitive scheme to achieve, maintain, and enhance its dominance in the healthcare payor software market and the related IT services market. Cognizant's scheme has included numerous endeavors to stifle competition from more innovative and efficient rivals, like Infosys, depriving customers of competition that would provide lower prices and better products and services in the United States healthcare system and harming Infosys. Infosys incorporates herein the allegations in its Counterclaim against Cognizant (ECF No. 46). Cognizant's misconduct has affected the equitable relations subsisting between Cognizant and Infosys, causing serious injury to Infosys that cannot be corrected.

**THIRD DEFENSE (ESTOPPEL)**

Cognizant's claims are barred, in whole or in part, by the doctrine of estoppel. Cognizant and its predecessors made representations to Infosys that Infosys was authorized to use information related to QNXT and Facets for purposes that Cognizant now claims to constitute

misappropriation, breach, and statutory violation. Cognizant and its predecessors were aware of the relevant facts at the time of their representations and intended Infosys to act on its representations or had reason to believe that Infosys would act on its representations. Infosys neither had knowledge nor reason to know that Cognizant would subsequently change its position and claim that Infosys's use of information related to QNXT and Facets was improper, and it reasonably relied on Cognizant's misrepresentations to its detriment. For example, when Cognizant's predecessor, QCSI, engaged Infosys to redevelop QNXT, QCSI acknowledged that Infosys's redevelopment of the QCSI code may contain general know-how and prior intellectual property of Infosys, agreed that all rights in such general know-how and prior intellectual property continue to vest in Infosys, and expressly agreed that Infosys could use all such know-how and prior intellectual property in connection with providing services and products to others. In addition, Infosys paid Cognizant's predecessors substantial payments for "knowledge transfer" relating to QNXT, including training Infosys employees on all aspects of QNXT and certifying Infosys employees for purposes of providing IT services to QNXT customers. As another example, Cognizant represented to Infosys that it could use "Confidential Information" for the purpose of developing interfaces such as the adaptor to connect Customer B's instance of QNXT to other software applications used by Customer B. Cognizant intended Infosys to act on each of these representations or had reason to believe that Infosys would act them. Infosys, on the other hand, neither had knowledge nor reason to know that Cognizant would subsequently claim that conduct that had been expressly authorized was illegal or wrongful, and it reasonably relied on Cognizant's misrepresentations to its detriment.

## FOURTH DEFENSE (WAIVER)

Cognizant's claims are barred, in whole or in part, by the doctrine of waiver. Cognizant and its predecessors had actual knowledge of the existence of any rights in the information that Cognizant now claims to constitute trade secrets or confidential information. Cognizant or its predecessors intended to relinquish the right or engaged in intentional conduct inconsistent with the right. For example, Cognizant's predecessors accepted substantial payments from Infosys and, in exchange, provided training to Infosys employees on all aspects of QNXT and certified Infosys employees to provide IT services to QNXT customers. Cognizant expressly authorized Infosys to use its "Confidential Information" for the purpose of developing interfaces such as the adaptor to connect Customer B's instance of QNXT to other software applications used by Customer B. Cognizant and its predecessors have for many years knowingly allowed other mutual customers to share purportedly confidential and trade secret information about Facets and QNXT with Infosys without requiring Infosys to enter into an NDAA or other confidentiality agreement.

## FIFTH DEFENSE (ACQUIESCENCE)

Cognizant's claims are barred, in whole or in part, by the doctrine of acquiescence. Cognizant and its predecessors assured Infosys that it could use information related to QNXT and Facets for purposes that Cognizant now claims to constitute misappropriation, breach, and statutory violation. For example, when Cognizant's predecessor, QCSI, engaged Infosys to redevelop QNXT, QCSI acknowledged that Infosys's redevelopment of the QCSI code may contain general know-how and prior intellectual property of Infosys, agreed that all rights in such general know-how and prior intellectual property continue to vest in Infosys, and expressly agreed that Infosys could use all such know-how and prior intellectual property in connection with providing services and products to others. In addition, Cognizant's predecessors accepted

substantial payments from Infosys in exchange for "knowledge transfer" relating to QNXT, including training Infosys employees on all aspects of QNXT and certifying Infosys employees for purposes of providing IT services to QNXT customers. As another example, Cognizant agreed that Infosys could use "Confidential Information" for the purpose of developing interfaces such as the adaptor, to connect Customer B's instance of QNXT to other software applications used by Customer B. Infosys relied upon Cognizant's representations, resulting in undue prejudice to Infosys.

