**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| COGNIZANT TRIZETTO SOFTWARE GROUP, INC., | Case No. 3:24-cv-2158-X |
| *Plaintiff*, | The Honorable Brantley Starr |
| v. | Magistrate Judge David L. Horan |
| INFOSYS LIMITED, | |
| *Defendant*. | |
| INFOSYS LIMITED, | |
| *Counterclaim Plaintiff*, | |
| v. | |
| COGNIZANT TECHNOLOGY SOLUTIONS CORP. and COGNIZANT TRIZETTO SOFTWARE GROUP, INC., | |
| *Counterclaim Defendants*. | |

**JOINT REPORT REGARDING CROSS-MOTIONS (1) BY COGNIZANT TECHNOLOGY SOLUTIONS CORP. TO COMPEL PRODUCTION OF SALIL PAREKH'S DOCUMENTS AND (2) BY INFOSYS LIMITED TO COMPEL PRODUCTION OF JATIN DALAL'S DOCUMENTS**

Per the Court's Standing Order on Non-Dispositive Pretrial Discovery Motions Referred to Magistrate Judge David L. Horan (ECF 107), the Parties submit this Joint Report regarding Cognizant Technology Solutions Corp.'s ("CTS's") motion to compel Infosys Limited ("Infosys") to produce its Chief Executive Officer Salil Parekh's relevant documents, and Infosys's motion to compel CTS and Cognizant TriZetto Software Group, Inc. ("Cognizant TriZetto" or "TriZetto") (collectively with CTS, "Cognizant") to produce its Chief Financial Officer Jatin Dalal's relevant documents.  The Parties provide the following information as required under Sections 3(a)–(e) of that Standing Order:

**3(a)      The names of the parties who participated in the pre-motion conference.**

For Infosys:     July 21, 2025: Jariel Rendell, Katharine McLaughlin, Nick Saros, Kelly Morrison, and Casey Carlson

July 23, 2025: Jariel Rendell, Katharine McLaughlin, Kelly Morrison, and Casey Carlson

August 5, 2025: Jariel Rendell, Joshua Lang, Andrew Csoros, and Rachel Magaziner

August 15, 2025: Jariel Rendell and Casey Carlson

September 3, 2025: Jariel Rendell, Joshua Lang, Rachel Magaziner, and Jose Sandoval

September 5, 2025: Jariel Rendell and Casey Carlson

September 11, 2025: Jariel Rendell and Jose Sandoval

For Cognizant:     July 21, 2025: Chris Whittaker, Casey McCracken, Christina Myrold, Teddy Kristek, Katherine Worden

July 23, 2025: Christina Myrold, Teddy Kristek, Katherine Worden

August 5, 2025: Jamie France, Teddy Kristek, Tristan Locke, Emma Becker

August 15, 2025: Chris Whittaker, Teddy Kristek, Matthew Butler, Tristan Locke

September 3, 2025: Chris Whittaker, Matthew Butler, and Tristan Locke

September 5, 2025: Chris Whittaker and Matthew Butler

September 11, 2025: Chris Whittaker, Matthew Butler, and Sarah Roberts

**3(b)       The date the conference was held and the amount of time during which the parties conferred.**

The conferences were held on July 21, July 23, August 5, August 15, September 3, September 5, and September 11. Counsel for the Parties conferred for approximately five hours over those seven sessions concerning several outstanding discovery issues related to custodians and search terms, among other topics, including the issues to be heard by the Court. The Parties also exchanged email communications before and after the conferences to resolve and reduce as many disputed issues as possible.

**3(c)       The matters that were resolved by agreement.**

The Parties resolved the following matters by agreement but were unable to resolve the matters at issue in this Joint Report:

- Cognizant agreed to add Saswata Kundu, Mike DiNardo, Chuck Sanders, Bharat Kumar Damalcheruvu, Jan Siegmund, and Brian Humphries as custodians. Cognizant further agreed to add the predecessors to Craig Mengert, Inderjeet Singh, the Client Partner for CareSource, and the Client Partner for Cigna as custodians pending confirmation that Cognizant possesses their documents, but as of this filing, Cognizant has not identified the predecessors by name or confirmed that it possesses their documents.

- Infosys agreed to add Jayesh Sanghrajka, Deepak Bhalla, Dinesh Rao, Mohammed Rafee Tarafdar, Gopalakrishnan Ramachandran, and Vinayak Hedge as custodians.

- Counsel resolved certain outstanding disputes related to the search of non-custodial sources.  Cognizant and Infosys agreed to produce all documents prepared for their Boards of Directors related to the following subjects: QNXT, Facets, Infosys Helix, and IT services related to those products.  Cognizant agreed to produce all documents prepared for its Board of Directors related to the hiring of Ravi Kumar, Ravi Kiran Kuchibhotla, and Shveta Arora, and Infosys agreed to produce all documents prepared for its Board of Directors regarding the job performance, departures, and replacement of Mr. Kumar, Mr. Kuchibhotla, and Ms. Arora.  Cognizant further agreed to search and produce responsive documents from its Customer Relationship Management platform, Cognizant TriZetto acquisition documents, and various sources with information regarding business performance.

- Cognizant and Infosys mutually agreed to use a start date of January 1, 2010, for all antitrust-related RFPs, excluding RFPs that explicitly include a start date later than January 1, 2010.  Cognizant and Infosys mutually agreed not to impose any limit on the start date for all trade secret-related RFPs, subject to agreement on reasonable search parameters.

- Counsel resolved several outstanding disputes related to the negotiation of search terms, hit counts, and go-gets for certain RFPs.  Specifically, Cognizant agreed that it would run search terms and provide hit counts for RFP Nos. 36, 49, 50, and 51 to Cognizant TriZetto.  Cognizant further agreed to produce responsive documents on a go-get basis for RFP Nos. 49 and 51 to Cognizant TriZetto and RFP Nos. 46, 47, 59, and 60 to CTS.  Counsel for Cognizant and Infosys continue to cooperate in refining search terms for RFPs.

3

Additional matters not subject to this Report were discussed and not resolved.  The parties remain hopeful that those pending disputes will be resolved in the coming days without requiring court intervention.  To the extent resolution is not feasible, the parties will raise those issues at the appropriate time.

**3(d)     The specific matters that need to be heard and determined by the Court.**

The matters that need to be heard by the Court concern two disputes regarding additional custodians:  (1) CTS's request that Infosys produce CEO Salil Parekh's relevant documents in response to CTS RFP Nos. 2–3, 5, 11–14, 21–23, 28–38, 40, and 49–56, App'x, Ex. A1 at 014 -15, 017–20 (CTS's First Set of Requests for Production 03.21.21); Ex. A2 at 031–32 (CTS's Second Set of Requests for Production 04.18.2024), and (2) Infosys's request that Cognizant produce CFO Jatin Dalal's relevant documents in response to RFP Nos. 1, 2, 14, 15, 36, 60, 63– 67, 69, 70, 73–79, 87, 88, 90–95, 121, 133, and 135 to Cognizant TriZetto and corresponding Nos. 5, 8–12, 14, 15, 18–24, 32, 33, 35–40, 64, 76, and 78 to CTS.  *See* App'x 143-227.

**3(e)     A detailed explanation of why agreement could not be reached as to those matters, including all arguments and authorities on which each party relies as to each matter that could not be resolved by agreement.**

The parties explain why an agreement could not be reached, their arguments, and the authorities upon which they rely in separate sections below.

## I.     CTS'S MOTION TO COMPEL PRODUCTION OF SALIL PAREKH'S RELEVANT DOCUMENTS.

**CTS'S POSITION**:

CTS seeks an order compelling Infosys to produce a targeted set of responsive documents from Infosys's Chief Executive Officer Salil Parekh, who has unique information relevant to this case.  Mr. Parekh was directly involved in the alleged conduct regarding Infosys's product Helix, which Infosys injected into this case in its antitrust counterclaims.  Mr.

Parekh's unique, relevant knowledge is ***not in dispute***.  Indeed, despite many pages of argument, Infosys never denies the specific, personal role Mr. Parekh played in the events related to Infosys's Helix product, which Infosys (falsely) claims was stymied by Cognizant. For example, Mr. Parekh personally supervised Ravi Kumar, who Infosys alleges oversaw the development of Helix and then allegedly "began to pull back support" of the project ahead of his departure to Cognizant, "delay[ing] the completion of [] Helix by at least 18 months." Countercl. ¶ 14.  As Mr. Kumar's direct supervisor, Mr. Parekh had a unique contemporaneous perspective on whether those allegations are true.  Importantly, CTS does not seek Mr. Parekh's documents broadly; its requests are narrowly focused on topics for which he is likely to have unique information.  For those requests, Mr. Parekh's documents are indisputably relevant to investigating and refuting Infosys's claims, and Infosys has failed to meet its burden to show his documents should not be produced.  (By contrast, Infosys's request for Cognizant's current CFO Jatin Dalal is more sweeping and largely retreads ground covered by productions from other custodians and non-custodial sources.  *See*, *infra*, at 33.)

This case was originally filed by TriZetto—a subsidiary of CTS—based on Infosys's theft of TriZetto's trade secrets.  *See generally* Dkt. No. 1.  TriZetto alleged, and looks forward to proving, that Infosys breached multiple Non-Disclosure and Access Agreements ("NDAAs") it had entered into with TriZetto, took TriZetto's trade secrets, and used that stolen information in its own competing software and service offerings.  *Id.*  The Court recently denied in full Infosys's motion to dismiss TriZetto's trade-secrets claims, and they will remain a central focus of the case going forward.  *See* Dkt. No. 128.

Caught red handed, Infosys sought to distract from its own wrongdoing by filing retaliatory and—as set forth in Cognizant's pending motion to dismiss, Dkt. No. 78—

irreparably flawed antitrust counterclaims against TriZetto and CTS. These counterclaims named TriZetto's parent company, CTS, as a counterclaim defendant, and include baseless allegations against Infosys's former President and CTS's current CEO Ravi Kumar and two other former Infosys employees—Ravi Kiran Kuchibhotla and Shveta Arora—who held similarly senior positions at Infosys and who have since joined Cognizant. Specifically, Infosys alleges that, starting in 2019, it began developing Helix as a "payor software platform" to "challenge Cognizant's dominance over the healthcare payor software market." Countercl. ¶¶ 8, 12. According to Infosys, Cognizant stymied the development of Helix by poaching three of its executive sponsors: Messrs. Kumar and Kuchibhotla and Ms. Arora. *Id.* ¶ 15. Infosys also alleges that, towards the end of these three executives' tenures at Infosys, they began slow-rolling the development of Helix, purportedly in connection with their departure to Cognizant. *Id.* ¶¶ 83–108. Infosys concludes that these alleged actions by Cognizant unfairly hindered Helix and kept it from flourishing. *Id.* ¶¶ 106–08.

As Cognizant explained in its motion to dismiss, the suggestion that Cognizant selected its CEO in order to spite a rival is wholly implausible. Dkt. No. 78, at 16–18. Mr. Kumar oversees Cognizant's huge portfolio of business units and does not directly oversee TriZetto or have its CEO, Craig Mengert, as his direct report. Moreover, Infosys's suggestion that Cognizant induced Mr. Kumar, or other Infosys employees, to slow the development of Helix while still employed by Infosys lacks any specific allegations. *See id.* at 17–18. Nevertheless, Infosys pressed for discovery on these allegations, including documents from Mr. Kumar, *see* Dkt. No. 109, and accepting these allegations as true for purposes of discovery, the Court expressly ordered that Mr. Kumar be included as a custodian because his document were "relevant to the claims and defenses in this case" and his position as CEO did not "specially

protec[t]" him from document discovery.  Dkt. No. 115.

