UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| COGNIZANT TRIZETTO SOFTWARE GROUP, INC., <br><br>*Plaintiff,*<br><br>v.<br><br>INFOSYS LIMITED.,<br><br>*Defendant.*<br><br>INFOSYS LIMITED,<br><br>*Counterclaim Plaintiff,*<br><br>v.<br><br>COGNIZANT TECHNOLOGY SOLUTIONS CORP. and COGNIZANT TRIZETTO SOFTWARE GROUP, INC.,<br><br>*Counterclaim Defendants.* | Case No. 3:24-CV-2158-X |

## MEMORANDUM OPINION AND ORDER

Before the Court is Counter-Defendant Cognizant Technology Solutions Corp., Cognizant Trizetto Software Group Inc.'s (Cognizant) Motion to Dismiss Infosys Limited's counterclaims. (Doc. 77). The Court **GRANTS** the motion and **DISMISSES WITHOUT PREJUDICE** Infosys Limited's Counterclaims. (Doc. 46). The Court also **GRANTS** Infosys leave to amend its complaint to cure its deficiencies within 28 days of the issuing of this order.

1

## I. Background[1]

TriZetto offers software solutions to healthcare companies for processing healthcare insurance claims, and CTS provides IT services that use such software solutions. TriZetto's two most used software solutions are Facets and QNXT. In 2014, CTS purchased TriZetto (collectively "Cognizant") to improve their competitiveness in integrated engagement opportunities. By acquiring Facets and QNXT, Cognizant became "vertically integrated," offering payors two essential services: claims processing software and IT support for that software.

Licensees of software like Facets and QNXT often turn to outside IT servicers to help maintain their systems. In this case, the licensees turned to Infosys Limited ("Infosys") to maintain their systems. Such arrangements create a risk for Cognizant however, because they permit third parties to access their company's intellectual property and potentially misappropriate its trade secrets. To guard against these risks, Cognizant requires such third-party servicers to sign non-disclosure agreements (NDAAs).

According to Infosys, they were a key partner to TriZetto before their merging with CTS and helped develop QNXT. After the acquisition, Cognizant gained the power to undermine competition for healthcare payor software and related IT services using its dominant position in both markets. Infosys argues that Cognizant began to view them as a threat and responded with increasingly restrictive and overbroad

---

[1] The Court derives the background facts from the parties' briefings. *See* Doc. 78 at 2—4 and Doc. 82 at 2—4.

NDAAs and by withholding training on QNXT and Facets. Meanwhile, Cognizant stopped innovating QNXT and Facets, using its dominance to reap monopoly profits for increasingly outdated software.

Infosys began developing Helix, which, according to them, was an innovative and technologically superior alternative to Cognizant's outdated Facets and QNXT. In Infosys's view, Cognizant's "systematic campaign to erect new barriers to entry through more onerous NDAA provisions" was a response to Infosys' rise in the market. According to Cognizant, Infosys violated the NDAA agreements, misappropriated Cognizant's trade secrets, and stole its confidential information, all in an effort by Infosys to develop or enhance its own competing software and service offerings, the Helix.

Cognizant filed suit against Infosys for violating the NDAA's and misappropriating Cognizant's highly confidential trade secret information. Infosys subsequently filed antitrust claims under Section 1 and 2 of the Sherman Act and the Texas Free Enterprise and Antitrust Act. Cognizant moved to dismiss.

## II. Legal Standard

Rule 12(b)(6) authorizes dismissal when a complaint fails to "state a claim upon which relief can be granted."[2] A pleading in federal court must state "a short and plain statement of the claim showing that the pleader is entitled to relief."[3]

---

[2] Fed. R. Civ. P. 12(b)(6).

[3] Fed. R. Civ. P. 8(a)(2).

