IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| COGNIZANT TRIZETTO SOFTWARE GROUP, INC., <br><br> Plaintiff, <br><br> v. <br><br> INFOSYS LIMITED, <br><br> Defendant. | Case No. 3:24-cv-2158-X <br><br> The Honorable Brantley Starr |
| INFOSYS LIMITED, <br><br> Counterclaim Plaintiff, <br><br> v. <br><br> COGNIZANT TECHNOLOGY SOLUTIONS CORP. and COGNIZANT TRIZETTO SOFTWARE GROUP, INC., <br><br> Counterclaim Defendants. | |

**COGNIZANT TECHNOLOGY SOLUTIONS CORP.'S AND COGNIZANT TRIZETTO SOFTWARE GROUP, INC.'S REPLY IN SUPPORT OF THEIR MOTION TO DISMISS INFOSYS LIMITED'S AMENDED COUNTERCLAIM
AND STAY DISCOVERY**

**TABLE OF CONTENTS**

Page

ARGUMENT ........................................................................................................................... 1

    I.    Infosys Fails To Plead A Violation Of Section 2 Of The Sherman Act ................ 1

        A. Infosys Fails To Allege Plausible Relevant Markets. ...................................... 1

        B. Infosys Alleges No Exclusionary Conduct. ..................................................... 3

        C. Infosys Alleges No Antitrust Injury. ................................................................. 8

        D. Infosys Fails To Allege Attempted Monopolization. ....................................... 9

    II.    Infosys' Remaining Claims Fail ............................................................................ 9

        A. Infosys Fails To Plead A Violation Of Section 1 Of The Sherman Act. .......... 9

        B. Infosys' Parallel Claims Under the Texas Free Enterprise and Antitrust Act Fail ................................................................................................................. 10

    III.    The Court Should Stay Antitrust Discovery While This Motion Remains Pending ................................................................................................................. 10

CONCLUSION ...................................................................................................................... 10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Adderall XR Antitrust Litig.*,
  754 F.3d 128 (2d Cir. 2014).................................................................................................4

*Am. Presid. Lines, LLC v. Matson, Inc.*,
  2025 WL 870383 (D.D.C. Mar. 19, 2025).............................................................................8

*ASAP Paging Inc. v. CenturyTel of San Marcos Inc.*,
  137 F. App'x 694 (5th Cir. 2005) .........................................................................................5

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..............................................................................................................1

*Assoc. Radio Serv. Co. v. Page Airways, Inc.*,
  624 F.2d 1342 (5th Cir. 1980) ..........................................................................................6, 8

*Bio-Rad Lab'ys, Inc. v. 10X Genomics, Inc.*,
  483 F. Supp. 3d 38 (D. Mass. 2020).....................................................................................4

*Duke Energy Carolinas, LLC v. NTE Carolina II, LLC*,
  111 F.4th 337 (4th Cir. 2024) ...............................................................................................8

*In re EpiPen Mktg., Sales Pracs. & Antitr. Litig.*,
  44 F.4th 959 (10th Cir. 2022) ...............................................................................................8

*U.S. ex rel. Grubbs v. Kanneganti*,
  565 F.3d 180 (5th Cir. 2009) ................................................................................................1

*IDX Sys. Corp. v. Epic Sys. Corp.*,
  285 F.3d 581 (7th Cir. 2002) ............................................................................................4, 5

*Location Servs., LLC v. Dig. Recognition Network, Inc.*,
  2018 WL 5787317 (N.D. Tex. Nov. 5, 2018).......................................................................9

*Marucci Sports, LLC v. NCAA*,
  751 F.3d 368 (5th Cir. 2014) ..............................................................................................10

*Novell, Inc. v. Microsoft Corp.*,
  731 F.3d 1064 (10th Cir. 2013) .......................................................................................4, 5

*Pac. Bell Tel. Co. v. linkLine Commc'ns, Inc.*,
  555 U.S. 438 (2009)..............................................................................................................3

