**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| COGNIZANT TRIZETTO SOFTWARE GROUP, INC., <br><br> Plaintiff, <br> v. <br><br> INFOSYS LIMITED, <br><br> Defendant. | Case No. 3:24-cv-02158-X <br><br> Hon. Brantley Starr, District Judge <br><br> Hon. David L. Horan, Magistrate Judge |
| INFOSYS LIMITED, <br><br> Counterclaim Plaintiff, <br> v. <br><br> COGNIZANT TECHNOLOGY SOLUTIONS CORP. and COGNIZANT TRIZETTO SOFTWARE GROUP, INC., <br><br> Counterclaim Defendants. | **[Redacted Per Court's Order, Dkt. 190]** |

**INFOSYS'S OPPOSITION TO COGNIZANT'S MOTIONS TO DISMISS**
**FIRST AMENDED COUNTERCLAIM AND PARTIALLY STAY DISCOVERY**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................. 2

LEGAL STANDARD.......................................................................................................... 3

ARGUMENT ...................................................................................................................... 3

    A.    The FAC States a Monopolization Claim................................................................ 3

        1.    The Relevant Markets Fully Address Interchangeability. ............................... 4

            a.    The Core Administration Software Market Includes All Substitutes.......................................................................................... 4

            b.    The Core Administration IT Services Markets Include All Substitutes.......................................................................................... 6

        2.    The FAC Amply Alleges Exclusionary Conduct............................................. 8

            a.    Cognizant's Course of Conduct Is Exclusionary as a Whole. .............. 9

            b.    Cognizant's Acts Are Individually Exclusionary. .............................. 10

        3.    Cognizant's "No Duty to Deal" and "IP" Defenses Fail. ............................... 15

            a.    Cognizant's Contracting Practices Are Not a Refusal to Deal. .......... 15

            b.    Cognizant's IP Defense Is Contrary to the Pleadings......................... 17

    B.    The FAC Pleads Antitrust Injury. ........................................................................ 17

    C.    The FAC States a Claim for Attempted Monopolization. ........................................ 19

    D.    The FAC States a Claim for Unreasonable Restraints of Trade (§ 1). ...................... 20

        1.    The FAC Sufficiently Alleges Anticompetitive Effects. ................................ 20

        2.    The FAC Sufficiently Alleges *Per Se* Anticompetitive Market Allocation. .. 21

    E.    The FAC States a Claim for Violations of the TFEAA. ............................................ 23

    F.    Cognizant Fails to Justify an Unworkable Partial Stay of Discovery........................ 23

CONCLUSION.................................................................................................................. 25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Air Vent, Inc. v. Powermax Elec. Co.*,
  No. 3:25-CV-0852-X, 2025 WL 3027252 (N.D. Tex. Oct. 29, 2025) ........................15, 20, 21

*Am. Airlines, Inc. v. Travelport Ltd.*,
  No. 4:11-CV-244-Y, 2012 WL 3737037 (N.D. Tex. Aug. 7, 2012) ......................................22

*Apani Sw., Inc. v. Coca-Cola Enters., Inc.*,
  300 F.3d 620 (5th Cir. 2002) .................................................................................................8

*Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*,
  472 U.S. 585 (1985).........................................................................................................3, 13

*Associated Radio Serv. Co. v. Page Airways, Inc.*,
  624 F.2d 1342 (5th Cir. 1980) ...............................................................................................9

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007).................................................................................................................3

*Caris MPI, Inc. v. UnitedHealthcare, Inc.*,
  No. 3:21-CV-3101-X, 2025 WL 888498 (N.D. Tex. Mar. 21, 2025)....................................10

*Christianson v. Colt Indus. Operating Corp.*,
  486 U.S. 800 (1988)................................................................................................................23

*Colonna v. LoanDepot.com LLC*,
  No. 3:24-CV-0376-X, 2024 WL 5047875 (N.D. Tex. Dec. 9, 2024)....................................24

*Cont'l Ore Co. v. Union Carbide & Carbon Corp.*,
  370 U.S. 690 (1962)..........................................................................................................9, 10

*Crawford v. Magicstar Arrow Ent., LLC*,
  No. 3:22-CV-1935-X, 2023 WL 8705655 (N.D. Tex. Dec. 14, 2023)..................................25

*Duke Energy Carolinas, LLC v. NTE Carolinas II, LLC*,
  111 F.4th 337 (4th Cir. 2024) ...................................................................................9, 10, 13

*E.I. du Pont Nemours & Co. v. Kolon Indus., Inc.*,
  637 F.3d 435 (4th Cir. 2011) .................................................................................................19

*Eastman Kodak Co. v. Image Tech. Servs., Inc.*,
  504 U.S. 451 (1992)...............................................................................................8, 10, 12, 16

*In re Educ. Testing Serv. Litig.*,
  429 F. Supp. 2d 752 (E.D. La. 2005) ............................................................13, 14

*Esquivel v. Kendrick*,
  No. 22-50979, 2023 WL 5584168 (5th Cir. Aug. 29, 2023) ...................................23

*FTC v. Actavis, Inc.*,
  570 U.S. 136 (2013) ................................................................................................17

*George v. SI Grp., Inc.*,
  36 F.4th 611 (5th Cir. 2022) ....................................................................................8

*Green v. Thomas*,
  129 F.4th 877 (5th Cir. 2025) ..................................................................................4

*Kaiser Steel Corp. v. Mullins*,
  455 U.S. 72 (1982) ..................................................................................................25

*Lac du Flambeau Band of Lake Superior Chippewa Indians v. Coughlin*,
  599 U.S. 382 (2023) ..................................................................................................5

*McWane, Inc. v. FTC*,
  783 F.3d 814 (11th Cir. 2015) ..........................................................................19, 21

*Md. & Va. Milk Producers Ass'n v. U.S.*,
  362 U.S. 458 (1960) ................................................................................................11

*MM Steel, L.P. v. JSW Steel (USA) Inc.*,
  806 F.3d 835 (5th Cir. 2015) ............................................................................20, 22

*Novell, Inc. v. Microsoft Corp.*,
  731 F.3d 1064 (10th Cir. 2013) (Gorsuch, J.)........................................................16

*Open Cheer & Dance Championship Series, LLC v. Varsity Spirit, LLC*,
  No. 2:23-CV-0155-Z, 2024 WL 1218573 (N.D. Tex. Mar. 21, 2024) ...................22

*Pac. Bell Tel. Co. v. linkLine Commc'ns, Inc.*,
  555 U.S. 438 (2009)............................................................................................15, 16

*Pickersgill v. Neely*,
  No. 3:21-CV-00773-X, 2021 WL 5163197 (N.D. Tex. Nov. 5, 2021) ...................17

*PrimeSource Bldg. Prods., Inc. v. Lee Grp. Int'l, Inc.*,
  No. 3:19-CV-02878-X, 2020 WL 6140462 (N.D. Tex. Aug. 12, 2020) ...........23, 24

*Pulse Network, L.L.C. v. Visa, Inc.*,
  30 F.4th 480 (5th Cir. 2022) ...............................................................17, 18, 19, 21

*Race Tires American, Inc. v. Hoosier Racing Tire Corp.*,
    614 F.3d 57 (3d Cir. 2010).............................................................................18

*Reyna v. Epiroc Drilling Sols., LLC*,
    No. 3:23-CV-1005-X, 2023 WL 8285021 (N.D. Tex. Nov. 30, 2023) .....................................5

*N.Y. ex rel. Schneiderman v. Actavis PLC*,
    787 F.3d 638 (2d Cir. 2015).............................................................................17

*Shah v. VHS San Antonio Partners, L.L.C.*,
    985 F.3d 450 (5th Cir. 2021) .......................................................................4, 5

*Spectators' Commc'n Network Inc. v. Colonial Country Club*,
    253 F.3d 215 (5th Cir. 2001) ...........................................................................22

*Spectrum Sports, Inc. v. McQuillan*,
    506 U.S. 447 (1993).......................................................................................19

*Swift & Co. v. U.S.*,
    196 U.S. 375 (1905).........................................................................................9

