IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

COGNIZANT TRIZETTO SOFTWARE
GROUP, INC.,

     Plaintiff,

vs.

INFOSYS LIMITED,

     Defendant.

INFOSYS LIMITED,

     Counterclaim Plaintiff,

v.

COGNIZANT TECHNOLOGY
SOLUTIONS CORP. and COGNIZANT
TRIZETTO SOFTWARE GROUP, INC.,

     Counterclaim Defendants.

§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§

Case No. 3:24-cv-2158-X

**SPECIAL MASTER'S FINDINGS AND CONCLUSIONS
ON INFOSYS LIMITED'S MOTION TO COMPEL
PRODUCTION OF 30(b)(6) WITNESS  (DOC. NO. 406)**

Comes now, the Special Master, and enters his Findings and Conclusions on Infosys Limited's (Infosys) "Motion to Compel Production of 30(b)(6) Witness" (Doc. No. 406).  The Special Master concludes that Infosys's Motion should be and is GRANTED IN PART and DENIED IN PART.

In Doc. No. 406, Infosys seeks an order directing Cognizant TriZetto Software Group, Inc. (Cognizant) to "re-produce Craig Mengert or another suitable witness to prepare properly for and respond fully to questions concerning [Topic Nos. 6, 10, and 12 of Infosys's Rule 30(b)(6) deposition notice]."  Infosys further seeks 100 minutes of additional 30(b)(6) deposition time.

1

I.    **Infosys's Position**

Infosys states that on April 24, 2026, it deposed Mr. Mengert, Cognizant's CEO, and that during the deposition, it became clear that Cognizant "failed to adequately prepare him to answer questions on Topic Nos. 6, 10, and 12." Doc. No. 406, p. 2. Infosys contends that Mr. Mengert was not prepared to testify regarding Topic No. 6:

30(b)(6) Topic No. 6:

Your discovery of Infosys's Business Assurance Store / one million reusable test cases effort in 2018, including:

a. The facts of Your investigation of and communications regarding documents mentioning the Business Assurance Store, 1M RTCs (one million reusable test cases), and the May 2021 PowerPoint identified in Cognizant's response to Interrogatory No. 13[;]

b. The identity of the persons who reviewed Infosys's marketing and other communications regarding the Business Assurance Store in 2018[; and]

c. The date(s) any employee of TriZetto discovered information about the Business Assurance Store and its test cases[.]

Doc. No. 406-1, p. 2. Infosys contends that despite documentary evidence that Cognizant employees know about the issue(s), "Mr. Mengert did almost nothing to investigate this evidence." Doc. No. 406, p. 2. Infosys asserts that "[t]his topic is critical because the Business Assurance Store and associated test cases form one of the pillars of Cognizant's complaint, and the statute of limitations would bar those claims if Cognizant knew or should have known of those facts in 2018, 2019, 2020, or 2021 . . ." Doc. No. 406-1, p. 6. Infosys cites to its press releases about the Business Assurance Store in 2018 and a tweet by Ravi Kumar, Infosys's former President and COO, who is now Cognizant's CEO, and references to those items in the documents of Cognizant employees, which were produced in discovery. *Id*., pp. 6-9. Infosys states that Mr. Mengert testified "he had never seen [those documents] and did nothing to determine whether anyone else at Cognizant saw

2

them." *Id.*, p. 9. While Infosys recognizes that Topic No. 6 overlaps with Interrogatory No. 13, it contends that it is permitted to seek information through various methods, which are "intended to be cumulative;" and that certain verifications in the Interrogatory response are suspect. *Id.*, pp. 10-11 and n. 3. At the hearing, Infosys further asserted that had Mr. Mengert done any investigation about the five documents at issue, his answers may have been sufficient, but the fact that he had not seen the documents himself led Infosys to believe he was not adequately prepared.

