IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| COGNIZANT TRIZETTO SOFTWARE GROUP, INC., Plaintiff, | § | |
| vs. | § | |
| INFOSYS LIMITED, Defendant. | § | Case No. 3:24-cv-2158-X |
| INFOSYS LIMITED, Counterclaim Plaintiff, | § | |
| v. | § | |
| COGNIZANT TECHNOLOGY SOLUTIONS CORP. and COGNIZANT TRIZETTO SOFTWARE GROUP, INC., Counterclaim Defendants. | § | |

**SPECIAL MASTER'S SUPPLEMENTAL FINDINGS AND CONCLUSIONS ON COGNIZANT TRIZETTO SOFTWARE GROUP, INC.'S OPPOSED MOTION TO SEAL PORTIONS OF JOINT REPORT AND APPENDIX (DOC. NO. 142)**

Comes now, the Special Master, and enters his Findings and Conclusions Docket No. 142, Cognizant's "Motion to Seal Joint Report and Appendix" and Infosys's "Opposition to Cognizant TriZetto Software Group, Inc.'s Motion to Seal Portions of Joint Report and Appendix" (Doc. No. 154). The Special Master concludes that Cognizant's Motion (Doc. No. 142) should be and is GRANTED IN PART and DENIED IN PART.[1]

[1] The Special Master previously granted Cognizant's motion as to Exhibit A2 in the Findings and Conclusions entered on July 21, 2026, Doc. No. 522.

In Doc. No. 142, Cognizant moves, pursuant to Local Rule79.3, to seal limited portions of the Joint Appendix to Infosys's Motion to Compel TriZetto to Fully Answer Interrogatory Nos. 13 and 14, as well as appendix materials to that motion. Cognizant seeks an order permanently sealing: Exhibit A21; Exhibit A25; portions of Exhibit A12; portions of Exhibits A18 and A19; Exhibit A7; and portion of the Joint Report with which the exhibits are filed. Doc. No. 142, pp. 1-2.

**Cognizant's Position**

Cognizant contends that the exhibits contain trade secrets and confidential information, and that there is no less restrictive means that would protect its interest in the information. It argues that because the exhibits and Joint Report were filed in connection with discovery motions that will not involve adjudication on the merits, the public does not have a presumptive right to access the information, but even under the more stringent page-by-page and line-by-line analysis that applies to dispositive motions, public disclosure of the exhibits and Joint Report would result in competitive and irreparable harm to TriZetto if it they were not sealed. Cognizant asserts that Infosys "intends to oppose this sealing motion in an apparent attempt to improperly litigate – via this sealing motion – the merits of whether certain of the trade secrets at issue in this case are in fact trade secrets." *Id.,* at pp. 2-3. Cognizant has submitted a declaration in support of its motion showing that the exhibits and references to them in the Joint Report "contain trade secrets and other sensitive information that, if made public, would cause TriZetto competitive harm" if they were made public. *Id.*, p. 4.

**Exhibit A21**

Cognizant contends that Exhibit A21 is similar to Exhibit B2, a "test case" for its software that provides "step-by-step, human readable instructions for accomplishing a specific task." *Id.*,

pp. 5-6. Those instructions, according to Cognizant, include how to set up the software application, tables and fields within the data model it contends is a portion of its trade secrets, design choices, naming conventions, and organizational decisions about how those things work within the software. *Id.*, p. 6.

Cognizant contends that disclosure (unsealing) of this information "would cause competitive harm by allowing competitors to follow the step-by-step instructions" on how to execute test cases and to replicate the data model. *Id.*, pp. 6-7. And Cognizant asserts that "the public has no legally cognizable interest" in this sensitive data.

**Exhibit A25**

Cognizant contends that this exhibit contains TriZetto's trade secret information relating to TriZetto's data model – including database tables. *Id.*, p. 7. Those tables, Cognizant alleges, include naming conventions, without which data cannot be extracted to other software. *Id.*. The naming conventions also affect the execution of "the business logic and processes." *Id.*, pp. 7-8.

