**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| COGNIZANT TRIZETTO SOFTWARE GROUP, INC.,<br><br>Plaintiff,<br><br>v.<br><br>INFOSYS LIMITED,<br><br>Defendant. | Case No. 3:24-cv-02158-X<br><br>The Honorable Brantley Starr<br><br>Magistrate Judge David L. Horan<br><br>Special Master Paul D. Stickney |
| INFOSYS LIMITED,<br><br>Counterclaim Plaintiff,<br><br>v.<br><br>COGNIZANT TECHNOLOGY SOLUTIONS CORP. and COGNIZANT TRIZETTO SOFTWARE GROUP, INC.,<br><br>Counterclaim Defendants. | |

**SPECIAL MASTER'S FINDINGS AND CONCLUSIONS**
**ON COGNIZANT TECHNOLOGY SOLUTIONS CORP.'S**
**MOTION TO STRIKE INFOSYS'S SUPPLEMENTAL EXPERT REPORTS**
**OF DR. PAUL WONG AND DR. DANIEL P. WERNER (DOC. NO. 607)**

The Special Master, having considered Cognizant Technology Solutions Corp.'s (Cognizant) Motion to Strike Infosys's Supplemental Expert Reports (the Motion), finds that the Motion should be GRANTED IN PART and DENIED IN PART.

**Background**

The close of expert discovery in this case was August 24, 2026. (Doc. No. 201). On August 11, 2026, Judge Starr issued an order dismissing three of five of Infosys's theories of liability, while allowing two – relating to the TriZetto Consulting Partner Network (TCPN) and

most favored vendor clauses used by Cognizant (MFV Provisions) to proceed. (Doc. No. 546) (the Dismissal Order). According to Infosys, it promptly notified Cognizant (on August 12) that it planned to supplement its antitrust experts' reports and proposed a process by which the parties could both serve supplemental responses prior to deposing all the antitrust experts the week before Labor Day. Doc. No. 607-3, pp. 34, 36 n. 9. Infosys states that in so doing, it was mindful of the Court's recent admonishment regarding the parties' obligations under *Dondi Props. Corp. v. Commerce Savs. & Loans Assn.,* 121 F.R.D. 284 (N.D. Tex. 1988). According to Cognizant, however, Infosys "refused to identify any new facts" that would justify expert report supplementation under Fed. R. Civ. P. 26(e). Doc. No. 607-3, p. 8. The parties disagree about whether, during their depositions, Dr. Wong and Dr. Werner conveyed that their opinions could change based on the Court's ruling of August 11. *Id.*, pp. 9-11, 44-46. And regardless of what the testimony was, Cognizant was not amenable to the process suggested by Infosys. *Id.*, p. 8.

Infosys served "supplemental" expert reports of Drs. Wong and Werner on Cognizant on Friday, August 21, 2026, and provided backup materials on Monday, August 24, 2026. *Id.*, pp. 2, 37. Cognizant contends that the reports contain new information and are improper sur-rebuttals. *Id.*, p. 3. Infosys contends that the reports are indeed supplements "required under Rule 26(e)" to correct the experts' reports in light of the Dismissal Order. *Id.*, pp. 42-43. It also contends that because Cognizant asked Drs. Wong and Werner during their depositions whether their opinions held after the Dismissal Order, supplementation was appropriate, much like corrected expert reports served by Cognizant after the deposition of its expert Dr. Lerner. *Id.*, pp. 44-45.

**Cognizant's Position on New Information and Opinions**

Cognizant considers the supplemental reports as "New Reports," and asserts that combined, the reports comprise nearly 70 pages of "new material and opinions," with "fresh

schedules and exhibits summarizing new analyses and calculations." *Id.*, pp. 2-3. Cognizant states that Dr. Wong's original report was not organized around Infosys's theories of liability, and that Dr. Werner's original report contained all five theories of liability alleged in Infosys's counterclaim, but his damage figures were not apportioned among the five categories. It asserts that Dr. Wong's supplemental report adds several new rebuttal analyses and calculations responding to criticisms cited in Cognizant's experts' reports, including new calculations and new opinions related to the "group boycott" theory that were not contained in his initial report. Cognizant further argues that Dr. Werner's supplemental report contains many new opinions and calculations, also including a discussion of the "group boycott" theory and responses to Cognizant's experts' rebuttal reports. *Id.*, pp. 9-11. The "new" theories and methodologies, according to Cognizant, are not supplemental and Infosys should have sought leave of court before disclosing them. Furthermore, Cognizant contends, the supplemental reports contain improper sur-rebuttal – essentially, a second bite at the expert opinion apple. Cognizant asks that the supplemental reports be struck in full because Infosys cannot show that the reports are important, the reports unfairly prejudice Cognizant, the prejudice cannot be cured because a continuance cannot be had, and because Infosys does not have an adequate explanation for its failure to timely produce the reports. *Id.*, pp. 20-31.

