**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| COGNIZANT TRIZETTO SOFTWARE GROUP, INC.,<br><br>Plaintiff,<br><br>v.<br><br>INFOSYS LIMITED,<br><br>Defendant. | Case No. 3:24-cv-2158-X<br><br>The Honorable Brantley Starr<br><br>Magistrate Judge David L. Horan |
| INFOSYS LIMITED,<br><br>Counterclaim Plaintiff,<br><br>v.<br><br>COGNIZANT TECHNOLOGY SOLUTIONS CORP. and COGNIZANT TRIZETTO SOFTWARE GROUP, INC.,<br><br>Counterclaim Defendants. | |

**COGNIZANT TECHNOLOGY SOLUTIONS CORP.'S AND COGNIZANT TRIZETTO SOFTWARE GROUP, INC.'S OPPOSITION TO INFOSYS LIMITED'S OBJECTIONS TO THE SPECIAL MASTER'S FINDINGS AND CONCLUSIONS GRANTING IN PART AND DENYING IN PART COGNIZANT'S MOTION TO STRIKE (DKT. 628)**

# TABLE OF CONTENTS


**INTRODUCTION** .......... **1**

**BACKGROUND** .......... **2**

**LEGAL STANDARD** .......... **3**

**ARGUMENT** .......... **5**

A. The Special Master Correctly Struck Impermissible Surrebuttal. .......... 5

B. The Four-Factor Test Warrants Striking Surrebuttal Materials. .......... 8

**CONCLUSION** .......... **14**

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*BCC Merch. Sols., Inc. v. JetPay, LLC*,
2016 WL 3264283 (N.D. Tex. Feb. 19, 2016) .......... 2, 4, 6, 8, 12

*Cutler v. Louisville Ladder, Inc.*,
2012 WL 2994271 (S.D. Tex. July 20, 2012) .......... 8

*Dondi Props. Corp. v. Commerce Sav. & Loan Ass'n*,
121 F.R.D. 284 (N.D. Tex. 1988) .......... 9

*Endure Indus. Inc. v. Vizient Inc.*,
2024 WL 1704670 (N.D. Tex. Apr. 19, 2024) .......... 9, 13

*Finite Util. Consulting, L.L.C. v. Tawa, Inc.*,
2026 WL 2244207 (5th Cir. Aug. 4, 2026) .......... 1, 4, 6, 7, 12, 13

*Geiserman v. MacDonald*,
893 F.2d 787 (5th Cir. 1990) .......... 2, 11

*Hamburger v. State Farm Mut. Auto. Ins. Co.*,
361 F.3d 875 (5th Cir. 2004) .......... 11, 13

*Harmon v. Ga. Gulf Lake Charles L.L.C.*,
476 F. App'x 31 (5th Cir. 2012) .......... 9, 12

*In re Complaint of C.F. Bean L.L.C.*,
841 F.3d 365 (5th Cir. 2016) .......... 2, 4, 12

*In re Pool Prods. Distrib. Mkt. Antitrust Litig.*,
2014 WL 3353232 (E.D. La. July 9, 2014) .......... 4, 7, 8, 12

*Pem-Air Turbine Engine Servs. LLC v. Gupta*,
2024 WL 758561 (N.D. Tex. Feb. 22, 2024) .......... 4, 8

*Reliance Ins. Co. v. La. Land & Expl. Co.*,
110 F.3d 253 (5th Cir. 1997) .......... 8, 10, 12

*Savage v. LaSalle Mgmt. Co.*,
169 F.4th 553 (5th Cir. 2026) .......... 13

*Sierra Club, Lone Star Chapter v. Cedar Point Oil Co., Inc.*,
73 F.3d 546 (5th Cir. 1996) .......... 3

*Uniloc USA, Inc. v. Samsung Elecs. Am., Inc.*,
2019 WL 2267212 (E.D. Tex. May 28, 2019) .......... 7, 10

*UWorld LLC v. USMLE Galaxy LLC*,
2025 WL 1246434 (N.D. Tex. Apr. 28, 2025) .......... 2, 4, 5, 7, 9, 10

*Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm'n*,
2017 WL 9480314 (W.D. Tex. May 22, 2017) ............................................................1, 4, 7, 9

**Rules**

Fed. R. Civ. P. 26(a) ..........................................................................................................3

## INTRODUCTION

Cognizant Technology Solutions Corp. and Cognizant TriZetto Software Group, Inc. (collectively "Cognizant") oppose Infosys's objections to the Special Master's September 15, 2026 Findings and Conclusions granting in part and denying in part Cognizant's Motion to Strike, as well as his supplemental Findings and Conclusions (together, "Findings"). *See* Dkts. 618, 621.

The Special Master drew a clear line: he permitted portions of Infosys's August 21 expert reports addressing the Court's Dismissal Order while striking those portions that "address Cognizant's rebuttal experts' reports"—i.e., unauthorized "sur-rebuttals." Dkt. 618 at 6. The reports themselves compel that conclusion. Infosys instructed Dr. Wong to determine whether "new calculations" were needed for "addressing and responding to" Cognizant's experts, App'x 9 ¶ 2(b), and instructed Dr. Werner to determine whether "new calculations" were needed in response to Mr. Orszag's August 3 report, App'x 53 ¶ 2. Infosys's experts did exactly that. The stricken passages repeatedly name Cognizant's experts, attack their analyses, perform new calculations designed to answer their criticisms, and even pronounce those criticisms "not credible." App'x 35 ¶¶ 44–45. Dr. Werner confirmed under oath that these were not "corrections." App'x 117 (13:20–22).

Infosys nevertheless now characterizes this material as mere "correction" or "clarification." That argument is irreconcilable with the reports themselves—and with settled law. Rule 26(e) permits genuine supplementation; it does not entitle a party to a third round of expert reports answering its opponent's rebuttal experts. *See Finite Util. Consulting, L.L.C. v. Tawa, Inc.*, No. 25-20396, 2026 WL 2244207, at *4 (5th Cir. Aug. 4, 2026) (per curiam) (holding that later opinions directed at the opposing expert's methodology and conclusions were "rebuttal opinions by design"); *Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm'n*, 2017 WL 9480314, at *2 (W.D.

Tex. May 22, 2017) (Rule 26(e) "contains no provision allowing a party to amend its original disclosure for the purpose of refuting arguments made in rebuttal"). A party wishing to file a sur-rebuttal report "must first seek leave of Court." *UWorld LLC v. USMLE Galaxy LLC*, 2025 WL 1246434, at *5 (N.D. Tex. Apr. 28, 2025); *BCC Merch. Sols., Inc. v. JetPay, LLC*, 2016 WL 3264283, at *4 (N.D. Tex. Feb. 19, 2016). Once Cognizant declined Infosys's proposed additional round, Infosys's remedy was to do just that. It did not. Instead, it served the sur-rebuttals anyway without regard to the requirements of Rule 26.

The Special Master therefore reached the correct result under both Rule 26 and this Circuit's four-factor test for evaluating late expert opinions. *See In re Complaint of C.F. Bean L.L.C.*, 841 F.3d 365, 372 (5th Cir. 2016) (applying four-factor test); *Geiserman v. MacDonald*, 893 F.2d 787, 791 (5th Cir. 1990) (same). Infosys's objections—filed on the eve of summary-judgment and *Daubert* briefing—seek to reopen an expert discovery process that closed weeks ago. Particularly given the Court's repeated emphasis on compliance with its scheduling orders, the Findings should be adopted and Infosys's objections overruled.

## BACKGROUND

The Scheduling Order provided for two rounds of expert reports: opening reports by June 15, 2026, rebuttals by August 3, and completion of expert discovery by August 24. Dkt. 201. Summary judgment and *Daubert* motions are due today, September 23. Dkt. 547. All initial and rebuttal expert reports—antitrust and trade secret alike—were served on that schedule, and expert depositions were set consistent with the August 24 deadline.

