**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| COGNIZANT TRIZETTO SOFTWARE GROUP, INC.,<br>Plaintiff,<br>v.<br>INFOSYS LIMITED,<br>Defendant. | Case No. 3:24-cv-2158-X<br>The Honorable Brantley Starr<br>Magistrate Judge David L. Horan<br>**ORAL ARGUMENT REQUESTED** |
| INFOSYS LIMITED,<br>Counterclaim Plaintiff,<br>v.<br>COGNIZANT TECHNOLOGY SOLUTIONS CORP. and COGNIZANT TRIZETTO SOFTWARE GROUP, INC.,<br>Counterclaim Defendants. | |

**JOINT REPORT REGARDING COGNIZANT TECHNOLOGY SOLUTIONS CORP.'S MOTION TO STRIKE INFOSYS'S SUPPLEMENTAL EXPERT REPORTS OF DR. PAUL WONG AND DR. DANIEL P. WERNER**

Pursuant to the Court's Standing Order on Discovery and Other Non-Dispositive Motions (Dkt. No. 107), the parties file the following joint report regarding Counterclaim Defendant Cognizant Technology Solutions Corp.'s ("Cognizant") Motion to Strike Plaintiff Infosys Limited's ("Infosys") Supplemental Expert Reports of Dr. Paul Wong and Dr. Daniel P. Werner.

**(a) The names of the attorneys or unrepresented parties who participated in the pre-motion conference:** Teddy Kristek and Ming Lee Newcomb participated in the pre-motion conference on behalf of Cognizant. Jariel Rendell, Joshua Lang, Kelly Morrison, and Joshua Armstrong participated in the pre-motion conference on behalf of Infosys.

**(b) The date the conference was held and the amount of time during which the parties conferred:** The conference was held on August 27, 2026. Counsel for the parties conferred for approximately 34 minutes regarding the expert reports subject to this motion.

**(c) The matters that were resolved by agreement:** The parties were unable to resolve their disputes related to this issue. The parties agreed, however, on the procedure for sealing motions in connection with this joint report and on referral of this joint report and the related sealing motions to the Special Master.

**(d) The specific matters that need to be heard and determined by the Court:**

Cognizant seeks a Court order striking Infosys's Supplemental Expert Reports of Dr. Paul Wong and Dr. Daniel P. Werner, which were served at approximately 10 p.m. CT Friday, August 21, as well as all backup materials, which were served at approximately 6 p.m. CT on Monday, August 24. The Parties stipulate that this motion is referred to the Special Master under the Order Appointing Special Master, Dkt. 312, while preserving objection and appellate rights (including de novo review under Rule 53 as to objections, if any).

**(e) A detailed explanation of why agreement could not be reached as to those matters, including all arguments and authorities on which each party relies as to each matter that could not be resolved by agreement:** The parties have provided their respective positions below.

**COGNIZANT'S POSITION:**

Shortly after 10 p.m. Central time, on Friday, August 21, 2026, with one business day remaining before the close of expert discovery, Infosys served what it styled as "supplemental" expert reports for Dr. Paul Wong and Dr. Daniel Werner ("New Reports"). They are supplements in name only. Far from limited corrections, the New Reports are substantial submissions

containing almost 70 pages of new material and opinions, including 20 fresh schedules and exhibits summarizing new analyses and calculations (including almost three gigabytes of additional backup materials)—all served without Infosys ever seeking, much less obtaining, leave of Court.

The New Reports explicitly respond to criticisms made in Cognizant's rebuttal reports with new opinions, calculations, and analyses, making them unauthorized surrebuttals for which leave was required. *UWorld LLC v. USMLE Galaxy LLC*, 2025 WL 1246434, at *4 (N.D. Tex. Apr. 28, 2025) (Horan, J.). And the New Reports invoke the Court's motion to dismiss order ("Order") to recalibrate and expand prior opinions to either newly address or attempt to better fit the claims that survived, without identifying any new facts or evidence discovered after fact discovery's close, let alone after each expert's opening report. Rule 26(e) does not sanction this gamesmanship. Supplementation is a narrow duty to correct a disclosure that later proves incomplete or incorrect based on genuinely new information; it is not a mechanism to improve an expert record after report deadlines have passed. *See In re Complaint of C.F. Bean L.L.C.*, 841 F.3d 365, 371 (5th Cir. 2016).

The caselaw is clear: Infosys calling these Reports "supplements" does not make them so, nor does it justify an unauthorized attempt to get the last word. Infosys attempts to muddy the waters on this straightforward issue by inventing new standards, criticizing Cognizant's authorities without confronting their holdings, invoking Cognizant's materially different supplements, and citing its proposals to "compromise" as a distraction. Stripped of that noise, Infosys identifies no authority permitting its New Reports. It cites no binding case holding that (1) an order narrowing the case renders an otherwise accurate and complete expert report "incorrect" and requiring correction under Rule 26(e); (2) criticism from an opposing expert opens the door to pages of new opinions and analyses; or (3) notice to *Cognizant* of its intent to file new reports somehow substitutes for leave of Court. And Infosys's repeated references to Cognizant's proper supplements or

Cognizant's refusal to agree to out-of-time expert work are nothing but irrelevant distractions that Infosys hopes will save it from its own wrongdoing. Under the governing law and the question that matters—whether Infosys could unilaterally serve new reports after the deadline without leave of Court—the answer is clear: Both New Reports should be stricken in their entirety.

# I. BACKGROUND

## A. Infosys's Amended Counterclaim and the Motion to Dismiss Briefing.

On November 11, 2025, following the Court's initial dismissal of Infosys's counterclaims on market definition grounds, Dkt. 141, Infosys filed amended antitrust counterclaims, Dkt. 166. The Amended Counterclaims advanced several theories of exclusionary conduct, including purported predatory hiring, refusals to train, and Cognizant's use of NDAAs, including those with integration restrictions and most-favored-vendor provisions ("MFVs"). *Id.* ¶ 10. It also introduced a new theory—which Infosys labeled a market allocation scheme—centered on the TriZetto Consulting Partner Network ("TCPN"). According to Infosys, Cognizant and smaller consulting partners used the TCPN and MFVs to exclude larger competitors from performing IT services work for Cognizant's healthcare software customers. *See, e.g.*, *id.* ¶¶ 42–45, 203–204.

In late November, Cognizant moved to dismiss Infosys's Amended Counterclaims. Dkt. 170. In opposing dismissal, Infosys expressly characterized Cognizant's TCPN conduct as a "vertical boycott," Dkt. 180 at 22, and Cognizant's Reply addressed the theory directly, Dkt. 188 at 8. The parties also briefed the issue of "monopoly broth," with Cognizant flagging that Infosys's improper aggregation of anticompetitive conduct was at odds with the Fifth Circuit's requirement that each theory "must be separately analyzed in light of settled principles of antitrust law." Dkt. 188 at 8 (quoting *Retract. Techs., Inc. v. Becton Dickinson & Co.*, 842 F.3d 883, 891 (5th Cir. 2016)). Briefing was completed in December 2025.

**B. Infosys Opposes Cognizant's Motion To Stay Antitrust Discovery, Attempts To Extend Fact Discovery.**

Before Infosys filed its Amended Counterclaims, Cognizant moved to stay antitrust discovery, Dkt. 144, warning the claims remained vulnerable to dismissal because of "fatal deficiencies," including those concerning predatory hiring, training, and NDAAs. *Id.* at 2–3. Cognizant also emphasized that a stay was necessary because "a ruling would not be issued until *after* fact discovery ha[d] closed." *Id.* at 14; *see also* Dkt. 170. Infosys opposed, insisting its claims were "solid." Dkt. 155 at 8; *see also* Dkt. 177-1. The Court denied the motion. Dkt. 163.

Fact discovery closed on May 11, 2026. One week later, Infosys moved to reopen it for substantial non-party discovery. Dkt. 393. The Court declined to alter the schedule, faulting Infosys's lack of diligence and its failure to timely seek leave. Dkt. 409 at 6. Judge Horan emphasized that the Court "has already extended the deadlines in this case several times" and had "warned the parties it will not be inclined to grant further delays." *Id.* at 7.

Following that order, limited additional discovery has occurred, but only either by agreement of the parties or on order from Special Master Stickney. *See, e.g.*, Dkts. 438, 512, 530.

**C. Expert Discovery Proceeds According To A Court-Ordered Schedule.**

The Scheduling Order details a schedule for expert discovery. Initial expert reports were due to be served by June 15, 2026, rebuttal reports by August 3, and completion of expert discovery by August 24. *See* Dkt. 201. Hot on the heels of that deadline, summary judgment and *Daubert* motions are due September 23. Dkt. 547. All initial and rebuttal expert reports—antitrust and trade secret alike—were served on that schedule, and expert depositions were scheduled consistent with

the August 24 deadline.[1] In addition, Cognizant has served brief supplemental expert reports limited to materials and information the Special Master ordered produced after the close of discovery. *See* App'x 3 ¶¶ 4–6. Cognizant also served an errata for its antitrust liability expert, Dr. Andres Lerner.[2] *See* App'x 871–1153 (A7–A9).

As relevant here, Dr. Wong is Infosys's expert on economic issues related to antitrust liability. In his June 15 report covering issues on which Infosys bears the burden of proof, Dr. Wong did not organize his opinions around Infosys's separate legal theories. Instead, he offered opinions regarding two buckets of what he termed the "anticompetitive conduct"—Cognizant's alleged efforts to leverage its Core Admin Software market power to restrict competition in IT services, App'x 97–99 ¶¶ 33–36, and Cognizant's alleged efforts to erect barriers to entry in the Core Admin Software market, App'x 99–101 ¶¶ 37–39—under which he grouped Infosys's theories of liability. He treated those acts collectively as a "combined," "self-reinforcing" strategy and attributed the asserted competitive effects, including higher prices, reduced choice and output, worse quality, and lost sales, to Cognizant's conduct collectively. App'x 101–104 ¶¶ 40, 42–45; *see also* App'x 239–259 ¶¶ 315–344. Additionally, Dr. Wong offered opinions that the TCPN "was itself likely a collusive 'market allocation' scheme." App'x 98 ¶ 34(d); *see also* App'x 224–228 ¶¶ 284–290. He offers no opinions at all about any group boycott theory of liability, nor how the TCPN

---

1 Cognizant agreed as a courtesy to depose two of Infosys's experts—Dr. Werner (August 28) and Dr. Crouse (September 2)—based on representations regarding those experts' lack of availability within the schedule ordered by the Court. *See* App'x 1204–1210.

2 Dr. Lerner's errata strikes five rows from Table 1 and eight rows from Table 2 in his Initial Report's appendices analyzing example entries from Infosys's CRM data, as well as quotes from those entries in footnotes from his two reports, based upon information revealed through Infosys's questioning during Dr. Lerner's August 20, 2026 deposition suggesting Infosys's own data included entries irrelevant to QNXT or Facets. *See* App'x 4 ¶ 7. The errata also corrects an error message stemming from an internal broken link in his Rebuttal Report.

and MFV provisions support such a theory. *See generally id.* Dr. Wong never used the term "most favored vendor" or "MFV" in his June 15 report. The phrase "boycott" occurs only once in a quote on another issue in a footnote. App'x 129–130 ¶ 80; 130–131 ¶ 81 n.166.

In Dr. Wong's August 3 rebuttal report responding to Dr. Andres Lerner's opening report supporting Cognizant's affirmative defenses, Dr. Wong adhered to the same framework. He summarized prior opinions as concluding Cognizant's "multifaceted conduct was self-reinforcing across both relevant markets," App'x 532 ¶ 5(c), and attributed foreclosure, increased rivals' costs, and resulting harms to that conduct generally, App'x 532 ¶ 5(d). Dr. Wong's rebuttal addressed Infosys's TCPN theory, but this second report does not use the term "boycott" at all—much less characterize the TCPN, MFVs, or NDAAs as components or mechanisms of group boycott.

Relevant here, Dr. Daniel Werner is Infosys's expert on antitrust damages. In his initial report, he opined that Cognizant's "alleged misconduct" caused Infosys to lose two categories of profit: at least $79.9 million in lost profits from customer foreclosure in the IT Services market, and $179.3 million in lost profits from Cognizant's obstruction of Helix, Infosys's competing software product, based on an 18-month delay to Helix's development. App'x 404–405 ¶¶ 10, 11. Both calculations relied on an assumption that Cognizant "engaged in the alleged anticompetitive conduct" pleaded in Infosys's Amended Counterclaim. App'x 403 ¶ 8. That conduct, as summarized by Dr. Werner, comprised restrictive contractual provisions, refusals to train, integration restrictions, the TCPN, and Helix delays (which included, among other things, Infosys's predatory hiring allegation). *See* App'x 421–450 ¶¶ 34–57. Dr. Werner never apportioned either damages figure among the categories of "alleged misconduct," and he offered no opinion on what portion of either number any type of conduct caused.

On August 11, the Court granted in part Cognizant's motion to dismiss Infosys's Amended

Counterclaims. Dkt. 546. The Order dismissed Infosys's standalone NDAA, training, and predatory-hiring theories with prejudice, leaving only theories of liability concerning alleged MFV provisions and the TCPN program. *Id*. In particular, the Court allowed those claims to proceed under Section 1 theories of horizontal and vertical group boycott, *id.* at 15, and under Section 2 as alleged monopolization and attempt to monopolize, *id.* at 26–27. The Court then ordered a joint report addressing the ruling's effect on pending motions and—for at least the fourth time—warned it would "not entertain extensions to avoid placing this case on the three-year list." Dkt. 547.

The next day, Infosys asked Cognizant to agree to a new round of expert reports responding to the Order and to postpone expert depositions, potentially until the second week of September. *See* App'x 1215. Cognizant declined. During a meet and confer on August 14, counsel asked Infosys to identify the new information supposedly justifying supplementation under Rule 26(e); Infosys refused to identify any new facts, reinforcing Cognizant's concern that the proposed reports were not proper supplements at all. *See* App'x 3–4 ¶ 8. Further, Infosys's proposal—in addition to unnecessarily imposing significant cost and burden that could have been avoided had Infosys not opposed a stay of antitrust discovery—threatened Cognizant's ability to adequately prepare for imminent dispositive motion deadlines and *Daubert* motions due only weeks later. *See* App'x 4 ¶ 9. Cognizant explained that such supplements were improper under the current schedule. *See* App'x 3–4 ¶ 8.

Expert depositions proceeded as scheduled. Cognizant deposed Dr. Wong on August 19 regarding his timely disclosed opinions. During the seven-hour deposition, Cognizant's counsel expressly asked whether he intended to submit additional opinions or reports, but Dr. Wong was non-committal. He responded he had merely "looked at some things" but had "not formed any final conclusions." App'x 1166 (34:13–34:14). He also confirmed he was "not aware of any

material new information or evidence" since his prior reports were served. App'x 1167 (35:3–35:4). Infosys's counsel also examined Dr. Wong for 32 minutes but did not ask Dr. Wong about his responses to Dr. Lerner (i.e., his surrebuttal opinions) or any other new opinions related to Cognizant's expert reports.[3] Instead, the examination focused on a clarification of Dr. Wong's post-pleading focus on software market foreclosure as "impeding and delaying entry and expansion," his assumption of agreements with TCPN members, earlier testimony on certain report exhibits, his inclusion of BPaaS in his IT Services market definition, and his reliance on an unrelated litigation's deposition of a Cognizant witness discussing "rate cards." *See generally* App'x 1170–1185. Infosys deposed Cognizant's antitrust experts, Dr. Andres Lerner and Jon Orszag, on August 20 and 21, respectively.