## SIXTH DEFENSE (LACHES)

Cognizant unreasonably delayed in asserting any right or claim against Infosys, as a result of which Infosys has suffered prejudice. For example, the Business Assurance Store pamphlet on which Cognizant's claims are premised was posted to Infosys's public website on December 27, 2017 and other public statements, including a press release and social media statements, were issued about it in January 2018. Discovery to date confirms that Cognizant was aware of the Business Assurance Store by May 2021 at the latest, and likely much earlier. Similarly, Cognizant was aware that Infosys was developing an adaptor for Customer B by January 2022 at the latest, and likely much earlier. Cognizant delayed asserting any legal claims with respect to the Business Assurance Store, the test cases referenced therein, or the adaptor until August 2024. Further, Cognizant and its predecessors have known for many years that Infosys used information about QNXT to provide IT services to mutual customers, both because Infosys was involved in developing QNXT and because it acquired detailed information about QNXT as part of knowledge transfer initiatives, including training and certification programs.

### SEVENTH DEFENSE (NDAAS VOID AND UNENFORCEABLE)

Cognizant's claims are barred, in whole or in part, because the NDAAs on which they are premised are void and unenforceable on the ground that they unreasonably restrain competition and/or have an anticompetitive effect. Infosys incorporates herein the allegations in its Counterclaim against Cognizant (ECF No. 46).

### EIGHTH DEFENSE (FAIR USE)

Cognizant's Lanham Act claim is barred, in whole or in part, by the doctrine of fair use. For example, the term "QNXT adaptor" was used not as a mark but rather fairly and in good faith to describe the adaptor developed for Cognizant and Infosys's mutual client.

### NINTH DEFENSE (FAILURE TO MITIGATE DAMAGES)

Cognizant's request for damages is barred in whole or in part because it failed to mitigate its damages, if any.

### TENTH DEFENSE (CONSTITUTIONALITY OF PUNITIVE DAMAGES)

Cognizant's claim for punitive damages violates Infosys's substantive due process rights.

### REQUEST FOR ATTORNEY'S FEES

Infosys is entitled to an award of reasonable attorney's fees under 18 U.S.C. § 1836(b)(3)(D) and Tex. Civ. Prac. & Rem. Code § 134A.005(1) because Cognizant's claims of misappropriation were made in bad faith.

Dated: August 29, 2025

Respectfully submitted,

By: */s/ Brent Caslin* _____

LYNN PINKER HURST &
SCHWEGMANN, LLP

Christopher J. Schwegmann
State Bar No. 24051315
Joshua D. Lang
Texas Bar No. 24109450
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
Tel: (214) 981-3835
Fax: (214) 981-3839
cschwegmann@lynnllp.com

JENNER & BLOCK LLP

Brent Caslin (*pro hac vice*)
Nick Saros (*pro hac vice*)
Kelly M. Morrison (*pro hac vice*)
515 S. Flower Street, Suite 3300
Los Angeles, CA 90071
Tel.: (213) 239-5100
BCaslin@jenner.com
NSaros@jenner.com
KMorrison@jenner.com

Shoba Pillay (*pro hac vice*)
Laura E. Pelanek (*pro hac vice*)
353 N. Clark Street
Chicago, IL 60654
Tel.: (312) 222-9350
SPillay@jenner.com
LPelanek@jenner.com

Douglas E. Litvack (*pro hac vice*)
Jariel A. Rendell (*pro hac vice*)
1099 New York Avenue, NW
Suite 900
Washington, DC 20001
Tel: (202) 639-6000
DLitvack@jenner.com
JRendell@jenner.com

*Attorneys for Defendant and Counterclaim
Plaintiff Infosys Limited*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 29th day of August 2025, I caused the foregoing to be electronically filed with the clerk of the court for the U.S. District Court for the Northern District of Texas, by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record, a true and correct copy of the foregoing instrument and all attachments.

/s/ *Brent Caslin*
Brent Caslin (*pro hac vice*)