The same factual predicate exists as to Mr. Parekh—he was both directly involved in the events alleged in Infosys's counterclaims, and his C-Suite title does not protect him from discovery.  Mr. Parekh has been Infosys's CEO since 2018, serving throughout the time period when Helix was developed and allegedly hampered.  During that time, Mr. Parekh was a direct supervisor of Mr. Kumar, who was himself "among the top four Infosys executives," Countercl. ¶ 14.  Mr. Parekh was also Mr. Kuchibhotla's direct supervisor during the relevant period.  As the direct supervisor at Infosys of the former employees Infosys claims undermined Helix, Mr. Parekh's documents are thus uniquely relevant to Infosys's allegations regarding Mr. Kumar's and Mr. Kuchibhotla's job performance with respect to Helix and the impact of their departures on the product.  Given that Helix required "significant internal support to advance, including critical executive-level support," *id..* ¶ 83, Mr. Parekh's documents are also relevant to the company's assessment of Helix's progress, its financial viability, and the level of support the company provided to Helix, and the reasons for its lack of success—all issues put directly in play by Infosys's allegations.

Infosys does not deny that Mr. Parekh is directly implicated by its counterclaims or that he has responsive documents.  Instead, it refuses to make him a custodian because it "already include[d] ample custodians and non-custodial sources covering the entire gamut of Helix, as well as the performance and departures of" Mr. Kumar, Ms. Arora, and Mr. Kuchibhotla. App'x, Ex. A3 at 038 (Infosys's Explanations 07.16.2025).  This argument ignores the unique, decision-making role of Mr. Parekh about the issues *Infosys* inserted into this litigation in its Counterclaim.  Nor should Mr. Parekh's position make CTS's requests unduly burdensome.  As Infosys put it in its motion seeking to compel documents from Mr. Kumar, "[c]ourts in this

Circuit . . . consistently permit document searches for executives when their decision-making is relevant to the parties' claims and defenses."  Dkt. 109 at 1.  And "[r]egardless of whether [a document custodian] is a high ranking corporate official or not," the burden lies with the resisting party to explain why the executive should not be subject to discovery.  Dkt. 115 at 2 (citing *In re DePuy Orthopaedics, Inc. Pinnacle Hip Implant Prods. Liab. Litig.*, 2015 WL 14097187, at *3 (N.D. Tex. Dec. 14, 2015) (alteration adopted)).

Unable to deny the fact that Infosys put Mr. Parekh's documents at issue through its counterclaims, Infosys resorts to distraction, claiming Cognizant is engaged in an improper tit-for-tat exercise.  Specifically Infosys points out that Cognizant identified Mr. Parekh as a custodian only after the Court ordered that Cognizant's own CEO's documents should be produced, and makes much of the fact that Cognizant previously argued in a footnote, *see* Dkt. No. 112, at 7 n.2, that if Mr. Kumar's documents were deemed discoverable then Mr. Parekh's documents should be too (because sauce for the goose is sauce for the gander).  None of this lands.  It's no surprise, given its opposition to producing Mr. Kumar's documents, that Cognizant did not press for Mr. Parekh to be added as a custodian prior to this Court's order explaining that there is nothing "specially protected" about document discovery related to a CEO, *see* Dkt. No. 115, at 2.  But in light of that guidance, and based on Cognizant's continued investigations, it is clear that Mr. Parekh is directly and uniquely relevant and that it is not disproportional or otherwise inappropriate to add them as custodians.  From the perspective of Infosys's antitrust counterclaims, Mr. Parekh is centrally important to the allegations both regarding Helix's development and alleged problems and concerning Mr. Kumar and Mr. Kuchibhotla, whom Mr. Parekh directly supervised.  It was this centrality of Mr. Parekh to Infosys's claims that Cognizant was flagging in the much cited "goose-gander" footnote:  to the

extent Infosys's counterclaims implicate Mr. Kumar, so too do they implicate his superiors and those executives who oversaw Helix.[1]  Notably, in response to this argument from Cognizant, this Court observed that Cognizant's discovery requests "of Infosys's high-ranking executives, including its own CEO, . . . may well be proper under Rule 26 and 34."  Dkt. No. 115, at 3.  Mr. Parekh meets that test, and his documents on the discrete topics for which he has been identified as a custodian should be produced.

### A.  Legal Standard

Under Rule 26(b)(1), "[u]nless otherwise limited by court order, . . . [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).  "Under Rule 26(b)(1), discoverable matter must be both relevant and proportional to the needs of the case—which are related but distinct requirements."  *Samsung Elecs. Am., Inc. v. Yang Kun Chung*, 321 F.R.D. 250, 279 (N.D. Tex. 2017).

"The party resisting discovery must show specifically how each discovery request is not relevant or otherwise objectionable."  *Carr v. State Farm Mut. Auto. Ins. Co.*, 312 F.R.D. 459, 464 (N.D. Tex. 2015).  Importantly, "the mere fact of a [document custodian's] executive status" does not exempt a resisting party from producing that custodian's documents.  Dkt. 115 at 2 (citing *In re DePuy Orthopaedics*, 2015 WL 14097187, at *3 (alteration adopted)).  Neither proportionality nor relevance are affected solely by the requested individual's high-ranking corporate position.  *Id.*

---

[1] Somewhat surprisingly given Infosys's positions with respect to its own custodians, and as explained in depth below, Infosys's demand for Cognizant's current CFO, Jatin Dalal, is a tit-for-tat.  After Cognizant agreed to designate its former CFO as a custodian—who was CFO for the vast majority of the time period covered by Infosys's counterclaims—and to provide additional financial data and documents through the present day, Infosys's only apparent explanation for wanting Mr. Dalal is that he has an elevated title.  *See, infra*, at 40.

### B.  Mr. Parekh's Documents Are Relevant.

The Court should order Infosys to produce the responsive documents from Mr. Parekh because those documents are indisputably relevant to Cognizant's defense against Infosys's counterclaims, and Infosys has not met its burden to show the documents are not proportional to the needs of the case.  *See* Fed. R. Civ. P. 26(b)(1).  Mr. Parekh's documents are relevant to Infosys's counterclaims on multiple grounds.

*First*, Infosys alleges that it launched Helix in 2019 as a "payor software platform" to "challenge Cognizant's dominance over the healthcare payor software market."  Countercl. ¶ 12. Infosys alleges that Helix has remained a key Infosys product and a focus for the company, calling it a "next-generation challenger to the traditional platforms." *Id.* ¶ 14 (internal quotations omitted). As Infosys's CEO since 2018, Mr. Parekh is likely to have firsthand knowledge and documents relevant to these allegations, including proposals and plans for the development of Helix, Infosys's goals and expectations for the project, assessments of its performance, and analyses of its competition, allegedly including Cognizant's Facets and QNXT products.  *See id.* ¶¶ 80 (framing Helix as Infosys's "enter[ring] the healthcare payor software market"), 104 (describing Helix as designed "to compete with Cognizant").

*Second*, Infosys alleges that, in 2022, Cognizant sought to "stymie" Helix and "delay" its launch by recruiting three executives then at Infosys—Mr. Kumar, Mr. Kuchibhotla, and Ms. Arora. *Id.* ¶¶ 13–16, 78–108.  According to Infosys, as these three executives were being recruited to Cognizant, their job performance at Infosys—and on Helix specifically—lagged.  As alleged by Infosys, "Infosys did not allocate new programmer talent to Infosys Helix, hire new personnel for the product, or backfill product support positions for attrition." *Id.* ¶ 100.  In particular, Infosys alleges that Mr. Kumar, then-President of Infosys and "the primary executive sponsor" for Helix, "slowed down materially" Helix's development and rollout. *Id.* ¶¶ 83, 100.  Both Mr. Kumar and

Mr. Kuchibhotla reported directly to Mr. Parekh during the relevant period; it naturally follows that if either was neglecting his duties in an attempt to stall Helix, or otherwise underperforming, Mr. Parekh will have documents so indicating.

For the same reasons, Mr. Parekh should have documents related to the departures of Mr. Kumar and Mr. Kuchibhotla.  *See* Countercl. ¶¶ 92–105.  If, as alleged, Helix's development stalled when these executives announced their departure for Cognizant, and the company viewed the progress as tied to their departures, one would expect to see that in their supervisor's emails. *See id.* ¶¶ 106–08.  Moreover, to the extent that Infosys's more senior leadership believes that Cognizant poached these employees *for the purpose* of stalling Helix, the CEO's documents would likely speak to that conclusion, and would also shed light on the actual impact of their departures on Helix.  *Id.* ¶ 106.  Mr. Parekh's internal documents are especially important because his public statements at that time tell a different story.  On October 11, 2022, as part of its 6-K announcing Mr. Kumar's departure, the Board of Directors (on which Mr. Parekh sat as Managing Director), *see* App'x, Ex. A6 at 068 (Infosys's SEC Form 20-F 06.17.2022); Ex A7 at 100 (Infosys's SEC Form 20-F 06.15.2023), "placed on record their deep sense of appreciation for the services rendered by Ravi Kumar S. for his contributions to the Company."  App'x, Ex. A5 at 064 (Infosys's SEC Form 6-K 10.11.2022).  Two days later, during an October 13, 2022 media conference call, Mr. Parekh responded to a question about Mr. Kumar's departure by saying "Ravi is a good friend. I wish him all the best in his new endeavors."  App'x, Ex. A4 at 054 (Infosys's Media Conference Call Minutes 10.13.2022).  These public statements contradict Infosys's portrayal of Mr. Kumar's departure in its counterclaims, and Mr. Parekh's documents are essential to answering key questions about this period, including whether the Board was unaware as of October 11, 2022, of Mr. Kumar's alleged slow-rolling of Helix, when the Board (and Mr. Parekh personally) became

aware of it, and whether (if it was aware) the Board nevertheless issued this laudatory statement to investors.

*Third*, Infosys alleges that Cognizant has taken other steps to impede Infosys's ability to compete both in selling Helix as a healthcare payor software and in selling IT services. *See, e.g.*, Countercl. ¶¶ 7–9, 18–19. If Helix was as significant an undertaking and as promising a product as Infosys alleges, *see id.* ¶¶ 14, 83, it stands to reason that its top executives would be kept abreast of its progress and any significant hurdles it faced. Mr. Parekh's documents are thus relevant to Infosys's allegations about the purported causes of Helix's allegedly poor performance and will likely address issues such as Helix's weaknesses and competitive conditions in the healthcare payor market.