Plaintiffs do not have to plead detailed facts, but "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[4]  For a complaint to survive a motion to dismiss under Rule 12(b)(6) it must allege sufficient facts "to state a claim to relief that is plausible on its face."[5]  And a claim is plausible on its face when supported by enough facts that the Court can "draw the reasonable inference that the defendant is liable for the misconduct alleged."[6]

Reviewing courts construe the complaint liberally in favor of the plaintiff and accept all facts pled in the complaint as true.[7]  That said, courts do not "accept as true legal conclusions, conclusory statements, or naked assertions devoid of further factual enhancement."[8]

### III. Analysis

Infosys must adequately plead a relevant market to support all its counterclaims.[9]  To be sure, "whether a relevant market has been identified is usually a question of fact."[10]  But "in some circumstances, the issue may be determined as a matter of law" and "a motion to dismiss may be granted."[11]  To be legally sufficient,

---

[4] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[5] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[6]  *Iqbal*, 556 U.S. at 678.

[7] *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000)

[8] *Edmiston v. Borrego*, 75 F.4th 551, 557 (5th Cir. 2023) (cleaned up).

[9] *See* 15 U.S.C. §§ 1, 2; Tex. Bus. & Com. Code § 15.04.

[10] *Apani Southwest, Inc. v. Coca-Cola Enterprises, Inc.*, 300 F.3d 620, 628 (5th Cir. 2002) (cleaned up).

[11] *Id.* (cleaned up).

the plaintiff must identify "all commodities reasonably interchangeable by consumers for the same purposes."[12]

Here, Infosys defines its proposed relevant markets as (1) "software products for healthcare payors located in the United States," which it limits to Facets, QNXT, and Helix; and (2) "IT services for healthcare Payor Software located in the United States."[13]

But Infosys's payor software products market description omits substitute products and existing in-house software. Infosys is aware of these products and relies on their current use in its pleadings. And the Fifth Circuit has made clear that in-house products must be included in the pled market.[14] Moreover, the Fifth Circuit held in *Shah v. VHS San Antonio Partners, LLC,* that a plaintiff's failure to include "*all* interchangeable substitute products" merits dismissal.[15] So Infosys's omission is fatal.

Infosys insists it is excused from providing this information because non-specialized or in-house products aren't realistic substitutes due to cost, scale, and expertise. But that proposition is not supported by its own pleadings, as Infosys admits some customers currently use in-house systems instead of Cognizant's software.[16] Infosys's first alleged market is legally insufficient.

---

[12] 985 F.3d 450, 454 (5th Cir. 2021) (quoting *United States v E.I. du Pont de Nemours & Co.*, 351 U.S. 377, 395 (1956) (cleaned up)).

[13] Doc. 82 at 7.

[14] *See, e.g., Spectrofuge Corp. v. Beckman Instruments, Inc.*, 575 F.3d 256, 278 (5th Cir. 1978).

[15] 985 F.3d at 455 (emphasis in original).

[16] *See* Doc. 46 at 7.

Infosys's second alleged market is similarly infirm. At no point does Infosys explain the boundaries of its proposed IT services market or whether technicians and updates are interchangeable across software platforms. Again, *Shah* is instructive. In *Shah*, the Fifth Circuit rejected a market definition limited to pediatric anesthesiologists because it excluded other doctors who could provide the same services.[17] Infosys similarly excluded IT services substitutes from its proposed market despite seemingly acknowledging they exist.

Because Infosys has failed to allege a relevant market, each of its claims are legally insufficient and should be dismissed.[18]

## IV. Conclusion

Because Infosys has failed to define a legally sufficient relevant market, its antitrust counterclaims cannot stand. The Court **GRANTS** the motion (Doc. 77) and **DISMISSES WITHOUT PREJUDICE** Infosys's complaint. (Doc. 46). The Court also **GRANTS** Infosys leave to amend its complaint to cure its deficiencies within 28 days of the issuing of this order.

**IT IS SO ORDERED** this 9th day of October, 2025.

_____
BRANTLEY STARR
UNITED STATES DISTRICT JUDGE

---

[17] *Shah*, 985 F.3d at 455.

[18] *Id.*

6