*PSKS, Inc. v. Leegin Creative Leather Prods., Inc.*,
  615 F.3d 412 (5th Cir. 2010) ................................................................................................3

*Pulse Network, L.L.C. v. Visa, Inc.*,
  30 F.4th 480 (5th Cir. 2022) .................................................................................................9

## TABLE OF AUTHORITIES
### (Continued)

**Page(s)**

*Retract. Techs., Inc. v. Becton Dickinson & Co.*,
 842 F.3d 883 (5th Cir. 2016) ..................................................................................................8

*Taylor Pub. Co. v. Jostens, Inc.*,
 216 F.3d 465 (5th Cir. 2000) ..................................................................................................6

*U.S. v. Live Nation Ent.*,
 2025 WL 835961 (S.D.N.Y. Mar. 14, 2025) ..........................................................................4

*Univ. Hosp. Servs., Inc. v. Hill-Rom Holdings, Inc.*,
 2015 WL 6994438 (W.D. Tex. Oct. 15, 2015) .......................................................................9

Infosys Limited's First Amended Counterclaim ("FAC") against Cognizant TriZetto Software Group, Inc. ("TriZetto") and Cognizant Technology Solutions Corp. ("CTS") (collectively "Cognizant") suffers from the same defects as its initial dismissed Counterclaim while introducing new weaknesses made evident by Infosys' Opposition. Infosys' lawsuit hangs on fringe theories and conclusory allegations that establish no more than the "sheer possibility" that its claims are true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Confronted with these problems, Infosys tries to rewrite its FAC, only to create new problems. This Court should dismiss Infosys' counterclaims—this time with prejudice—or, at least, stay antitrust discovery until Infosys moves its claims past "merely conceivable." *U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 186 (5th Cir. 2009).

## ARGUMENT

I. **Infosys Fails To Plead A Violation Of Section 2 Of The Sherman Act**

**A. Infosys Fails To Allege Plausible Relevant Markets.** Infosys attempts to rewrite its FAC via its Opposition, but, either way, its market definition allegations remain fatally flawed.

***Software Market.*** Infosys alleges that the Software Market includes only one type of specialized product: "Core Administration Software" for health plans. ¶ 128. Infosys defines this Software in terms of health plans' three core needs: member management, claims processing, and provider management. ¶ 125. According to Infosys, health plans usually will not consider mixing and matching multiple pieces of software to address these core needs. ¶¶ 125, 127. But Infosys also alleges that its Helix product, which does *not* perform all three core functions, is Core Administration Software that health plans will consider. ¶ 179. Cognizant flagged this inconsistency in its Motion: if Helix is in the Software Market, then software that performs *any one* of the health plan functions must be in too. Mot. 6-7.

In response, Infosys now pretends that it included in the Software Market "any software" that offers functionality for any of a health plan's needs. Opp. 4. But that dodge creates new and

different inconsistencies in Infosys' FAC, which expressly *excludes* from the market software that addresses *some but not all* three of those core needs. For example, Infosys excludes software for "benefits administrators" because they do not need to perform all the same functions as health plans. ¶¶ 117, 128. But at the same time, Infosys admits that one type of benefit administrator—"third-party administrators"—performs the core health plan function of *processing claims*. Compare ¶ 117 ("Self-funded plans use third-party administrators to process claims"), *with* ¶ 119 ("claims processing" is one of the core functions of health plans). Per Infosys' Opposition, then, benefit administrator software should be in the Software Market, because it performs at least one of the core functions of health plans, and a health plan could mix and match benefit administration software with other products to fulfill its three core needs. Because Infosys' confused market definition remains internally inconsistent, it is impossible to determine whether all "'reasonably interchangeable'" products are included, and dismissal is proper once again. Dkt. 141 at 5.

*IT Services Market.* Although the inadequacies of the Software Market necessarily doom the derivative IT Services Market, the IT Services Market fails on its own terms too. Infosys contends it has fixed the flaws the Court identified in its prior market definition—the failure to address the interchangeability of IT services technicians and software updates *across software platforms*, Dkt. 141 at 6—but does not actually identify *any* allegation in the FAC that does so.