*Taylor Publ'g Co. v. Jostens, Inc.*,
    216 F.3d 465 (5th Cir. 2000) ...........................................................................14

*U.S. v. Apple, Inc.*,
    791 F.3d 290 (2d Cir. 2015).............................................................................11

*U.S. v. Cadillac Overall Supply Co.*,
    568 F.2d 1078 (5th Cir. 1978) ...........................................................11, 20, 21, 22

*U.S. v. Griffith*,
    334 U.S. 100 (1948).......................................................................................11

*U.S. v. Grinnell Corp.*,
    384 U.S. 563 (1966).........................................................................................3

*U.S. v. Jeffries*,
    587 F.3d 690 (5th Cir. 2009) .............................................................................5

*U.S. v. Live Nation Ent., Inc.*,
    No. 24-3973, 2025 WL 835961 (S.D.N.Y. Mar. 14, 2025).................................................15

*U.S. v. Microsoft Corp.*,
    56 F.3d 1448 (D.C. Cir. 1995)..................................................................12, 17, 19, 21

*Universal Hosp. Servs., Inc. v. Hill-Rom Holdings, Inc.*,
    No. CIV.A. SA-15-CA-32, 2015 WL 6994438 (W.D. Tex. Oct. 15, 2015).......................9, 19

*Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*,
    540 U.S. 398 (2004) ............................................................................................................15

*Viamedia, Inc. v. Comcast Corp.*,
    951 F.3d 429 (7th Cir. 2020) ..................................................................................13, 17

*Villarreal v. Navistar, Inc.*,
    No. 3:20-CV-02980-X, 2022 WL 14708977 (N.D. Tex. Mar. 8, 2022).................................25

*Vuoncino v. Forterra, Inc.*,
    140 F.4th 200 (5th Cir. 2025) ................................................................................................15

*Wilson v. State Farm Mut. Auto. Ins.*,
    No. 3:20-CV-02965-X, 2022 WL 524793 (N.D. Tex. Feb. 22, 2022) ...................................11

**Statutes**

15 U.S.C. § 1 ..................................................................................................................................2

15 U.S.C. § 2 ..................................................................................................................................2

Tex. Bus. & Com. Code § 15.04 ..................................................................................................23

Tex. Bus. & Com. Code § 15.05 ....................................................................................................2

**Other Authorities**

Fed. R. Civ. P. 26 ........................................................................................................................25

Fed. R. Civ. P. 72 ........................................................................................................................23

Philip E. Areeda & Herbert Hovenkamp, *Antitrust Law* (4th and 5th eds. 2024) ...................9, 11

**INTRODUCTION**

As Infosys's First Amended Counterclaim ("FAC") explains, Cognizant has illegally entrenched itself as a monopolistic and extortionate toll collector in the middle of the U.S. healthcare system. Through anticompetitive conduct, Cognizant extracts inflated prices from Health Plans (i.e., U.S. managed health insurance organizations) for specialized software (Core Administration Software) and IT services (Core Administration IT Services) that Health Plans need to provide healthcare coverage to their members. When Infosys sought to break Cognizant's dominance by launching Infosys Helix—better-priced, next-generation software—Cognizant unleashed its monopoly power against Infosys to foreclose competition on the merits that would force Cognizant to lower prices and improve its stale products and services.

By its own admission, Cognizant is the dominant provider of Core Administration Software and Core Administration IT Services in the United States, and its own data show ███ market shares. Cognizant did not achieve its dominance of these relevant markets through legal competition. Instead, Cognizant bought its dominance and then enhanced and maintained it through a multifaceted course of anticompetitive conduct. Cognizant thwarts competition from more efficient rivals, like Infosys, by locking in customers, interfering with competitors' ability to provide the products/services at issue, and outright prohibiting competition.

These are textbook antitrust violations, and the FAC's amended market definitions thoroughly remedy the deficiencies this Court identified in dismissing the original Counterclaim. Cognizant moves to dismiss the FAC and renews its previously rejected request for a partial stay of discovery. Dkt. 170 ("Mot."). But Cognizant's arguments distort precedent, misstate Infosys's detailed allegations, ignore well-pleaded facts, and raise improper factual disputes. Because the FAC plausibly alleges each of its antitrust claims in robust detail and a partial discovery stay is unwarranted, Infosys asks the Court to deny Cognizant's motions in their entirety.

## BACKGROUND

Health Plans depend on Core Administration Software and Core Administration IT Services to provide healthcare coverage to Americans. FAC (Dkt. 166) ¶¶ 1, 128, 133. Cognizant, the self-professed "number one player in health care in the United States," is a monopolist in the Core Administration Software and Core Administration IT Services Markets. *Id.* ¶¶ 1, 165–95, 172. Cognizant has willfully acquired and maintained its monopoly power in each of these markets, intentionally sought to monopolize, and unreasonably restrained trade. *Id.* ¶¶ 196–302.

Cognizant has engaged in a sweeping course of exclusionary conduct to stifle competition—from Infosys and other competitors—in the relevant markets. *Id.* ¶¶ 10, 202. Cognizant allocates the markets with certain horizontal competitors, coerces Health Plans into accepting contractual "most favored vendor" provisions that prohibit and restrict them from obtaining services from Cognizant's competitors (including Infosys) who have not agreed to illegal market allocation, compels its competitors (including Infosys) to enter illegitimate NDAAs that raise prices and reduce quality and output for Health Plans, stopped profitable training solely to prevent competition, and targeted Infosys with predatory hiring to stymie Infosys Helix. *Id.* ¶¶ 10, 15, 42–45, 71–107. Cognizant's exclusionary conduct lacks any valid justification. *Id.* ¶¶ 207–08. Cognizant's conduct is injuring competition in the relevant markets by excluding competitors, thus raising prices and reducing quality and output for Health Plans and causing economic harm to Infosys and other excluded rivals. *Id.* ¶¶ 16–18, 66, 69, 108–09, 209–19.

In October 2025, this Court dismissed Infosys's original Counterclaim without prejudice because Infosys's market definitions did not sufficiently address interchangeability and granted leave to amend. Dkt. 141 ("Order"). Infosys timely filed the FAC to correct the deficiencies. The FAC pleads claims under Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2, and Section 15.05 of the Texas Free Enterprise and Antitrust Act (TFEAA). FAC ¶¶ 221–309.

## LEGAL STANDARD

Under Rule 12(b)(6), the question is whether Infosys "state[s] a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

## ARGUMENT

The FAC thoroughly alleges facts showing Cognizant has violated the Sherman Act and TFEAA many times over. All of Cognizant's arguments for dismissal fail because the FAC plausibly pleads (1) monopolization, including (a) well-defined markets curing the previous deficiencies and (b) exclusionary conduct; (2) antitrust injury; (3) attempted monopolization; and (4) unreasonable restraints of trade. And Cognizant's attempt to relitigate its rejected request for a partial-discovery stay fails because it is unjustified, unworkable, and contrary to law.

### A.    The FAC States a Monopolization Claim.

A Section 2 monopolization claim requires "(1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident." *U.S. v. Grinnell Corp.*, 384 U.S. 563, 570–71 (1966). The second element is shown through anticompetitive—i.e., "exclusionary"—conduct. *Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585, 602 (1985). The FAC sufficiently pleads both elements. Conceding monopoly power, Cognizant argues only two narrow market definition issues on the first element. These challenges fail because they misread and ignore Infosys's amended market-definition allegations, which thoroughly resolve the previous deficiencies the Court identified: the FAC now fully addresses interchangeability. Satisfying the second element, the FAC also thoroughly pleads that Cognizant engaged in exclusionary conduct within those markets. Cognizant's fact-bound challenges and defenses to these allegations are improper and meritless at the Rule 12(b)(6) stage.