Infosys contends that Mr. Mengert was also unprepared to testify about Topic No. 10, Cognizant's sale of source code for QNXT or Facets to third parties:

> Cognizant's sale of the source code for QNXT or Facets to third parties, which is relevant to whether any real trade secrets exist, including whether Cognizant took "reasonable measures" to keep its purported trade secrets confidential[.]

Doc. No. 406-1, p. 4. As an example, Infosys states that Mr. Mengert was "unaware of a key licensing agreement with Delta Dental," involving the sale of QNXT source code and permission for Delta Dental to sublicense that version of QNXT to other parties. Doc. 406, p. 2. This sale occurred in 2001; Infosys argues that it is relevant because "it implicates the disclosure of the purported trade secrets and steps taken to protect [them]" and that the terms of the sale are also relevant to damages. Doc. No. 406-1, pp. 12-13. Infosys contends that Mr. Menger was not at all aware of the Delta Dental sale and also lacked information about later source code license transactions.[1] *Id.*, p. 13.

Finally, Infosys contends that Mr. Mengert was unprepared to testify about Topic No. 12, which dealt with "the factual bases underlying Cognizant's calculation of damages." Doc. No. 406-1, p. 14. Infosys argues that Mr. Mengert's ability to testify about certain spreadsheets is

---

[1] At the hearing on this matter on July 31, 2026, the parties discussed the Delta Dental information and producing a witness knowledgeable about it; Infosys did not separately address the other license transactions about which it claims Mr. Mengert lacked sufficient information.

3

insufficient; it cites to deposition testimony in which Mr. Mengert repeatedly asked to see a document and its data in order to answer questions. *Id.*, pp. 14-16.  Infosys appears to be amenable to testimony based on this document because it asks for Mr. Mengert to be re-produced to testify about damages issues and states that if he "requires a specific document to allow him to testify on damages issues, he should bring a copy of that document to the deposition or alert Infosys that the document is required for his testimony. . . ." *Id.*, pp. 17-18.

II.       **Cognizant's Position**

Cognizant contends that Mr. Mengert was adequately prepared to testify on Topic Nos. 6 and 12 and contends that it offered another witness able to testify on Topic No. 10 (and that its offer remains open as to that topic).  Doc. No. 406-1, p. 18.

As to Topic No. 6, Cognizant asserts that the purpose of a Rule 30(b)(6) deposition is to present the corporation's position on items.  It argues that the information sought in Interrogatory No. 13 is the same as that sought by Topic No. 6.  In its response and at the hearing, Cognizant states that its investigation about knowledge of the Business Assurance Store involved review of 17 terabytes of information, millions of documents, and 46 interviews.  Doc. No. 406-1, p. 19.  It asserts that Infosys would essentially have Mr. Mengert re-create the investigation undertaken by its counsel to answer Interrogatory No. 13, an effort which would be inconsistent with Mr. Mengert's obligations as a 30(b)(6) witness.  *Id.*  Cognizant avers that Mr. Mengert prepared for his testimony by reviewing the response to Interrogatory 13 and by speaking to two individuals with relevant knowledge.  *Id.*, p. 21.  Cognizant contends that Mr. Mengert did not need to speak with Mr. Kumar because Mr. Kumar himself verified the portion of Interrogatory 13 having to do with his personal knowledge.  *Id.*  Finally, Cognizant avers that Mr. Mengert asked who in the Global Sales Intelligence Cell had knowledge of the information contained in a slide from a 2021

PowerPoint presentation (ostensibly one of the five documents Infosys contends Mr. Mengert should have had more information about for his deposition), and was told by two people that the person who had the information was no longer at the company. *Id.*, pp. 21-22. Cognizant asserted at the hearing that the response to Interrogatory 13 involved the same information as Topic No. 6. It reiterated the amount of investigation it did to compile the answer to Interrogatory 13 and prepared Mr. Mengert with the knowledge the company had – which was essentially that no one had any memory of the Business Assurance Store. Cognizant argues that it met its obligation to provide a corporate representative to provide corporate knowledge.