**Exhibit A12 – Portions**

Cognizant proposes to seal portions (pages, 4, 6, 7, 8, 9, 10, 11, and 12) of Exhibit A12 – its response to Infosys's Interrogatory No. 14, because that portion of the response discusses how "TriZetto implements certain features to provide functionality", includes database tables, and describes a particular data model and how it functions in connection with the test cases. *Id.*, pp. 8-9.

**Exhibits A18 and A19 - Portions**

Cognizant states that these exhibits were "presentations given at TriZetto's 2014 Healthcare Conference." *Id.,* p. 10. It describes the NDAA requirements of attendees and avers that any posting of the documents online was done in violation of confidentiality agreements

executed by recipients of the presentations and/or attendees at the healthcare conference. *Id.* Cognizant contends that the presentations contain information and explanations about how TriZetto's software integrated with its other products (pages 9-15 and 18-20 of Exhibit A18). Similarly, "[p]ages 10 through 16 of Exhibit A19 contain[] confidential information about the technical architecture" of its software. *Id.*, p. 11. Disclosure of this information, states Cognizant, could "allow competitors to create components" that could integrate with its software, which could cause technical issues for some clients who may associate the problems with the Cognizant/TriZetto's products. *Id.* These positions are also described in the declaration submitted in support of Cognizant's motion.

**Exhibit A7**

Cognizant contends that disclosure of A7 would reveal "documents containing competitive advantage." *Id.*, p. 12. The exhibit is a competitive analysis document that "explores how TriZetto perceives Infosys's Helix product, including key messaging, strengths and weaknesses of Helix, and explains how TriZetto plans to compete with Infosys in the marketplace." *Id.* Cognizant contends that disclosure of the information would disadvantage it in terms of its view of its own product and how that product competes in the marketplace. *Id.*, p. 12.

**Portions of the Joint Report**

Finally, Cognizant argues that portions of the Joint Report discussing the documents discussed above should be sealed because the information is protected by NDAAs, and the information in the documents could lead to a competitive disadvantage. In particular, Cognizant notes the portions that discuss the exhibits set forth above.

**Infosys's Position**

Infosys addresses the proposed exhibits to seal in a different order than Cognizant and generally contends that the information should not be sealed because the exhibits do not contain trade secrets or information that would cause competitive harm. Doc. No. 153.

**Exhibits A18 and A19**

Infosys contends that Exhibits A18 and A19 were publicly available on the internet for some time, which exempts the Exhibits from the Protective Order entered in this matter (Doc. No. 65). Infosys states that it found them through a public Google search using the Wayback Machine archive and downloaded them in 2025, but they appear to have been later pulled down. It asserts that the capture of Exhibit 18 by the Wayback Machine in 2017 "suggests" that the document was publicly available "for at least seven years", though it contends that Exhibits 18 and 19 were both "presentations from a 2014 healthcare conference". Doc. No. 153, pp. 4-5. Infosys argues that because the exhibits were available on the internet for some years, they are not trade secret material and should not be sealed. *Id.*, p. 5. Finally, Infosys argues that the declaration in support of sealing the portions of the Exhibits at issue does not sufficiently explain what competitive harm could befall Cognizant. *Id.*, pp. 5-6.

**Exhibits A21 and A25[2]**

Infosys claims that as to these Excel spreadsheets, Cognizant has not carried its burden to show that the exhibits contain trade secrets because it has not properly performed a line-by-line review that is required by this Court's controlling precedent. *Id.*, pp. 6-8. It further contends that if Cognizant cannot carry its burden, the records should become public. *Id.,* pp, 8-11. Infosys

---

[2] Infosys includes Exhibit B2 in its arguments about the spreadsheets. The Special Master has previously addressed B2 and determined that it should remain sealed after conducting the appropriate page-by-page and line-by-line review. *See* Doc. No. 522.

takes issue with the declaration in support of the motion, mostly contending that the declaration is not specific enough. *Id.*, pp. 7-9.