**Infosys's Position on New Information and Opinions**

Infosys disagrees with Cognizant's characterization of the issue as procedural; it contends that the reports were promptly disclosed and that the Dismissal Order, combined with the requirements of Rule 26(e), necessitated the supplemental reports in order to provide "additional and corrective information" pursuant to Fed. R. Civ. P. 26(e) and (f). Doc. No. 607-3, p. 32. Infosys states that if the supplemental reports are stricken, it will be hampered in summary

judgment briefing. *Id.*, pp. 32-33. Infosys also goes back to the goose/gander argument the parties have made much of in this case, stating that Cognizant served over 100 supplemental pages of expert reports (80 pages of "corrected" reports from three experts and 20 pages of exhibits) without seeking leave. *Id.*, p. 34. It disputes that Cognizant will be prejudiced by the smallish nature (41 pages of reports and 21 exhibits) of the supplemental reports. *Id.*, pp. 33-35. It characterizes the supplemental reports as containing additional or corrective information not available at the opening and rebuttal report deadlines addressing the Dismissal Order, as well as "specific alleged errors identified by Cognizant's experts." *Id.*, p. 41. Infosys cites out-of-circuit case law in support of the notion that experts may properly supplement reports when opposing counsel points out shortcomings in depositions and cites to deposition excerpts of both Drs. Wong and Werner, during which they were clearly asked about the impact of the Dismissal Order on their reports and opinions. *Id.*, pp. 43-46. And it contends that the doctors' choices to conform their supplemental reports to the wording used in the Dismissal Order is not only proper but essentially a matter of expediency - noting, as the Dismissal Order does, that "there is no requirement for the use of 'magic words' here." Dismissal Order, p. 15; Doc. No. 607-3, p. 46. It argues that the doctors' supplemental reports explain their initial opinions in the context of the terminology of the Dismissal Order, for example: "Cognizant's objection is that Dr. Werner drew the wrong line between the categories of conduct – a challenge to the substance of an opinion [under Fed. R. Evid. 702], not a basis to strike a disclosure[.]" *Id.*, p. 47.

As for the portions of the supplemental reports geared toward responding to Cognizant's experts' criticisms of Dr. Wong and Dr. Werner's initial reports, Infosys asserts that they are proper so long as the supplement does not introduce entirely new theories or angles. *Id.*, p. 47. It contends that it could not have served the supplemental reports addressing the rebuttals previously because

Drs. Wong and Werner could not have predicted the outcome of the Motion to Dismiss. Countering Cognizant's arguments that the reports incorporate new methodology or opinions, Infosys disagrees, arguing that any dispute about whether Drs. Wong and Werner disaggregated liability and damages (in their initial reports) among Infosys's five pleaded theories of anticompetitive behavior by Cognizant goes to the weight of the opinions. *Id.*, pp. 50-51.

Finally, Infosys contends that the supplements are critically important as the parties enter summary judgment briefing, that Cognizant will not suffer any prejudice (again because the supplemental reports are brief), as the supplements were filed before the close of expert discovery, and because Infosys offered its proposed procedure to exchange additional reports prior to deposing all of the experts. *Id.*, pp. 54-57.

**Legal Standards**

Federal Rule of Civil Procedure 26(e)(1) allows a party to "supplement or correct its disclosure or response: (A) in a timely manner if the party learns that in some material respect the disclosure is . . . incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or (B) as ordered by the Court." *Uworld LLC v. USMLE Galaxy LLC*, 2025 WL 1246434, at *3 (N.D. Tex. Apr. 28, 2025) (Horan, M.J.). As Judge Horan noted, "the line between supplemental opinions and new opinions is not always clear, and the decision regarding how to make the distinction . . . depends on the facts of the case." *Id.* (citation omitted). Courts routinely reject supplemental reports that "depart[] from or expand[] upon the original report in any material respects". *Id.* (citations and quotations omitted). If a report is untimely or otherwise violative of Rule 26(e), the offering party must show that the violation is harmless or substantially justified. In evaluating harmlessness, court considers: 1) the importance of the evidence; 2) the prejudice to

the opposing party of allowing the evidence; 3) whether any prejudice can be cured; and 4) the offering party's explanation for the failure to disclose. *Id*. (citations omitted).