On August 11, the Court dismissed Infosys's standalone NDAA, training, and predatory-hiring theories with prejudice. Dkt. 546 ("Dismissal Order"). The Court simultaneously warned—for at least the fourth time—that it would "not entertain extensions to avoid placing this case on

the three-year list." Dkt. 547. The next day, Infosys asked Cognizant to agree to a new round of expert reports and to postpone expert depositions. Cognizant declined.

Nevertheless, on August 21, Infosys served new reports from both of its antitrust experts without seeking leave ("New Reports"). Infosys gave each expert the same two-part assignment: (1) address the Court's Dismissal Order and (2) respond to Cognizant's rebuttal experts. Both did exactly that. As to the second assignment, the New Reports directly answered criticisms lodged by Cognizant's experts, Dr. Lerner and Mr. Orszag, in their August 3 rebuttal reports and introduced numerous new schedules, exhibits, and calculations designed to rebut Cognizant's expert rebuttal opinions.

Cognizant moved to strike Infosys's New Reports through the joint-report process. Dkts. 607-2, 607-3. The Special Master declined to strike the portions of the New Reports conforming the experts' opinions to the Court's Dismissal Order but—recognizing the remainder as "sur-rebuttals," Dkt. 618 at 6—struck the portions of the New Reports responding to Dr. Lerner's and Mr. Orszag's criticisms ("Stricken Materials"). Dkt. 618 at 7–10. At Cognizant's request, and after considering Infosys's written opposition, the Special Master then clarified that his ruling reached the passages of Dr. Wong's Section II that likewise respond to Dr. Lerner. Dkt. 621 at 2–3 & Ex. B.

## LEGAL STANDARD

Rule 26(a)(2)(B) requires a retained expert's report to contain "a complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B). Rule 26(e) imposes a narrower duty to correct or supplement a disclosure that later proves materially incomplete or incorrect; it is not an extension of expert deadlines or an opportunity to deliver the "lion's share" of expert information later. *See Sierra Club, Lone Star Chapter v. Cedar Point*

*Oil Co., Inc.*, 73 F.3d 546, 571 (5th Cir. 1996); *C.F. Bean*, 841 F.3d at 371. The Fifth Circuit accordingly looks to substance, not labels: calling a later disclosure a supplement does not "pass the straight face test" when it repeatedly names the opposing expert and seeks to discredit his testimony. *Finite Util.,* 2026 WL 2244207, at *4.

That rule is especially clear for surrebuttals. Rule 26 does not grant a right to rebuttal beyond the authorized rebuttal round. A party that wishes to serve a surrebuttal must seek leave of court. *UWorld*, 2025 WL 1246434, at *5; *BCC Merch. Sols.*, 2016 WL 3264283, at *4. Courts therefore reject attempts to use Rule 26(e) simply to answer an opponent's rebuttal. *See Wal-Mart*, 2017 WL 9480314, at *2; *In re Pool Prods. Distrib. Mkt. Antitrust Litig.*, MDL No. 2328, 2014 WL 3353232, at *2–3 (E.D. La. July 9, 2014). Otherwise, expert discovery devolves into the "infinitely iterative process" of report, counter-report, and repeat deposition that Rule 26 and scheduling orders are designed to prevent. *Wal-Mart*, 2017 WL 9480314, at *2; *UWorld*, 2025 WL 1246434, at *5.

If a party serves new expert material outside the authorized sequence, Rule 37(c)(1) bars its use unless the proponent proves substantial justification or harmlessness. *See Pem-Air Turbine Engine Servs. LLC v. Gupta*, 2024 WL 758561, at *3 (N.D. Tex. Feb. 22, 2024) (Horan, M.J.) ("The disclosing (or late disclosing) party bears the burden of proving the failure to timely disclose was substantially justified or harmless."). Courts consider (1) the importance of the evidence, (2) prejudice, (3) the possibility of curing prejudice by continuance, and (4) the explanation for the noncompliance. *C.F. Bean*, 841 F.3d at 372; *Finite Util.*, 2026 WL 2244207, at *4–5.