**D. Infosys Serves Substantial New Reports Without Leave of Court.**

Two hours after the deposition of Mr. Orszag ended (and nearly 48 hours after Dr. Wong would not commit to testifying whether he intended to serve a new report), at 10 p.m. on Friday, August 21—with one business day remaining before the close of expert discovery—Infosys served new and robust reports from Drs. Wong and Werner. Each followed the directives provided by Infosys's counsel to respond to (1) the Court's Motion to Dismiss Order and (2) Cognizant's August 3 rebuttal reports. App'x 11 ¶ 2; App'x 55–56 ¶ 2.

Dr. Wong's New Report adds new rebuttal analysis directly responding to Dr. Lerner's and Mr. Orszag's rebuttals, adding: (1) a new difference-in-difference analysis in which he "conducted the calculation Mr. Orszag omits," along with two new exhibits that he claims yield "economically and statistically significant" results, App'x 30–32 ¶¶ 33–37; (2) new opinions responding to Dr.

[3] Infosys did ask whether Dr. Wong found the Court's 12(b)(6) order or Cognizant's rebuttal reports "potentially relevant" to his opinions, App'x 1170 (186:17–20), but he did not suggest such materials were a basis for the new opinions or analyses served two days later.

Lerner's criticisms concerning treatment of acquired entities, plus a corresponding exhibit recalculating "all my baseline estimates of Cognizant's share of Core Admin Software expenditures," App'x 32–34 ¶¶ 38–39; (3) new calculations breaking down revenue for Cognizant's Core Admin Software and recalculating estimates of Cognizant's share of total Core Admin Software expenditures, App'x 34–36 ¶¶ 40–42; (4) three new calculations addressing errors Dr. Lerner identified in Dr. Wong's use of IT services revenue subcategories, including recalculation of Cognizant's estimated market share to address those criticisms, App'x 36–37 ¶¶ 43–45; and (5) a new analysis aggregating profit margins from one of Cognizant's initial expert reports to respond to Dr. Lerner's criticism of putative competitive benchmarking, App'x 37–38 ¶¶ 46–47. Additionally, Dr. Wong introduces new opinions related to economic "group boycott" theory for the first time, *see, e.g.*, App'x 24 ¶ 20, including new conclusions that Cognizant's NDAAs serve as "an additional tool to implement, maintain, expand, enforce, reward participation in, and punish deviation from its group boycott," App'x 27 ¶ 26.

Dr. Werner also offered a host of new opinions and calculations. He newly opined that: (1) his lost profit calculation for customer foreclosure in the Core Admin IT Services Market was consistent with a "group boycott" theory, App'x 56 ¶ 4; (2) those damages calculations did not encompass the now-dismissed training or predatory hiring theories*, id.*; and (3) the measure of Helix developmental delay should now be reduced from 18 months to 12 months, App'x 57–59 ¶ 5. Dr. Werner's New Report also offered additional analyses responding to Mr. Orszag, including: (1) a re-plotting of Mr. Orszag's sales-trend exhibit excluding one customer, App'x 59 ¶ 6(a); (2) new criticisms of Mr. Orszag's regression analyses, App'x 59–62 ¶ 6(b)–(d); (3) a new customer-penetration analysis "find[ing] a *larger* impact from the alleged misconduct" than in his opening June 15 report, App'x 62 ¶ 6(e) (emphasis added), all supported by four new schedules

containing new models and analyses, App'x 62 ¶ 6(d) n.31; and (4) new opinions criticizing Mr. Orszag's Helix-damages analysis, App'x 62–63 ¶ 6(f).

Infosys did not seek leave to serve either New Report or to otherwise modify the Court-ordered expert schedule. And it did not produce backup materials for the New Reports until after 6 p.m. CT on Monday, August 24, the final day of expert discovery, leaving only three business days to analyze those materials before Dr. Werner's August 28 deposition.

Dr. Werner's deposition proceeded, with Cognizant examining him without waiver of the relief sought here. When asked whether his New Report corrected any inaccuracies or errors, Dr. Werner expressly disclaimed the characterization: "I don't consider them corrections, no," describing them instead as "clarifications." App'x 1196 (13:20–22). For example, he acknowledged that one new analysis was intended to "clarify what Mr. Orszag believes is an error." App'x 1199 (41:23–25). And he likewise rejected the premise that the Order supplied new facts: "With the caveat that I'm not a lawyer and I don't have any legal opinions, I don't think there's new facts." App'x 1201 (63:3–7).

## **II. LEGAL STANDARD**

An expert's written report must contain "a complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B). The Fifth Circuit has long emphasized that expert reports must be "detailed and complete" at the time of disclosure. *Sierra Club, Lone Star Chapter v. Cedar Point Oil Co.*, 73 F.3d 546, 571 (5th Cir. 1996). Rule 26(e) requires a party to supplement an expert report "in a timely manner" if it learns a disclosure is "incomplete or incorrect, and if the *additional or corrective information has not otherwise been made known to the other parties* during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A) (emphasis added). But Rule 26(e) imposes a duty to correct, not an opportunity

to bolster prior reports: supplemental disclosures are "not intended to provide an extension of the deadline by which a party must deliver the lion's share of its expert information." *C.F. Bean*, 841 F.3d at 371; *Harmon v. Ga. Gulf Lake Charles L.L.C.*, 476 F. App'x 31, 36 (5th Cir. 2012).

An expert opinion is new, not supplemental, when it introduces "new theories . . . or methodology," *Snyder Senior Citizens Inc. v. Third Coast Ins. Co.*, 2025 WL 1782575, at *3 (N.D. Tex. June 12, 2025), or makes "material additions to the initial report," *Harmon*, 476 F. App'x at 38. A report that is "largely new rather than supplementary" is not a Rule 26(e) supplement at all. *UWorld*, 2025 WL 1246434, at *3. Where an expert seeks to offer new opinions after the court-ordered deadline, the party must seek leave and establish good cause under Rule 16(b). *Binh Hoa Le v. Exeter Fin. Corp.*, 2019 WL 1436375, at *5 n.4 (N.D. Tex. Mar. 31, 2019); *Kumar v. Frisco Indep. Sch. Dist.*, 476 F. Supp. 3d 439, 467–71 (E.D. Tex. 2020). Consistent with that requirement, the Fifth Circuit has rejected "self-help" in the form of parties "unilaterally altering expert deadlines" rather than seeking relief from the court in advance. *Harmon*, 476 F. App'x at 39 n.4.

Where a party improperly discloses expert information without leave, such material may not "supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The disclosing party bears the burden of showing the failure is substantially justified or harmless. *Pem-Air Turbine Servs. LLC v. Gupta*, 2024 WL 758561, at *3 (N.D. Tex. Feb. 22, 2024) (Horan, J.). To assess whether exclusion is warranted, the Fifth Circuit considers four factors: (1) importance of the testimony; (2) prejudice to the opposing party by allowing the witnesses to testify; (3) the possibility of curing such prejudice by granting a continuance; and (4) the explanation for the party's noncompliance. *Sierra Club*, 73 F.3d at 572. These factors are considered holistically, rather than by mechanically counting the factors favoring each side. *UWorld*, 2025 WL 1246434, at *3.

## III. ANALYSIS

The purpose of Infosys's New Reports is transparent—to undo tactical decisions Infosys now regrets. That effort should be rejected. Both experts received the same two-part assignment from Infosys's counsel: (1) respond to Cognizant's August 3 expert rebuttals, and (2) revisit previously disclosed opinions in light of the Court's August 11 Order. App'x 11 ¶ 2, App'x 55 ¶ 2. Neither category of opinion constitutes proper supplementation under Rule 26(e), and all four exclusion factors favor striking the New Reports.

### A. Infosys's Reports Violate The Scheduling Order.

Rule 26(e) is not a vehicle for an unauthorized third round of expert reports. A party may not disguise surrebuttal as supplementation in an effort to secure the last word. *See UWorld*, 2025 WL 1246434, at *4–5. Nor may it use supplementation to introduce new opinions, analyses, or calculations that could have been timely disclosed. *C.F. Bean*, 841 F.3d at 371. Infosys did both: its New Reports rebut Cognizant's rebuttal reports and introduce new opinions tailored to the claims surviving the Court's Order. The New Reports fall outside Rule 26(e) in their entirety and violate the Court-ordered expert schedule.

#### 1. *The New Reports Openly Respond to Cognizant's Experts, Making Them Improper Surrebuttal.*

Significant portions of the New Reports are surrebuttals by their own terms. The Scheduling Order provided for only two rounds of expert reports—opening and rebuttal—and Rule 26 "does not grant any right to rebuttal beyond that initial rebuttal report." *UWorld*, 2025 WL 1246434, at *5 (Horan, J.). Treating Rule 26(e) as authorizing surrebuttals is "untenable," as such a reading "opens the door to an infinitely iterative process whereby each new report necessitates not only a counter-report but also a repeat deposition." *Id.* (quoting *Wal-Mart Stores, Inc. v. Tex. Alco. Beverage Comm'n*, 2017 WL 9480314, at *2 (W.D. Tex. May 22, 2017)).

The portions of the New Reports responding to Cognizant's expert reports are paradigmatic surrebuttal. Dr. Wong's stated assignment was to address "whether *any new calculations* . . . are important for *addressing and responding* to those experts' opinions." App'x 11 ¶ 2(b) (emphases added).[4] Similarly, Dr. Werner was asked "whether *any new calculations are needed* in connection with the documents, data, and workpapers *provided by Mr. Orszag*[.]" App'x 55 ¶ 2 (emphases added). Infosys's experts executed those assignments to the letter. As Dr. Werner put it in his New Report, he "performed *additional calculations based on Mr. Orszag's opinions, workpapers, and calculations*," App'x 59 ¶ 6 (emphasis added), and he similarly testified that certain "supplemental" analyses were conducted to "clarify what Mr. Orszag *believes* is an error," App'x 1199 (41:23–41:25) (emphasis added). On parallel facts, Judge Horan described a surrebuttal tactic exactly like Infosys's as an impermissible "'do-over' or 'second bite at the apple[.]'" *See UWorld*, 2025 WL 1246434, at *6.

Infosys chastises Cognizant for its use of out-of-circuit cases to provide support for a position that the Fifth Circuit was silent on, yet then relies on two out-of-circuit cases of its own to argue supplementation may rebut an opposing expert—an approach squarely considered and rejected by the Fifth Circuit. *See, e.g.*, *Finite Util. Consulting, L.L.C. v. Tawa*, 2026 WL 2244207, at *4 (5th Cir. Aug. 4, 2026) ("[C]alling the amended disclosure a supplement 'does not pass the straight face test'" where amended disclosure "introduced new topics, repeatedly named [opposing expert], and expressly sought to discredit his testimony"). And Infosys's supposed "corrections"

---

[4] Dr. Wong's improper surrebuttals are not limited to Section III of his New Report, but instead are scattered across its entirety. *See, e.g.*, App'x 17 ¶ 8(b) ("Dr. Lerner does not dispute this difference and instead speculates . . . . These opinions by Dr. Lerner do not actually address the factual point . . . . Dr. Lerner has offered no analysis to show . . ."); App'x 18 ¶ 8(b) n.33 ("Dr. Lerner does not actually provide any analysis substantiating this claim . . . .").

overwhelmingly either deny that any error exists or go far beyond correcting one. Consider the single instance where Dr. Wong's surrebuttal could arguably qualify as corrective supplementation by addressing a trio of Dr. Wong's calculation errors identified by Dr. Lerner in his rebuttal. App'x 37 ¶ 44. Dr. Wong does not simply make redline corrections to remove the errors, as Dr. Lerner does in his corrected reports. *Compare id.* ¶¶ 44–45, *with* App'x 871–1153. Instead, he opines the errors "account for a de minimis amount of revenue and have no meaningful bearing on any of my calculations or conclusions," offers two new analyses to show the error's small effect, and responds that this minimal impact makes Dr. Lerner's criticisms "not credible." App'x 37 ¶¶ 44–45. That is not correction under Rule 26(e); it is surrebuttal meant to "bolster weaknesses . . . in response to criticisms from [an opposing expert]," which "goes well beyond supplementation." *See BCC Merch. Sols., Inc. v. JetPay*, 2016 WL 3264283, at *4 (N.D. Tex. Feb. 19, 2016).

Because the New Reports were served without leave, the surrebuttal portions of Infosys's New Reports violate Rule 26 and this case's Scheduling Order. A party seeking a surrebuttal must "first seek leave of Court," and without leave, the additional report is "improperly disclosed in violation of Rule 26." *UWorld*, 2025 WL 1246434, at *5 (cleaned up); *see also BCC Merch.*, 2016 WL 3264283, at *4. Courts across this Circuit accordingly reject "supplemental" reports used to rebut an opposing expert's rebuttal. *See, e.g., UWorld*, 2025 WL 1246434, at *7; *BCC Merch.*, 2016 WL 3264283, at *4; *Cutler v. Louisville Ladder, Inc.*, 2012 WL 2994271, at *4 (S.D. Tex. July 20, 2012) (parties may not "unilaterally disregard the [expert] deadline so as to gain the advantage of responding"); *In re Pool Prods. Distrib. Mkt. Antitrust Litig.*, 2014 WL 3353232, at *2 (E.D. La. July 9, 2014) (rejecting party's attempt "to position themselves to advantage by unilaterally seeking to have the last word"); *see also Uniloc USA, Inc. v. Samsung Elecs. Am., Inc.*, 2019 WL 2267212, at *6 (E.D. Tex. May 28, 2019) (arguments "made in response to Samsung's

criticisms . . . support exclusion of this testimony"). In *UWorld*, Judge Horan found that because the disclosing parties did not seek leave to serve surrebuttal reports, the reports "were improperly disclosed in violation of Rule 26." 2025 WL 1246434, at *5. Here too, Infosys's New Reports contain surrebuttal by their own admission, and Infosys did not seek leave before serving them.

**2. *The Order Does Not Justify New Opinions on Old Issues & Evidence Without Leave.***

The Order does not justify supplementation where Infosys identifies no new information and instead uses the ruling to depart from or expand upon its prior expert positions.[5] "Court rulings do not constitute new information justifying supplementation under Rule 26(e)[.]" *Cook v. Rockwell Int'l Corp.*, 580 F. Supp. 2d 1071, 1170 (D. Colo. 2006); *see also Whitney v. City of Milan*, 2014 WL 11398537, at *6 n.4 (W.D. Tenn. Feb. 25, 2014) (court ruling not "the sort of 'additional or corrective information' contemplated by [Rule 26]"). And even where an intervening ruling might warrant additional expert work, the proper course is to seek leave and establish good cause under Rule 16(b). *See Binh Hoa Le*, 2019 WL 1436375, at *5 n.4; *cf. State Auto. Mut. Ins. Co. v. Freehold Mgmt., Inc.*, 2019 WL 1436659, at *21 (N.D. Tex. Mar. 31, 2019). Infosys did neither.