Although Infosys contends that CTS is seeking a "fishing expedition" into high-level executives' files and spends pages complaining that Cognizant is merely enforcing a retributive "goose-gander" rule, *see*, *infra*, at 17–24, Infosys never denies that Mr. Parekh has relevant documents. In prior meet and confers, Infosys explained only that it "decline[d] to add Salil Parekh as a custodian based on unreasonable cumulativeness and lack of relevance and proportionality"— as Infosys did for each of the seven custodians whom it refused to add in that round of negotiations. *See* App'x, Ex. A3 at 038 (Infosys's Explanations 7.16.2025). These boilerplate assertions are insufficient and contrary to the record. To start, "the party resisting discovery must show specifically how *each request* is not relevant," *Carr*, 312 F.R.D. at 464, and Infosys has failed to provide even a single reason to think that Mr. Parekh's documents are irrelevant, let alone specific reasons for each of the RFPs at issue. Moreover, as explained above, Mr. Parekh's documents are simply not cumulative given his unique role supervising both Mr. Kumar and Mr. Kuchibhotla and in overseeing Infosys during the period of Helix's development. Infosys does not contend either

that any other custodians it has agreed to produce from supervised Mr. Kumar or Mr. Kuchibhotla or that Mr. Kumar's or Mr. Kuchibhotla's own documents will contain their direct supervisor's views on their performance.  Infosys thus fails to meet its burden, as the resisting party, to "show specifically how each discovery request is not relevant."  *Lopez v. Don Herring Ltd.*, 327 F.R.D. 567, 580 (N.D. Tex. 2018).

Infosys also argues that it should not be forced to produce Mr. Parekh's documents because, as CEO, he is "too far removed" from the issues in this litigation.  *Infra*, at 22.  But this argument not only ignores facts on the ground but represents a complete about-face from Infosys's position when it pushed for Mr. Kumar's documents.  *See, e.g.*, Dkt. No. 109, at 7 (arguing that Mr. Kumar's "communications, analyses, and interactions with other Cognizant executives" are relevant to Infosys's counterclaims).  Indeed, Infosys itself alleges that Mr. Kumar, like Mr. Parekh, oversaw many business units aside from Helix, *see* Countercl. ¶ 83 ("In addition, [Mr. Kumar] led Infosys's global delivery organization, independent validation services, engineering services, emerging technology solutions, business intelligence and analytics, cloud and infrastructure, and enterprise package applications service lines."), yet still pushed to include Mr. Kumar.  The Court agreed with Infosys's arguments then and, for the same reason, should order the production of Mr. Parekh's documents now.

Finally, Infosys includes in its section arguments about two CTS RFPs—Nos. 66 and 67—that it argues show that Cognizant's request to include Mr. Parekh is mere "goose gander" and "pretextual."  First, as this brief makes clear, that is wrong; Mr. Parekh is an appropriate custodian because he alone supervised Ravi Kumar, and he has unique knowledge about issues Infosys

13

directly put into this litigation about Mr. Kumar's performance and the reasons for his departure.[2] But in any event, CTS is not moving the Court now to compel production on RFP Nos. 66 and 67 because that is a separate issue from whether Mr. Parekh should be a custodian and there is no ripe dispute on these RFPs. Indeed, during a meet and confer last week, the parties agreed that if CTS did not seek to compel production in response to these RFPs, then there was no reason to waste the Court's time with argument on them now. At *Infosys's suggestion*, CTS agreed to drop any reference to the RFPs from this brief in exchange for Infosys's agreement to drop any argument about them. But after CTS confirmed its agreement to this proposal, Infosys backtracked and now insists on raising RFP Nos. 66 and 67 even though *CTS is not asking for any relief on them*. *See* App'x, Ex. A8 at 131–32 (email correspondence between Matthew Butler and Jariel Rendell 09.13.2025). In short, Infosys's RFP Nos. 66 and 67 arguments are more misdirection and the Court should ignore them.

### C. Infosys Has Not Shown That Adding Mr. Parekh Is Disproportional Or Burdensome.

The party resisting discovery bears the burden of demonstrating that a specific discovery request is not proportional under Rule 26(b)(1). *Carr*, 312 F.R.D. at 463. Relevant factors in weighing proportionality include "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *See* Rule 26(b)(1). Here, Infosys's

---

[2] Infosys's pretext argument makes little sense—it contends CTS served these RFPs to provide a pretextual basis for seeking Mr. Parekh as a custodian, but CTS *is not relying on these RFPs* to argue that Mr. Parekh should be a custodian. Nor are the RFPs pretextual; they seek squarely relevant documents relating to the timing of and reasons for the former Infosys's employees' decisions to seek employment at CTS—an issue Infosys injected into this case. *See, e.g.*, Counterclaim ¶ 106 ("Discovery will reveal . . . the extent to which [Mr. Kumar, Ms. Arora, Mr. Kuchibhotla,] and Cognizant timed their departures from Infosys to harm the advancement of Infosys Helix.").

proportionality objection boils down to an argument that, because it has already identified other custodians concerning Helix and the departure of Mr. Kumar, Mr. Kuchibhotla, and Ms. Arora, it is not proportional to add Mr. Parekh. *See*, *infra*, at 25–26; *see also* App'x, Ex. A3 at 038 (Infosys's Explanations 7.16.2025).

The fact that Infosys has offered other custodians does not change the fact that Mr. Parekh likely has uniquely relevant documents. Infosys contends that its "list already includes ample custodians and non-custodial sources covering the entire gamut of Helix," App'x, Ex. A3 at 038 (Infosys's Explanations 7.16.2025), because its custodian list includes:

> all the current and former executive sponsors of Helix (Ravi Kumar S., Shveta Arora, Venky Ananth, Satish HC, and Narahari Govindaraju), the VP and business head of Helix (Vadiraj Guttal), the head of customer success/pre-sales for Helix (Anuj Parashar), the director of marketing for Helix (Pramod Pratap), the head of compliance for Helix (Smitha Sidharthan), and at least four other persons who were also involved in Helix in different capacities and at different levels (Madhu Venugopal, Renjith Parayarikkal, Aravind Mohanasundaram, and Sivakumar K).

Notably absent from Infosys's list is any custodian that supervised Mr. Kumar, the then-President, during the relevant time period of the counterclaims. *See* Countercl. ¶¶ 80–83. As explained above, because Infosys's counterclaims concern Mr. Kumar's job performance and his departure, it is essential that Infosys provide documents concerning how Mr. Kumar's supervisor viewed his work as it was being done, especially on Helix, and what the discussions were among Infosys's leadership when Mr. Kumar announced his departure. The same is true for Mr. Kuchibhotla. And *none* of the custodians in Infosys's list would have documents covering these issues, including Mr. Kumar and Mr. Kuchibhotla, who would likely not have been privy to intimate conversations among other executives assessing their performance and discussing how things were to proceed once they departed—Infosys does not claim otherwise.

Infosys objects to the absolute volume of discovery that it has had to collect, but it

otherwise provides no elaboration of how CTS's targeted requests to include Mr. Parekh's documents on the specific topics identified above are cumulative or not proportional under the Rule 26(a)(1) factors.  Aside from general complaints about the volume of information *collected*, Infosys does not even suggest that the specific RFPs for which Infosys requests Mr. Parekh are generating too many hits.  This silence is unsurprising.  For example, RFP No. 49 seeks documents regarding Mr. Kumar's and Mr. Kuchibhotla's job performance, but as Infosys itself alleges, Mr. Kumar was "among the top four Infosys executives," Countercl. ¶ 14, so no one else besides Mr. Parekh would have relevant documents about his job performance.  Nor would one expect the volume of documents about his performance to be of so high a volume that they could not be collected.

The closest Infosys comes to raising such an objection is, again, the boilerplate language quoted above—Infosys declined to add them "based on unreasonable cumulativeness and lack of relevance and proportionality."  *See* App'x, Ex. A3 at 038 (Infosys's Explanations 7.16.2025).  But such conclusory arguments are insufficient.  *See First Am. Bankcard, Inc. v. Smart Bus. Tech., Inc.*, 2017 WL 2267149, at *1 (E.D. La. May 24, 2017) ("In this instance, defendant has offered nothing more than a boilerplate proportionality objection, without providing any information concerning burden or expense that the court would expect to be within defendant's own knowledge.").

* * *

In sum, CTS's requests for Mr. Parekh's responsive documents seek discovery essential to defending against Infosys's counterclaims.  Under Rule 26(b)(1), CTS is entitled to these documents because they are relevant to Infosys's allegations concerning Cognizant's purported attempt to hamper Helix through poaching its employees, and proportional to the needs and

importance of this litigation. Infosys has not met its burden as the resisting party to show that these requests are irrelevant, disproportional, or otherwise objectionable—it has not even attempted to articulate more than boilerplate objections to each request. CTS therefore moves to compel Infosys to add Mr. Parekh as a custodian for CTS RFP Nos. 2–3, 5, 11–14, 21–23, 28–38, 40, and 49–56.

**INFOSYS'S POSITION**:

Cognizant's motion attempts to transform the Federal Rules of Civil Procedure into a game of tit for tat. The first time Cognizant ever requested that Infosys collect and search its CEO Salil Parekh's documents was in a footnote to Cognizant's reply brief on its motion for a protective order: "to the extent the Court allows Infosys to proceed with document discovery of" Cognizant's CEO Ravi Kumar, "Cognizant similarly requests discovery of Infosys's high-ranking executives, including its own CEO. Sauce for the goose is sauce for the gander." Dkt. 112, at 7-8 n.2. This goose-gander request occurred after months of custodial negotiation during which Cognizant never suggested Parekh's documents were relevant, much less asked for him to be added as a custodian. Days after the Court denied Cognizant's motion, consistent with its goose-gander footnote, Cognizant requested that Infosys add its CEO, Parekh. But the proper scope of discovery under Rule 26(b)(1) is not determined by goose-gander principles. It is determined by relevance and proportionality. And Cognizant's request fails that test. Not only are Parekh's documents minimally relevant and not proportional under Rule 26(b)(1), they are unreasonably cumulative and duplicative under Rule 26(b)(2)(C)(i) of the ***forty-six*** custodians and ***twenty*** non-custodial repositories Infosys has already agreed to collect and search. Infosys has already collected over ***70 million*** documents and begun searching and reviewing them in response to Cognizant's requests for production. The Federal Rules of Civil Procedure do not require Infosys to collect, search, and

review even more—especially from an individual that Cognizant did not begin to argue was relevant or proportional until after the Court ordered Cognizant to collect and search the files of its CEO.

### A. Background

Infosys and Cognizant proposed initial custodian lists on April 8, 2025. At that time, Infosys identified 23 custodians and Cognizant identified 11. App'x 229-232, 234-36. While the parties negotiated custodians, Cognizant filed a motion for a protective order to avoid producing documents from its CEO, Ravi Kumar. Dkt. 98. Infosys had requested Kumar's documents because of his central role and unique personal involvement in issues relevant to both parties' claims. Dkt. 109, at 6-10. On June 6, 2025, Cognizant filed its reply in support of its protective order motion. Dkt. 112. In that reply, Cognizant included a footnote that "to the extent the Court allows Infosys to proceed with document discovery of Mr. Kumar, Cognizant similarly requests discovery of Infosys's high-ranking executives, including its own CEO. Sauce for the goose is sauce for the gander." *Id.* at 7-8 n.2. Before that footnote, while making many other custodian requests, Cognizant had never requested Infosys's CEO as a custodian.

On June 11, 2025, the Court denied Cognizant's motion for a protective order. Dkt. 115. The Court concluded that discovery from Kumar "is relevant to the claims and defenses in this case and proportional to the needs of the case." *Id*. As to Cognizant's goose-gander footnote, the Court observed that "the universal application of th[e] Federal Rules governing discovery is as far as any goose-gander principle would go here on Cognizant's own motion as to Infosys's discovery requests." *Id.*

On June 17, 2025, following through on its footnoted plan, Cognizant demanded that Infosys add Parekh and "other C-suite-level executives" as custodians. App'x 583-85. Parekh is Infosys's Chief Executive Officer and Managing Director. App'x 265. Cognizant argued Parekh's

documents were relevant to "Ravi Kumar's, Shveta Arora's, and Ravi Kiran Kuchibhotla's job performance," "the resignations and departures of Mr. Kumar and Mr. Kuchibhotla," and "the relative importance of Infosys Helix versus other projects at the company." App'x 583. Cognizant also crafted two new RFPs targeting Parekh and served them on July 9, 2025. App'x 534-36. CTS RFP No. 66 demanded documents related to the purported candidacy of Ravi Kumar for the position of CEO at Infosys, and RFP No. 67 demanded documents related to Infosys's decision to renew Parekh's contract as CEO of Infosys. App'x 534.