As to technicians, Infosys claims it has alleged they are interchangeable across platforms because "many projects" require only "see[ing] the user interface," which "a technician can easily do without prior experience with the particular software." Opp. 7. But the FAC says nothing of the sort; to the contrary, it alleges these services are complex and require "specialization" and "expertise," ¶¶ 133, 151, and claims that Cognizant's purported refusal to offer QNXT and Facets training hinders Infosys' ability to offer IT services for them (¶ 77). Infosys also contends that whether

2

individual technicians are interchangeable is irrelevant because this case concerns "Core Administration IT Services Providers" with "large teams of specialists." Opp. 7 n.1. But whether health plans with different software platforms hire the same IT services personnel or wholly separate teams (even if offered by the same IT services provider) is a crucial question in determining the scope of the market, and one that Infosys leaves entirely unanswered. *See PSKS, Inc. v. Leegin Creative Leather Prods., Inc.*, 615 F.3d 412, 418 (5th Cir. 2010).

As to interchangeability of software updates, Infosys contends it is irrelevant because updates are "not part of" the IT Services Market. Opp. 7-8. But the FAC tells a different story, alleging that customers' needs for IT services depend in part on "what upgrades and functionalities they require to make their Core Administration Software perform effectively." ¶ 134. While Infosys' Opposition includes a single sentence arguing it has addressed interchangeability regarding updates, none of the allegations it cites (¶¶ 138, 146, 154, 162) say anything specific about updates (much less their interchangeability *across platforms*).

**B. Infosys Alleges No Exclusionary Conduct.** Infosys' claims also fail because it has not pleaded any exclusionary conduct by Cognizant. Instead, Infosys' Opposition confirms that its counterclaims are based entirely on conduct that is lawful under blackletter antitrust law.

***Cognizant's Contractual Provisions.*** Cognizant's license agreements with customers and NDAAs with IT services competitors protect Cognizant's intellectual property. Infosys' complaints about these agreements boil down to demanding more access to that intellectual property. But blackletter law precludes a claim on this basis. *Pac. Bell Tel. Co. v. linkLine Commc'ns, Inc.*, 555 U.S. 438, 449-50 (2009) (recognizing a firm has no "antitrust duty to deal with its rivals at all" and "certainly . . . no duty to deal under terms and conditions that the rivals find commercially advantageous"); Mot. 8-9. Infosys does not even suggest Cognizant's licenses or NDAAs meet the

3

"limited exception" recognized under the Supreme Court's *Aspen* decision, *Novell, Inc. v. Microsoft Corp.*, 731 F.3d 1064, 1074 (10th Cir. 2013). *See* Opp. 11-13. And it does not.

Instead, Infosys wrongly describes the refusal-to-deal doctrine as a factual "defense" that Cognizant has the burden of proving at some later date. Opp. 15-17. Not so. The question here is whether Infosys pleaded anticompetitive conduct, and courts routinely dismiss for failure to plead an anticompetitive duty to deal. *See, e.g., In re Adderall XR Antitrust Litig.*, 754 F.3d 128, 134-36 (2d Cir. 2014) (affirming dismissal for failure to meet *Aspen* exception); *Bio-Rad Lab'ys, Inc. v. 10X Genomics, Inc.*, 483 F. Supp. 3d 38, 60 (D. Mass. 2020) (dismissing because there is "no duty to aid competitors"). Infosys also argues—contrary to its briefing on the prior motion to dismiss—that the refusal-to-deal doctrine is inapplicable because some of the at-issue contracts are between Cognizant and customers, not Infosys, citing *Novell* and *Live Nation*. Opp. 15-16. But those cases say nothing of the sort. Instead, they identify other forms of conduct, beyond refusal to deal, that could be exclusionary and support a Section 2 claim—such as exclusive dealing or tying. *See Novell*, 731 F.3d at 1072 ("section 2 misconduct usually involves some assay by the monopolist into the marketplace [such as an attempt] to limit the abilities of third parties to deal with rivals (exclusive dealing)"); *U.S. v. Live Nation Ent.*, 2025 WL 835961, at *2 (S.D.N.Y. Mar. 14, 2025) ("To the extent that plaintiffs can make out a claim that Live Nation engaged in illegal tying, and didn't just refuse to deal with its rivals, the claim is actionable."). Infosys does not claim to have alleged an exclusive dealing or tying claim (nor could it), so those citations offer it no help.