3

1.    **The Relevant Markets Fully Address Interchangeability.**

The FAC fully addresses the market-definition deficiencies the Court identified by "includ[ing] all commodities reasonably interchangeable by consumers for the same purposes" within the Core Administration Software and the Core Administration IT Services relevant markets. *Shah v. VHS San Antonio Partners, L.L.C.*, 985 F.3d 450, 454 (5th Cir. 2021) (quotation marks omitted); *see* Order 5. Specifically, the FAC defines the Core Administration Software Market as "*all* Core Administration Software that performs the core functions of Health Plans." FAC ¶ 125 (emphasis added). It thus includes any and all substitute software (including in-house) that performs the core functions of Health Plans, consistent with this Court's Order. Similarly, the FAC defines the Core Administration IT Services Market as "*all* Core Administration IT Services provided to Health Plans, whether by a Core Administration IT Services Provider or supplied by Health Plans themselves." *Id.* ¶ 137 (emphasis added). Thus, following this Court's order, Infosys has not "excluded IT services substitutes from its proposed market despite seemingly acknowledging they exist." Order 6. Cognizant's arguments to the contrary simply "misread[]—or perhaps overlook[]—parts of" the FAC. *Green v. Thomas*, 129 F.4th 877, 884 (5th Cir. 2025).

a.    **The Core Administration Software Market Includes All Substitutes.**

Cognizant's only challenge to the Core Administration Software Market rests on a fundamental misreading of how the FAC defines that market. Cognizant argues that the market "cannot be limited to only those products that offer, in a single package, all three core Health Plan functions." Mot. 7. But the FAC imposes no such limitation. By broadly defining the market as "all Core Administration Software that performs the core functions of Health Plans," it expressly includes any software or mix of software performing these core functions. FAC ¶ 125; *see id.* ¶ 2 (defining Core Administration Software as software that performs Health Plans' "most critical, core functions"). Thus, the FAC satisfies the *Shah* standard because it includes all "viable

alternatives" to Cognizant's Core Administration Software (QNXT and Facets). 985 F.3d at 455.

Cognizant's argument that the FAC "narrowly defines its Software Market to include *only* software that meets all three core needs of Health Plans, and nothing else," Mot. 7, is unsupported and contrary to the principle that the FAC must be "construe[d] . . . in the light most favorable to [Infosys as the counterclaim] plaintiff." *Reyna v. Epiroc Drilling Sols., LLC*, No. 3:23-CV-1005-X, 2023 WL 8285021, at *2 (N.D. Tex. Nov. 30, 2023). Pointing to Paragraph 125, Cognizant argues the FAC "alleges Health Plans will license Core Administration Software *only* 'from a single company' to 'handle all their core functions in an end-to-end fashion.'" Mot. 7 (emphasis added). But the word "only" does not appear in Paragraph 125, which actually alleges the opposite: "Health Plans *usually* license one Core Administration Software from a single company . . . to handle all their core functions in an end-to-end fashion." FAC ¶ 125 (emphasis added). "Of course, usually does not mean always." *Lac du Flambeau Band of Lake Superior Chippewa Indians v. Coughlin*, 599 U.S. 382, 406 (2023) (Gorsuch, J., dissenting); *accord, e.g.*, *U.S. v. Jeffries*, 587 F.3d 690, 694 (5th Cir. 2009). Similarly, the fact that "few Health Plans use more than one Core Administration Software" necessarily means that some do. FAC ¶ 127.

Also contrary to Cognizant's argument, the FAC fully accounts for the possibility that Health Plans can "mix and match products to cover th[eir core] functions," Mot. 7, alleging that some Health Plans do just that, *see* FAC ¶¶ 81, 125–27. Indeed, every Health Plan using Infosys Helix does so because it does not yet offer all three core functions. FAC ¶ 179. Software like Helix that performs some, but not all, of the functions is in the Core Administration Software Market for the very reason that mixing and matching is possible. *Id.* Misstating the FAC, Cognizant cites Paragraphs 81 and 179 for the proposition that "Plan 1 relied on a mixture of in-house software *and Helix* to cover the core Health Plan functionalities." Mot. 7 (emphasis added). But actually the

FAC explains that Plan 1 used in-house software for "member enrollment" and "*QNXT . . .* for the rest of its core functions." FAC ¶ 81 (emphasis added). Infosys Helix replaced Plan 1's in-house software, not QNXT, because it does not yet offer claims processing, *id.* ¶¶ 81, 179.

While fully accounting for Health Plans that mix and match Core Administration Software—including "self-built" software—to perform their core functions, FAC ¶¶ 124–29, 179, the FAC explains why few Health Plans do so. "If a Health Plan seeks to use a different Core Administration Software in addition to QNXT or Facets, it must still pay Cognizant for the full cost of QNXT and Facets—regardless of which functionality it is using." FAC ¶ 127. Given that Cognizant dominates ▮▮ of the market, FAC ¶ 171, it is unsurprising that Health Plans "usually" use one Core Administration Software—Cognizant's—because they have little financial choice.

### b.    The Core Administration IT Services Markets Include All Substitutes.

Cognizant's challenge to the Core Administration IT Services Markets similarly fails. As explained above, Infosys pleads a relevant market that accounts for interchangeability: Core Administration IT Services *are* interchangeable across "software platforms" (i.e., Core Administration Software). FAC ¶¶ 138, 146, 154, 162. Cognizant's contrary argument, Mot. 7–8, selectively misreads the FAC.

Most importantly, the FAC explains that "Core Administration IT Services . . . are complex IT projects that require various specializations depending on the specific project, involve a high volume of work, and thus require *large teams of technicians* with multiple skillsets and expertise." FAC ¶ 133 (emphasis added). "Core Administration IT Services Providers employ a variety of technicians with *the full range* of skills, experience, expertise, and specializations needed to assemble these large teams to deliver the projects." *Id.* ¶ 138 (emphasis added). As a result, "Core Administration IT Services Providers are reasonably interchangeable with each other across various Core Administration IT Services projects." *Id.* The FAC thus squarely answers the

question Cognizant claims is unanswered: Core Administration IT Services and Providers are interchangeable across software platforms. *Id.* ¶¶ 138, 146, 154, 162.

Similarly, the FAC explains that "technicians" are reasonably interchangeable across software platforms. *See id.* ¶¶ 138, 146, 154, 162. The FAC alleges technicians' non-interchangeable specializations center on different types of services, *not* different software. In general, "individual technicians are reasonably interchangeable with each other," *except* across service type specializations—notably integration, testing, and migration. *Id.*¶¶ 138, 146, 154, 162. Thus, "[e]xperienced individual technicians specializing in Core Administration Integration *are interchangeable with each other* but not with individual technicians (of any experience level) specializing in *other types* of Core Administration IT Services (e.g., Core Administration Testing)." *Id.* ¶ 146 (emphases added); *see also id.* ¶¶ 154 (same for Core Administration Testing and Migration). Indeed, many projects require nothing more than "see[ing] the user interface of [a] Core Administration Software (i.e., what anyone using the software sees on the screen)," which a technician can easily do without prior experience with the particular software. *Id.* ¶ 26. Contrary to Cognizant's argument, the FAC answers the question "whether, for example, a Core Administration Testing engineer who services Facets is capable of servicing Helix or third-party Core Administration Software." Mot. at 8. Yes: "Experienced individual technicians specializing in Core Administration Testing are interchangeable with each other." FAC ¶ 154.[1]

As to Cognizant's question about the "interchangeability of . . . software updates," Mot. 7,

---

[1] Cognizant's question is not actually relevant because the Core Administration IT Services Markets consist of "projects" requiring "large teams of technicians." FAC ¶ 133. This case is not about employment markets for individual technicians. Indeed, "individual technicians are not reasonably interchangeable with Core Administration IT Services Providers because Core Administration IT Services projects require large teams of specialists with multiple experience levels." *Id.* ¶ 138. Nonetheless, the FAC answers the question.

such updates are not part of the Core Administration IT Services Markets. Cognizant does not connect this question to anything in the FAC or explain its relevance. The "range of Core Administration IT Services" consists of "Core Administration Integration, Core Administration Testing, and Core Administration Migration, as well as implementing Core Administration Software; developing and maintaining applications related to Core Administration Software; deploying artificial intelligence tools related to Core Administration Software; and generating automations enabling Core Administration Software to perform Health Plans' core functions effectively." FAC ¶ 133. Updating Core Administration Software is not on the list, nor would it make sense for *software* updates to come from a Core Administration IT *Services* Provider rather than a Core Administration *Software* Provider (i.e., outside the relevant IT services markets). But even if software updates were on the list, the FAC would provide the answer: Core Administration IT Services and Providers *are* interchangeable across software. *Id.* ¶¶ 138, 146, 154, 162.