As to Topic No. 10, Cognizant notes that Topic No. 10 involved TriZetto's "grant or sale of the source code for QNXT or Facets to any third party, including but not limited to sales of source code by QCSI, TriZetto, or Cognizant to Molina, Gainwell, and Unisys." *Id.*, p. 22. It contends that Mr. Mengert was prepared to and did testify regarding the listed entities but was not prepared to discuss the Delta Dental license deal because it was not listed. Once it realized Infosys sought testimony about this, Cognizant offered another witness, Michael Pierce, to testify on this topic. *Id.*, pp. 22-23. In both the joint report and at the hearing, Cognizant confirms that it remains willing to present another witness who can testify about the Delta Dental license deal.

As to Topic No. 12, Cognizant notes that the topic has nineteen subparts; Infosys complains of seven. Cognizant contends that for four of the subparts, Infosys refused to show Mr. Mengert documents relevant to his testimony. *Id.*, p. 23. As to three others, Cognizant states it timely objected that Mr. Mengert's testimony would be limited to information in the company's possession, but that these subparts appear to seek methodology relating to the apportionment of damages, which is expert analysis. *Id.*

5

Finally, Cognizant contends that the 100 minutes sought by Infosys in additional deposition time is not commensurate with the amount of time Infosys spent asking about the three topics during the deposition.  Cognizant believes that only three minutes should be allotted for additional testimony from a witness on the Delta Dental license issue, given that Infosys only spent three minutes asking about it during Mr. Mengert's deposition.  (Infosys responded at the hearing that had Mr. Mengert had any pertinent information; it would have spent additional time asking about it.  *Id.*, p. 23 and n. 10).

### III.    Findings and Conclusions

The Special Master reviewed the motions, briefs, appendices, and the arguments made by the parties. Pursuant to the Court's Order of April 14, 2026 (Docket No. 312), the Special Master has the authority to control the discovery process in this matter.[2]  Based on review of the materials and arguments, the Special Master finds that Infosys's Motion should be GRANTED IN PART and DENIED IN PART.

### a.  Topic No. 6

For Topic No. 6, the Special Master finds that Infosys's motion should be and is DENIED. Both parties cite *Brazos River Auth. V. GE Ionics, Inc.*, 469 F.3d 416, 433 (5th Cir. 2006) and at the hearing on this matter, urged reliance on it for the Special Master's consideration of their respective positions.  In *Brazos*, a separate issue of whether a 30(b)(6) witness should testify at trial if he were available was under consideration by the Fifth Circuit.  But the court also spoke to the requirements of Rule 30(b)(6) and the presentation of a corporate representative for deposition.

---

[2] The trial court's discretion to control the course of litigation is wide, and it includes the "authority to control the scope and pace of discovery."  *In re Ramu Corp.*, 903 F.2d 312, 318 (5th Cir. 1990) (citations omitted).

A corporation:

> must make a conscientious good-faith endeavor to designate the persons having knowledge of the matters sought by the party noticing the deposition and to *prepare* those persons in order that they can answer fully, completely, unevasively, the questions posed . . . as to the relevant subject matters.  The duty to present and prepare a Rule 30(b)(6) designee goes beyond matters personally known to that designee or to matters in which that designee was personally involved.  The deponent must prepare the designee to the extent matters are reasonably available, whether from documents, past employees, or other sources.

*Id.*, at 433 (citations and quotations omitted) (emphasis in original).  The court further noted that "in advance of [the witness's] deposition, [the corporation] had a duty to prepare [the witness on designated issues] and to impart to him the information obtained from individuals with personal knowledge within the organization."  *Id.,* at 434.