**Exhibit A12**

Infosys contends that Cognizant's response to Interrogatory No. 14 should not be sealed because Cognizant's description of TriZetto's trade secrets in the response is partially duplicative of allegations in its Complaint and "even the additional information disclosed in the Interrogatory response provides, at best, a 'general overview' of information claimed to be a trade secret." *Id.*

**Exhibit A7**

Infosys contends that Cognizant has not met its burden to show that pages 43-44, 51, and 53 in Exhibit A7 (which is a Cognizant email with a PowerPoint attachment) should be sealed. Similar to Exhibit A-12, Infosys does not address its designation as "Highly Confidential – Attorneys' Eyes Only" pursuant to the Protective Order or whether Infosys challenged the designation as provided by the Protective Order. Instead, it asserts that "an agreement between the parties regarding sealing does nothing to carry the movant's burden."

**Findings and Conclusions**

The Special Master reviewed the motions, briefs, appendices, and the arguments made by the parties. Pursuant to the Court's Order of April 14, 2026 (Docket No. 312), the Special Master has the authority to control the discovery process in this matter.[3]

Infosys cites *June Med. Servs., L.L.C. v. Phillips*, 22 F.4th 512, 519-520 (5th Cir. 2022) for the proposition that courts in the Fifth Circuit "heavily disfavor sealing information placed in the judicial record." In *June Med. Servs.,* the court was reviewing bulk sealing orders entered in

[3] The trial court's discretion to control the course of litigation is wide, and it includes the "authority to control the scope and pace of discovery." *In re Ramu Corp.*, 903 F.2d 312, 318 (5th Cir. 1990) (citations omitted).

connection with briefing on a motion to strike a subpoena, a motion to quash, and a motion to de-designate portions of a deposition as "confidential" pursuant to a protective order. The documents sought to be sealed included records "which [were] freely accessible online, judicial records that [were] accessible via PACER, articles from the *Journal of Medical Regulation, Christian Science Monitor, Rolling Stone, New York Times*, and *The Advocate*, excerpts from a book, a public order entered by the Eastern District of Louisiana in a related subpoena enforcement action, blank consent forms from a closed clinic, and correspondence regarding deposition scheduling." *June Med. Servs.,* 22 F.4th at 517.

Cognizant cites *Binh Hoa Le v. Exeter Fin. Corp.*, 990 F.3d 410, 419 n. 31 (5th Cir. 2021) (quoting *Chicago Trib. Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1312 (11th Cir. 2001)) for the propositions that "'materials filed with discovery motions' unrelated to merits issues are "not subject to the common-law right of access,'" and "'[a]t the *discovery* stage, when parties are exchanging information,' the good-cause standard for protective orders may be appropriate." *Binh Hoa Le*, 990 F.3d at 420 (emphasis in original). In *Binh Hoa Le*, the appellate court was faced with another type of blanket sealing order in the form of a protective order that was bereft of analysis by the issuing court. As a result, documents deemed confidential by the parties were used to support summary judgment briefing. The court opined that:

> In our view, courts should be ungenerous with their discretion to seal judicial records, which plays out in two legal standards relevant here. The first standard, requiring only "good cause," applies to protective orders sealing documents produced in discovery. The second standard, a stricter balancing test, applies "[o]nce a document is filed on the public record"—when a document "becomes a 'judicial record.' " Under both standards, the working presumption is that judicial records should not be sealed. That must be the default because the opposite would be unworkable: "With automatic sealing, the public may never know a document has been filed that might be of interest."
>
> True, even under the stricter balancing standard, litigants sometimes have good reasons to file documents (or portions of them) under seal, such as protecting trade

> secrets or the identities of confidential informants. But "[m]ost litigants have no incentive to protect the public's right of access." That's why "judges, not litigants" must undertake a case-by-case, "document-by-document," "line-by-line" balancing of "the public's common law right of access against the interests favoring nondisclosure." Sealings must be explained at "a level of detail that will allow for this Court's review." And a court abuses its discretion if it "ma[kes] no mention of the presumption in favor of the public's access to judicial records" and fails to "articulate any reasons that would support sealing."