Federal Rule 26 neither grants a right to any rebuttal report beyond the initial rebuttal report, nor does it prohibit the filing of sur-rebuttal reports; a party wishing to file a sur-rebuttal report must seek leave of court. *See, e.g. BCC Merch. Sols., Inc. v. JetPay, LLC*, 2016 WL 326483, at *3 (N.D. Tex. Feb. 19, 2016) (also discussing the duty to supplement as: "a duty to supplement disclosures discovered to be incomplete or incorrect, not an opportunity to provide information previously omitted. "The purpose of rebuttal and supplementary disclosures is just that—to rebut and to supplement. These disclosures are not intended to provide an extension of the deadline by which a party must deliver the lion's share of its expert information." (citing *Sierra Club, Lone Star Chapter v. Cedar Point Oil Co. Inc.*, 73 F.3d 546, 571 (5th Cir. 1996)); *see also Uworld*, 2025 WL 1246434, at*5 ("Reading Rule 26(e) to authorize a sur-rebuttal is untenable as such a reading opens the door to an infinitely iterative process whereby each new report necessitates not only a counter-report but also a repeat deposition. To avoid drowning in sur-rebuttal reports, sur-sur-rebuttal reports and so forth, courts must impose a limit." (citations omitted)).

The prospect of drowning, particularly at this juncture in the litigation, is likely why Cognizant was unwilling to consider Infosys's proposed procedure of exchanging additional expert reports prior to deposing experts. Cognizant relies mainly on *Uworld*, which found some expert reports to be impermissible sur-rebuttals, but which Infosys correctly points out involved a stipulation on expert reports that is not present here. Infosys relies mainly on *Endure Industries v. Vizient, Inc.*, 2024 WL 1704670 (N.D. Tex. Apr. 19, 2024) (Starr, J.), a case in which Judge Starr did not decide whether a party's supplemental reports were improper, but assumed that even if they were, they should not be stricken under the four-factor analysis applicable in our circuit. But

*Endure Industries* involved one party producing, after the close of discovery, "thousands of pages that . . . included hundreds of millions [of dollars] in previously undisclosed sales, but also reflected a more organized and workable form of [the data,]." *Endure Industries Inc. v. Vizient Inc.*, 2024 WL 1704670, at *1. That is also not the case here.

**Findings and Conclusions**

The Special Master has reviewed the parties' briefing, arguments, and materials – including the experts' initial and supplemental reports and exhibits – and finds as follows:

Both Dr. Wong and Dr. Werner's supplemental reports, as they relate to and discuss the Dismissal Order, are proper supplements pursuant to Fed. R. Civ. P. 26(e) and (f). Both experts cite liberally to their initial reports in explaining the impact of the dismissal order on their opinions. That the doctors conform their wording to the words used by the Court in the Dismissal Order does not appear to the Special Master to be the "gotcha" that Cognizant urges. Rather, Drs. Wong and Werner explain how the dismissed theories of liability impact – or fail to impact – the opinions expressed in the initial reports. Additionally, Dr. Werner's supplemental report (in which alternate damages attributed to the delay in Helix development are offered) appear to be a correction in response to the Dismissal Order – the effect that the dismissal of three theories of liability had on his initial opinions. The sections of the supplemental reports that respond to the Dismissal Order conform with Rules 26(e) and (f) and were served timely.

Which leaves the portions of the supplements that address Cognizant's rebuttal reports. As Judge Starr noted in *Endure Industries*, an improper supplement will not be stricken if the untimely disclosure of the supplements was "substantially justified or harmless." *Endure Industries v. Vizient, Inc.*, 2024 WL 1704670 at *2. The Court analyzes: 1) the importance of the evidence; 2) the prejudice to the opposing party of including the evidence; 3) the possibility of curing any

prejudice by granting a continuance; and 4) the explanation for the party's failure to disclose. *Id.*; *accord, Uworld LLC v. USMLE Galaxy LLC,* 2025 WL 1246434 at *3.