## ARGUMENT

### A. The Special Master Correctly Struck Impermissible Surrebuttal.

The Scheduling Order provided for two rounds of expert reports, and Rule 26 "does not grant any right to rebuttal beyond that initial rebuttal report." *UWorld*, 2025 WL 1246434, at *5. The Stricken Materials are that precise forbidden third round. The New Reports say so on their faces: Dr. Wong was asked whether "new calculations" were needed for "addressing and responding to" Cognizant's experts' opinions, App'x 9 ¶ 2(b), while Dr. Werner was asked whether "new calculations" were needed "in connection with" Mr. Orszag's materials, App'x 53 ¶ 2. The New Reports thus expressly identify their purpose as responding to Cognizant's rebuttal experts.

Tellingly, Infosys does not attach the New Reports to its Objections, allowing it to recast the challenged passages in the abstract as supposed "corrections" or "clarifications."[1] The reports themselves foreclose that characterization. Far from correcting errors, in the New Reports, both experts expressly stand by their prior work and then undertake new analyses to answer Cognizant's experts. Dr. Werner states that "[n]othing within the Orszag Report causes me to change the conclusions within my Initial Report," but nevertheless he "performed additional calculations based on Mr. Orszag's opinions, workpapers, and calculations." App'x 57 ¶ 6. He confirmed at deposition: "I don't consider them corrections, no." App'x 117 (13:20–22). Dr. Wong likewise begins the responsive section of his New Report by asserting that his prior reports already "anticipate and address" Cognizant's experts "extensively," App'x 28 ¶ 32, and then offers new calculations that he contends further confirm his existing conclusions. App'x 30 ¶ 37.

---

[1] Indeed, Infosys has characterized the struck portions of the New Reports as both "order responsive" and "clarifications" in an attempt to see which framing will permit them to be improperly included in the record.

The substance of the opinions in the New Reports confirms what the assignments say. Dr. Werner's Stricken Material answers Mr. Orszag: it re-plots his sales-trend analysis, attacks his regression methodology, responds to his customer-penetration criticisms, and introduces new analyses and schedules purportedly showing an even "larger" effect than Werner originally calculated. App'x 57–60 ¶¶ 6(a)–(c); ¶ 6(d) & n.31. Those are not corrections to Werner's opening report; they are new analyses designed to rebut Orszag. Dr. Wong's Stricken Material does the same. He introduces new analyses expressly responding to criticisms raised by Dr. Lerner and Mr. Orszag, including "the calculation Mr. Orszag omits," revised market-share analyses addressing Dr. Lerner's criticisms, and conducts a new profit-margin analysis responding to Dr. Lerner's benchmarking critique. App'x 28–36 ¶¶ 33–47. And where Dr. Lerner did identify possible calculation errors, Dr. Wong did not merely correct them. He added new analyses to argue that the errors had only a "de minimis" effect and that Lerner's resulting criticism was "not credible." App'x 35 ¶¶ 44–45. His Section II passages are blunt: "Dr. Lerner does not dispute"; "Dr. Lerner has offered no analysis"; and "Dr. Lerner does not actually provide any analysis substantiating this claim." App'x 15–16 ¶ 8(b) & nn.25–29, n.33. And his Section III passages are undeniably rebukes to Lerner's report with new material: "Dr. Lerner criticizes my analysis of total expenditure in the Core Admin Software market. But Dr. Lerner's criticism is unfounded, as shown by additional analysis." App'x 31 ¶ 39. Those are responses to an opposing expert, not corrections to Dr. Wong's own report.