The absence of new information is not merely Cognizant's characterization. Two days before the New Reports were served, Dr. Wong was specifically asked whether he was aware of new evidence since his rebuttal report. App'x 1164 (32:17–32:19). Dr. Wong *twice* testified, "I am not aware of any material new information." App'x 1165 (33:7–33:8), 1167 (35:3–35:4). Dr. Werner

[5] In the alternative, if the Court concludes that Infosys may supplement its expert reports to account for the Order, any supplementation should be limited to opinions acknowledging that certain theories or analyses are no longer at issue—consistent with Infosys's own insistence that its Order-responsive material is intended to narrow the case. The Court should otherwise strike new opinions, analyses, reasoning, or responses about what theories remain. Such opinions amount to thinly veiled attempts to recast or improve the substance of the reports after the deadline, consistent with Infosys's admission that certain new opinions "conform[] their analysis to the case as it now stands." Inf. Br. 32.

likewise disclaimed that his prior reports required correction, App'x 1196–97 (13:18–13:22), and, when asked whether the Order supplied new facts, testified, "I don't think there's new facts." App'x 1201 (63:3–63:7). These admissions are telling. Courts assessing purported supplementation appropriately credit the expert's own testimony in such assessments. *See Kumar*, 476 F. Supp. 3d at 469 (striking supplement where expert "testified that his supplement was not predicated upon the existence of some new facts").

Infosys's inability to identify new information is unsurprising when recognizing the New Reports for what they are: a Hail-Mary attempt to pivot litigation strategy post-Order. Both experts use the Order as a springboard to recast prior analyses and introduce new opinions based on theories and evidence available for months. *See supra* §§ I.C–I.D. Dr. Wong's new group-boycott opinions are illustrative. Infosys characterized Cognizant's conduct as a "vertical boycott" when opposing dismissal in December 2025, Dkt. 180 at 22; yet Dr. Wong offered no substantive group-boycott opinion in either timely report.[6] He waited until his New Report to do so, only after the Order endorsed the boycott theory and dismissed the rest, without identifying any new information that prevented earlier disclosure. This is no minor tweak: at the eleventh hour of expert discovery, Dr. Wong now offers for the first time new opinions on a theory of economic antitrust liability that has been in this case since *Infosys* raised it in December 2025.

The revised damages model in Dr. Werner's New Report suffers from the same taint: Dr. Werner previously failed to disaggregate damages in his prior report, and he uses his New Report to attempt to account for this failure. However, Infosys knew from the motion-to-dismiss briefing that the disaggregation of conduct was a disputed issue in this case that risked dismissal and that

---

[6] Indeed, the word "boycott" only appears in Dr. Wong's initial report in a footnote quoting a document that lists different forms of exclusionary conduct, without any added analysis of his own. App'x 130 ¶ 81 n.166.

Fifth Circuit law has been crystal clear on this since 2016. Dkt. 188 at 8 (quoting *Becton*, 842 F.3d at 891). Infosys could have accounted for the possibility that its approach would not succeed through the simple act of asking its experts to offer opinions in the alternative. Underscoring that it could have done so, Dr. Werner's revised calculations rely exclusively on previously produced documents and an interview of an Infosys deponent, all available when his timely reports were prepared.

In other words, Infosys made poor tactical decisions to ignore theories *it advanced*, evidence in *its possession*, and *binding* Circuit law. But an expert "taking a second crack at his report utilizing information available at the time of his initial disclosure" or even being "unaware of law that existed prior to the filing of his initial report" is not new information justifying a "supplement." *Kumar*, 476 F. Supp. 3d at 469. Infosys cannot now invoke Rule 26(e) to seek a do-over to mitigate consequences of its own making. *Reliance Ins. Co. v. La. Land & Expl. Co.*, 110 F.3d 253, 258 (5th Cir. 1997) ("District judges have the power to control their dockets by refusing to give ineffective litigants a second chance to develop their case."); *see also Cochran v. Brinkmann Corp.*, 2009 WL 4823858, at *5 (N.D. Ga. Dec. 9, 2009) (disallowing experts "to offer new [opinions] to perfect a litigating strategy").

Nor can Infosys justify its New Reports as its experts merely identifying which timely opinions remain relevant after the Order. Beyond the fact that "court rulings do not constitute new information justifying supplementation under Rule 26(e)," *Cook*, 580 F. Supp. 2d at 1170, such legal interpretive work by non-legal experts invites new opinions and is subject to error. Dr. Werner's treatment of "integration restrictions" is illustrative. His New Report incorrectly identifies "integration restrictions from TCPN and MFV Provisions" as one of the "theories that remain" following the Order. App'x 57 ¶ 5. But Dr. Werner's initial report treated integration restrictions

as unrelated to the TCPN and MFVs and expressly identified that "prohibitions on developing complementary products that could interface with Cognizant's software" (i.e., integration restrictions) appear in Infosys's "contracts directly with Cognizant" (i.e., NDAAs). In other words, integration restrictions were pleaded and treated as one of many purportedly problematic NDAA provisions. App'x 401 ¶ 5 n.3 (citing list of "contractual restrictions and prohibitions" in Am. Counterclaim ¶ 10); App'x 432 ¶ 40 n.132 (same); *compare also* App'x 434–436 ¶ 43 (discussing integration issues) *with* App'x 437–440 ¶¶ 45–49 (separate section on TCPN). The Court then dismissed Infosys's Section 2 claims related to NDAAs, and all other conduct related to Dr. Werner's Helix-related damages claims, including those involving the alleged integration restrictions contained therein. Dkt. 546 at 22–23. Dr. Werner's new opinions tying "integration restrictions" to the TCPN and MFVs—contradicting his prior opinion, the pleadings, Infosys's litigation position to date, and the Order—expose Infosys's benign explanation for what it is: a pretext for introducing new opinions.

Moreover, Infosys repeatedly assumes, rather than establishes, that the Order somehow rendered its prior reports "incomplete or incorrect" under Rule 26(e) and that, therefore, its New Reports constitute true supplementation. But Infosys identifies no authority for that premise, instead repeatedly relying on only the Rule's language in the abstract. And although Infosys spills considerable ink attempting to distinguish Cognizant's cases that clearly hold that a court order is not a basis for Rule 26(e) supplementation, Infosys cites no decision holding that a dispositive ruling renders an otherwise complete expert report incomplete or incorrect—much less that such an order *requires* these new opinions be served without leave of Court. The absence of authority supporting Infosys's position is telling. A court order narrowing the claims at issue in a case does

not retroactively render prior opinions incomplete or inaccurate; it simply narrows which expert opinions remain *relevant*—a distinction with which Infosys does not grapple.

* * *

The Reports plainly violate the Scheduling Order—each is comprised solely of disallowed surrebuttal and improper new opinions. The law does not bless Infosys's apparent decision to seek forgiveness rather than ask for permission to amend. The New Reports should be stricken.

**B. The Court Should Strike Both of Infosys's New Reports in Full.**

Because the New Reports were improperly disclosed, Infosys may not use them as evidence unless it proves the failure to properly disclose the opinions was substantially justified or harmless. Fed. R. Civ. P. 37(c)(1). That inquiry turns on four factors—the importance of the evidence, prejudice to Cognizant, the possibility of curing that prejudice with a continuance, and Infosys's explanation for noncompliance. *C.F. Bean*, 841 F.3d at 372. Every factor here favors striking both New Reports in full.[7]

**1. *The New Reports Are Not Important.***

The importance factor does not excuse Infosys's violations: its New Reports offer nothing necessary to the resolution of this case, and any genuinely important opinions therein only heighten Infosys's obligation to seek leave.

The surrebuttal materials add little: An expert's desire to answer the opposing side's rebuttal does not make an additional report important, as the proponent "retain[s] the ability to testify as to the analysis in their initial reports." *UWorld*, 2025 WL 1246434, at *6 (quotations omitted).

[7] Infosys cannot salvage the New Reports by pointing to isolated portions that might qualify as proper supplementation; "when the analysis and opinions in the second report are largely new rather than supplementary, they cannot qualify as a supplemental expert report under Rule 26(e)." *UWorld*, 2025 WL 1246434, at *3 (Horan, J.) (cleaned up). Here, each New Report is clearly "largely new," which warrants striking both New Reports in full. *Id.*

And besides, Dr. Wong opens his surrebuttal section by asserting that his prior reports "anticipate and address" Cognizant's expert opinions "extensively," App'x 30 ¶ 32, while Dr. Werner acknowledges that "[n]othing within the Orszag Report causes me to change the conclusions within my Initial Report," App'x 59 ¶ 6. In other words, Infosys's own experts deny that Cognizant's rebuttals changed their prior opinions, even when the reports, in fact, reflect changes; regardless, their own words substantially undercut any claim that the New Reports are important.

The new Order-responsive material is also unimportant, as no expert analysis of the Order is needed at all. The Order speaks for itself, and interpreting its effects is the work of the Court and counsel. *See Goodman v. Harris Cnty.*, 571 F.3d 388, 399 (5th Cir. 2009) ("[A]n expert may never render conclusions of law."); *see also U.S. v. Zipkin*, 729 F.2d 384, 389 (6th Cir. 1984) (excluding judge's expert testimony interpreting his order because "an order entered by a judge should speak for itself"). Opinions mooted by the Order can go unoffered, while opinions that survive remain in the timely reports without need for expert gloss to "remain pertinent." App'x 11 ¶ 2(a). If the Court felt these expert opinions were necessary, it could have granted limited leave *in advance* in conjunction with the Order and narrowly defined the scope of the leave. *See Uniloc*, 2019 WL 2267212, at *1, *11 (granting advance limited leave to amend following summary judgment and striking new materials beyond that); *see also* Dkt. 530 at 7 (requiring leave to amend report for certain late-authorized discovery). To the contrary, the Court issued an order reminding the parties it would "not entertain extensions to avoid placing this case on the three-year list." Dkt. 547.

Infosys's attempt to recast this motion as a merits dispute constitutes more sleight of hand. Infosys cannot dodge the operative question—whether the New Reports were permissible without leave—by speculating about arguments Cognizant might make at summary judgment. Nor can it

manufacture a merits issue by protesting that striking the reports would "depriv[e] Infosys of expert testimony directly rebutting Cognizant's arguments," Inf. Br. 54, when no such opportunity was permitted under the operative Scheduling Order in the first place. And while Infosys argues that its New Reports are "critical to clarify the opinions" its experts intend to offer, *id.*, it offers no support that such opinions are "critical," particularly where, in the same breath, it professes it is "confident that Drs. Wong's and Werner's prior reports are reliable and sufficient to withstand summary judgment even standing alone," *id*.

Moreover, even if Infosys characterizes the New Reports as important, that does not excuse its noncompliance with the schedule. The Fifth Circuit has repeatedly held that importance "cannot singularly override the enforcement of local rules and scheduling orders." *Geiserman v. MacDonald*, 893 F.2d 787, 791 (5th Cir. 1990); *see also Hamburger v. State Farm Mut. Auto. Ins. Co.*, 361 F.3d 875, 883 (5th Cir. 2004). If the testimony is important, that is "so much the more reason to be sure its introduction was properly grounded." *Geiserman*, 893 F.2d at 791. Thus, if materials in the New Reports were truly important, Infosys would not have made tactical choices to leave unaddressed theories and evidence at issue since at least December 2025, nor would it have failed to seek leave in the first place. *See Geiserman*, 893 F.2d at 791.

**2. *The New Reports Unfairly Prejudice Cognizant in Numerous Ways.***

Cognizant is prejudiced by the New Reports in at least three distinct ways: they undermine the orderly expert process, giving Infosys an unauthorized last word; they consume critical time Cognizant should be devoting to other imminent deadlines; and they impose substantial additional expense and burden caused solely by Infosys's disregard of the schedule.

*First*, courts in this District recognize that untimely expert reports can cause "immense" prejudice because "[t]he purpose of the requirement to exchange expert reports is to eliminate

unfair surprise to the opposing party and to conserve resources." *BCC Merch.*, 2016 WL 3264283, at *5 (quoting *Boudreaux v. J.P. Morgan Chase & Co.*, 2007 WL 4162908, at *3 (E.D. La. Nov. 21, 2007)). Infosys served the New Reports two days after Dr. Wong's deposition, ensuring that Dr. Wong's new opinions escaped examination. Dr. Werner's backup materials did not arrive until three days before his deposition, forcing Cognizant to scramble to overhaul its preparation to now address *three* reports, rather than the two contemplated by the schedule. On similar facts, *In re Pool Products* struck a late report served three days before a deposition because the opposing party had "no time to have their experts review the report to assist them with their preparation of the deposition." 2014 WL 3353232, at *2; *see also Harmon*, 476 F. App'x at 39 (finding prejudice with "addition of opinions both several days prior to the experts' depositions and also *after* the depositions"). The Court should find so too here.

Infosys also creates prejudice in using the New Reports to seize an unauthorized last word. Cognizant followed the Court-ordered sequence, using its rebuttal reports to respond to Infosys's opening opinions. Infosys then unilaterally answered those rebuttals without leave. That creates either an information asymmetry or an endless cycle of supplementation. *See Reliance*, 110 F.3d at 257–58 (allowing a new report would prejudice the opponent "who would then have to get an expert to address these last-minute conclusions"). Requiring Cognizant to prepare still more reports would "not remedy that prejudice"; it would merely perpetuate the "infinitely iterative process" the Federal Rules and the schedule in this case were designed to foreclose. *UWorld*, 2025 WL 1246434, at *6–7 (Horan, J.); *Wal-Mart*, 2017 WL 9480314, at *2.

*Second*, the New Reports disrupt Cognizant's preparations for summary judgment and *Daubert* motions at precisely the point when that work should be taking priority. Expert discovery closed on August 24 so that the parties could turn to dispositive and expert-motion briefing due

September 23. Instead, Infosys changed the substantive expert record at the last possible moment, depriving Cognizant of time it reasonably expected to devote to that briefing. Cognizant now must divert attorneys and experts to analyze new opinions, prepare additional examinations, and consider "curative" expert submissions. That disruption is particularly prejudicial given the Court's repeated admonitions that the existing schedule will be enforced. *See, e.g.*, Dkt. 547.

*Third*, responding to the New Reports imposes costs and burdens that the expert schedule was designed to avoid. Unauthorized expert work predictably begets more expert work: Cognizant has already incurred the expense of reworking its preparation for Dr. Werner's deposition and now faces the prospect of re-deposing Dr. Wong, potentially seeking more time for Dr. Werner, and conducting additional expert analysis. If, as Infosys suggests, the cure is another round of Cognizant reports, those burdens expand further. Courts recognize that such cascading discovery creates "additional delay and increased . . . expense." *Geiserman*, 893 F.2d at 792; *see also Reliance*, 110 F.3d at 257–58. Those costs are not an ordinary consequence of litigation. They arise solely because Infosys disregarded the Court-ordered sequence and served new expert opinions after Cognizant reasonably expected the expert record to be complete.