The parties were engaged in custodial negotiations months before Cognizant first demanded documents from Parekh and the rest of Infosys's "C-suite." *See* App'x 137 ¶ 9; App'x 229-32, 234-36; App'x 583-85. Cognizant had already served 95 requests for production and identified dozens of custodians that Cognizant claimed were relevant and proportional to their discovery requests. *See id.*; App'x 272-323. Parekh and the rest of Infosys's "C-suite" were not among them. *See* App'x 137 ¶ 9; 317-23.

Infosys agreed to investigate Cognizant's requests to produce responsive documents from multiple senior executives. *See* App'x 590-93. Based on its investigation, Infosys concluded that some of the requested executives were appropriate custodians, but Parekh was not. *See* App'x 036-38. Infosys explained that its custodian list already included ample custodians and non-custodial sources covering the issues Cognizant identified as its basis for adding Parekh. App'x 038. Infosys further explained that its refusal to add Parekh as a custodian was also based on unreasonable cumulativeness, lack of relevance, and proportionality. *Id.* Infosys did not draw an arbitrary line around its "C-suite." Instead, Infosys agreed to add specific C-suite executives, including some of questionable relevance and proportionality in the spirit of compromise: its Chief Financial Officer, Jayesh Sanghrajka; its Chief Delivery Officers, Satish HC and Dinesh Rao; its Chief Risk Officer

and Global Head of Business Finance and Operations Planning, Deepak Bhalla; and its Chief Technology Officer, M. Rafee Tarafdar.

As to the RFPs Cognizant issued targeting Parekh, CTS RFP Nos. 66 and 67, Infosys objected because, among other flaws, they "entirely seek[] information irrelevant to any party's claims or defenses in this Litigation" and are "disproportionate to the needs of the case because . . . [they are] pretextual request[s] solely to advance CTS's 'goose-gander' position." App'x 364-65. Infosys served its objections on August 8, 2025, informing Cognizant it would not produce documents in response to those RFPs. App'x 364-67. After receiving the objections, Cognizant did not even ask to discuss the RFPs and Infosys's objections until after Infosys shared its opening draft of *this* opposition, as part of the joint report process. *See* App'x 369-70, 495-500.

### B. Legal Standard

"Rule 26(b) has never been a license to engage in an unwieldy, burdensome, and speculative fishing expedition." *Carr v. State Farm Mut. Auto. Ins. Co.*, 312 F.R.D. 459, 468 (N.D. Tex. 2015) (quoting *Murphy v. Deloitte & Touche Group Ins. Plan*, 619 F.3d 1151, 1163 (10th Cir. 2010)). "[T]it-for-tat or what is good for the goose, is not a valid basis for discovery of information." *Precision IBC, Inc. v. PCM Cap., LLC*, Civil No. 10-0682-CG-B, 2012 WL 750744, at *6 (S.D. Ala. Mar. 5, 2012). "Under Rule 26(b)(1), [as amended,] discoverable matter must be both relevant and proportional to the needs of the case—which are related but distinct requirements." *Samsung Electronics Am., Inc. v. Yang Kun Chung*, 321 F.R.D. 250, 279 (N.D. Tex. 2017). Under Rule 26(b)(2)(C)(iii), "the court must limit" discovery "outside the scope permitted by Rule 26(b)(1)." So too discovery that "is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i).

### C. Cognizant's Demand for Parekh's Documents Is Outside the Scope of Rule 26(b)(1) and Unreasonably Cumulative and Duplicative.

Cognizant speculates about ways Parekh's documents might be favorable to Cognizant's antitrust defense, *see supra* pp. 10-12, before cursorily listing the requests for production at issue in its motion, *see supra* p. 17. Cognizant has it backward. There is no free-floating right in the Federal Rules to name custodians and demand fishing expeditions through their files. To prevail, Cognizant must show that Infosys's responses to specific Rule 34 requests are deficient without adding Parekh as a custodian for those requests. Cognizant has not made that showing. Nor could it, because the voluminous documents Infosys has already agreed to collect, search, review, and produce are overwhelmingly sufficient to respond to the requests for production at issue in Cognizant's motion. Adding Parekh as a custodian for these requests would be unreasonably cumulative and duplicative and contrary to Rule 26(b)(2)(C)(i), and doing so would be disproportional to the needs of the case.

### 1. Salil Parekh Is Not a Reasonable Custodian for CTS RFP Nos. 2–3, 5, 11–14, 21–23, 28–38, 40, 49–56.

Cognizant demands Infosys add yet another custodian for RFP Nos. 2-3, 5, 11-14, 21-23, 28-38, 40, 49-56. But Infosys has already agreed to produce documents and data from **41 custodians** (out of its total 46) and **eight non-custodial repositories** in response to those particular requests. *See* App'x 325-46. Among these custodians are Infosys's Chief Financial Officer, Jayesh Sanghrajka; Chief Delivery Officers, Satish HC and Dinesh Rao; Chief Risk Officer and Global Head of Business Finance and Operations Planning, Deepak Bhalla; Chief Technology Officer, M. Rafee Tarafdar; and EVP and Head of Healthcare, Venky Ananth. *See id.*

Parekh is not a reasonable custodian for any of the requests. Indeed, in its initial draft of *this* joint report, Cognizant admitted that it wanted Parekh added as a custodian to provide "relevant impeachment." But "evidence 'offered solely for impeachment purposes is not

discoverable.'" *United States v. Planned Parenthood Fed'n of Am., Inc.*, No. 2:21-CV-022-Z, 2022 WL 19006564, at *3 (N.D. Tex. Sept. 8, 2022) (quoting *IceMOS Tech. Corp. v. Omron Corp.*, No. CV-17-02575, 2020 WL 1905736, at *3 (D. Ariz. Apr. 17, 2020)). Belying Cognizant's assertion that Parekh's documents are "essential to defending against Infosys's counterclaims," *supra* p. 16, Cognizant did not ask for Parekh's documents during months of negotiation on custodians. *See* App'x 137 ¶ 9, 317-23. And given that Parekh is Infosys's CEO, Cognizant cannot credibly claim they lacked sufficient information at the *beginning* of custodian negotiations for their RFPs to request Parekh as a custodian. Worse, Cognizant did not begin seeking Parekh's supposedly "essential" documents until it sought to stop the collection of Kumar's documents, wrote its goose-gander footnote, and read this Court's denial of Cognizant's protective order motion. *See id.* "Discovery is not a 'tit for tat' process." *Scelsi v. Habberstad Motorsport Inc.*, No. 19-CV-4315 (FB), 2021 WL 6065768, at *3 (E.D.N.Y. Dec. 22, 2021), *aff'd*, 2022 WL 2222900 (E.D.N.Y. June 21, 2022). Even so, Infosys investigated Cognizant's request, despite its questionable timing, and determined that Parekh was not a reasonable custodian. Instead, Infosys—in the spirit of compromise—agreed to add multiple custodians at all levels of its organization, including high-ranking C-suite leaders whose documents are at best questionably relevant and proportional to the needs of case. *See* App'x 325-45, 375-76.

Parekh is too far removed from the matters at issue here to be a reasonable custodian. This case involves a project, Infosys Helix, within just one of Infosys's numerous business segments. *See* App'x 266, 270. Infosys is a large company with over 320,000 employees. App'x 264. Infosys operates in hundreds of locations across 59 countries spanning every continent except Antarctica. *Id.* Given Parekh's high-level role and the other custodians already on Infosys's list, Parekh is unlikely to have non-duplicative responsive documents. *See Affinity Credit Union v. Apple Inc.*,

No. 22-cv-04174, 2024 WL 3859802, at *2 (N.D. Cal. Aug. 16, 2024) (denying plaintiffs' request for production from Apple's CEO in an antitrust case where plaintiff argued the CEO was involved with the product in dispute at a "strategic level"). Indeed, before its goose-gander about-face, Cognizant conceded as much, requesting frontline custodians because "senior managers at Infosys may not be the best sources for RFPs related to how Infosys developed its Helix product." App'x 317. Infosys has already added all the reasonable custodians—and then some—for the RFPs at issue.

### 2. The Timing and Irrelevance of CTS Request for Production Nos. 66-67 Confirm the Tit-For-Tat Nature of Cognizant's Demand for Parekh as a Custodian.

After demanding Parekh as a custodian following its "goose-gander" footnote, Cognizant served two new RFPs in an effort to justify its demand. *See* App'x 534. But the timing and irrelevance of those RFPs merely confirm that Cognizant's demand for Parekh as a custodian is improper. RFP No. 66 seeks documents related to the purported candidacy of Ravi Kumar for the position of CEO at Infosys, and RFP No. 67 seeks documents related to Infosys's decision to renew Parekh's contract as CEO of Infosys. *See id.*

These speculative requests have no bearing on the issues in this case and constitute a fishing expedition into the decision by Infosys—a publicly held international company—to reappoint Parekh for an additional term as CEO. *See* App'x 364-65. Cognizant's "purported goose/gander rule cannot transform an otherwise irrelevant discovery request to a relevant one." *Macias v. Sw. Cheese Co., L.L.C.*, No. CV 12-0350, 2013 WL 12178136, at *2 (D.N.M. May 1, 2013), *objections overruled,* No. CV 12-350, 2013 WL 11326737 (D.N.M. Oct. 2, 2013).  On May 21, 2022, Infosys's Board of Directors notified investors that Parekh's reappointment for an additional five-year term as CEO and Managing Director would be considered as an ordinary resolution at the company's annual general meeting on June 25, 2022, App'x 540, and the resolution ultimately

passed overwhelmingly, App'x 571. These events have no relevance to this case. As part of its goose-gander approach, Cognizant attempted to equate the relevance of Kumar's hiring as Cognizant's CEO with Infosys's reappointment of Parekh as Infosys's CEO. But Kumar's hiring as Cognizant's CEO is a central event in Cognizant's alleged scheme to harm Infosys Helix. *See* Infosys CC ¶¶ 92-102. Parekh's reappointment is not only unrelated, it does not even appear in Cognizant's complaint or Infosys's counterclaim.[3]

In the end, Cognizant chose to move to compel adding Parekh as a custodian without including RFP Nos. 66 and 67 as part of its justification.[4] *Supra* p. 13. But that does not negate the pretextual nature of those RFPs, which confirms that Cognizant seeks Parekh's documents not for any unique relevance but rather because Cognizant was compelled to produce documents from its own CEO.

### 3. Adding Parekh as a Custodian to the RFPs at Issue Would be Unreasonably Cumulative and Duplicative and Contrary to Rule 26(b)(2)(C)(i).