At bottom, Infosys' argument is that Cognizant should be forced to give Infosys more access to Cognizant's intellectual property. But protecting intellectual property is not exclusionary; it is procompetitive. *See IDX Sys. Corp. v. Epic Sys. Corp.*, 285 F.3d 581, 585 (7th Cir. 2002) (Easterbrook, J.). "Nothing in the antitrust laws gives one producer a right to sponge off another's

4

intellectual property." *Id.* Here, Cognizant could lawfully exclude Infosys and others from accessing the software altogether. But despite past misappropriation by competitor service providers, Cognizant instead has entered into NDAAs that allow rivals the access they need to offer competing services. This competition-enhancing decision is no basis for an antitrust claim.

***Refusing To Train A Competitor Is Not Anticompetitive Conduct.*** Infosys' Opposition also fails to show that Cognizant's purported refusal to offer training to Infosys was exclusionary. Cognizant certainly has no duty to provide its competitors training so that those competitors can be "more efficient" and offer "more services." ¶ 77. Infosys argues that it has pleaded the "egregious circumstances" required for the *Aspen* exception to the general rule that there is no duty to deal, *ASAP Paging Inc. v. CenturyTel of San Marcos Inc.*, 137 F. App'x 694, 698 (5th Cir. 2005), but it distorts its own allegations and comes nowhere close.

As an initial matter, Infosys does not allege that *Cognizant* had a "preexisting voluntary and presumably profitable course of dealing" with Infosys regarding training. *Novell*, 731 F.3d at 1074. Instead, it alleges that *other* parties—QCSI, which owned QNXT at one point, and TriZetto, which owned QNXT and Facets before it was acquired by Cognizant—used to offer training. ¶¶ 73-74. With respect to Cognizant, it alleges only that "a few years ago" it "rolled out a comprehensive certified service partner program" and limited access to "smaller market players," and excluding Infosys. ¶ 75. Nowhere does the FAC allege that *Cognizant* had ever allowed Infosys to be part of the comprehensive service partner program (or ever previously offered any kind of training to Infosys), much less that Cognizant made profits from doing so. Nor does Infosys allege any facts that suggest that, in excluding Infosys, Cognizant was forsaking "short-term profits" and doing so in a manner that was "irrational but for its anticompetitive effect." *Novell*, 731 F.3d at

5

1075. While Infosys alleges Cognizant could "charge additional fees to the larger service providers" if it allowed them to enter the partner program, it includes no allegations showing that Cognizant would receive net *profits* from doing so, especially given that Infosys wants access so that it can compete "more efficiently" with—*i.e.*, take IT services business from—Cognizant. ¶¶ 75, 77. Cognizant has every right to protect its IP, especially from those who have misappropriated it.

***Cognizant's Hiring Of Infosys Employees Is Not Anticompetitive Conduct.*** "[T]he mere hiring away of employees from a rival similarly is *per se legal* under the antitrust laws," *Assoc. Radio Serv. Co. v. Page Airways, Inc.*, 624 F.2d 1342, 1354 (5th Cir. 1980) (emphasis added), as Infosys acknowledges, ¶ 107. While there are narrow exceptions to this general rule in extreme cases—where a firm (1) took concrete steps to "induce . . . disloyalty" in the employees before they switched or (2) hired the employees not to use them but to deprive its rival of talent—Infosys does not plead any facts showing those exceptions apply here. *See Taylor Pub. Co. v. Jostens, Inc.*, 216 F.3d 465, 479-82 (5th Cir. 2000).