To the extent Cognizant disagrees with the FAC's straightforward answers regarding interchangeability within the Core Administration IT Services Markets, Cognizant presents "a question of fact." *Apani Sw., Inc. v. Coca-Cola Enters., Inc.*, 300 F.3d 620, 628 (5th Cir. 2002); *see also George v. SI Grp., Inc.*, 36 F.4th 611, 619 (5th Cir. 2022) ("[A] Rule 12(b)(6) motion tests the sufficiency of the pleadings, not the merits of the case.").

### 2. The FAC Amply Alleges Exclusionary Conduct.

The second element of a Section 2 claim requires "exclusionary" conduct: "the use of monopoly power to foreclose competition, to gain a competitive advantage, or to destroy a competitor." *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 482–83 (1992) (quotation marks omitted). The FAC properly pleads this element. It alleges Cognizant uses its monopoly power in the relevant markets to engage in a course of conduct solely to foreclose and destroy competition and to gain a competitive advantage. FAC ¶¶ 201–06.

8

### a.      Cognizant's Course of Conduct Is Exclusionary as a Whole.

Cognizant applies the wrong framework in analyzing Infosys's allegations of exclusionary conduct. It mischaracterizes Infosys's allegations and then seeks to analyze each part of the exclusionary scheme in isolation. But "[i]n a monopolization case conduct must always be analyzed 'as a whole.'" Philip E. Areeda & Herbert Hovenkamp, *Antitrust Law*, ¶ 310c7 (4th and 5th eds. 2024) ("Areeda"); *see Cont'l Ore Co. v. Union Carbide & Carbon Corp.*, 370 U.S. 690, 699 (1962); *Swift & Co. v. U.S.*, 196 U.S. 375, 396 (1905). Thus, "when a plaintiff alleges that a scheme or course of conduct was anticompetitive, the scheme or conduct must be considered as alleged, not in manufactured subcategories." *Duke Energy Carolinas, LLC v. NTE Carolinas II, LLC*, 111 F.4th 337, 354–55 (4th Cir. 2024); *accord, e.g.*, *Cont'l*, 370 U.S. at 698–99. Even if "no one of the instances of improper conduct, standing alone, would lead to section 2 liability," a monopolization claim is stated where "[t]aken together . . . they show a pattern of exclusionary behavior." *Associated Radio Serv. Co. v. Page Airways, Inc.*, 624 F.2d 1342, 1356 (5th Cir. 1980); *accord, e.g.*, *Swift*, 196 U.S. at 396; *Duke*, 111 F.4th at 355.

The FAC alleges precisely that type of pattern of exclusionary behavior, FAC ¶¶ 39–109, 201–15, demonstrating that Cognizant's "overall success was influenced by factors other than the superiority of its products and services." *Associated Radio*, 624 F.2d at 1356; *see also Universal Hosp. Servs., Inc. v. Hill-Rom Holdings, Inc.*, No. CIV.A. SA-15-CA-32, 2015 WL 6994438, at *6 (W.D. Tex. Oct. 15, 2015). In the analogous *Duke* case, an emerging competitor offering a more efficient product (in that case, electricity) asserted that the defendant's seemingly distinct acts were part of a unified plan to block the competitor from competing for a key contract. 111 F.4th at 354. Reversing summary judgment for the defendant, the Fourth Circuit explained that a court errs in applying rigid, categorical tests to "a complex or atypical exclusionary campaign, the individual components of which do not fit neatly within pre-established categories." *Id.* It therefore evaluated

9

the defendant's actions as "part of a singular, coordinated anticompetitive effort" and held that they presented sufficient evidence for a jury to "conclude [the defendant] saw a more efficient competitor in [the plaintiff] and acted, through a broad range of anticompetitive conduct in various contexts, to eliminate that competition, to the detriment of consumers." *Id.* at 356, 366.

Here too, Infosys alleges it is a more efficient IT services provider than Cognizant and its new Infosys Helix software is superior to Cognizant's software. FAC ¶¶ 1, 10, 45, 54, 58, 61, 65, 108. Faced with this unique competitive threat, Cognizant engaged in a course of conduct with no legitimate purpose other than to stop that threat. *Id.* ¶¶ 10, 44, 50, 52, 57, 59, 60, 64, 70, 207–08. While specific acts may differ, *Duke* demonstrates Cognizant's alleged course of conduct is plausibly exclusionary: it excludes a more efficient rival, Infosys, on some basis other than efficiency. At the pleading stage, that alone is enough to reject Cognizant's challenge to the exclusionary conduct element because Infosys "should be given the full benefit of [its] proof without tightly compartmentalizing the various factual components and wiping the slate clean after scrutiny of each." *Cont'l*, 370 U.S. at 699. Cognizant's defenses for its conduct—which the FAC directly contradicts, *e.g.*, FAC ¶¶ 70, 207–08—present "a labyrinth of factual questions that the Court will not venture down at this stage." *Caris MPI, Inc. v. UnitedHealthcare, Inc.*, No. 3:21-CV-3101-X, 2025 WL 888498, at *2 (N.D. Tex. Mar. 21, 2025); *see also, e.g.*, *Eastman Kodak*, 504 U.S. at 479; *Duke*, 111 F.4th at 362, 365.

### b.    Cognizant's Acts Are Individually Exclusionary.

Even viewed in isolation, however, each component of Cognizant's scheme is anticompetitive and individually satisfies the exclusionary conduct element under Section 2.

### i.    Cognizant's Market Allocation Is Exclusionary.

The FAC plausibly alleges that Cognizant's "TriZetto Consulting Partner Network" market-allocation scheme is exclusionary conduct satisfying the second element of Infosys's

monopolization claims under Section 2. FAC ¶¶ 3, 15, 42, 202–03; *see also id.* ¶ 204 (explaining how this conduct excludes competition in each of the Core Administration Software and IT Services Markets). Cognizant's "allocation of customers," in addition to being "a per se violation of Section One of the Sherman Act," *U.S. v. Cadillac Overall Supply Co.*, 568 F.2d 1078, 1090 (5th Cir. 1978), *infra* at 20, 21–22, constitutes exclusionary conduct under Section 2 of the Sherman Act because of Cognizant's unchallenged monopoly power. *Md. & Va. Milk Producers Ass'n v. U.S.*, 362 U.S. 458, 463 (1960); *U.S. v. Griffith*, 334 U.S. 100, 106 (1948); *see also* Areeda ¶ 703d (recognizing "even the *unaccepted* solicitation to divide a market could" constitute exclusionary conduct under Section 2 (emphasis added)).

Cognizant ignores this market allocation in its challenge to Infosys's Section 2 exclusionary conduct allegations, *see* Mot. 8–14, despite addressing the point on other grounds in its challenge to Infosys's Section 1 claims, *see id.* 21–23. Cognizant has thus conceded that the alleged market allocation sufficiently pleads exclusionary conduct under Section 2. *See Wilson v. State Farm Mut. Auto. Ins.*, No. 3:20-CV-02965-X, 2022 WL 524793, at *3 & n.15 (N.D. Tex. Feb. 22, 2022). Even if Cognizant's Section 1 challenge to the market-allocation allegations merits any consideration under Section 2, however, Cognizant misstates the allegations rather than offering any valid basis to dismiss them, as explained *infra* at 21–22.

### ii.    Cognizant's Contracting Practices Are Exclusionary.

The FAC plausibly alleges that Cognizant "systematically imposes" a wide range of "illegitimate contractual restrictions and prohibitions in the Core Administration Software Market and the Core Administration IT Services relevant markets" solely to "exclude competition it views as a threat to its dominance" and "foreclos[e] competitors from large portions of these markets." FAC ¶ 42; *see id.* ¶¶ 43–71, 201–04, 207–08. These allegations easily satisfy the exclusionary conduct element under Section 2. *See, e.g.*, *U.S. v. Apple, Inc.*, 791 F.3d 290, 304, 320 (2d Cir.