Cognizant appears to have made a good faith endeavor to designate a Rule 30(b)(6) deponent on the topic.  After receiving Interrogatory No. 13 (which seeks the same information as Topic No. 6), Cognizant conducted a good faith and comprehensive investigation to determine the extent of the company's knowledge of the items inquired about.  In preparing Mr. Mengert for his testimony on that information, Cognizant prepared him with the information resulting from that comprehensive investigation.  Cognizant is clearly aware that Mr. Mengert's testimony represents the corporation's position as to those questions.  Infosys appears to have explored Mr. Mengert's knowledge of the documents it contends supports its position on its statute-of-limitations defense.  To the extent that Cognizant's position is that it simply does not know the answers to questions posed to Mr. Mengert, Infosys is free to present its arguments on those answers to the jury for consideration.

### b.  Topic No. 10

For Topic No. 10, the Special Master finds that Infosys's motion should be and is GRANTED.  Cognizant has recognized that Mr. Mengert lacked knowledge of Topic No. 10, and

it previously offered to make another witness available to testify about the Delta Dental license deal.  At the hearing, the parties appeared to agree to pursue this deposition and agreed that an alternative witness could be produced in lieu of Mr. Mengert for deposition on this topic.  As such, the parties are ordered to complete that deposition within 14 days.[3]

### c.  Topic No. 12

As to Topic No. 12, the Special Master finds that Infosys's Motion should be GRANTED IN PART and DENIED IN PART.  Cognizant shall produce Mr. Mengert for deposition on the four subparts having to do with damages calculations (Topic 12, subparts (e), (h), (i), and (s)).  *Infosys shall allow* Mr. Mengert to utilize the spreadsheet he previously requested to use in connection with questions on these subtopics and *Infosys shall provide the spreadsheet* to him during the deposition.  Cognizant is correct that a 30(b)(6) deposition is not meant to be a memory contest. *See* Doc. No. 406-1, p. 24 (citations omitted).  While the Special Master understands what litigation strategy sometimes involves when it comes to depositions, Mr. Mengert was clear in his previous testimony that he could answer certain questions if he had the spreadsheet to consult.  He should have the spreadsheet to consult, particularly if he is asked about specific details of certain reports.

Regarding subtopics (l), (m), and (n), the Special Master finds that Infosys's motion should be and is DENIED.  Given Cognizant's representation that no such analysis was performed previously in the ordinary course of business and that Mr. Mengert answered to the extent of Cognizant's corporate knowledge on these points, Infosys should seek this information from expert testimony.

---

[3] At the hearing, the parties noted an issue on timing of depositions from a recently issued Findings and Conclusions.  Should the parties need to modify the timeline for the depositions addressed herein, the Special Master welcomes any reasonable stipulation from the parties.

### d. Time

The parties have wildly differing positions on time to be allocated for the additional testimony allowed.  Infosys seeks 100 minutes; Cognizant proposes three additional minutes.  The Special Master particularly considered the parties' arguments during the hearing on this matter.  Both parties have somewhat persuasive arguments – Infosys's that it would have spent more time exploring topics had the witness been prepared; Cognizant's that the limit was the limit and that Infosys is essentially seeking a boondoggle for not managing its time more effectively.  On balance, the Special Master finds - based on consideration of the nature of the testimony, questions that are needed to elicit that testimony, and documents necessary and/or available to assist in the deposition process - that Infosys should have an additional 30 minutes to allocate amongst the topics addressed herein.

As such, the Special Master finds that Infosys's motion should be and is GRANTED IN PART as to the additional time, and it should be allowed 30 minutes to address the items addressed herein, to be allotted at its discretion.  Should a dispute arise during the depositions, the parties are invited to contact the Special Master directly in real time to resolve the disputes.

Finally, the Special Master determines that under Federal Rule of Civil Procedure 37(a)(5) and 26(c)(3) and the particular circumstances here, the parties will bear their own costs, expenses, and attorney fees in connection with this motion.

SO ORDERED this 3rd day of August, 2026.

/s/ *Paul D. Stickney*
Paul D. Stickney
Appointed Special Master
Texas Bar No. 00789924
STICKNEY MEDIATIONS, PLLC
10270 Hillcrest Rd., Suite 1042
Dallas, Texas 75230
682-313-9656
judgestick@gmail.com