*Binh Hoa Le,* 990 F.3d at 418-419.

More recently, this Court has considered sealing requests connected with discovery motions under the more stringent standard. In *Jostens, Inc. v. Haarsma*, 2023 WL 6277357 at *1-2 (N.D. Tex. Sept. 26, 2023 (Starr, J.), the Court scrutinized a request to file materials related to a motion to compel under the heightened sealing standard. So, too, in *Blue Yonder Group v. Kinaxis Inc.*, 2024 WL 4796229 at *1-2 (N.D. Tex. May 30, 2024) (Kinkeade, J.), when the Court considered another request in conjunction with a motion to compel. As Judge Kinkeade noted:

> The Court is not free to override the public's interest in reviewing its records based on bare possibilities or assertions. *Vantage Health*, 913 F.3d at 451. When the existence or magnitude of countervailing private interests turns on facts that are not readily apparent, the Court must have a concrete evidentiary basis for finding those facts. *See IFG Port Holdings*, 82 F.4th at 411–12 (refusing to rely on conclusory testimony about party's competitive interest); *see also Tarver v. Allstate Texas Lloyd's*, 2022 WL 704941, at *9 (E.D. Tex. Feb. 18, 2022), *rep. & rec. adopted*, 2022 WL 696358 (E.D. Tex. Mar. 7, 2022); *In re Avandia Mktg., Sales Pracs. & Prod. Liab. Litig.*, 924 F.3d 662, 678–79 (3d Cir. 2019); *DePuy Synthes Prod., Inc. v. Veterinary Orthopedic Implants, Inc.*, 990 F.3d 1364, 1373 (Fed. Cir. 2021). Interests that depend on project-specific, firm-specific, or industry-specific facts often will not be obvious and will require particularized evidentiary support. *See, e.g., Ironshore Specialty Ins. Co. v. Facility IMS, LLC*, 2023 WL 6850006, at *12 (N.D. Tex. Oct. 17, 2023) (Kinkeade, J.) . . ..

*Blue Yonder*, 2024 WL 4796229 at *2 (remainder of citations omitted).

The Special Master thus proceeds with the analysis of the exhibits at issue under the more stringent standard. As noted, Cognizant claims that the exhibits contain trade secret material or material that would cause economic harm if it were released to the public; it has explained its

rationale for why the material constitutes trade secrets or could cause commercial harm if released, and has offered a declaration supporting its claims that, given the specific project, firm, and possibly industry-specific facts, there is a concrete basis on which to determine that the exhibit should be sealed. *See* Decl. of Michael Pierce, ¶¶ 3-7.

Infosys generally contends that the exhibits are not trade secret information and should be unsealed. Whether Cognizant's purported trade secrets are indeed trade secrets, and the efforts that Cognizant made to protect its purported trade secrets are issues of fact in the litigation. *BHI Energy I Power Servs. LLC v. KVP Holdings, LLC*, 3:22-cv-1981, 2024 WL 1809499, at *7 (N.D. Tex. Apr. 24, 2024)(Horan, M.J.) The relief requested by Infosys – unsealing of the documents - seeks a merits determination, which invades the province of the factfinder.

**Exhibits A21 and A25**

As noted above, the Special Master previously considered Exhibit B2, which is similar to Exhibits A21 and A25.[4] The Special Masters's page-by-page, line-by-line analysis of Exhibits A21 and A25 is unsurprisingly similar to the review of Exhibit B2. An overwhelming majority of the lines in Exhibit A21 refer to how the software at issue works. It is an instruction set that tells the user to do "x" and after doing "x," what the user should see – which includes aspects of the software, descriptions of portions of the data model that should be visible, and data fields contained in that portion. The data fields show how they are related to one another and how they are prioritized when the user does "x" or "y" or "z." Aspects of how the data fields are displayed are described. Some lines in the exhibits display portions of code in instructions on how to perform queries. Exhibit A25 contains a list of tables, and aspects of software that are associated with those tables; it also contains comments on what information the tables contain, whether certain tables

[4] Doc. No. 522.

need to be used and if so, what needs to be done to use those tables.