As noted above, *Endure Industries* involved a situation in which the non-supplementing party produced a large amount of discovery past the discovery deadline that the supplementing party had asked for in discovery and the late-produced documents affected the accuracy of the experts' initial reports. *Endure Industries*, 2024 WL 1704670, at *2. *Uworld* involved a supplementing party claiming that the supplemental reports "respond[ed] to erroneous contentions from [rebuttal experts] that – if left unchallenged – would mislead the jury." *Uworld*, 2025 WL 1246434 at *6. These portions of the supplemental reports by Drs. Wong and Werner are much more like those in *Uworld* than those in *Endure.* They openly purport to respond to the rebuttal reports of Cognizant's experts. *See, e.g.,* Wong Supplemental Report, Section III (with the heading "Additional Calculations Responding to New Assertions by Cognizant Experts") and Werner Supplemental Report, p. 6 (" . . . I have performed additional calculations based on Mr. Orszag's opinions, workpapers, and calculations."). Infosys did not seek leave of court to file the reports. And it appears to know that these portions of the report are violative of Rule 26, given its request to analyze portions of the reports that are not supplemental or justified "and strike only the portions [found] to be improper." Doc. No. 607-3, p. 41 (citations omitted); p. 49, n. 14.

Turning to whether the supplemental reports were substantially justified or harmless: the first factor, importance of the evidence, weighs on both sides. The portions of the reports that respond to Cognizant's rebuttal reports are second bites at the apple. While Infosys contends that it will be hampered in summary judgment briefing, Dr. Wong and Dr. Werner may still present evidence and testify about the analyses contained in their initial reports. On balance, the Special Master believes the first factor ultimately weighs toward exclusion. The second factor, prejudice

to Cognizant – also weighs toward exclusion. Infosys may have recognized this when suggesting the process by which both sides would produce supplemental expert reports prior to deposing the experts. The prejudice stems from Cognizant's experts having invested significant time and expense in compiling their rebuttal reports; without its own second bite at the apple (as Infosys proposed), Cognizant is prejudiced by the sur-rebuttal information in Infosys's supplemental reports, as well as the prospect of conducting additional expert mini-depositions and preparing for such. The third factor – whether prejudice can be cured by a continuance – is off the table; both parties acknowledge that the Court is unlikely to continue the trial date and deadlines and thus weighs toward exclusion. The fourth factor is Infosys's explanation for its failure to seek leave. Infosys points to its efforts under *Dondi* to propose an orderly process to allow both sides to supplement reports. While commendable and in-line with *Dondi's* requirements in this district, Cognizant's position on Infosys's proposal was, given the present posture of the litigation, understandable. While the fourth factor may weigh against exclusion, the Special Master is not convinced that it does so to a degree to supplant the weight of the other factors.

As such, the Special Master finds that Cognizant's Motion should be GRANTED as to the portions of the supplemental reports that address Cognizant's rebuttal experts' reports and should be DENIED as to the portions of the supplemental reports that address the Dismissal Order. More specifically:

- Cognizant's Motion to Strike the Supplemental Report of Paul Wong, Ph.D., is GRANTED as to Section I(B)(2)(b); the portion of Section I(C)(4) which relies on and refers to "the expert reports I have previously responded to and/or am presently responding to"; Section III, and any materials in support of those sections not included in Dr. Wong's Initial Report.
- Cognizant's Motion to Strike the Supplemental Report of Paul Wong, Ph.D., is DENIED

as to Section 1(A) and Section II.

- Cognizant's Motion to Strike the Supplemental Report of Daniel P. Werner, Ph.D., CPA, is GRANTED as to the portion of Section I, Par. 2, regarding "new calculations [] needed in connection with the documents, data, and workpapers provided by Mr. Orszag. . ."; Section II, Pars. 6(a), (b), and (c), and any new materials in support of that section not included in Dr. Werner's Initial Report.
- Cognizant's Motion to Strike the Supplemental Report of Daniel P. Werner, Ph.D., CPA, is DENIED as to Section 1, Par. 2, regarding "the Court's Order, dated August 11, 2026"; Section II, Pars. 3, 4, and 5; and Section III.

SO ORDERED this 15th day of September, 2026.

/s/ *Paul D. Stickney*
Paul D. Stickney
Appointed Special Master
Texas Bar No. 00789924
STICKNEY MEDIATIONS, PLLC
10270 Hillcrest Rd., Suite 1042
Dallas, Texas 75230
682-313-9656
judgestick@gmail.com