The Stricken Materials are a transparent attempt to "bolster weaknesses . . . in response to criticisms from [an opposing expert]," which "goes well beyond supplementation." *BCC Merch. Sols.*, 2016 WL 3264283, at *4. The question is not whether the later opinions overlap with subjects addressed earlier; "Rule 26 turns on the purpose of the later opinions." *Finite Util.*, 2026 WL

2244207, at *4. In *Finite Utility*, the Fifth Circuit deemed later opinions "rebuttal opinions by design" where they targeted the opposing expert's methodology and conclusions, repeatedly named that expert, and sought to discredit his testimony. *Id.* Calling them a "supplement" "does not pass the straight face test." *Id.* The same principle appears elsewhere in this Circuit: amendments made "in response to [an opponent's] criticisms" do not justify supplementation but instead "support exclusion." *Uniloc USA, Inc. v. Samsung Elecs. Am., Inc.*, 2019 WL 2267212, at *6 (E.D. Tex. May 28, 2019). The fit here is even more direct: Infosys expressly instructed Drs. Wong and Werner to respond to Cognizant's rebuttal experts, and the Stricken Materials do exactly that.[2]

*UWorld* supplies the consequence. Where the schedule authorizes only opening and rebuttal reports, Rule 26(e) cannot be used to create another round; otherwise, each rebuttal could generate another response, another report, and another deposition in an "infinitely iterative process." 2025 WL 1246434, at *5; *see also Wal-Mart*, 2017 WL 9480314, at *2. A party seeking surrebuttal must instead "first seek leave of Court," and a surrebuttal served without leave is "improperly disclosed in violation of Rule 26." *UWorld*, 2025 WL 1246434, at *5. Rule 26 does not entitle a party to a "'do-over' or 'second bite at the apple'" merely because the opposing rebuttal expert criticized its original analysis. *Id.* at *6. Nor does Rule 26 permit a party to "position themselves to advantage by unilaterally seeking to have the last word." *In re Pool Prods.*, 2014 WL 3353232, at *2. Infosys never sought leave. The Special Master therefore correctly treated the Stricken Materials as what they are: unauthorized surrebuttal.

---

[2] Infosys's footnote 1 offers no support for its proposition that the line between surrebuttal and "correction" relates in any way to the length of the material. Instead, as noted in *Finite Utility*, whether material is surrebuttal turns on "the purpose of the later opinions." 2026 WL 2244207, at *4.

**B. The Four-Factor Test Warrants Striking Surrebuttal Materials.**

Because the Stricken Materials were improperly disclosed, Infosys bears the burden of proving substantial justification or harmlessness. *Pem-Air*, 2024 WL 758561, at *3. It cannot. All four factors, weighed holistically, support the Special Master's ruling.

*Explanation*. The first factor asks for the explanation for the noncompliance—here, most importantly, Infosys's "failure to seek leave." Dkt. 618 at 9. The Fifth Circuit frames the inquiry as seeking an explanation for the late disclosing party's failure to submit a timely report. *Reliance Ins. Co. v. La. Land & Expl. Co.*, 110 F.3d 253, 257 (5th Cir. 1997). Infosys largely answers a different question—why it wanted to respond to Cognizant's rebuttal reports. But even meeting Infosys where it improperly lands, its explanation boils down to the fact that Cognizant's rebuttal experts criticized Infosys's experts and Infosys wanted to answer, despite it being unauthorized under the Court-ordered schedule. This position would undo any court-ordered schedule entirely, as the existence of any rebuttal report would then be sufficient justification for parties to serve endless rounds of surrebuttal reports outside the court-ordered schedule. In *BCC Merchant*, the proponent explained that its late report was "directed to Defendants' own rebuttal reports"; the court found that explanation provided "little justification" because "[t]here is no right to a sur-rebuttal," particularly when no leave is sought. 2016 WL 3264283, at *4. *In re Pool Products* likewise held that responding to critiques was "[f]ar from being an explanation that would excuse" a new report. 2014 WL 3353232, at *2; *see also Cutler v. Louisville Ladder, Inc.*, 2012 WL 2994271, at *4 (S.D. Tex. July 20, 2012) (desire to account for opposing experts' testimony "pro-vides no justification for the delay"). The same reasoning controls here. A rebuttal expert's crit-icism does not itself create a right to a surrebuttal.