The prejudice to Cognizant is thus not incidental; it is a direct and predictable consequence of Infosys's decision to ignore the case schedule, and the Court should not allow Infosys to convert its violation into tactical advantage at Cognizant's expense.

**3. *The Prejudice to Cognizant Cannot Be Fully Cured, Let Alone Via Continuance.***

Although a continuance can sometimes mitigate prejudice, no adequate cure is available here. The Court has made crystal clear a continuance is out of the question, but even if it weren't, a continuance would improperly reward Infosys's self-help and would not restore the reciprocal expert process the New Reports disrupted.

As a threshold matter, the possibility of a continuance in this case appears, frankly, dead on arrival. For months, the Court has repeatedly warned that "it will not be inclined to grant further delays," Dkts. 201 at 4, 320 at 8, 409 at 7, reiterating as recently as three weeks ago it "will not entertain extensions to avoid placing this case on the three-year list," Dkt. 547. And Infosys evidently understood that serving its proposed reports would require changes to the schedule—it asked Cognizant to agree to those changes. App'x 1212–15. But when Cognizant declined, Infosys did not ask the Court for relief, instead choosing to engage in self-help on the final days of discovery. A continuance cannot cure prejudice where a court has repeatedly foreclosed further delay, *Savage v. LaSalle Mgmt. Co.*, 169 F.4th 553, 557–58 (5th Cir. 2026) (affirming exclusion where lower court "warned the parties that it would not grant another continuance"), and regardless, courts are "disinclined" to grant a continuance where the violating party has "failed to ask for one," *Rios v. Tex. Christian Univ.*, 348 F.R.D. 606, 611 (N.D. Tex. 2025).

Even if a continuance were available, it would be an inappropriate response to Infosys's violation of the scheduling order and unauthorized reports. Such violations "should not routinely justify a continuance," *Hamburger*, 361 F.3d at 884, because doing so would "not deter future dilatory behavior, nor serve to enforce local rules or court imposed scheduling orders," *Geiserman*, 893 F.2d at 792; *see also Harmon*, 476 F. App'x at 37 (additional time "would neither punish [the violator] for [its] conduct nor deter similar behavior in the future" (quoting *Sierra Club*, 73 F.3d at 573)). Otherwise, "the failure to satisfy the rules would never result in exclusion, but only in a continuance." *Hamburger*, 361 F.3d at 884. Those concerns are particularly acute here because Infosys engaged in precisely the type of self-help scheduling rules are designed to prevent, and "a continuance solely to accommodate [Infosys's] actions is highly undesirable at this stage." *In re Pool Products*, 2014 WL 3353232, at *3; *see also Harmon*, 476 F. App'x at 39 & n.4.

And while Infosys has repeatedly offered Cognizant more reports and re-depositions as a cure to prejudice, that is simply not a solution. More reports and depositions address only one consequence of Infosys's violation—and only by imposing great additional expense on Cognizant. Such proposals do not restore the reciprocal expert process Infosys disrupted. Infosys's experts have already seized an unauthorized opportunity to answer Cognizant's August 3 rebuttal reports with new opinions, calculations, and criticisms; Cognizant's experts had no corresponding opportunity. Restoring anything approaching parity would therefore require more reports and more depositions addressing both Infosys's August 3 rebuttals *and* the August 21 New Reports—precisely the "infinitely iterative process" the expert schedule was designed to foreclose. *See UWorld*, 2025 WL 1246434, at *7; *Wal-Mart*, 2017 WL 9480314, at *2–3. And that, setting aside the costs associated with such a solution, would further disrupt dispositive-motion and *Daubert* preparations. Judge Horan accordingly found this factor favored exclusion in materially similar circumstances where discovery had closed and "dispositive motions and Daubert challenges" were fast approaching. *UWorld*, 2025 WL 1246434, at *7; *see also In re Pool Prods.*, 2014 WL 3353232, at *2.

Finally, Infosys's repeated reliance on *Endure Industries Inc. v. Vizient Inc.*, 2024 WL 1704670 (N.D. Tex. Apr. 19, 2024) (Starr, J.), to minimize the prejudice of additional expert reports is misplaced because Infosys omits critical facts in that case undercutting Infosys's position. In *Endure*, Judge Starr had "vacated all deadlines" and expressly concluded "a continuance of the deadlines and allowing for re-depositions or securing new rebuttal opinions if necessary would cure any prejudice." *Id.* at *2. Thus, prejudice was not based merely on the volume of supplemental materials, as Infosys's selective quoting might suggest; rather, prejudice was assessed in a procedural posture where additional expert work could be accommodated without jeopardizing imminent deadlines, *id.*—the opposite of this case, where Judge Starr himself has repeatedly warned

that further delay will not be permitted, Dkt. 547. Moreover, in *Endure*, Judge Starr found that the opposing party's "provision of critical data late in the game seems to be the reason for Endure's supplementation of expert reports." 2024 WL 1704670, at *3. That rationale tracks Cognizant's proper supplements, which addressed newly produced materials ordered by the Special Master—not Infosys's New Reports, which rely on no new information or evidence produced in this litigation. If anything, *Endure* validates the distinction Cognizant draws between its own proper supplements and Infosys's New Reports.

**4. *Infosys Has No Adequate Explanation For Its Noncompliance.***

The final factor considers whether Infosys has offered an adequate explanation for its noncompliance. *UWorld*, 2025 WL 1246434, at *7. In terms of noncompliance, the Fifth Circuit rejects "self-help" by a party "unilaterally altering expert deadlines," rather than seeking relief from the Court. *Harmon*, 476 F. App'x at 39 n.4.

Notably, Infosys's explanation answers the wrong question. The issue is not why Infosys could not have offered these opinions earlier—it could have—but why, once it decided additional reports were warranted, it bypassed the Court and served them without leave. The Fifth Circuit frames the inquiry accordingly: this factor examines "the explanation for the failure to [timely *move for leave* to amend]." *S&W Enters., L.L.C. v. SouthTrust Bank of Ala., NA*, 315 F.3d 533, 536 (5th Cir. 2003) (brackets in original; emphasis added) (quoting *Reliance*, 110 F.3d at 257). Judge Horan applied that same distinction in *UWorld*: although UWorld argued that its experts could not have anticipated the opposing experts' rebuttal opinions, the Court separately evaluated UWorld's explanation for its "failure to seek leave to file the sur-rebuttals" and found it lacking. 2025 WL 1246434, at *7; *see also Smith v. Transocean Offshore USA, Inc.*, 2021 WL 1534503, at *9 (E.D. La. Apr. 19, 2021) (although later developments explained why supplementation had not

occurred earlier, "Plaintiff offers no explanation for his failure to seek an extension of the deadlines"). Thus, Infosys's explanation as to why its opinions were not offered sooner does not reach the operative inquiry as to why Infosys served new reports without leave.

*First*, Infosys cannot excuse its failure to seek leave by stating it thought Court authorization was unnecessary or that its improper New Reports were permissible without leave. Rule 26(e) imposes a limited duty to correct a disclosure that is "incomplete or incorrect" upon the discovery of new information, not an affirmative command to generate self-serving new opinions or unauthorized surrebuttal whenever the litigation landscape changes. *See* Fed. R. Civ. P. 26(e)(1)(A); *C.F. Bean*, 841 F.3d at 371. More importantly, a "misunderstanding" about whether "supplementation [is] permitted without leave of court" does not justify a failure to seek leave pursuant to the scheduling order. *See Binh Hoa Le*, 2019 WL 1436375, at *5 n.4. Nor is the belief that Infosys was entitled to the New Reports without leave an adequate explanation: Judge Horan rejected precisely this excuse when he deemed a party's explanation that it "did not believe it had to" insufficient. *UWorld*, 2025 WL 1246434, at *7.

*Second*, as previously described, *supra* § III.A, no genuinely new information exists requiring supplementation, particularly in light of Dr. Wong's testimony he was "not aware of any material new information" two days before the service of the New Reports, App'x 1165 (33:7–33:8), 1167 (35:3–4), and Dr. Werner's testimony that the New Report merely clarified, rather than corrected, his prior opinion and that the Order supplied no new facts, App'x 1196 (13:20–13:22), 1201 (63:3–7); *see also Kumar*, 476 F. Supp. 3d at 469 (striking supplement where expert "testified that his supplement was not predicated upon the existence of some new facts"). But assuming *arguendo* that the Order or Cognizant's rebuttals necessitated "supplementation," the rebuttal reports were served by August 3 and the Order by August 11. Infosys then had ample

opportunity to ask the Court to authorize whatever additional expert work it believed necessary, particularly in light of the fact that during that time, Infosys's experts managed to generate almost 70 pages of new report materials and 20 new analysis schedules and to collect, review, analyze, and create almost three gigabytes of data for its backup. *See In re Pool Products*, 2014 WL 3353232, at *3 (faulting party for making "unilateral decision" to serve a new report without leave a month after receiving opposing experts' reports); *Harmon*, 476 F. App'x at 39 n.4 (rejecting self-help and noting party should have "raised these matters timely in advance" with the court).

*Third*, try as it might, Infosys cannot shift responsibility for its choice not to seek leave to Cognizant. Infosys emphasizes that it notified Cognizant on August 12 of its intent to serve new reports and its proposal to modify the schedule. But notice to an opposing party is not Court-granted leave, and the notice standard Infosys clings to for its explanation is unsupported by any authority. Regardless, Infosys's proposal undermines its explanation: it knew Cognizant disputed the New Reports' propriety, recognized that accommodating the New Reports would require altering the existing schedule, and even proposed involving the Special Master. Yet when Cognizant declined to agree to modify the existing schedule, Infosys never sought judicial input; it simply served the New Reports anyway.

Similarly, Infosys's citation to Cognizant's supplemental and corrected reports is a red herring. Cognizant does not contend genuine Rule 26(e) supplementation or correction requires leave of Court; it contends that a party cannot invoke Rule 26(e) to introduce new opinions that do not qualify as supplementation without leave. Cognizant's reports illustrate the distinction: the Pinto and McGavock supplements address genuine later-produced evidence ordered by the Special Master. And the Lerner submission centered around an errata to the reports (and two redlines) that struck a handful of quotes from his reports without adding *any* new opinions or *any* new analysis.

Infosys's repeated invocations of those proper disclosures—which it never challenged until this dispute—thus are irrelevant to the dispositive question: whether *its* New Reports are genuine supplements that could be offered without leave of Court.

Finally, Cognizant's refusal to agree to Infosys's proposal does not justify Infosys's self-help. In *UWorld*, Judge Horan squarely rejected a party's attempt to blame the opposing party for having "created this situation." 2025 WL 1246434, at *7. And Judge Horan in *this case* already rejected Infosys's attempt to place its procedural failures at Cognizant's feet when it came to Infosys's third-party-discovery missteps, finding that Cognizant's actions, "no matter how wrongful," did not excuse Infosys's failure to timely seek leave. *See* Dkt. 409 at 7 (quoting *OrchestrateHR, Inc. v. Trombetta*, 2016 WL 11782274, at *2 (N.D. Tex. Nov. 30, 2016)). Cognizant, moreover, had no obligation to accept the burden and expense of reopening the expert process to accommodate new reports, sight unseen, which Infosys had no right to serve and had not established as proper—particularly where Infosys could have offered its responses to the Order from day one. In short, advance notice to opposing counsel of a party's intended self-help does not make self-help permissible. Once Cognizant declined Infosys's proposal, Infosys's appropriate recourse was to go to the Court, not to unilaterally force the relief it wanted.

* * *

Infosys's New Reports consist of new opinions and unauthorized surrebuttal—far outside the realm of proper Rule 26(e) supplementation. And despite much hand-waving, Infosys has not carried its burden to show its violations were substantially justified or harmless, as all four exclusion factors likewise favor striking: the New Reports are unnecessary, substantially prejudice Cognizant, cannot be adequately cured without further disruption to the schedule, and lack any adequate justification. The Court should therefore strike the New Reports in their entirety, including

all accompanying exhibits, schedules, and backup materials, rather than reward Infosys for its blatant disregard of the scheduling order.

**INFOSYS'S POSITION:**

Judge Starr issued his decision on Cognizant's Motion to Dismiss, Dkt. 546 (the "MTD Order"), on August 11, 2026—after both expert report deadlines had passed and while expert depositions were underway. The MTD Order dismissed three of the five theories of anticompetitive conduct on which Infosys's experts had opined. Infosys's experts did precisely what Rule 26(e) requires in that circumstance: They supplemented their reports that had become materially incorrect or incomplete by identifying which previously disclosed opinions no longer applied and conforming their analyses to the case as it now stands. The practical effect of the supplemental reports at issue is to *reduce* the scope of Cognizant's antitrust liability and Infosys's claimed damages—withdrawing the dismissed theories of liability and reducing baseline Helix-related damages by $66.4 million (from $179.3 million to $112.9 million). App'x 1234-35 (Werner Supp. Rept. ¶¶ 4–5). Cognizant now moves to strike the very disclosures that narrow the expert testimony against it, so that it may argue on summary judgment that Infosys's experts opined on the wrong case. That is not a Rule 26 dispute; it is a merits argument in procedural dress.

Cognizant's motion to strike the Supplemental Reports of Dr. Paul Wong and Dr. Daniel Werner (together, the "Supplemental Reports") should be denied. While Cognizant accuses Infosys of "gamesmanship," *supra* 3, the reality is that Infosys promptly supplemented after the MTD Order to disclose "additional [and] corrective information," Fed. R. Civ. P. 26(e), in compliance with the MTD Order. This supplemental disclosure was proper—indeed, required—and it imposes no prejudice on Cognizant. To the contrary, it provides Cognizant and the Court with clarity on Infosys's expert testimony following the MTD Order.

Cognizant frames its motion as procedural, but as Judge Stickney analogously observed when the shoe was on the other foot, "the ultimate issue" here "goes to the merits of the claims

and the parties will have ample opportunity to litigate this issue in due course." Dkt. 522 at 8. Indeed, Cognizant seeks to strike the Supplemental Reports so that it can argue that it should receive summary judgment (and Infosys's antitrust experts should be excluded) because Infosys lacks expert testimony consistent with the MTD Order.[8] To be clear, Cognizant's argument would be categorically incorrect. But it would unjustifiably prejudice Infosys to preclude its expert witnesses from conforming their expert reports to the MTD Order. In contrast, Cognizant's asserted prejudice amounts to nothing more than the prospect of responding to a total of forty-one double-spaced pages of narrowly targeted supplemental opinions and twenty-one exhibits from two experts—in a case where Cognizant itself has served well over ***1,000*** pages of opinions and exhibits from five experts, including over ***100 supplemental*** pages (without seeking leave). Cognizant's asserted prejudice falls far short of what Judge Starr has previously rejected as a basis to strike supplemental reports. *See Endure Indus. Inc. v. Vizient Inc.*, No. 3:20-cv-3190-X, 2024 WL 1704670, at *2 (N.D. Tex. Apr. 19, 2024) (Starr, J.) (no prejudice from responding to "more than 100+ pages of sur-rebuttal, new opinions, and new analyses").