Rule 26(b)(2)(C)(I) independently forecloses Cognizant's request to add Parekh because doing so would be unreasonably cumulative and duplicative. "Rule 26(b)(2)(C) provides that, '[o]n motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed

---

[3] Even if these RFPs were somehow relevant, Parekh's documents would be the wrong place to look for responsive documents. Any decision about CEO succession and Kumar's purported candidacy would necessarily be made by Infosys's Board of Directors—not Parekh himself. *See* App'x 538-579. Infosys has already agreed to produce all documents prepared for its Board of Directors regarding the job performance, departure, and replacement of Kumar, which will cover any plausibly responsive documents. *Supra* p. 3.

[4] Cognizant asserts that Infosys "*suggest*[ed] . . . [an] agree[ment] to drop any reference to" RFP Nos. 66 and 67 and then "backtracked," *supra* p. 14, but the parties' discussion was about whether Cognizant was moving to compel on those RFPs as part of this joint brief. Infosys simply pointed out that it was Cognizant's decision, as the movant, whether to move to compel on those particular RFPs. Infosys declined Cognizant's proposal to remove every reference to these RFPs from this section given their timing and irrelevance, as explained above.

by these rules or by local rule if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive.'" *Lopez v. Don Herring Ltd.*, 327 F.R.D. 567, 583-84 (N.D. Tex. 2018) (quoting Fed. R. Civ. P. 26(b)(2)(C)(i)). The Court's role in limiting duplicative discovery arises "even without a motion." *Chaput v. Griffin*, No. 3:14-MC-131-G-BN, 2014 WL 7150247, at *5 (N.D. Tex. Dec. 16, 2014). Adding Parekh as a custodian for the RFPs at issue would be unreasonably cumulative and duplicative of the dozens of existing custodians and non-custodial sources. *See* App'x 325-46. The responsive information is already being "obtained from some other source that is more convenient, less burdensome, or less expensive," *Lopez*, 327 F.R.D. at 583-84—namely, from the tens of millions of custodial and non-custodial documents Infosys has already collected and begun to search, review, and produce.

The existing custodians for the RFPs at issue cover the entire gamut of Infosys Helix and the events surrounding Kumar's, Kuchibhotla's, and Arora's departures. *See* App'x 325-46. These custodians include all the current and former executive sponsors of Helix (Ravi Kumar S., Shveta Arora, Venky Ananth, Satish HC, and Narahari Govindaraju), the VP and business head of Helix (Vadiraj Guttal), the head of customer success/pre-sales for Helix (Anuj Parashar), the director of marketing for Helix (Pramod Pratap), the head of compliance for Helix (Smitha Sidharthan), the key finance personnel for Helix (Deepak Bhalla and Gopalakrishnan Ramachandran), the chief product manager for Helix (Smruti Snigdha), and numerous client-facing personnel involved with Helix (e.g., Madhu Venugopal, Renjith Parayarikkal, Aravind Mohanasundaram, and Sivakumar K). *See id.* Documents fully covering Kumar's, Kuchibhotla's, and Arora's performance and departures will be produced from Kumar's, Kuchibhotla's, and Arora's custodial files from their time at Infosys, in addition to non-custodial collections of performance reviews, Board of Director

files, and other sources. *See id.* Infosys is also searching for and producing documents and data on Helix from Teams folders, its project budgeting system, its contract system, its Board of Director files, and other sources. *Id.* Infosys has further agreed to provide extensive data from its project budgeting system and contracts database, which will provide information on Helix's costs and sales. *See id.* Infosys's custodians and non-custodial sources amply cover every relevant issue related to Helix and Cognizant's anticompetitive hiring scheme.

It would be unreasonably cumulative and duplicative to add Parekh to this already massive and burdensome list. *See, e.g.*, *Affinity*, 2024 WL 3859802, at *3 (denying request to add Apple CEO as a custodian because it was "unlikely that [he] ha[d] non-cumulative documents in his possession which warrant[ed] the expense of adding [him] as a custodian"); *Enslin v. Coca-Cola Co.*, No. 2:14-CV-06476, 2016 WL 7013508, at *1 & n.2 (E.D. Pa. May 13, 2016) (denying motion to compel additional custodians where party failed to establish "that ESI in the possession of the additional custodians would be different from, and not simply duplicative of, information that the responding party has already produced"); *see also Enslin v. Coca-Cola Co.*, No. 2:14-CV-06476, 2016 WL 7042206, at *3 (E.D. Pa. June 8, 2016) (denying motion to reconsider the denial of a motion to compel as to two custodians because the moving party "ha[d] not pointed to any evidence to suggest that a search of either of their ESI would produce responsive information that has not already been captured"). Cognizant's claim that "Parekh's unique, relevant knowledge is **not in dispute**," *supra* [], (emphasis in original), is simply incorrect. His documents are **not** uniquely relevant because they would be cumulative and duplicative of the 41 custodians and eight non-custodial repositories Infosys is already searching for the RFPs at issue. *See Fort Worth Employees' Ret. Fund v. J.P. Morgan Chase & Co.*, 297 F.R.D. 99, 107 (S.D.N.Y. 2013) (denying in part a motion to compel additional custodians because the moving party failed "demonstrate

that the additional requested custodians would provide *unique* relevant information not already obtained").

Importantly, "there is no obligation on the part of a responding party to examine every scrap of paper in its potentially voluminous files, and . . . [c]ourts cannot and do not expect that any party can meet a standard of perfection." *Smith v. Garland*, No. EP-23-CV-00390, 2024 WL 4683689, at *9 (W.D. Tex. Nov. 1, 2024) (alteration and omission in original) (quoting *Firefighters' Ret. Sys. v. Citco Grp. Ltd.*, No. 13-373-SDD-EWD, 2018 WL 276941, at *6 (M.D. La. Jan. 3, 2018)). Cognizant fails to "articulate a basis for the Court to find that ESI in the possession of the additional custodians would be different from — and not simply duplicative of — [existing] information." *United States v. Planned Parenthood Fed'n of Am.*, No. 2:21-CV-022-Z, 2022 WL 19009005, at *1 (N.D. Tex. Nov. 17, 2022). Because Cognizant will already receive the information responsive to the RFPs at issue from "a source that would [be] more convenient and less burdensome" (i.e., the voluminous custodial and non-custodial materials already being searched), Rule 26(b)(2)(C)(i) precludes Cognizant's additional demand. *Brown v. Bridges*, No. 3:12-CV-4947-P, 2014 WL 1317553, at *3 (N.D. Tex. Apr. 2, 2014).

### 4. Adding Parekh as a Custodian to the RFPs at Issue Is Not Proportional to the Needs of the Case.

Rule 26's proportionality factors weigh against adding Infosys's CEO as a custodian for the RFPs at issue. The decisive proportionality factors here are (1) "the importance of the discovery in resolving the issues" and (2) "whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). These factors confirm that Cognizant's demand is disproportional.

*First*, adding Parekh as a custodian for the RFPs at issue is not important to resolving the issues because doing so would be cumulative and duplicative. *See supra* pp. 24-27. Moreover,

Cognizant's current argument for Parekh's ostensible importance to the case is contrary to the record. Rather than asking for Infosys's CEO as a custodian during months of regular negotiations, Cognizant waited to request his documents until after it lost its motion for protective order as to Cognizant's own CEO. *See* App'x 137 ¶ 9; App'x 583. Cognizant made clear in its protective order briefing that it would make this demand simply on the basis that "sauce for the goose is sauce for the gander." Dkt. 112, at 7-8 n.2. This disfavored tit-for-tat approach is inconsistent with Rule 26. *See City of Almaty, Kazakhstan v. Ablyazov*, No. 15-CV-05345, 2020 WL 2488179, at *4 (S.D.N.Y. May 14, 2020) ("What is good for the goose is good for the gander . . . . is not what the Federal Rules of Civil Procedure envision."); *Turner v. Nationstar Mortgage LLC*, No. 3:14-CV-1704-L-BN, 2015 WL 12765513, at *2 (N.D. Tex. May 14, 2015) ("The Court does not look favorably upon a 'tit-for-tat' approach to discovery. . . . Nor may a party condition its compliance with its discovery obligations on receiving discovery from its opponent." (quoting *Genentech, Inc. v. Trustees of Univ. of Pa.*, No. C 10-02037, 2011 WL 7074208, at *1 (N.D. Cal. June 10, 2011))).

Looking for a post-hoc justification for its improper tit-for-tat discovery demand, Cognizant now argues that "absent from Infosys's list is any custodian" more senior than "Mr. Kumar, the then-President, during the relevant time period of the counterclaims." *Supra* p. 15. But "mere speculation that one's position as a senior executive might increase the relevance of that individual's files is not a basis for designating that individual as a custodian." *In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.*, No. 17-MD-2785, 2018 WL 1440923, at *2 (D. Kan. Mar. 15, 2018). In any event, Infosys's custodian list already includes numerous high-level executives during the time period of the counterclaims, including five C-suite executives (the Chief Financial Officer, the two Chief Delivery Officers, the Chief Risk Officer and Global Head of Business Finance and Operations Planning, and the Chief Technology

Officer), and other members of Infosys's leadership team, including the EVP and Head of the entire vertical at issue in this case (i.e., healthcare). As discussed above, *supra* pp. 25-26, Infosys has already agreed to stretch the bounds of reasonable discovery under Rule 26 by consenting to dozens of custodians and non-custodial sources to provide a more than sufficient response to the RFPs at issue.

*Second*, the burden and expense of Cognizant's demand heavily outweighs its likely benefit (or rather, duplicative lack of benefit). Infosys has already named **46 custodians** and agreed to search **20 non-custodial repositories.** *See* App'x 375-76. Infosys has further agreed to undertake numerous additional go-get searches and productions. *See* App'x 139 ¶ 20. To fulfill these obligations, Infosys has already conducted over **115 collections**, totaling approximately **20TB of data**. App'x 379 ¶ 3. This data consisted of over **70 million total documents**, with over **25 million unique documents**, including over **11 million emails**, over **1 million spreadsheets**, over **700,000 PDFs**, and over **400,000 instant or text message**s. *Id.* Based on the average number of pages of the various types of documents in Infosys's collection, the estimated page count is **over 90 million**. *Id.* The estimated height if they were to be printed and stacked would be nearly 5.7 miles tall—reaching the cruising altitude of a commercial airliner. *See id.* Adding Parekh's documents would increase Infosys's already high burden because his documents, though duplicative, would still need to be collected, processed, and hosted—likely for years through the conclusion of trial and appeal. Moreover, although both parties are using technology assisted review (TAR), the number of documents requiring manual review will still rise into the hundreds of thousands because of documents that are unsuitable for TAR or that need to be reviewed for privilege. *See* App'x 379 ¶ 4.

*Third*, the remaining proportionality factors are either neutral or insufficient to justify Cognizant's demand: (1) the important issues at stake in this case do not outweigh the undue burden of collecting, searching, reviewing, and producing the cumulative documents at issue; (2) even with a high amount in controversy and sophisticated parties with significant resources, the prohibition on unduly burdensome and unreasonably cumulative discovery still applies; and (3) the parties' relative access to the information is neutral because Cognizant is already receiving the non-duplicative information responsive to its requests from the voluminous documents Infosys has already collected and is searching, reviewing, and producing.

Thus, Cognizant's demand fails the proportionality calculation mandated by Rule 26(b). *See, e.g.*, *Veroblue Farms USA Inc. v. Wulf*, No. 3:19-CV-764-X, 2022 WL 1644442, at *15 (N.D. Tex. May 23, 2022) (finding that the burden of preparing a witness to testify on a particular topic outweighed the likely benefit of such testimony where that testimony had little importance to resolving the issues in the matter).