Infosys argues that it has plausibly alleged Cognizant induced disloyalty based on allegations that Ravi Kumar, Shveta Arora, and Ravi Kiran Kuchibhotla "suddenly shifted from enthusiastically advancing Infosys Helix's development to sabotaging it for months while remaining employed at Infosys." Opp. 14. But the FAC does not allege that *Cognizant* did anything to elicit or induce that behavior. The closest Infosys comes is alleging that Cognizant "lure[d] away Kumar, incentivizing disloyal behavior." ¶ 100. But Infosys identifies no specific conduct by Cognizant that purportedly created this incentive, other than the act of hiring Kumar, which is *per se* legal.

Nor does Infosys point to any alleged facts that plausibly support a claim that Cognizant does not "use" Kumar, Arora, or Kuchibhotla. Infosys admits that all three serve in senior roles. ¶¶ 102, 106. Infosys' only basis for this claim is that Kuchibhotla is not currently on Cognizant's

6

website. ¶ 107. As previously explained (Mot. 13-14), this is not an allegation that Cognizant does not "use" Kuchibhotla (much less Kumar and Arora). Infosys has no response.[*]

***Infosys Fails To Allege A Market Allocation Scheme.*** Infosys contends that its conclusory allegations about "market allocation" via the "TriZetto Consulting Partner Network" constitute exclusionary conduct, which Cognizant somehow conceded by addressing the "market allocation" theory only in the Section 1 portion of its motion to dismiss. None of this is right. Infosys explicitly alleged market allocation in support of its Section 1 claims but not its Section 2 claims. *Compare* ¶¶ 221-34, *with* ¶ 283. But had Infosys done so, Cognizant's brief explained why such a theory is implausible. Mot. 21-23. Infosys' Opposition does not salvage it.

A plausible market allocation theory must include allegations that *competitors* agreed with *each other* not to compete for certain segments of the market. *See* Mot. 22 (citing cases). Infosys claims it has met that burden by alleging a "specific example" of such an agreement: Cognizant purportedly "authorized" certain "small competitors" to perform "minimal" IT services for a large health plan. Opp. 22 (citing ¶ 42). But that is not an agreement between Cognizant and small competitors *not to compete* for specific contracts or geographies. The cited paragraph describes an "agreement" between Cognizant *and a health plan*. ¶ 42. Nor does Infosys' vague allegation that Cognizant has agreed with small competitors to "allocate them" certain contracts "in exchange for agreeing to accept Cognizant's monopolistic dominance" hit the mark (Opp. 21); whatever it may mean to "accept . . . dominance," Infosys has not pleaded that any specific competitor company agreed with Cognizant not to compete for any specific business (nor could it truthfully do so). *Id.*

---

[*] Infosys' executive leadership webpage likewise does not feature all its top personnel. Mot. 14. Infosys gripes that its webpage is irrelevant at the pleadings stage (Opp. 15) but ignores that it is implausible to infer predatory hiring from the absence of an employee's profile on a website.

7

Recognizing this problem, Infosys pivots to a new theory found nowhere in the FAC: Cognizant is purportedly the "ringleader of a 'vertical boycott'" wherein it coerces health plans not to deal with Infosys. Opp. 22. The FAC does not purport to allege a vertical boycott claim—the word "boycott" never appears—so this last-ditch effort should be ignored. But even if considered on the substance, Infosys is merely relabeling its same arguments about the customer license agreements discussed above. Infosys wants more access to Cognizant's software, but that is not a viable antitrust claim regardless of whether it is labeled refusal to deal, a vertical boycott, or something else.