11

2015) (anticompetitive "most favored" vendor provisions); *U.S. v. Microsoft Corp.*, 56 F.3d 1448, 1451–52 (D.C. Cir. 1995) (exclusionary licenses and NDAs). Indeed, Cognizant broadly imposes contracts with Health Plans—against their wishes and interest—that exclude competitors outright. *See, e.g.*, FAC ¶¶ 43, 45, 69. That is blatant and unequivocal "use of monopoly power to foreclose competition." *Eastman Kodak*, 504 U.S. at 482–83 (quotation marks omitted).

Cognizant raises "no duty to deal" and intellectual property defenses. Mot. 8–11. But these are fact-bound justifications for conduct that is exclusionary on its face. *See infra* at 15–17. Cognizant's only other argument, limited to the Core Administration Software Market (Counts I and III), is that the FAC purportedly "makes no attempt to explain how these contracts could impede Infosys' ability to make its own Health Plan software." Mot. 11. But the FAC spells it out: Cognizant systematically imposes its contractual prohibitions and restrictions to prevent (1) its Health Plan customers from switching to competing Core Administration Software, including Helix, and (2) its Core Administration IT Services competitors, including Infosys, from entering the Core Administration Software Market. Cognizant uses its contracts with Health Plans to "impos[e] . . . artificial hurdles to prevent Health Plans who use Cognizant's Core Administration Software from replacing it or making it interoperable with Infosys Helix or other Core Administration Software." FAC ¶ 15. And Cognizant punishes Core Administration IT Services competitors, including Infosys, who dare to enter the Core Administration Software Market. Indeed, when Infosys started trying to enter the market with Infosys Helix, "Cognizant unleashed a systematic course of conduct" that included increasingly damaging and illegitimate "contractual restrictions and prohibitions" that are "causing significant financial harm to Infosys." *Id.* ¶¶ 15–16; *see also id.* ¶ 208. These contractual restrictions and prohibitions not only punish (and thus deter) Core Administration Software competition, they also "prevent[] competitors, including

Infosys, from offering [Health Plans] an alternative to Cognizant's Core Administration Software," prevent "adequate staffing" to meet Health Plans' needs, "deny[] talent to competitors, including Infosys," and "prevent[] Cognizant competitors, including Infosys, from developing" competing software—even without reliance "on *any* protectable Cognizant information." *Id.* ¶¶ 52, 56–57, 60, 62.

### iii.    Cognizant's Shift in Training Availability Is Exclusionary.

The FAC plausibly alleges that Cognizant's decision to start banning Infosys and other IT services competitors from previously available training is irrational but for the exclusion of competition. *See Aspen*, 472 U.S. at 607–08. For decades, Cognizant TriZetto and its predecessors offered profitable training on QNXT and Facets to Infosys and other Core Administration IT Services Providers. FAC ¶¶ 29–36, 72–76. "A few years ago," however, Cognizant abruptly changed course and began "refusing to allow training on its Core Administration Software for competing Core Administration IT Services vendors, including Infosys." *Id.* ¶¶ 72, 75.[2] "Cognizant's decision to withhold training lacks any efficiency or other procompetitive rationale." *Id.* ¶ 72. Contrary to Cognizant's argument that it could not profit from offering the training, Mot. 12, the FAC plausibly alleges the opposite: Cognizant is losing "substantial profits" from the "additional fees" it "could charge" for training. FAC ¶¶ 75, 76. Cognizant is "intentionally forego[ing these] substantial profits" to exclude Infosys and other competitors and then "recoup[ing] lost training profits in the form of supracompetitive pricing for Core Administration IT Services." *Id.* ¶ 76. Cognizant's conduct is thus exclusionary. *See Aspen*, 472 U.S. at 608; *Duke*, 111 F. 4th at 364; *Viamedia, Inc. v. Comcast Corp.*, 951 F.3d 429, 463 (7th Cir. 2020).

---

[2] Cognizant claims "*prior owners* of QNXT and Facets . . . offered training," Mot. 12, but actually the change in Cognizant's course of conduct occurred just "[a] few years ago," long after Cognizant's acquisition of TriZetto more than a decade ago, FAC ¶¶ 35, 75.

Cognizant invokes *In re Educ. Testing Serv. Litig.*, 429 F. Supp. 2d 752, 759 (E.D. La. 2005). Mot. 11–12. But that case did not involve—and expressly distinguished—the situation here: an alleged monopolist "chang[ing] a profitable course of dealing with a competitor to the detriment of that competitor." *Educ. Testing*, 429 F. Supp. 2d at 759. Cognizant's arguments that (1) QNXT and Facets training are not profitable and (2) withholding the training did not cause competitive harm, Mot. 12, are contrary to the FAC's well-pleaded allegations, improperly raising factual disputes. The FAC alleges facts showing the training was—and still would be—profitable. FAC ¶¶ 73–76. The FAC also explains the competitive harms: reduced output and efficiency, degraded quality, and increased prices for Health Plans. *Id.* ¶ 77.

### iv.    Cognizant's Predatory Hiring Is Exclusionary.

The FAC plausibly alleges that Cognizant engaged in hiring solely to harm Infosys, combined with efforts to induce disloyal performance. *See Taylor Publ'g Co. v. Jostens, Inc.*, 216 F.3d 465, 480–82 & n.11 (5th Cir. 2000). After Infosys entered the Core Administration Software Market, Cognizant lured away the executive sponsors of Infosys Helix, inducing them to frustrate its development *while they remained at Infosys*. FAC ¶¶ 92–106, 108. Cognizant did so solely to protect Cognizant's dominance in the relevant markets. *Id.* Cognizant's predatory hiring "delayed Infosys[] Helix's development, growth, sales, and revenue trajectory by at least eighteen months, resulting in substantial lost income and increased costs to Infosys." *Id.* ¶ 109. This alleged conduct is squarely exclusionary under *Taylor*, 216 F.3d at 408 & n.11.

Cognizant makes two challenges, both improperly fact bound. *First*, Cognizant labels the FAC's allegations "threadbare." Mot. 13. But the FAC alleges facts showing Ravi Kumar, Shveta Arora, and Ravi Kiran Kuchibhotla suddenly shifted from enthusiastically advancing Infosys Helix's development to sabotaging it for months while remaining employed at Infosys and secretly scheming with Cognizant. FAC ¶¶ 92–106. These "material allegations" are sufficient at this stage,

when "minute detail[s]" are not required and allegations are construed "in the light most favorable to the nonmoving party." *Air Vent, Inc. v. Powermax Elec. Co.*, No. 3:25-CV-0852-X, 2025 WL 3027252, at *1 (N.D. Tex. Oct. 29, 2025).

*Second*, Cognizant relies on extrinsic evidence to argue the FAC's allegations are not plausible. Mot. 14. Specifically, Cognizant asks the Court to dismiss the FAC based on evidence from "Infosys's own executive leadership webpage"—which is not attached to or referenced in, much less central to, the FAC. Mot. 14. Cognizant's argument is improper. *See, e.g.*, *Vuoncino v. Forterra, Inc.*, 140 F.4th 200, 210 (5th Cir. 2025). The FAC's allegations that Cognizant recruited Kuchibhotla solely to harm Infosys "enjoy a presumption of truth" regardless of supposedly "conflicting evidence" Cognizant improperly seeks to present "at the motion-to-dismiss stage." *Id.*

### 3.    Cognizant's "No Duty to Deal" and "IP" Defenses Fail.

Cognizant advances two defenses for its exclusionary contracting practices: (1) that the antitrust laws impose no duty to deal with Infosys and (2) that its contracting practices "safeguard [its] commercially valuable IP." Mot. 8–11. Cognizant offers no good reason for the Court to parse these fact-bound defenses at this stage given that, even according to Cognizant, they would apply only to a portion of the alleged exclusionary conduct (i.e., Cognizant's contracting practices). *See id.* Indeed, these defenses would not rebut Infosys's plausible allegations of an exclusionary course of conduct, market allocation, predatory hiring, or training denial under *Aspen* (as explained *supra* at 13–14). In any event, these defenses are meritless and contrary to the pleadings.