While each and every line in Exhibits A21 and A 25 do not contain these discrete items, redacting the documents as a whole to exclude lines that do not arguably reveal trade secrets would once again evoke Shel Silverstein's question: "I asked the Zebra, 'Are you black with white stripes? Or white with black stripes?'"[5] The public's interest would not be served by the resulting zebra and would not provide any heightened confidence in the administration of justice. As a result, the Special Master finds, pursuant to his discretion, that a concrete evidentiary basis exists for sealing the exhibits, and that Cognizant's interests in protecting its purported trade secrets outweighs the public's presumptive right to access the exhibit. Finally, the Special Master notes that the ultimate issue of whether the information in the exhibits is, in fact, trade secrets, goes to the merits of the claims and the parties will have ample opportunity to litigate this issue in due course.

**Exhibit A12 – Portions**

After reviewing the portions of Exhibit A12 Cognizant proposes to seal, the Special Master finds that the descriptions of TriZetto's Facets and QNXT functionality and how certain features are implemented and organized, as well as database tables, portions of test cases, contain information that could cause competitive harm to Cognizant if released to the public. Cognizant has offered a declaration in support of the competitive harm that might result from the release of the redacted portions, and the Special Master finds that the portions proposed to be redacted are more than a "general overview" of information. As a result, the Special Master finds, pursuant to his discretion, that a concrete evidentiary basis exists for sealing the exhibits, and that Cognizant's interests in protecting its purported trade secrets outweighs the public's presumptive right to access

[5] SHEL SILVERSTEIN, A LIGHT IN THE ATTIC (1981).

the exhibit.

**Exhibits A18 and A19 - Portions**

After reviewing the portions of Exhibits A18 and A19 Cognizant proposes to seal, the Special Master finds that the information references specific information about technical architecture that makes certain software functional. Cognizant has offered a declaration in support of the competitive harm that might result from the release of the redacted portions – including the possibility of causing technical problems with existing clients. The Special Master finds that the redacted portions of the documents proposed to be redacted are appropriate and the exhibits are not over-redacted. As a result, the Special Master finds, pursuant to his discretion, that a concrete evidentiary basis exists for sealing the exhibits, and that Cognizant's interests in protecting its purported trade secrets outweighs the public's presumptive right to access the exhibits.

**Exhibit A7 - Portions**

The Special Master has reviewed the pages of Exhibit A7 that Infosys argues should be unsealed (pages 43-44, 51, and 53) and agrees with Infosys that those portions of the document contain no purported trade secret information and do not contain information that would cause competitive harm to Cognizant if released to the public. The Special Master thus finds that the presumptive right of the public controls and that that pages 43-44, 51, and 53 of Exhibit A7 should be unsealed.

For the foregoing reasons, the Special Master finds that Cognizant's Motion to seal the Exhibits should be GRANTED IN PART as to Exhibits A12, A18, A19, A 21, and A25 (or portions thereof as set forth herein), and DENIED IN PART as to Exhibit A7 (portions thereof as set forth herein). The portions of the Joint Report discussing materials/portions thereof for which the Motion is granted shall remain under seal. The portions of the Joint Report discussing

materials/portions thereof for which the Motion is denied shall be unsealed. The parties shall ensure the appropriate filing of the Joint Report and the portions of Exhibit A7 within ten (10) days.

Finally, the Special Master determines that under Federal Rule of Civil Procedure 37(a)(5) and 26(c)(3) and the particular circumstances here, the parties will bear their own costs, expenses, and attorney fees in connection with this motion.

SO ORDERED this 21st day of August, 2026.

/s/ *Paul D. Stickney*
Paul D. Stickney
Appointed Special Master
Texas Bar No. 00789924
STICKNEY MEDIATIONS, PLLC
10270 Hillcrest Rd., Suite 1042
Dallas, Texas 75230
682-313-9656
judgestick@gmail.com