*UWorld* also instructs that the Court examine Infosys's explanation for its failure to seek leave. There, the proponent argued that it was entitled to a surrebuttal without leave because its experts could not have anticipated the opposing experts' rebuttal opinions. 2025 WL 1246434, at *7. Judge Horan separately asked why, once those rebuttal opinions existed, the party failed to "seek leave to file the sur-rebuttals"—and found the explanation inadequate. *Id.* Even assuming Cognizant's rebuttal reports gave Infosys a reason to *want* additional opinions, it does not explain why Infosys bypassed the Court and served a third round of expert reports without leave. The Fifth Circuit likewise rejects this sort of "self-help" through "unilaterally altering expert deadlines" instead of seeking relief from the Court. *Harmon v. Ga. Gulf Lake Charles L.L.C.*, 476 F. App'x 31, 39 n.4 (5th Cir. 2012) (per curiam).[3]

*Importance.* Infosys argues that the Stricken Materials are important because they concern injury and damages. But the relevant question is whether the *late material itself* is important—not whether injury and damages are generally important subjects in an antitrust case. Infosys's principal authority, *Endure Indus. Inc. v. Vizient Inc.*, involved supplemental work prompted by critical data produced late by the opposing party. 2024 WL 1704670, at *2–3 (N.D. Tex. Apr. 19, 2024). Here, by contrast, striking the surrebuttal leaves Infosys's timely injury and damages opinions intact. That distinction mattered in *Wal-Mart*, which found a second report nonessential because exclusion left the expert's original opinions in place. 2017 WL 9480314, at

[3] Infosys's invocation of *Dondi Props. Corp. v. Commerce Sav. & Loan Ass'n*, 121 F.R.D. 284 (N.D. Tex. 1988) (en banc) (per curiam), is misplaced. The Special Master expressly considered Infosys's contention that it was attempting to satisfy its *Dondi* obligations and nevertheless concluded that the unauthorized surrebuttal should be stricken. Nor does the record support Infosys's suggestion that its approach was designed to spare the Court unnecessary burden: even before seeing the Special Master's Findings, Infosys repeatedly signaled that it wanted to seek review of any adverse ruling by preserving its right to object, and it now presses these Objections. Most fundamentally, *Dondi* did not require Cognizant to acquiesce to an unauthorized third round of expert reports.

*3. Indeed, Infosys itself previously stated it is "confident" that Drs. Wong's and Werner's prior reports are reliable and sufficient to withstand summary judgment "even standing alone." Inf. Br. 54. And the Special Master correctly observed that both experts remain free to present the analyses contained in those timely reports. Dkt. 618 at 8.

What Infosys really claims is important is the opportunity to answer Cognizant's rebuttal experts on injury and damages. But that cannot establish importance without collapsing the two-round expert schedule altogether. Every surrebuttal exists because a party would prefer to answer the criticisms made in rebuttal. Courts do not treat that preference as a necessity. *See Reliance*, 110 F.3d at 257–58 (affirming refusal to permit a new expert report after the expert's deposition went poorly and recognizing courts' authority to refuse a "second chance to develop their case"); *Uniloc*, 2019 WL 2267212, at *6 (amendments made in response to the opponent's criticisms supported exclusion). *UWorld* likewise rejects a "'do-over' or 'second bite at the apple'" simply because a rebuttal expert challenges the original report. 2025 WL 1246434, at *6. And Infosys's theory is particularly one-sided: Cognizant received no reciprocal opportunity to answer Infosys's August 3 rebuttal opinions. The importance factor cannot transform Infosys's desire for the unauthorized last word into a necessity while denying Cognizant the same opportunity.

Infosys's second argument—that exclusion would leave its experts exposed at trial to supposed "errors" in their reports—is equally misplaced. The Stricken Materials overwhelmingly do not correct conceded errors. Dr. Werner expressly states that "[n]othing within the Orszag Report causes me to change the conclusions within my Initial Report" and later testified, "I don't consider them corrections, no." App'x 57 ¶ 6; App'x 117 (13:20–22). Dr. Wong likewise maintains that his prior reports already "anticipate and address" Cognizant's experts "extensively" and uses his new analyses to argue that Cognizant's criticisms do not undermine his conclusions. App'x 28,

30 ¶¶ 32, 37. And even where Dr. Wong acknowledges possible calculation errors, he does not correct them; instead, he adds new analyses to argue that their effect is *de minimis* and that Dr. Lerner's criticism is "not credible." App'x 35 ¶¶ 44–45. That is rebuttal, not error correction.