Nothing in the Federal Rules or the Court's Scheduling Order, Dkt. 201; *see also* Dkt. 132, authorizes the result Cognizant seeks. Indeed, the unambiguous text of Rule 26 precludes that result. Supplementation of expert reports is not only permitted but *required* "if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A); *see also id.* 26(a)(2). And while the

[8] *See, e.g.*, *supra* 6, 7 (arguing Dr. Paul Wong "offers no opinions at all about any group boycott theory of liability" and Dr. Daniel Werner "never apportioned . . . damages"); App'x 1268 (Orszag Dep. Tr. 304:1–3) (Cognizant's antitrust damages expert claiming Infosys's damages expert "has no damage estimate with regard to the conduct at issue in the case today").

deadline for such supplementation is "the time the party's pretrial disclosures under Rule 26(a)(3) are due," Fed. R. Civ. P. 26(e)(2), Infosys served the Supplemental Reports far earlier, as soon as it could after the MTD Order. *See* App'x 1696. In fact, expert discovery was still *open*, leaving no question the Supplemental Reports were timely. *See* Dkt. 201 at 2.

Infosys made every effort to ensure the timing of the MTD Order would not impact the case schedule even though it issued just a week before antitrust expert depositions were scheduled to begin. The day after receiving the MTD Order, Infosys notified Cognizant of its plans to supplement its antitrust experts' reports and proposed an orderly process in which Infosys would quickly serve its supplements, Cognizant could then serve responsive supplements of its own, and then all antitrust experts could be deposed the week before Labor Day (a week in which Cognizant had *already* agreed to schedule another expert deposition), well before the deadline for summary judgment and expert motions. *See* App'x 1270 (J. Armstrong Aug. 12, 2026 email). Cognizant rejected that proposal, refused to offer any alternative proposals, and informed Infosys it would proceed with a motion to strike. *See* App'x 1273 (M.L. Newcomb Aug. 24, 2026 Email); *see also* App'x 2239-40 (M.L. Newcomb Sept. 2, 2026 Email) (rejecting further offer to compromise).

Cognizant's actions are inconsistent with its position on this motion: Cognizant had already served three supplemental expert reports of its own without notice or leave, totaling more than 80 pages of text (and more than 100 pages when counting exhibits). *See* App'x 1275-1388 (First Pinto Supplemental Report, McGavock Supplemental Report, and Second Pinto Supplemental Report). Cognizant then proposed to move for leave to serve a "corrected" report of one of its own antitrust experts, yet rejected a compromise under which both parties would agree not to object to the supplemental and "corrected" reports at issue. *See* App'x 1223-29 (Decl. of Jariel Rendell ¶ 5) ("Rendell Decl."). Despite its current position on "self-help," *supra* 12, Cognizant then proceeded to

serve not one but *two* "corrected" expert reports, plus "corrected" back-up material, all without seeking leave of court. *See* App'x 1390 (T. Kristek Aug. 28, 2026 Email); App'x 1391-1666 (Lerner Corrected Report and Lerner Corrected Rebuttal Report).

Infosys asks the Court to deny Cognizant's motion to strike.

## I. Background

Understanding the procedural posture in which the parties find themselves is key to resolving this dispute. Cognizant filed its Motion to Dismiss Infosys's Amended Counterclaim and Stay Antitrust Discovery on November 20, 2025. Dkt. 170. While that motion was pending, discovery continued, save for a brief stay for mediation purposes. *See* Dkt. 201 at 1. Fact discovery closed on May 11, 2026, and the parties served their opening expert reports on June 15, 2026, and their rebuttal expert reports on August 3, 2026. *See id.*

Just over a week later, on August 11, 2026, Judge Starr issued the MTD Order, Dkt. 546. The MTD Order did not dismiss any of Infosys's claims in their entirety, instead partially dismissing as to three "theories" of anticompetitive conduct: predatory hiring, denial of training opportunities, and the specific terms of Non-Disclosure and Access Agreements ("NDAAs") that Cognizant imposed on other IT Services vendors. *See id.* at 15–17, 20–25. The Court otherwise denied Cognizant's motion, making clear that the alleged anticompetitive conduct "relating to the TriZetto Consulting Partner Network and the most favored vendor clauses ('MFV Provisions')" plausibly stated a claim for relief as to *all* of Infosys's antitrust claims. *Id.* at 1; *see also id.* at 10–15, 25–26. Indeed, the Court held that "[i]n regard to the MFV Provisions, Infosys has stated a claim for a group boycott that is both horizontal and vertical." *Id.* at 12.

By the time of the MTD Order, the parties had already scheduled expert depositions, which, due to various scheduling conflicts on both sides, were scheduled to run past the close of expert

discovery. *See* App'x 1672-73 (A. Csoros July 17, 2026 Email). Summary judgment and expert motions were, and still are, due September 23, 2026. Dkt. 201 at 2. Seeking to protect the summary judgment and expert motion schedule—not to modify it—and to promptly address the MTD Order's impact on expert discovery in progress, Infosys emailed Cognizant the day after entry of the MTD Order, proposing an expeditious and orderly process for serving supplemental expert reports, including responsive reports from Cognizant, and completing antitrust expert depositions without the need for follow-up depositions. *See* App'x 1270 (J. Armstrong Aug. 12, 2026 email).[9] Infosys made clear it was also open to alternative proposals and suggested a conference with the Special Master if the parties were unable agree. *See* App'x 1270 (J. Armstrong Aug. 12, 2026 Email).

Cognizant responded the following day, not only rejecting Infosys's proposal and conference suggestion, but also taking the position that Infosys should not be permitted to supplement its expert reports *at all* to address the MTD Order. *See* App'x 1679 (M. Butler Aug. 13, 2026 Email). Cognizant asserted "the reopening of expert discovery and resetting of the expert deposition schedule will prejudice Cognizant," *id.*, but even setting aside the inaccuracy of that characterization, Cognizant failed to point to any real prejudice. Infosys responded the same day, explaining that, "far from seeking to 'reopen' expert discovery, Infosys intended to serve its supplements before the scheduled close," and that "Infosys proposed a reasonable scheduling modification"—not affecting any deadlines for court filings—"to allow Cognizant to serve any rebuttal supplements and the parties to complete expert depositions shortly after the scheduled close of expert discovery, by mutual agreement, in the spirit of Judge Starr's recent reminder that 'the

---

[9] Specifically, Infosys proposed that it serve its supplemental reports on August 21, 2026 (before the close of expert discovery); that Cognizant serve any supplemental rebuttal reports on August 28, 2026; and that the parties reschedule their antitrust experts' depositions for the week of August 31, 2026—through which expert depositions were already scheduled to run with Cognizant's agreement. *See id.*; App'x 1683-84 (Dep. Notice of Greg Crouse).

obligations of *Dondi Props. Corp. v. Commerce Savs. & Loans Assn*, 121 F.R.D. 284 (N.D. Tex. 1988) (en banc) (per curiam) apply in this case.'" App'x 1687 (J. Armstrong Aug. 13, 2026 Email) (quoting Dkt. 536). Because Cognizant's response confirmed it was not open to compromise, however, Infosys explained it would "proceed with the depositions as scheduled" and "timely supplement in accordance with Rule 26(a)(2)(E) and (e)(2)." *Id.*

The parties discussed the issue at a meet-and-confer previously scheduled to discuss another topic, *see* App'x 1691 (M. Butler Aug. 14, 2026 Email), but Cognizant refused to accept any compromise, and further threatened to file a "motion for a protective order" regarding the anticipated Supplemental Reports, yet could not identify any discovery obligation from which Cognizant sought to be "protected," nor any prejudice to Cognizant. *See* App'x 1225 (Rendell Decl. ¶ 4).

On August 21, 2026, just over a week after the MTD Order, three days before the close of expert discovery, and a full week before Dr. Werner's scheduled deposition (which had been delayed past the close of expert discovery at Cognizant's request), Infosys served the Supplemental Reports. *See* App'x 1696 (Aug. 21, 2026 Service Email); App'x 1698-99 (Werner Dep. Notice). Dr. Wong's supplemental report is only thirty-one double-spaced pages with nine exhibits—a short supplement to his full report, which totaled 318 pages including two appendices and 42 exhibits. *Compare* App'x 1701-45 (Wong Supp. Rept.), *with* App'x 1746-2064 (Wong Rept.). Dr. Werner's supplemental report consisted of ten pages of double-spaced text with eleven schedules—a similarly short supplement to his full report, which totaled 127 pages, including 22 schedules. *Compare* App'x 1230-54 (Werner Supp. Rept.), *with* App'x 2065-2192 (Werner Rept.). On August 24,

2026—the following business day (and still before the close of expert discovery)—Infosys served both experts' back-up materials. *See* App'x 2194 (Aug. 24, 2026 Service Email).[10]

The same day, Cognizant announced it would move to strike both supplemental reports in full and requested a premotion conference. *See* App'x 1273 (M.L. Newcomb Aug. 24, 2026 Email). Before the conference, Infosys reiterated that it had "proposed a reasonable schedule for Cognizant to serve its own supplemental expert opinions" and "remain[ed] willing to agree on this issue," and specifically offered to "make Dr. Wong reasonably available for an additional deposition via Zoom regarding his supplemental report." App'x 2196-97 (J. Armstrong Aug. 25 & 27, 2026 Emails).

The conference occurred on August 27, 2026. *See* App'x 2201 (M.L. Newcomb Aug. 25, 2026 Email). Cognizant reiterated its position that supplements were not permitted in this scenario and that it did not believe it was "required" to "accept" service of the supplements. *See* App'x 1225-26 (Rendell Decl. ¶ 5). Cognizant also announced at this conference that it was considering moving for leave of Court to serve a "corrected" report of its antitrust liability expert, Dr. Andrés Lerner, and asked for Infosys's consent. *See id*. Infosys proposed a compromise in which Cognizant would accept service of Infosys's supplemental reports and Infosys would accept service of Cognizant's untimely "corrected" report, but Cognizant rejected that proposal, insisting that only Cognizant should be able to serve a further report while Infosys should not. *Id*. Cognizant then began the joint report process.

Within hours of serving its portion of this Joint Report, Cognizant served not one, but two "corrected" reports by Dr. Lerner that adjusted or deleted various assertions made in his original

---

[10] That production was not only timely, but in fact early, under the Stipulation Regarding Expert Discovery, which requires the production of back-up materials "within three (3) business days of any party serving any expert report." Dkt. 134 at 1 ¶ 4.

Initial and Rebuttal Reports implicated by his deposition. *See* App'x 1391-1666 (Lerner Corrected Initial Report and Lerner Corrected Rebuttal Report).

Before serving its responsive portion of this Joint Report, on September 2, 2026, Infosys made yet another attempt to resolve the dispute without the Court's involvement, reiterating its proposal to mutually accept service of the supplemental and "corrected" reports at issue, offering availability for a further deposition of Dr. Wong, and proposing that Cognizant's experts serve any supplemental rebuttals they wished by September 11, with short remote depositions as to any supplements shortly thereafter. App'x 2235-37 (J. Armstrong First Sept. 2, 2026 Email). Cognizant again refused to compromise, confirming that it would proceed with its motion unless Infosys agreed to "withdra[w] the August 21 new reports of Drs. Wong and Werner in their entirety and . . . not rely on those reports (and the respective backup materials), or the opinions and analyses within them, for any purpose in this litigation, including in connection with Daubert briefing, summary judgment, and trial." App'x 2238-42 (M.L. Newcomb Sept. 2, 2026 Email). Because "demanding that Infosys withdraw its proper supplements in full and concede 100% of the relief Cognizant seeks" was no compromise at all, Infosys had no choice but to proceed in opposing Cognizant's motion. App'x 2243-48 (J. Armstrong Second Sept. 2, 2026 Email).

## II. Legal Standard

"A party who has made a disclosure under Rule 26(a) . . . must supplement or correct its disclosure or response . . . in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A). "Any additions or changes to" expert disclosures, including reports,

"must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due,"—here, by February 9, 2027. Fed. R. Civ. P. 26(e)(2); *see* Dkt. 201 at 3.

On a motion to strike a supplemental expert report, the court must first determine whether the report "is a new report rather than a supplement," only in which case "the disclosure is untimely in violation of Federal Rule of Civil Procedure 26(a)(2)(D)." *Charles v. Sanchez*, No. EP-13-CV-00193-DCG, 2015 WL 808417, at *8 (W.D. Tex. Feb. 24, 2015). "The line between supplemental opinions and new opinions is not always clear, and the decision regarding how to make the distinction likely depends on the facts of the case." *Id.* (alteration adopted) (quotation marks omitted). "A supplemental expert report however, necessarily contains information that was not expressed in the original report, or there would be no need to supplement." *Id.* If the court determines that the report is not a true supplement, it then "must determine whether the violation is either justified or harmless" under Federal Rule of Civil Procedure 37 before striking it. *Id.*

"Even if" the expert reports at issue "are not a proper supplement under Rule 26(e), if the failure to make the timely disclosure 'was substantially justified or . . . harmless,' the reports won't be struck" under Rule 37. *Endure Indus.*, 2024 WL 1704670, at *2 (quoting Fed. R. Civ. P. 37(c)(1)). "District courts consider four factors when determining whether to exclude expert evidence as a sanction for the violation of a scheduling order." *Certain Underwriters at Lloyd's, London v. Axon Pressure Prods. Inc.*, 951 F.3d 248, 270 (5th Cir. 2020). "Those factors are: '(1) the explanation for the failure to identify the witness; (2) the importance of the testimony; (3) potential prejudice in allowing the testimony; and (4) the availability of a continuance to cure such prejudice.'" *Id.* (quoting *In re Compl. of C.F. Bean LLC*, 841 F.3d 365, 372 (5th Cir. 2016)); *accord Endure Indus.*, 2024 WL 1704670, at *2.

Finally, if the court determines that part of an expert report is either truly supplemental or otherwise justified but another part is not, it should analyze those portions separately and strike only the portions it finds to be improper. *See, e.g.*, *Samurai Global, LLC v. Landmark Am. Ins. Co.*, No. 3:20-CV-3718, 2024 WL 4530123, at *2 (N.D. Tex. Oct. 18, 2024); *Holcombe v. United States*, 516 F. Supp. 3d 660, 670–73 (W.D. Tex. 2021).[11]

## III. Argument

Cognizant's motion to strike should be denied: First, Infosys's Supplemental Reports plainly are proper under Rule 26(e) because they provide "additional or corrective information" not available at the opening and rebuttal report deadlines to address material incompleteness or inaccuracy, Fed. R. Civ. P. 26(e)(1)(A), namely the Court's MTD Order (which was issued in the middle of expert discovery) and specific alleged errors identified by Cognizant's experts. Second, even if Rule 26(e) alone did not require supplementation—and it does—the Supplemental Reports would still be harmless and substantially justified under the circumstances.