\* \* \*

Contrary to Cognizant's goose-gander approach, discovery in federal court is not a game of tit for tat. Under Rule 26(b)(1), there is no basis to add Parekh as yet another custodian to the RFPs at issue because relevance and proportionality are missing. And under Rule 26(b)(2)(C)(i), adding Parekh is not permitted because his documents would be unreasonably cumulative and duplicative, and Cognizant is already receiving from existing custodial and non-custodial sources the non-duplicative information responsive to its requests. Accordingly, Infosys asks the Court to deny Cognizant's motion.

## II.    INFOSYS'S MOTION TO COMPEL PRODUCTION OF JATIN DALAL'S RELEVANT DOCUMENTS.

**INFOSYS'S POSITION**:

This dispute is about one custodian—Cognizant's Chief Financial Officer ("CFO"), Jatin Dalal—whose central financial role squarely implicates key issues in the case, including the economic value of Cognizant's purported trade secrets; the measurement of Cognizant's purported damages; the extent of Cognizant's monopoly power, pricing, and profits; and Cognizant's underinvestment in its QNXT and Facets software. Cognizant has not disputed the relevance of Dalal's documents but has objected to production on proportionality grounds. As Infosys explains below in more detail, that objection fails.

### A.    Background Relevant to Dispute

Jatin Dalal is CTS's Chief Financial Officer ("CFO"). App'x 382-84. In this role, Dalal "oversees the company's worldwide financial planning and analysis, accounting and controllership, tax, treasury and internal audit, corporate development investor relations and enterprise risk management functions." *Id.* He has held this role since December 2023. *Id.*

Infosys identified Dalal as a necessary custodian because of his unique role in financial issues and finance-related communications relevant to this case. App'x 386-87. As to Cognizant's claims against Infosys, Dalal's documents are relevant to Cognizant's purported damages because they will address the value of Cognizant's purported trade secrets. *See, e.g.*, Cognizant Complaint, ECF No. 1 ("Cognizant Compl.") ¶¶ 68, 81, 151, 152. As to Infosys's counterclaims, Dalal's documents are relevant to Cognizant's antitrust liability and Infosys's damages because they will address Cognizant's monopoly profits, monopolistic intent, monopoly pricing, underinvestment in QNXT and Facets, and revenue captured from Infosys through anticompetitive conduct, in addition to Cognizant's financial strategy, market share, and anticompetitive conduct in the

Relevant Markets. *See, e.g.*, Infosys Counterclaim, ECF No. 46 ("Infosys CC") ¶¶ 10, 19, 78, 109-131, 139-142, 152, 162, 173, 184, 194, 205.

Dalal's public statements confirm his detailed knowledge and personal involvement in financial matters that are central to this litigation. For example, consistent with Infosys's allegations about Cognizant's dominance in the Relevant Markets, Dalal boasted to investors in October 2024 that "Health Sciences was our strongest segment, growing 7.6% year-over-year in constant currency" and "clients continue to seek our TriZetto platform solution for modern scalable cloud solutions." App'x 395. Then, earlier this year, he confirmed to investors that Cognizant's growth in healthcare accelerated to "more than 10% year-over-year" amid "broad-based strength." App'x 415. At CTS's annual "Investor Day" summit this year, Dalal personally presented details of CTS's accelerating bookings, revenue, and margins. *See* App'x 430-35.

Infosys requested that Cognizant produce Dalal's responsive documents because he is "a highly relevant and proportional custodian as to Cognizant's anticompetitive dominance and the value of, and purported damages related to, Cognizant's purported trade secrets; his documents will be particularly relevant to demonstrating Cognizant's monopoly profits and underinvestment in QNXT and Facets, monopoly power, revenue, costs, profits, pricing, and financial strategy and performance related to the Relevant Markets, which will relate to Infosys's antitrust claims and defenses against Cognizant's trade-secret and other claims." App'x 386-87. Cognizant did not dispute Dalal's relevance but objected to adding him based on proportionality. *See id.*

Given Dalal's personal knowledge and role as CTS's current CFO, his documents are responsive to key requests, including those that seek:

- Documents related to the value of Cognizant's purported trade secrets and confidential information, the purported economic harm and damages associated with Cognizant's allegations that Infosys misappropriated purported trade secrets and confidential information, Cognizant's monopoly profits and underinvestment in QNXT and Facets, and Cognizant's revenue, costs, profits, pricing, and financial strategy in the Relevant Markets (RFP Nos. 1, 2, 14, 15, 36, 77, 78, 90, 91, and 93 to Cognizant TriZetto and corresponding RFP Nos. 22, 23, 35, 36, and 38 to CTS); and

- Documents related Cognizant's strategic approach in the healthcare payor software and IT services markets, and its monopolistic intent as to QNXT, Facets, and related healthcare IT services (RFP Nos. 60, 63-67, 69, 70, 73-76, 79, 87, 88, 90-95, 121, 133, and 135 to Cognizant TriZetto and corresponding RFP Nos. 5, 8-12, 14, 15, 18-21, 24, 32, 33, 35-40, 64, 76, and 78 to CTS).

App'x 143-227.

### B. Legal Standard

A party seeking discovery may move for an order compelling production against an opposing party that has not complied with its obligations to produce documents requested under Federal Rule of Civil Procedure 34. *See* Fed. R. Civ. P. 37(a)(3)(B)(iii)-(iv); *Lopez v. Don Herring Ltd.*, 327 F.R.D. 567, 574 (N.D. Tex. 2018). "Under Rule 26(b)(1), discoverable matter must be both relevant and proportional to the needs of the case—which are related but distinct requirements." *Samsung Elecs. Am., Inc. v. Yang Kun Chung*, 321 F.R.D. 250, 279 (N.D. Tex. 2017). "To be relevant under Rule 26(b)(1), a document or information need not, by itself, prove or disprove a claim or defense or have strong probative force or value." *Id.* at 280. Proportionality, in turn, depends on the following factors: "[1] the importance of the issues at stake in the action, [2] the amount in controversy, [3] the parties' relative access to relevant information, [4] the parties' resources, [5] the importance of the discovery in resolving the issues, and [6] whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

"The party resisting discovery must show specifically how each discovery request is not relevant or otherwise objectionable." *Carr*, 312 F.R.D. at 464. That burden falls "on the party resisting discovery . . . in order to successfully resist a motion to compel." *TNA Australia Pty Ltd. v. PPM Techs., LLC*, No. 3:17-CV-642-M, 2018 WL 2010277, at *11 (N.D. Tex. Apr. 30, 2018).

### C. Cognizant Should be Ordered to Produce Relevant Documents from Jatin Dalal.

Dalal is a necessary custodian for the following Infosys RFPs: Nos. 1, 2, 14, 15, 36, 60, 63-67, 69, 70, 73-79, 87, 88, 90-95, 121, 133, and 135 to Cognizant TriZetto and corresponding Nos. 5, 8-12, 14, 15, 18-24, 32-40, 64, 76, and 78 to CTS. Dalal's predecessor, former CFO Jan Siegmund, is—appropriately—a custodian for these RFPs. There is no other finance-related custodian for these RFPs. Thus, without Dalal, there is *no* custodian for these RFPs covering key finance-related matters from December 2023 through the present—a critical period for both Cognizant's trade-secret claims and Infosys's antitrust counterclaims. Infosys's request for responsive documents from Dalal is both relevant and proportional.

#### 1. Dalal's Documents are Relevant to Both Parties' Claims.

Dalal has personal knowledge and occupies a central role related to both parties' claims. As Cognizant's CFO, Dalal "drive[s] Cognizant's growth agenda," overseeing "the company's worldwide financial planning and analysis, accounting and controllership . . . functions." App'x 382, 448. No other custodian identified by Cognizant currently oversees Cognizant's financial planning and analysis—or has done since December 2023. Given his unique role in financial matters central to this case, Dalal's documents are highly relevant to both Cognizant's trade-secret claims and Infosys's antitrust claims. Cognizant does not object to the inclusion of Dalal based on relevance. *See infra* p. 40.

On the trade-secret claims, Dalal's documents are highly relevant to the value of Cognizant's purported trade secrets and the financial remedies Cognizant seeks in this case. To succeed on its trade-secret claims, Cognizant must prove that its purported trade secrets have "independent *economic value* from being not generally known or readily ascertainable through proper means." 18 U.S.C. § 1893(3) (emphasis added); *see also In re Union Pac. R. Co.*, 294 S.W.3d 589, 592 (Tex. 2009) (whether a trade secret exists under Texas law depends in part on "the value of the information to the business and to its competitors"). It is thus highly relevant how Cognizant's CFO internally discusses and measures the economic value of its purported trade secrets—or fails to do so. Federal Rule of Civil Procedure 26(b)(1) entitles Infosys to obtain this discovery to test Cognizant's allegations that its purported trade secrets "provide[] substantial economic value" and "derive[] independent economic value from not being generally known." Cognizant Compl. ¶¶ 68, 81.

Cognizant does not argue that Dalal lacks unique documents on the economic value of Cognizant's trade secrets. Instead, Cognizant notes that it has agreed to produce documents from multiple sources including four executives at CTS's subsidiary, Cognizant TriZetto. *See infra* p. 42. Cognizant further notes that Senior Vice President and Business Unit Head – Healthcare Payer Sanjay Subramanian's documents "are likely to reflect [CTS's] analyses" of "the value of [the purported] intellectual property." *Infra* p. 43. But none of these custodians oversees CTS's financial strategy, let alone occupies a finance role. Cognizant concedes the documents of its former CFO and Dalal's predecessor, Jan Siegmund, are highly relevant: they are "likely to address (to the extent they exist) any funding decisions by CTS regarding QNXT and Facets." *Infra* p. 43. But, of course, Siegmund's documents could not possibly continue to address these critical funding decisions *after* Dalal took over his position in 2023. It is implausible that documents from

Cognizant's CFO from 2020-2023 include information relevant to Infosys's ability to test Cognizant's trade secret claims but documents from Cognizant's CFO from December 2023 to the present—including the time when Cognizant filed this case—do not. Indeed, Cognizant seeks financial remedies in this case that directly implicate Dalal's recent documents, including "restitution," "actual damages," and "damages measured as a reasonable royalty." Cognizant Compl. ¶¶ 151, 152.

On the antitrust claims, Dalal's documents are highly relevant to Cognizant's monopoly power—as demonstrated through supracompetitive revenue, prices, and profits—and underinvestment in QNXT and Facets, among other issues. Representing "the power to control prices," *U.S. v. E.I. du Pont de Nemours & Co.*, 351 U.S. 377, 391 (1956), monopoly power may be proved by showing supracompetitive prices. "[E]vidence of supracompetitive pricing is direct proof of the actual exercise of monopoly power." *CoStar Grp., Inc. v. Com. Real Est. Exch., Inc.*, 141 F.4th 1075, 1087 (9th Cir. 2025). Infosys directly alleged Cognizant's monopoly power through supracompetitive pricing for QNXT and Facets. *See* Infosys CC ¶¶ 10, 19. In its motion to dismiss, Cognizant acknowledged the relevance of supracompetitive pricing and argued (incorrectly) that Infosys failed to allege anticompetitive "price increases" and "high prices to establish direct evidence of monopoly power." Cognizant Mem. in Support of Mot. to Dismiss, ECF No. 78 ("Cognizant MTD"), at 10, 12; *see also id* at 9. Yet now, by refusing to produce Dalal's documents, Cognizant attempts to deprive Infosys of the very evidence it needs to help prove that Cognizant's prices are supracompetitive. Dalal's documents are particularly important to Infosys's ability to show that Cognizant has leveraged its control of QNXT and Facets in the payor software market to extract monopoly profits while underinvesting in QNXT and Facets to

the detriment of competition in that market. *See* Infosys CC ¶¶ 10, 19, 78, 109-131, 139-142, 152, 162, 173, 184, 194, 205.