***The Court Should Reject Infosys' "Monopoly Broth" Approach.*** Infosys argues that, even if none of Cognizant's alleged actions rise to the level of anticompetitive conduct, its actions are collectively exclusionary. Opp. 9-10. In other words, Infosys contends that combining *lawful* conduct with other *lawful* conduct can create *unlawful* anticompetitive conduct. This zero-plus-zero-equals-one argument defies both law and logic. For this reason, courts (including the Fifth Circuit) largely reject this "monopoly broth" approach. *See Retract. Techs., Inc. v. Becton Dickinson & Co.*, 842 F.3d 883, 891 (5th Cir. 2016) ("Each of these theories must be separately analyzed in light of settled principles of antitrust law."); *In re EpiPen Mktg., Sales Pracs. & Antitr. Litig.*, 44 F.4th 959, 982 (10th Cir. 2022) (same); *Am. Presid. Lines, LLC v. Matson, Inc.*, 2025 WL 870383, at *10 (D.D.C. Mar. 19, 2025) (gathering authorities). Infosys cites *Page* for the idea that defendants' conduct must be assessed "together," 624 F.2d at 1356, but the Fifth Circuit has since cabined *Page* to its facts, *Retract. Techs.*, 842 F.3d at 892. And Infosys relies on *Duke Energy Carolinas, LLC v. NTE Carolina II, LLC*, 111 F.4th 337 (4th Cir. 2024), Opp. 9, but *Duke* is both an outlier and contrary to Fifth Circuit precedent. *See Matson*, 2025 WL 870383, at *10.

**C. Infosys Alleges No Antitrust Injury.** Infosys' Amended Counterclaim also fails be-

8

cause it alleges injury only to Infosys and not to competition. *See* Mot. 14-17. Citing *Pulse Network, L.L.C. v. Visa, Inc.*, 30 F.4th 480 (5th Cir. 2022), Infosys argues its injuries reflect harm to competition because "Infosys 'doesn't lose customers to' Cognizant 'in a fair fight over' prices or quality." Opp. 17 (citing *id.* at 491). But *Pulse* involved specific allegations about how the defendant's conduct "force[d] merchants to pay a higher total cost," *Pulse*, 30 F.4th at 491, while Infosys includes no non-conclusory allegations about its software or services pricing relative to Cognizant's, nor of customers' options more broadly. There is also no suggestion that any IT products or services were driven from the market, *cf. id.* at 492-93, and all of Infosys' arguments about injury rest on conclusory allegations, *see* Mot. 14-16. Dismissal is appropriate. *Location Servs., LLC v. Dig. Recognition Network, Inc.*, 2018 WL 5787317, at *2 (N.D. Tex. Nov. 5, 2018) (dismissing Section 2 claim where "plaintiff makes conclusory allegations about reduced competition, higher prices, . . . [and] reduced output"). Infosys also undermines its antitrust injury theory by alleging that health plans usually do not consider Core Administration Software unless it offers all three core functions, which Helix *does not*. ¶¶ 125, 127, 179.

**D. Infosys Fails To Allege Attempted Monopolization.** Infosys' attempted monopolization claim fails for the same reasons. Infosys does not plausibly allege any purported markets, *see supra* I.A, nor any exclusionary conduct, *see supra* I.B. As for intent, Infosys suggests that Cognizant's public statements create "'an inference of intent.'" Opp. 19 (quotation omitted). But a few public statements about Cognizant's growth fall far short of the explicit calls for *eliminating competition* in Infosys' citations. *See Univ. Hosp. Servs., Inc. v. Hill-Rom Holdings, Inc.*, 2015 WL 6994438, at *7 (W.D. Tex. Oct. 15, 2015) (touting "'nobody else' could compete").

## II.   Infosys' Remaining Claims Fail

**A. Infosys Fails To Plead A Violation Of Section 1 Of The Sherman Act.** To state a Section 1 claim, Infosys must allege (1) an agreement (2) that unreasonably restrained trade (3) in

a relevant market. *Marucci Sports, LLC v. NCAA*, 751 F.3d 368, 373-75 (5th Cir. 2014). Infosys' alleged product markets are legally insufficient, *see supra* I.A; Mot. 6-8, and Cognizant's NDAAs and MFV provisions are not unreasonable restraints of trade, *see supra* I.B; Mot. 8-11. Infosys fails to point to *any* factual allegations establishing the agreements' anticompetitive effect. *See* Mot. 14-17, 21. And, as explained above, Infosys' market allocation theory fails. *See supra* I.B.