#### a.    Cognizant's Contracting Practices Are Not a Refusal to Deal.

Cognizant attempts to recast its contracting practices as the type of refusal to deal at issue in *Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398 (2004), and *Pac. Bell Tel. Co. v. linkLine Commc'ns, Inc.*, 555 U.S. 438 (2009). *See* Mot. 8–10. Cognizant's attempt fails because a "refusal to deal" defense applies only when the case involves *solely* a *unilateral*

15

refusal to deal with a competitor. *See U.S. v. Live Nation Ent., Inc.*, No. 24-3973, 2025 WL 835961, at *2 (S.D.N.Y. Mar. 14, 2025) (collecting cases). "Refusal to deal doctrine targets only a discrete category of section 2 cases attacking a firm's unilateral decisions about with whom it will deal and on what terms." *Novell, Inc. v. Microsoft Corp.*, 731 F.3d 1064, 1076 (10th Cir. 2013) (Gorsuch, J.). It does not immunize Cognizant's conduct here: an "assay by the monopolist into the marketplace—to limit the abilities of third parties to deal with rivals." *Id.* at 1072.

The FAC details that Cognizant's contracting practices are not solely unilateral refusals to deal with a competitor. Rather, "Cognizant imposes contractual restrictions *on Health Plans*"— third parties who are not competitors. FAC ¶ 43 (emphasis added). In other words, the antitrust violation is not that Cognizant refuses to deal with Infosys (a competitor), but rather that Cognizant uses its monopoly power to restrict Health Plans (third parties). Indeed, Cognizant's contractual restrictions often flatly prohibit Health Plans from hiring Cognizant's competitors. *Id.* Thus, Cognizant has no valid "refusal to deal" defense. *See Eastman Kodak*, 504 U.S. at 463 n.8 ("Assuming, *arguendo*, that [defendant]'s refusal to sell parts to any company providing service can be characterized as a unilateral refusal to deal, its alleged sale of parts to third parties on condition that they buy service from [defendant] is not.").

Nor do Cognizant's NDAAs with competitors qualify as unilateral refusals to deal. Cognizant points to *linkLine*, but that case actually confirms there is no "refusal to deal" defense here. In *linkLine*, a vertically integrated defendant had no duty to supply plaintiffs at their preferred price. 555 U.S. at 449–51. The conduct was a unilateral refusal to deal because plaintiffs sought forced sharing of the defendant's self-supply. *Id.* Here, by contrast, Infosys does not seek forced sharing of an input. Instead, Infosys seeks to avoid restrictions imposed by Cognizant—when *third-party* Health Plans seek to hire Infosys—that have no legitimate purpose. That conduct is

classic exclusionary behavior, not a unilateral refusal to deal.

### b.    Cognizant's IP Defense Is Contrary to the Pleadings.

As a last resort, Cognizant argues its exclusionary contracting practices "promote competition" because they "protect trade secret information" and "safeguard . . . valuable IP." Mot. 10–11. That is not a reason to dismiss. The purported defense does not "appear clearly on the face of the pleadings." *Pickersgill v. Neely*, No. 3:21-CV-00773-X, 2021 WL 5163197, at *4 (N.D. Tex. Nov. 5, 2021) (quotation marks omitted). In fact, it is contrary to Infosys's allegations. *See* FAC ¶ 208 ("Cognizant['s] exclusionary conduct does not protect any genuine intellectual property, trade secrets, or confidential information," confirmed by Cognizant's inconsistencies and deviations from industry standards); *accord, e.g., id.* ¶ 70. At best, Cognizant's purported procompetitive justifications raise fact disputes for a later stage of the case. *See Viamedia*, 951 F.3d at 460 ("[B]alancing anticompetitive effects against hypothesized justifications . . . is not amenable to resolution on the pleadings."); *see also Microsoft*, 253 F.3d at 63 (rejecting the same type of IP defense raised by Cognizant, characterizing it as "border[ing] upon frivolous"); *N.Y. ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638, 660 (2d Cir. 2015) (rejecting argument patent holder has an "absolute and unfettered right to use its intellectual property as it wishes" (quotation marks omitted)); *accord FTC v. Actavis, Inc.*, 570 U.S. 136, 148–51 (2013).

### B.    The FAC Pleads Antitrust Injury.

"Antitrust injury fleshes out the basic idea that '[t]he antitrust laws were enacted for the protection of *competition*, not *competitors.*'" *Pulse Network, L.L.C. v. Visa, Inc.*, 30 F.4th 480, 488 (5th Cir. 2022) (quoting *Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 334 (1990)). To evaluate antitrust injury, the Court "must assume" Cognizant's conduct "violate[s] the antitrust laws." *Id.* at 494. Infosys plausibly alleges antitrust injury because its losses flow directly from Cognizant's exclusionary conduct and reflect harm to competition in the relevant markets—higher

prices, reduced output, and lower quality suffered by Health Plans and their members.

Like the competitor-plaintiff in *Pulse*, Infosys "doesn't lose customers to" Cognizant "in a fair fight over" prices or quality. *Id.* at 491; *see, e.g.*, FAC ¶¶ 52, 71, 179–80, 195, 213. "Rather," Infosys "loses customers because" Cognizant "abuses its dominance in the . . . market[s]" at issue, which constitutes antitrust injury. *Pulse*, 30 F.4th at 491; *see, e.g.*, FAC ¶¶ 9–11, 15–18, 64–65, 69–71, 76, 185–86, 195, 209–19. Cognizant "has used its market dominance to strong-arm" Health Plans "into avoiding" Infosys's Core Administration Software and IT Services. *Pulse*, 30 F.4th at 495; *see, e.g.*, FAC ¶¶ 9–11, 15–18, 42–45, 52, 54, 57–58, 60–61, 64–65, 69–71, 185–86, 195, 209–19. If anything, Infosys's injury is even more obvious than the injury in *Pulse* because Cognizant directly prohibits Health Plans from using Infosys. *See* FAC ¶¶ 66–71, 186, 209–19.

Cognizant's arguments on antitrust injury spill over four pages yet ignore *Pulse* altogether. *See* Mot. 14–17. Similarly, Cognizant argues that "Infosys alleges injury only to itself," Mot. 14, yet ignores clear allegations to the contrary, including that "Cognizant has broadly imposed its exclusionary NDAAs . . . on multiple other competitors since 2018," that Cognizant has "impose[d] its exclusionary restrictions and prohibitions broadly on Health Plans, including on many occasions since 2018," and that "Cognizant's anticompetitive and exclusionary conduct has imposed and continues to impose substantial costs across the U.S. healthcare system on Health Plans, providers, patients, competitors, and the competitive process more broadly," FAC ¶¶ 69, 209. Cognizant also distorts precedent by suggesting that Infosys's "hard-fought successes" "belie any claim to injury at all." Mot. 16. Cognizant's reliance on *Race Tires American, Inc. v. Hoosier Racing Tire Corp.*, 614 F.3d 57 (3d Cir. 2010), is misplaced. Unlike Infosys, the plaintiff in *Race Tires* claimed damages from competition on the merits rather than injury flowing directly from exclusionary conduct. *See* 614 F.3d at 83–84. Infosys has already suffered antitrust injury from

18

Cognizant's exclusionary conduct and is not required to wait until Cognizant succeeds in fully eliminating it from the markets. *See McWane, Inc. v. FTC*, 783 F.3d 814, 838 (11th Cir. 2015); *Microsoft*, 253 F.3d at 70–71. The competitor-plaintiff in *Pulse* showed antitrust injury by linking "decreas[ed] . . . revenue" and "los[t] customers" to the defendant's "alleged anticompetitive conduct." 30 F.4th at 491. So too here. Like the defendant in *Pulse*, Cognizant's "counterarguments do not persuade." *Id.* at 492.