More fundamentally, Infosys's "errors" characterization obscures the scope of what was stricken. These are not a handful of errata needed to prevent an expert from defending an acknowledged error at trial. The surrebuttal adds numerous new calculations, models, analyses, schedules, and exhibits—including Wong's new difference-in-differences analysis, market-share recalculations, revenue analyses, and profit-margin analysis, *see* App'x. 14–16 ¶¶ 8(b)(i), 8(b)(iii), App'x 28–36; and Werner's re-plotted sales analysis, new regression work, and new customer-penetration models supported by four new schedules, *see* App'x 57–59 ¶¶ 6(a)–(c), App'x 59 ¶ 6(d) & nn.30–31. That new quantitative work cannot become "important" merely because Infosys now labels it necessary to correct alleged errors—particularly where this work aims to prove that no error exists in the original reports in the first place. And regardless, if the New Reports were truly indispen-sable, that was all the more reason to seek leave before serving them. *See Geiserman*, 893 F.2d at 791–92 (important expert evidence creates "much [] more reason to be sure its introduction was properly grounded," and importance cannot "singularly override" scheduling orders); *Hamburger v. State Farm Mut. Auto. Ins. Co.*, 361 F.3d 875, 883 (5th Cir. 2004) (same).

*Prejudice*. Infosys minimizes prejudice as nothing more than additional work Cognizant could have completed before summary judgment. But the prejudice to Cognizant is more fundamental: Infosys gave itself an unauthorized third turn of rebuttals in a stipulated and court-ordered two-round expert process. Cognizant used its August 3 reports to rebut Infosys's opening experts; Infosys answered those rebuttals with new opinions, calculations, and criticisms, while Cognizant received no reciprocal reply opportunity. The Fifth Circuit recently found the same

procedural asymmetry prejudicial where an opponent had already deposed the expert and the late disclosure would require "a second deposition to discover both the opinions and their bases." *Finite Util.*, 2026 WL 2244207, at *4. The Fifth Circuit likewise recognizes prejudice where a new report would force the opponent to obtain expert analysis addressing "last-minute conclusions." *Reliance*, 110 F.3d at 257–58. And courts in this District describe the prejudice from an unauthorized additional report as "immense." *BCC Merch.*, 2016 WL 3264283, at *5. As the Special Master recognized, Infosys itself effectively acknowledged that asymmetry when it initially proposed that both sides exchange another round of reports before depositions. Dkt. 618 at 9.

The timing compounds that harm. Infosys served Dr. Wong's new opinions *after* Cognizant had already deposed him**,** so those opinions and numerous new calculations escaped examination altogether, while Dr. Werner's supporting materials arrived only days before his deposition. Courts repeatedly recognize that late opinions served around expert depositions create prejudice by forcing hurried new expert analysis and potentially repeat examinations. *See Harmon*, 476 F. App'x at 38–39 (prejudice from opinions added days before and after expert depositions); *In re Pool Prods.*, 2014 WL 3353232, at *2 (report served three days before deposition left insufficient time for expert review and preparation); *C.F. Bean*, 841 F.3d at 373–74 (recognizing that proper rebuttal and re-deposition would impose "substantial time and expense"). And the New Reports arrived just as the expert record was supposed to close and the parties were turning to summary-judgment and *Daubert* briefing, diverting precisely the attorney and expert resources the Scheduling Order was designed to protect.