### A. Infosys Served Timely Supplemental Expert Reports Under Rule 26(e).

Infosys served supplemental expert reports to (1) respond to the MTD Order and (2) narrowly address alleged errors identified by Cognizant's experts. Both are proper subjects for supplementation under Rule 26(e). The Court should therefore deny Cognizant's motion to strike.

#### 1. Infosys Properly Supplemented in Response to the MTD Order.

Judge Starr's MTD Order dismissing three antitrust theories that were previously addressed in the opening antitrust expert reports (appropriately so at the time because they were live theories)

[11] While Cognizant asserts in a footnote that the entire report should be stricken as long as it is "largely" new, *see supra* at 20 n.7 (quotation marks omitted), that principle applies only where just a small fraction of the report can be characterized as supplemental, such that the properly served portion could not stand on its own. *See, e.g.*, *C.F. Bean*, 841 F.3d at 372.

rendered those reports "in some material respect . . . incomplete or incorrect" under Rule 26(e)(1)(A). Drs. Wong's and Werner's timely reports assumed—as they were required to when served—that all five pleaded theories of anticompetitive conduct were in the case. *See* MTD Order at 3–4. After August 11, three were not. Thus, Infosys was "required under Rule 26(e)" to "supplement" those reports. Fed. R. Civ. P. 26(a)(2)(E). Cognizant does not cite, nor has Infosys located, a single case from within the Fifth Circuit holding otherwise. Indeed, it does not appear that courts in this Circuit have needed to confront this question because such supplements are routine and plainly required by Rule 26(e).

Cognizant's authorities do not reach this question. Instead, they address whether a ruling supplies *new information* warranting *additional* opinions or written discovery responses. Cognizant identifies no case, anywhere, holding that a party must leave a materially incomplete or incorrect expert disclosure standing because the inaccuracy was created by a court order rather than by a document produced in discovery. Rule 26(e) includes no such exception, and the Court should decline Cognizant's invitation to create one. *See Mir v. L-3 Com'cns Integrated Sys., L.P.*, 319 F.R.D. 220, 229 (N.D. Tex. 2016) (Horan, M.J.) (Federal Rules are given their plain meaning). Indeed, Cognizant's position would produce the perverse result that an expert must continue to sponsor opinions premised on dismissed conduct, and the opposing party can then move to exclude the very opinions its own motion to dismiss made obsolete.

Without authority for its position, Cognizant invokes two inapposite, out-of-circuit cases that do not support its argument, *supra* at 16. First, *Cook v. Rockwell Intern. Corp.*, 580 F. Supp. 2d 1071 (D. Colo. 2006), did not involve a motion-to-dismiss decision at all, much less one that dismissed some theories of relief in the midst of expert discovery and thus necessitated prompt supplementation. Instead, *Cook* involved a situation where the defendants served various

additional expert reports styled as supplements *eight to nine years* after service of the expert's initial report. *See id.* at 1167–69. They argued that certain intervening pretrial rulings "narrowing and defining the issues to be tried in [the] action constitute[d] new information justifying" supplementation. *Id.* at 1170. The *Cook* court disagreed in that context, but did not cite any authority or engage in textual analysis of Rule 26(e) supporting any blanket rule that should apply in this case. *See id.* Second, *Whitney v. City of Milan*, No. 09-cv-1127-JDB-egb, 2014 WL 11398537, at *6 (W.D. Tenn. Feb. 25, 2014), did not even involve expert reports. Rather, the court rejected an argument that various requests for admission should be deemed admitted because the defendant, who had objected to them based on qualified immunity, chose not to supplement his responses following a summary judgment ruling that he was not entitled to qualified immunity. *See id.* at *6 & n.4. The *Whitney* court did not hold that the defendant was not allowed to supplement (and indeed the defendant was not seeking to supplement); rather, the court observed in a brief footnote, citing *Cook* without further elaboration, that the summary judgment ruling did not require supplementation. *Id.* at *6 n.4.

This situation is entirely different. Infosys served its Supplemental Reports to address the impact of the MTD Order the week after it issued, and expert discovery *was still open*. In these circumstances, Infosys's Supplemental Reports are squarely justified by Rule 26(a)(2)(E) and (e)(1)(A). "When interpreting the Federal Rules of Civil Procedure, the Court is to give the rules their plain meaning, and, as with a statute, the inquiry is complete if the Court finds the text of the rules to be clear and unambiguous." *Mir*, 319 F.R.D. at 229. Rule 26(e) speaks of "additional or corrective *information*." Fed. R. Civ. P. 26(e)(1)(A) (emphasis added). It does not speak narrowly of additional or corrective "evidence," and the Court should reject Cognizant's attempt to rewrite the text of the Rule. Cognizant accuses Infosys of "repeatedly relying only on the Rule's language

in the abstract," *supra* at 19, yet tellingly Cognizant offers no textual analysis of its own. The reason is obvious: Rule 26(e)'s reference to "information" is unambiguous, and there is no tool of interpretation Cognizant can find to make it say "evidence" instead.

Moreover, Cognizant's response to the MTD Order during expert depositions independently justifies Infosys's supplementation: experts may properly supplement their reports to "address an alleged shortcoming highlighted by [opposing counsel] at [their] deposition." *Sonrai Sys., LLC v. Romano*, No. 16 CV 3371, 2022 WL 4646323, at *10 (N.D. Ill. Sept. 30, 2022); *see also id.* ("a supplemental report is not inherently improper just because supplementation was prompted by questions or challenges to the expert's opinion raised by opposing counsel" (citation omitted)). Indeed, Cognizant justifies its own "corrected" reports of Dr. Lerner on precisely this basis. *See* App'x 1225-26 (Rendell Decl. ¶ 5); App'x 1390 (T. Kristek Aug. 28, 2026 Email); App'x 2207-15 (Lerner Dep. Tr. 240:12–272:17).

Notably, during its deposition of Dr. Wong, Cognizant repeatedly challenged his opinions as incorrect in light of the MTD Order. *See, e.g.*, App'x 2226a-b (Wong Dep. Tr. 101:23–103:1) (asking Dr. Wong to delineate "specific to Cognizant's conduct what you view as the exclusionary act," followed by asking whether he was "aware the Court has dismissed the allegations in the amended counterclaim related to NDAAs"). During the deposition of Cognizant's antitrust damages expert, Jonathan Orszag, he repeatedly asserted that Dr. Werner's damages model was incomplete or incorrect because it included allegedly anticompetitive conduct that was "no longer part of the case." App'x 1262 (Orszag Dep. Tr. 116:1); *see also* App'x 1263, 1264, 1265, 1266, 1267 (Orszag Dep. Tr. 184:13–17, 190:2–4, 211:10–12, 214:12, 268:15–21) (similar). Mr. Orszag even went so far as to claim that Dr. Werner "has no damage estimate with regard to the conduct at issue in the case today." App'x 1268 (Orszag Dep. Tr. 304:1–3). And during the deposition of

Infosys's antitrust damages expert, Dr. Werner, Cognizant similarly contended through its questioning that his damages analysis was incorrect following the MTD Order. *See, e.g.*, App'x 2233 (Werner Dep. Tr. 80:11-14) ("Q. For the [damages] number to be unchanged, the dismissed conduct must not have contributed to Infosys' foreclosure in the IT Services Market in the first place, correct?"); App'x 2234 (Werner Dep. Tr.87:25-88:2) ("Q. Nothing in your model can add or subtract damages for any specific conduct whether dismissed or remaining, correct?").

Cognizant's insinuation, *supra* at 17, that Dr. Wong somehow admitted his supplemental opinions were not in response to any new information does not survive the full transcript. Cognizant tellingly omits the questions Dr. Wong was answering in the testimony it cites. In the first passage, Cognizant asked Dr. Wong if it was "fair to say that there's no new *evidence* that has come into the case that has changed [his] opinions or conclusions since [he] submit[ted] [his] rebuttal report." App'x 2223 (Wong Dep. Tr. 32:23–33:1) (emphasis added). And in the second, Cognizant again asked whether his opinion was "based on any new *evidence* that came into the case after [his] reports were served." App'x 2224 (Wong Dep. Tr. 34:19–21) (emphasis added). In context, Dr. Wong's answers in the negative plainly took "evidence" to mean *factual* evidence. Indeed, anticipating Cognizant's distortion of the record, Infosys's counsel objected to the second question on the ground that it "call[ed] for a legal conclusion as to the term 'evidence.'" App'x 2224 (Wong Dep. Tr. 34:23–24). Dr. Wong later clarified that he understood "opposing counsel's use of the term, quote, 'evidence,' unquote," "to mean with reference to, say, contracts or other ordinary course documents or a deposition from a fact witness." App'x 2227 (Wong Dep. Tr. 186:12–16). And when asked whether he was "aware of any new *information or other material* potentially relevant to the opinions in this case beyond that specific use of evidence," Dr. Wong immediately identified that "[t]he Court has issued an opinion and order." App'x 2227 (Wong

Dep. Tr. 186:17–25) (emphasis added). That exchange occurred during Infosys's examination of Dr. Wong, *see* App'x 2227-2230 (Wong Dep. Tr. 186:3–201:18)—the same thirty-two minutes Cognizant characterizes as having avoided the subject entirely. *Supra* at 9. In other words, Cognizant's account of the deposition selectively omits the one passage in which Dr. Wong was actually asked, and answered, whether anything beyond factual "evidence" bore on his opinions.[12]

Cognizant's lead example proves Infosys's point. It says Dr. Wong introduced a "group boycott" theory for the first time on August 21. *Supra* at 10. But Dr. Wong's June 15 report timely disclosed his opinions about horizontal and vertical restraints imposed by Cognizant through the TCPN and the MFV Provisions. *See* App'x 1767 (Wong Rept. ¶ 34(d)); *see also id.* ¶¶ 284–290 (App'x 1892). "Group boycott" is the legal characterization Judge Starr gave that conduct. *See* MTD Order at 12. Dr. Wong's supplement adopts the Court's nomenclature and explains how his previously disclosed economic analysis maps onto it. *See* App'x 1701-45 (Wong Supp. Rept.); 2218–26 (Wong Dep. Tr. 11:9–45:25). Rule 26 does not require an economist to anticipate the legal label a court will later attach to the conduct he has already analyzed, and an expert who conforms his vocabulary to the court's ruling has supplemented, not testified anew. As Judge Starr recognized, "there is no requirement to use 'magic words'" here. MTD Order at 15.

For the same reason, it is immaterial that Dr. Werner used the word "clarifications" rather than "corrections" to describe his Supplemental Report at his deposition. App'x 1196 (Werner Dep. Tr. 13:18–22); *see supra* at 11. Dr. Werner, like Dr. Wong, is not a lawyer, and his failure to use Cognizant's preferred "magic words" does not change the nature of his supplement. At any

[12] Cognizant's argument that Dr. Werner somehow admitted to a non-supplement by testifying "I don't think there's new facts" fails for precisely the same reason. App'x 1201 (Werner Dep. Tr. 63:3-7); *see supra* at 11. Whether the MTD Order introduced "new facts," i.e., factual evidence, is a different question from whether it presented new "information" requiring supplementation under Rule 26.

rate, Rule 26 uses the words "incomplete *or* incorrect," not just "incorrect." Fed. R. Civ. P. 26(e)(1)(A) (emphasis added). Cognizant's argument regarding Dr. Werner's treatment of "integration restrictions," *supra* at 18-19, fares no better. Cognizant's objection is that Dr. Werner drew the wrong line between categories of conduct—a challenge to the substance of an opinion, properly raised under Rule 702 on the schedule the Court has set for that purpose, not a basis to strike a disclosure under Rule 26.

In sum, the Supplemental Reports properly complied with Rule 26(e) as to the MTD Order in every respect.

#### 2. Infosys Properly Supplemented in Response to Cognizant's Experts' Identification of Alleged Errors in its Experts' Reports.

Infosys also properly complied with its obligations under Rule 26(e) to supplement in response to purportedly material errors identified by Cognizant's experts. *See, e.g.*, *Sonrai*, 2022 WL 4646323, at *10 ("it is of no moment that the additions to this section might also address an alleged shortcoming highlighted . . . in defendants' expert reports."). A "supplementary report may be intended in part to rebut an opposing party's expert," as long as the portions responding to the opposing expert "do not differ so substantially from the opening report that they introduce entirely new theories or angles." *Uncommon, LLC v. Spigen, Inc.*, 305 F. Supp. 3d 825, 844 (N.D. Ill. 2018), *aff'd*, 926 F.3d 409 (7th Cir. 2019). That is true of the relevant portions of Infosys's Supplemental Reports (i.e., ¶¶ 32–47 of Dr. Wong's Supplemental Report and ¶ 6 of Dr. Werner's Supplemental Report). Those portions do not offer any new theories or angles—they simply respond to alleged material errors in Drs. Wong's and Werner's prior reports identified by Dr. Lerner and Mr. Orszag.[13]

[13] Cognizant's contrary view seems to be that all an expert can do in response to alleged errors is admit them but not address them. *See supra* at 15 (conceding Dr. Wong sought to correct "errors"

The case Cognizant primarily cites, *UWorld LLC v. USMLE Galaxy LLC*, No. 3:23-cv-447-K-BN, 2025 WL 1246434 (N.D. Tex. Apr. 28, 2025), is not to the contrary. The portion of the opinion that Cognizant cites did not even concern supplementation under Rule 26(e). Rather, the parties disputed whether a stipulation allowing rebuttal reports to respond to opinions offered by the "party with the burden of proof" allowed the plaintiff to serve rebuttal reports responding to the defendants' experts' analysis of affirmative defenses. *See id.* at *3–4. The dispute was about whether the reports were rebuttals, not whether they were supplements. *See id. UWorld* is consistent with Infosys's position because Infosys does not contend that its Supplemental Reports are "rebuttals" within the meaning of the Scheduling Order. Nor does the separate portion of *UWorld* addressing Rule 26(e) assist Cognizant. There, the Court permitted a portion of an errata as proper supplementation because it rested on an image that had not been produced until after the Court granted a motion to compel. *See id.* at *5–6. That holding confirms only that—just as the text of Rule 26(e) says and Infosys explains above—newly available *information* supports supplementation; it does not undermine a party's independent duty under Rule 26(e)(1)(A) to correct a disclosure a dispositive ruling has rendered materially incomplete or incorrect.