Cognizant argues that its existing custodians are likely to have "documents concerning Facets, QNXT, and related IT services that discuss market and competition analyses, pricing and finances, marketing, and customers relations." *Infra* p. 44. While those documents are undoubtedly relevant and should be produced, they are insufficient to respond to the RFPs at issue—and certainly do not render Dalal's documents unreasonably cumulative. Contrary to Cognizant's argument, producing documents only from Dalal's predecessor is insufficient. As Infosys has alleged, Cognizant's anticompetitive actions, including its exclusion of competition and maintenance of supra-competitive prices, are *ongoing*. Infosys CC ¶¶ 10, 19, 124-131, 19-143, 147-153. In other words, Infosys's antitrust counterclaims concern CTS's monopoly power and pricing throughout Dalal's *entire* tenure as CFO of CTS—going on two years since Siegmund left the company. Moreover, Dalal's tenure covers Cognizant's alleged anticompetitive scheme to hire Ravi Kiran Kuchibhotla from Infosys in 2024 to harm Infosys Helix. *See* Infosys CC ¶¶ 103-105.

For good reason, Cognizant has not contested that Dalal's documents are relevant. Indeed, Cognizant's Federal Rule of Civil Procedure 26(e) disclosures acknowledged the relevance of key documents Infosys seeks from Dalal's files, including "Documents related to Cognizant's financial performance" and "Documents related to assessments of prices in relevant segments." App'x 450-56. Infosys appropriately requests Dalal's documents in response to the RFPs at issue because they are highly relevant to the claims and defenses in this case.

### 2. Producing Relevant Documents from Dalal Is Proportional to the Needs of the Case.

All six proportionality factors weigh in favor of producing Dalal's documents. Cognizant concedes that "the first four factors weigh in favor of robust discovery," but contests the final two.

*Infra* []. In reality, the final two factors weigh decisively in favor of adding Dalal as a custodian for the RFPs at issue. *See* Fed. R. Civ. P. 26(b)(1).

*First*, Dalal's documents are important to resolving issues including the economic value of Cognizant's purported trade secrets, the extent of Cognizant's purported damages, the supracompetitive nature of Cognizant's pricing in the relevant markets, and Cognizant's underinvestment in QNXT and Facets. Dalal occupies a unique role at CTS and would be the only current finance employee on Cognizant's custodian list, making it unlikely that his documents would simply duplicate other custodians' documents. Admitting the relevance of Dalal's documents to the trade-secret issues, Cognizant argues they are "minimally relevant and cumulative of the more than 680,000 documents Infosys will already receive in response to its request for production on such topics." *Infra* p. 43. This argument does not withstand scrutiny. To begin with, the 680,000 number apparently refers to the hit count for documents with families for all the RFPs at issue, not just the trade-secret RFPs, and Cognizant apparently assumes that every hit will be responsive and produced—contradicting its simultaneous argument that many hits are "false," *infra* p. 41. More importantly, those hits include an untold number of documents from Dalal's predecessor—a key source that cuts off in 2023 and can only be replaced by Dalal himself. Cognizant's argument that other current custodians' documents are sufficient is unpersuasive, especially given that Cognizant has conceded the proportionality of producing Dalal's predecessor's documents.

*Second*, the likely benefit easily outweighs the burden of document discovery given Dalal's personal knowledge and unique involvement in central issues in the case, including the independent value (or lack thereof) of Cognizant's purported trade secrets and Cognizant's monopoly profits, monopoly power, and underinvestment in QNXT and Facets. Cognizant's

burden argument that Dalal's documents are likely to contain false positive hits is unsupported. Without sharing a hit count, Cognizant cites a single search string that it claims will produce false hits if applied to Dalal's documents. *Infra* p. 46. But Cognizant already agreed to apply the same string to similarly situated custodians—including its CEO Kumar—without expressing any concern that the string was generating false hits or "sweep[ing] in documents . . . beyond Cognizant's healthcare offerings," *id. See* App'x 462-91. Moreover, after Infosys first learned— from Cognizant's draft of this joint report—of Cognizant's false-hit concerns as to Dalal's documents, Infosys reiterated its willingness to make reasonable revisions to any search strings causing false-hit concerns. *See* App'x 463. Indeed, throughout the discovery process, Infosys has diligently worked with Cognizant to revise search terms that produce inordinate hit counts. *See* App'x 462-91. In any event, a speculative burden imposed on Cognizant from false positive hits in Dalal's documents is not a *disproportionate* one given the nature of this case and Cognizant's use of TAR. *See, e.g.*, *In re Diisocyanates Antitrust Litig.*, No. MC 18-1001, 2021 WL 4295729, at *10-11 (W.D. Pa. Aug. 23, 2021), *report and recommendation adopted*, No. MC 18-1001, 2021 WL 4295719 (W.D. Pa. Sept. 21, 2021) (finding search terms resulting in large hit counts were not disproportionately burdensome because (1) the high hits may actually indicate that most of the documents "bear some relevance," (2) the producing party was using technology assisted review ("TAR"), so the precision of the search terms was relatively less important than recall, and (3) the allegations of antitrust conspiracy in the case suggested that broader search terms may be warranted).

As the successor to an existing custodian covering a key period and key issues for both sides' claims, Dalal is a necessary custodian for the RFPs at issue. Cognizant's proportionality arguments fail. *See Carr*, 312 F.R.D. at 468.

* * *

In sum, Infosys's request for Dalal's documents is narrow and reasonable. To deny access would allow Cognizant to shield evidence directly addressing a central part of its damages theories (i.e., the economic value of its purported trade secrets) and its defense of the antitrust claims (e.g., whether its profits are the monopolistic product of supracompetitive pricing). Given the relevance of Dalal's documents and the proportionality of requiring Cognizant to produce them in response to the RFPs at issue, Infosys respectfully asks the Court to grant its motion to compel.

**COGNIZANT'S POSITION**:

Infosys's request to add Cognizant's CFO, Jatin Dalal, as a custodian elevates form over substance—it offers no reason to do so other than his current title. Where Infosys cannot identify any specific involvement by Mr. Dalal in any of the events giving rise to this case, its request should be denied. To be clear, Cognizant does not object to adding Mr. Dalal because of his C-Suite title; instead, Cognizant maintains that any minimal relevance Mr. Dalal has to Infosys's claims does not justify the burden of adding him, particularly in light of the vast amount of custodial and noncustodial documents and data Cognizant has already agreed to produce on financial topics.

Mr. Dalal joined Cognizant as its CFO in December 2023; his tenure postdates almost all of the events described in Infosys's antitrust counterclaims, which focus on 2014–2023. Mr. Dalal's documents are thus unlikely to be uniquely (if at all) relevant to the allegations in Infosys's counterclaims. Further, Cognizant has agreed to provide specific, targeted information in response to each of the topics that Infosys suggests Mr. Dalal's documents will touch, including financial data, Board-level documents, and custodial documents from Jan Siegmund, the company's CFO

from 2020 to 2023, much of the period covered by Infosys's antitrust counterclaims.

Based on Infosys's latest search terms for the 57 RFPs for which it requests Mr. Dalal, these existing sources will result in over 230,000 unique hits and over 680,000 documents with families. Adding Mr. Dalal as a custodian will inflate these hit counts even further, primarily with false positives given the lack of overlap between his tenure and the events alleged in the counterclaims. Adding Mr. Dalal will thus provide no (or minimal) unique relevant information and is not proportional to the needs of the case or the burden associated with adding yet another finance-related custodian.

In this way, Infosys's request to add Mr. Dalal is categorically different from CTS's request to add Mr. Parekh. CTS's request is based on the direct involvement Mr. Parekh had in Infosys's antitrust allegations, and CTS tailored the list of RFPs for him to only those most relevant to his experience. And as explained above, Infosys neither denies that involvement nor contends that any other custodian it has agreed to add played the same role as Mr. Parekh or even that others would be more likely to have documents—to the contrary, Infosys has refused to produce responsive documents altogether. By contrast, Infosys's request for Mr. Dalal is based purely on generic assertions that he must have some relevant documents because he is the current CFO. But for each category of documents Infosys says it wants from Mr. Dalal, Cognizant has already identified custodians or sources from which Infosys will get *exactly that information*. Accordingly, the Court should deny Infosys's motion.

### A. Cognizant Has Already Offered Custodial and Non-Custodial Sources with Documents Relevant to Infosys's Requests.

Infosys argues that Mr. Dalal's documents will be "highly relevant to both Cognizant's trade-secret claims and Infosys's antitrust claims," *supra*, at 34, because they speak to "Cognizant's anticompetitive dominance and the value of, and purported damages related to,

Cognizant's purported trade secrets"; "Cognizant's monopoly profits and underinvestment in QNXT and Facets"; and "monopoly power, revenue, costs, profits, pricing, and financial strategy and performance related to the Relevant Markets," citing 57 RFPs for which it alleges Mr. Dalal will have responsive documents.  *See* App'x, Ex. B20 at 386–388 (Infosys Final Discovery Proposal 07.18.2025); *see also*, *supra*, at 32–33.  To date, Cognizant has offered over 30 custodians in response to these RFPs, and Infosys's current proposed search terms result in over 230,000 hits (and over 680,000 documents including family members) for them.  Cognizant offered these custodial and non-custodial sources—including custodial documents from Cognizant's former CFO Mr. Siegmund, who was in that role for the vast majority of the time covered by Infosys's claims—because they specifically address the topics raised by Infosys, for which it now seeks Mr. Dalal's documents.  Infosys's arguments fail to establish that the burden of collecting, reviewing, and producing unique relevant documents from Mr. Dalal's files is proportional to the needs of the case in light of the vast amount of material Cognizant has already agreed to produce.

**Trade Secrets.**  Infosys contends that it is "highly relevant how Cognizant's CFO internally discusses and measures the economic value of its purported trade secrets" because such information will allow Infosys to test Cognizant's valuations and claims for actual damages, restitution, and a royalty.  *Supra*, at 35.  Mr. Dalal's documents are unlikely to shed any unique light on these issues given the custodial and non-custodial sources that Cognizant has already agreed to produce regarding its trade secrets.  To start, Cognizant has already offered the top executives at TriZetto, which is the subsidiary within CTS that oversees Facets and QNXT—TriZetto's CEO Craig Mengert, Chief Service Officer John Wilson, Chief Operating Officer Michael Pierce, and Assistant Vice President and Head of Markets Matt Dziedzic.  To the extent

42

such documents exist, these executives' files will contain TriZetto's analyses of the value of Facets, QNXT, and the associated trade secrets.  Cognizant has also agreed to produce document discovery from Sanjay Subramanian (Sr. VP & Business Unit Head – Healthcare Payer), who works with Mr. Mengert to oversee the healthcare payor segment both for IT services and healthcare payer software, like Facets and QNXT.  To the extent that CTS (rather than TriZetto) tracks the value of that intellectual property, Mr. Subramanian's documents are likely to reflect such analyses, given his leadership over the healthcare division.