### B. Infosys' Parallel Claims Under the Texas Free Enterprise and Antitrust Act Fail.

Infosys admits that its Texas state-law claims fail if its federal claims do so. Opp. 23.

### III. The Court Should Stay Antitrust Discovery While This Motion Remains Pending.

Infosys mischaracterizes Cognizant's motion to stay discovery (Mot. 23-25) as an "attempt to relitigate" its prior motion. Opp. 23. Cognizant is not challenging the prior ruling but moving anew in light of changed circumstances. The breadth and cost of antitrust discovery in this case is enormous, Mot. 23-24, far from a case in which discovery costs are largely "sunk," Dkt. 155 at 19, and Infosys has continued to press for additional discovery, serving 128 new document requests on November 25, 2025 (almost *two weeks after* the substantial completion deadline) and 324 requests for admission on December 19, 2025. *See* App'x 7-110; App'x 6, at ¶¶ 3-4. An immediate stay of discovery is required to avoid further potentially wasteful document discovery and to avoid the additional burdens of depositions and expert discovery. Mot. 23-24. Infosys objects that such a stay is unworkable because of overlap between the antitrust and trade secrets claims. Opp. 24-25. But even if there is some modest overlap (*i.e.*, the effect of Cognizant's contracts), that is no reason to incur completely severable wasteful costs. Mot. 24 & n.7. And dismissing the FAC dispenses with any antitrust affirmative defense. *Id.* at 25.

### CONCLUSION

The Court should dismiss Infosys' antitrust counterclaims with prejudice and immediately stay antitrust discovery pending its ruling on the sufficiency of Infosys' Amended Counterclaims.

|  |  |
|---|---|
| Dated: December 26, 2025 | */s/  John T. Cox III*<br>John T. Cox III<br>  Texas Bar:  24003722<br>Betty Yang<br>  Texas Bar:  24088690<br>Bradley G. Hubbard<br>  Texas Bar:  24090174<br>GIBSON, DUNN & CRUTCHER LLP<br>2001 Ross Avenue, Suite 2100<br>Dallas, TX 75201<br>Tel:   214.698.3226<br>Fax: 214.571.2900<br>tcox@gibsondunn.com<br>byang@gibsondunn.com<br>bhubbard@gibsondunn.com<br><br>Rachel S. Brass (*admitted pro hac vice*)<br>  California Bar:  219301<br>L. Kieran Kieckhefer (*admitted pro hac vice*)<br>  California Bar:  251978<br>Elizabeth McCloskey (*admitted pro hac vice*)<br>  California Bar:  268184<br>GIBSON, DUNN & CRUTCHER LLP<br>One Embarcadero Center, Suite 2600<br>San Francisco, CA 94111<br>Tel:   415.393.8200<br>Fax: 415.393.8306<br>rbrass@gibsondunn.com<br>kkieckhefer@gibsondunn.com<br>emccloskey@gibsondunn.com<br><br>Samuel G. Liversidge (*admitted pro hac vice*)<br>  California Bar:  180578<br>S. Christopher Whittaker (*admitted pro hac vice*)<br>  California Bar:  283518<br>GIBSON, DUNN & CRUTCHER LLP<br>333 South Grand Avenue<br>Los Angeles, CA 90071<br>Tel:   213.229.7000<br>Fax: 213.229.7520<br>sliversidge@gibsondunn.com<br>cwhittaker@gibsondunn.com<br><br> *Attorneys for Counterclaim Defendants*<br> *Cognizant TriZetto Software Group, Inc. and*<br> *Cognizant Technology Solutions Corp.* |

11

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 26, 2025, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which sent notification of the filing to all counsel of record.


Dated: December 26, 2025                                    */s/ John T. Cox III*
                                                                                            John T. Cox III