### C.    The FAC States a Claim for Attempted Monopolization.

An attempted monopolization claim under Section 2 requires (1) exclusionary conduct, (2) with a specific intent to monopolize, and (3) a dangerous probability of success. *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 456–57 (1993). As explained above, the FAC alleges exclusionary conduct, *supra* at 8–17. It also alleges specific intent to monopolize for two independent reasons: (1) it alleges "public statements" by Cognizant and (2) its allegations of "anticompetitive conduct . . . entitle" Infosys "to the inference of" Cognizant's "specific intent." *Universal*, 2015 WL 6994438, at *7; *see* FAC ¶¶ 1, 172, 191, 197–99. And the FAC sufficiently alleges a dangerous probability of success: "massive barriers to entry" and "a legally sufficient market share" in the relevant markets. *Universal*, 2015 WL 6994438, at *10; *see* FAC ¶¶ 174–78, 192–94, 196.

Cognizant contends that its public statements are not enough to show intent, Mot. 17–19, but that is wrong at this stage: "public statements" about using a "dominant position in [one] market to move into adjacent markets" "are sufficient to give rise to an inference of intent" "[a]t the pleading stage." *Universal*, 2015 WL 6994438, at *7 (citing *Tops Mkts. Inc. v. Quality Mkts., Inc.*, 142 F.3d 90, 101 (2d Cir. 1998)). Regardless, Cognizant's argument fails. Because Infosys "plausibly alleged anticompetitive conduct as part of its attempted monopolization claim, it is entitled to the inference of" Cognizant's "specific intent." *Id.* (citing *Aspen*, 472 U.S. at 603); *see*

*also E.I. du Pont Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 453 (4th Cir. 2011).

**D.    The FAC States a Claim for Unreasonable Restraints of Trade (§ 1).**

A Section 1 claim requires (1) one or more agreements (2) that unreasonably restrain trade (3) in a relevant market. *MM Steel, L.P. v. JSW Steel (USA) Inc.*, 806 F.3d 835, 843 (5th Cir. 2015). The FAC sufficiently alleges agreements between Cognizant and (a) its competitors in the TriZetto Consulting Partner Network, (b) its Health Plan customers, and (c) Infosys and other competitors on whom Cognizant imposes NDAAs. *See* FAC ¶¶ 42–71, 109, 186, 204, 283, 294. These agreements unreasonably restrain trade because they involve illegal market allocation, which is unreasonable *per se*, and also because they are anticompetitive under the rule of reason, *supra* at 11–13, 15–17. *See MM Steel*, 806 F.3d at 848; *Cadillac*, 568 F.2d at 1087–90. The FAC also sufficiently alleges the relevant markets, *supra* at 4–8. Cognizant makes two arguments for dismissal of the Section 1 claims. First, Cognizant argues its "most favored vendor" prohibitions and restrictions on Health Plans and its NDAAs with competitors lack anticompetitive effects. Mot. 20–21. Second, Cognizant argues the FAC does not sufficiently plead market allocation. Mot. 21–23. Dismissal would only be appropriate if both arguments prevailed, yet both fail.

**1.    The FAC Sufficiently Alleges Anticompetitive Effects.**

Cognizant's argument regarding anticompetitive effects misstates both precedent and the FAC. *First*, Cognizant asserts the FAC does "not identify a single contract with an MFV clause or the percentage or number of contracts purportedly containing such provisions." Mot. 21. Cognizant cites no authority requiring the FAC to do so, and such "minute detail" about contracts is not required at this stage. *Air Vent*, 2025 WL 3027252, at *1. In any event, the FAC provides examples, describes the contractual provisions, reveals Cognizant "typically" includes them in its customer agreements, and explains they foreclose substantial shares and exclude entry. FAC ¶¶ 43–44, 69; *see also id.* ¶¶ 171, 187, 189 (specifying Cognizant's substantial shares). That is

amply sufficient at this stage. *See Air Vent*, 2025 WL 3027252, at *1.

*Second*, Cognizant argues the FAC "alleges no facts establishing any anticompetitive effect" from NDAAs. Mot. 21. But the FAC details the anticompetitive effects: higher prices, lower quality, and delay for Health Plans and higher costs, lost contracts, understaffing, and market exclusion for Infosys and other competitors. FAC ¶¶ 52, 54, 57–58, 60–62, 65. The FAC also explains Cognizant's NDAAs are "form agreements" it "broadly imposes" on Infosys and "other competitors." *Id.* ¶¶ 66, 69. Again, that is sufficient. *See Air Vent*, 2025 WL 3027252, at *1.

*Third*, Cognizant suggests—without citation to authority—that there can be no anticompetitive effects because Infosys has still managed to compete and no "competitor was unable to continue its operations." Mot. 21. This unsupported suggestion is contrary to law. *See, e.g.*, *Pulse*, 30 F.4th at 491; *McWane*, 783 F.3d at 838; *Microsoft*, 253 F.3d at 70–71.

## 2.    The FAC Sufficiently Alleges *Per Se* Anticompetitive Market Allocation.

Cognizant's argument regarding market allocation is equally meritless. *First*, Cognizant incorrectly asserts the FAC "contends that it is anticompetitive to deny Infosys access to the Network" and Infosys's "real gripe is that it is excluded from the Partner Network." Mot. 22. But the FAC actually alleges that the Network itself is illegal and anticompetitive because it involves a horizontal agreement between Cognizant and certain "small competitors" "to limit competition." FAC ¶ 42. Specifically, Cognizant has agreed with these competitors to allocate them certain "small Core Administration IT Services projects"—classic customer allocation—"in exchange for agreeing to accept Cognizant's monopolistic dominance of the markets." FAC ¶ 42; *see Cadillac*, 568 F.2d at 1090; *see also* FAC ¶¶ 202(a), 203. The FAC never alleges Infosys seeks access to the anticompetitive TriZetto Consulting Partner Network or would enter into an illegal allocation agreement. Cognizant points to Paragraphs 73 and 77 of the FAC, but neither even mentions the TriZetto Consulting Partner Network. The FAC leaves no doubt Infosys is determined to challenge

21

"Cognizant's monopolistic dominance of the markets," not "agree[] to accept" it. FAC ¶ 42.

*Second*, Cognizant argues its market allocation is "an agreement *between Cognizant and a customer*" rather than "horizontal competitors." Mot. 22. This argument *admits* Cognizant is—at best—the ringleader of a "vertical boycott constituting an unreasonable restraint of trade." *Spectators' Commc'n Network Inc. v. Colonial Country Club*, 253 F.3d 215, 225 (5th Cir. 2001). That alone precludes dismissal of the Section 1 claims. *See id.* at 225 n.4 ("[V]ertical boycott[s]" include "cases involving coerced customers," in which a monopolist prohibits its customers from dealing with a competitor.); *see also MM Steel*, 806 F.3d at 848–49; *Open Cheer & Dance Championship Series, LLC v. Varsity Spirit, LLC*, No. 2:23-CV-0155-Z, 2024 WL 1218573, at *5–6 (N.D. Tex. Mar. 21, 2024).

In any event, the FAC sufficiently alleges a classic market allocation: a horizontal agreement between Cognizant and its competitors giving them certain projects at certain customers under the guise of Cognizant's TriZetto Consulting Partner Network. FAC ¶¶ 3, 15, 42, 202–04. And the FAC points to a specific example of that allocation: a large Health Plan where Cognizant "authorized a handful of small competitors who have *agreed* to be part of Cognizant's 'TriZetto Consulting Partner Network' to perform minimal Core Administration IT Services projects." *Id.* ¶ 42 (emphasis added). That agreement is horizontal: between Cognizant and "small competitors." *Id.* To be sure, the example also shows Cognizant reinforces its horizontal allocation agreements by actively preventing its customers from circumventing the allocations. *Id.* Far from contradicting the alleged horizontal allocation, however, that alleged reinforcement confirms it. *See Cadillac*, 568 F.2d at 1081 (customer allocation includes not only "refraining from soliciting the other's customers" and "trad[ing] customer accounts" but also "active discouragement of the customer from changing suppliers"). To the extent Cognizant quibbles with the term "market allocation," it

elevates form over substance and raises an improper factual dispute at this stage. *See Am. Airlines, Inc. v. Travelport Ltd.*, No. 4:11-CV-244-Y, 2012 WL 3737037, at \*8 (N.D. Tex. Aug. 7, 2012) (citing *Transource Int'l, Inc. v. Trinity Indus., Inc.*, 725 F.2d 274, 280 (5th Cir. 1984)).