*Availability of a Continuance*. The continuance factor asks a straightforward question: is a continuance available to cure the prejudice? Here, the answer is no. This Court has repeatedly

warned that it would not permit further delay, most recently stating that it "will not entertain extensions to avoid placing this case on the three-year list." Dkt. 547; *see also* Dkts. 201, 320, 409. The Special Master therefore correctly found that a continuance was "off the table." Dkt. 618 at 8–9. Where a court has already foreclosed further delay, the Fifth Circuit treats that reality as supporting exclusion. *See Savage v. LaSalle Mgmt. Co.*, 169 F.4th 553, 556 (5th Cir. 2026) (affirming exclusion where the district court had already continued trial "three times and had warned the parties that it would not grant another continuance"); *Finite Util.*, 2026 WL 2244207, at *5 (continuance would "reward the unjustified delay and undermine enforcement of its deadlines").

Infosys sidesteps that inquiry. Ignoring that a continuance is not available here, it returns to Cognizant's refusal to agree voluntarily to a third round of expert reports—the very process the Special Master determined Infosys was not entitled to impose unilaterally. But Cognizant's refusal to rewrite the Court's schedule by agreement—particularly in light of the Court's prior refusal to further amend the discovery schedule—does not cure the unavailability of a continuance. If anything, Infosys's proposal confirms that its New Reports required additional process beyond the schedule: further reports, altered depositions, and additional expert work. And a continuance should not become the automatic consequence of violating expert deadlines; otherwise, "the failure to satisfy the rules would never result in exclusion, but only in a continuance." *Hamburger*, 361 F.3d at 884. The Special Master recognized exactly that, observing that "[t]he prospect of drowning, particularly at this juncture in the litigation, is likely why Cognizant was unwilling to consider Infosys's proposed procedure of exchanging additional expert reports prior to deposing experts." Dkt. 618 at 6.

Infosys's principal authority permitting late expert material confirms that this factor favors Cognizant. In *Endure*, the Court found that "a continuance of the deadlines and allowing for re-

depositions or securing new rebuttal opinions if necessary would cure any prejudice." 2024 WL 1704670, at *2 (Starr, J.). That curative option was central to allowing the reports there—but it was only feasible because the Court had *already vacated all deadlines*, including the trial schedule. Here, the Court has done the opposite: it has repeatedly preserved the existing schedule and expressly foreclosed further extensions. Infosys identifies no authority permitting prejudicial new surrebuttal opinions to remain where the opposing party lacks a reciprocal opportunity to respond and no continuance or other curative process is available. On the factor the law actually asks the Court to consider, the answer is therefore dispositive: a continuance is unavailable, and the Special Master correctly found that this factor favors exclusion.

**CONCLUSION**

For the foregoing reasons, the Court should deny Infosys's objections to the Special Master's Findings.

Dated: September 23, 2026

By: /s/ John T. Cox III

John T. Cox III (SBN 24003722)
Betty Yang (SBN 24088690)
Bradley G. Hubbard (SBN 24090174)
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue, Suite 2100
Dallas, TX 75201
Tel: 214.698.3226
Fax: 214.571.2900
TCox@gibsondunn.com
BYang@gibsondunn.com
BHubbard@gibsondunn.com

Rachel S. Brass (*pro hac vice*)
Elizabeth McCloskey (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
One Embarcadero Center, Suite 2600
San Francisco, CA 94111
Tel: 415.393.8200
Fax: 415.393.8306
RBrass@gibsondunn.com
EMcCloskey@gibsondunn.com

Samuel G. Liversidge (*pro hac vice*)
Casey J. McCracken (*pro hac vice*)
S. Christopher Whittaker (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
Tel: 213.229.7000
Fax: 213.229.7520
SLiversidge@gibsondunn.com
CMcCracken@gibsondunn.com
CWhittaker@gibsondunn.com

Jamie E. France (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C. 20036
Tel: 202.955.8500
JFrance@gibsondunn.com

*Attorneys for Cognizant TriZetto Software Group, Inc. and Cognizant Technology Solutions Corp.*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 23, 2026, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which sent notification of the filing to all counsel of record, and emailed a copy of this filing to all counsel of record.

Dated: September 23, 2026

/s/ *Jamie E. France*
Jamie E. France