*Finite Utility Consulting, LLC v. Tawa,* 2026 WL 2244207 (5th Cir. Aug. 4, 2026), likewise does not help Cognizant. In that case, the party purporting to amend (not supplement) its expert disclosures served a report that criticized the opposing party's *initial* report extensively rather than correcting or clarifying its own expert's initial opinions in response to alleged errors—

---

but arguing he was not permitted to explain they had "minimal impact"). But Cognizant's view is nonsensical and nowhere to be found in Rule 26. If Cognizant were correct, an expert would have to stand silent if a rebuttal expert says the report contains errors but the alleged errors are minimal—or not even errors at all. That is contrary to Rule 26(e) and the very purpose of expert disclosure, and it would all but ensure misleading presentation of rebuttal expert testimony to the jury because any false accusation of error could not be addressed.

in other words, it was simply a rebuttal, not a supplement correcting and clarifying initial opinions like the reports at issue here.[14]

Again, the Supplemental Reports properly comply with Rule 26(e) in providing "additional or corrective information" in specific response to alleged material errors identified by Dr. Lerner and Mr. Orszag.

**B. Alternatively, Any Untimeliness Was Harmless and Substantially Justified.**

Even if Rule 26(e) did not independently require the Supplemental Reports, Cognizant would not be entitled to the relief it seeks. Consistent with Judge Starr's apt analysis in *Endure Industries*, "[a]ssuming *arguendo*" that Infosys's Supplemental Expert Reports "aren't a proper supplement under Rule 26(e)," they "should not be stricken under Rule 37(c)(1)" because Infosys's service of the Supplemental Reports was harmless and substantially justified under the circumstances. *Endure Indus.*, 2024 WL 1704670, at *2 (quotation marks omitted). The factors considered by Judge Starr in *Endure Industries* favor Infosys: "(1) the explanation for the failure to [serve the report earlier]; (2) the importance of the testimony; (3) potential prejudice in allowing the

[14] Cognizant likewise overreads the other cases it cites. In *Cutler v. Louisville Ladder, Inc.*, Civ. No. 4:10-4684, 2012 WL 2994271 (S.D. Tex. July 20, 2012), the expert did not offer a bona fide supplemental response to any specific criticism levied by the opposing expert—rather, he responded to a theory of the opposing party that he was well aware of prior to the parties' agreed deadline to serve simultaneous expert reports, and thus he easily could have offered the exact same opinion in his initial report. *See id.* at *4–5. In *In re Pool Products Distribution Market Antitrust Litigation*, MDL No. 2328, 2014 WL 3353232 (E.D. La. July 9, 2014) ("*In re Pool Products*"), the expert made "other admitted 'refinements' and 'adjustments'" that went beyond narrowly responding to a "misunderstanding" introduced by the opposing party's expert. *Id.* at *2. And *Uniloc USA, Inc. v. Samsung Elecs. Am., Inc.*, No. 2:17-CV-00651-JRG, 2019 WL 2267212 (E.D. Tex. May 28, 2019), involved an "Amended Report" served on the eve of trial, which did not even purport to be a supplement under Rule 26(e). *See generally id.*

Moreover, even if Cognizant were right that the portions of the Supplemental Reports responding to Dr. Lerner's and Mr. Orszag's alleged errors were not true supplements (and Cognizant is not right), that would only affect a few paragraphs rather than justifying striking the reports wholesale. *See, e.g.*, *Samurai Global*, 2024 WL 4530123, at *2.

testimony; and (4) the availability of a continuance to cure such prejudice." *Certain Underwriters at Lloyd's*, 951 F.3d at 270 (quotation marks omitted); *see Endure Indus.*, 2024 WL 1704670, at *2 (considering the same factors in a slightly different order). The first three factors weigh sharply in Infosys's favor, and the fourth is inapplicable under the circumstances and thus neutral.

**1. Infosys Could Not Have Served its Supplements Earlier.**

The first factor, Infosys's "explanation" for not serving its Supplemental Reports at the time initial reports were due, *see Certain Underwriters at Lloyd's, London*, 951 F.3d at 270, weighs squarely in favor of Infosys. The reason is simple: the material information at issue post-dated the prior reports. *See Endure Indus.*, 2024 WL 1704670, at *3. The MTD Order came after both the initial and rebuttal report deadlines had passed, and Drs. Wong and Werner could not possibly have predicted the precise mixture of theories of liability the Court would or would not allow to proceed past the pleading stage. They also could not have responded to the asserted material errors identified in Dr. Lerner's or Mr. Orszag's reports before those reports were served. Infosys then served its supplemental reports as soon as practicably possible, amid *ongoing and open* expert discovery, the week after the MTD Order and two weeks after Dr. Lerner's and Mr. Orszag's rebuttal reports. *Cf. Hanover Ins. Co. v. United States*, 137 Fed. Cl. 479, 486 (2018) (applying standard similar to Rule 37 analysis, holding plaintiff was substantially justified in failing to timely serve report analyzing counterclaim that was still subject of a pending motion for leave to amend at the time of the initial report deadline).

The procedural posture here bears special emphasis. This is not a case in which, as Cognizant suggests, the supplementing party simply decided to "pivot" to a new litigation strategy after its previous strategy did not pan out. *Supra* at 17. Infosys's experts found themselves in the position of having to complete their reports before the Court ruled on the motion to dismiss. Thus,

when they completed their reports, *all* of Infosys's theories were properly in the case. Infosys's Amended Counterclaim alleged five theories of anticompetitive conduct—MFV provisions, specific NDAA provisions, the TCPN, training denials, and predatory hiring—that it contended worked in combination to restrain competition in the Relevant Markets. *See* MTD Order at 3–4. The expert reports thus addressed all of those theories, as they were required to do under the Scheduling Order. Yet Cognizant now seeks to fault the experts for doing so, apparently contending that instead of opining on the case as it stood at the time, the experts should have prospectively addressed every possible outcome of the motion to dismiss. *Supra* 18. But with five theories, two relevant markets, and three submarkets in the case, the Court could have dismissed any combination of those theories and markets or none at all, resulting in dozens of possible hypothetical outcomes. In essence, Cognizant argues that Infosys's experts should have offered *dozens of hypothetical alternative opinions* in each of their reports that did not reflect the actual case as it stood at the time. The Federal Rules do not require such absurdity.

To the extent Cognizant's complaint is that it believes Drs. Wong and Werner did not disaggregate liability and damages by category of conduct in their opening reports (which Infosys rejects on the merits), that is a dispute about the merits of their opinions and the substance of their reports. *Supra* at 17-18. Whether Dr. Wong must disaggregate liability among discrete acts, and whether Dr. Werner's model must apportion damages among those acts—and whether they did—are questions about the reliability and fit of their methodology under Rule 702. These issues are properly presented on the schedule the Court has set for *Daubert* motions, on a full record, and they have nothing to do with whether a disclosure served during open expert discovery was timely under Rule 26. Cognizant may not convert a merits objection into a discovery sanction. *See*

Dkt. 522 at 8 (recognizing "the ultimate issue . . . goes to the merits of the claims and the parties will have ample opportunity to litigate this issue in due course").

Cognizant devotes most of its "explanation" argument to Infosys's failure to seek leave, attempting to recast reasonable compliance with the Federal Rules as improper "self-help." *Supra* at 27–30. But Infosys notified Cognizant of its intent to supplement the day after the MTD Order issued, proposed a schedule under which Cognizant's experts would respond and every court deadline would hold and invited alternative proposals. App'x 1270 (J. Armstrong Aug. 12, 2026 Email). Cognizant rejected the proposal and offered no alternative. Infosys then supplemented within the time Rule 26(e)(2) allows and before the close of expert discovery, on the understanding—reinforced by Cognizant's own service of three supplemental reports without notice, conferral, or leave—that leave was not required (and thus a motion for leave would only further burden the Court unnecessarily). And even if leave were required in hindsight, failing to seek leave in this context is not dispositive, much less a basis for sweeping sanctions; it simply requires the same Rule 37 analysis that would apply to a motion for leave in the first place. *See Certain Underwriters at Lloyd's*, 951 F.3d at 270; *Reliance Ins. Co. v. La. Land & Exploration Co.*, 110 F.3d 253, 257 (5th Cir. 1997). Moreover, Cognizant's passing argument that "no genuinely new information exists requiring supplementation," *supra* at 29, is a merits objection to the content of the reports, not an explanation-factor argument at all.

Finally, Cognizant's argument that "Infosys's explanation answers the wrong question" simply misunderstands the caselaw. *Supra* at 27. Cognizant quotes *S&W Enterprises, LLC v. SouthTrust Bank of Alabama, NA*, 315 F.3d 533 (5th Cir. 2003), for the proposition that the explanation "factor examines 'the explanation for the failure to [timely *move for leave* to amend],'" *supra* at 28 (emphasis and alteration in original) (quoting *S&W*, 315 F.3d at 536). But the reason

*S&W* referred to "timely mov[ing] for leave to amend" was because it was a case about *an untimely motion for leave to amend a complaint*. *S&W*, 315 F.3d at 536 (expressly applying the explanation factor "in the context of untimely motions to amend pleadings"). The issue in *S&W* had nothing to do with expert reports or supplementation at all. *See id.*[15]

Contrary to Cognizant's incorrect portrayal, *supra* at 28, the explanation factor in the context here (i.e., expert reports), is exactly as Judge Starr described it in *Endure Industries*: it is "the explanation for the party's failure to disclose" earlier—not any failure to seek leave. *Endure Indus.*, 2024 WL 1704670, at *2 (quoting *Hoffman v. L&M Arts*, No. 3:10-CV-0953-D, 2013 WL 81578, at *2 (N.D. Tex. Jan. 8, 2013)).; *accord Reliance*, 110 F.3d at 257 (confirming the factor in the expert report context is "the explanation for the failure to *submit a complete report on time*" (alteration adopted) (emphasis added)). Accordingly, even though the supplementing party in *Endure Industries* had not sought leave of court, *see id.* at *1, Judge Starr did not mention that failure to seek leave anywhere in his analysis of the "explanation" factor. *See* 2024 WL 1704670, at *1, *3. Rather, his analysis focused on the reasons why the supplementing party did not disclose the relevant opinions earlier. *See id.* The same analysis is required here, and it straightforwardly favors Infosys for the reasons explained above.

In sum, the first factor is simply a matter of timing, and it strongly favors Infosys.

---

[15] The other two cases Cognizant cites likewise involved procedurally distinct attempts to extend case deadlines. *See Smith v. Transocean Offshore USA, Inc.*, Civ. No. 19-14738-WBV-KWR, 2021 WL 1534503, at *9 (E.D. La. Apr. 19, 2021) (request to supplement pretrial disclosures); *UWorld*, 2025 WL 1246434 (contention that expert report was a "rebuttal" within the meaning of scheduling order).

### 2. The Supplements Are Critically Important in Light of Cognizant's Apparent Position.

The second factor, "the importance of the testimony," *Certain Underwriters at Lloyd's, London*, 951 F.3d at 270, overwhelmingly favors Infosys. Cognizant intends to take the position in summary judgment and expert motions that Drs. Wong's and Werner's prior reports are wholly invalidated by the MTD Order and supposed errors identified by Cognizant's experts, which would risk kneecapping Infosys's case if it were correct—but it is not, as the Supplemental Reports help explain. *See, e.g.*, *supra* at 6–7, 33 & n.8. Thus, granting Cognizant's motion to strike would cross the line into a merits issue, depriving Infosys of expert testimony directly rebutting Cognizant's arguments. While Infosys is confident that Drs. Wong's and Werner's prior reports are reliable and sufficient to withstand summary judgment even standing alone, Cognizant has shown it will argue otherwise. *See id.* The Supplemental Reports are also critical to clarify the opinions Drs. Wong and Werner still intend to offer for trial in light of the MTD Order.

As Judge Starr recognized in *Endure Industries*, supplemental opinions bearing on injury and damages—particularly in an antitrust case such as this one—satisfy the importance factor: reports "on the scope of [the plaintiff's] injury and damages" were "important because [the plaintiff] will need a damages model based on complete and accurate data to prove its antitrust claim at trial." 2024 WL 1704670, at *2 (quotation marks omitted). Indeed, Judge Starr relied on *Hoffman* for its straightforward "finding that a supplemental expert report on damages was important under this factor." *Endure Industries*, 2024 WL 1704670, at *2 n.21 (citing *Hoffman*, 2013 WL 81578, at *2).

Cognizant's contrary arguments are unpersuasive. Cognizant argues that the Supplemental Reports are "unimportant" because the MTD Order "speaks for itself" and experts may not offer legal conclusions. *Supra* at 21. But the Supplemental Reports do not attempt to offer legal

conclusions. *See, e.g.*, App'x 12–13 (Wong Supp. Rept.). Instead, they clarify how Drs. Wong's and Werner's previously disclosed opinions apply to the theories that are still part of the case and why asserted material errors identified by Dr. Lerner and Mr. Orszag do not undermine Infosys's injury and damages. *See* App'x 12–31 (Wong Supp. Rept.); App'x 56–63 (Werner Supp. Rept.).

Like the first factor, the second factor strongly favors Infosys.

**3. Cognizant Will Suffer No Prejudice.**

Cognizant's complaint about Infosys's Supplemental Reports is essentially that they will result in more work for Cognizant. *See supra* at 23–25; *see also* App'x 2239 (M.L. Newcomb Sept. 2, 2026 Email). That complaint is difficult to credit where the principal effect of the supplements is to *reduce* Infosys's liability and damages claims—removing the dismissed theories of liability and cutting the Helix-related damages by over a third. App'x 1234-35 (Werner Supp. Rept. ¶¶ 4–5). Cognizant does not explain how it is prejudiced by a disclosure that narrows the case it must defend. But it is natural and unavoidable that a motion to dismiss decision changing the legal landscape of the case after the initial and rebuttal report deadlines would necessitate further expert work. Cognizant's contrary position does not withstand scrutiny. And the prospect of responding to expert testimony that inevitably would have come into the case anyway is not prejudicial for purposes of the Rule 37 analysis. Indeed, Judge Starr firmly rejected a similar prejudice argument to Cognizant's in *Endure Industries*:

> As to the potential prejudice of allowing Endure's second round of expert opinions, Vizient points to the "extensive resources" it will need to devote "to analyz[e] and respond[ ] to more than 100+ pages of sur-rebuttal, new opinions, and new analyses." As held in *Hoffman*, "Defendants have not shown that they must incur unreasonable additional costs that could have been avoided by an earlier disclosure." And as the Court addresses below, Endure claims it could not have disclosed the expert reports any earlier since the reports relied on new data received by Vizient. Vizient also claims it's been

> "deprived of an opportunity" to re-depose Endure's witnesses. But the Court disagrees.

*Endure Indus.*, 2024 WL 1704670, at *2 (quoting *Hoffman*, 2013 WL 81578, at *2); *see also Hoffman*, 2013 WL 81578, at *1–2 (no prejudice in prospect of responding to supplemental report totaling "45 single-spaced pages with over 150 pages of exhibits," even where moving party had not even retained relevant subject-matter expert). For the same reasons, Cognizant cannot claim any meaningful prejudice from the prospect of responding to the Supplemental Reports, which total just forty-one double-spaced pages of opinion and twenty-one exhibits, *see* App'x 1701-45 (Wong Supplemental Report); App'x 1230-54 (Werner Supp. Rept.), and were the inevitable result of both the MTD Order and their own experts' identification of alleged errors in Drs. Wong's and Werner's reports. Cognizant's contrary figure of "almost 70 pages," *supra* at 3, is reached only by counting exhibits and schedules (including lists of materials relied on) as pages. Its emphasis on the volume of backup materials, *supra* at 3, is likewise misplaced: that volume reflects the underlying data files necessary to replicate calculations invoked by *Cognizant's own experts*, not the length of the opinions themselves, and it is minimal compared to the backup Cognizant's experts have produced throughout this case.