Cognizant has also agreed to produce comprehensive financial data from TriZetto and CTS, which will clearly show Cognizant's investments in, and profits from, these platforms. Moreover, to the extent that custodial documents are necessary to supplement data on this topic or to show how Cognizant evaluates QNXT and Facets in light of these data, Cognizant has agreed to include as a custodian its CFO from 2020 to 2023, Jan Siegmund, whose documents are likely to address (to the extent they exist) any funding decisions by CTS regarding QNXT and Facets.

Compared to these other sources of information about the relevant trade secrets, Mr. Dalal's documents are minimally relevant and cumulative of the more than 680,000 documents Infosys will already receive in response to its request for production on such topics.  Tellingly, Infosys points only to Mr. Dalal's position as CFO and to two high-level public statements about growth in Cognizant's Health Sciences segment and continued demand for TriZetto's products as evidence of his relevance.  *See, supra*, at 31–32.  Neither Mr. Dalal's title nor these public statements demonstrates that Mr. Dalal's documents are likely to have useful, non-duplicative information for assessing the value of Facets, QNXT, and the associated trade secrets at issue in this litigation.  That is particularly so given the documents and financial data Cognizant has already agreed to produce from its former CFO, from TriZetto's leadership, and from CTS's

healthcare segment's leadership.

Infosys contends that, because Cognizant has agreed to produce documents from its former CFO, Jan Siegmund, then Cognizant must produce documents from its *current* CFO—asserting that, absent Mr. Dalal, there is "*no* custodian for these RFPs covering key finance-related matters from December 2023 through the present." *See*, *supra*, at 34. That is false. Cognizant has agreed to produce documents from multiple high-level custodians who would be privy to "key finance-related matters" through the present, as well as from non-custodial sources such as Board-level documents and financial data. Infosys's demand is "a request to somehow ensure that every single potentially responsive document (no matter how cumulative or burdensome to obtain) should be produced," *Firefighters' Ret. Sys. v. Citco Grp. Ltd.*, 2018 WL 276941, at *6 (M.D. La. Jan. 3, 2018), but courts have never allowed such a demand.

**<u>Antitrust.</u>**  Infosys also contends that Mr. Dalal's documents are relevant to prosecuting its antitrust counterclaims—specifically, to establishing Cognizant's allegations concerning market power, supracompetitive pricing, and leveraging Facets and QNXT to gain IT services customers. *See, supra*, at 32–33; App'x, Ex. B20 at 386–388 (Infosys Final Discovery Proposal 07.18.2025). Many of these topics are covered by the same custodial and non-custodial sources noted above. The top executives at TriZetto (Messrs. Mengert, Wilson, Pierce, and Dziedzic) and the head of CTS's healthcare segment (Mr. Subramanian) are all likely to have documents concerning Facets, QNXT, and related IT services that discuss market and competition analyses, pricing and finances, marketing, and customers relations. But to the extent Infosys seeks high-level assessments of these topics by top executives, Cognizant is already producing documents from its current CEO (Mr. Kumar), its former CEO (Brian Humphries), its former CFO (Mr. Siegmund), and its Chief Strategy Officer (Mr. Kuchibhotla), as well as a non-custodial collection

44

of Board-level documents. These custodians' documents and Board-level documents are likely to contain any enterprise-level discussions of the company's financial position, opportunities to leverage Facets and QNXT, and position within the relevant markets.

Against this backdrop, Infosys's insistence on adding Mr. Dalal as a custodian is strange. He joined Cognizant shortly before the counterclaims were filed, in December 2023, and is thus unlikely to have many (if any documents) discussing the early development of Helix or any of the program's difficulties alleged in the counterclaims. Countercl. ¶¶ 106–08. He therefore is unlikely to have any substantial number of unique, relevant documents related to Infosys's antitrust claims.

### B. Infosys's Request for Mr. Dalal Is Not Proportional.

Under Rule 26(b)(1), a party's request for document production must be "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). "Rule 26(b) 'has never been a license to engage in an unwieldy, burdensome, and speculative fishing expedition.'" *Crosby v. Louisiana Health Serv. & Indem. Co.*, 647 F.3d 258, 264 (5th Cir. 2011) (citation omitted).

Cognizant agrees that the first four factors weigh in favor of robust discovery in this case. But even a significant case does not license "speculative fishing expedition[s]," *id.*, and Infosys's request to add Mr. Dalal fails under the final two Rule 26(b)(1) factors. Adding Mr. Dalal as a custodian is disproportionate to the needs of this litigation given the minimal "importance of the [additional] discovery" to resolving the issues identified by Infosys when compared to the existing information Cognizant has agreed to produce, and the burden of adding his documents, which are

likely to contain many false positives, "outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

Based on the custodians that Cognizant has already agreed to produce, Infosys's latest proposed search terms hit on over 1.1 million documents (and over 2.8 million documents including family members) from over forty custodians, as well as numerous non-custodial sources. And Infosys's search terms for the RFPs that it wants Mr. Dalal added for already hit on 680,000 documents. Adding Mr. Dalal will only increase this burden by introducing a high rate of false positive hits given the overlap between Infosys's financial search terms and the topics addressed in Mr. Dalal's documents. For example, Infosys's proposed search terms for CTS RFP No. 40 (TriZetto RFP No. 95), which seeks documents from Cognizant relating to "any complaint or concern about the price or quality of Your Relevant Products," include "(QNXT OR facets OR consult* OR ADM OR testing OR "IT services" OR pay?r OR software OR "proprietary software" OR "information technology services") w/20 (customer OR client OR Aetna OR Ameritas OR "blue cross" OR "blue shield") w/20 (complain* OR feedback OR concern* OR comment* OR say* OR said OR told OR tell* OR communicat* OR convey*) w/20 (price* OR cost* OR quality OR high OR prohibitive OR expensive)." These search terms will sweep in documents from Mr. Dalal's files relating to topics beyond Cognizant's healthcare offerings, including any "feedback" or "comment" from a "customer" or "client" discussing the "price," "cost," or "quality" of "software" or "information technology services" from across CTS's portfolio that spans more than a dozen non-healthcare industries.

Infosys downplays this burden argument, suggesting that the 680,000 hits are not a big deal because they are likely not all responsive and "an untold number of documents" will be from Dalal's success, Mr. Siegmund. *See*, *supra*, at 38. This argument sits at odds with Infosys's own burden objections, which focus on *all collections* for *all custodians*, rather than the narrow hit

counts for the RFPs for the custodian at issue.  *See*, *supra*, at 29.  Although Mr. Siegmund's documents "cut[] off in 2023," *see*, *supra*, at 38, so do all but a few stray allegations in Infosys's counterclaims, and Cognizant has agreed to produce documents from other custodians and non-custodial sources that will address financial issues after Mr. Siegmund's departure.  Finally, Infosys writes off Cognizant's concern with false hits, noting that Cognizant did not object to the search string for RFP 40 to CTS (RFP 95 to TriZetto) when it was applied to other custodians' documents.  *See*, *supra*, at 39.  This objection betrays the fundamental problem with Infosys's position, however, because unlike the other custodians for whom Cognizant did not object, Mr. Dalal is a new arrival whose documents are far more likely to generate noise than useful information.  That Infosys cannot see the difference is precisely the problem.

Because Mr. Dalal's documents are unlikely to provide much if any unique information, Infosys's demand to add him as a custodian is disproportionate to the needs of the case.  *See United States v. Planned Parenthood Fed'n of Am.*, 2022 WL 19009005, at *1 (N.D. Tex. Nov. 17, 2022) (requesting party "must articulate a basis for the Court to find that [documents] in the possession of the additional custodians would be different from—and not simply duplicative of—information that Defendants have already produced").  If Infosys identifies specific gaps in the record on financial topics—as CTS has done with respect to Mr. Parekh—Cognizant is willing to meet and confer with Infosys to discuss how it can provide the necessary information, but Infosys's current insistence on adding yet another custodian after Cognizant has already agreed to produce hundreds of thousands of documents on financial topics is overbroad.  Infosys's position amounts to a request for "every single potentially responsive document (no matter how cumulative or burdensome to obtain) should be produced," *Firefighters' Ret. Sys.*, 2018 WL 276941, at *6, and should accordingly be denied.

Dated: September 15, 2025

Respectfully submitted,

/s/ Christopher J. Schwegmann

/s/ Rachel S. Brass

Christopher J. Schwegmann
(State Bar No. 24051315)
Joshua D. Lang
(State Bar No. 24109450)
**LYNN PINKER HURST &
SCHWEGMANN, LLP**
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
Tel: (214) 981-3835
Fax: (214) 981-3839
cschwegmann@lynnllp.com
jlang@lynnllp.com

Brent Caslin (pro hac vice)
Nick Saros (pro hac vice)
Kelly M. Morrison (pro hac vice)
**JENNER & BLOCK LLP**
515 S. Flower Street, Suite 3300
Los Angeles, CA 90071
Tel.: (213) 239-5100
BCaslin@jenner.com
NSaros@jenner.com
KMorrison@jenner.com

Shoba Pillay (pro hac vice)
Laura E. Pelanek (pro hac vice)
**JENNER & BLOCK LLP**
353 N. Clark Street
Chicago, IL 60654
Tel.: (312) 222-9350
SPillay@jenner.com
LPelanek@jenner.com

Rachel S. Brass (*pro hac vice*)
L. Kieran Kieckhefer (*pro hac vice*)
Elizabeth McCloskey (*pro hac vice*)
Christina E. Myrold (*pro hac vice*)
**GIBSON, DUNN & CRUTCHER LLP**
One Embarcadero Center, Suite 2600
San Francisco, CA 94111
Tel.: 415.393.8200
rbrass@gibsondunn.com
kkieckhefer@gibsondunn.com
emccloskey@gibsondunn.com
cmyrold@gibsondunn.com

John T. Cox, III (SBN 24003722)
Betty Yang (SBN 24088690)
Bradley G. Hubbard (SBN 24090174)
**GIBSON, DUNN & CRUTCHER LLP**
2001 Ross Avenue Suite 2100
Dallas, TX 75201-2923 USA
Tel.: 214.698.3226
tcox@gibsondunn.com
byang@gibsondunn.com
bhubbard@gibsondunn.com

Samuel G. Liversidge (*pro hac vice*)
Casey J. McCracken (*pro hac vice*)
S. Christopher Whittaker (*pro hac vice*)
**GIBSON, DUNN & CRUTCHER LLP**
333 South Grand Avenue
Los Angeles, CA 90071
Tel.: 213.229.7000
sliversidge@gibsondunn.com
cmccracken@gibsondunn.com
cwhittaker@gibsondunn.com

Douglas E. Litvack (pro hac vice)
Jariel A. Rendell (pro hac vice)
**JENNER & BLOCK LLP**
1099 New York Avenue, NW
Suite 900
Washington, DC 20001
Tel: (202) 639-6000
DLitvack@jenner.com
JRendell@jenner.com

*Attorneys for Defendant and Counterclaim
Plaintiff Infosys Limited*

Ahmed ElDessouki (*pro hac vice*)
**GIBSON, DUNN & CRUTCHER LLP**
200 Park Ave.
New York, NY 10166
Tel.: 212.351.2345
aeldessouki@gibsondunn.com

*Attorneys for Plaintiff and Counterclaim
Defendant Cognizant TriZetto Software
Group, Inc. and Counterclaim Defendant
Cognizant Technology Solutions Corp.*