*Third*, Cognizant inaccurately asserts that "Infosys admits that small competitors would join the Partner Network to be 'more efficient' and better able to provide 'higher quality services,'" rendering the market-allocation allegations implausible. Mot. 23. The FAC makes no such admission. Cognizant cites only Paragraph 73, which describes a "Certified Service Partner" training program offered by QCSI over a decade ago, not Cognizant's current allocation scheme.

### E.    The FAC States a Claim for Violations of the TFEAA.

The FAC sufficiently pleads Texas Free Enterprise and Antitrust Act (TFEAA) claims for the same reasons it sufficiently pleads parallel federal claims. *See* Tex. Bus. & Com. Code § 15.04.

### F.    Cognizant Fails to Justify an Unworkable Partial Stay of Discovery.

Last month, Magistrate Judge Horan denied Cognizant's motion for a partial "stay of discovery." Dkt. 163. Cognizant's attempt to relitigate this issue without timely objecting is in tension with Rule 72(a). *See Esquivel v. Kendrick*, No. 22-50979, 2023 WL 5584168, at \*3 (5th Cir. Aug. 29, 2023) (per curiam) (challenge to magistrate judge's decision "not preserved" because party "did not timely object" under Rule 72(a)). Moreover, "courts should be loathe to [revisit prior decisions] in the absence of extraordinary circumstances such as where the initial decision was clearly erroneous and would work a manifest injustice." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988) (quotation marks omitted). Cognizant does not argue clear error or manifest injustice, Mot. 23–25, so its partial stay request merits denial on that basis alone.

Cognizant's partial stay request also merits denial under the three factors this Court considers when determining *de novo* whether to stay discovery pending a motion to dismiss. *PrimeSource Bldg. Prods., Inc. v. Lee Grp. Int'l, Inc.*, No. 3:19-CV-02878-X, 2020 WL 6140462,

at *1 (N.D. Tex. Aug. 12, 2020). "[T]he first and second factors," breadth of discovery and burden, "do not weigh in favor of the requested partial stay of discovery" for the reasons Magistrate Judge Horan explained, notably that "effectively bifurcating discovery . . . would be inefficient and borderline unworkable" in light of the overlapping claims and defenses. Dkt. 163. The third factor, strength of *dispositive* motions, also weighs against a partial stay because Cognizant's motion to dismiss lacks merit and, in any event, "the case will" *not* "be completely disposed of" even if Cognizant's "arguments are valid." *PrimeSource*, 2020 WL 6140462, at *2; *accord Colonna v. LoanDepot.com LLC*, No. 3:24-CV-0376-X, 2024 WL 5047875, at *1 (N.D. Tex. Dec. 9, 2024) ("[C]ourts have broad discretion and inherent power to stay discovery until preliminary questions that may *dispose of the case* are determined." (emphasis added and quotation marks omitted)).

Documents Cognizant recently produced confirm that bifurcation of discovery would be inefficient and unworkable given the substantial factual overlap between Cognizant's claims and Infosys's counterclaims. Notably, Cognizant has been using intellectual property justifications as nothing more than a pretext to block competition. For example, Cognizant imposes "contractual clause[s]" *not* to protect information about QNXT and Facets, but to "keep our competition at bay" and "play hardball with their access to our products" so competitors cannot "establish[] a footprint" with Health Plans using QNXT and Facets. App'x 12, 18, 35; *see also id.* at 10 ("We are discouraging clients from using [Infosys] and writing tough NDAAs"). Health Plans have expressed "extreme[] concern[]" that Cognizant's NDAA practices make it more difficult for them to "be agile and nimble in responding to [their own] customer needs" (i.e., insured Americans) and "jeopardiz[e] [their] operations." *Id.* at 22, 26. Cognizant's own employees acknowledge its practices are a "contentious" issue with Health Plans, as Cognizant is effectively "not allowing them to perform the business functions they need." *Id.* at 47. Cognizant's practices defy industry

standards. *See id.* at 21. In sum, Cognizant's competitive practices are relevant to Infosys's defenses to Cognizant's claims because they show QNXT and Facets information is not confidential or a trade secret: it is a bargaining chip. *See id.* at 5, 15, 18, 21, 24, 38–40. Moreover, the overlapping nature of the claims and defenses means that the same party and third-party witnesses will be questioned about topics relevant to both sides of the case—often in the same line of questioning. Cognizant's response that depositions can simply be "re-opened," Mot. 24 n.7, would subject dozens of witnesses—including many located abroad—to multiple depositions.

Infosys also has live affirmative defenses related to Cognizant's anticompetitive conduct: unclean hands and unenforceable NDAAs. Dkt. 130, at 59, 63; *see, e.g.*, *Kaiser Steel Corp. v. Mullins*, 455 U.S. 72, 77 (1982). Cognizant never moved to strike these defenses under Rule 12(f), and the time to do so has expired. In any event, dismissal of the Counterclaim under Rule 12(b)(6) does not justify striking the defenses under Rule 12(f) because the pleading standards are different. *See Crawford v. Magicstar Arrow Ent., LLC*, No. 3:22-CV-1935-X, 2023 WL 8705655, at *1 (N.D. Tex. Dec. 14, 2023). Infosys is therefore entitled to antitrust-related discovery on its defenses, rendering a stay of such discovery improper. *See* Fed. R. Civ. P. 26(b)(1).

## CONCLUSION

For these reasons, Infosys respectfully requests that the Court deny Cognizant's motions in their entirety. If the Court grants any aspect of the motion to dismiss, Infosys respectfully requests leave to amend.[3]

---

[3] Cognizant requests dismissal with prejudice but fails to show further amendment would be futile. Mot. 6. The Court's prior dismissal addressed market definition, and the FAC diligently sought to cure the deficiencies, so it would not be futile for Infosys to amend further if necessary. *Cf. Villarreal v. Navistar, Inc.*, No. 3:20-CV-02980-X, 2022 WL 14708977, at *7 (N.D. Tex. Mar. 8, 2022) (dismissing with prejudice only after "repeated[] fail[ures] to cure deficiencies"). Infosys has demonstrated its ability and intent to cure any deficiencies the Court might find, including by alleging additional facts learned from discovery produced by Cognizant since the FAC was filed.

Dated: December 11, 2025

Respectfully submitted,

By: */s/ Douglas E. Litvack*

Christopher J. Schwegmann (SBN 24051315)
Joshua Lang (SBN 24109450)
**LYNN PINKER HURST &**
**SCHWEGMANN, LLP**
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
Tel: (214) 981-3835
cschwegmann@lynnllp.com
jlang@lynnllp.com

Brent Caslin (*pro hac vice*)
Nick Saros (*pro hac vice*)
Kelly M. Morrison (*pro hac vice*)
**JENNER & BLOCK LLP**
515 S. Flower Street, Suite 3300
Los Angeles, CA 90071
Tel.: (213) 239-5100
BCaslin@jenner.com
NSaros@jenner.com
KMorrison@jenner.com

Shoba Pillay (*pro hac vice*)
Laura E. Pelanek (*pro hac vice*)
**JENNER & BLOCK LLP**
353 N. Clark Street
Chicago, IL 60654
Tel.: (312) 222-9350
SPillay@jenner.com
LPelanek@jenner.com

Douglas E. Litvack (*pro hac vice*)
Jariel A. Rendell (*pro hac vice*)
**JENNER & BLOCK LLP**
1099 New York Avenue, NW
Suite 900
Washington, DC 20001
Tel: (202) 639-6000
DLitvack@jenner.com
JRendell@jenner.com

*Attorneys for Defendant and Counterclaim*
*Plaintiff Infosys Limited*

26

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 11th day of December, 2025, I caused (1) an unredacted version of the foregoing to be electronically filed under provisional seal with the clerk of the court for the U.S. District Court for the Northern District of Texas, by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record, (2) a redacted version of the foregoing to be electronically filed with the clerk of the court for the U.S. District Court for the Northern District of Texas, by using the CM/ECF system, which will send a notice of electronic filing and copy of the redacted version of the foregoing to all counsel of record, and (3) a true and correct copy of the unredacted version of the foregoing to be served on all counsel of record via email.

*/s/ Douglas E. Litvack*