Cognizant's attempts to distinguish *Endure Industries* fall flat. *See supra* at 27. The two distinctions it attempts to draw—that that decision involved late-produced data rather than a dispositive ruling and resulted in a continuance—cut *against* Cognizant. In *Endure Industries*, Judge Starr denied the motion to strike even though accommodating the supplement required resetting the trial date. 2024 WL 1704670, at *3. Here Infosys asks for nothing of the kind: it served the Supplemental Reports before the close of expert discovery, has never sought to move a single filing deadline, and has repeatedly offered to make Dr. Wong available for a short, supplemental remote deposition at Cognizant's convenience. *See* App'x 1256 (J. Armstrong Aug. 27, 2026

Email). If the supplement in *Endure Industries* was harmless at the cost of a trial continuance, this one is even less harmless.

Cognizant's other assertions of prejudice fare no better.

Cognizant's claims of "unfair surprise" and wasted resources are baseless. *Supra* at 23. Infosys told Cognizant immediately of its plan to supplement and offered Cognizant an opportunity to respond. Cognizant was able to depose Dr. Werner regarding his supplemental report, which was served a full week before his deposition. *See* App'x 2233 (Werner Dep. Tr. 80:11–14); App'x 2234 (Werner Dep. Tr. 87:25–88:2).[16] And while Cognizant complains that "Infosys served the [Supplemental] Reports two days after Dr. Wong's deposition," *supra* at 23, it ignores that Infosys first offered to delay Dr. Wong's deposition until after service of his Supplemental Report and then offered to make him available for a supplemental deposition well in advance of the summary judgment and expert motion deadlines, both of which proposals Cognizant rejected. *See* App'x 1687 (J. Armstrong Aug. 13, 2026 Email); App'x 1256 (J. Armstrong Aug. 27, 2026 Email). Nor can Cognizant credibly claim Infosys attempted "to seize an unauthorized last word," *supra* at 23, when Infosys repeatedly agreed Cognizant could serve rebuttals to the Supplemental Reports, also well in advance of the summary judgment and expert motion deadlines. *See* App'x 1687 (J. Armstrong Aug. 13, 2026 Email).

---

[16] Cognizant's characterization that it had to "scramble to overhaul its preparation" for Dr. Werner's deposition, *supra* at 23, is not credible given that Infosys not only gave Cognizant a full week to digest his Supplemental Report, which is just six paragraphs long and responds narrowly to the MTD Order and criticisms from Cognizant's experts, before his deposition, but also offered to postpone the deposition, *see* App'x 1687 (J. Armstrong Aug. 13, 2026 Email). This case is thus nothing like *In re Pool Products*, in which the supplementing party served a new report with extensive, new analysis just three days before the expert's deposition. *See* 2014 WL 3353232, at *1–2. At any rate, any prejudice Dr. Werner's supplement could have caused with respect to his deposition is now moot and should not factor into the analysis.

Cognizant's assertion that the Supplemental Reports "disrupt Cognizant's preparations for summary judgment and *Daubert* motions," *supra* at 24, fails because, as Cognizant does not dispute, Infosys served them before the close of expert discovery. If, as Cognizant contends, the Supplemental Reports are "unimportant" and "add little," *supra* at 21, there is no need for Cognizant to "divert attorneys and experts to analyze new opinions, prepare additional examinations, and consider 'curative' expert submissions," *supra* at 24. Indeed, courts have denied motions to strike even reports served *after* summary judgment briefing was complete where "the additions made in [the] supplemental report are the kind of clarifying explanations [the expert] might have provided through testimony based on the original report" and thus "are not so novel that they necessitate additional discovery and motion briefing." *GenoSource, LLC v. Secura Ins.*, 637 F. Supp. 3d 633, 640 (N.D. Iowa 2022). At any rate, the main event for which parties must disclose expert opinions is trial, and trial is next year. *Cf. Wattle v. Barko Hydraulics LLC*, 107 Fed. App'x 396, 397 (5th Cir. 2004) (rejecting argument that defendant was "prejudiced by the late-designated experts" where the experts were designated "over a year before trial").

Furthermore, Infosys proposed, and Cognizant rejected, an orderly process for addressing the impact of the MTD Order that would have both avoided a cycle of "cascading" further reports and given Cognizant's experts the last word on the subject. *Supra* at 24, 36, 39; *see* App'x 1687 (J. Armstrong Aug. 13, 2026 Email). Regardless, as explained above, it was inevitable that expert work would result from the MTD Order.

More broadly, Cognizant ignores that Infosys served its Supplemental Reports, and proposed that Cognizant serve supplemental rebuttals, for the parties' mutual benefit. By disclosing in advance the ways in which Drs. Wong and Werner would comport with the MTD Order and resolve alleged errors identified by Dr. Lerner and Mr. Orszag, Infosys eliminated any potential

surprise as to how they would testify on those subjects at trial and any potential pretrial disputes over the scope of that testimony.

As with the first and second factors, the third factor strongly favors Infosys.

**4. No Continuance Is Needed.**

The fourth factor, "the availability of a continuance to cure [any] prejudice," is inapplicable because no continuance is required (and there is no prejudice to cure). *Certain Underwriters at Lloyd's*, 951 F.3d at 270. This factor therefore does not favor Cognizant. To the extent Cognizant's claims of prejudice depend on Dr. Werner's deposition, it *already* deposed Dr. Werner regarding his Supplemental Report, obviating any need for a continuance. *See, e.g.*, App'x 2233 (Werner Dep. Tr. 80:11-14); App'x 2234 (Werner Dep. Tr. 87:25-88:2). To the extent they depend on the summary judgment and expert motion deadlines, Infosys served the Supplemental Reports sufficiently in advance of those deadlines to ensure they remain in place—indeed, before the close of expert discovery. And to the extent they depend on Cognizant's perceived need for additional work by its own experts or to re-depose Dr. Wong, Cognizant is free to do so in the nearly three weeks before summary judgment and expert motions are due, and Infosys has repeatedly confirmed its willingness to make Dr. Wong available for a prompt supplemental deposition that Cognizant can quickly complete via Zoom (just as Infosys recently did for the follow-up 30(b)(6) deposition of Cognizant authorized by the Special Master, *see* Dkt. 538).

It bears emphasis that Infosys is not asking the Court to extend any filing deadlines, nor has it taken any action that would necessitate doing so. Rather, Infosys engaged in required expert supplementation more than a month before the next filing deadlines in the case. If anything, the course Cognizant claims to advocate—first requiring adjudication of a motion for leave—would have resulted in far greater risk to the schedule, including because Cognizant would not have had

the benefit of questioning Dr. Werner at his deposition regarding his supplemental report. *See, e.g.*, App'x 2233 (Werner Dep. Tr. 80:11–14); App'x 2234 (Werner Dep. Tr. 87:25–88:2); 1231 (Werner Supp. Rept. at 1, stamped as Ex. 3 to Werner Dep.).

As no continuance is necessary or warranted, the fourth factor is inapplicable and does not favor Cognizant.

### C. Cognizant's Own Conduct Refutes Its Position.

Cognizant asks the Court to hold that Rule 26(e) never permits a party to supplement an expert report without leave. Its own conduct in this case refutes that position. Before Infosys served the Supplemental Reports, Cognizant had already served three supplemental expert reports—without notice, without conferral, and without leave. And on the very day it served its portion of this Joint Report, while accusing Infosys of "self-help," Cognizant served two further "corrected" reports of Dr. Lerner, again without leave, and with notice as to only one—and both after the close of expert discovery:

| **Report served by Cognizant** | **Date served** | **Notice or conferral?** | **Leave sought?** |
|---|---|---|---|
| First Pinto Supplemental Report | July 6, 2026 (21 days after Initial Report) | No | No |
| McGavock Supplemental Report | July 13, 2026 (28 days after Initial Report) | No | No |
| Second Pinto Supplemental Report | July 31, 2026 (46 days after Initial Report) | No | No |
| Lerner Corrected Initial Report | Aug. 28, 2026 (74 days after Initial Report; **after the close of expert discovery**) | Yes | No |
| Lerner Corrected Rebuttal Report | Aug. 28, 2026 (25 days after Rebuttal Report; **after the close of expert discovery**) | No | No |

That conduct matters in three ways. First, it is a party admission about what Rule 26(e) permits: Cognizant cannot ask the Court to adopt a rule for Infosys that would condemn five of

Cognizant's own disclosures. Second, it forecloses Cognizant's premise that leave is a precondition to supplementation, because Cognizant plainly did not believe so when it served its own supplements. Third, it neutralizes Cognizant's claim of prejudice. A party that has five times concluded supplementation is manageable cannot credibly maintain that two more times will derail its summary judgment preparation.

The comparison is also unflattering to Cognizant on the merits. Infosys's experts supplemented to conform their opinions to the Court's ruling and, in Dr. Werner's case, to reduce Infosys's damages. Cognizant's expert "corrected" his reports to amend assertions his deposition had undermined. See App'x 1391-1666 (Lerner Corrected Initial Report and Lerner Corrected Rebuttal Report); App'x 2207-15 (Lerner Dep. Tr. 240:12–272:17).[17] If one party in this case has used the guise of correction to improve its position after the fact, it is not Infosys.

As explained above in its Rule 26(e) analysis, Infosys did not believe leave of court was required to serve its Supplemental Reports, and in fact believed it had a duty under Rule 26(e) to serve them. *Supra* at 41–42, 47. Infosys's understanding was reinforced by Cognizant's own unilateral supplementation, described above. However, on a motion for leave, the same four-factor test outlined above would apply. *See Reliance*, 110 F.3d at 257. And Cognizant admitted during the parties' premotion conference that it would *oppose* any motion for leave, App'x 1226 (Rendell Decl. ¶ 5), confirming that—despite Cognizant's emphasis on the absence of leave, *see, e.g.*, *supra* at 15–16, 21–22—its real motivation is not about the absence of leave but rather a merits-based effort to prevent Infosys from conforming its prior expert testimony to the MTD Order. Nonetheless, if the Court concludes that leave was required contrary to Infosys's genuine understanding

[17] Notably, Cognizant has not offered to make Dr. Lerner available for a further deposition on his "corrected" reports as Infosys did for Dr. Wong regarding his Supplemental Report.

when it served the Supplemental Reports, the four-factor test supports granting Infosys leave and denying Cognizant's motion to strike. The first three factors of the Rule 37 analysis weigh strongly in Infosys's favor, and the fourth is inapplicable. Thus, even if Infosys's Supplemental Reports were not supplemental within the meaning of Rule 26(e)—and they are—there is no basis to strike them.

## IV. Conclusion

For the foregoing reasons, Infosys respectfully requests that the Court deny Cognizant's motion to strike Infosys's Supplemental Reports. To the extent the Court concludes that any further process is warranted, Infosys respectfully requests in the alternative that the Court order the reciprocal process Infosys has repeatedly proposed, most recently September 2, 2026. *See supra* at 39.

Dated: September 3, 2026

By: /s/ Christopher J. Schwegmann

Christopher J. Schwegmann
(SBN 24051315)
Joshua Lang (SBN 24109450)
**LYNN PINKER HURST & SCHWEGMANN, LLP**
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
Tel: (214) 981-3835
cschwegmann@lynnllp.com
jlang@lynnllp.com

Brent Caslin (*pro hac vice*)
Nick Saros (*pro hac vice*)
Kelly M. Morrison (*pro hac vice*)
**JENNER & BLOCK LLP**
515 S. Flower Street, Suite 3300
Los Angeles, CA 90071
Tel.: (213) 239-5100
BCaslin@jenner.com NSaros@jenner.com KMorrison@jenner.com

Shoba Pillay (*pro hac vice*)
Laura E. Pelanek (*pro hac vice*)
**JENNER & BLOCK LLP**
353 N. Clark Street
Chicago, IL 60654
Tel.: (312) 222-9350
SPillay@jenner.com
LPelanek@jenner.com

Douglas E. Litvack (*pro hac vice*)
Jariel A. Rendell (*pro hac vice*)
**JENNER & BLOCK LLP**
1099 New York Avenue, NW
Suite 900
Washington, DC 20001
Tel: (202) 639-6000
DLitvack@jenner.com
JRendell@jenner.com

*Attorneys for Infosys Limited*

Respectfully submitted,

By: /s/ Rachel S. Brass

John T. Cox III (SBN 24003722)
Bradley G. Hubbard (SBN 24090174)
**GIBSON, DUNN & CRUTCHER LLP**
2001 Ross Avenue, Suite 2100
Dallas, TX 75201
Tel: 214.698.3226
TCox@gibsondunn.com
BHubbard@gibsondunn.com

Rachel S. Brass (*pro hac vice*)
Elizabeth McCloskey (*pro hac vice*)
**GIBSON, DUNN & CRUTCHER LLP**
One Embarcadero Center, Suite 2600
San Francisco, CA 94111
Tel: 415.393.8200
RBrass@gibsondunn.com
EMcCloskey@gibsondunn.com

Samuel G. Liversidge (*pro hac vice*)
Casey J. McCracken (*pro hac vice*)
S. Christopher Whittaker (*pro hac vice*)
**GIBSON, DUNN & CRUTCHER LLP**
333 South Grand Avenue
Los Angeles, CA 90071
Tel: 213.229.7000
SLiversidge@gibsondunn.com
CMcCracken@gibsondunn.com
CWhittaker@gibsondunn.com

Jamie E. France (*pro hac vice*)
**GIBSON, DUNN & CRUTCHER LLP**
1700 M Street, N.W.
Washington, D.C. 20036
Tel: 202.955.8500
JFrance@gibsondunn.com

*Attorneys for Plaintiff and Counterclaim Defendant Cognizant TriZetto Software Group, Inc. and Counterclaim Defendant Cognizant Technology Solutions Corp.*

## CERTIFICATE OF CONFERENCE

The following attorneys participated in the August 27, 2026, pre-motion conference, and hereby sign the foregoing Joint Report:

*/s/_Ming Lee Newcomb_*

Teddy Kristek
Ming Lee Newcomb

**GIBSON, DUNN & CRUTCHER LLP**

*Attorneys for Cognizant TriZetto Software Group, Inc. and Cognizant Technology Solutions Corp.*

*/s/ Jariel A. Rendell*

Jariel A. Rendell
Joshua Lang
Kelly M. Morrison
Joshua Armstrong

**JENNER & BLOCK LLP**

*Attorneys for Infosys Limited*

## CERTIFICATE OF SERVICE

I hereby certify that on September 3, 2026 the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system and an electronic copy was served on all counsel via electronic mail.

*/s/ Ming Lee Newcomb*

Ming Lee Newcomb